FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE M. DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email address: ddixon-thayer@flk.com

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Company

TERRANCE M. REVERE 5857-0
JACQUELINE E. THURSTON 7217-0
BRIANNE L. ORNELLAS  8376-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii 96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910
Email address: terry@myrhawaii.com

Attorneys for Plaintiffs.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 5 2006

at 7 o'clock and 0 min. AM
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS and JULIA HANDS,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDREMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, *(caption continues)* | CIVIL NO.  CV03-00463JMS/LEK (Other Civil Action, Declaratory Judgment)<br><br>**PLAINTIFFS' OPPOSITION TO MAUNA KEA'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY GUY AND JULIA HANDS; CERTIFICATE OF SERVICE** |

INC.; MAUNA KEA
DEVELOPMENT CORP.;
COUNTY OF HAWAII; JOHN
DOES 1-100; JANE DOES 1-100;
DOE PARTNERSHIPS 1-100; and
DOE CORPORATIONS 1-100,

                Defendants.

Date:     January 23, 2006
Time:     9:45 a.m.
Judge:   Hon. J. Michael Seabright

Trial Date: March 14, 2006

## PLAINTIFFS' OPPOSITION TO MAUNA KEA'S MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY GUY AND JULIA HANDS

Plaintiffs Guy Hands and Julia Hands (collectively, the "Hands Plaintiffs") respectfully submit this Opposition to Mauna Kea Properties, Inc. and Mauna Kea Development Corporation's (collectively, "Mauna Kea" or the "Mauna Kea Defendants") Motion for Summary Judgment as to All Claims Asserted by Guy and Julia Hands (the "Motion" or "Mauna Kea's Motion").

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................... 1

II.   FACTUAL BACKGROUND ................................................... 2

    A.    Mauna Kea Lied About The Purchase Prices Of Certain Lots, To Induce Future Purchasers To Pay More .......................................... 2

    B.    The Governing Documents Of The Bluffs Expressly Guaranteed That View Planes Would Be Protected ............................ 2

    C.    Relying On Mauna Kea's False Representations As To The Purchase Prices Of Other Lots, And On The Promises Of Protected View Planes, The Hands Plaintiffs Signed Mauna Kea's Sales Contract For Lot 5 ...................................... 3

    D.    The Hands Plaintiffs Assigned Their Rights Under The Sales Contract – But Not Any Tort Claims Or Other Causes Of Action– To Plaintiff Western Sunview, An Entity Whose Ultimate Owner Is The Hands' Retirement Fund .............................. 4

    E.    The Hands Plaintiffs Personally Expended Over $50,000 And Certain Other Expenses – Which Were Not Reimbursed – In Making Their Offer For Lot 5 ..................................... 6

    F.    Closing For Lot 5 Occurred On January 24, 2000, Over Four Months After The Hands Plaintiffs Signed The Sales Contract .......... 6

    G.    This Court Has Ruled That Section 4.17 Was Abandoned, And Has Allowed Plaintiffs' Fraud, Negligent Misrepresentation, And Statutory Claims To Proceed ......................................... 7

    H.    Plaintiffs Have Been Damaged As A Result Of Mauna Kea's Misrepresentations And Failures To Enforce The Design Requirements ....................................................... 9

III.  ARGUMENT ........................................................................ 9

    A.    Under Hawaii Supreme Court Authority, The Hands Plaintiffs Have Suffered Damages And Have A Sufficient Legal Interest In This Dispute ........................................................ 9

    B.    The Merger Doctrine Does Not Apply Because The Hands Plaintiffs Are Not Seeking Recovery On The Sales Contract ............ 12

        1.    Even If The Merger Doctrine Were To Bar Some Claims, Mauna Kea Concedes That The Merger Doctrine Has A Fraud Exception .................................................... 12

      2.     Even If The Merger Doctrine Were To Bar Some Claims, It Does Not Bar The Hands Plaintiffs' Negligent Misrepresentation And Unfair And Deceptive Trade Practices Claims ....................................................................... 13

C.    Plaintiffs Have Suffered Damages ........................................................ 15

      1.     The Hands Plaintiffs Expended Over $50,000 In Reliance on Mauna Kea's Misrepresentations, For Which The Hands Plaintiffs Were Not Reimbursed ..................................... 15

      2.     Damages Are Measured At The Time Of The Tort, Not At Some Later Date Chosen By The Tortfeasor ...................... 15

IV.    CONCLUSION ............................................................................................ 17

# CASES

*Formento v. Encanto Business Park,*
744 P.2d 22 (Ariz. Ct. App. 1987) .......................................................................... 14

*Hawaii's Thousand Friends v. Anderson,*
70 Haw. 276, 768 P.2d 1293 (1989) ........................................................................ 16

*Keller v. Harvestore Products, Inc.,*
819 P.2d 63 (Colo. 1991) .......................................................................................... 14

*Martens Chevrolet, Inc. v. Seney,*
439 A.2d 534 (Md. 1982) .......................................................................................... 14

*S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club,*
76 Haw. 396, 879 P.2d 501 (1994) .......................................................................... 12

*Sato v. Tawata,*
79 Haw. 14, 897 P.2d 941 (1995) ............................................................................ 11

*Western Sunview Properties, LLC v. Federman,*
338 F. Supp. 1106 (2004) .................................................................................. 8, 9, 13

*Zanakis-Pico v. Cutter Dodge, Inc.,*
98 Haw. 309, 47 P.3d 1222 (2002) ......................................... 2, 9, 10, 12, 13, 15

# OTHER AUTHORITIES

Restatement (Second) of Torts § 920 ...................................................................... 16

## I.    INTRODUCTION

Mauna Kea filed this motion as a last ditch effort to eliminate the Hands Plaintiffs from the litigation.  However, the entire Motion is premised on the mistaken assertion that the Hands Plaintiffs were reimbursed for the $50,000 deposit and other expenses they incurred toward the purchase of Lot 5 at The Bluffs at Mauna Kea ("The Bluffs") – and, therefore, that the Hands Plaintiffs do not have a sufficient legal interest to pursue the claims against Mauna Kea.  Yet, Mauna Kea is wrong, and Mauna Kea's mistake is fatal to its Motion.

The Hands Plaintiffs were not reimbursed for the $50,000 deposit by Plaintiff Western Sunview Properties LLC ("Western Sunview"), or by anyone else.  Moreover, the Hands Plaintiffs incurred additional expenses that also were not reimbursed, such as the cost of telephone calls and facsimile charges to coordinate the offer.  Under Hawaii law, the deposit and the expenses are more than enough  to satisfy the legal interest and damages requirements of the Hands Plaintiffs' claims.  Indeed, the Hawaii Supreme Court has held that the expenditure of three to five dollars in gas money is sufficient to maintain fraud, negligent misrepresentation, and unfair and deceptive trade practices claims, even if a plaintiff does not sign a contract or make a purchase.  *See, e.g., Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 317, 321, 322, 47 P.3d 1222 (2002).  Mauna Kea's Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Mauna Kea Lied About The Purchase Prices Of Certain Lots, To Induce Future Purchasers To Pay More.

As discussed in more detail in Plaintiffs' Opposition to Mauna Kea's Motion for Summary Judgment Regarding Damages, Mauna Kea hatched and completed a scheme where it gave certain purchasers secret discounts and then purposefully did not include these discounts in the sales prices that it reported to the Hawaii taxing authorities and to other prospective purchasers.[1]

### B.    The Governing Documents Of The Bluffs Expressly Guaranteed That View Planes Would Be Protected.

One of the biggest selling points of ocean-front lots at The Bluffs was the views:  Owners of ocean-front properties were supposed to have near-unparalleled views of the ocean and a rugged, pristine coastline.  These views expressly were protected by the governing documents of The Bluffs.  Section 4.17 of the Design and Construction Requirements for Homes ("Design Requirements") created a "special setback area" for individual lots in order to protect neighbors' views.  View protection was to be accomplished by prohibiting any buildings or structures in the "Special Setback Areas."  Section 4.17 provides that:

---

[1] For example, Mauna Kea falsely represented that Plaintiffs neighbors the Federmans paid $3,000,000 for their property, when in reality the Federmans paid $2,550,000, or $450,000 less.  *See* Declaration of Terrance M. Revere ("Revere Decl."), Exhibit ("Exs.") 8; Ex. 12 at 2; Ex. 17; Ex. 98.

> Special setbacks have been placed on the individual Homesites to protect views and to preserve hillsides. No building or structure shall be placed within the special setback areas as shown on exhibit A.[2]

Revere Decl., Ex. 33 § 4.17.

C.    **Relying On Mauna Kea's False Representations As To The Purchase Prices Of Other Lots, And On The Promises Of Protected View Planes, The Hands Plaintiffs Signed Mauna Kea's Sales Contract For Lot 5.**

After the Hands became interested in purchasing Hawaii property, Mauna Kea sent its price list to the Hands' realtor and stated at least twice that Mauna Kea's prices were "firm." Revere Decl., Ex. 15. The Hands' realtor checked the listed prices with the tax office records of recorded sales, and found that the reported sales prices of the Federmans' property was $3,000,000, as stated on Mauna Kea's "Price List," and that tax office records showed that other lots sold for the list price, or more. Revere Decl., Ex. 26 (Au Depo.) at 98:10-99:2. The Hands' realtor conveyed this information to the Hands. Revere Decl., Ex. 16 ¶ 5. As discussed in more detail in Plaintiffs' Opposition to Mauna Kea's Motion for Summary Judgment Regarding Damages, Mauna Kea's representations were false: The Federmans actually paid $2,550,000 for their property, and numerous other purchasers paid significantly less than Mauna Kea represented.

---

[2] The "exhibit A" referenced in Section 4.17 shows the "Special Setback Area" for each lot (shaded area). *See* Revere Decl., Ex. 33 at Ex. A.

Mrs. Hands testified that she read the Design Requirements before the purchase of the property, and understood that these requirements prohibited building in the special setback areas to protect views and the natural terrain. Revere Decl., Ex. 30 (Julia Hands Depo.) at 25:25-27:23. She also testified that she believed that the views from Lot 5 depicted in the photos would be maintained because of the prohibition on building in the special setback areas. *Id.*

Relying on Mauna Kea's representations as to the purchase prices of other lots, and on Mauna Kea's promises of protected view planes, the Hands Plaintiffs signed Mauna Kea's Sales Contract on September 20, 1999, agreeing to purchase Lot 5 for the full list price of $3,250,000 (the "Sales Contract"). Revere Decl., Ex. 16 ¶ 10; Ex. 19; Ex. 31 ¶¶ 4-5; 150 ¶ 3.

> **D.     The Hands Plaintiffs Assigned Their Rights Under The Sales Contract – But Not Any Tort Claims Or Other Causes Of Action– To Plaintiff Western Sunview, An Entity Whose Ultimate Owner Is The Hands' Retirement Fund.**

The Hands Plaintiffs assigned their rights under the sales contract to Plaintiff Western Sunview.    The Assignment of Sales Contract and Consent (the "Assignment") provided that the Hands Plaintiffs "do hereby sell, assign, transfer, and deliver to [Western Sunview] all their right, title and interest in and to the [Sales] Contract." *See* Mauna Kea's Concise Statement in Support of Motion as to All Claims Asserted by Guy and Julia Hands ("MK CSOF"), Ex. R ¶ A. Western Sunview is an entity whose ultimate owner is the Hands' Retirement Fund. See

Plaintiffs' Concise Statement of Facts in Opposition to Mauna Kea's Motion for Summary Judgment on Claims by Guy and Julia Hands ("Plaintiffs' CSOF") 42. The Assignment did <u>not</u> assign to Western Sunview any causes of action that the Hands Plaintiffs have against Mauna Kea. *See* MK CSOF, Ex. R. Furthermore, even in assigning their rights under the Sales Contract to Western Sunview, the Hands Plaintiffs remained potentially liable to Mauna Kea for breaches of the Sales Contract. The Assignment provides that:

> Assignors assure Seller that Assignors understand and agree that, notwithstanding such assignment, Assignors continue to be primarily liable for the observance and performance of all of Buyer's obligations under the Contract. Accordingly, if there is a default under the Contract at the effective date of this assignment, even though subsequently discovered or if Assignee or anyone claiming under Assignee at any time prior to the closing date stating in the Contract, Assignors shall be responsible for immediately remedying the default, upon Seller's demand, without the necessity that Seller first make demand on or exhaust its remedies against the holder of the Contract.

MK CSOF, Ex. R ¶ 3.a. Although Mauna Kea now claims that the Hands Plaintiffs cannot sue Mauna Kea, Mauna Kea clearly reserved for itself the right to sue the Hands Plaintiffs.

**E.    The Hands Plaintiffs Personally Expended Over $50,000 And Certain Other Expenses – Which Were Not Reimbursed – In Making Their Offer For Lot 5.**

The Hands Plaintiffs personally paid a $50,000 deposit for Lot 5. Plaintiffs'

CSOF 39.  Additionally, the Hands Plaintiffs incurred numerous expenses in making the offer to purchase Lot 5, including the costs of telephone calls to coordinate the offer and the costs of facsimile charges to send the offer.  *Id.* 40. Western Sunview has <u>not</u> reimbursed the Hands Plaintiffs for these expenditures.[3] *Id.* ¶ 41.

**F.    Closing For Lot 5 Occurred On January 24, 2000, Over Four Months After The Hands Plaintiffs Signed The Sales Contract.**

The sale of Lot 5 closed on January 24, 2000.  MK CSOF, Ex. Y.  The Hands Plaintiffs signed the Limited Warranty Deed as Managers of Western Sunview.  *Id.*  Although Mauna Kea states that the market became more competitive at the time the Hands Plaintiffs purchased their lot, any market "tightening" did not occur until well after the Hands Plaintiffs signed the sales contract.  Revere Decl., Ex. 19; Ex. 101 (Buboltz Depo.) at 18:20-19:11; Ex. 103 (Kohler Depo.) at 21:1-22:11; Ex. 137 at 6.  Indeed, Mauna Kea's realtor and principal broker testified that the market did not really "take off" until September 2001.  Revere Decl., Ex. 101 (Buboltz Depo.) at 18:20-19:11; Ex. 103 (Kohler

---

[3] Mauna Kea argues that the amounts were reimbursed citing to deposition transcripts but ignoring the "correction sheet," in which Mr. Hands states that he has researched the issue and believes that he was not reimbursed.  Revere Decl., Ex. 129 (correction sheet at 1).  Mauna Kea also ignores the Declaration of Guy Hands previously filed with this Court, in which Mr. Hands states that "[t]o the best of my knowledge, none of these costs were reimbursed."  Revere Decl., Ex. 150 ¶ 4.

Depo.) at 21:1-22:11. In the nine months prior to the Hands Plaintiffs' signing of the sales contract, Mauna Kea sold only 4 lots and the purchasers of those lots were each given secret discounts of between $212,500 and $500,000. Revere Decl., Ex. 137 at 6. Less than two months after the Hands Plaintiffs signed the sales contract, the buyer of Lot 16 was given a $200,000 secret discount that was 10% of the listed sales price. Revere Decl., Ex. 144. Plaintiffs, however, paid full price for Lot 5 and received no discount, secret or otherwise.

### G.   This Court Has Ruled That Section 4.17 Was Abandoned, And Has Allowed Plaintiffs' Fraud, Negligent Misrepresentation, And Statutory Claims To Proceed.

After the sale of Lot 5 was consummated, Plaintiffs' neighbors, the Federmans, began constructing a pool and a spa in the special setback area – as well as planting clusters of palm trees – in direct contravention of Section 4.17 of the Design Requirements, which Mauna Kea and The Bluffs at Mauna Kea Community Association (the "Association") were obligated to enforce. Plaintiffs also discovered that Mauna Kea lied – both to Hawaii taxing authorities and to prospective purchasers – about the purchase prices of other lots at The Bluffs.

After Plaintiffs filed suit, this Court ruled on summary judgment motions brought by Plaintiffs and the Federmans. This Court found that enforcement of the Design Requirements was so bad, that Section 4.17 had been abandoned to the extent that it prohibited structures that did not block views. *Western Sunview*

*Properties, LLC v. Federman*, 338 F. Supp. 1106, 1115 (2004).  As discussed in more detail in Plaintiffs' Opposition to Mauna Kea's Motion for Summary Judgment as to All Special Setback and Punitive Damages Claims, the acts that contributed to this Court's determination that Section 4.17 was abandoned principally occurred when Mauna Kea controlled the Design Committee that was charged with enforcing Section 4.17.

This Court also concluded that triable issues of fact exist as to the fraud, negligent misrepresentation, Unfair and Deceptive Trade Practices Act, and Uniform Land Sales Act claims – and denied the Federmans' motion for summary judgment.  *Western Sunview*, 338 F. Supp. 2d at 1119, 1120, 1124-25.  This Court ruled that the Federmans "did make a false representation that they knew to be false" in reporting the sales price of their property as $3,000,000 rather than $2,550,000.  *Id.* at 1119.  As discussed above, Mauna Kea made the same representation.  This Court also ruled that there were issues of fact as to reliance and damages, and accordingly denied the Federmans' motion for summary judgment as to Plaintiffs' fraud and negligent misrepresentation claims.  *Id.* at 1120.  In addition, this Court also allowed Plaintiffs to pursue their Unfair and Deceptive Trade Practices Act and Uniform Land Sales Act claims against the Federmans, on the theory that the Federmans were engaged in a conspiracy with the Mauna Kea.  *See id.* at 1123-25.

**H.    Plaintiffs Have Been Damaged As A Result Of Mauna Kea's Misrepresentations And Failures To Enforce The Design Requirements.**

Plaintiffs have suffered substantial damages because of Mauna Kea's conduct. Because of Mauna Kea's misrepresentations, Plaintiff Western Sunview paid at least $400,000 more for Lot 5 than it should have. Revere Decl., Ex. 115. Because Mauna Kea allowed the Federmans to build in the special setback area, and allowed Section 4.17 to be become abandoned, the value of Lot 5 has decreased by at least $700,000. Revere Decl., Ex. 115 at 1-2.

The Hands Plaintiffs also personally expended over $50,000 in making their offer for Lot 5, and this $50,000 has not been reimbursed. Plaintiffs' CSOF 39-41.

### III.    ARGUMENT

**A.    Under Hawaii Supreme Court Authority, The Hands Plaintiffs Have Suffered Damages And Have A Sufficient Legal Interest In This Dispute.**

*Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 47 P.3d 1222 (1992), establishes that Mauna Kea's Motion should be denied. In *Zanakis-Pico*, the plaintiffs alleged that they traveled to a car dealership in response to an advertisement for a Grand Cherokee Laredo that stated "$0 cash down." *Id.* at 313. When the plaintiffs tried to purchase a Laredo, they were told they would have to make a down payment of $1,400. *Id.* After the plaintiffs pointed out that the advertisement said "$0 cash down," the plaintiffs were told that the offer was only

available to recent college graduates who were entitled to a "loyalty rebate." *Id.* The plaintiffs left the car dealership without making a purchase. *Id.*

Even though the plaintiffs did not make a purchase or sign a contract, the Hawaii Supreme Court held that the trial erred in dismissing plaintiffs' HRS Chapter 480, fraud, and negligent misrepresentation claims. *Id.* The Hawaii Supreme Court noted that the trial court dismissed the HRS 480 claim based "on the fact that [the plaintiffs] had not actually purchased the advertised vehicle or otherwise given any value to [the dealer]." *Id.* at 316. The Hawaii Supreme Court rejected the trial court's rationale, stating that "[t]he plain language of the statute reflects that the Legislature intended not only to protect persons who actually purchased goods or services as a result of unfair or deceptive acts and practices, but also those who attempted to do so." *Id.* at 316. The court went on to state that "[f]alse or misleading advertisements do their damage when they induce action that a consumer would not otherwise have undertaken." *Id.* at 317. The court accordingly held that "[n]o actual purchase is necessary" to recover under HRS Chapter 480. *Id.*

The Hawaii Supreme Court also made it clear that a plaintiff need not have made a purchase in order to bring fraud and negligent misrepresentation claims: Plaintiffs' claim that they spent <u>three to five dollars</u> in gas money to visit the defendant car dealership, in reliance on the car dealership's advertisement, was

sufficient damages both for fraud and for negligent misrepresentation. *Id.* at 319-22.

Here, the Hands Plaintiffs paid a $50,000 deposit and incurred other costs (such as telephone and facsimile charges) of over five dollars in making their offer for Lot 5. Plaintiffs' CSOF 39-40. The Hands Plaintiffs incurred these costs – which have not been reimbursed – in reliance on Mauna Kea's representations as to the sales price of other lots and on Mauna Kea's promises of protected view planes.[4] Plaintiffs' CSOF 39-41; Revere Decl., Ex. 16 ¶ 10; Ex. 19; Ex. 31 ¶¶ 4-5; 150 ¶ 3. As such, Hawaii Supreme Court authority makes it clear that Mauna Kea's Motion should be denied.

**B.     The Merger Doctrine Does Not Apply Because The Hands Plaintiffs Are Not Seeking Recovery On The Sales Contract.**

The "merger doctrine" is a <u>contract</u> doctrine that simply does not apply to the Hands Plaintiffs' tort and statutory claims. As Mauna Kea's own authority makes clear, the doctrine only operates to bar recovery on a <u>sales contract</u> after the deed is delivered and accepted: "[T]he doctrine of merger . . . disallows any

---

[4] This Court should reject any argument by Mauna Kea that the Hands Plaintiffs' claims should be dismissed on the ground that Western Sunview could have reimbursed the Hands Plaintiffs' expenditures. Any such argument would fly in the face of the collateral source rule, which holds "that 'a tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor[.]'" *Sato v. Tawata*, 79 Haw. 14, 18, 897 P.2d 941 (1995) (quoting 69 A.L.R. 4th § 2(a), at 139 (1989)).

recovery on the contract covenants once the grantee accepts a deed, so that the deed's covenants (if any) take up just when the contracts leave off." *S. Utsunomiya Enterprises, Inc. v. Moomuku Country Club*, 76 Haw. 396, 399, 879 P.2d 501 (1994).

Here, the Hands Plaintiffs do not seek to recover based on some alleged breach of the sales contract. Instead, they seek to recover the costs and expenses they incurred in reliance on Mauna Kea's false representations, and such recovery has been allowed by the Hawaii Supreme Court. *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 321, 322, 47 P.3d 1222 (2002). As such, the merger doctrine simply does not apply.

1.    **Even If The Merger Doctrine Were To Bar Some Claims, Mauna Kea Concedes That The Merger Doctrine Has A Fraud Exception.**

Mauna Kea concedes that the merger doctrine has a fraud exception. *See* Mauna Kea's Motion, at 20. Contrary to Mauna Kea's suggestion, however, the Hands Plaintiffs did <u>not</u> assign to Plaintiff Western Sunview any of Hands Plaintiffs' claims against Mauna Kea. MK CSOF, Ex. R.

As established in Plaintiffs' Opposition to Mauna Kea's Motion for Summary Judgment Regarding Damages, there are triable issues of fact as to Plaintiffs' fraud claims. Indeed, this Court already has ruled that there are triable issues of fact in denying the Federmans' motion for summary judgment on

Plaintiffs' fraud claims. *Western Sunview Properties*, 338 F. Supp. 2d at 1119-21. Since there are triable issues of fact as to Plaintiffs' fraud claims, since the Hands' Plaintiffs' fraud claims have not been assigned, and since the Hawaii Supreme Court has held that a plaintiff may pursue fraud damages even if they did not make a purchase, the Hands Plaintiffs' fraud claims should go to the jury. *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 322, 47 P.3d 1222 (2002).

2.    **Even If The Merger Doctrine Were To Bar Some Claims, It Does Not Bar The Hands Plaintiffs' Negligent Misrepresentation And Unfair And Deceptive Trade Practices Claims.**

As noted above, the Hawaii Supreme Court has made it clear that a plaintiff can pursue negligent misrepresentation and unfair and deceptive trade practices claims, even if he has not made a purchase or otherwise entered into a contract. *Zanakis-Pico*, 98 Haw. at 317, 322, 47 P.3d 1222. It would be incongruous if the merger doctrine were ruled to bar such claims, based on a deed to which Mauna Kea asserts the Hands Plaintiffs are not even parties.

Courts around the country have determined that contract defenses – such as those based upon integration or merger clauses – should not bar negligent misrepresentation claims, which, like fraud, are rooted in tort. For example, in *Keller v. Harvestore Products, Inc.*, 819 P.2d 63 (Colo. 1991), the Colorado Supreme Court stated:

[C]laims of negligent misrepresentation are based not on

principles of contractual obligation but on principles of
duty and reasonable conduct. . . . [¶] Many other courts
have also concluded that the mere presence of a general
integration clause in an agreement does not bar a claim
for negligent or fraudulent misrepresentation. . . . [¶] The
policy of encouraging honesty and candor in contract
negotiations, which policy is reflected in the recognition
of an implied covenant of good faith and fair dealing,
supports this result.  The implied covenant of good faith
and fair dealing would virtually be eliminated if a
contracting party could escape liability for negligent
conduct simply by inserting a general integration clause
into the agreement.

*Id.* at 73; *see also Martens Chevrolet, Inc. v. Seney*, 439 A.2d 534, 539 n.7 (Md.

1982) (stating that if the effects of negligent misrepresentations could be avoided

with integration clauses, "the implied covenant of good faith and fair dealing

existing in every contract would cease to exist") (citation omitted).

    Here, the Hands Plaintiffs' negligent misrepresentation and unfair and

deceptive trade practices claims are both rooted in Mauna Kea's deception.  The

harm to the Hands Plaintiffs is the same regardless of whether Mauna Kea supplied

false information knowingly, recklessly, or negligently.  *Formento v. Encanto*

*Business Park*, 744 P.2d 22, 26 (Ariz. Ct. App. 1987).  Thus, even if the merger

doctrine were to operate as a bar to some claims, it should not bar the Hands'

Plaintiffs claims of negligent misrepresentation and unfair and deceptive trade

practices.

### C.    Plaintiffs Have Suffered Damages.

#### 1.    The Hands Plaintiffs Expended Over $50,000 In Reliance on Mauna Kea's Misrepresentations, For Which The Hands Plaintiffs Were Not Reimbursed.

The Hands Plaintiffs paid a $50,000 deposit for Lot 5, as well as expenses such as telephone charges and facsimile charges in making their offer. Plaintiffs' CSOF 39-41. Since such damages are both cognizable and recoverable, this Court should deny Mauna Kea's motion. *Zanakis-Pico*, 98 Haw. at 317, 321, 322, 47 P.3d 1222.

#### 2.    Damages Are Measured At The Time Of The Tort, Not At Some Later Date Chosen By The Tortfeasor.

"[I]n deceit actions, Hawai'i appellate courts have *only barred recovery when there is no evidence of pecuniary damages at all.*" *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 334, 47 P.3d 1222 (1992). Here, Plaintiffs paid at least $400,000 more for Lot 5 than they should have. Revere Decl., Ex. 115. The value of Lot 5 also was decreased by at least $700,000 as a direct result of Mauna Kea's and the Association's failure to enforce Section 4.17 of the Design Requirements and protect Plaintiffs' views and/or in Mauna Kea's failure to disclose to Plaintiffs that its enforce of the Design Requirements was so shoddy that a court might one day determine that Section 4.17 had been abandoned. Revere Decl., Ex. 115.

Mauna Kea's arguments concerning the purchase offers ignore well-settled Hawaii law on damages. "'[T]he aim of compensation in deceit cases is to put the

plaintiff in the position he would have been had he not been defrauded.'" *Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 286, 768 P.2d 1293 (1989) (quoting *Ellis v. Crockett*, 51 Haw. 45, 52, 451 P.2d 814 (1969)). As the RESTATEMENT (SECOND) OF TORTS makes clear "if the plaintiff is entitled to damages based upon the valuation of a property at a particular time, the damages are not reduced by a subsequent beneficial event." RESTATEMENT (SECOND) OF TORTS § 920 cmt. d. As discussed in more detail in Plaintiffs' Opposition to Mauna Kea's Motion for Summary Judgment Regarding Damages, damages are measured at the time they are incurred, not at some later time that may be chosen by the tortfeasor.

Here, Mauna Kea's misrepresentations and failures to disclose led the Hands Plaintiffs to incur damages when Mauna Kea made its misrepresentations, on which the Hands Plaintiffs detrimentally relied. Plaintiffs' CSOF 39-41. Mauna Kea has no evidence that Plaintiffs received any offer for Lot 5 that exceeds its purchase price prior to January 27, 2000 – over four months after the Sales Contract was signed. Although Mauna Kea states that the market became more competitive at the time the Hands Plaintiffs purchased their lot, any market "tightening" did not occur until after the Hands Plaintiffs signed the Sales Contract and incurred damages. Revere Decl., Ex. 19; Ex. 101 (Buboltz Depo.) at 18:20-19:11; Ex. 103 (Kohler Depo.) at 21:1-22:11; Ex. 137 at 6.

Plaintiffs may recover the difference between what Plaintiffs agreed to pay

based on Mauna Kea's misrepresentations and omissions, and what Plaintiffs should have paid in the absence of Mauna Kea's misrepresentations and omissions.

### IV.    CONCLUSION

For the foregoing reasons, the Court should reject Mauna Kea's Motion for Summary Judgment as to All Claims Asserted by Guy and Julia Hands.

DATED: Honolulu, Hawaii,_____ JAN 5 2006 _____.

_____
TERRANCE REVERE

Attorney for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS