ORIGINAL    ORIGINAL

FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE M. DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email address: ddixon-thayer@flk.com

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Company

TERRANCE M. REVERE 5857-0
JACQUELINE E. THURSTON 7217-0
BRIANNE L. ORNELLAS 8376-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii 96813
Tel. No. (808) 532-7900
Fax. No. (808) 532-7910
Email address: terry@myrhawaii.com

Attorneys for Plaintiffs.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 5 2006

at __7__ o'clock and __07__ min __2__ M PM
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS and JULIA HANDS,<br><br>Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDREMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; *(caption continues)* | CIVIL NO. CV03-00463 JMS/LEK (Other Civil Action, Declaratory Judgment)<br><br>**PLAINTIFFS' OPPOSITION TO MAUNA KEA'S MOTION FOR SUMMARY JUDGMENT REGARDING FAILURE TO PROVE DAMAGES; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE** |

MAUNA KEA PROPERTIES,
INC.; MAUNA KEA
DEVELOPMENT CORP.;
COUNTY OF HAWAII; JOHN
DOES 1-100; JANE DOES 1-100;
DOE PARTNERSHIPS 1-100; and
DOE CORPORATIONS 1-100,

                    Defendants.

Date:    January 3, 2006
Time:    9:45 a.m.
Judge:   Hon. J. Michael Seabright

Trial Date: March 14, 2006

## PLAINTIFFS' OPPOSITION TO MAUNA KEA'S MOTION FOR SUMMARY JUDGMENT REGARDING FAILURE TO PROVE DAMAGES

Plaintiffs Western Sunview Properties, LLC, Guy Hands, and Julia Hands (collectively, "Plaintiffs") respectfully submit this Opposition to Defendants Mauna Kea Development Corporation and Mauna Kea Properties, Inc.'s (collectively, "Mauna Kea") Motion for Summary Judgment Based on Failure to Prove Damages (the "Motion" or "Mauna Kea's Motion").

Mauna Kea's Motion should not be considered as it was not timely filed. At the scheduling conference, Magistrate Judge Kobayashi ordered that since the deadline for filing dispositive motions had been set for March 23, 2005 – and has long since passed – the parties could only "re-file" summary judgment motions that had been filed prior to March 23, 2005. Mauna Kea did not previously file a motion on the subject matter in this motion, and accordingly cannot do so now.

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................ 1

II.  FACTUAL BACKGROUND.............................................. 4

    A.   Mauna Kea Falsely Represented The Prices Of Other Lots At The Bluffs, So That Later Purchasers Like Plaintiffs Would Be Induced To Pay At Least The List Price ............................................. 4

        1.   Mauna Kea Gave Certain Homeowners Secret Discounts And Underreported The Sales Prices Of At Least Ten Lots........................................................................ 4

        2.   Mauna Kea Admits That It Used The Secret Discount Scheme To Report Sales Prices Higher Than Actually Paid........................................................................ 6

        3.   Mauna Kea's Own Expert Stated That Mauna Kea's Scheme Was "Deliberately Misleading." ................. 8

        4.   A Co-Conspirator In The Scheme, Mr. Federman, Referred To His Secret Discount As An "Accounting Artifice" That Enabled Mauna Kea To Report A Higher Price........................................................................ 8

    B.   Mauna Kea Knew That The Sales Prices It Reported Were False................................................................................. 9

    C.   Mauna Kea Knew That Future Purchasers Would Rely On Its Falsely Reported Prices ................................................. 10

    D.   Plaintiffs Purchased Lot 5 For $3,250,000 In Reliance On Mauna Kea's False Representations................................. 11

    E.   Plaintiffs Suffered At Least $400,000 In Damages As A Result Of Relying On Mauna False Representations ................... 12

    F.   This Court Already Has Determined – On The Federman Defendants' Motion For Summary Judgment – That Triable Issues Of Fact Exist On The Very Issues That Mauna Kea Now Raises................................................................................. 14

III. ARGUMENT ................................................................. 15

A.  As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Fraud Claim, And Summary Judgment Is Not Appropriate ............................................................. 15

    1.  Plaintiffs Have Offered Evidence Of Substantial Pecuniary Damages – Mauna Kea Simply Disagrees With The Evidence ..................................................................... 16

        a.  Damages Are Measured At The Time Of The Tort, Not At Some Later Time Chosen By Mauna Kea ......... 17

        b.  Plaintiffs' Damages Constitute Substantial Pecuniary Loss .............................................................. 20

        c.  Plaintiffs' Damages Are Not Speculative ..................... 21

    2.  There Is Substantial Evidence To Prove That Mauna Kea Made False Representations To Plaintiffs That Mauna Kea Knew Were False ................................................................. 23

        a.  Mauna Kea Reported False Purchase Prices To Hawaii Taxing Authorities ............................................. 24

        b.  Mauna Kea Falsely Represented That Its Prices Were Firm ...................................................................... 24

        c.  The Court Should Reject Mauna Kea's "Everyone Else Does It" Argument As Lacking In Both Factual And Legal Support ............................................. 25

    3.  The Evidence Establishes That Mauna Kea Made Its False Representations In Contemplation Of Future Purchasers' Reliance On Them ............................................. 26

    4.  The Evidence Proves That Plaintiffs Relied On Mauna Kea's False Representations As To The Purchase Prices Of Other Lots ...................................................................... 27

B.  As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Negligent Misrepresentation Claim, And Summary Judgment Is Not Appropriate ..................................... 30

C.  As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Unfair And Deceptive Trade Practices Claim, And Summary Judgment Is Not Appropriate ......... 31

   1. Plaintiffs Suffered Damages As A Result Of Mauna Kea's Unfair And Deceptive Trade Practices ........................... 32

   2. This Court Already Has Determined That Plaintiffs Have Standing ................................................................. 33

   3. Mauna Kea Engaged In Unfair And Deceptive Practices By Falsely Representing The Sales Prices Of Other Lots ....... 34

   4. Mauna Kea Was Engaged In "Trade Or Commerce." ............. 35

  D. As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Uniform Land Sales Act Claim, And Summary Judgment Is Not Appropriate .................................... 36

IV. CONCLUSION ........................................................................ 37

# CASES

*Anderson v. State,*
88 Haw. 241, 965 P.2d 783 (1998) ........................................................................ 18

*Benson v. Weaver,*
793 P.2d 348 (Or. Ct. App. 1990) ......................................................................... 18

*Bigelow v. RKO Radio Pictures,*
327 U.S. 251 (1946) ................................................................................... 21, 22

*Blair v. Ing,*
95 Haw. 247, 21 P.3d 452 (2001) .......................................................................... 30

*Cieri v. Leticia Query Realty, Inc.,*
80 Haw. 54, 905 P.2d 29 (1995) ....................................................................... 31, 32

*Hawaii Community Federal Credit Union v. Keka,*
94 Haw. 213, 11 P.3d 1 (2000) ............................................................................ 34

*Hawaii's Thousand Friends v. Anderson,*
70 Haw. 276, 768 P.2d 1293 (1989) ................................................................... 3, 17

*Island-Gentry Joint Venture v. State,*
57 Haw. 259, 554 P.2d 761 (1976) ........................................................................ 18

*Jendrusch v. Abbott,*
39 Haw. 506 (1952) ....................................................................................... 22

*Lucas v. Liggett & Myers Tobacco Co.,*
51 Haw. 346, 461 P.2d 140 (1969) ......................................................................... 18

*Lum Ah Lee v. Ah Soong,*
16 Haw. 163 (1904) ....................................................................................... 22

*Matsuura v. E. I. Du Pont Nemours & Co.,*
102 Haw. 149, 73 P.3d 687 (2003) ......................................................................... 28

*Robert's Hawaii School Bus., Inc. v. Laupahoehoe Transportation Company, Inc.,*
91 Hawaii 224, 982 P.2d 853 (1999) ....................................................................... 24

*Rohlfing v. Moses Akiona, Ltd.,*
45 Haw. 373, 369 P.2d 96 (1961) ........................................................... 18

*Shoppe v. Gucci America, Inc.,*
94 Haw. 368, 14 P.3d 1049 (2000) ......................................................... 16

*State by Bronster v. United States Steel Corp.,*
82 Haw. 32, 919 P.2d 294 (1996) ........................................................... 18

*State Savings & Loan Association v. Corey,*
53 Haw. 132, 488 P.2d 703 (1971) ......................................................... 18

*Western Sunview Properties, LLC v. Federman,*
338 F. Supp. 2d 1106 (D. Haw. 2004) .................................... 14, 15, 16, 23,
........................................................................................ 26, 27, 32, 33

*Zanakis-Pico v. Cutter Dodge, Inc.,*
98 Haw. 309, 47 P.3d 1222 (1992) ................................... 16, 20, 33, 35

## CODES AND STATUTES

Hawaii Revised Statutes § 480-2 ............................................................ 32

Hawaii Revised Statutes § 480-13 .......................................................... 32

Hawaii Revised Statutes § 484-16 .......................................................... 36

## OTHER AUTHORITIES

Restatement (Second) of Agency § 386 ................................................... 30

Restatement (Second) of Agency § 400 ................................................... 30

Restatement (Second) of Agency § 401 ................................................... 30

Restatement (Second) of Agency § 424 ................................................... 30

Restatement (Second) of Torts § 920............................................................. 3, 17, 1

## I.     INTRODUCTION

This is a case about a secret discount scheme involving the sale of real property that Mauna Kea's own expert testified was "deliberately misleading." Plaintiffs purchased Lot 5 at The Bluffs at Mauna Kea ("The Bluffs"), a covenanted community located on the Big Island.   Defendant Mauna Kea Development Corporation was the developer, and Defendant Mauna Kea Properties, Inc. sold its properties.  Plaintiffs paid the full list price for Lot 5 after verifying the comparable sales at The Bluffs.  What Plaintiffs did not know is that at least ten other purchasers at The Bluffs received secret discounts that were kept secret by confidentiality agreements.  Plaintiffs never learned the true sales prices for the other lots because Mauna Kea lied to Plaintiffs and lied to the Hawaii taxing authorities – the official records that Plaintiffs relied upon for the comparable sales information.  Mauna Kea perfected and executed an elaborate fraudulent scheme, and Plaintiffs unknowingly fell prey to it.

Mauna Kea does not dispute that there were confidential discounts, confidentiality agreements, official records with less than accurate sales information, and inaccurate representations concerning the sales prices of the lots at The Bluffs.  Instead, Mauna Kea argues that Plaintiffs cannot prove damages, and attacks each of Plaintiffs' tort and statutory claims.  In doing so, Mauna Kea ignores this Courts previous rulings, well-settled Hawaii law, and numerous

1

disputed factual issues.  The evidence contradicts Mauna Kea's new assertions,[1] and Mauna Kea's Motion should be denied for the following four reasons:

First, as this Court already has determined, there are triable issues of fact as to Plaintiffs' damages.  Mauna Kea ignores Plaintiffs' evidence that Mauna Kea's misrepresentations led Plaintiffs to pay $400,000 more for Lot 5 than they should have.  Mauna Kea argues that Plaintiffs were not damaged because they received offers to purchase Lot 5 (months after the Hands signed the sales contract).  This argument flies in the face of the established rule that damages are measured at the time of the tort, and are not reduced by a subsequent beneficial event.  *Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 286 (1989); RESTATEMENT (SECOND) OF TORTS § 920 cmt. d & illus. 9.  Mauna Kea's position is that since its fraud was successful, and since it convinced buyers that land at The Bluffs was worth more than it was, Mauna Kea should benefit from the false inflated market that it created.  Fortunately, this is not the law.

Second, as this Court already has determined, there are triable issues of fact

---

[1] If Mauna Kea believed that summary judgment was appropriate, Mauna Kea would have timely moved for summary judgment on these issues.  As discussed above, Mauna Kea did not file a motion for summary judgment on these issues prior to March 23, 2005, the cut-off for dispositive motions.  At the scheduling conference recently held by Magistrate Judge Kobayashi, she ordered the parties only to re-file motions that had been previously filed.  Since Mauna Kea did not file a motion on this issue prior March 23, 2005, they are barred from doing (Continued…)



as to Plaintiffs' fraud and negligent misrepresentation claims. Mauna Kea's own officers and agents admit that the sales prices that Mauna Kea represented were not the prices that purchasers actually paid. Mauna Kea's co-conspirator referred to Mauna Kea's secret discount scheme as an "accounting artifice" that enabled Mauna Kea to report higher prices. Mauna Kea's Dual Agency Consent Agreement expressly states that Mauna Kea provides information about comparable properties (information Plaintiffs relied on) so that the buyer can make an educated decision as to which price to offer. Mauna Kea disputes these facts and the conclusion Plaintiffs draw from them. Thus, Mauna Kea's arguments at most establish triable issues of fact.

Third, as this Court already has determined, there are triable issues of fact as to Plaintiffs' Unfair and Deceptive Trade Practices Act claim. This Court already has ruled that Plaintiffs have standing to bring this claim. Mauna Kea ignores the evidence that its misrepresentations as to purchase prices were both unfair and deceptive – including testimony from Mauna Kea's own expert that Mauna Kea's scheme was "deliberately misleading" and testimony from Plaintiffs that they were in fact deceived.

Fourth, as this Court already has determined, there are triable issues of fact

so now. This Motion should not be considered, and Plaintiffs are entitled to their attorneys' fees and costs for having to respond to this Motion.



as to Plaintiffs' Uniform Land Sales Act claim.  Mauna Kea's argument that its conduct was permissible because it thought it was supposed to report the "full and actual consideration" as the purchase prices of the lots is not supported by the evidence.  Here, the "full and actual consideration" was the prices that purchasers actually paid, not the "prices" that Mauna Kea artificially inflated by failing to include its secret discounts.

## II.    FACTUAL BACKGROUND

### A.    Mauna Kea Falsely Represented The Prices Of Other Lots At The Bluffs, So That Later Purchasers Like Plaintiffs Would Be Induced To Pay At Least The List Price.

#### 1.    Mauna Kea Gave Certain Homeowners Secret Discounts And Underreported The Sales Prices Of At Least Ten Lots.

Mauna Kea (the developer of The Bluffs) gave secret discounts, which it called "landscaping credits," to certain purchasers at the Bluffs – even though those purchasers who received the secret discounts were not required to use the credit to pay for any landscaping.  Plaintiffs' Separate Concise Statement of Facts in Opposition to Mauna Kea's Motion for Summary Judgment Regarding Damages ("CSOF") 26.  The purpose of Mauna Kea's secret discount scheme was to enable it to report higher sales prices so that future buyers would rely on the reported prices and would pay more for the lots.  CSOF 27.

The falsely reported prices, the true prices paid, and the secret discounts are shown below:



| Buyer (Lot) | Falsely Reported Price | True Price Paid | Secret Discount |
|---|---|---|---|
| Federman (Lot 6) | $3,000,000 | $2,550,000 | $450,000 |
| Hofee (Lots 1 and 2) | $6,000,000 | $4,700,000 | $1,300,000 |
| Gifford (Lot 12) | $2,500,000 | $2,000,000 | $500,000 |
| Engels/Fogelsong (Lot 10) | $3,250,000 | $2,750,000 | $500,000 |
| Elder (Lot 9) | $3,000,000 | $2,619,000 | $381,000 |
| Robertson (Lot 11) | $3,500,000 | $3,000,000 | $500,000 |
| Reid/Bredt (Lot 14) | $1,750,000 | $1,500,000 | $250,000 |
| Gunderson (Lot 8) | $2,750,000 | $2,500,000 | $250,000 |
| Reddy (Lot 7) | $2,750,000 | $2,538,000 | $212,000 |
| Somogyi/Alcone (Lot 16) | $2,000,000 | $1,800,000 | $200,000 |

CSOF 28.

These secret discounts were <u>not</u> reflected in the purchase prices on Mauna

Kea's Price List, or in the purchase prices that Mauna Kea reported to the State

Bureau of Conveyances (the "Bureau").   CSOF 28.   Contrary to Mauna Kea
assertion that it "was not directly involved in reporting the Bureau," the amounts
reported to the Bureau were decided by Mauna Kea and given at Mauna Kea's
direction.  CSOF 9.  For example, Ms. Won of Title Guaranty Escrow testified that
Mauna Kea's principal broker, Mr. Stifler,  told her the amount to put on the
conveyance tax certificate for the Federmans' lot.   Declaration of Terrance M.
Revere ("Revere Decl."), Exhibit ("Ex.") 148 (Won Depo.) at 18:14-19:21.
Indeed, Ms. Won expressly asked Mr. Stifler is she should use the $3,000,000
figure or the $2,550,000 figure, and Mr. Stifler said to use the $3,000,000.  *Id.* at
24:15-24.

> ### 2.     Mauna Kea Admits That It Used The Secret Discount Scheme To Report Sales Prices Higher Than Actually Paid.

Mauna Kea's own officers and agents admit that the secret discounts enabled
Mauna Kea to report a higher purchase price than purchasers actually paid.  CSOF
29.  For example, William Mielcke, the former President of Mauna Kea Properties,
stated:

> Q.    Was there a requirement in the documents that the
> purchaser signed that said you got to spend X number of
> dollars on landscaping?
>
> A.    No.
>
> Q.    Then what were you crediting it against?

> A.    It really was a form of discounting the selling price to help accelerate the sales of the project.
>
> Q.    So by the use of this "landscape credit" the buyer actually would actually be paying less money than the listed price for the lot?
>
> A.    Correct.
>
> . . .
>
> Q.    When you say Mr. Stifler wanted to do this to maintain the integrity of the price, it was so you could tell the next purchaser that, hey, the selling price is the listing price, correct?
>
> A.    Correct.

Revere Decl., Ex. 125 (Mielcke Depo.) at 80:1-81:11.  Yochi Asari, the President of Mauna Kea Development, admitted that Mauna Kea used the "landscaping credits" so that the sales price would not have to be officially changed:

> Q.    Why not simply just discount the sales price by $500,000?  Why use the landscaping credit?
>
> A.    The reason was we didn't want to change the sales price.
>
> Q.    But in point of fact you were changing the amount that the buyer had to pay, correct?
>
> A.    That's correct.

Revere Decl., Ex. 23 (Asari Depo.) at 107:5-11.



3. **Mauna Kea's Own Expert Stated That Mauna Kea's Scheme Was "Deliberately Misleading."**

After reviewing Mr. Mielcke's testimony, Mauna Kea's own expert Dr. Byron S. Gangnes testified that this practice was "deliberately misleading." Revere Decl., Ex. 149 (Gangnes Depo.) at 68:17-20, 81:1-7, 81:25.

4. **A Co-Conspirator In The Scheme, Mr. Federman, Referred To His Secret Discount As An "Accounting Artifice" That Enabled Mauna Kea To Report A Higher Price.**

Irwin Federman, a former defendant in this case, who benefited from the secret discount, also admitted that he understood Mauna Kea hatched the scheme to report higher purchase prices. In a letter to the County of Hawaii's Real Property Division, Mr. Federman stated that "I purchased this property in January, 1999 for $2,550,000," not for the $3,000,000 that Mauna Kea represented. Revere Decl., Ex. 98. In a follow-up letter, this time to the County Real Tax Property Department, Mr. Federman explained that the "landscaping credit" was an "accounting artifice" that enabled Mauna Kea to report a higher purchase price:

> The listing price was $3,000,000, which we negotiated down to $2,550,000. The discount is reflected on the statement as a "Landscaping Credit" of $450,000. This credit is only an accounting artifice to enable Mauna Kea Realty to maintain the recorded sales price at the amount originally listed.

*Id.* Mr. Federman's statements are supported by the Federman sales contract,

which expressly states that the "Total Purchase Price" of the Federman's lot was $2,550,000. *Id.*, Ex. 8.

### B.    Mauna Kea Knew That The Sales Prices It Reported Were False.

Mauna Kea's officers and agents knew that the sales prices that they reported were false, as evidenced by the fact that they admitted that the prices they reported were not the prices that purchasers actually paid. CSOF 29. Moreover, the Federman sales contract lists the "total purchase price" as $2,550,000, not the $3,000,000 that Mauna Kea reported. Revere Decl., Ex. 8.

Mauna Kea concealed the secret discounts by entering into confidentiality agreements with the purchasers receiving the discounts. CSOF 32. The only matter to be kept "confidential" by these agreements was the existence of the secret discount. CSOF 32. Mauna Kea entered into the confidentiality agreements so that the discounts could not be disclosed, and so that the prices for the properties at The Bluffs would remain artificially inflated. CSOF 27. For example, Addendum 1 to the Federmans' sales contract provides that "Buyer agrees that the landscaping credit shall remain confidential and not be disclosed to any person except to Buyer's legal, tax, or accounting advisers, to tax authorities, or as otherwise required by law." Revere Decl., Ex. 9.

However, Mauna Kea knew the true sales price, and only paid real estate commissions on the actual purchase prices – not on the false reported prices.

CSOF 33.    Mauna Kea's own expert stated that Mauna Kea's practice was "<u>deliberately</u> misleading."    Revere Decl., Ex. 149 (Gangnes Depo) at 81:25 (emphasis added).

### C.    Mauna Kea Knew That Future Purchasers Would Rely On Its Falsely Reported Prices.

Mauna Kea knew – and hoped – that future purchasers would rely on the falsely reported sales prices.  Mauna Kea's own documents show that Mauna Kea provided the sales information so that potential purchasers like Plaintiffs would rely on it.  CSOF 34.  The "Dual Agency Consent Agreement" provides that "[w]e will provide information about comparable properties *so that the Buyer and the Seller may make an educated decision on which price to accept or offer*."  CSOF 34 (emphasis added).

Additionally,  the  confidentiality  agreements  evidence  Mauna  Kea's knowledge and intent.  Why else would Mauna Kea require buyers to keep their secret discounts confidential, unless Mauna Kea believed that future purchasers would rely on Mauna Kea's reported prices, and did not want these false prices contradicted by anyone?  Indeed, Mauna Kea's officers and agents testified that they wanted to be able to tell future purchasers that the list prices were correct – instead of having to show a discount.  Revere Decl., Ex. 125(Mielcke Depo.) at 81:7-11.

**D.    Plaintiffs Purchased Lot 5 For $3,250,000 In Reliance On Mauna Kea's False Representations.**

Plaintiffs purchased Lot 5 for $3,250,000 only because of the comparable sales information provided by Mauna Kea.  CSOF 16, 36.  After receiving Mauna Kea's Price List and being told at least twice that Mauna Kea's prices were "firm," the Hands' realtor checked the listed prices with the tax office records, and found that the reported sales prices of the Federmans' property was $3,000,000, as stated on Mauna Kea's "Price List," and that tax office records showed that other lots sold for the list price, or more.  CSOF 35.  The Hands' realtor conveyed this information to the Hands.  *Id.*

Thereafter, Plaintiffs paid $3,250,000 for the property, including a $50,000 deposit paid by the Hands.  CSOF 17, 22, 41.  Mr. Hands explained that "[b]ecause recorded, official documents showed that other lots at The Bluffs had sold for "list price," we thought that Mauna Kea would not accept anything less than the full asking price . . . We relied on what the Federmans and Mauna Kea reported to the Bureau of Conveyances and MLS in coming to our decision to pay the full list price for Lot #5."  CSOF 36; Revere Decl., Ex. 16.  Mr. Hands also testified that "[i]f we had known that the Federmans actually paid $2,550,000 for their lot and that other lots sold for less than their listed price," the Hands would not have offered what they did and instead "would probably have negotiated a discount

11

around the same amount that the other purchasers negotiated." CSOF 36; Revere Decl., Ex. 16.

Plaintiffs received no discount for their property, secret or otherwise. After Plaintiffs bought their property, however, Mauna Kea gave at least one other undisclosed discount to other purchasers. CSOF 37.[2]

**E.     Plaintiffs Suffered At Least $400,000 In Damages As A Result Of Relying On Mauna False Representations.**

The Hands signed the sales contract for Lot 5 on September 20, 1999, agreeing to pay the full list price of $3,250,000. CSOF 17. The sale did not close until January 24, 2000, over four months later. CSOF 39. Based on a detailed analysis of the actual sales prices of comparable properties, Plaintiffs' expert has established that Plaintiffs paid $400,000 more for their property than they should have, because of Mauna Kea's misrepresentations. CSOF 38; Revere Decl., Ex.

---

[2] Even during this litigation, Mauna Kea attempted to hide the existence of this subsequent secret discount. CSOF 37. When the Federmans moved for summary judgment, Mauna Kea submitted a declaration in support of the Federman's motion from Mauna Kea's principal broker, stating that "[b]y the time Plaintiffs were looking to purchase a lot, landscaping credits were not available." Revere Decl., Ex. 102. At the hearing on the Federmans' summary judgment motion, counsel for Plaintiffs noted that Mauna Kea continually relied on the point that the Hawaii real estate market had improved, but still failed to produce sales contracts – which Plaintiffs requested – that could provide evidence for their view. Revere Decl., Ex. 116 at 40:1-4. Magistrate Kobayashi then ordered Mauna Kea to produce the sales contracts. It was only after Mauna Kea did so that Plaintiffs discovered that landscaping credits were available even after Plaintiffs purchased their property.

115.

Mauna Kea attempts to contradict the conclusions of Plaintiffs' expert by relying on purchase offers that Plaintiffs received after escrow closed, over four months after the Hands signed the sales contract. Yet, Mauna Kea's own expert concedes that "there was a significant time between the time they signed the sales agreement and the time that the property actually closed." Revere Decl., Ex. 149 (Gangnes Depo). at 51:18-20. Mauna Kea's expert also concedes that markets can change fairly rapidly, and that three months can make a world in difference in market conditions. *Id.* at 52:1-3, 100:5-12.

Moreover, the evidence shows that any market "tightening" did not occur until well after the Hands Plaintiffs signed the sales contract. CSOF 40. Indeed, Mauna Kea's realtor and principal broker testified that the market did not really "take off" until September 2001. CSOF 40. In the nine months prior to the Hands Plaintiffs' signing of the sales contract, Mauna Kea sold only 4 lots and the purchasers of those lots were each given secret discounts of between $212,500 and $500,000. CSOF 28; Revere Decl., Ex. 137, at 6. Less than two months after the Hands Plaintiffs signed the sales contract, the buyer of Lot 16 was given a $200,000 secret discount that was 10% of the listed sales price. CSOF 37; Revere Decl., Ex. 144.

F.    **This Court Already Has Determined – On The Federman Defendants' Motion For Summary Judgment – That Triable Issues Of Fact Exist On The Very Issues That Mauna Kea Now Raises.**

This Court has already determined that factual issues exist concerning the very issues that Mauna Kea now raises. *Western Sunview Properties, LLC v. Federman*, 338 F. Supp. 2d 1106, 1119, 1120, 1124-25 (D. Haw. 2004). The Federmans – purchasers at The Bluffs and co-conspirators with Mauna Kea – unsuccessfully moved for summary judgment prior to settling with Plaintiffs. Plaintiffs' claims against the Federmans were based (in part) on the same claims Plaintiffs have made against Mauna Kea:  The Federmans reported that the sales price of their property was $3,000,000 rather than the $2,500,000 that they actually paid.  Plaintiffs brought fraud and negligent misrepresentation claims against the Federmans, as well as claims for violations of Hawaii's Unfair and Deceptive Trade Practices Act and Hawaii's Uniform Land Sales Act.

This Court denied the Federmans motion for summary judgment on the same issues that Mauna Kea raises here.  Among other things, this Court determined that (1) in reporting the sales price of their property as $3,000,0000 instead of the $2,550,000 that they actually paid, the Federman Defendants "did make a false representation that they knew to be false;" (2) "[t]here are also issues of fact as to whether or not Plaintiffs relied on the list price in making their offer, and whether Plaintiffs sustained any damages;" (3) Plaintiffs could pursue an Unfair and

Deceptive Trade Practices Act claim against the Federmans, on the theory that the Federmans were engaged in a conspiracy with Mauna Kea; and (4) Plaintiffs could also pursue a Uniform Land Sales Act claim against the Federmans, again on the theory that they were engaged in a conspiracy with Mauna Kea. *Western Sunview*, 338 F. Supp. 2d at 1119, 1120, 1124-25.

## III.    ARGUMENT

**A.    As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Fraud Claim, And Summary Judgment Is Not Appropriate.**

This Court has already determined that triable issues of fact exist concerning Plaintiffs' fraud claim. *Western Sunview*, 338 F. Supp. 2d at 1119-21. "[A] party claiming fraud must establish the following elements: '(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.'"    *Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386 (2000).    There is substantial evidence supporting each of these elements.    Since such evidence exists and Mauna Kea simply points to contradictory evidence or disputes what the evidence means, Mauna Kea's sole recourse is a jury trial.

1. **Plaintiffs Have Offered Evidence Of Substantial Pecuniary Damages – Mauna Kea Simply Disagrees With The Evidence.**

Plaintiffs have offered evidence of substantial pecuniary damages – this is all that is required under Hawaii law. "[I]n deceit actions, Hawai'i appellate courts have *only barred recovery when there is no evidence of pecuniary damages at all.*" *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 334 (1992). Here, Plaintiffs have evidence that at least ten other purchasers received secret discounts that Plaintiffs did not receive and were unable to find out about because of the confidentiality agreements. CSOF 28. Plaintiffs have also established, through expert testimony, that they were damaged in the amount of at least $400,000 as a result of Mauna Kea's representations. CSOF 38; Revere Decl., Ex. 115. These facts alone are sufficient to defeat Mauna Kea's view that it should be granted summary judgment on damages.[3]

   a. **Damages Are Measured At The Time Of The Tort, Not At Some Later Time Chosen By Mauna Kea.**

Mauna Kea's arguments concerning the subsequent purchase offers fly in the face of well-settled Hawaii law. "'[T]he aim of compensation in deceit cases is

---

[3] This Court already determined that there is an issue of fact as to whether Plaintiffs have suffered damages. *Western Sunview Properties, LLC v. Federman*, 338 F. Supp. 2d 1106, 1119 (D. Haw. 2004).

to put the plaintiff in the position he would have been had he not been defrauded.'" *Hawaii's Thousand Friends v. Anderson*, 70 Haw. 276, 286 (1989) (quoting *Ellis v. Crockett*, 51 Haw. 45, 52 (1969)). As the RESTATEMENT (SECOND) OF TORTS makes clear, "if the plaintiff is entitled to damages based upon the valuation of a property at a particular time, the damages are not reduced by a subsequent beneficial event." RESTATEMENT (SECOND) OF TORTS § 920 cmt. d. The RESTATEMENT provides the following illustration: "A fraudulently persuades B to purchase Blackacre for $3000, even though its value at that time is $2000. Had Blackacre been as represented, the value would have been $3500. The following week changes in the neighborhood cause Blackacre to appreciate in value to $5000. B's measure of recovery is not diminished by the subsequent rise in market value." RESTATEMENT (SECOND) OF TORTS § 920 illus. 9 (emphasis added). Hawaii Courts consistently follow the principle enunciated in the RESTATEMENT – rejecting the very argument now raised by Mauna Kea – and hold that damages are measured at the time the tort or breach occurred.[4]  *See e.g., Island-Gentry Joint Venture v. State*, 57 Haw. 259, 554 P.2d 761 (1976) (breach of land sales contract);

---

[4] The only case discussed by Mauna Kea, *State Savings & Loan Association v. Corey*, 53 Haw. 132, 144 (1971), does not support its argument concerning when damages should be measured. *Corey* is referred to by Mauna Kea solely to support the proposition that in cases of real estate fraud, the price of a subsequent resale may be admitted to show the value of the property. Not only is this statement in (Continued...)

*State by Bronster v. United States Steel Corp.*, 82 Haw. 32, 44, 919 P.2d 294, 306 (1996) (warranty); *Lucas v. Liggett & Myers Tobacco Co.*, 51 Haw. 346, 461 P.2d 140 (1969) (conversion); *Rohlfing v. Moses Akiona, Ltd.*, 45 Haw. 373, 369 P.2d 96 (1961) (wrongful death); *Anderson v. State*, 88 Haw. 241, 965 P.2d 783 (1998) (nuisance).[5]

In addition to ignoring Hawaii law, Mauna Kea ignores evidence that supports Plaintiffs' claims. The offers to purchase Lot 5 are irrelevant. Mauna Kea attempts to use these offers to say "no harm no foul" – arguing that since the property increased in value, Plaintiffs cannot complain. However, there was harm.

---

*Corey* dictum, it applies only to a <u>resale</u>, not an offer, and concerns the admission of evidence, and not whether evidence is conclusive.

[5] Indeed, in *Benson v. Weaver*, 793 P.2d 348 (Or. Ct. App. 1990), the court there rejected the same argument that Mauna Kea now makes, finding, in a similar situation, the harm to the plaintiffs was <u>not</u> negated by an increase in value of the property:

> Despite defendants' arguments to the contrary, any harm suffered by plaintiffs is not negated by an increase in value of the property after the purchase to the time of discovery of the unlawful partition. If plaintiffs paid more than they should have at the time of the sale because of defendants' actions, they have not realized as great a gain as they would have otherwise. The trial court erred in concluding that there could be no damages as a matter of law.

*Id.* at 349-50.

Had Mauna Kea been truthful and not made material misrepresentations, Plaintiffs' would own Lot 5 and have an additional $400,000, _and_ any subsequent increase in the property's value. Plaintiffs' experts have testified that Plaintiffs were harmed in the amount of $400,000 by Mauna Kea's misrepresentations. CSOF 38; Revere Decl., Ex. 115. Any subsequent increase in the property's value does not change what happened at the time the misrepresentations were made.[6]

Even Mauna Kea's own expert thinks that a seller should not be allowed to profit in this sort of situation:

> Q.   Assuming that a consumer was approached by their stockbroker, and the stockbroker said, Hey, I can get you — excuse me — shares of ABC Corp. are selling for $10 a share and I can get them to you for $10 a share, do you want me to buy them? And the consumer says, Sure, that's what the market is doing, I'll buy $10 a share.
>
> And in reality, shares of ABC Corp. are trading at $5 a share. The broker puts the extra $5 in his pocket. But then next week, due to whatever reason, the shares jump up to $15 a share.
>
> Who do you think should get the benefit of the full increase? The stock broker or the consumer?
>
> . . . .

---

[6] Moreover, Mauna Kea's descriptions of the offers are misleading. The offers did not occur at the time Mauna Kea committed fraud; they were made months after the fraud was completed and only after the escrow closed and Plaintiffs owned Lot 5. CSOF 17, 39.

A.     The consumer.

Revere Decl., Ex. 149 (Gangnes Depo.) at 64:24-65:20.

    **b.**    **Plaintiffs' Damages Constitute Substantial Pecuniary Loss.**

Mauna Kea's own authority establishes that plaintiffs' damages constitute substantial pecuniary loss for the purposes of Plaintiffs' fraud and negligent misrepresentation claims.  In *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309 (1992), the Supreme Court of Hawai'i stated that "[t]here is no threshold amount required in order for the pecuniary loss to be deemed 'substantial.'"  *Id.* at 320-21.  The court held that the plaintiffs' allegations that they spent <u>three to five dollars</u> in gas money in reliance on defendant's misleading advertisement, which induced them to visit defendants' store, was sufficient to meet the pecuniary loss requirement of both fraud and negligent misrepresentation.  *Id.* at 321-22.  Here, Plaintiffs suffered damages of $400,000 and the Hands themselves paid a $50,000 deposit for which they were not reimbursed.  CSOF 38,41.  Plaintiffs here therefore meet the pecuniary loss test.

    **c.**    **Plaintiffs' Damages Are Not Speculative.**

Mauna Kea also incorrectly argues that Plaintiffs' damages are speculative because Plaintiffs cannot prove the amount of the discount Mauna Kea would have provided Plaintiffs.  Mauna Kea confuses the well-established principle that the

*existence*, rather than the amount, of damages must not be speculative. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265-66 (1946) ("The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done.  Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights.") (internal quotation marks and citation omitted).  There is ample evidence to support the existence of Plaintiffs' damages. *See, e.g.*, CSOF 36, 38, 41; Revere Decl. Exs. 16, 115, 137. Mr. Hands testified that had he discovered the fraud in the midst of the transaction, he either would have walked away from the deal because Mauna Kea was crooked, or he would have demanded a discount similar to those discounts that others received.  Revere Decl., Ex. 129 (Guy Hands Depo.), at 171:22-172:19.  Mauna Kea argues this testimony shows the existence of uncertainties.  On the contrary, the only thing this testimony proves is that Plaintiffs were harmed by the fraud because they would <u>not</u> have paid $3,250,000 for Lot 5 had the truth not been concealed from them by Mauna Kea.[7]

---

[7] Moreover, Mauna Kea's arguments regarding potential uncertainties as to exactly what would have happened violates the well-established rule that wrongdoers must bear the risk of any uncertainties that they themselves created. *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946) ("The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.  That principle is an ancient one . . . .") (citation omitted).

Furthermore, the amount of Plaintiffs damages is <u>not</u> speculative. "[T]he law exacts only the kind of proof of which the nature of the case is susceptible." *Jendrusch v. Abbott*, 39 Haw. 506, 509 (1952). The amount of damages must only be proven to a reasonable certainty. *Lum Ah Lee v. Ah Soong*, 16 Haw. 163 (1904). Here, Plaintiffs' expert, Mr. Stellmacher, has prepared a detailed, 20-page report in which he concludes that Plaintiffs were damaged in the amount of $400,000, based upon the proof that is available – the true sales prices for other lots in the neighborhood. CSOF 38; Revere Decl., Ex. 115.

Mauna Kea cannot meet its burden by ignoring Plaintiffs' evidence, then relying on the self-serving testimony of Mauna Kea's own agents that Mauna Kea would not have given Plaintiffs a discount. Despite what Mauna Kea says now, it is undisputed that another purchaser was given a $212,000 unreported discount a month before the Hands made their offer, and yet another purchaser was given a $200,000 undisclosed discount less than two months <u>after</u> the Hands made their offer. CSOF 10, 13, 28, 37. These facts contradict Mauna Kea's story.

Mauna Kea has not met its burden of proving there are no triable issues of fact concerning Plaintiffs' damages. The jury must be allowed to decide who it believes.

    **2.**    **There Is Substantial Evidence To Prove That Mauna Kea Made False Representations To Plaintiffs That Mauna Kea Knew Were False.**

On the Federmans' motion for summary judgment, this Court ruled that the Federmans, who acted in concert with Mauna Kea, made false representations that they knew were false. *Western Sunview*, 338 F. Supp. 2d at 1119. Mauna Kea now cites to remarks made by the Court during the hearing, rather than to the Court's published decision. *See* Mauna Kea's Motion for Summary Judgment on Damages, at 18 n.6. However, in its published decision denying the Federman's Motion for Summary Judgment on fraud, this Court held that in representing that the price of their lot was $3,000,000 rather than the $2,550,000 they actually paid, the Federmans "did make a false representation that they knew to be false." *Western Sunview*, 338 F. Supp. 2d at 1119. Here, Mauna Kea made the same false representation as the Federmans: that the sales price of the Federman's lot was $3,000,000. Indeed, Mauna Kea is even more guilty because it falsely represented the sales prices of at least <u>ten</u> other lots. CSOF 28.

    **a.**    **Mauna Kea Reported False Purchase Prices To Hawaii Taxing Authorities.**

Mauna Kea's officers and agents admitted that the sales prices that it knowingly reported were higher than the prices that purchasers actually paid. CSOF 29. Now, Mauna Kea seeks to escape liability by arguing that it "was not <u>directly</u> involved in reporting to the Bureau." However, the evidence establishes

that all reports to the Bureau were made at Mauna Kea's direction, using the prices that Mauna Kea said to report. CSOF 9; Revere Decl., Ex. 148 (Won Depo.) at 18:14-19:21, 24:14-15. Mauna Kea's argument that it did not "directly" report purchase prices is further contradicted by Mauna Kea's assertion that it reported the prices that it did because it thought it was required to report the "full and actual consideration" of the selling prices of the lots. Mauna Kea's Motion, at 35.

### b.  Mauna Kea Falsely Represented That Its Prices Were Firm.

In addition to giving secret discounts, entering into confidentiality agreements to keep those discounts secret, and reporting false purchase prices to the Bureau, Mauna Kea also provided the Hands' real estate agent with a Price List and represented, at least twice, that "our prices are firm . . . ." CSOF 35; Revere Decl., Ex. 15. Now, Mauna Kea apparently would have the Court believe that it intended to represent to Plaintiffs that only its price for *Plaintiffs' lot* was firm. This was not the representation made by Mauna Kea – Mauna Kea did not state that its price was firm, it instead used the plural "prices" thereby implying that the prices for all the lots were firm. As evidenced by the fact that Mauna Kea gave discounts to the Federmans and other purchasers, this simply was not the case. CSOF 28. Mauna Kea gave a $200,000 discount to another purchaser after Plaintiffs purchased their property, further establishing that it prices were not firm.

CSOF 37.

         **c.**    **The Court Should Reject Mauna Kea's "Everyone Else Does It" Argument As Lacking In Both Factual And Legal Support.**

Mauna Kea also seeks to escape liability for its fraud by arguing that "credits similar to this are commonplace." This argument is contradicted by the testimony of Mauna Kea's agents (that the credit was given to maintain the sales prices and not for "landscaping"); Plaintiffs' expert ("the credits were not for the purpose indicated"); and even Mauna Kea's own expert (that Mauna Kea's conduct was deliberately misleading). CSOF 26; Revere Decl., Exs. 100 at 3, 149 (Gangnes Depo) at 81:25.

Moreover, Plaintiffs' claims also are not based on the "credits" themselves, but on Mauna Kea's use of the "credits" to make future purchasers think that other purchasers paid significantly more for their lots than they actually did. Even assuming that "credits" are commonplace, Mauna Kea fails to identify any evidence that it also is commonplace to conceal such "credits" with confidentiality agreements, and to falsely represent purchase prices, so that future purchasers will be induced to pay more. Even if Mauna Kea had submitted such evidence, it would be irrelevant – just because others may have committed fraud, too, does not

mean that Mauna Kea can escape liability for its fraud.[8]

### 3. The Evidence Establishes That Mauna Kea Made Its False Representations In Contemplation Of Future Purchasers' Reliance On Them.

Mauna Kea's own documents show that it made the representations concerning the sales prices in contemplation of future purchasers' reliance on them. Mauna Kea's "Dual Agency Consent Agreement" provides that "[w]e will provide information about comparable properties so that the Buyer and the Seller may make an educated decision on which price to accept or offer." CSOF 34. These documents show that Mauna provided information about the prices of comparables properties so that buyers could rely on that information.[9] Mauna Kea's confidentiality agreements – in which it requires purchasers to keep the

---

[8] This Court should reject Mauna Kea's argument that $3,000,000 was the purchase price of the Federmans' lot because that was the price that was stated in the contract. The Federmans' sales contract states that the "total purchase price" is $2,550,000. Revere Decl., Ex. 8. Furthermore, the "purchase price" is the price that the Federmans' actually paid, which again was $2,550,000 and not the $3,000,000 that Mauna Kea reported. *Id.*, Exs. 8, 98.

[9] This Court already has determined, that with respect to Plaintiffs' fraud and negligent misrepresentation claims, a defendant need not have had a particular person in mind as the intended, or even probable, recipient of the information. *Western Sunview*, 338 F. Supp. 2d at 1120. "Instead, it is sufficient 'that the maker of the representation intends it to reach and influence either a particular person or persons, known to him [or her], *or a group or class of persons*, distinct from the much larger class who might be reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it.'" *Id.* (quoting *Kohala Agr. v. Deloitte & Touche*, 86 Haw. 301, 330 (1997)).

secret discounts secret – also show that Mauna Kea contemplated that future purchasers would rely on its representations about the sales prices of other lots. CSOF 32. Why would Mauna Kea want its secret discounts to remain a secret if it did not contemplate that future purchasers would rely on its representations?

> ### 4. The Evidence Proves That Plaintiffs Relied On Mauna Kea's False Representations As To The Purchase Prices Of Other Lots.

This Court already has ruled that there is an issue of fact as to whether Plaintiffs relied upon representations that the Federmans made about the purchase of their lot. *Western Sunview*, 338 F. Supp. 2d at 1120. Since Mauna Kea made the same representation as the Federmans – and made numerous additional false representations about the sales prices of other lots – this Court should make the same ruling as to Mauna Kea.

The evidence shows that upon receiving Mauna Kea's Price List and being told that and being told at least twice that Mauna Kea's prices were "firm," the Hands' realtor checked the listed prices with the tax office records of recorded sales, and found that the reported sales prices of the Federmans' property was $3,000,000, as stated on Mauna Kea's "Price List," and that tax office records showed that other lots sold for the list price, or more. CSOF 35. Mauna Kea's realtor then gave this information to the Hands. *Id.* Mr. Hands testified that Plaintiffs relied on the prices that Mauna Kea reported, and that "[i]f we had



known that the Federmans actually paid $2,550,000 for their lot and that other lots sold for less than their listed price," the Hands would not have offered what they did and instead "would probably have negotiated a discount around the same amount that the other purchasers negotiated." CSOF 36; Revere Decl. Ex. 16. Thus, the Court should reject Mauna Kea's argument that there is no issue of material fact as to Plaintiffs' reliance.[10]

Moreover, Plaintiffs' reliance on Mauna Kea's misrepresentations was reasonable.[11]    Mauna Kea suggests that it was not reasonable, yet fails to demonstrate that there are no triable issues of fact on this point.    Indeed, in *Matsuura* – the case relied upon by Mauna Kea – the court noted that the Hawaii Supreme Court has stated that:

> Where it appears that one party has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other party has been misled, or influenced in his action, he cannot escape the legal

---

[10] Mauna Kea argues that Plaintiffs had a "history" of offering full price for properties.  Mauna Kea would have this Court believe that even if Plaintiffs knew that nearly every other purchaser received a significant discount and that none of these purchasers paid full price, Plaintiffs still would have offered to pay full price themselves.  This not only defies common sense; it is also contradicted by the evidence.  Revere Decl., Ex. 129 (Guy Hands Depo.) at 172:20-173:5.

[11] In *Matsuura v. E. I. Du Pont Nemours & Co.*, 102 Haw. 149, 163 (2003), the court concluded that the "reasonable reliance" requirement did not apply to all types of fraud.  *Matsuura*, 102 Haw. at 163; *see also id.* at 164 ("Based upon the limited record in the present case, we are reluctant to establish a broad holding foreclosing future, potentially meritorious claims.").



> consequences of his fraudulent conduct by saying that the
> fraud might have been discovered had the party whom he
> deceived exercised reasonable diligence and care.

*Matsuura.* 102 Haw. at 63 (quoting *Kang v. Harrington,* 59 Haw. 652, 659 (1978).

The *Matsuura* court expressly stated that, as a general rule, "the question of

whether one has acted reasonably under the circumstances is for the trier of fact to

determine." *Id.* at 163. Plaintiffs here have sufficient evidence to go to the jury.

Even Mauna Kea's own expert has testified that it is unclear what else Plaintiffs

could have done in attempting to determine the true prices of other lots. Revere

Decl., Ex. 149 (Ganges Depo.) at 67:14-25. Purchasers should be entitled to rely

on a seller's representations, especially where, as here, the purchasers performed

due diligence. The evidence is at least sufficient to create a triable issue of fact.[12]

---

[12] In arguing that Plaintiffs should have known that the prices on the "Price List" were false because Plaintiffs were given a "Buyer Registration Form" stating that that commissions were payable on net sales price, excluding any discounts, Mauna Kea ignores that the Hands' realtors checked the prices on the "Price List" with official tax records. Since it is reasonable to assume that Mauna Kea would not lie to taxing authorities, Plaintiffs reliance was reasonable.

Mauna Kea also argues that Plaintiffs should have known about the secret discounts, because another realtor that worked in the Hands' realtor's office was the realtor for a previous purchaser, the Giffords, who received a discount. However, neither the Hands nor their realtor, Debbie Au, ever had access to any file showing that this secret discount was given, and any such files were not even located the Hands' realtors' office. CSOF 6. Furthermore, even assuming that Ms. Au had knowledge of this discount, Ms. Au's company could not violate the confidentiality agreement in the Giffords' agreement, because doing so may have rendered it liable either to the Giffords or to Mauna Kea for breaching the confidentiality agreement. *See, e.g.,* RESTATEMENT (SECOND) OF AGENCY §§ 386 (Continued...)



**B.     As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Negligent Misrepresentation Claim, And Summary Judgment Is Not Appropriate.**

In ruling on the Federmans' summary judgment motion, this Court determined that triable issues of fact exist as to Plaintiffs' negligent misrepresentation claim.  *Western Sunview*, 338 F. Supp. 2d at 1121-22.  The elements of negligent misrepresentation are:  (1) false information was as a result of the failure to exercise reasonable care or competence in communicating the information;  (2) the person for whose benefit the information was supplied suffered the loss; and (3) the recipient relied upon the misrepresentation.  *Blair v. Ing*, 95 Haw. 247 (2001).  Again, Mauna Kea's conduct meets this test.

With one exception, Mauna Kea's arguments on negligent misrepresentation are the same as their arguments on fraud.  Thus, the Court should reject Mauna Kea's motion for summary judgment as to Plaintiffs' negligent misrepresentation claim, for the reasons discussed in the previous section.

Mauna Kea's only argument specifically tailored to Plaintiffs' negligent misrepresentation claim – that Mauna Kea did not communicate selling prices "for the guidance of others in their business transactions" – is contradicted by Mauna

cmt. f, 400, 401, 424.  Indeed, as the entity that required purchasers to sign confidentiality agreements in which the purchasers agreed to keep the secret discounts secret, Mauna Kea cannot reasonably complain if a purchasers' realtors does not disclose those secret discounts to subsequent purchasers.



Kea's own documents.  Again, Mauna Kea's "Dual Agency Consent Agreement"
provides that "[w]e will provide information about comparable properties so that
the Buyer and the Seller may make an educated decision on which price to accept
or offer."  CSOF 34.  Thus, Mauna Kea own documents establish that this element
is met.  The Court should accordingly reject Mauna Kea's motion for summary
judgment as to Plaintiffs' negligent misrepresentation claim.

### C.    As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Unfair And Deceptive Trade Practices Claim, And Summary Judgment Is Not Appropriate.

This Court denied the Federmans motion for summary judgment as to
Plaintiffs unfair and deceptive trade practice claim, ruling that there was sufficient
evidence that the Federmans were engaged in a conspiracy with Mauna Kea.
*Western Sunview*, 338 F. Supp. 2d at 1124.  Hawaii's Unfair and Deceptive Trade
Practice Act is "is a remedial statute, which is to be construed liberally in order to
accomplish the purpose for which [it was] enacted."  *Cieri v. Leticia Query Realty,
Inc.*, 80 Haw. 54, 68 (1995) (internal quotation marks and citation omitted).
Hawaii Revised Statutes § 480-2 provides that "[u]nfair methods of competition
and unfair or deceptive acts or practices in the conduct of any trade or commerce
are unlawful."  Haw. Rev. Stats. § 480-2.   Section 480-13(b) then provides that
"[a]ny consumer who is injured by any unfair or deceptive act or practice
forbidden or declared unlawful by section 480-2 . . . may sue for damages."  *Id.*



§ 480-13(b).  Since Plaintiffs were injured by Mauna Kea's deceptive practice of giving secret discounts to certain purchasers and then not disclosing these secrets in their reported sales prices, the Court should allow Plaintiffs' Unfair and Deceptive Trade Practices Act claim to proceed.  *Cieri*, 80 Haw. at 59-69 (allowing purchasers of real estate to maintain Unfair and Deceptive Trade Practices Claim against vendor and broker based on failure to disclose plumbing problem).[13]

### 1.    Plaintiffs Suffered Damages As A Result Of Mauna Kea's Unfair And Deceptive Trade Practices.

Section 480-13(b)(1) expressly provides that any consumer injured by an unfair or deceptive trade practice or act "[m]ay sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, <u>the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater</u>, and reasonable attorney's fees together with the costs of suit."  Haw. Rev. Stats. § 480-13(b)(1).  Thus, the statute clearly allows Plaintiffs to proceed, even if they have suffered less than $333.34 in damages.  *See Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 315-19 (1992) (spending three to

---

[13] Mauna Kea does not contest that it is engaged in "any trade or practice," which is the only element that this Court suggested might not be met in ruling on the Federmans' motion.  *See Western Sunview*, 338 F.Supp.2d at 1124 ("MKP and MKDC could still be held liable as they were arguably involved in trade or commerce.")

five dollars in gas money in reliance on defendants' deceptive representations is sufficient to bring claim). Here, Plaintiffs have evidence that they paid $400,000 more for their property than they should have, because of Mauna Kea's false representations. CSOF 38 & Revere Decl. Ex. 115. As such, Plaintiffs have sufficient evidence of damages.

2.    **This Court Already Has Determined That Plaintiffs Have Standing.**

This Court already has determined that both Western Sunview and the Hands have standing to bring an Unfair and Deceptive Trade Practices Claim:

> First, the court finds that Plaintiff [*Western Sunview*] does qualify as a 'consumer' under the statute. Specifically, HRS § 480-1 defines a consumer as 'a natural person who, primarily for personal, family, or household purposes, purchases ... goods or services or who commits money, property, or services in a personal investment'. HRS § 480-1. HRS § 480-1 defines a "person" as including a corporation. *Robert's Hawaii School Bus., Inc. v. Laupahoehoe Transportation Company, Inc.*, 91 Hawai'i 224, 248, 982 P.2d 853 (1999). Moreover, the purchase of real estate qualifies as a personal investment. *Cieri v. Leticia Query Realty, Inc.*, 80 Hawai'i 54, 67, 905 P.2d 29 (1995). Accordingly, regardless of whether Plaintiff [Western Sunview] or Plaintiffs Hands purchased the property, either entity could be considered a person who committed money in a personal investment.

*Western Sunview*, 338 F. Supp. 2d at 1123-24.

Mauna Kea concedes that the purchase of real estate can give one standing

(Mauna Kea's Motion for Summary Judgment on Damages, at 30), but asserts that the Hands themselves did not actually commit money toward the purchase of the property. Mauna Kea's assertion is incorrect: The Hands paid a $50,000 deposit for the property, and for which Western Sunview has not reimbursed them. CSOF 41. Thus, the Hands have standing to bring an Unfair and Deceptive Trade Practices claim, even under Mauna Kea's interpretation of the law.

### 3. Mauna Kea Engaged In Unfair And Deceptive Practices By Falsely Representing The Sales Prices Of Other Lots.

Mauna Kea's misrepresentations as to the sales prices of other lots were both unfair and deceptive. "[A] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hawaii Community Federal Credit Union v. Keka*, 94 Haw. 213, 228 (2000) (internal quotation marks and citation omitted). An act is deceptive if it "caus[es], as a natural and probable result, a person to do that which he [or she] would not otherwise do. However, the cases indicate that actual deception need not be shown; the capacity to deceive is sufficient." *Id.* (emphasis added) (internal quotation marks and citation omitted).

In arguing that its acts were not unfair or deceptive, Mauna Kea argues that it is common to give purchasers "credits." Plaintiffs, however, do not challenge the giving of the credits itself, but rather the failure to take these "credits" into

account in making representations as to the purchase prices of other lots. By failing to take these "credits" into account, Mauna Kea represented the purchase price in away that was both unfair and deceptive. Indeed, that Mauna Kea's credits had the capacity to deceive is evidenced by the testimony of Mr. Hands, who stated that if Plaintiffs had known the price the Federmans really paid, and that other lots sold for less than the reported price, Plaintiffs would not have offered the price that they did. CSOF 36; Revere Decl., Ex. 129 (Guy Hands Depo.) at 172:20-173:5. Further evidence that Mauna Kea's conduct was both unfair and deceptive is provided by Mauna Kea's own expert, who stated that Mauna Kea's secret discount scheme was "deliberately misleading." Revere Decl., Ex. 149 (Gangnes Depo.) at 81:25.

### 4.    Mauna Kea Was Engaged In "Trade Or Commerce."

Mauna Kea does not dispute that it was engaged in "any trade or commerce" as that phrase is used in Section 480-2. Mauna Kea cannot dispute this point, because the sale of real estate by a real estate business occurs within a "business context" and therefore constitutes "any trade or commerce." *Cieri v. Leticia Query Realty, Inc.*, 80 Haw. 54, 60 (1995). Thus, this element of the statute is also met.

Therefore, Plaintiffs Unfair and Deceptive Trade Practices Act claim should be allowed to proceed.

**D.     As This Court Has Already Ruled, There Are Triable Issues Of Fact Concerning Plaintiffs' Uniform Land Sales Act Claim, And Summary Judgment Is Not Appropriate.**

This Court denied the Federmans' summary judgment motion as to Plaintiffs' Unfair Land Sales Act claim, finding that while the Federmans did not violate the Act themselves, there was sufficient evidence that they were engaged in a conspiracy with Mauna Kea, who could have violated the Act. *Western Sunview*, 338 F. Supp. 2d at 1125. Hawaii's Uniform Land Sales Act provides that "[a]ny person who in disposing of subdivided lands makes an untrue statement of a material fact . . . is liable . . . to the purchaser," unless the seller did not and should not have known of the untruth, or the purchaser knew the untruth or did not rely on it. Haw. Rev. Stats. § 484-16(a). Those who may be found liable under the Act include not only the subdivider, but also "[e]very person who directly or indirectly controls [the] subdivider . . . [and] every general partner, officer, or director of [the] subdivider." *Id.* § 484-16(c). Mauna Kea does <u>not</u> dispute that it is subject to the requirements of the Uniform Land Sales Act.

Instead, Mauna Kea incorrectly argues that it did not make any untrue statements of material fact and that Plaintiffs did not actually rely on Mauna Kea's untrue statements. As established above, there is ample evidence to support findings that Mauna Kea made untrue statements about the sales prices of other lots, and that Plaintiffs relied on those untrue statements. The Court also should

reject Mauna Kea's argument that it behaved reasonably, since it thought it was required to report the "full and actual consideration" of the selling prices of the lots. This argument is contradicted by the testimony of Mauna Kea's own officers and agents, who admitted that the prices that Mauna Kea reported were not the prices that purchasers actually paid, and that Mauna Kea did what it did not because of legal concerns, but so that it could present higher prices to later purchasers. CSOF 29-32. Furthermore, the "full and actual consideration" was the price that purchasers actually paid, not the prices artificially inflated by Mauna's failure to include the secret discounts. Mauna Kea cannot meet its burden of showing that no triable issues of fact exist as to this claim – on the contrary, like the other claims, there are triable issues of fact. Therefore, Plaintiff Unfair Land Sales Act claim also should be allowed to proceed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should reject Mauna Kea's Motion for Summary Judgment Based on Damages in its entirety.

DATED: Honolulu, Hawaii,_____ JAN 5 2006 _____.



                    TERRANCE REVERE

                    Attorney for Plaintiffs
                    WESTERN SUNVIEW PROPERTIES, LLC,
                    GUY HANDS, AND JULIA HANDS