ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 12 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

AYABE, CHONG, NISHIMOTO,
    SIA & NAKAMURA
A Limited Liability Law Partnership

SIDNEY K. AYABE            968-0
RONALD SHIGEKANE        1945-0
1001 Bishop Street, Pauahi Tower 2500
Honolulu, Hawaii 96813
Telephone: 808-537-6119
Facsimile: 808-526-3491
E-mail: Ronald.Shigekane@hawadvocate.com

Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS, | ) CIVIL NO. CV 03-00463 JMS-LEK<br>) (Contract, Injunction; Other Non-<br>) Vehicle Tort; Declaratory Judgment,<br>) Other Civil Action) |
| Plaintiffs, | ) |
| | ) DEFENDANT THE BLUFFS AT |
| vs. | ) MAUNA KEA COMMUNITY<br>) ASSOCIATION'S **REPLY** |
| IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100, | ) **MEMORANDUM** IN SUPPORT<br>) OF MOTION FOR SUMMARY<br>) JUDGMENT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |
| | ) |

2004-069/290909

**DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY
ASSOCIATION'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

## I.    INTRODUCTION

This Court previously found that the process followed by Defendant the

Bluffs at Mauna Kea Community Association's  Design Review Committee (DRC)

was reasonable and not in bad faith.  The DRC's approval of improvements

requested by Plaintiffs' neighbor, the Federmans, owners of Lot # 6, were

consistent with its prior and subsequent decisions to allow improvements such as

swimming pools, decks and steps in the Special Setback Areas.   Defendant filed

its Motion for Summary Judgment on the ground that there is no evidence that its

DRC acted in bad faith or with malice.

In an overzealous effort to keep from having Plaintiffs' claims against the

Defendant Association from being dismissed,  Plaintiffs' Memorandum and

Separate and Concise Statement of Facts present numerous misleading and outright

false statements to this Court.   Since pointing out and correcting all of the false

and misleading statements would be unduly burdensome and tedious, only a

sample is provided in Section II, below.   Defendant's Section III thereafter

addresses the essential issues for this Motion.

## II.    PLAINTIFFS' MISLEADING AND FALSE STATEMENTS

Defendant hereby presents the following four *examples* of misleading and false statements submitted by Plaintiffs to this Court:

**A.    *Therefore, palm trees are not allowed in special setback areas.***
[Plaintiff's Memo, pg. 4]

Palm trees **are allowed** in the Special Setback Area.    Although plaintiffs begin with citing the section from the Design Requirements providing that, "[s]hrubs or trees, such as palm trees, which grow to significant heights are not encouraged",  Plaintiffs boldly state that palm trees are not allowed.    Even this court has specifically recognized that palm trees are allowed:

> Thus, the Court finds the planting of the trees approved by the design committee did not violate the covenant, and that no triable issue of fact remains regarding these trees.  To the extent that Plaintiffs' first motion for clarification and reconsideration requests that this Court establish a triable issue of fact remains regarding the two or three approved trees, it is therefore DENIED IN PART.  The clarifies, however, that this ruling only applies to those trees that were included in Defendants' landscaping plans and approved by the design committee...
>
> [Reconsideration Order of 2/22/05, at p. 22]

Although Plaintiffs complain that there are "other" trees now, Plaintiffs have not submitted any evidence that such trees were not also approved by the Design Committee and that such trees are violative of the restrictions.

**B.    *Yet, the Design Committee was only supposed to approve deviations from the Design Requirements because of "some unusual factor".***
[Plaintiff's CSOF 48]

The committee has never made "some unusual factor" a requirement.    This statement of "fact" is merely an argument Plaintiffs have raised through its expert. In support of CSOF 48, Plaintiffs cite the following "evidence":

1.    **Exh. 36 (¶¶ 10, 11)**

Plaintiffs' reference to Exh. 36 is the report of their expert, David Callies, Esq., in which he opines what the law *ought* to be.  No **facts** are presented. The cited paragraphs 10 and 11 contain Mr. Callies' argument that the same government standards for granting zoning code variances *should* also apply to private community association committees.

2.    **Exh. 37 (123:11 – 124:25)**

Plaintiffs' reference to Exh. 37 is the deposition transcript of David Stringer, the committee's architect consultant.    Plaintiffs' citation is to a portion of the transcript where Plaintiffs' counsel solicited an argumentative concession from Mr. Stringer:  that  Mr. Federman's request to build a pool in his special setback area did not involve a "hardship".   However, nowhere in the record is there any evidence demonstrating that the committee ever imposed "hardship" as a requirement to obtain a variance.

3.    **Exh. 105 (54:9-11)**

Plaintiffs' Exh. 105 is the deposition transcript of Wendelin Campbell, Esq.   This reference is so far afield that it should be stricken by the court.  **First,** Wendelin Campbell has nothing to do with this case.  Ms. Campbell

was retained by Defendant as an expert to counter Mr. David Callies testimony in the State Court case, <u>Western Sunview Properties, LLC v. Leone</u>, et. al.  Civ. No. 04-1-0212, which is set for trial beginning January 30, 2005.  Ms. Campbell was not identified by Defendant as a witness in this case.

**Second,** the deposition transcript of Ms. Campbell is from a totally different lawsuit, entitled <u>Sanford R. Robertson, et al v. Mauna Kea Developments Corporation, et. al</u>.  Plaintiff Western Sunview Properties, LLC was not involved in the lawsuit.  Defendant the Association was not involved in the lawsuit.  Ms. Campbell, the deponent, is not involved in the present lawsuit.  Thus, none of the parties or witnesses in the <u>Robertson</u> case have any connection to this case.

**Third**, the cited excerpt does not support Plaintiffs' assertion – it is not even arguably close.  The question posed to Ms. Campbell, (which was not cited by Plaintiffs) was:

> Q.    Is it your opinion that the developers should amend the design requirements every time there is a variance that has general applicability?
> A.    *Variances are given – variance is a vehicle that is used in lieu of an addendum in my – excuse me, or amendment to the CC&Rs. And it's because it's particular to one piece of property and the individual unique circumstances of that property and what's happening on that property.*

**4.    Exh. 120 (¶2, pg. 2)**

Plaintiffs' Exh. 120 is to their retained expert's report dated 5/5/05.  It is purely opinion testimony, as shown by the complete statement by architect Jim Reinhardt (the cited reference is in italics):

I acknowledge that paragraph 8.8 allows the Committee to approve designs "which are not in strict compliance with the applicable Design Requirements…", but it is my opinion, based on my own experience in drafting Design Requirements, administering them and dealing with committees who review them, *that approval of deviations from the strict requirements must be based on some unusual factor*, something that could not have been envisioned by the drafters of the Design Requirements. Design requirements are, if [sic] effect, like a zoning or building code specific to the particular subdivision and they must be applied with the same respect and consistency that would be used for a statutory code. Mr. Knox acknowledges the need for and expectation of consistency.

**C.    *Stringer testified that the only homeowners at The Bluffs that were allowed to put their entire pools in the special setback area were Design Committee member Robert Gunderson his two clients, Irwin Federman and Douglas Leone (whose properties unfortunately bookend Plaintiffs' lot). Plaintiffs' CSOF 50.***

Exceedingly False. Plaintiffs know very well that the owners of Lots 1 and 2 were also allowed to build a swimming pool in their special setback area long before Plaintiffs ever purchased their lot.   Additionally, Mr. Stringer never testified that the only people allowed to have swimming pools completely in their special setback area were Gunderson (Lot # 8), Federman (Lot # 6) and Leone (Lot # 4).   Plaintiffs' citation to various excerpts are flat-out wrong.  In fact, Mr. Stringer stated:

Q.         As I look at Exhibit 2, it appears to me that you have a swimming pool or spa or two separate swimming pools, some terraces, and portions of buildings within the special setback area of Lots 1 and 2. Is that accurate?  Am I reading that map correctly?

A.         Yes.

Q.         To your knowledge, are there in fact swimming pools, terraces, and portions of buildings within the special setback areas on Lots 1 and 2?

A.          Yes.

Q.          And how do you know that?

A.          I have observed them.

> [See Plaintiff's Exh. 37, Stringer tr. at 37:24 – 38:11]

Finally, it should be noted that if only several lots have swimming pools entirely within their setback areas, it is because they were the only ones who *asked*. Plaintiffs present no evidence that anyone has ever been denied a request to place swimming pools entirely in their setback area.

**D.     The Association relies on the Hawaii Intermediate Court of Appeals' decision Village Park, but neglects to mention that the Hawaii Supreme Court has granted an application for a writ of certiorari to review that decision. Village Park Community Ass'n v. Nishimura, 2005 WL 2716544 (Haw. Oct. 21, 2005).**
[Plaintiffs' memo, pg. 20, footnote 8.]

It is Plaintiffs' who "neglect to mention" that the writ of certiorari was dismissed as "improvidently granted" by the Hawaii Supreme Court on November 14, 2005.   If *anyone* knew that, it should have been Plaintiffs' counsel Terrance Revere, *since he was the attorney* who represented the Defendant Nishimuras in the appeal and who filed the writ of certiorari.

As stated by Defendant at the outset of this brief, Plaintiffs' Memorandum and  CSOF contain numerous instances of misleading and outright false statements.  To be charitable, one could state that Plaintiffs took a little too much "literary license" in pursuing their position.  On the other hand, the Court's rules

are designed to have controversies presented on their merits – the Court should have confidence in the parties' representations to the Court.

Defendant is unable to point out *all* of the inaccuracies presented by Plaintiffs because of limitations on briefing this motion pursuant to the rules. However, Defendant asks that if the Court finds any of the arguments raised by Plaintiffs persuasive, that it carefully review the cited evidentiary source for accuracy.

## III.   ARGUMENT

### A.    THE ASSOCIATION IS NOT LIABLE FOR ANY ABANDONMENT OF SECTION 4.17

Plaintiffs argue that the court has already ruled that Defendant "abandoned" Rule 4.17, to the extent that swimming pools and related structures which did not block views were allowed.   Plaintiffs argue the 'abandonment' automatically results in liability for the Defendant Association and that all that remains is to determine whether and to what extent Plaintiffs have been damaged.   This is incorrect.

Notwithstanding this Court's ruling, liability can only be imposed upon the Committee upon a finding that the Committee's 'abandonment' was done in bad faith and with malice.   This court has already found, however, that the Committee's actions were performed in good faith and without malice.   The articulated basis for the court's ruling of abandonment is instructive.   Essentially, despite the seemingly absolute provision prohibiting all "buildings and structures"

from the special setback area, swimming pools have **always** been allowed.

Plaintiffs were unequivocally placed on notice, before buying Lot 5, that

swimming pools could be built in the special setback area, as long as they did not

block views. Further, the Committee's approvals of swimming pools and other

low "structures" in special setback areas either in whole or in part have been

consistent from the very beginning:

> The court finds that Section 4.17 was abandoned in that pools or
> terraces that did not block views were consistently permitted in the
> special setback area. The Bluffs does not present a case where a
> single property, or even a handful of properties have built in the
> setback area. Instead, all of the oceanfront lots, namely Lots 1
> through 12, including Plaintiffs' lot, have received one or more
> variances to build or make improvements in the special setback area.
> Lots 1, 2, 6, 8, 11 and 12 have received variances to build pools and
> terraces in the special setback area. Defendants' CSOF, No. 17, 39,
> 57. In fact, Plaintiffs' own architect received approval for terraces in
> the setback area of Lots 3 and 4. [Footnote 2: The court recognizes
> that because Lots 3 and 4 were built prior to the adoption of the
> CCRs, the lots were permitted to have structures built in the setback
> area. However, the fact that both lots have pools is another indication
> of the general aesthetic of the Bluffs community, and suggests that as
> a whole, building in the setback area was permitted.] Id. No. 12. The
> fact that specific types of construction were permitted in the setback
> areas appears to have been well-known as even Plaintiffs' builder and
> architect knew that several properties in the Bluffs had structures in
> the setback area. Id. Ex. 6, 96:23 – 98:25, 152:24 – 154:25.
>
> Plaintiff Guy Hands specifically requested information regarding
> whether a pool could be built in the Special Setback area from his
> realtor, Ms. Au. Ms. Au twice sent him a document entitled
> "Questions and Answers for the Bluffs" that stated that "a pool or
> other structure that does not block views can be built in the "special"
> setbacks. Id. Ex. 17, 21. Accordingly, because it appears that all of
> the Oceanfront lots have received variances to build in the setback
> area, making up over half of the total lots at the Bluffs, the court finds

that Section 4.17 has been effectively abandoned as it pertains to structures built in the setback area that do not block views…

> [Order Granting in Part and Denying in Part Defendats' Motion for Sumary judgment and Denying Plaintiffs' Counter Motion for Summary Judgment of 9/15/04 at pgs. 14-15]

There is no evidence that the Committee's 'abandonment' was performed other than in consideration of, and consistent with, the general aesthetics of the community.

> B.    PLAINTIFFS' ASSERTED 'TRIABLE ISSUES OF FACT' ARE NOT MATERIAL

Plaintiffs argue that numerous "issues of fact" exist which preclude the granting of summary judgment.    None of the alleged issues, however, are material.

Plaintiffs argue that Robert Gunderson, an attorney for Mr. Federman's company, did not recuse himself from deliberations nor disclose his "relationship" with the Federmans, which creates an issue of fact.    Although previously argued as a "conflict of interest" matter, Plaintiffs apparently have given up on the issue, recognizing that pursuant to Hawaii Revised Statutes § 414D-150, (Non-Profit Corporations) a conflict of interest arises only if a director has a direct or indirect interest in the transaction.    Instead, Plaintiffs now broadly claim that because there was a "relationship", triable issues of fact are present.    The depositions of Mr. Gunderson and Mr. Federman have been taken by Plaintiffs; yet Plaintiffs fail to

identify what set of facts or circumstances reasonably presents a question regarding whether the committee, through Mr. Gunderson, engaged in actions which could be characterized as in bad faith or with malice.

Further, having failed in its contentions regarding the Federmans' swimming pool, related improvements and the "cluster" of coconut trees, Plaintiffs contend that the Court did not address all of the trees and that the Federmans have since planted numerous additional cluster of palm trees in their special setback area. The sole support for this is Plaintiffs' CSOF 54, which states,

> "The Federmans' palm tree clusters block Plaintiffs' views. Since the Court decided the previous summary judgment motions, the Federmans have planted additional palm trees that block Plaintiffs' views."

CSOF 54, in turn, is solely supported by Plaintiff's Exhibit 152 – an affidavit by its retained expert, James Reinhardt, who states:

> 2.     There are now many more palm and other trees in the Federman Special Setback Area even though the Committee claims that it has a rule prohibiting landscaping in excess of 30 inches in the Special Setback Area.

> 3.     In my opinion the added trees clearly obstruct the view of the ocean from Lot 5 and that the recently constructed hardscape structures on Lot 6 (the pool, pool terrace and accessory structures) in the foreground of the view from Lot 5 significantly impact the view in what was supposed to be a structure free zone.

Where are the photographs? What are these, "many more palm and other trees" referred to by Mr. Reinhardt? Aside from Mr. Reinhardt's opinions, what

facts demonstrate that Plaintiff's views have been obstructed? Defendant's CSOF

22 states:

> Photographs of Plaintiffs' view over the Federmans' Lot # 6 toward
> the ocean demonstrate that there is no view obstruction. [Exhibits E-
> 1, E-2, E-3, (Declaration of David Ayer).

It is revealing to note that Plaintiff's counter statement to Defendant's CSOF is,

"Disputed. Plaintiffs' view planes are obstructed." [Exh. 152]

A simple view of the photographs provided by Defendant demonstrates that

there is no view obstruction.    [See, Defendants' CSOF 22.]

## C.    DEFENDANT IS NOT LIABLE TO PLAINTIFFS UNLESS ITS ACTIONS WERE PERFORMED IN BAD FAITH AND WITH MALICE

Plaintiffs' reliance upon the various provisions of the Restatement (Third) of

Property: Servitudes is woefully misplaced.   For example, our Hawaii Supreme

Court has firmly espoused the principle that restrictions imposed upon the use of

land is disfavored and that covenants are to be interpreted in favor of the

unrestricted use of property.   Waikiki Malia Hotel, Inc. v. Kinkai Properties

Limited Partnership, 75 Haw. 370, 382, 862 P.2d 1048 (1993). This important

principle was reaffirmed by the Hawaii Supreme Court again in Hiner v. Hoffman, 90

Haw 188, 977 P.2d 878 (1999).   Despite a restrictive covenant prohibiting dwellings

more than "two stories in height", the Supreme Court of Hawaii in Hiner reversed

the trial court's order requiring the defendants to remove the third story of their

home, which blocked Plaintiffs' view plane.   The Court applied the long-standing

rule of strict construction of restrictive covenants and struck down as unenforceable and vague the "two stories in height" prohibition, since it failed to provide a measurable height of a "story".

In this case, although "structures" are prohibited from the Special Setback Area, there is no definition of the word.   As a matter of law,  our Supreme Court may very well decide that the word "structure" must be defined further to be enforceable.   See, e.g. Turner v. England, 628 S.W.2d 213 (Ct of Appeals, Texas 1982) (concrete slab for a tennis court held not to be a "structure" prohibited by a restrictive covenant); Freedman v. Kittle, 262 A.D. 2d 909, 693 N.Y.S.2d 651 (N.Y. App. Div. 3rd, 1999) (restrictive covenant prohibiting  the erection of a building or "structure" did not apply to the installation of an underground utility line or a gravel driveway.)

Thus, the rule of law in Hawaii is that restrictive covenants are to be strictly construed against the restriction.  Remarkably, Plaintiffs continue to argue that the Restatement has replaced Hawaii law and that the "intention of the parties" (according to Plaintiff's interpretation of their "intentions") must prevail.  See Plaintiffs' Memorandum in Opposition, at pgs. 23-25.

Plaintiffs further cite the Restatement and similarly urge this court to ignore firmly established Hawaii law by arguing that judicial monitoring of a private design committee's decision requires a "fact-specific, case-by-case inquiry." Further, Plaintiffs contend that there is a "shift" of the burden of proof to the

association upon a showing of unreasonableness.    [Plaintiffs' Memorandum in Opposition, at pgs. 21-22.]    These contentions go directly against Hawaii law. The court's role is assuredly *not* to engage in a fact intensive review of the matter, nor is it to second-guess the committee's decisions, especially in matters of aesthetics.  As noted in Defendant's Memorandum in Support of Motion for Summary Judgment, our Hawaii Supreme Court has stated that a court's inquiry should be solely on whether the committee's decision on a homeowner's request was arbitrary or made in bad faith.  <u>McNamee v. Bishop Trust Company, Limited</u>, 62 Haw. 397, 402, 616 P.2d 205 (1980).    In a follow up to the <u>McNamee</u> decision, the Hawaii Intermediate Court of Appeals held that the burden of proof is upon the homeowner (when he/she is the plaintiff) to prove that the committee's decision was unreasonable and/or made in bad faith.  <u>Village Park Community Associaton v. Nishimura</u>, 108 Haw. 487, 122 P.3d 267, (Haw. App. 9/16/05), *cert dismissed* 11/14/05.

## IV.   CONCLUSION

This Court has already determined that the committee's actions were reasonable and not in bad faith.  Although already cited in Defendant's Memorandum in Support of Motion for Summary Judgment, this Court's finding is worth repeating:

> …the Court's only task is to determine whether the committee reached this decision reasonably and in good faith.  The evidence reveals that the committee carefully considered the impact of Defendants' plans on Plaintiffs' viewplane.  Indeed, the committee

required the Defendants to lower their terrace area by an additional eight feet in an effort to safeguard Plaintiffs' view. The committee sought the advice of professional architectural consultants in reaching their decisions. Moreover, the committee's decision to allow Defendants to construct their terrace and pool in the setback area is consistent with their decisions before and after to allow such improvements by other landowners in their setback areas. The Court finds that the process followed by the committee was reasonable, and that there is simply no evidence that it acted in bad faith.

[Reconsideration Order of 2/22/05, at p. 22]

For the foregoing reasons, Defendant asks that this Court grant Defendant's motion and dismiss all claims against it made by Plaintiffs.

DATED: Honolulu, Hawaii _____January 12, 2006_____.

_____
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION