MEMORANDUM

# BELT COLLINS

TO: Bettina Lum/Price Okamoto  
     William Mielcke/Mauna Kea Properties

DATE: July 11, 2001  
         01A-321

FROM: Lisa Reinke

JOB NO.: 459.01

SUBJECT: Bluffs Lot 6, Federman Residence

As requested by the Bluffs at Mauna Kea Design Committee, the following is our technical review of the Preliminary Plan package. Comments are based on *the Design and Construction Requirements for Homes* dated February 19, 1997 for the Bluffs at Mauna Kea. The Preliminary Plans consist of:

- Architectural, Civil, and Electrical plans dated June 14, 2001 (received June 19, 2001) by Hill Glazier Architects, submitted by Laber Architects.
- Landscape Plans dated June 14, 2001 (received June 19, 2001) by Todd Cole Landscape Architect and Irrigation worksheet by Hawaiian Landscapes, Inc., dated April 30, 2001.

Comments

4.1 Connection to Common Facilities

- A variance will be required for the acid-finish, sawcut concrete driveway apron connecting the Federman Residence to the common roadway, North Kewai Place.

4.4 Minimum Grading

- See item 4.17, Special Setback Area

4.10 Landscaping

- Final landscape plans and specifications must be prepared by or under the direct and responsible supervision of a Landscape Architect licensed to practice Landscape Architecture in the State of Hawaii and so certified by such Landscape Architect (Article 5.2.4).

- The location of the special setback area should be indicated on the Landscape plans.

- Several plant labels appear to be in error on the Planting Plan, Sheet L9. For example, it appears that some of the *kiawe* and coconut palm labels are switched.

BELT COLLINS HAWAII LTD. · 680 ALA MOANA BOULEVARD, FIRST FLOOR, HONOLULU, HAWAII 96813-5406 U.S.A  
TEL: 808 521-5361  FAX: 808 538-7819  EMAIL: hawaii@beltcollins.com  WEB: www.beltcollins.com

PLANNING · ENGINEERING · LANDSCAPE ARCHITECTURE · ENVIRONMENTAL CONSULTING  
HAWAII · SINGAPORE · HONG KONG · AUSTRALIA · THAILAND · MALAYSIA · PHILIPPINES · GUAM · SEATTLE · SCOTTSDALE

**EXHIBIT 34**

Memo: T. Lum / B. Mielcke
July 11, 2001
Page 2

- An excessive number of tall coconut palm clusters are proposed, which may block views from *mauka* Bluffs' lots. A total of 27 coconut palms are proposed. We recommend a reduction in the number of palms and a staggering of trunk heights to maintain ocean views from *mauka* Bluffs' lots.

- Four Monkeypod trees are proposed in the front yard, which will mature quickly. Their large size - expected maturity height ("can be kept at 50 feet") - is not appropriate to the residential scale and character of the Bluffs. They may block ocean views from the *mauka* lots. The expected tree canopy will reach 50 to 60 feet diameter, twice the size shown on the planting plan. The mature canopy would extend into North Kewai Place, creating additional maintenance work in the common area and streetscape. When mature, their root system may cause future problems with underground utilities and paving. We recommend that a different species be chosen that would not exceed the maximum roof elevation for Lot 6.

- In general, trees located in the side yards should be moved away from the property lines to prevent the tree canopies from overhanging the neighboring lots.

- As shown on the planting plan, the size, spacing, and use of plant materials is not consistent with the local plant conditions and growth patterns in the Hawaii climate. The plan graphics underestimate the spread (diameter) of the mature tree canopies. We recommend a thorough review of the plans by a Landscape Architect licensed to practice in Hawaii.

- Although not a deviation to the Design Requirements, we offer the following comment: The Royal Poincianas proposed adjacent to the swimming pool are deciduous trees and tend to drop flowers, leaves and seed pods which can create maintenance problems for pool cleaning.

- Indicate the proposed size of plant materials when planted.

- "Expected Height at Maturity" for plant materials is listed as "to about 60 feet", etc... Revised to state "will be maintained at"...

- The Irrigation Plan by Hawaiian Landscapes, Inc. (incorrectly labeled "Nightlighting Plan") is incomplete. It appears to be a coordination worksheet for use by the Landscape Architect. Total irrigation demand should be listed on the final submittal. As stated in the *Declaration of Protective Covenants, Conditions and Restrictions for the Bluffs at Mauna Kea, Article 6.4*, water use and conservation measures are required because of the arid climate and limitations on the supply of fresh water to the

Memo: T. Lum / B. Mielcke
July 11, 2001
Page 3

Bluffs. All landscaping and irrigation systems shall be designed so as to minimize water consumption. Each lot is allocated not more than 2,000 gallons per day as a year-round average water use within and outside of the residence. Usage in excess of this amount is not permitted.

- The landscape irrigation system requires a separate submeter, and the Preliminary Plans should show the location of the submeter.

- A sewer easement exits in the rear yard. South Kohala Wastewater Corp. has rights over the easement, and no planting or construction within the easement is permitted without its approval. Written permission for construction of any structures, paving, or planting of trees in the sewer easement on Lot 6 should thus be obtained directly from South Kohala Wastewater Corp.

4.11 Reflection from Water Areas.

- The swimming pool and spa surface areas total approximately 1,700 square feet. Excessive water areas are discouraged and water use is limited, as stated in 4.10. We recommend that the owner employ building, pool, and landscape water conservation strategies and consider measures such as the use of a non-reflective pool cover to reduce evaporative water loss.

4.13 Fences

- A variance would be required for a proposed (chain-link?) fence and gate located in the special setback area. We assume that this fence is proposed to meet the county requirements for a secure pool-surround. However, the fence appears to surround only the west side of the pool, terminating at the Lot 5 and Lot 7 property lines. The fence would be visible from neighboring lots and from the public shoreline trail. The Committee will need to review the acceptability of the fence design, materials, and possible alternatives (grading or landscape screening, pool wall elevations, and/or fence material selection) for creating an aesthetically pleasing pool security boundary.

4.14 Exterior Lighting.

- Exterior lighting must meet the special restrictions of the Hawaii County Code.

4.17 Special Setback Area.

Memo: T. Lum / B. Mielcke
July 11, 2001
Page 4

- A special setback area exists in the rear yard to protect shoreline views from neighboring lots. A variance will be required for structures and grading proposed within the special setback area.

The previous Design Committee approved the Architects Preliminary Plans on April 18, 2000, subject to the comments noted and requested that the Federmans submit landscape plans. In December 2000, the Committee suspended approval of structures proposed within the special setback area and requested a stakeout of these structures for Committee review. The Committee twice reviewed staking of structures proposed in the special setback area (swimming pool, terraces, and two pavilions) and met with the architect's representative, Mr. Joel Laber. As indicated in the Committee's May 23, 2001 letter to Mr. Laber, the general concepts (for the two trellis pavilions, pool, retaining walls, terrace, and walkway) shown in Mr. Laber's fax of May 17, 2001 were acceptable. The Committee requested complete landscape and irrigation plans to finalize the review and approval process.

Revisions made to satisfy the Committee's concerns included dropping the elevation of the pavilions, pool, and terraces in the special setback area so that the top of the structures (+46.5 top of trellis) would not block shoreline views from Lot 7. The Architect replaced the pavilion peaked roof form with a flat trellis or *palapa* roof. The existing grade in Federman's rear yard adjacent the pool pavilions slopes down hill from a highpoint of elevation +49.5 near Lot 5 to a low point of elevation +35-36 along Lot 7. The Federmans propose to lower the grade in the rear yard special setback area to accommodate the pool and terraces. A low rock retaining wall would be built at the grade transition. As viewed from Lot 7, the structures do not appear to block shoreline views, as the higher grades of Lot 5 and an existing stand of shoreline *kiawe* trees limit the existing views. Lot 5's finish floor elevation is at elevation +56.0. Views from Lot 5 would not be obstructed.

Based on the June 14, 2001 architectural and landscape plans, we offer the following additional comments for structures proposed in the special setback area:

- The swimming pool heater is shown in the rear yard, clearly visible from Lot 7. A two-sided wall screens the heater from view from the Federman's house, but does not screen the heater from Lot 7.

- A chain-link fence is shown in the special setback area. Refer to previous comments, item 4.13.

- A raised bar counter is proposed in the pool "bar pavilion" (no height indicated). More details are required to complete the review. However, as stated above, the

Memo: T. Lum / B. Mielcke
July 11, 2001
Page 5

    counter does not appear to block views.

- A subterranean pool equipment/storage room is shown beneath the "bar pavilion," accessed by a stairway. No exceptions noted.

- A garden wall/stair column at elevation +47.5 is the highest structure proposed in the special setback area. It does not appear to block views from neighboring lots.