367915.3

**WATANABE ING & KOMEIJI** LLP
A Limited Liability Partnership

| | |
|---|---|
| J. DOUGLAS ING | # 1538-0 |
| BRIAN A. KANG | # 6495-0 |
| EMI L. M. KAIMULOA | # 7794-0 |
| LISA S. HIRAHARA | # 8150-0 |
| CHRISTOPHER J. BENNETT | # 8214-0 |

First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawai'i 96813
Telephone No. (808) 544-8300
Facsimile No. (808) 544-8399
E-mail: cbennett@wik.com

Attorneys for Defendants
MAUNA KEA PROPERTIES, INC. and
MAUNA KEA DEVELOPMENT CORP.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; | CIVIL NO. CV03-00463 DAE (LEK)<br><br>MAUNA KEA PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORP.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY GUY AND JULIA HANDS, FILED NOVEMBER 3, 2005; DECLARATION OF BRIAN KANG; EXHIBITS UU - YY; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE |

| | |
|---|---|
| JANE DOES 1-100; DOE PARTNERSHIPS 1-100; DOE CORPORATIONS 1-100, ) ) ) ) ) Defendants. ) ) _____) | Hearing:<br>Date: __January 23, 2006__<br>Time: __9:00 a.m.__<br>Judge: __Hon. J. Michael Seabright__<br><br>Trial Date: March 14, 2006 |

## MAUNA KEA PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORP.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY GUY AND JULIA HANDS, FILED NOVEMBER 3, 2005

COME NOW Defendants MAUNA KEA PROPERTIES, INC. ("MKP") and MAUNA KEA DEVELOPMENT CORP. ("MKDC") (collectively, "Mauna Kea"), by and through their attorneys, WATANABE ING & KOMEIJI LLP, and hereby submit their reply memorandum in support of their motion for summary judgment as to all claims asserted by Guy and Julia Hands, filed herein on February 3, 2005.

### I.    ARGUMENT

Guy and Julia Hands are attempting to have it both ways. The Hands created a limited liability company, Western Sunview Properties, thereby reaping the tax and liability benefits such a company provides, yet they now argue that they also retain the right to sue as individuals in the present litigation, in spite of their status as managers of WSP. The Hands continue to maintain bogus personal claims in this case by intentionally failing to seek reimbursement for various

expenses from a company that they themselves created and control. Mauna Kea's motion dismissing the Hands as plaintiffs should be granted for the reasons stated in the motion for summary judgment and in this reply memorandum.

### A. The Hands assigned all of their rights to WSP.

Plaintiffs admit that the Hands assigned the sales contract for Lot 5 to WSP, but then disingenuously claim that they did not assign all of their rights. See Plaintiffs' Memo in Opp, at 5. Although Plaintiffs contend they did not assign "any causes of action that the Hands ... have against Mauna Kea," there is no evidence in the plain language of the assignment reserving any such rights. Indeed, the Assignment states, in pertinent part, that "Assignors do hereby sell, assign, transfer and deliver to Assignee <u>all</u> of their right, title and interest in and to the Contract." See Defendants Mauna Kea Properties, Inc. and Mauna Kea Development Corp.'s Separate Concise Statement in Support of Motion for Summary Judgment as to All Claims Asserted by Guy and Julia Hands, at Exhibit R (emphasis added). Even Ronda Kent, the attorney for WSP, testified that the Hands did not reserve any rights under the sales contract for Lot 5:

> Q. Under the language of the assignment, did the Handses personally reserve any rights under the sales contract for Lot 5?
> . . .
> A. I don't think they reserved any rights, but they remained primarily liable under the contract.

3

>. . .
>Q. Okay. Aside from being primarily responsible, as you've indicated, did the Handses reserve any rights under the assignment?
>A. I don't believe so, no.

Deposition of Ronda Kent, 29:22-30:18, attached hereto as Exhibit UU.

Instead, Plaintiffs cite <u>Zanakis-Pico v. Cutter Dodge, Inc.</u>, 98 Hawai'i 309, 47 P.3d 1222 (2002), to support the proposition that the Hands have standing to assert these claims, alleging that the plaintiffs in <u>Zanakis-Pico</u> were able to pursue an action despite not actually purchasing the vehicle. Plaintiffs also cite HRS, Chapter 480, claiming that it permits recovery "regardless of whether actual purchases have resulted." <u>See</u> Plaintiffs' Memo in Opp, at 10.

Plaintiffs fail to recognize, however, that <u>Zanakis-Pico</u> did not involve an assignment. In <u>Zanakis-Pico</u>, the purchasers sued after they attempted to buy an automobile under terms described in an advertisement that were allegedly misleading. Unlike Plaintiffs in this case, the plaintiffs in <u>Zanakis-Pico</u> did not sign a sales contract and assign that sales contract to another party. The plaintiffs in <u>Zanakis-Pico</u> presumably retained any rights they might have had. Here, all the rights the Hands might have had have been assigned to WSP. <u>Zanakis-Pico</u> is thus distinguishable and does not stand for the proposition suggested by Plaintiffs. HRS, Chapter 480 similarly does not address assignment

4

of rights and thus is irrelevant as to whether Plaintiffs indeed have an interest in this proceeding.

### B. The Hands had the right to be reimbursed for personal expenditures, but despite ample opportunity, failed to do so.

Despite the fact that on at least two prior occasions Guy Hands testified under oath that he had been reimbursed for all deposits and necessary expenses, Plaintiffs now conveniently claim that the Hands incurred out-of-pocket damages because they incurred incidental long-distance and facsimile charges associated with submitting the offer for Lot 5 and paid the $50,000 deposit to secure Lot 5. Mr. Hands' belated declaration cannot create any genuine issues of material fact to preclude summary judgment. See Burrell v. Star Nursery, Inc., 170 F.3d 951, 954 (9th Cir. 1999) (disregarding affidavit filed in opposition to summary judgment motion because it contradicted earlier deposition testimony and created "sham issues of fact").

Moreover, the Hands had ample opportunity to be reimbursed (from the company that they themselves manage) for all deposit payments and incidental expenses pursuant to the assignment, and their alleged failure to do so should not entitle them to maintain sham personal claims in this litigation. The operating agreement for WSP provides that the managers, Guy and Julia Hands, are to be

reimbursed for reasonable out-of-pocket expenses. See Deposition of Barry Crivello, 44:21-45:5, attached hereto as Exhibit VV. Indeed, the Hands have been reimbursed on prior occasions, see id., 45:13-45:15, but in this instance, the Hands **never asked to be reimbursed the $50,000 deposit for Lot 5 or for the incidental phone and facsimile charges, even though they had (and still have) a right to receive reimbursement.** See id., 52:1-3.

The Hands have thus failed to mitigate their own damages and are creating their own financial loss by intentionally choosing not to seek reimbursement for expenses incurred prior to the assignment. See Shiffer v. Board of Educ., 224 N.W.2d 255 (Mich. 1974) ("principle of mitigation is a thread permeating the entire jurisprudence"). The Hands controlled both sides of the reimbursement equation – not only did they have the right and obligation to seek reimbursement, they had the power to approve the reimbursement request as managers of WSP. According to Julia Hands, as managers of WSP, the Hands have to sign off on requests for payment "in order for people to get paid." See Deposition of Julia Hands, 129:18-20, attached hereto as Exhibit WW. The Hands actually see the full detail of each invoice for WSP before authorizing payment. See Email from Ronda Kent to Barry Crivello, attached hereto as Exhibit XX. Although others actually wrote the checks, they did not do so without the prior

approval of the Hands. See Email from Barry Crivello to Paul Huddlestone, attached hereto as Exhibit YY. The Hands should not be allowed to maintain this sham assertion of standing to sue as individuals by simply choosing not to reimburse themselves for certain expenses.

### C. The merger doctrine precludes the fraud claim.

Under the merger doctrine, a sales contract is merely executory in nature, and once the deed is executed and delivered/accepted, the sales contract "merges" with the deed, making the deed the controlling document and preventing recovery on the sales contract. See Richardson v. Hardin, 5 P.3d 793, 798 (Wyo. 2000); Simpson v. Johnson, 597 P.2d 600, 604 n.1 (Idaho 1979). Plaintiffs attempt to evade the merger doctrine with a rehash of their Zanakis-Pico argument, but the argument fails for the same reason as above – Zanakis-Pico did not involve an assignment. Here, any rights that the Hands would have under the sales contract or the deed have been assigned to WSP. If there is a cause of action for negligent misrepresentation or Unfair and Deceptive Practices, which Mauna Kea in no way concedes, then it is WSP that is entitled to pursue any available recovery and not the Hands.

Plaintiffs further claim that Mauna Kea has conceded that the merger doctrine does not apply to fraud, but what Mauna Kea has stated is that the merger

doctrine does not apply to preclude a fraud claim <u>only if</u> Plaintiffs can establish, by clear and convincing evidence, all elements of fraud. <u>See</u> <u>Robinson v. Tripco Inv., Inc.</u>, 21 P.3d 219, 222-23 (Utah Ct. App. 2000). In this case, Plaintiffs cannot do so because, among other things, they cannot prove substantial pecuniary damages.

### 1. **Under a benefit-of-the-bargain or out-of-pocket analysis, Plaintiffs cannot prove substantial pecuniary damages.**

There are generally two basic measures of damages for fraud claims: benefit-of-the-bargain and out-of-pocket losses. <u>See</u> 37 Am. Jur. 2d <u>Fraud and Deceit</u> § 384 (2004). Hawaiʻi courts have not definitively adopted or rejected either measure, instead choosing a more flexible case-by-case approach. <u>See</u> <u>State Sav. & Loan Association v. Corey</u>, 53 Haw. 132, 144, 488 P.2d 703, 711 (1971) ("Some jurisdictions have taken the view that no strict rule should be adopted and have held that either the 'benefit of the bargain' or the 'out of pocket' rule should be applied depending on the rule most applicable to the case at hand. In such situations a flexible rule is used which would apply a different theory depending on the equities and proof available in each case. We are of the opinion that this court should not bind itself to any one rule at this time."); <u>Ellis v. Crockett</u>, 51 Haw. 45, 53, 451 P.2d 814, 820 (1969) (declining to decide whether out-of-pocket

8

or benefit-of-the-bargain damages were more appropriate).

The measure of damages in Hawai'i for fraud claims has been generally described as follows:

> In order to have a claim based on deceit, the <u>plaintiff must have suffered substantial actual damage, not nominal or speculative</u>. The courts have often expressed this requirement in terms of pecuniary damage, as does the Restatement of Torts § 519 (1938). The aim of compensation in deceit cases is to put the plaintiff in the position he would have been had be not been defrauded. There may be no recovery for mental anguish and humiliation not intentionally inflicted.
> <u>Pecuniary damages, being narrow in scope, are those damages (either general or special) which can be accurately calculated in monetary terms</u> such as loss of wages and cost of medical expenses. In fraud or deceit cases, <u>the measure of pecuniary damages is usually confined to either the 'out-of-pocket' loss or the 'benefit of the bargain'</u> (difference between the actual value at the time property is sold and the value it would have had if the representations had been true).

Ellis, 51 Haw. 53, 451 P.2d at 820 (citations omitted) (emphases added). Accordingly, what has been definitively established is that Plaintiffs must prove substantial pecuniary damages, that are not speculative in nature, and that recovery is either out-of-pocket <u>or</u> benefit-of-the bargain damages -- not both.

Regardless of which measure of damages is applied in this case, Plaintiffs cannot prove substantial pecuniary damages beyond the realm of

9

speculation. Under benefit-of-the bargain damages, the Hands would have to show that there is a difference, in their favor, between the value of Lot 5 and the price actually paid for Lot 5. Mauna Kea has presented evidence, and Plaintiffs have <u>not</u> controverted the fact, that the value of Lot 5 around the time of the purchase was at least $3,250,000, if not more. There were several other interested purchasers, at least one of whom submitted an offer for Lot 5 and was willing to submit full asking price of $3,250,000 for Lot 5. <u>See</u> Mauna Kea's Separate Concise Statement in Support of Motion for Summary Judgment Based on Plaintiffs' Failure to Prove Damages, at Exhibit 4 (50:17-52:7), filed on November 3, 2005.

The substantial increase in value of Lot 5 also proves that the fair market value of Lot 5 was at least $3,250,000 at the time of purchase, if not more. Hawai'i courts have specifically held that where the buyer is allegedly defrauded as to value of property at the time of sale, "the price of subsequent resale is admitted to show the actual value of the property when fraudulently sold," <u>State Sav. & Loan Association</u>, 53 Haw. at 144, 488 P.2d at 710. Accordingly, the $4,500,000 offer three days after the purchase and the $6,500,000 offer two months after the purchase are relevant to prove that the value of Lot 5 was at least $3,250,000, if not more. Despite these subsequent higher offers, Plaintiffs claim

that they paid $400,000 more for the lot than they should have, see Plaintiffs' Memo in Opp, at 15, and that the value of Lot 5 was further decreased another $700,000 due to the actions of the design committee.  See Plaintiffs' Memo in Opp, at 15.  Plaintiffs' purely speculative and illogical claims fail in light of the clear and convincing evidence of subsequent higher offers for Lot 5.

In Island-Gentry Joint Venture v. State Board of Land and Natural Resources, 57 Haw. 259, 554 P.2d 761 (1976), involving the measure of damages for a breach of land sales contract and a similar benefit-of-the-bargain standard, the court stated,

> [S]hould the contract price of the land exceed the market value of the land on the date of the breach, the vendor is entitled to the difference as damages.  However, should the market value of the land on the date of breach be greater than the contract price, the vendor is entitled only to nominal damages.

(Emphasis added.)  As Zanakis-Pico and Ellis confirm, however, nominal damages do not constitute "substantial pecuniary damages" sufficient to sustain a fraud claim.  Plaintiffs fail in their burden of showing any genuine issue of material fact to the contrary.

Based on the benefit-of-the bargain measure of damages then, the Hands cannot prove any damages because, at a minimum, there would be a zero

11

balance ($3,250,000 (price paid by WSP) - $3,250,000 (value) = 0).[1] Additionally, taking into account the subsequent substantial offers for Lot 5, it is evident that the value of Lot 5 was more than $3,250,000. Consequently, under a benefit-of-the-bargain analysis, the Hands cannot prove substantial pecuniary damages.

Similarly, the Hands cannot prove substantial pecuniary damages under the out-of-pocket rule. As discussed previously, Plaintiffs now conveniently claim that the Hands incurred out-of-pocket damages because they incurred incidental long-distance and facsimile charges associated with submitting the offer for Lot 5 and paid the $50,000 deposit to secure Lot 5. However, the Hands had ample opportunity, as was their right, to be reimbursed for all deposits and expenses pursuant to the assignment, and their alleged failure to do so should not allow them to now claim substantial pecuniary damages under the out-of-pocket rule.

Because Plaintiffs cannot meet their burden to demonstrate any genuine issues of material fact with respect to substantial pecuniary damages under either a benefit-of-the-bargain or out-of-pocket analysis, they cannot establish all elements of a fraud claim as a matter of law. Consequently, the

---

[1] Of course, that figure utilizes the amount paid by WSP, not the Hands. The Hands only paid the $50,000 deposit, and as with all other expenses, they were entitled to receive reimbursement for that deposit from WSP.

merger doctrine applies to preclude the fraud claim asserted by the Hands.

### 2. The collateral source rule does not apply to the reimbursement of expenses incurred by the Hands for the purchase of Lot 5.

Plaintiffs cite Sato v. Tawata, 79 Hawai'i 14, 897 P.2d 941 (1995), and the collateral source rule, arguing that any reimbursement the Hands should have received from WSP for personal expenditures associated with the purchase of Lot 5 should not be relevant to whether they have suffered damages. See Plaintiffs' Memo in Opp, at 11 n.4. "Under the collateral source rule, 'a tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor[.]'" Sam Teague, Ltd. v. Hawai'i Civil Rights Comm'n, 89 Hawai'i 269, 281, 971 P.2d 1104, 1116 (1999).

The collateral source rule, however, only applies to certain types of benefits, such as (1) insurance policies, (2) employment benefits, (3) gratuities, and (4) social legislation benefits (i.e., social security benefits, welfare payments, pensions under special retirement acts). See Bynum v. Magno, 106 Hawai'i 81, 88, 101 P.3d 1149, 1156 (2004); Restatement (Second) of Torts § 920A cmt. c. Hawai'i courts, in fact, have been careful about not creating a "new category of damages" to which the collateral source rule would apply. See Bynum, 106

13

Hawai'i at 89 n.15, 101 P.3d at 1157 n.15.

Plaintiffs have not cited any authority applying the collateral source rule to the reimbursement of expenses associated with the assignment of a sales contract for the purchase of real estate or the out-of-pocket analysis for pecuniary damages, particularly where (as here), the assignee has the <u>right</u> to receive reimbursement. The collateral source rule is simply inapplicable to the Hands' expenditures associated with the purchase of Lot 5.

### D.     <u>The merger doctrine precludes all claims.</u>

Plaintiffs fail to adequately address the fact that even if the merger doctrine does not preclude the fraud claim, it precludes all other claims asserted, including the negligent misrepresentation and HRS, Chapter 480 claims. Plaintiffs try to get around well-settled law by claiming that the merger doctrine is a contract principle inapplicable to torts. <u>See</u> Plaintiffs Memo In Opp, at 13. The cases cited by Plaintiffs, however, are distinguishable and do not stand for the proposition asserted by Plaintiffs.

As an initial matter, common sense dictates that the merger doctrine is indeed applicable to tort claims. Were the merger doctrine inapplicable to torts across the board, there would be no need for a fraud exception to the merger doctrine, which Plaintiffs have already admitted exists. <u>See Robinson</u>, 21 P.3d at

14

222-23. Indeed, jurisdictions that recognize the merger doctrine have applied the merger doctrine to tort claims, noting that such application preserves the integrity of the final conveyance document and encourages diligence of the parties. See id. (holding that the merger doctrine could apply to preclude a negligent misrepresentation claim).

The foregoing aside, the cases cited by Plaintiffs do not hold that the merger doctrine is inapplicable to torts. Keller v. A.O. Smith Harvestore Products, Inc., 819 P.2d 69 (1991), does not address the merger doctrine, which is applicable in real estate transactions involving a sales contract and resulting deed. Instead, Keller involves an integration clause contained in an agreement for the purchase of agricultural feed and storage systems manufactured by the defendant. See id. at 70. The merger doctrine is wholly inapposite and based on different principles than those underlying an integration clause. See id.

Martens Chevrolet, Inc. v. Seney, 292 Md. 328, 439 A.2d 534 (1982), is similarly distinguishable and inapplicable. Unlike Plaintiffs claim, Martens does not hold the merger doctrine inapplicable to torts, and in fact, does not address the merger doctrine at all. Instead, Martens involves a general integration clause in the contract of sale of an automobile dealership. See id. at 539. As noted above, the merger doctrine is wholly inapposite and based on different

15

principles than those underlying an integration clause, and therefore is inapplicable to this case. Hawai'i has not evidenced any intent to abandon the merger doctrine, and, in fact, still consistently applies the merger doctrine. See S. Utsunomiya Enters., Inc. v. Moomuku Country Club, 76 Hawai'i 396, 399, 879 P.2d 501, 504 (1994).

Based on the foregoing, the merger doctrine applies to preclude all claims asserted by the Hands. Although the Hands originally signed the sales contract, such was an executory contract. Once the deed was signed, all rights previously existing under the sales contract were extinguished and the deed became the controlling document. The deed does not list the Hands, individually, as purchasers, but lists WSP as the sole grantee and is signed by the Hands only as "managers" for WSP. As non-parties to the deed conveying Lot 5, the Hands were never record owners of Lot 5 and have no assertable interests. All claims asserted by the Hands must therefore be dismissed based on the merger doctrine.

## II. CONCLUSION

For the foregoing reasons, MAUNA KEA PROPERTIES, INC. and MAUNA KEA DEVELOPMENT CORP. respectfully request that their motion for summary judgment as to all claims asserted by Guy and Julia Hands, filed November 3, 2005, be granted.

Dated: Honolulu, Hawai'i, January 12, 2006.

_____
J. DOUGLAS ING
BRIAN A. KANG
EMI L. M. KAIMULOA
LISA S. HIRAHARA
CHRISTOPHER J. BENNETT

Attorneys for Defendants
MAUNA KEA PROPERTIES, INC. and
MAUNA KEA DEVELOPMENT CORP.

---

<u>Western Sunview Properties, LLC et al. v. Irwin Federman et al.</u>, Civil No. CV03-00463; Mauna Kea Properties, Inc. and Mauna Kea Development Corp.'s Reply Memorandum in Support of Motion for Summary Judgment as to All Claims Asserted by Guy and Julia Hands.