# DEPOSITION OF RONDA KENT, ESQ., VOL III TAKEN ON 05-09-05

*Page 1 to Page 63*

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

# RALPH ROSENBERG COURT REPORTERS, INC.
1001 Bishop Street
2460 Pacific Tower
Honolulu, HI 96813
Phone: (808) 524-2090
FAX: (808) 524-2596



EXHIBIT UU

BSA   DEPOSITION OF RONDA KENT, ESQ., VOL III TAKEN ON 05-09-05   XMAX(1/1)

## Page 1

```
(1)         IN THE UNITED STATES DISTRICT COURT
(2)            FOR THE DISTRICT OF HAWAII
(3)   WESTERN SUNVIEW PROPERTIES,   )
      LLC, et al.,                  )
(4)                                 )
              Plaintiffs,           )
(5)                                 )
          vs.                       ) Case No.
(6)                                 ) CV03-00463 DAE/LEK
      IRWIN FEDERMAN, et al.,       )
(7)                                 )
              Defendants.           )
(8)   _____)
(9)
(10)       DEPOSITION OF RONDA KENT, ESQ.
(11)              V O L U M E  III
(12)
(13)    Taken on behalf of Defendants IRWIN FEDERMAN,
(14)  et al., at the offices of Chun, Kerr, Dodd, Beaman &
(15)  Wong, 745 Fort Street, 9th Floor, Honolulu, Hawaii,
(16)  commencing at 1:03 p.m., Monday, May 9, 2005, pursuant
(17)  to Notice.
(18)
...
(24)  BEFORE:  ELSIE TERADA, CSR NO. 437
(25)           Certified Shorthand Reporter
```

## Page 2

```
(1)
(2)   APPEARANCES:
(3)   For Plaintiff WESTERN SUNVIEW PROPERTIES, LLC:
(4)       TERRANCE M. REVERE, ESQ.
          Motooka Yamamoto & Revere
(5)       1000 Bishop Street, Suite 801
          Honolulu, Hawaii  96813
(6)
          CHAD P. LOVE, ESQ.
(7)       Love & Narikiyo
          1164 Bishop Street, Suite 1105
(8)       Honolulu, Hawaii  96813
(9)
      For Defendants MAUNA KEA PROPERTIES, INC., and
(10)  MAUNA KEA DEVELOPMENT CORP.:
(11)      BRIAN A. KANG, ESQ.
          Watanabe Ing Kawashima & Komeiji
(12)      First Hawaiian Center
          999 Bishop Street, 23rd Floor
(13)      Honolulu, Hawaii  96813
(14)  For Defendants IRWIN FEDERMAN and CONCEPCION S.
      FEDERMAN:
(15)
          ANDREW V. BEAMAN, ESQ.
(16)      Chun, Kerr, Dodd, Beaman & Wong
          745 Fort Street, 9th Floor
(17)      Honolulu, Hawaii  96813
(18)  For Defendants THE BLUFFS AT MAUNA KEA COMMUNITY
      ASSOCIATION:
(19)
          RONALD N. SHIGEKANE, ESQ.
(20)      Ayabe, Chong, Nishimoto, Sia & Nakamura
          Pauahi Tower, Suite 2500
(21)      1001 Bishop Street
          Honolulu, Hawaii  96813
(22)
(23)
(24)
(25)
```

## Page 3

```
(1)   (continued)
(2)   For Defendant COUNTY OF HAWAII:
(3)       JOSEPH K. KAMELAMELA, ESQ.
          (Telephonically present)
(4)       Deputy Corporation Counsel
          County of Hawaii
(5)       Hilo Lagoon Centre
          101 Aupuni Street, Suite 325
(6)       Hilo, Hawaii  96720
```

## Page 4

```
(1)                    I N D E X
(2)   EXAMINATION BY:                        PAGE
(3)     MR. KANG .......................      5
(4)     MR. BEAMAN .....................     34
(5)
(6)
(7)   EXHIBITS FOR IDENTIFICATION:           PAGE
(8)   Defendant's
(9)   42  Letter dated May 20, 2000; Bates Nos.  15
          H00452 through H00455 (4 pages)
(10)
      43  Fax Cover Page dated December 15, 1999, and  25
(11)      Assignment of Sales Contract and Consent;
          Bates Nos. AW 00117 through AW 00121 (5 pages)
```

Page 29

(1) A  Yes.
(2) Q  Did I read that correctly?
(3) A  Yes.
(4) Q  And by "Contract," that refers to the sales
(5) contract for Lot 5 at The Bluffs; is that correct?
(6) A  Contract is a defined term. It's a sales
(7) contract dated September 20th, 1999, in which
(8) "Assignors agreed to purchase, and Seller agreed to
(9) sell to Assignors, Seller's fee interest in real
(10) property located at Mauna Kea Bluffs and identified tax
(11) map key (3)6-2-14:05."
(12) Q  And is it your understanding that Lot 5 which
(13) refers to Lot 5 at The Bluffs?
(14) A  Yes.
(15) Q  Under this language in the first paragraph
(16) and the assignment, did the Handses personally reserve
(17) any rights under the sales contract for Lot 5?
(18) MR. REVERE: Objection. Calls for a legal
(19) conclusion, but you can answer if you want to.
(20) THE WITNESS: I'm sorry, could you repeat the
(21) question?
(22) Q  (BY MR. KANG): Sure. Under the language of
(23) the assignment, did the Handses personally reserve any
(24) rights under the sales contract for Lot 5?
(25) MR. REVERE: Same objection.

Page 30

(1) THE WITNESS: I don't think they reserved any
(2) rights, but they remained primarily liable under the
(3) contract. I believe there is a provision in here to
(4) that effect somewhere.
(5) Q  (BY MR. KANG): But they didn't reserve any
(6) rights under the assignment; is that correct?
(7) MR. REVERE: Same objections, but you can answer.
(8) THE WITNESS: Unless a -- the fact that they
(9) agreed to still be primarily responsible of the
(10) contract can be construed as a reservation of rights, I
(11) don't know that.
(12) Q  (BY MR. KANG): Okay. Aside from being
(13) primarily responsible, as you've indicated, did the
(14) Handses reserve any rights under the assignment?
(15) MR. REVERE: Objection. Asked and answered. It
(16) also calls for a legal conclusion, but you can answer
(17) again.
(18) THE WITNESS: I don't believe so, no.
(19) Q  (BY MR. KANG): Under the assignment, did the
(20) Handses retain any personal interest in Lot 5?
(21) MR. REVERE: Same objections.
(22) THE WITNESS: You know, I think their personal
(23) interest in Lot 5 derives from other sources than this
(24) assignment.
(25) Q  (BY MR. KANG): What are those other sources?

Page 31

(1) A  Well, as I believe Mr. Hands has previously
(2) testified, he is the -- he and Mrs. Hands are -- the
(3) rough equivalent, I guess you would say, of
(4) beneficiaries of the trust that was set up under his
(5) previous employer, Nomura Securities, which is the
(6) ultimate owner of the companies that own the property.
(7) So I guess you'd say he has a beneficial interest --
(8) Q  Aside from --
(9) A  -- personally, both of them.
(10) Q  Aside from this beneficial interest that you
(11) just testified about, did Mr. and Mrs. Hands retain any
(12) personal interest in Lot 5?
(13) MR. REVERE: Objection. Calls for a legal
(14) conclusion.
(15) THE WITNESS: They are the managers of the
(16) assignee and entrusted with the day-to-day operations
(17) of the company that owns the property.
(18) Q  (BY MR. KANG): In conducting the day-to-day
(19) operations with respect to the properties, are the
(20) Handses acting in the managerial capacity or personal
(21) capacity?
(22) A  The managerial capacity.
(23) Q  To your knowledge, did Western Sunview
(24) Properties agree to reimburse Mr. and Mrs. Hands
(25) personally for any expenses related to Lot 5 at The

Page 32

(1) Bluffs?
(2) MR. REVERE: Objection. Irrelevant. Not likely
(3) to lead to the discovery of admissible evidence, but
(4) you can answer.
(5) THE WITNESS: Yes. I believe Western agreed to
(6) reimburse them for all of their expenses that they had
(7) incurred in contracting to purchase the property.
(8) Q  (BY MR. KANG): And, to your knowledge, did
(9) Western Sunview Properties reimburse the Handses for
(10) those expenses?
(11) MR. REVERE: Same objection, but you can answer.
(12) (Discussion held between Mr. Revere
(13) and the witness.)
(14) THE WITNESS: I instructed the company to do that,
(15) but I have no independent knowledge that it actually
(16) happened.
(17) Q  (BY MR. KANG): And by "company," you're
(18) referring to Western Sunview Properties?
(19) A  Yes.
(20) MR. KANG: Thank you, Ms. Kent. That's all I
(21) have.
(22) (Recess from 1:50 p.m. to 1:59 p.m.)
(23) Q  (BY MR. KANG): Ms. Kent, I understand from
(24) your counsel that you may testify with respect to the
(25) question that I asked earlier as to whether you ever

RALPH ROSENBERG COURT REPORTERS, INC.   (808) 524-2090

Page 29 to Page 32