367740.3

**WATANABE ING & KOMEIJI** LLP
A Limited Liability Partnership

**ORIGINAL**

J. DOUGLAS ING        # 1538-0
BRIAN A. KANG         # 6495-0
EMI L. M. KAIMULOA    # 7794-0
LISA S. HIRAHARA      # 8150-0
First Hawaiian Center
999 Bishop Street, 23rd Floor
Honolulu, Hawai'i 96813
Telephone No.  (808) 544-8300
Facsimile No.  (808) 544-8399
E-mail: lhirahara@wik.com

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 2 2006

at 3 o'clock and 8 min. M
SUE BEITIA, CLERK

Attorneys for Defendants
MAUNA KEA PROPERTIES, INC. and
MAUNA KEA DEVELOPMENT CORP.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>          Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE | CIVIL NO. CV03-00463 JMS (LEK)<br><br>MAUNA KEA PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORP.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFFS' FAILURE TO PROVE DAMAGES; DECLARATION OF COUNSEL; EXHIBITS 48-49; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE |

PARTNERSHIPS                              )   **Hearing:**
1-100; DOE CORPORATIONS 1-100,  )   **Date:  January 23, 2006**
                                          )   **Time:   9:00 a.m.**
               Defendants.                )   **Judge:  Hon. J. Michael Seabright**
                                          )
_____)   **Trial Date:  March 14, 2005**

## MAUNA KEA PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORP.'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFFS' FAILURE TO PROVE DAMAGES

COME NOW Defendants MAUNA KEA PROPERTIES, INC.

("MKP") and MAUNA KEA DEVELOPMENT CORP. ("MKDC") (collectively,

"Mauna Kea"), by and through their attorneys, WATANABE ING & KOMEIJI

LLP, and hereby submit this reply memorandum in support of their motion for

summary judgment based on Plaintiffs Western Sunview Properties, LLC, Guy

Hands, and Julia Hands' (collectively, "Plaintiffs") failure to prove damages, filed

herein on November 3, 2005.

## I.    ARGUMENT

One thing is clear in this case -- Plaintiffs were not misled or hurt by

the confidentiality agreement regarding landscaping credits between Mauna Kea

and the Federmans.  Whether Plaintiffs knew about the landscaping credits or not,

they would have had to submit an offer for the full asking price of $3,250,000 in

order to purchase Lot 5.  Plaintiffs' lawsuit is thus clearly an attempt to obtain a

retroactive landscaping credit, which they never would have been given in the first place.  As such, they can prove no loss, and this case must be dismissed on summary judgment for lack of damages.

**A.** **Magistrate Kobayashi's scheduling order does not preclude the determination of Mauna Kea's present motion.**

Plaintiffs argue that Mauna Kea's motion is untimely based on Magistrate Kobayashi's order during a scheduling conference that parties could re-file dispositive motions previously filed in accordance with the original March 23, 2005 deadline.  Plaintiffs' argument is disingenuous, inasmuch as **Magistrate Kobayashi's order clearly contemplated that Mauna Kea's counter motion, submitted in accordance with LR 7.9, could be re-filed**.

March 23, 2005 was this Court's original dispositive motions deadline.  Prior to this deadline, on March 8, 2005, Plaintiffs filed a motion for summary judgment on the claims related to the use of landscaping credits -- the same claims that Mauna Kea had been intending to seek summary judgment on.  Instead of filing a separate motion on March 23, 2005 regarding the same claims, and in accordance with this Court's previous direction to utilize LR 7.9, Mauna Kea submitted a counter motion pursuant to LR 7.9, which provides that "[a]ny motion raising the same subject matter as an original motion may be filed by the

responding party together with the party's opposition[.]" Accordingly, Mauna Kea timely submitted its opposition and counter motion on April 28, 2005. Plaintiffs did not challenge this use of LR 7.9.

Plaintiffs' motion and Mauna Kea's counter motion were subsequently dismissed without prejudice pending mediation. After unsuccessful mediation attempts, Magistrate Kobayashi held a scheduling conference during which she instructed the parties that they could re-file the motions that had previously been before this Court. Magistrate Kobayashi referred to those motions as the motions that had been filed in accordance with the original dispositive motions deadline of March 23, 2005. **All parties clearly understood that this included Mauna Kea's counter motion, which had been timely filed in accordance with the dispositive motions deadline under LR 7.9.** Plaintiffs' current attempt to exclude this motion from consideration is thus disingenuous and should be rejected.

**B.    Plaintiffs fail to address the HRS § 480-4 price-fixing claim.**

Count V of Plaintiffs' First Amended Complaint alleges a price-fixing claim based on Hawai'i Revised Statutes ("HRS") § 480-4. In section IV.B.4 of its motion filed on November 3, 2005, Mauna Kea argued that this claim was not viable based on plain language and law of the case. Plaintiffs have

completely failed to rebut or address in any way Mauna Kea's request for summary judgment on this claim. As Plaintiffs have failed to carry their burden or standard of proof on summary judgment as required by Fed. R. Civ. P. 56, Mauna Kea respectfully requests that Plaintiffs' HRS § 480-4 claim be dismissed.

**C.    Plaintiffs have not presented any genuine issue of material fact regarding their lack of damages.**

### 1.    This Court's previous determination does not prevent consideration of Plaintiffs' failure to prove damages.

Plaintiffs claim that "this Court already has determined, there are triable issues of fact as to Plaintiffs' damages." See Plaintiffs' Opposition, at 2. Plaintiffs' argument is misleading, inasmuch as this Court was not previously presented with the quantity and quality of evidence that is now set forth in Mauna Kea's motion, and thus has not "already determined" the lack of damages issue.

On July 27, 2004, the Federmans filed a motion for summary judgment on all claims, including those based on the landscaping credits. At that time, the depositions of Mauna Kea employees had not occurred and discovery was ongoing. On September 15, 2004, this Court denied in part the Federmans' motion as to the claims relating to the landscaping credits, stating in relevant part, "There are also issues of fact as to . . . whether Plaintiffs sustained any damages." Western Sunview Properties, LLC v. Federman, 338 F. Supp. 2d 1106, 1120 (D.

5

Haw. 2004).

Since that time, substantial discovery has occurred, including the depositions of Mauna Kea employees Kathrin Kohler and Jeanne Buboltz, both of whom testified to the interest in and competing offers for Lot 5 and the fact that Mauna Kea would not have given a landscaping credit for the last available oceanfront lot.  Additional discovery has also produced numerous multi-million dollar offers for Lot 5 received just days after closing, which establish the fair market value of Lot 5 at the time of sale, and Plaintiffs' own statements that they believed the fair market value of Lot 5 to have increased two-fold.   Based on the additional evidence which was outlined in Mauna Kea's motion, this Court is not precluded from considering this issue and ruling that Plaintiffs cannot show any damages.

**2.** **Plaintiffs are already in the same position as they would have been had they known about the use of landscaping credits.**

As Plaintiffs have conceded, they must show that they have suffered non-speculative substantial pecuniary damages in order to pursue any kind of claim in this case.  In fact, as Plaintiffs have cited, "The aim of compensation in deceit cases is to put the plaintiff in the position he would have been had he not been defrauded."  See Plaintiffs' Opposition (citing Hawaii's Thousand Friends v.

6

Anderson, 70 Haw. 276, 286 (1989)).  To place Plaintiffs in the position they would have been had they known[1] about the use of landscaping credits would be placing them in the same position as they are today -- owners of a lot that has more than doubled in value.  This is because **whether Plaintiffs knew about the landscaping credits or not, they would have been required to offer the full asking price of $3,250,000**.

Both Kathrin Kohler and Jeanne Buboltz testified unambiguously that **a landscaping credit would not have been given for Lot 5** -- the last available oceanfront lot at The Bluffs, and Plaintiffs have not cited to any genuine issues of material fact to the contrary.  See Mauna Kea's Concise Statement in Support of Motion for Summary Judgment Based on Plaintiffs' Failure to Prove Damages, filed November 3, 2005, ("CS") at Exhibits 3 (31:8-12) and 4 (45:23-47:11, 50:2-52:15).  Not only was Lot 5 the last available oceanfront, but there was at least one other offer on the table for Lot 5, and, as confirmed by Plaintiffs' own realtor, Deborah Au, the market at that time was steadily becoming more competitive.  See id.; see also CS Exhibits 8, 11.  The subsequent offers for Lot 5 only days after closing also evidence the upward trend in the marketplace, precluding the need to

---

[1]    This assumes, for the sake of argument without waiving any rights, that Plaintiffs in fact did not know about the use of landscaping credits.  Even assuming that, Plaintiffs cannot prove any damages.

agree to a landscaping credit for Lot 5.  See CS Exhibits 31-39.

What is more telling is the undisputed fact that **Plaintiffs actually did submit an offer for $250,000 less than asking price, which was immediately rejected by Mauna Kea in favor of the full asking price of $3,250,000.**  See CS Exhibits 17, 20-22.  Such is conclusive and undisputed evidence that Mauna Kea would not have agreed to a landscaping credit for Lot 5, the price for Lot 5 was "firm," and that Plaintiffs would have been required to purchase Lot 5 at the full asking price of $3,250,000.  Based on the foregoing, Plaintiffs' wholly speculative and unsupported claim that they "could have" negotiated a landscaping credit had they known about it and were thus "damaged" in some manner must be rejected.

Plaintiffs' citation to its expert's report, which claims that the "estimated impact on value" to Lot 5 "resulting from the project developer's practice of providing 'undisclosed discounts'" was $400,000, does not change the fact that a landscaping credit would not have been given to Plaintiffs due to the aforementioned undisputed evidence.[2]  Inasmuch as **Plaintiffs' sole claim for**

_____

[2]    Significantly, Plaintiffs' expert's report fails to account for the testimonies of the Mauna Kea agents that a landscaping credit would not have been given for the last available oceanfront lot at The Bluffs, the other serious offeror who expressed willingness to purchase Lot 5 for $3,250,000, the incline in the real estate market at the time Plaintiffs were interested in Lot 5, and the

**damages is based upon the speculative argument that they "should have" received a landscaping credit in an arms-length transaction**, Plaintiffs lack damages altogether and their claims must be dismissed.  <u>See</u> Mauna Kea's Concise Statement in Support of Motion for Summary Judgment as to All Claims Asserted by Guy and Julia Hands, filed November 3, 2005, at Exhibit RR (Plaintiffs' Answers to Mauna Kea's First Request for Answers to Interrogatories, Dated 10/1/04),

3.    <u>**The measure of damages in this case illustrates Plaintiffs inability to present any evidence of non-speculative and substantial pecuniary loss.**</u>

If the foregoing were not enough to establish Plaintiffs' inability to prove any loss, application of the measure of damages demonstrates the fact that Plaintiffs simply were not harmed.

The measure of damages in Hawai'i for this type of case has generally been described as follows:

> In order to have a claim based on deceit, the **plaintiff must have suffered substantial actual damage, not nominal or speculative**.  The courts have often expressed this requirement in terms of pecuniary damage, as does the Restatement of Torts § 519 (1938). The aim of compensation in deceit cases is to put the plaintiff in the position he would have been had he not

---

subsequent offers for Lot 5 submitted within days and months of the purchase.

9

been defrauded.  There may be no recovery for mental anguish and humiliation not intentionally inflicted.

Pecuniary damages, being narrow in scope, are those damages (either general or special) which can be accurately calculated in monetary terms such as loss of wages and cost of medical expenses.  In fraud or deceit cases, **the measure of pecuniary damages is usually confined to either the 'out-of-pocket' loss or the 'benefit of the bargain' (difference between the actual value at the time property is sold and the value it would have had if the representations had been true)**.

Ellis v. Crockett, 51 Haw. 43, 53, 451 P.2d 814, 820 (1969) (citations omitted) (emphases added).

Calculations for the foregoing measure of damages would be as follows:

Price Paid (i.e. Sales Contract Price)
- Fair Market Value at Time of Purchase
Damages (if any)

To be entitled to damages then, **the sales contract price must exceed the fair market value of the property**.  Cf. Island-Gentry Joint Venture v. State Board of Land and Natural Resources, 57 Haw. 259, 554 P.2d 761 (1976) (requiring that "the contract price of the land exceed the market value of the land on the date of breach" in a case involving the measure of damages for a breach of land sales contract and a similar benefit-of-the-bargain standard).

Plaintiffs' citations similarly require that the sales contract price

10

exceed the fair market value of the property.  For instance, <u>Benson v. Weaver</u>, 793

P.2d 348 (Or. Ct. App. 1990), and the other out-of-state cases cited by Plaintiffs

are premised on "**if** plaintiffs paid more than they should have at the time of the

sale . . . ." (Emphasis added.)  Restatement (Second) of Torts § 920, also cited by

Plaintiffs but which Hawaii courts have not adopted, in fact provides,

> When the defendant's tortious conduct has caused harm
> to the plaintiff or to his property and in so doing has
> conferred a benefit to the interest of the plaintiff that was
> harmed, <u>the value of the benefit conferred is considered</u>
> <u>in mitigation of damages</u>, to the extent that this is
> equitable.

(Emphasis added.)  Even the Blackacre example cited by Plaintiffs from that

Restatement is distinguishable, as it is premised on the fact that the value of

Blackacre at the time of purchase was <u>less</u> than the value represented.

Furthermore, unlike Plaintiffs claim, **subsequent offers or sales are**

**materially relevant** in determining the fair market value of the property at the

time of purchase.  <u>Cf.</u> <u>State Sav. & Loan Association v. Corey</u>, 53 Haw. 132, 144,

488 P.2d 703, 710 (1971) ("[T]he price of subsequent resale is admitted to show

the actual value of the property when fraudulently sold.").

In this case, Plaintiffs cannot prove damages because they cannot

prove that the sales contract price for Lot 5 exceeded its fair market value.  The

price paid is undisputed -- Plaintiffs paid $3,250,000 for Lot 5. Similarly, the fair

market value at the time of Plaintiffs' purchase was at least $3,250,000, if not

more, based on the following undisputed evidence:

- In September 1999, **Plaintiffs submitted an offer of $3,000,000 for less than full asking price, which Mauna Kea rejected**. See CS Exhibits 1, 20, 22.

- Kathrin Kohler, Mauna Kea real estate broker, testified that there was at least **one other serious offeror (the Allans) for Lot 5 who was willing to pay full asking price of $3,250,000** for Lot 5 in September 1999. See CS Exhibit 4 (50:17-52:7).

- Kohler unequivocally testified that there was **no way a landscaping credit would have been given for the last available oceanfront lot** (i.e. Lot 5). See CS Exhibit 4 (45:23-47:11). Plaintiffs do not present a genuine issue of material fact by pointing to a credit given a full month prior to Plaintiffs' offer and a credit given for a back row (i.e. non-oceanfront) lot subsequent to Plaintiffs' offer.

- In early September 1999, Plaintiffs' own realtor, Deborah Au, told Plaintiffs that **"inventory on the Gold Coast is disappearing quickly"** and that "the market is starting to move." See CS Exhibit 8. Mauna Kea's real estate agents working on The Bluffs at that time confirmed this. See CS Exhibits 3 (31:8-12) and 4 (45:23-47:11 & 50:2-52:15). Plaintiffs themselves even confirmed that they understood the market had taken off around the time of their interest in Lot 5. See CS Exhibits 15 (57:2-15) and 16 (46:11-15, 47:8-12, 48:2-5).

- In November 1999, Plaintiffs' realtor again confirmed that **there were clients "waiting for any lot that may fall out of escrow"** so that they could purchase a lot at The Bluffs.  <u>See</u> CS Exhibit 29.

- Plaintiffs were offered **$4,500,000** for Lot 5 three days after the closing of Lot 5.  <u>See</u> CS Exhibits 31-34.

- Plaintiffs were offered **$6,500,000** for Lot 5 within two months.  <u>See</u> CS Exhibits 35-37.

- Plaintiffs were offered **$6,250,000** for Lot 5 within three months.  <u>See</u> CS Exhibit 39.

- Plaintiffs listed Lot 5 for sale at **$7,000,000** within six months.  <u>See</u> CS Exhibit 40.

- Not even a year after the purchase, Julia Hands wrote in her diary that **Lot 5 had "doubled in value" and that it was "worth in excess of $6m but with a house on it, it could be closer to $20m."**  <u>See</u> CS Exhibit 41.

- Dodie MacArthur, principal broker of MacArthur & Company, testified that $3,250,000 was a fair price for Lot 5 and that the Hands did not pay more than fair market value for Lot 5.  <u>See</u> Exhibit 49 (146:13-22 & 156:1-10), attached hereto.

The foregoing leave no genuine issue of material fact that the value of Lot 5 at the time of Plaintiffs' offer was at least $3,250,000, if not more, and that the value of Lot 5 at the time of closing had increased to at least $4,500,000, if not more.

Mauna Kea's expert's report confirms that the value of Lot 5

exceeded the sales price.  Taking into consideration all relevant factors, including those that Plaintiffs' expert overlooked, Mauna Kea's expert's report demonstrates that the value of Lot 5 at the time of purchase was actually $3,800,000.  See Exhibit 48 (Complete Summary Appraisal Report), attached hereto.

Based on the most conservative of these undisputable figures, the calculation for damages in this case would be as follows:

| | |
|---|---|
| Price Paid (i.e. Sales Contract Price) | $3,250,000 |
| - Fair Market Value at Time of Purchase | - $3,250,000(minimum) |
| **Damages (if any)** | **-0-** |

As the foregoing establishes, Plaintiffs cannot claim any damages because the price Plaintiffs paid for Lot 5 did not exceed its fair market value.  Accordingly, Mauna Kea should be granted summary judgment on all claims.

**D.  Plaintiffs have failed to present sufficient evidence that Mauna Kea made any false representations.**

**1.  Plaintiffs fail to address the fact that HRS Chapter 247 required that $3,000,000 be reported as the sales price for Lot 6.**

Ignoring the fact that the Federmans, and not Mauna Kea, signed the conveyance transfer certificate for Lot 6, Plaintiffs continue to argue that Mauna Kea misrepresented the price of Lot 6 at The Bluffs by reporting $3,000,000, as opposed to $2,550,000, to the Bureau of Conveyances.  Plaintiffs, however, completely fail to address the fact that the plain language of HRS, Chapter 247

14

required the reporting of $3,000,000 as the sales price for Lot 6.  Thus, even assuming, <u>arguendo</u>, that Mauna Kea was involved in reporting, Mauna Kea cannot be held liable for complying with HRS, Chapter 247 requirements.

The conveyance tax under HRS, Chapter 247 was first enacted in 1966.  <u>See</u> Act 10, in 1966 Haw. Sess. L., at 29.  When enacted, the relevant language provided that the basis for the conveyance tax was "the actual and full consideration paid or to be paid."  <u>Id.</u>  In 1993, HRS § 247-2 was amended to require the reporting of "actual and full consideration (**whether cash or otherwise**, including any promise, act, forbearance, property interest, value, gain, advantage, benefits, or profit) paid or to be paid."  <u>See</u> Act 195, in 1993 Haw. Sess. L., at 296.  This amendment was made to clarify the basis of the conveyance tax and to prevent evasion of conveyance taxes owed to the State.  <u>See</u> Sen. Stand. Comm. Rep. No. 662, in 1993 Senate Journal, at 1033; Sen. Stand. Comm. Rep. No. 334, in 1993 Senate Journal, at 937; Conf. Comm. Rep. No. 78, in 1993 Senate Journal, at 771; SB 1726, Fl. Testimony, in 1993 House Journal, at 578 (comments of Representative Peters).

Based on the foregoing plain language of HRS § 247-2, **the sales price reported on the conveyance tax certificates must include the amount due to credits -- i.e. consideration other than cash**.  Legislative history supports this

15

conclusion, inasmuch as the amendment requiring the reporting of "consideration (whether cash or otherwise . . .)" was to prevent evasion of paying taxes by claiming a lesser sales price. Accordingly, the reporting of the sales price for Lot 6 at $3,000,000 was in compliance with the requirements in HRS, Chapter 247. It would be inconsistent and anomalous to say that Mauna Kea misrepresented the sales price of Lot 6 when, in fact, such reporting was in compliance with the requirements in HRS, Chapter 247.

    2.    **Plaintiffs ignore the addendum, which specifically states that the "purchase price" for Lot 6 was $3,000,000.**

In addition to ignoring the plain language of HRS, Chapter 247, Plaintiffs completely ignore the addendum, claiming only that the sales contract for Lot 6 listed the "purchase price" as $2,550,000. The addendum, which is a supplement to the sales contract, see Black's Law Dictionary 38 (7th ed. 1999), superceding what is written in the original contract, see Archambo v. Lawyers Title Ins. Corp., 646 N.W.2d 170, 176 (Mich. 2002), and which was signed simultaneously with the sales contract, specifically states that "[t]he purchase price for the property shall be $3,000,000," see CS Exhibit 7.

    3.    **Plaintiffs cannot point to any other statements that could conceivably constitute false representations.**

Plaintiffs have wisely abandoned their argument that Mauna Kea

made false representations on its Price List.  Plaintiffs' only other claim of a false

representation made by Mauna Kea is the September 16, 1999 statement by real

estate agent Jeanne Buboltz, "our prices are firm."  <u>See</u> CS Exhibit 12.  Plaintiffs

cannot reasonably argue that such a statement should subject Mauna Kea to

liability, as the undisputed and substantial evidence above indicates that the

statement was true when made for Lot 5.  <u>See</u> CS Exhibits 3 (31:8-12), 4 (45:23-

47:11 & 50:2-52:15), 8, 11.

**E.**   **Plaintiffs have failed to present sufficient evidence that they
indeed relied upon the sales price of Lot 6.**

**1.**   **This Court's previous determination does not prevent
consideration of Plaintiffs' failure to prove reliance.**

Again, unlike Plaintiffs' claim, this Court's determination in its

September 15, 2004 order against the Federmans that "[t]here are also issues of

fact as to whether or not Plaintiffs relied on the list price in making their offer,"

<u>Western Sunview Properties, LLC</u>, 338 F. Supp. 2d at 1120, does not preclude this

Court from considering evidence that has since been obtained by Mauna Kea

through discovery, which establishes Plaintiffs' failure to prove reliance.  This

evidence includes Plaintiffs' own statements that they did not do line-by-line

comparisons of prices, as was outlined in Mauna Kea's motion and as is discussed

below.

2.     **Plaintiffs fail to rebut the substantial quantity of evidence showing that they did not rely upon reported prices for other lots at The Bluffs.**

Plaintiffs' only citation in support of their argument that they relied upon reported prices is Guy Hands' belated and self-serving assertion that he relied upon the prices recorded at the Bureau, which were allegedly confirmed by their realtor.  Plaintiffs, however, fail to address their **admissions that they did not go line-by-line and review the prices allegedly confirmed** at the Bureau with those prices on the Price List.  See CS Exhibits 15 (158:17-160:11) and 16 (76:4-20).  Plaintiffs fail to explain why they did not know, until pointed out to them during this litigation, that the prices allegedly confirmed by their realtor were in excess of those on the Price List.  See CS Exhibits 2 and 19.  Such is crucial because it proves that Plaintiffs did not do any comparisons and that Plaintiffs' realtor did not rely on prices obtained from the Bureau.

Plaintiffs also completely failed to rebut the fact that:

- All correspondence prior and subsequent to their purchase of Lot 5 indicates that **they were not concerned with the price** of Lot 5 but instead were concerned with things like obtaining the last available oceanfront lot, having enough space and flexibility to build a rental property, purchasing a property with enough distance from natural nuisances, such as lava flows, and being able to obtain membership in The Club.  See CS Exhibits 8, 11, 13, 14, 16 (47:8-12), 26, 28.

18

- Plaintiffs **never obtained an appraisal** of Lot 5.
  <u>See</u> CS Exhibits 15 (47:20-48:5 & 100:14-19) and
  16 (164:10-17 & 165:1-8).

- Plaintiffs had prepared their offers for Lot 5 prior
  to their realtor allegedly "confirming" prices with
  the Bureau.  <u>See</u> CS Exhibits 17-19.

- Plaintiffs had a **history of purchasing property
  for its asking price** without negotiating.  <u>See</u> CS
  Exhibits 15 (126:24-128:6), 16 (39:24-40:9,
  44:18-45:15), and 44-46.

Inasmuch as Guy Hands' belated and self-serving assertion cannot create a

genuine issue of material fact sufficient to rebut all of the foregoing evidence

proving that Plaintiffs did not rely on any reported prices in making their offers,

summary judgment should be granted in favor of Mauna Kea.

3.     <u>**Plaintiffs' citation to the Dual Agency Consent Agreement
in an attempt to prove reliance is irrelevant.**</u>

Plaintiffs cite the Dual Agency Consent Agreement entered into

between Mauna Kea and certain purchasers at The Bluffs as an attempt to make up

for their deficient reliance arguments.  Plaintiffs' citations, however, are irrelevant,

inasmuch as **there was no Dual Agency Consent Agreement between Mauna**

**Kea and Plaintiffs**.  Plaintiffs' citations are also misleading, inasmuch as the Dual

Agency Consent Agreement simply outlined the general duties of an agent in

representing both the seller and the buyer, one of which was to ensure that the

19

buyer was provided with comparables for other properties.

**F.    Plaintiffs fail to rebut the numerous case law cited establishing lack of standing for an unfair or deceptive practices claim.**

Plaintiffs fail to rebut the following case law, all of which unequivocally provide that an entity has no standing as a "consumer" to bring a claim for unfair or deceptive practices under HRS § 480-2:

- Hunt v. First Ins. Co. of Hawaii, Ltd., 82 Hawaii 363, 922 P.2d 976 (App. 1996) (holding that KTA Super Stores was not a "consumer").

- Star Markets, Ltd. v. Texaco, Inc., 945 F. Supp. 1344 (D. Haw. 1996) (noting that the amendment to HRS, Chapter 480 "denies businesses standing to sue under the 'deceptive acts or practices' clause of HRS § 480-2(a)").

- Sea-Land Serv., Inc. v. Atl. Pac. Int'l, Inc., 61 F. Supp. 2d 1092 (D. Haw. 1999) (holding that Fleming Companies, Inc., a wholesale food marketer and distributor, did not have standing as a "consumer").

- Paulson, Inc. v. Bromar, Inc., 775 F. Supp. 1329 (D. Haw. 1991) (holding that an entity did not have standing as a "consumer" by claiming that it acted through "natural persons").

- Lui Ciro, Inc. v. Ciro, Inc., 895 F. Supp. 1365 (D. Haw. 1995) (holding that a corporation and its shareholders did not have standing as a "consumer").

Plaintiffs fail to show, and do not allege, that any of the foregoing cases have been

overturned. Accordingly, this claim should be dismissed for lack of standing.

## II.  **CONCLUSION**

For the foregoing reasons, MAUNA KEA PROPERTIES, INC. and

MAUNA KEA DEVELOPMENT CORP. respectfully request that this Court grant

their motion for summary judgment.

DATED: Honolulu, Hawaiʻi, January 12, 2006.

J. DOUGLAS ING
BRIAN A. KANG
EMI L. M. KAIMULOA
LISA S. HIRAHARA
Attorneys for Defendants
MAUNA KEA PROPERTIES, INC. and
MAUNA KEA DEVELOPMENT CORP.