ORIGINAL

JWJ

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Corporation

TERRANCE M. REVERE  5857-0
BRIANNE L. ORNELLAS  8376-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii  96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910
Email Address:    terry@myrhawaii.com

FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email Address: ddixonthayer@flk.com

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 1 3 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,

Plaintiffs,

vs.

IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY

(*caption continues*)

Civil No. CV03-00463 JMS LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)

PLAINTIFFS WESTERN SUNVIEW PROPERTIES, LLC, GUY HANDS, AND JULIA HANDS' AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANTS MAUNA KEA PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORP.'S APPEAL FROM AMENDED ORDER ADOPTING SPECIAL MASTER'S

ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,

              Defendants.

DISCOVERY ORDER FILED OCTOBER 24, 2005, FILED NOVEMBER 1, 2005; <u>AMENDED</u> DECLARATION OF TERRANCE M. REVERE; EXHIBITS 1 - 11; ATTORNEY CERTIFICATION CERTIFICATE OF SERVICE

**NON HEARING MOTION**

Judge: J. Michael Seabright

Trial: March 14, 2006

Amended Memo in Opps to D's Appeal (648-1)

# TABLE OF CONTENTS

I.    Introduction ........................................................................ 2

II.   Hawaii Standards Regarding Attorney Client Privilege and The
      Crime Fraud Exception ...................................................... 4

      A.    Hawaii State Law Controls Regarding the Attorney-
            Client Privilege .......................................................... 5

      B.    Mauna Kea Has The Burden Of Proving That Its
            Documents Are Privileged ........................................... 5

      C.    The Hawaii Supreme Court Has Long Recognized That
            The Attorney-Client Privilege Should Be Strictly And
            Narrowly Construed So As To Frustrate The Fact Finding
            Process . ..................................................................... 6

      D.    The Crime-Fraud Exception –Which Is Applicable Here -
            Serves As A Limitation To The Attorney-Client
            Privilege ..................................................................... 7

            1.    Plaintiff's need only meet a preponderance standard
                  to apply the crime-fraud exception to the attorney-
                  client privilege ................................................... 8

III.  Discussion ......................................................................... 10

      A.    The Discovery Master Correctly Ruled That The Crime
            Fraud Exception Applies .............................................. 10

            1.    Sneaking suspicion or overwhelming, undisputed
                  evidence of fraud ............................................... 10

            2.    The crime/fraud exception to the privilege is
                  applicable here ................................................... 17

            3.    The legal services were used to facilitate a future
                  fraud, to obtain legal advice on past conduct .......... 19

B.    The Confidentiality Agreements Are At Issue And
Documents Surrounding Them Are Clearly Discoverable ............ 20

C.    Mauna Kea Waived Any Privilege .................................................. 21

D.    Mauna Kea Reliance On Lum's Firm's Advice Operates
As A Waiver ................................................................................... 23

IV.    Conclusion ..............................................................................................27

## TABLE OF AUTHORITIES

## CASES

Dicenzo v. Izawa, 68 Haw. 528, 536, 723 P.2d 171, 176 (1986)................5, 6

Dike v. Dike, 448 P.2d 490, 496 (Wash. 1968)......................................6

Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3rd Cir. 1995)..................23

Harding v. Dana Transp., Inc, 914 F. Supp. 1084, 1095 (D. N.J. 1996)..........26

Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)............................20

In re Antitrust Grand Jury, 805 F.2d 155, 162 (6th Cir. 1986).....................18

Sameshima v. Yamashiro, 3 Haw. App. 130, 642 P.2d 544 (1982)..............20

Sapp v. Wong, 62 Haw. 34, 38-39, 609 P.2d 137, 140 (1980)..............5, 6, 18

Save Sunset Beach Coalition v. City & County of Honolulu, 102 Haw. 465, 485, 78 P.3d 1, 61 (2003)...........................................................................22

Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977 (D.Del. 1982), aff'd, 758 F.2d 668 (1984), cert. denied, 471 U.S. 1066 (1985)............................23, 25

State v Wong, 97 Haw. 512, 519 (2002).........................................5, 8

United States v. Bauer, 132 F.3d 504, 509 (9th Cir 1997)............................9

United States v. Bilzerian, 926 F.2d 1285 (2nd Cir. 1991)..........................23

United States v. Chen, 99 F.3d 1495, 1503 (9th Cir. 1996).....................10, 18

United States v. Martin, 278 F.3d 988, 1001 (9th Cir. 2002)..........................9

Western Sunview Props., LLC v. Federman, 338 F. Supp. 2d 1106, 1129 (D. Haw. 2004)...........................................................................................3

## <u>RULES</u>

Federal Rules of Evidence 501 ........................................................... 5

Federal Rules of Evidence 503(d)(1) ............................................ 7, 17, 18

Federal Rules of Evidence 511 .................................................... 21, 22



## **TEXTS, TREATISES AND OTHER AUTHORITIES**

Bowman, <u>Hawaii Rules of Evidence Manual</u> § 503-2d(1)(b) (2d ed. 1998).............................................................................................................. 8, 18

E. Cleary, et. al., <u>McCormick on Evidence</u>, (1972)......................................... 24

2 Weinstein and Berger, <u>Weinstein's Evidence</u>, (1988)................................... 24




**PLAINTIFFS WESTERN SUNVIEW PROPERTIES, LLC, GUY HANDS, AND JULIA HANDS' <u>AMENDED</u> MEMORANDUM IN OPPOSITION TO DEFENDANTS MAUNA KEA PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORP.'S APPEAL FROM AMENDED ORDER ADOPTING SPECIAL MASTER'S DISCOVERY <u>ORDER FILED OCTOBER 24, 2005, FILED NOVEMBER 1, 2005</u>**

## I.    <u>Introduction</u>

Defendants MAUNA KEA PROPERTIES, INC., and MAUNA KEA DEVELOPMENT CORP., (collectively referred to as "Mauna Kea"), real estate developers, have engaged in a carefully orchestrated fraud designed to mislead buyers into believing that the property at The Bluffs at Mauna Kea ("The Bluffs"), one of Mauna Kea's Big Island developments, sold at prices <u>greater</u> than the actual selling price.   Mauna Kea carried out its scheme by: 1) falsely reporting sales prices -- that it was required by law to accurately report to governmental authorities -- and 2) making both oral and written misrepresentations to buyers, who could not protect themselves from Mauna Kea's lies about the prices of comparable properties because the publicly available information was wrong.

This was not a victimless crime.  The evidence is undisputed that Plaintiffs, buyers of a lot at The Bluffs, overpaid Mauna Kea $400,000 because of Mauna Kea's lies.  (**Exhibit 1**, the report of expert Appraiser Richard Stellmacher dated February 14, 2005 at 20.)   Likewise, the public was harmed because of the purposeful manipulation of public records that consumers, lenders, realtors and appraisers, and governmental agencies rely upon.  See **Exhibit 1** at 18, see also

**Exhibit 2** report dated of Real Estate Expert Kenneth Chong at 3. Mauna Kea's lies caused real and measurable damage.

Mauna Kea committed fraud – and more than a "sneaking suspicion" of fraud. The <u>undisputed evidence</u>, comprising of confessions of Mauna Kea's officers, admissions by Mauna Kea's sales personnel, and even damning testimony by Mauna Kea's own expert, shows that Mauna Kea intended to and actually committed fraud. Indeed, Judge McConnell (the appointed Discovery Master in this case) has found that the crime fraud exception is applicable, and Judge Ezra held in an Order relating to one of Mauna Kea's co-conspirators that "*Defendants made a misrepresentation, that a trier of fact may conclude amounted to fraud.*" <u>Western Sunview Props., LLC v. Federman</u>, 338 F. Supp. 2d 1106, 1129 (D. Haw. 2004).

Now, in an attempt to prohibit Plaintiffs from seeing documents regarding the "plan" to defraud, Mauna Kea asserts that the documents are protected by the attorney-client privilege. However, Mauna Kea engaged the services of a law firm[1] to facilitate its future fraudulent misconduct of falsely reporting higher than actual sales prices so that subsequent purchasers would

---

[1] Mau na Kea argues that the documents are only "allegedly" about its illegal landscaping credit scheme and its secret confidentiality agreements. However, Mauna Kea's own privilege log describes the documents as related to "landscaping credits and confidentiality agreements." These descriptions show that the documents in question relate to this subject.

2

have inaccurate "comparables" information. Mauna Kea has included relevant and responsive documents on its privilege log. However, the documents are not protected by any privilege and must be produced. Mauna Kea's appeal should be denied on the following four reasons: First, even if these documents constitute communications with counsel, the crime/fraud exception is applicable and the privilege does not attach. Second, the communications are "at issue" in this case and cannot be protected as it would highly prejudice Plaintiffs' ability to discover relevant facts. Third, Mauna Kea waived any privilege by testifying as to the contents of communications. Fourth, Mauna Kea cannot rely on the advice of counsel defense and then not produce the documents relevant to the advice.

## II.    Hawaii Standards Regarding Attorney Client Privilege and the Crime Fraud Exception.

A.    Hawaii State Law Controls the Application of the Attorney-Client Privilege.

This civil case is in federal court on diversity grounds, therefore Hawaii State law on privilege controls.

> However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501.

B.    <u>Mauna Kea Has The Burden Of Proving That Its Documents Are Privileged.</u>

It is Mauna Kea's burden to show that the documents in question are subject to the privilege because "the **burden of establishing the privilege rests on the claimant.** Any other rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." <u>Sapp v. Wong</u>, 62 Haw. 34, 38-39, 609 P.2d 137, 140 (1980) (internal quotation marks and citations omitted).  <u>See also</u>, <u>Dicenzo v. Izawa</u>, 68 Haw. 528, 536, 723 P.2d 171, 176 (1986) ("A proper application of the codified privilege . . . requires preliminary judicial inquiry into the existence and validity of the privilege . . . otherwise, meaningful inquiry into the existence of an attorney-client relationship . . . and the character of the communication . . . would be foreclosed.") (quotation marks, brackets and citations omitted); <u>State v Wong</u>, 97 Haw. 512, 519 (2002).

C.    <u>The Hawaii Supreme Court Has Long Recognized That The Attorney-Client Privilege Should Be Strictly And Narrowly Construed So As Not To Frustrate The Fact Finding Process.</u>

Mauna Kea's contention that the attorney client privilege is "sacred" is erroneous.  The Hawaii Supreme Court has recognized that it is anything but "sacred;" it is a necessary evil at best, as it frustrates the fact-finding process.  In <u>DiCenzo v. Izawa</u>, 68 Haw. 528, 723 P.2d 171 (1986), the Court noted that the attorney-client privilege is an obstacle to obtaining the truth; that *ipse dixit* claims of privilege do not wash and that the privilege must be strictly and narrowly

construed: "'It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth.  It ought to be strictly confined within the narrowest limits consistent with the logic of its principle.'" Id. at 539, 723 P.2d at 177 (citing to VIII Wigmore on Evidence § 2291, at 554 (McNaughton rev. 1961).  554).  The Hawaii Supreme Court continued on: "[p]ut another way, the privilege 'must be strictly limited to the purpose for which it exists.'" DiCenzo, at 535, 723 P.2d at 175 (citing to Dike v. Dike, 448 P.2d 490, 496 (Wash. 1968).

In Sapp v. Wong, 62 Haw. 34, 38, 609 P.2d 137, 140 (1980), the Court noted that, "because the privilege works to suppress otherwise relevant evidence, **the limitations which restrict the scope of its operation . . . must be assiduously heeded. . . ."** Id. (emphasis added).

D.    The Crime-Fraud Exception – Which Is Applicable Here – Serves As A Limitation To The Attorney-Client Privilege.

The crime-fraud exception to the attorney-client privilege is applicable here. The crime-fraud exception is a limitation on the invocation of the attorney client privilege.  Hawaii. Rule of Evidence 503 (d)(1), provides that:

> (d) Exceptions.  There is no privilege under this rule:
> (1) Furtherance of crime or fraud. If the services of the lawyer were sought obtained or used to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud[.]

Where advice refers to future "wrongdoing," the crime-fraud exception is

applicable.

In <u>Wong</u>[2] the Hawaii Supreme Court was consistent with its earlier decision

in <u>DiCenzo</u> to strictly limit the application of the privilege:

> The attorney-client privilege is not without its costs. . . . Since the
> privilege has the effect of withholding relevant information from
> the factfinder, **it applies only where necessary** to achieve its
> purpose. . . . The attorney-client privilege must necessarily protect
> the confidences of wrongdoers, but the reason for that protection--
> the centrality of open client and attorney communication to the
> proper functioning of our adversary system of justice--**ceases to
> operate at a certain point, namely, where the desired advice
> refers not to prior wrongdoing, but to future wrongdoing.** . . . It
> is the purpose of the crime-fraud exception to the attorney-client
> privilege to assure that the seal of secrecy, . . . between lawyer and
> client does not extend to communications made for the purpose of
> getting advice for the commission of a fraud or crime. . . . *United
> States v. Zolin*, 491 U.S. 554, 562, 109 S. Ct. 2619, 2625-6, 105 L.
> Ed. 2d 469 (1989) (quotation marks and citations omitted).

<u>State v. Wong</u>, 97 Haw. 512, 518, 40 P.3d 914, 920 (2002). As the discussion

below will show, the communications at issue in this appeal occurred before the

land sales occurred, and Mauna Kea was seeking advice regarding how to

*perpetrate* its fraud *prospectively* -- it was not seeking advice on how to defend

itself from past allegations of fraud.

1. There Is No "Heavy Burden" on Plaintiffs To Demonstrate the Crime

---

[2]     Mauna Kea's reliance on <u>Wong</u> to somehow support its position is
inappropriate. <u>Wong</u> involved a criminal case, in which a prosecutor called an
attorney to testify before a grand jury with no judge even present. Here, in a civil
case, a Discovery Master (a retired Hawaii Judge) carefully considered the
arguments of counsel.

Fraud Exception Applies.

Mauna Kea claims, without citation to authority, that there is a "heavy" burden that Plaintiffs must meet in order for the Discovery Master's Order regarding the application of the crime fraud exception and the Magistrate's adoption to be upheld. Mauna Kea's position is wrong under both Hawaii and Ninth Circuit case law. Mauna Kea falsely asserts that the Wong Court created a "heavy burden" on the party advocating the crime fraud exception. The Wong Court makes no such statement whatsoever. In BOWMAN, HAWAII RULES OF EVIDENCE MANUAL § 503-2D(1)(b) (2d ed. 1998), Professor Bowman notes that: "It seems likely that, when presented with the issue, the Court will adopt a preponderance standard for the crime-fraud determination." (Emphasis added.) Additionally, as noted in Wong, DiCenzo, and the body of the rule itself, it is unjust to allow privilege proponents to make *ipsi dixit* claims of privilege and certainly parties should not be allowed to use the privilege to further crimes or frauds. Therefore, the preponderance rule should apply especially when the proponent of the exception is at the disadvantage of not even having the documents in question.

Rather than the "heavy burden" asserted by Mauna Kea, Federal case law clearly provides that a "reasonable cause" standard is applicable:

> The test for invoking the crime-fraud exception to the attorney-client privilege is whether there is reasonable cause to believe that the

> attorney's services were utilized in furtherance of the ongoing
> unlawful scheme. The exception applies even where the attorney is
> unaware that his advice may further an illegal purpose.

United States v. Bauer, 132 F.3d 504, 509 (9th Cir 1997) (internal quotation marks

and citations omitted); see also United States v. Martin, 278 F.3d 988, 1001 (9th

Cir. 2002) (where the court held the standard was met when the attorney's services

were used to further the defendant's sham created to defraud and that

'[d]emonstrating that the communications with the lawyer were in furtherance of

an intended or present illegality and that there is some relationship between the

communications and the illegality' "makes a prima facie case.") (internal citations

and quotation marks omitted).   In fact, the standard is actually LESS than a

preponderance under Ninth Circuit authority, including authority cited by Mauna

Kea:

> But proof beyond a reasonable doubt is not necessary to justify application
> of the crime-fraud exception. The test for invoking the crime-fraud
> exception to the attorney-client privilege is whether there is reasonable cause
> to believe that the attorney's services were utilized in furtherance of the
> ongoing unlawful scheme. ***Reasonable cause is more than suspicion but
> less than a preponderance of evidence.***

United States v. Chen, 99 F.3d 1495, 1503 (9th Cir. 1996) (emphasis added).

In reality, regardless what level of review the Court applies (preponderance,

less than a preponderance, reasonable cause/belief or otherwise), Mauna Kea's

undisputed fraud and reliance on legal services to facilitate the fraud demonstrates

that the crime-fraud exception applies.

## III.    Discussion

A.    The Discovery Master Correctly Ruled That The Crime Fraud Exception Applies.

1. The undisputed evidence establishes that a fraud occurred here.

Mauna Kea's representatives have repeatedly admitted that Mauna Kea misrepresented the sales price of lots at The Bluffs.  Mauna Kea perpetrated the fraud by representing that selling prices were <u>higher</u> than they actually were so as to "trick" subsequent buyers into believing that earlier purchasers paid more than they had. Mauna Kea's secret scheme was committed by both false oral and written statements and even the deliberate falsification of public records. Mauna Kea executed its secret scheme by hiding the actual discounted prices of its sales through the use of bogus confidential "landscaping credits" that were used to make up the gap between the high list price and the lower actual selling price.

Mauna Kea's argument that Plaintiffs only have a "sneaking suspicion" of fraud is absurd.  The evidence of its fraud is overwhelming and indeed <u>undisputed</u>.  Its own employees and expert witnesses have acknowledged that it committed acts that constitute fraud.  The Plaintiffs have already established much more than a reasonable basis for their fraud case:

Judge Ezra ruled as follows in his published order regarding the earlier summary judgment motions in this case:

9



- *Further, Defendant Irwin Federman admitted that he knew that he misreported the price **for the purpose of allowing MKP to "maintain the recorded sales price at the amount originally listed."*** <u>Western Sunview Props., LLC v. Federman</u>, 338 F. Supp. 2d 1106, 1119 (D. Haw. 2004) (emphasis added).

- *"As stated above, the court has found that Defendants made a misrepresentation, that a trier of fact may conclude amounted to fraud."* <u>Id.</u>, at 1129.

- *"Defendant Irwin Federman himself stated in a letter to Jane Grisham, Director of Finance of the Real Property Department for the County of Hawaii, that the landscaping credit was just 'an accounting artifice to enable Mauna Kea realty to maintain the recorded sales price at the amount originally listed.' Plaintiffs' CSOF Ex. 98. Defendant Irwin Federman's statement indicates that **he agreed to under-report the price of his home to maintain the fiction that the individuals at the Bluffs were purchasing lots at the list price.***" <u>Id.</u>, at 1122-23 (emphasis added). [3]

Mauna Kea, the developer, was of course the mastermind and primary beneficiary of the "fiction," "artifice" and "fraud" Judge Ezra referred to and that Judge McConnell considered in making his ruling on the applicability of the crime-fraud exception.

As the attached **Exhibit 4** shows, the Former President of Mauna Kea Properties (Mr. Mielcke) testified on pages 80, line 1 to p. 81, line 11 of his deposition in another case as follows:

Ques:    "Was there a requirement in the documents that the

---

[3] It is telling that Mauna Kea quotes from a portion of the discussion with Judge Ezra regarding the Federman's motion. Mauna Kea ignores Judge Ezra's written order and the fact that Judge Ezra warned Mauna Kea during that same hearing that he was only interested in discussing the Federmans that day and that he would deal with the claims against Mauna Kea at another point in the case. **Exhibit 3**, Transcript of the August 23, 2004 proceedings at p. 28, lines 17-18 and p. 83, lines 14-16.

purchaser signed that said you got to spend X number of dollars on landscaping?"

Mielcke:     "No."

Ques:     "Then what are you crediting it against?"

Mielcke:     "***It really was a form of discounting the selling price to help accelerate the sales of the project.***"

Ques:     "So by use of this "landscape credit" the buyer would actually be paying less money than the listed price for the lot?

Mielcke:     "Correct."

Ques:     "Then when you recorded the documents with the state and I assume the selling documents would be recorded, right?"

Mielcke:     "Oh, sure."

Ques:     "Would that landscape credit show?"

Mielcke:     "As I recall, the conveyance indicated the gross selling price, in Robertsons' case of $3,500,000."

Ques:     "**So if I was the next purchaser in line and I wanted to see what the last guy paid and I went down to the public records and looked, I would just see the listed price, I wouldn't see the actual price the purchaser paid if he got a landscape credit**?"

Mielcke:     "**Might not because they were also covered by a confidentiality agreement.**"

Ques:     "The landscape credit part?"

Mielcke:     "Yeah, between the buyer and seller."

| | |
|---|---|
| Ques: | "**But the listed selling price would not be covered by that confidentiality agreement?** |
| Mielcke: | "**No. That was public record.**" |
| Ques: | "<u>**When you say Mr. Stifler wanted to do this to maintain the integrity of the price, it was so you could tell the next purchaser that, hey, the selling price is the listing price, correct?**</u>" |
| Mielcke: | "*<u>Correct.</u>*" |

**Exhibit 4**. (Emphasis added.) The present President of Mauna Kea Development,

Mr. Asari (who was the then Vice-President), testified in his deposition in another

case at p.107, lines 5-8:

| | |
|---|---|
| Ques: | "**Why not simply just discount the sales price by $500,000? Why use the landscaping credit?**" |
| Asari: | "**The reason was we didn't want to change the sales price.**" |

**Exhibit 5**. (Emphasis added.) The Principal Broker of Mauna Kea Properties. Ms.

Kohler, testified in another case at p.39, lines 5-20:

| | |
|---|---|
| Ques: | "**I see. So the purpose of the landscaping credit was for you to be able to give discounts <u>below the purchase price to buyers but to be able to continue to tell later purchasers that the lots had all sold for full price</u>?**" |
| Kohler: | "**It was basically a discount, <u>yes</u>.**" |
| Ques: | "**But it was a discount that was given in a way that it could be -- <u>that it would not have to be reflected in the public records</u>?**" |



Kohler:        **"I don't recall exactly how it worked, but I'm sure it was given at the beginning, mainly to get this project up and running because times were not that great in those years as you might recall. The '90s were pretty rough."**

               **"And I'm sure that the powers that were then decided to do it that way to kick start this project**."

**Exhibit 6.** (Emphasis added.). And an agent for Mauna Kea Realty, Ms. Buboltz testified in this case at p.10, lines 14-16:

Ques:          **"It is your understanding that a landscape credit is basically a <u>confidential</u> <u>discount</u>?"**

Bubholtz:      **"<u>Oh, yes</u>."**

**Exhibit 7**. (Emphasis added.)  Mauna Kea's principle Broker (Ms. Kohler) also testified in this case that the realtor's commissions were based on the actual sale prices not including the bogus "credits" and that she was distancing herself from her bosses' decision to not report the secret discounts as required by law (**Exhibit 8**, pp. 17, lines 17-24, p. 99, lines 11-25):

Ques:          **"And was the commission based upon the actual consideration that was paid or the actual consideration that was paid, plus the landscaping credit?"**

Kohler:        **"The net proceeds."**

Ques:          **"So the landscaping credit would not be a factor in calculating the commission, correct?"**

Kohler:        **"Not as far as I know, no."**

                              . . . .
Ques:          **"Well, are you familiar with any code of ethics that's pertinent to realtors?"**

13

Kohler:      **"I most certainly am."**

Ques:        **"Are you aware of any provision in the code of ethics for realtors that reads:  '<u>Realtors shall not be parties to the naming of a false consideration in any document unless it be the naming of an obviously nominal consideration</u>?'"**

Kohler:      **"If it's in our code of ethics, then I know I have read it."**

Ques:        **"Given that that's in the code of ethics, how do you explain the fact that landscape credits were kept confidential and not reported to the tax department?"**

Kohler:      **"<u>It was not my decision.  I didn't make that decision.  I had nothing to do with that decision.</u>"**

**Exhibit 8**. (Emphasis added.)  Even Mauna Kea's own paid experts are not willing to defend Mauna Kea's outrageous fraudulent conduct.  Mauna Kea's expert economist, Mr. Gangnes, after having read the portion of former Mauna Kea president Mr. Mielcke's deposition describing Mauna Kea's pricing scheme cited above, testified:

Ques:      "Based upon what you read, doesn't that sound like fraud on the market to you, what he just described?"

                              . . . .

Gangnes   "It clearly says that they wanted to maintain the official list prices, keep any discounts confidential, these discounts confidential.  And that those discounts would not become part of the public record.  And he says that he did that so that the next purchaser would see the list price."

                              . . . .

Ques:      "Forgetting about the legalities which we'll be arguing until

14

kingdom come, apparently.   But from an economic perspective, doesn't that sound like a -- forgetting about the legalities or any consequences of it.   From an economic perspective, doesn't that sound like a fraud on the market?"

. . . .

Gangnes:     "*It sounds to me to be deliberately misleading.*"

**Exhibit 9A**, at p. 80, line 21 to p. 81, line 25.   According to the deposition testimony of Mr. Mielcke, Mauna Kea's President, in this case, the scheme originated with Mauna Kea's then principal broker, Tom Stifler.   **Exhibit 9**, at p. 50, lines 15-16.   According to Mr. Mielcke, Bettina Lum, Mauna Kea's former counsel for The Bluffs matters, was aware of Mauna Kea's scheme and *was even the drafter of the confidentiality agreements that allowed Mauna Kea to misreport sales prices to the taxing agencies and the public.*

Ques:       "Okay.  Did Mr. Stifler -- **do you know if Mr. Stifler ever sought legal advice as to whether his plan for the landscape credit, using landscape credits was legal or not?**"

Mielcke:    "The matter was discussed with Bettina Lum at Price Okimoto Himeno & Lum.   Ms. Lum also drafted the confidentiality agreement."

Ques:       "Okay.  So is it your testimony that Ms. Lum approved of the use of these landscape credits?"

. . . .

Mielcke:    **"This matter was discussed with Ms. Lum.  She had full knowledge of the landscape credits.   *It was she who drafted the confidentiality agreement.*"**

**Exhibit 9**, p. 56, line 15 to p. 56, line 2.  Despite Judge McConnell's ruling Mauna

Kea has not produced any of the documents that it exchanged with its attorneys regarding the landscape credit scheme or the confidentiality agreements that she drafted to further Mauna Kea's scheme.  Plaintiff submits that any and all communications between Ms. Lum's office and Mauna Kea or any of its agents regarding sales at The Bluffs or confidentiality agreements should be produced.

2.    <u>The crime/fraud exception to the privilege is applicable here.</u>

As noted above, Plaintiffs have already prevailed on a summary judgment motion filed by Mauna Kea's co-conspirators, the Federmans, on the issue of fraud. Additionally, substantial evidence-- including testimony from Mauna Kea's representatives -- that it engaged in fraud.  Under these circumstances, Plaintiffs must be allowed to obtain the documents exchanged between Mauna Kea and Ms. Lum's office.  Hawaii Rules of Evidence 503(d) plainly provides that

> *There is no privilege under this rule:*
> *(1) Furtherance of crime or fraud.  If the services of the lawyer were sought, obtained, or used to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud.*

Mauna Kea's conduct of hiring a lawyer to draft the confidentiality agreements that were used to protect the secret scheme, falls directly within this exception.  <u>See</u> BOWMAN, *supra*, § 503-2D(1).  The case <u>United States v. Chen</u>, 99 F.3d 1495 (9th Cir. 1996), also involved a client, like Mauna Kea, who sought to manipulate reported prices for his own financial gain.    In <u>Chen</u>, an importer of goods

overstated the costs of the goods in order to minimize the appearance of the profits he was making for tax purposes. He hired lawyers (who were unaware of his scheme) to file false paperwork for him. The Court held that all communications related to the matter between the attorneys and the clients came within the crime fraud exception to the attorney-client privilege. See also, In re Antitrust Grand Jury, 805 F.2d 155, 162 (6th Cir. 1986). "All reasons for the attorney-client privilege are completely eviscerated when a client consults with an attorney not for advice on past misconduct, but for legal assistance in carrying out a contemplated or ongoing crime or fraud." Here, Plaintiffs have the right to learn the circumstances under which Mauna Kea's scheme was hatched.

3. The legal services were used to facilitate a future fraud, not to obtain legal advice on past conduct.

As Mauna Kea acknowledges, the Wong court held that, in Hawaii, the crime-fraud exception applies and the attorney client privilege "ceases to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing." Mauna Kea's Memo. in support at 10. Here, the advice sought was obviously related to the future wrongdoing: the Plaintiffs purchased the property at The Bluffs in September of 1999. **Exhibit 1**, Stellmacher report at 1. Attached hereto as **Exhibit 11** is Mauna Kea 's privilege log. The log shows that the documents are dated prior to 1999. Mauna Kea was seeking legal advice in the

early 1990s regarding landscape credits and confidentiality agreements[4] at least as early as 1997 and 1998, i.e., *years before it carried out its scheme against Plaintiffs* in September 1999.   Additionally, Mauna Kea acknowledges in deposition testimony that its attorneys knew exactly what was going on and actively participated, even to the point of drafting the confidentiality agreements that were necessary to carry out the scheme.  Thus, Mauna Kea was clearly seeking attorney advice in furtherance of a future fraud, and was not seeking advice on a previous event.

B.   The Confidentiality Agreements Are "At Issue" In This Litigation And Documents Surrounding Them Are Clearly Discoverable.

Mauna Kea's "confidentiality agreements" were part of its secret scheme to hide the actual price at which the lots were selling.  According to Mr. Mielcke, Mauna Kea 's former president, the agreements were authored by its former attorneys.  Hawaii recognizes that when the lawyer's advice is at issue in a case the privilege does not apply. Sameshima v. Yamashiro, 3 Haw. App. 130, 642 P.2d 544 (1982), addressed the issues of client waiver of the privilege and inapplicable attorney work product that occurred before the initiation of the lawsuit.  The Sameshima court held that a claim of attorney client privilege is without merit

---

[4] The log refers to landscape credits and confidentiality agreements, it also refers to amendments and addenda to sales agreements.  MK would hide the landscape credits and insure their confidentiality through addenda or amendments to its sales agreement, see, e.g., the last page of the Federman agreement attached hereto as

when by testifying, the client has waived the privilege. Id. at 135, 642 P.2d at 548. In addition, because "the information sought concerned conversations which [the attorney] had before the instant lawsuit was filed. It, therefore, is clearly not the product of work in connection with the suit in which the deposition was taken. Since those conversations were, in part, at least, the cause of the initiation of the suit, they certainly were discoverable." Id. Here, Mauna Kea 's attorneys worked on the so-called "landscaping credit" scheme and confidentiality agreements in issue, and thus the responsive documents should be produced.

Mauna Kea 's attempt to distinguish Sameshima by noting that Mauna Kea did not initiate this litigation is not convincing. The legal advice received from Mauna Kea's counsel is at issue in this case regardless of who initiated the suit. Mauna Kea's former president has specifically testified that its attorneys were fully informed of the facts surrounding the scheme and even participated in the scheme.

C.    Mauna Kea Waived Any Privilege.

If the privilege ever attached to these documents, Mauna Kea waived the attorney-client privilege. Hawaii Rules of Evidence 511, "Waiver of privilege by voluntary disclosure," provides as follows:

A person upon whom these rules confer a privilege against disclosure waives the privilege if, while holder of the privilege, the person or the

---

**Exhibit 10**.



person's predecessor voluntarily discloses or consents to disclosure of <u>any significant part</u> of the privileged matter. This rule does not apply if the disclosure itself is a privileged communication.    (Emphasis added)

Commentary:

This rule closely resembles Uniform Rule of Evidence 510. <u>The sole justification</u> for any rule of privilege is protection of a personal right of confidentiality that is recognized to be of greater societal importance than the principle of free disclosure of all relevant evidence in a judicial proceeding. <u>Any intentional disclosure</u> by the holder of the privilege <u>defeats this purpose and eliminates the necessity for the privilege in that instance.</u> Consistent with this, <u>waiver of privilege is generally absolute. Once confidentiality has been destroyed by intentional disclosure, the holder of the privilege may not reinvoke it, and the evidence is as admissible as if no privilege had initially existed.</u> (Emphasis added).

The logic behind the application of attorney-client privilege is no longer applicable once the client waives the privilege or interjects privileged communications into the case. <u>See</u> HAW. R. EVID. 511 and its commentary, *supra*.

In the present matter, Mauna Kea has explicitly waived any attorney-client privilege concerning the sales at The Bluffs, "landscape credits" and the confidentiality agreements.  Mr. Mielcke testified without hesitation or objection that his attorneys knew exactly what was going on with the landscaping credit scheme and actively participated in it.  He cannot waive the subject matter of the communications, reveal only so much as he feels like and then hide the remainder. HAW. R. EVID. 511.

In a case cited by Mauna Kea, <u>Save Sunset Beach Coalition v. City &</u>

County of Honolulu, 102 Haw. 465, 485, 78 P.3d 1, 61 (2003) the Court noted that:

> The commentary to this rule [HRE 511] explains that any intentional disclosure by the holder of the privilege defeats [the purpose of the privilege] and eliminates the necessity for the privilege in that instance." Thus, a waiver analysis would focus on whether the disclosure was voluntary. Cf. *Territory v. Cabrinha*, 24 Haw. 621, 626 (1919) (expressing that **"in all cases where a personal privilege exists for a witness to testify or not, if such witness does testify without objection he will be deemed to have done so voluntarily"** (citation omitted)); *Takamori v. Kanai*, 11 Haw. 1, 2 (1897) (holding that the act of "voluntarily" putting defendant's counsel on the witness stand waived the claim of privileged communication).

Here, Mr. Mielcke's voluntary testimony was likely perceived to be in Mauna Kea 's interest so a to present the illusion that Mauna Kea's attorneys went along with what it was doing -- and therefore it must have been appropriate). However, Mauna Kea cannot now slam the door and prevent Plaintiffs from reviewing the actual documents to discover what transpired.

D.     Mauna Kea 's Reliance On Lum's Firm's Advice Operates As A Waiver.

Mauna Kea's reliance on its counsel's advice operates as a waiver of the privilege.  Numerous authorities have recognized that when a party (1) waives the privilege or (2) puts communications at issue or (3) explicitly or implicitly claims to have relied upon the advice of counsel, the attorney-client and work product privileges are waived.  See, e.g., Glenmede Trust Co. v. Thompson, 56 F.3d 476 (3rd Cir. 1995) (finding implied waiver where trust company asserted reliance on advice of counsel as an affirmative defense to claim for breach of fiduciary duty);

United States v. Bilzerian, 926 F.2d 1285 (2nd Cir. 1991) (defendant in securities fraud case impliedly waived attorney-client privilege where he asserted good faith defense).

A case directly on point is Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977 (D.Del. 1982), aff'd, 758 F.2d 668 (1984), cert. denied, 471 U.S. 1066 (1985). The court there held that it would be unfair to allow a party to assert the attorney-client privilege and prevent disclosure while allowing the same party to disclose other selected communications solely for self-serving purposes. In Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975) the Court held that:

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party. The factors common to each exception may be summarized as follows: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. Thus, where these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct.

> The instant case is distinguishable from those discussed above in that the parties asserting the attorney-client privilege are defendants in this civil rights action and, therefore, they have not engaged in the affirmative conduct of instigating this lawsuit. However, defendants assert the privilege in aid of the affirmative defense that they are



> protected from liability by a qualified immunity.  Therefore, all the
> elements common to a finding of waiver are present in this case:
> defendants invoked the privilege in furtherance of an affirmative
> defense they asserted for their own benefit; through this affirmative
> act they placed the protected information at issue, for the legal advice
> they received is germane to the qualified immunity defense they
> raised; and one result of asserting the privilege  has been to deprive
> plaintiff of information necessary to "defend" against defendants'
> affirmative defense, for the protected information is also germane to
> plaintiff's burden of proving malice or unreasonable disregard of his
> clearly established constitutional rights.  Since all the elements of an
> implied waiver exist, defendants must be found to have waived their
> right to assert the attorney-client privilege by virtue of having raised
> the affirmative defense of immunity.

(Emphasis added.)  If a client "testifies to the privileged communications, in part,

this is a waiver as to the remainder of the privileged consultations about the same

subject." E. Cleary, et al., McCormick on Evidence at 194-195 (1972) (citations

omitted).  Such waiver occurs at the "point it becomes unfair for the holder to insist

on having his privilege honored."  2 Weinstein and Berger, Weinstein's Evidence

para. 511 [02] at 511-7 (1988).  The court in In Re National Smelting of New

Jersey, Inc. (D.N.J.) 1989 U.S. Dist. LEXIS 16962, although unpublished, provides

a concise summary of other courts' published decisions discussing the nature and

the scope of the waiver:

> In *Smith v. Alyeska Pipeline Service Co., 538 F.Supp. 977,* (D.Del.
> 1982), aff'd, *758 F.2d 668 (Fed.Cir. 1984),* cert. denied, *471 U.S.
> 1066 (1985).* The court held that it would be unfair to allow a client to
> assert the attorney-client privilege and prevent disclosure while
> allowing the client to disclose other selected communication solely for
> self-serving purposes. *Id. at 979,* quoting *Handgards, Inc. v. Johnson*

*& Johnson*, 413 F.Supp. 926, 919 (N.D.Cal. 1976). The Smith court went on to hold that the plaintiff, by having his attorney send a copy of an opinion letter to defendant, had waived the attorney-client privilege with respect to all communications, including those which post-dated the letter. *538 F.Supp. at 979-982.* Accord, *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136 (D.Del. 1977); *Lee National Corp. v. Deramus*, 313 F.Supp. 224, 225 (D.Del. 1970); *IBM v. Sperry Rand Corp.*, 44 F.R.D. 10 (D.Del. 1968). Similarly, in *Nye v. Sage Products, Inc.*, 98 F.R.D. 452 (W.D. Ill. 1982), the court found that the voluntary disclosure of some confidential documents waives the attorney-client privilege with respect to all documents of the same subject matter. This development was also recognized by the court in *United States v. Aronoff*, 466 F.Supp. 855, 862 (S.D.N.Y. 1979):

*[A] disclosure of, or even merely an assertion about, the communication may effect a waiver of privilege not only as to the communication, but also as to other communications made during the same consultation and communications made at other times about the same subject [citing Haymes v. Smith, 73 F.R.D. 572, 576-77 (W.D.N.Y. 1976); ITT v. United Telephone Corp., 60 F.R.D. [*30] 177, 185-86 (M.D.Fla. 1973)].*

As Professor Wigmore has noted, this concept of "waiver by implication" is based upon consideration of fundamental fairness:

[W]hen [the client's] conduct touches a certain point of disclosure, fairness requires that his privilege shall cease whether he intended that result or not. He cannot be allowed, after disclosing as much as he pleases, to withhold the remainder. He may elect to withhold or to disclose, but after a certain point his election must remain final.

8 Wigmore, supra, § 2327 at 636. See also McCormick on Evidence § 93, at 194 (2d ed. 1972); *Aronoff, supra.*

(Emphasis added). In the present matter because it has served its interests, Mauna Kea has offered the testimony that its attorneys knew about and participated in the execution of its landscaping credit scheme. Obviously Mauna Kea testified to try

and provide the veneer of respectability, in other words to argue to the jury explicitly or implicitly: "Our attorneys went along with this so it must have been ok." Fairness and the above case law mandate that the Plaintiffs be allowed to test these assertions.

Courts do not allow parties to play games by only waiving those parts of the attorney-client communications on the waived subject matter that help the defense while hiding the parts they don't like.   Additionally, the privilege is also waived as to both attorney-client communications and the work product doctrine.  In Harding v. Dana Transp., Inc, 914 F. Supp. 1084, 1095 (D. N.J. 1996) the court held that:

> There is an inherent risk in permitting the party asserting a defense of its reliance on advice of counsel to define the parameters of the waiver of the attorney-client privilege as to that advice. That party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here -- fairness.
>
> The party opposing the defense of reliance on advice of counsel must be able to test what information had been conveyed by the client to counsel and vice-versa regarding that advice -- whether counsel was provided with all material facts in rendering their advice, whether counsel gave a well-informed opinion and whether that advice was heeded by the client.

(Emphasis added.)  Based on the authorities above, once waived, Mauna Kea is not allowed to pick and choose which communications on the subject it would like to

keep hidden and only trot out the ones that supposedly support their position. As noted above, allowing Defendants to engage in such gamesmanship will pervert the fact-finding process and abuse the privilege.

## IV.    **Conclusion**

Based on the above, Plaintiffs respectfully request that the Discovery Master's Order (as adopted by the Magistrate) be upheld and that Mauna Kea be ordered to produce all documents exchanged with Ms. Lum's office regarding (a) confidentiality agreements; (2) the sale of lots at The Bluffs and (c) "landscape credits."

DATED: Honolulu, Hawaii, _____ FEB 1 3 2006 _____.


_____

TERRANCE M. REVERE