DEPOSITION OF YOICHI ASARI VOL II TAKEN ON 05/16/03

*Page 81 to Page 175*

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

# RALPH ROSENBERG COURT REPORTERS, INC.
1001 Bishop Street
2460 Pacific Tower
Honolulu, HI 96813
Phone: (808) 524-2090
FAX: (808) 524-2596

EXHIBIT 5

BSA    DEPOSITION OF YOICHI ASARI VOL II TAKEN ON 05/16/03    XMAX(1/1)

### Page 81

(1) IN THE UNITED STATES DISTRICT COURT
(2) FOR THE DISTRICT OF HAWAII
(3) SANFORD R. ROBERTSON and  ) CIVIL NO. 02-00207
(4) JEANNE ROBERTSON,  )  HG LEK
(5)     Plaintiffs,  )
(6)     vs.  )
(7) MAUNA KEA DEVELOPMENT  )
(8) CORPORATION, a Hawaii  )
(9) corporation, and MAUNA KEA  )
(10) PROPERTIES, INC., a Hawaii  )
(11) corporation,  )
(12)     Defendants.  )
(13) _____)
(14)
(15)     DEPOSITION OF YOICHI ASARI
(16)          VOLUME II
(17) Taken on behalf of Plaintiffs at the Law Offices of
(18) Chun Kerr Dodd Beaman & Wong, Ninth Floor, 745 Fort
(19) Street, Honolulu, Hawaii 96813, commencing at 8:55
(20) a.m., on Friday, May 16th, 2003, pursuant to Notice.
(21)
(22) BEFORE:  PATRICIA ANN CAMPBELL, CSR 108
(23)     Certified Shorthand Reporter
(24)     Notary Public, State of Hawaii
(25)     RALPH ROSENBERG COURT REPORTERS, INC.

### Page 82

(1) APPEARANCES:
(2)
(3)  For Plaintiffs:
(4)     LEROY E. COLOMBE, ESQ.
(5)     GEORGINA W. KWAN, ESQ.
(6)     Chun Kerr Dodd Beaman & Wong
(7)     Ninth Floor
(8)     745 Fort Street
(9)     Honolulu, Hawaii 96813
(10)
(11) For Defendants:
(12)     J. DOUGLAS ING, ESQ.
(13)     Watanabe Ing Kawashima & Komeiji
(14)     First Hawaiian Center, 23rd Floor
(15)     999 Bishop Street
(16)     Honolulu, Hawaii 96813

### Page 83

(1)           I N D E X
(2)
(3)
(4)
(5) EXAMINATION BY:               PAGE
(6)  Mr. Colombe                   88
(7)
(8)
(9)
(10)
(11)
(12)
(13)
(14)
(15) EXHIBITS FOR IDENTIFICATION    PAGE
(16) Exhibit A-2: "Questions and     93
(17) Answers for the Bluffs"
(18) Exhibit A-3: Letter to Board    96
(19) of Directors from Bettina Lum,
(20) dated 12-20-00
(21) Exhibit A-4: "The Bluffs at     98
(22) Mauna Kea Sales Contract"
(23) Exhibit A-5: "Addendum to      102
(24) Sales Contract, The Bluffs at
(25) Mauna Kea"

### Page 84

(1) EXHIBITS FOR IDENTIFICATION    PAGE
(2) Exhibit A-6: "Addendum I to    105
(3) Sales Contract"
(4) Exhibit A-7: Letter to         109
(5) Y. Asari and K. Kawakami from
(6) W. Mielcke, dated 6-4-01
(7) Exhibit A-8: Letter to Mr.     112
(8) and Mrs. Robertson from
(9) W. Mielcke, dated 5-23-01
(10) Exhibit A-9: Letter to         113
(11) W. Mielcke from Y. Asari and
(12) K. Kawakami, dated 6-22-01
(13) Exhibit A-10: Letter to Mauna  119
(14) Kea Development from W. Mielcke,
(15) dated 6-22-01
(16) Exhibit A-11: Letter to Mauna  122
(17) Kea Properties from W. Mielcke,
(18) dated 7-26-01
(19) Exhibit A-12: Letter to        126
(20) Y. Asari from B. Laird, dated
(21) 7-12-01
(22) Exhibit A-13: Letter to        134
(23) Y. Asari and K. Kawakami from
(24) W. Mielcke, dated 6-19-01
(25)

### Page 85

| | | |
|---|---|---|
| (1) | EXHIBITS FOR IDENTIFICATION | PAGE |
| (2) | Exhibit A-14: Letter to | 139 |
| (3) | W. Mielcke from Y. Asari, | |
| (4) | dated 6-29-01 | |
| (5) | Exhibit A-15: Letter to | 143 |
| (6) | Y. Asari from W. Mielcke, | |
| (7) | dated 7-5-01 | |
| (8) | Exhibit A-16: Letter to | 144 |
| (9) | W. Mielcke from G. Kimura, | |
| (10) | dated 7-13-01 | |
| (11) | Exhibit A-17: Letter to | 147 |
| (12) | W. Mielcke from A. Goda, dated | |
| (13) | 7-30-01 | |
| (14) | Exhibit A-18: Fax cover sheet | 155 |
| (15) | dated 9-20-00; Letter to | |
| (16) | B. Lum from R. Gunderson, | |
| (17) | dated 9-20-00 | |
| (18) | Exhibit A-19: Letter to | 169 |
| (19) | K. Kohler from J. Child, dated | |
| (20) | 2-23-99 | |
| (21) | Exhibit A-20: Letter to | 170 |
| (22) | J. Child from J. Bell, dated | |
| (23) | 3-5-99 | |

### Page 86

(1) YOICHI ASARI,
(2) called on behalf of Plaintiffs, was previously duly
(3) sworn to tell the truth, the whole truth, and nothing
(4) but the truth, and testified as follows:
(5)
(6)     MR. COLOMBE: On the record.
(7)     Counsel has just informed me off the record
(8) that Mr. Asari will be available until twelve-thirty
(9) today at which time I have to complete my deposition.
(10) There was no such limitation that I am aware of having
(11) previously been placed on this deposition. It is our
(12) position that we have the right to complete the
(13) deposition today or as long as it takes beyond today.
(14)     Hopefully, I will finish today. I was not
(15) intending on stopping at twelve-thirty. I think it is
(16) unlikely that I will be able to finish by
(17) twelve-thirty, although I will make every effort to do
(18) so, but I do not believe that we are restricted until
(19) twelve-thirty today, and if we are not finished by that
(20) time, I think we are going to have to discuss this
(21) issue a little bit further.
(22)     MR. ING: Well, Counsel, as I indicated, we
(23) will make him available until twelve-thirty today, and
(24) that's based upon the time that we made him available
(25) the last time that your partner chose not to take

### Page 87

(1) advantage of, and without telling us, he cut the
(2) deposition off at eleven a.m. on the previous
(3) deposition date, so our position is that he is just
(4) going to be available for seven hours, and that's it.
(5)     MR. COLOMBE: Okay. First of all, he was
(6) only deposed for two hours on the last session. If we
(7) start at nine o'clock this morning and go until
(8) twelve-thirty, that's only five-and-a-half hours. I
(9) would have an hour-and-a-half left.
(10)     On top of that, there is no seven hour
(11) limit in this case. The parties discovery plan
(12) specifically states that there is no time limit on
(13) depositions, and that discovery plan was adopted by the
(14) court in its pretrial order, so we are certainly not
(15) bound to any seven hour limit as far as we are
(16) concerned.
(17)     MR. ING: I am telling you we are going to
(18) make him available for seven hours, and that's it.
(19)     MR. COLOMBE: Okay. Well, if you are going
(20) to make him available for seven hours, that means we
(21) have him for five hours today then; is that correct?
(22)     MR. ING: No. I said we would make him
(23) available for seven hours.
(24)     MR. COLOMBE: So if I am not done by
(25) twelve-thirty, then this witness is going to leave?

### Page 88

(1)     MR. ING: Yes.
(2)     MR. COLOMBE: Okay, well, we reserve the
(3) right to take whatever action we deem appropriate and
(4) ask the court to issue whatever sanction we believe is
(5) appropriate if he does leave today at twelve-thirty,
(6) but I will make every effort to complete my examination
(7) in a timely manner.
(8)     EXAMINATION
(9) BY MR. COLOMBE:
(10) Q.    Mr. Asari, I am reminding you you are still
(11) under oath. Do you understand that?
(12) A.    Mm-hm.
(13) Q.    I'm sorry. You have to answer out loud.
(14) A.    I'm sorry. Yes, yes.
(15) Q.    My name is Leroy Colombe. I am a partner
(16) in a firm representing the plaintiffs in this case.
(17) You did not see me at your last session.
(18) A.    No.
(19) Q.    My partner Andy Beaman took your
(20) deposition, but I will be proceeding today.
(21) A.    Okay.
(22) Q.    I would like to clarify a couple of points
(23) from the last session of the deposition. Have you had
(24) a chance to review your transcript from the previous
(25) session?

BSA   DEPOSITION OF YOICHI ASARI VOL II TAKEN ON 05/16/03   XMAX(7/7)

### Page 105

(1) that provision in the Robertsons' contract?
(2)   A.   I don't recall.
(3)       (Deposition Exhibit A-6 was marked for
(4)       identification.)
(5)   Q.   (By Mr. Colombe) Mr. Asari, I am showing
(6) you what has been marked as Exhibit A-6 to this
(7) deposition which is entitled addendum one to sales
(8) contract, this particular addendum being pertinent to
(9) lot eleven. Is that your signature at the bottom of
(10) the document?
(11)   A.   Yes, it is.
(12)   Q.   Have you seen this? Do you recall having
(13) seen this document before today?
(14)   A.   No, I don't.
(15)   Q.   This document refers in paragraph two to a
(16) credit of $500,000 for the purpose of landscaping and
(17) grading, do you see that?
(18)   A.   Yes.
(19)   Q.   Were you ever involved in any discussions
(20) regarding giving lot purchasers at the Bluffs a credit
(21) for landscaping and grading?
(22)   A.   I am not sure. I don't remember.
(23)   Q.   The addendum recites that the purchase
(24) price for the lot will be $3,500,000. Do you see that?
(25)   A.   Yes, sir.

### Page 106

(1)   Q.   And it further references the $500,000
(2) credit, correct?
(3)   A.   Yes.
(4)   Q.   So to your understanding, was the actual
(5) purchase price to be $3,000,000 --
(6)   A.   Yes.
(7)   Q.   -- as opposed to 3.5?
(8)   A.   Yes, I do.
(9)   Q.   Do you recall that in several other
(10) instances that the Bluffs purchasers were given credit
(11) for landscaping and grading?
(12)   A.   Yes, I remember there was some other
(13) transactions.
(14)   Q.   Do you recall what the purpose was of
(15) giving lot buyers at the Bluffs a credit for
(16) landscaping and grading?
(17)   A.   I remember that instead of discounting the
(18) sales price, we wanted to give them a credit.
(19)   Q.   So the sales price would actually be, in
(20) terms of what the buyer actually had to pay, it would
(21) be, in this case, for instance, $500,000 less than the
(22) stated sales price, correct?
(23)   A.   That is correct.
(24)   Q.   Do you recall when reporting the sales to
(25) the Bureau of Conveyances whether or not Mauna Kea

### Page 107

(1) referenced the sales price minus the landscaping
(2) credit, or did they reference the sales price not
(3) taking into account the landscaping credit?
(4)   A.   I don't know.
(5)   Q.   Why not simply just discount the sales
(6) price by $500,000? Why use the landscaping credit?
(7)   A.   The reason was we didn't want to change the
(8) sales price.
(9)   Q.   But in point of fact you were changing the
(10) amount that the buyer had to pay, correct?
(11)   A.   That's correct.
(12)   Q.   So why not just change the sales price?
(13)       MR. ING: Object to the form of the
(14) question. Argumentative. You don't have to answer
(15) that question.
(16)       MR. COLOMBE: I don't think that's a proper
(17) instruction, but I will move on.
(18)   Q.   (By Mr. Colombe) Would you please take a
(19) look again at Exhibit A-1 which we showed you last
(20) time? I am directing your attention to page five of
(21) Exhibit A-1 which has the design and material
(22) requirements for roofs. Do you see that?
(23)   A.   Yes, I do. What is this?
(24)   Q.   This is the design guidelines. We showed
(25) you these at the last session of your deposition, do

### Page 108

(1) you remember that?
(2)   A.   Yes, I remember it.
(3)   Q.   Was the design and material requirements of
(4) section 4.6 ever abandoned?
(5)   A.   I don't know, but I don't think so.
(6)   Q.   Okay. As far as you were concerned,
(7) Exhibit 4.6 remained in force and effect?
(8)       MR. ING: I object to the form of the
(9) question. It calls for a legal conclusion.
(10)   A.   I don't know.
(11)   Q.   (By Mr. Colombe) Okay. As things stand
(12) today, do you expect that the lot owners at the Bluffs
(13) who submit designs to the design review committee need
(14) to either comply with section 4.6 or seek a variance
(15) from it?
(16)   A.   Today?
(17)   Q.   Yes.
(18)   A.   Since the design review committee
(19) transferred the power of design review to the home
(20) owner association, I don't know if we have control over
(21) that.
(22)   Q.   Well, regardless of whether or not the
(23) developer still has control over the design review
(24) process, does the developer consider that section 4.6
(25) is still applicable?

174

```
 1                    C E R T I F I C A T E
 2   STATE OF HAWAII             )
 3                               ) SS.
 4   CITY AND COUNTY OF HONOLULU )
 5              I, PATRICIA ANN CAMPBELL, Notary Public, State
 6   of Hawaii, do hereby certify:
 7              That on May 16th, 2003, appeared before me
 8   YOICHI ASARI, the witness whose deposition is contained
 9   therein; that prior to being examined he was by me duly
10   sworn;
11              That the deposition was taken down by me in
12   machine shorthand and was thereafter reduced to
13   typewriting under my supervision; that the foregoing
14   represents to the best of my ability, a true and correct
15   transcript of the proceedings had in the foregoing
16   matter.
17              I further certify that I am not an attorney
18   for any of the parties hereto, nor in any way concerned
19   with the cause.
20              DATED this 16th day of May, 2003, in
21   Honolulu, Hawaii.
22
23              PATRICIA ANN CAMPBELL, CSR 108
24              Notary Public, State of Hawaii
25              My Commission Exp: March 8th, 2006
```