

DEPOSITION OF KATHRIN KOHLER TAKEN ON 01-27-05

*Page 1 to Page 107*

CONDENSED TRANSCRIPT AND CONCORDANCE
PREPARED BY:

# RALPH ROSENBERG COURT REPORTERS, INC.
## 1001 Bishop Street
## 2460 Pacific Tower
## Honolulu, HI  96813
## Phone:  (808) 524-2090
## FAX:  (808) 524-2596



EXHIBIT 8

BSA                    DEPOSITION OF KATHRIN KOHLER TAKEN ON 01-27-05                    XMAX(1/1)

## Page 1

(1)      IN THE UNITED STATES DISTRICT CIRCUIT
(2)         FOR THE DISTRICT OF HAWAII
(3)  WESTERN SUNVIEW        )CASE NO. CV03-00463-DAE/LEK
(4)  PROPERTIES, LLC, et al., )
(5)         Plaintiffs,   )
(6)      vs.                )
(7)                         )
(8)  IRWIN FEDERMAN, et al., )
(9)         Defendants.   )
(10) _____ )
(11)

(12)      DEPOSITION OF KATHRIN KOHLER
(13)
(14)  Taken on behalf of Plaintiffs at the offices of Ralph
(15)  Rosenberg Court Reporters, Incorporated, Suite D212,
(16)  75-170 Hualalai Road, Kailua-Kona, Hawaii, commencing
(17)  at 10:15 a.m. on January 27, 2005, pursuant to Notice.
(18)
(19)  REPORTED BY:
(20)     DEBORAH A. NG, CSR 336
(21)       Registered Professional Reporter
(22)       Notary Public, State of Hawaii
(23)
(24)
(25)

## Page 2

(1)              APPEARANCES
(2)
(3)  For Plaintiffs      TERRANCE M. REVERE, ESQ.
(4)  Western Sunview        Suite 801
(5)  Properties, LLC:     1000 Bishop Street
(6)                    Honolulu, Hawaii 96813
(7)
(8)  For Defendants      LEROY E. COLOMBE, ESQ.
(9)  Irwin Federman,     JOSHUA WISH, ESQ.
(10) et al.:    Chun, Kerr, Dodd, Beaman
(11)                    & Wong
(12)                  9th Floor
(13)                  745 Fort Street
(14)                  Honolulu, Hawaii 96813
(15)
(16) For Defendants      J. DOUGLAS ING, ESQ.
(17) Mauna Kea Properties,   First Hawaiian Center
(18) et al.:          23rd Floor
(19)                  999 Bishop Street
(20)                  Honolulu, Hawaii 96813
(21)
(22)
(23)
(24)
(25)

## Page 3

(1)  For Defendant      JOSEPH P. KAMELAMELA, ESQ.
(2)  County of Hawaii      Department of Corporation
(3)  (By phone):          Counsel
(4)                   Suite 325
(5)                 Hilo Lagoon Centre
(6)                 101 Aupuni Street
(7)                 Hilo, Hawaii 96720
(8)
(9)
(10)
(11)
(12)
(13)
(14)
(15)
(16)
(17)
(18)
(19)
(20)
(21)
(22)
(23)
(24)
(25)

## Page 4

(1)                 INDEX
(2)
(3)  EXAMINATION BY:              PAGE
(4)
(5)   Mr. Revere                   8
(6)
(7)       EXHIBITS FOR IDENTIFICATION
(8)
(9)  Deposition Exhibit 1
(10) Partial transcript of Kathrin Kohler's
(11) deposition, 5/29/03.              15
(12)
(13) Deposition Exhibit 2
(14) Sales contract.               36
(15)
(16) Deposition Exhibit 3
(17) Declaration of Kathrin Kohler.        38
(18)
(19) Deposition Exhibit 4
(20) Fax cover sheet, 3/19/00.         55
(21)
(22) Deposition Exhibit 5
(23) Memo, 5/1/00.                56
(24)
(25)



### Page 5

(1) Deposition Exhibit 6
(2) Letter, 5/11/00.                          56
(3)
(4) Deposition Exhibit 7
(5) Letter, 5/20/00.                          57
(6)
(7) Deposition Exhibit 8
(8) Declaration of Kathrin Kohler.            60
(9)
(10) Deposition Exhibit 9
(11) Letter, 6/19/98.                         64
(12)
(13) Deposition Exhibit 10
(14) Dual agency consent agreement.        64
(15)
(16) Deposition Exhibit 11
(17) Note.                                   70
(18)
(19) Deposition Exhibit 12
(20) Letter, 9/15/98.                         72
(21)
(22) Deposition Exhibit 13
(23) Letter, 9/21/98.                         73
(24)
(25)

### Page 7

(1) Deposition Exhibit 22
(2) Sales contract, Reddys.                   86
(3)
(4) Deposition Exhibit 23
(5) Notes re Federmans.                       88
(6)
(7) Deposition Exhibit 24
(8) Conveyance tax certificate.              89
(9)
(10) Deposition Exhibit 25
(11) Handwritten letter from Mr. Federman.    91
(12)
(13) Deposition Exhibit 26
(14) Handwritten letter from Mr. Federman.    93
(15)
(16) Deposition Exhibit 27
(17) Partial transcript of Yoichi Asari.     102
(18)
(19) Deposition Exhibit 28
(20) Letter, 1/7/97.                         104
(21)
(22)
(23)
(24)
(25)

### Page 6

(1) Deposition Exhibit 14
(2) Handwritten note, 12/21/98.            75
(3)
(4) Deposition Exhibit 15
(5) Note, 12/22 and 12/27.                  77
(6)
(7) Deposition Exhibit 16
(8) Sales contract, Federmans.             78
(9)
(10) Deposition Exhibit 17
(11) Letter, 12/28/98.                        81
(12)
(13) Deposition Exhibit 18
(14) Escrow instructions.                    82
(15)
(16) Deposition Exhibit 19
(17) Letter, 2/1/99                          83
(18)
(19) Deposition Exhibit 20
(20) Handwritten letter, 3/99.              83
(21)
(22) Deposition Exhibit 21
(23) E-mail, 5/10/01.                        85
(24)
(25)

### Page 8

(1)                      KATHRIN KOHLER
(2) called as a witness at the instance of the Plaintiffs,
(3) being first duly sworn to tell the truth, the whole
(4) truth and nothing but the truth, was examined and
(5) testified as follows:
(6)                      EXAMINATION
(7) BY MR. REVERE:
(8)     Q.  Could you state your name for the record,
(9) please?
(10)     A.  Kathrin Kohler.
(11)     Q.  And Mrs. Kohler, do you go by Cha Cha on
(12) occasion?
(13)     A.  Most people call me Cha Cha.  It's my nickname.
(14)     Q.  And where are you currently employed?
(15)     A.  Mauna Kea Realty.
(16)     Q.  And you are the principal broker?
(17)     A.  I am now, yes.
(18)     Q.  And when did you become principal broker?
(19)     A.  June 6, 2001.
(20)     Q.  And I know you were here for the deposition of
(21) Jeanne a few minutes ago, correct?
(22)     A.  Yes.
(23)     Q.  And according to Jeanne, you took over for Tom
(24) Stifler?
(25)     A.  I did.

BSA                          DEPOSITION OF KATHRIN KOHLER TAKEN ON 01-27-05                          XMAX(5/5)

## Page 17

(1) one of us to be the assist, due to the fact that we
(2) had specific sales contracts for that project and also
(3) if realtors and their clients have questions about the
(4) hotel, the club. Many questions arose about the club
(5) situation. We were able to help them.
(6) Q. And how would the commissions work for
(7) assisting realtors?
(8)     MR. ING: Object to the form of the question,
(9) vague and ambiguous. As related to whom?
(10) BY MR. REVERE:
(11) Q. Let's say for that Gifford sale you were just
(12) talking about.
(13) A. Rephrase that question, please.
(14) Q. How were you compensated as an assist for the
(15) Gifford sale?
(16) A. I received a portion of the commission.
(17) Q. And was the commission based upon the actual
(18) consideration paid or the actual
(19) consideration that was paid, plus the landscaping
(20) credit?
(21) A. The net proceeds.
(22) Q. So the landscaping credit would not be a factor
(23) in calculating the commission, correct?
(24) A. Not as far as I know, no.
(25) Q. Would Gifford have an outside realtor involved?

## Page 18

(1) A. Yes.
(2) Q. And who was that realtor?
(3) A. That was Diana Paulson and she was with
(4) MacArthur & Company.
(5) Q. And was Ms. Paulson's commission based upon the
(6) actual consideration paid or the actual consideration
(7) paid, plus the landscape credit amount?
(8) A. I don't really remember and I wouldn't know
(9) because that was handled by somebody else.
(10) Q. That would be handled by Mr. Stifler?
(11) A. Yes.
(12) Q. And your counsel has objected to the phrase
(13) pecking order, but as far as the — I don't know if
(14) chain of command would sound better or what.
(15)     Mr. Stifler was the principal broker in 1999,
(16) correct?
(17) A. Yes.
(18) Q. And under him were yourself and the other
(19) realtors in the Mauna Kea Realty office, correct?
(20) A. Yes.
(21) Q. And Mr. Stifler's bosses were Mr. Asari and
(22) Mr. Mielcke, correct?
(23) A. Yes.
(24) Q. Who had the authority to negotiate prices in
(25) 1999 of lots that were for sale at The Bluffs?

## Page 19

(1) A. I'm sure it was Mr. Mielcke and Mr. Asari.
(2) Q. And so even Mr. Stifler didn't have control
(3) over the amounts that the lots would be sold for,
(4) correct?
(5) A. I don't think so, no.
(6) Q. I asked the question of Jeanne and I'll ask it
(7) of you. Do you ever recall the phrase home office
(8) being used to describe an office in Japan?
(9) A. No, I haven't heard it in the real estate
(10) office, no.
(11) Q. Do you recall if Mr. Mielcke or Mr. Asari ever
(12) called people in Japan to discuss the prices at which
(13) lots would be sold?
(14) A. I wouldn't know. I wouldn't be privy to
(15) something like that.
(16) Q. When did you first hear the phrase landscape
(17) credit?
(18) A. Around the time when we started to sell those
(19) first lots.
(20) Q. And do you know who was the originator of the
(21) idea of using landscape credits?
(22) A. No.
(23) Q. Do you know if Mauna Kea Properties ever sought
(24) a legal opinion as to whether or not landscape credits
(25) should be used?

## Page 20

(1) A. No.
(2) Q. You don't know one way or the other?
(3) A. No.
(4) Q. As far as you know — well, let's back up.
(5)     First of all, a landscape credit, as they were
(6) used at The Bluffs at Mauna Kea, was, basically, a
(7) confidential discount, correct?
(8)     MR. ING: Object to the form of the question.
(9) A. It was an incentive.
(10) BY MR. REVERE:
(11) Q. And the incentive was a lower price that would
(12) be kept confidential, correct?
(13)     MR. ING: Object to the form of the question.
(14)     MR. COLOMBE: Join.
(15)     MR. ING: Vague and ambiguous.
(16) A. It was an incentive to purchase during very
(17) difficult times in the market.
(18) BY MR. REVERE:
(19) Q. And it was basically a discount, though?
(20)     MR. ING: Object to the form of the question.
(21) A. It's a credit. It's a credit that was given.
(22) BY MR. REVERE:
(23) Q. And Jeanne mentioned the difficult times. What
(24) time period are you talking about as far as being
(25) difficult?

## Page 97

(1) would you do anything differently regarding the sales
(2) of The Bluffs at Mauna Kea with regard to keeping
(3) confidential landscape credits confidential?
(4)     MR. ING: Object to the form of the question,
(5) vague and ambiguous, calls for speculation, incomplete
(6) hypothetical.
(7)     MR. COLOMBE: Join.
(8)     A. It would not be my decision whether I'm the
(9) principal broker now or whether I was it then.
(10) BY MR. REVERE:
(11)     Q. Say Mr. Asari said it's up to you, Mrs. Kohler,
(12) if we engage in using confidential landscape credits.
(13)     Would you say it's okay, let's do it, or would
(14) you have an objection to it?
(15)     MR. ING: Object to the form of the question,
(16) vague and ambiguous, calls for speculation, incomplete
(17) hypothetical.
(18)     MR. COLOMBE: Join.
(19)     A. I don't want to speculate on that, but knowing
(20) Mr. Asari he wouldn't have asked me a question like
(21) that.
(22) BY MR. REVERE:
(23)     Q. As a realtor, is it your understanding that
(24) realtors are obligated to treat all parties honestly?
(25)     A. Say that question again.

## Page 98

(1)     MR. ING: Object to the form of the question,
(2) calls for speculation, vague and ambiguous, calls for
(3) a legal conclusion.
(4)     A. What are you referring to, please?
(5) BY MR. REVERE:
(6)     Q. I'm just wondering the standards and practices
(7) of a realtor in Hawaii. Aren't realtors supposed to
(8) treat all parties honestly?
(9)     A. They are supposed to. If they always do, I
(10) don't know, but we do.
(11)     Q. In your opinion has Mauna Kea avoided
(12) exaggeration, misrepresentation or concealment of
(13) pertinent facts relating to properties that it sold?
(14)     MR. ING: Object, vague and ambiguous, overly
(15) broad, calls for speculation.
(16)     A. I work for a very good company and we are
(17) known -- we have a good reputation and we are known to
(18) be honest people.
(19) BY MR. REVERE:
(20)     Q. Is it your understanding that realtors are not
(21) to be parties to the naming of a false consideration
(22) in any document unless it is the naming of an
(23) obviously nominal consideration?
(24)     MR. ING: I'm sorry, I didn't understand the
(25) question so I had a hard time following it, Counsel.

## Page 99

(1)     MR. REVERE: Could you read it back?
(2)     (Record read by the reporter.)
(3)     MR. ING: Object to the form of the question,
(4) vague and ambiguous, also speculation, calls for a
(5) legal conclusion.
(6)     MR. COLOMBE: Join.
(7)     A. I'm not an attorney. I don't know how to
(8) answer that unless you translate that into plain
(9) English to me.
(10) BY MR. REVERE:
(11)     Q. Well, are you familiar with any code of ethics
(12) that's pertinent to realtors?
(13)     A. I most certainly am.
(14)     Q. Are you aware of any provision in the code of
(15) ethics for realtors that reads: Realtors shall not be
(16) parties to the naming of a false consideration in any
(17) document unless it be the naming of an obviously
(18) nominal consideration?
(19)     A. If it's in our code of ethics, then I know I
(20) have read it.
(21)     Q. Given that that's in the code of ethics, how do
(22) you explain the fact that landscape credits were kept
(23) confidential and not reported to the tax department?
(24)     A. It was not my decision. I didn't make that
(25) decision. I had nothing to do with that decision.

## Page 100

(1)     Q. And again, if it didn't occur, you would point
(2) to escrow?
(3)     A. It was not my decision to give landscaping
(4) credits.
(5)     Q. Whose decision was it?
(6)     A. I don't know and I mentioned that before also.
(7)     Q. It was either Mr. Stifler or someone higher
(8) than him?
(9)     A. Exactly, but I don't know who it was.
(10)     Q. Were you involved in the sale of Lot 8 to
(11) Mr. Gunderson?
(12)     A. No.
(13)     Q. Do you know any -- were you involved even
(14) tangentially in that like covering for somebody?
(15)     A. No.
(16)     Q. Are you aware, as we sit here today, that
(17) Mr. Gunderson's sales contract was entered into in
(18) July of 1999?
(19)     A. I don't remember the time for the individual
(20) contracts, no.
(21)     Q. Are you aware of the fact that Mr. Gunderson
(22) received a landscape credit in July of 1999 under his
(23) sales contract?
(24)     A. I found that out yesterday.
(25)     Q. Were you involved in the sale of the Somogye

107

```
1    STATE OF HAWAII          )
                              ) SS.
2    COUNTY OF HAWAII         )

3         I, DEBORAH A. NG, RPR, CSR 336 Notary Public,

4    State of Hawaii, hereby certify:

5         That on January 27, 2005, at 10:15 a.m.

6    appeared before me KATHRIN KOHLER, the witness whose

7    deposition is contained herein;

8         That prior to being examined, the witness was

9    by me duly sworn;

10        That the deposition was taken by me in machine

11   shorthand and was thereafter reduced to typewriting by

12   me;

13        That the foregoing represents, to the best of

14   my ability, a full, true and correct transcript of

15   said deposition.

16        I further certify that I am not attorney for

17   any of the parties hereto, nor in any way concerned

18   with the cause.

19        Dated:  Kailua-Kona, Hawaii, January 27, 2005.

20

21        DEBORAH A. NG, CSR 336
          Registered Professional Reporter
22        Notary Public, State of Hawaii
          My commission expires 6/20/2006
23

24

25
```

Western
CASE: Sunview Properties vs. Irwin Federman          NO: Case # CV03-00463 DAE/LEK

DEPOSITION OF: Kathrin Kohler          DATE TAKEN: January 27, 2005

## CORRECTION SHEET

| PAGE | LINE | CORRECTION | REASON |
|------|------|------------|--------|
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |
|      |      |            |        |

(If additional space is needed, attach a blank sheet)

Signature of Deponent:_____Date:_____

=================================================================

## CERTIFICATE

xxxx  Please be advised that the deponent signed and/or made corrections to the deposition within 30 days of notification.

_____  Please be advised that 30 days have expired and the deponent has failed to read and sign the deposition.

_____  Please be advised that signature and/or corrections received are not being filed with the deposition because they were received and/or signed after 30 days of notification.

_____  Please be advised that the above-named case is going to trial and/or hearing and the deponent has not read and signed the deposition before the filing of this transcript with the Court.

Dated: _3/2/2005          nt_____, Honolulu, Hawaii.

RALPH ROSENBERG COURT REPORTERS

CSR NO. 179

1001 Bishop Street, Suite 2460 American Savings Bank Tower, Honolulu, HI 96813 Ph: (808) 524-2090/Fax: 524-2596

(12/03)

106

        I, KATHRIN KOHLER, hereby certify that I have

read the foregoing typewritten pages 1 through 106,

inclusive, and corrections, if any, were noted by me,

and the same is now a true and correct transcript of

my testimony.

        DATED: Kailua-Kona, Hawaii _February 25, 2005_


        _____

                KATHRIN KOHLER




Signed before me this _23rd_

day of _February_     2005.


_____


Western Sunview Properties vs. Federman, et al.;

Civil No. CV03-00463 DAE/LEK; Deposition taken on

1/27/05 by Deborah A. Ng, RPR, CSR 336.

JAN 3 1 2005

RECEIVED MAR 0 2 2005