IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; and JULIA HANDS, | ) ) ) ) | CIVIL NO.  03-00463 JMS/LEK |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART MAUNA KEA |
| vs. | ) ) | PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT |
| IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORPORATION; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; and DOE CORPORATIONS 1-100, | ) ) ) ) ) ) ) ) ) ) ) | CORPORATION'S MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFFS' FAILURE TO PROVE DAMAGES AND MOTION FOR SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY GUY AND JULIA HANDS |
| Defendants. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART MAUNA KEA
PROPERTIES, INC. AND MAUNA KEA DEVELOPMENT CORPORATION'S
MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFFS' FAILURE
TO PROVE DAMAGES AND MOTION FOR SUMMARY JUDGMENT AS TO
ALL CLAIMS ASSERTED BY GUY AND JULIA HANDS

I. <u>INTRODUCTION</u>

Defendants Mauna Kea Properties, Inc. and Mauna Kea Development Corporation ("the MK Defendants") have filed a total three motions for summary judgment. This order addresses two of these motions.

The MK Defendants' first motion asks the court to grant summary judgment based on the Plaintiffs' failure to prove damages. The MK Defendants' second motion asks the court to grant summary judgment as to all claims asserted by Plaintiffs Guy and Julia Hands ("the Hands"). For the reasons set forth *infra*, both motions are GRANTED IN PART and DENIED IN PART.

II. <u>BACKGROUND</u>

This dispute arises out of the purchase of real estate in the Bluffs at Mauna Kea ("the Bluffs"), a community association located in South Kohala, Hawaii. Plaintiff Western Sunview Properties, LLC ("WSP") owns lot five at the Bluffs; the Hands are the managers of WSP.

The parties agree that on September 20, 1999, the Hands entered into a contract with the Mauna Kea Development Corporation to purchase lot five at the Bluffs for its full list price of $3,250,000. On November 5, 1999, the Hands assigned their interest in the contract to the newly created WSP. On January 24, 2000, WSP completed the purchase of lot five.

The Plaintiffs contend that they were induced to pay full price for lot five because the MK Defendants fraudulently represented that other lots in the Bluffs had sold for the full list price.  The Plaintiffs allege that the MK Defendants discounted other lots by offering purchasers a "landscaping credit" that in effect reduced the price of the lots.  The MK Defendants allegedly concealed this discount by requiring recipients of the credits to sign confidentiality agreements.

The MK Defendants admit that they offered landscaping credits to previous buyers at the Bluffs.  They also admit to entering into confidentiality agreements with the buyers who received credits.  The MK Defendants deny that they made misrepresentations to the Plaintiffs and that the Plaintiffs relied on any alleged misrepresentations.  The MK Defendants' principal argument, however, is that the Plaintiffs have not suffered damages.  The MK Defendants contend that the market for properties at the Bluffs had begun to improve by the time WSP purchased the property and therefore WSP would not have been able to purchase lot five for less than the full list price.

The Plaintiffs argue that the fair market value of the lots at the Bluffs had not yet begun to increase when WSP purchased lot five.  The Plaintiffs contend that they were damaged by the MK Defendants' misrepresentations

because the Plaintiffs would not have purchased lot five for its full list price had they known about the discounts on previous lots.

On September 14, 2004, Judge David Alan Ezra entered an order in this case granting in part and denying in part a motion for summary judgment brought by defendants Irwin and Concepcion Federman ("the Federmans").[1] *Western Sunview Props., LLC v. Federman*, 338 F. Supp. 2d 1106 (D. Haw. 2004). In that order, Judge Ezra made several rulings that have a direct bearing on the issues presented in the instant motions. Specifically, Judge Ezra concluded that: (1) the Federmans made a misrepresentation concerning the sale price of their lot and a jury could conclude that this misrepresentation amounted to fraud; (2) there are genuine issues of material fact concerning whether the Plaintiffs relied on misrepresentations about the sale prices of other lots and whether the Plaintiffs suffered damages as a result; (3) WSP is a "consumer" as this word is defined in Hawaii Revised Statutes (HRS) § 480-1; and (4) real property is not a "commodity" as this word is defined in HRS § 480-1.

The court heard arguments from the parties on January 24, 2006.

---

[1]The Federmans, owners of lot six (adjacent to the Plaintiffs' lot), subsequently reached a settlement agreement with the Plaintiffs and are no longer parties in this case.

## III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

## IV.  <u>DISCUSSION</u>

A.     <u>The MK Defendants' motion for summary judgment based on the Plaintiffs' failure to prove damages is GRANTED IN PART and DENIED IN PART</u>

The MK Defendants contend that the Plaintiffs have suffered no damages, such that the MK Defendants are entitled to summary judgment as to the Plaintiffs'  HRS chapter 480, negligent misrepresentation, fraud, and HRS chapter

484 claims.  Based on the following, the court GRANTS summary judgment in favor of the MK Defendants as to WSP's HRS § 480-2 claim and as to the entire HRS § 480-4 claim, and DENIES this motion in all other respects.

### 1.    HRS chapter 480

The MK Defendants raise a number of objections to the Plaintiffs' HRS chapter 480 claims.  First, the MK Defendants contend that Judge Ezra erred in permitting WSP to proceed with a claim under HRS § 480-2 because WSP is not a "consumer" as required by statute.  Second, the MK Defendants contend that Judge Ezra erred in allowing the Hands to proceed with their HRS § 480-2 claim because the Hands lack standing and because the Hands have not suffered any damages.  Third, the MK Defendants argue that they are entitled to summary judgment as to the Plaintiffs' HRS § 480-4 claims.  Each of these issues is addressed in turn.

### a.    WSP is not entitled to proceed with a claim for damages under HRS § 480-2

HRS § 480-2 provides in relevant part that "[n]o person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section."  HRS § 480-1 defines "consumer" as "a natural person who, primarily for personal, family, or household purposes, purchases, attempts to

6

purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment." Based on the plain language of HRS §§ 480-1 and 480-2, the Hawaii courts have held that a corporation is not a "consumer" and is therefore not entitled to bring an action under HRS § 480-2. *See McElroy v. Maryl Group*, 107 Haw. 423, 435, 114 P.3d 929, 941 (App. 2005) ("At the outset, it is evident that McElroy Inc. does not have standing to bring suit under this chapter because a corporation is not a natural person." ). Consequently, because WSP is a corporation, the court GRANTS the MK Defendants' motion for summary judgment as to WSP's HRS § 480-2 claim.

    b.  <u>The Hands are entitled to proceed with their HRS § 480-2 claim</u>

    The MK Defendants argue that the Hands are not entitled to proceed with their HRS § 480-2 claim because the Hands do not have standing and because the Hands have suffered no damages. Each of these contentions is without merit.

    **i.  Standing**

    The MK Defendants first argue that the Hands are not "consumers" within the meaning of HRS § 480-2 because they did not purchase the property for "personal, family, or household purposes" and did not "commit[] money, property, or services in a personal investment." HRS § 480-1. This argument is without merit. As the Hawaii Supreme Court has stated, "real estate or residences qualify

as 'personal investments' pursuant to HRS § 480-1." *Cieri v. Leticia Query Realty, Inc.*, 80 Haw. 54, 69, 905 P.2d 29, 44 (1995).

The court assumes that there are, essentially, two reasons why the Hands may have entered into a contract to purchase this property:  as a vacation home for themselves or as rental property for additional income.  In other words, the Hands began the transaction with the MK Defendants because they wanted the property for a personal purpose or because they wanted the property as a personal investment.  Although WSP was the entity that eventually completed the transaction, the Hands may nevertheless proceed with their HRS § 480-2 claim for any damages they suffered as individuals in negotiating the transaction. *Zanakis-Pico v. Cutter Dodge, Inc.*, 98 Haw. 309, 316, 47 P.3d 1222, 1229 (2002) ("[N]o actual purchase is necessary as a prerequisite to a consumer recovering damages under HRS § 480-13, based on injuries stemming from violations of HRS § 480-2.").[2]  Consequently, the Hands have standing to bring their HRS § 480-2 claim.

---

[2] In *Zanakis-Pico*, the consumers' only injury was the three to five dollars in gasoline the consumers spent responding to the defendant's deceptive advertisement; if a consumer may proceed with a § 480-2 claim without even having entered into a contract to purchase goods or services, as was the case in *Zanakis-Pico*, then HRS § 480-2 surely protects individuals such as the Hands who incurred (at the very least) nominal expenses in negotiating the contract.

### ii.    Damages

The MK Defendants' second argument is that the Hands have failed to allege any damages, such that their HRS § 480-2 claim should be dismissed.  This argument is similarly without merit.  As the Hawaii Supreme Court explained in *Zanakis-Pico*, 98 Haw. at 319, 47 P.3d at 1232, "a consumer who is injured as a result of attempting to purchase goods or services by virtue of an act or practice prohibited by HRS § 480-2 may recover damages under HRS § 480-13.  No actual purchase is necessary."  Thus, so long as the Hands have suffered *some* injury as a result of the allegedly unfair and deceptive trade practice, the Hands will be entitled to recover under HRS § 480-2.  The Hands have alleged that they suffered some damages here, including expenses in negotiating the transaction (long-distance telephone calls, travel expenses, etc.) and establishing WSP to complete the transaction.  These alleged injuries, standing alone, are sufficient to satisfy HRS § 480-2's requirement that the consumer-plaintiff be "injured by any unfair or deceptive act or practice."  Therefore, the court DENIES the MK Defendants' motion for summary judgment as to the Hands' HRS § 480-2 claim.

### c.    The MK Defendants are entitled to summary judgment as to the Plaintiffs' HRS § 480-4 claim

In his September 15, 2004 order, Judge Ezra concluded that the Plaintiffs could not proceed on a claim against the Federmans brought under HRS

§ 480-4.  HRS § 480-4 provides in relevant part that no person shall "[f]ix, control, or maintain, the price of any commodity"; HRS § 480-1 states that "'[c]ommodity' includes, but is not restricted to, goods, merchandise, produce, choses in action,[3] and any other article of commerce.  It also includes trade or business in service trades, transportation, insurance, banking, lending advertising, bonding, and any other business."  Judge Ezra granted summary judgment in favor of the Federmans as to the Plaintiffs' HRS § 480-4 claim because he concluded that "although the statute defined the word 'commodity' to include 'any other business,' the purchase of real estate by an individual owner cannot be considered a business under the Hawai'i statute[.]"  *Western Sunview*, 338 F. Supp. 2d at 1124 (citing *Moore v. Jas. H. Matthews & Co.*, 550 F.2d 1207, 1214 (9th Cir. 1977) for the proposition that cemetery lots were not "commodities" under the Clayton Act, 15 U.S.C. § 14).

The court agrees with Judge Ezra and concludes that the reference to "commodity" in HRS chapter 480 does not encompass real property.  *See Souza v.*

---

[3] A "chose in action" is:

> **1.** A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort.  **2.** The right to bring an action to recover a debt, money, or thing.  **3.** Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit.

*Black's Law Dictionary* 234 (7th ed. 1999).

*Estate of Bishop*, 594 F. Supp. 1480, 1482 n.2 (D. Haw. 1984) ("In common parlance the word 'commodity' is not used to describe real estate, and the dictionaries, both general and legal, defining 'commodity' use the words 'personal' and 'movable' and do not use the term 'real estate.'"); *see also* HRS § 480-3 ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes[.]"); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 652 (N.D. Cal. 1978) ("Since real estate is not a commodity, plaintiffs cannot state a cause of action under the Clayton Act."), *affirmed by Valerio v. Boise Cascade Corp.*, 645 F.2d 699 (9th Cir. 1981) (per curiam) ("We now adopt [the district court's] opinion."); *cf. Cieri v. Leticia Query Realty, Inc.*, 80 Haw. 54, 66, 905 P.2d 29, 41 (1995) (holding that, "for purposes of determining whether a plaintiff has standing to sue for unfair and deceptive trade acts or practices as a 'consumer' pursuant to HRS § 480-13, real estate and residences are not 'goods' as that term is utilized in HRS § 480-1").  Consequently, the court GRANTS the MK Defendants' motion for summary judgment as to the Plaintiffs' HRS § 480-4 claim.

### 2.    Fraud and misrepresentation

The Plaintiffs contend that the MK Defendants committed fraud and/or misrepresented the value of the property by giving other purchasers secret "landscaping credits."  The MK Defendants argue that they are entitled to summary

judgment as to the Plaintiffs' fraud and negligent misrepresentation claims because the Plaintiffs are unable to prove that: (1) the Plaintiffs suffered substantial pecuniary damages; (2) the MK Defendants made false representations; or (3) the Plaintiffs relied on the sales prices of other lots when making an offer for lot five. The MK Defendants also argue that, as a matter of law, they exercised reasonable care and that any reliance by the Plaintiffs was unreasonable. The court disagrees.

        a.    <u>Damages and reliance</u>

As to the Plaintiffs' negligent misrepresentation and fraud claims against the Federmans, Judge Ezra found genuine issues of material fact as to whether the Plaintiffs suffered damages and whether the Plaintiffs relied on the information provided by the Federmans. *Western Sunview*, 338 F. Supp. 2d at 1122. Judge Ezra also found a genuine issue of material fact, relevant to the Plaintiffs' fraud claim, as to whether the Federmans contemplated the Plaintiffs' reliance on this information. *Id.* at 1119. This court, after carefully reviewing the evidence, finds that a genuine issue of material fact exists as to whether the Plaintiffs suffered damages because of the MK Defendants' alleged misrepresentations, whether the Plaintiffs relied on the information provided by the MK Defendants, and whether the MK Defendants contemplated the Plaintiffs' reliance on this information.

Judge Ezra's rulings on the motion for summary judgment brought by the Federmans -- who also purchased property from the MK Defendants -- apply with equal force to a motion for summary judgment brought by the MK Defendants against the Plaintiffs. The only discernable difference between the motion brought by the Federmans and the instant motion is that the Plaintiffs' case against the MK Defendants, as the creators of the landscaping credit and confidentiality agreement, is almost certainly stronger than the Plaintiffs' case brought against the Federmans as purchasers.

The MK Defendants also argue that the Plaintiffs' reliance on their statements was unreasonable. Summary judgment is inappropriate as to this claim. *See Matsuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 166, 73 P.3d 687, 704 (2003) ("[G]enerally, whether one has acted reasonably under the circumstances is for the trier of fact to determine. . . . [R]easonable minds could differ as to the reasonableness of the [plaintiffs'] reliance upon [the defendant's] representations."). Given the great efforts undertaken by the MK Defendants to hide the true selling prices of lots, the court cannot conclude that any reliance by Plaintiffs was unreasonable as a matter of law.

b.    <u>False representations and reasonable care</u>

The MK Defendants contend that they are entitled to summary judgment because they did not make false representations and they exercised reasonable care.  These arguments are without merit.  The MK Defendants' contention that they did not make false representations is, at best, a question for the jury.  Judge Ezra found that the Federmans "did make a false representation that they knew to be false."  *Western Sunview*, 338 F. Supp. 2d at 1119.  At this point in the proceedings, there is overwhelming evidence that the MK Defendants made false statements; nevertheless, at the present time, the court is not required to make findings as to whether the MK Defendants made false statements.  Instead, the court is merely required to decide whether the MK Defendants are correct in their contention that all their statements were true and that there is no genuine issue of material fact as to the veracity of their statements.  Simply put, the MK Defendants' argument that summary judgment is appropriate is specious.  The MK Defendants offered credits to some buyers and required those buyers to enter into confidentiality agreements; the MK Defendants then allegedly reported the "inflated" purchase prices to the Plaintiffs.  Therefore, at the very least, there is a factual question as to whether the MK Defendants made false statements.

The MK Defendants' argument that they exercised reasonable care is without merit for the same reasons.

    c.    <u>WSP's ability to bring certain claims</u>

The MK Defendants also argue that WSP should not be permitted to proceed with its misrepresentation, fraud, HRS chapter 480, or HRS chapter 484 claims. They contend that the alleged misrepresentations made to the Hands cannot be imputed to WSP because WSP did not exist at the time the alleged misrepresentations were made. The MK Defendants are incorrect.[4]

In *Kohala Agriculture v. Deloitte & Touche*, 86 Haw. 301, 949 P.2d 141 (App. 1997), the Hawaii Intermediate Court of Appeals ("ICA") rejected this argument. *Kohala Agriculture* presents facts similar to those in the instant case: after the defendant had supplied faulty accounting information to its corporate client, several principals of that corporate plaintiff formed a new corporate entity and relied on the accounting information provided by the defendant. The ICA looked to Section 552 of the Restatement (Second) of Torts[5] and concluded that

---

[4] As discussed *supra*, however, WSP is not entitled to proceed under HRS chapter 480.

[5] Restatement (Second) of Torts § 552 (1977), entitled "Information Negligently Supplied For The Guidance Of Others," provides:

        (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their

        (continued...)

"the supplier of information owes a duty of reasonable care and competence in

obtaining and communicating that information to persons who fall within the scope

of section 552(2)." *Id.* at 323, 949 P.2d at 163. In its opinion on the defendant's

motion for reconsideration, the ICA rejected the defendant's argument that,

because the new corporate plaintiff did not exist at the time the defendant supplied

the accounting information, "any 'intent to benefit' [the new corporate plaintiff],

required for liability to attach under section 552, was 'an impossibility.'" *Id.* at 330

n.3, 949 P.2d at 170 n.3. Instead, the ICA looked to § 552 and concluded that the

---

[5](...continued)

business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a)    by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b)    through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

defendant could be liable to the new corporation even if the defendant did not

know of the new corporation's identity -- because the new corporation did not yet

exist -- when the defendant furnished the accounting information. *Id.* ("It would be

sufficient if [the defendant] knew that the report would be supplied to the

principals of a new limited partnership to be formed . . . to be used as a basis for [a

future contract]."). In *Kohala Agriculture*, there existed a genuine issue of material

fact as to whether the defendant "intend[ed] [the misrepresentation] to reach and

influence either a particular person or persons, known to him [or her], *or a group

or class of persons*, distinct from the much larger class who might be reasonably be

expected sooner or later to have access to the information and foreseeably to take

some action in reliance upon it." *Id.* (quoting Restatement (Second) of Torts § 552

cmt. h) (final bracketed item in original). In the instant case, there likewise exist

genuine issues of material fact as to whether the MK Defendants intended WSP to

rely on their alleged misrepresentations or whether the MK Defendants knew that

the Hands "intend[ed] to transmit the information to" WSP. *Id.* (quoting

Restatement (Second) of Torts § 552 cmt. h) (emphasis omitted from original).

Similarly, in *Chun v. Park*, 51 Haw. 462, 462 P.2d 905 (1969), the

Hawaii Supreme Court cited section 552[6] in concluding that a title company that

prepared a title search on behalf of the seller owed a duty to the buyer of that

property, even though no contract existed between the buyer and the title company.

The Supreme Court concluded that:

> [I]t would be contrary to the rule of fair play to hold that the
> defendant company did not owe the [lender] and the plaintiffs a
> duty to use reasonable or ordinary care in the preparation of the
> certificate of title search because the very purpose of the
> document was to show to both of them, as well as the seller,
> that the seller had good marketable title, free and clear of all
> encumbrances.

*Id.* at 464-65, 462 P.2d at 907.  Although *Chun* does not directly address the issue

presented in *Kohala Agriculture* -- that is, the ability of a corporate plaintiff to

proceed on a claim for negligent misrepresentation when the corporate plaintiff

was not in existence at the time the misrepresentation was made -- the case

nevertheless supports the ICA's holding that "'the liability of the maker of a

negligent misrepresentation is limited to the transaction that he [or she] intends, or

knows that the recipient intends, to influence, or a substantially similar

---

[6] "As noted by the supreme court in *State by Bronster v. U.S. Steel Corp.*, 82 Hawai'i 32, 41, 919 P.2d 294, 303 (1996), in *Chun v. Park*, 51 Haw. 462, 462 P.2d 905 (1969), the supreme court actually relied upon section 552 (Tentative Draft No. 12, 1966).  However, in *U.S. Steel* the supreme court stated that the version of section 552 in Tentative Draft No. 12 is the same as the version published in 1977."  *Kohala Agric.*, 86 Haw. at 322 n.37, 949 P.2d at 162 n.37.

18

transaction.'" *Kohala Agric.*, 86 Haw. at 320, 949 P.2d at 160 (quoting

Restatement (Second) of Torts § 552 cmt. j) (alteration in original).

In sum, the Hands and WSP are entitled to proceed on their claims for

negligent or intentional misrepresentation/fraud, and the MK Defendants'

allegation that there were no misrepresentations made after WSP was formed will

not bar WSP from proceeding with these claims.  While the Plaintiffs will not be

entitled to a double recovery on their tort claims, the Defendants will not be

relieved of liability for any misrepresentation or fraud simply because the Hands

decided to form a corporation to complete the purchase of the property.

Consequently, the court DENIES the MK Defendants' motion for summary

judgment as to these claims.

### 3.    HRS chapter 484

The MK Defendants contend that they are entitled to summary

judgment as to the Plaintiffs HRS chapter 484 ("Uniform Land Sales Practices

Act") claim.  The MK Defendants argue that summary judgment is proper because:

(1) they did not make any untrue statements; (2) the Plaintiffs had actual or

constructive knowledge of the landscaping credits given to other purchasers;

(3) the Plaintiffs did not rely on the selling prices of other lots; and (4) the MK

Defendants, in reporting "inflated" sales prices rather than "actual" sales prices,

were attempting to comply with HRS § 247-2 (levying a conveyance tax "based on the actual and full consideration" paid for property).

Once again, the MK Defendants' arguments are without merit. Genuine issues of material fact exist as to whether the MK Defendants made untrue statements, whether the Plaintiffs relied on these statements, and whether the Plaintiffs had actual or constructive knowledge of the landscaping credits. *See Western Sunview*, 338 F. Supp. 2d at 1122. The MK Defendants' final argument -- that the MK Defendants were simply trying to comply with an ambiguous statute -- is similarly without merit. The MK Defendants are essentially stating that HRS § 247-2 *required* them to make false statements. This is absurd, and the court rejects this interpretation of HRS § 247-2. *See* HRS § 1-15 ("Where the words of a law are ambiguous . . . [e]very construction which leads to an absurdity shall be rejected."). Furthermore, the plain language of the statute contradicts the MK Defendants' contention: HRS § 247-2 provides that "[t]he tax imposed by section 247-1 shall be based on the *actual* and full consideration . . . paid or to be paid[.]" (Emphasis added.)

In short, there is a genuine issue of material fact as to whether the MK Defendants violated HRS chapter 484. Therefore, the court DENIES the MK Defendants' motion as to the Plaintiffs' HRS chapter 484 claim.

B.      The MK Defendants' motion for summary judgment as to all claims asserted
        by the Hands is GRANTED IN PART and DENIED IN PART

        The MK Defendants' second motion for summary judgment asks the

court to grant summary judgment as to all claims brought by the Hands.  The MK

Defendants contend that, because the Hands assigned all their rights under the sales

contract to WSP, WSP is the only proper plaintiff.  Based on the following, the

MK Defendants' motion is GRANTED IN PART and DENIED IN PART.

        The Plaintiffs' First Amended Complaint sets forth seventeen counts.

In the afternoon session of the hearing on the Defendants' motions, the Plaintiffs

stated that the Hands, as individuals, are only seeking relief on the following

counts:  Count 3 (negligent or intentional misrepresentation/fraud); Count 5

(violation of HRS chapter 480); and Count 6 (violation of HRS chapter 484); along

with Counts 15 through 18 (seeking various forms of relief, including attorneys'

fees, punitive or exemplary damages, injunctive relief, and declaratory relief).

        Based on the following, the court concludes that the Hands may

proceed with their negligent or intentional misrepresentation/fraud, HRS § 480-2,

and HRS chapter 484 claims.  As discussed *supra*, the Hands may not proceed with

their HRS § 480-4 claim.  Therefore, the MK Defendants' motion is GRANTED

IN PART and DENIED IN PART.  Each Count is addressed in turn.

### 1.     Negligent or intentional misrepresentation/fraud

The MK Defendants argue that WSP is the only entity authorized to proceed against them; again, the MK Defendants argue that because the Hands assigned the sales contract to WSP, the Hands are no longer entitled to pursue their claims for misrepresentation or fraud against them.

The MK Defendants are incorrect.  As set forth in *Zanakis-Pico*, 98 Haw. at 321-22, 47 P.3d at 1234-35, claims for negligent misrepresentation and fraud sound in tort and do not depend on the existence of a contract.  There is no evidence to suggest that the Hands assigned their tort claims to WSP, and the court is not persuaded by the MK Defendants' arguments that the Hands' tort claims disappear once they assign their contractual rights to a third party.

### 2.     HRS § 480-2

The MK Defendants contend that the Hands are not entitled to proceed on their HRS § 480-2 claim because they assigned their interest in the sales contract to WSP.  The MK Defendants are again incorrect.  As with the negligent misrepresentation and fraud claims, a claim based on HRS § 480-2 sounds in tort and does not depend on the existence of a contract.  Therefore, the MK Defendants' motion is DENIED as to the Hands' HRS § 480-2 claim.

### 3.    HRS chapter 484

The MK Defendants are not entitled to summary judgment as to the Hands' HRS chapter 484 claim. HRS § 484-16[7] allows a "purchaser" of property to recover from the seller. "Purchaser," however, is defined in HRS § 484-1 as "a person[8] who acquires *or attempts to acquire* or succeeds to an interest in land." (Emphasis added.) Like HRS chapter 480, HRS chapter 484 does not require a contractual relationship between the plaintiff and the defendant. Therefore, the Hands' assignment of their contractual rights to WSP does not deprive them of their HRS chapter 484 claim, and the MK Defendants' motion is DENIED as to the Hands' HRS chapter 484 claim.

---

[7] HRS § 484-16(a) provides:

> Any person who disposes of subdivided lands in violation of section 484-4, or who in disposing of subdivided lands makes an untrue statement of a material fact, or who in disposing of subdivided lands omits a material fact required to be stated in a registration statement, an application, or public offering statement or necessary to make the statements made not misleading, *is liable as provided in this section to the purchaser* unless in the case of an untruth or omission it is proved by the subdivider that the purchaser knew of the untruth or omission, or that the person offering or disposing of subdivided lands did not know and in the exercise of reasonable care of a person in such person's occupation could not have known of the untruth or omission, or that the purchaser did not rely on the untruth or omission.

(Emphasis added.)

[8] "Person" includes both individuals and corporations. HRS § 484-1.

23

## V.  CONCLUSION

For the reasons stated herein, the MK Defendants' motions for summary judgment based on the Plaintiffs' failure to prove damages and the Hands' standing as plaintiffs are GRANTED IN PART and DENIED IN PART. Based on the foregoing analysis, as well as on the representations of Plaintiffs' counsel at the January 24, 2006 hearing (as to which claims applied to WSP, which claims applied to the Hands, and which claims applied to all Plaintiffs), the following claims for relief asserted against the MK Defendants remain:[9]

(1)     Count 2:  WSP's claim for Breach of Governing Documents and Protective Covenants, Conditions, and Restrictions;

(2)     Count 3:  the Plaintiffs' (WSP's and the Hands') claims for Negligent or Intentional Misrepresentation/Fraud;

(3)     Count 5:  the Hands' HRS § 480-2 claim;

(4)     Count 6:  the Plaintiffs' HRS chapter 484 claim;

(5)     Count 7:  WSP's claim for breach of contract;

(6)     Count 8:  WSP's claim for Breach of Warranty and/or Guarantee;

(7)     Count 9:  WSP's claim for Violation of Easement;

---

[9] This list contains all the claims remaining after disposition of only two of the MK Defendants' motions for summary judgment.  This list is subject to revision after disposition of the MK Defendants' remaining motion for summary judgment.

(8)     Count 10:  WSP's claim for Negligence;

(9)     Count 11: WSP's claim for Breach of Covenant of Good Faith and

Fair Dealing;

(10)    Count 12:  WSP's claim for Breach of Fiduciary Duty;

(11)    Count 14:  WSP's claim for Conspiracy/Joint and Several Liability;

and

(12)    The Plaintiffs' claims for punitive damages, attorneys' fees, and other

relief.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 6, 2006.



J. Michael Seabright
United States District Judge

*Western Sunview Properties, LLC. et al. v. Irwin Federman et al.*, Civ. No.  03-00463 JMS/LEK; Order Granting in Part and Denying in Part Mauna Kea Properties, Inc. and Mauna Kea Development Corporation's Motion for Summary Judgment Based on Plaintiffs' Failure to Prove Damages and Motion for Summary Judgment as to All Claims Asserted by Guy and Julia Hands