FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE M. DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email address: ddixon-thayer@flk.com

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Corporation

TERRANCE M. REVERE 5857-0
JACQUELINE E. THURSTON 7217-0
BRIANNE L. ORNELLAS 8376-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii 96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910
Email Address: terry@myrhawaii.com

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION | Civil No. 03-00463 JMS LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br><br><br>(*caption continued*) |

| | |
|---|---|
| S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>                    Defendants. | **PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO THE MAUNA KEA DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO ALL SPECIAL SETBACK AND PUNITIVE DAMAGES CLAIMS**<br><br>TRIAL: To Be Determined |

Plaintiff Western Sunview Properties, LLC ("Western Sunview"), Guy Hands, and Julia Hands (collectively, "Plaintiffs") respectfully submit this supplemental brief in opposition to Defendants Mauna Kea Properties, Inc. and Mauna Kea Development Corp.'s (collectively, the "MK Defendants") Motion for Summary Judgment as to All Special Setback and Punitive Damages Claims (the "Motion").

## I. INTRODUCTION

The MK Defendants are responsible – just as the Association is – for failing to enforce the CC&Rs and Design Requirements at The Bluffs. As the developer, the MK Defendants had the affirmative duty to enforce the governing documents that it promulgated during the period that it controlled the Design Committee. Its failure to do so is what has led directly to the present lawsuit and many other lawsuits at The Bluffs. Indeed, it is precisely because the Developer has the most opportunity to create mischief that it is held to an even higher standard than the Association. *See, e.g.*, RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 6.20. The RESTATEMENT seeks to prevent the very thing that happened here – the Association relying on the misconduct and failure of the Developer in enforcing its governing documents to excuse its own misconduct.

1

Both the MK Defendants and the Association are jointly responsible for the situation at The Bluffs – at the very least, there is a triable issue of fact as to who is liable to Plaintiffs. The legal rulings made by the State Court, and the unanimous findings by the State Court jury, in the parallel action *Western Sunview Properties, LLC v. Leone-Perkins Family Trust, et al.*, Civ. No. 04-1-212, Circuit Court of the Third Circuit, State of Hawaii (February 10, 2006) ("*Leone*") are relevant and applicable here, and have a direct effect on the MK Defendants' Motion.[1] The MK Defendants' Motion should be denied for the following reasons:[2]

First, the State Court ruled in *Leone* that, in determining whether a design review committee's decision was unreasonable, the decision-making process must be taken into account. Here, there is no dispute that part of the decision-making associated with the Federmans' lot occurred when the MK Defendants controlled the Design Committee. As shown in Plaintiff's Opposition to the MK Defendants' Motion, the MK Defendants' decision-making process was rife with conflicts of interest and, therefore, unreasonable.

---

[1] Arguments in Plaintiffs' Supplemental Opposition to the Association's Motion are equally applicable against the MK Defendants. Specifically, Plaintiffs refer to and incorporate herein the arguments at Sections III.B-D of the Supplemental Opposition to the Association's Motion, and will not repeat those same arguments here.

[2] These arguments are made in addition to (and not in place of) the arguments made by Plaintiffs in their Opposition to the MK Defendants' Motion.

2

Indeed, triable issues of fact exist concerning how much of the decision-making process occurred during the time that the MK Defendants controlled the Design Committee. The Association's architect testified in a deposition in this action that all the important decisions regarding the Federmans' construction in the special setback area were made when the MK Defendants – not the Association – controlled the Design Committee. Thus, there is at least a triable issue of fact as to whether the MK Defendants are liable to Plaintiffs.

Second, the State Court ruled in *Leone* that, in assessing unreasonableness, the consequences of a decision must also be taken into account. Here, there are triable issues of fact regarding the consequences of the MK Defendants' decisions. The Association argued in *Leone* that numerous lots at The Bluffs received variances; many of these variances were granted when the MK Defendants controlled the Design Committee. Since earlier decisions by the MK Defendants contributed to the decisions made by the Association, the MK Defendants should answer for these decisions at trial. Just as the rules governing the Design Committee's decisions must not differ depending on the forum, the MK Defendants should not be held to a lesser standard than the Association. Indeed, the MK Defendants should be held to an even higher standard, both because they were the developers of The Bluffs and therefore profited from granting early variances, and because the early

decisions made by the MK Defendants are used by the Association to justify its later decisions.

## II. ARGUMENT

### A. The State Court Has Ruled That The Decision-Making Process Must Be Considered, And The Decision-Making Process Of The MK Defendants Was Unreasonable.

The Bluffs' governing documents provide that in order to protect view planes, "[n]o building or structure shall be placed within the special setback areas . . . ." Plaintiffs' Separate Concise Statement Facts in Opposition to the MK Defendants' Motion for Summary Judgment on Special Setback Claims (filed 1/5/06) ("Plaintiffs' CSOF") 33. Despite this clear requirement, the Federmans were allowed to install 3,500 square feet of a pool-spa complex entirely within the special setback area. *See, e.g.*, Plaintiffs' CSOF at 36, 39.

In *Leone*, the State Court instructed the jury that, in determining whether a decision was unreasonable, "you are to take into consideration both the process used in reaching the decision and the consequences of the decision." Declaration of Denelle M. Dixon-Thayer ("Dixon-Thayer Decl."), Exhibit ("Ex.") 158 at 10:15-19.

At the very least, there are triable issues of fact concerning the MK Defendants' liability for the decisions associated with the Federmans' plans. There is no dispute that at least part of the decision-making process regarding

4

the Federmans' plans occurred when the MK Defendants controlled the Design Committee. Moreover, based on the evidence that Plaintiffs presented in opposing both the MK Defendants' Motion and the Association's Motion, there is substantial evidence to support Plaintiffs' arguments that the MK Defendants' decision-making process was rife with conflicts of interest and fundamentally flawed – particularly in light of the fraud committed by the MK Defendants concerning sales prices of lots at The Bluffs. *See, e.g.*, Plaintiffs' CSOF 48-53; Plaintiffs' Separate Concise Statement Facts in Opposition to the Association's Motion for Summary Judgment 9, 10, 21, 26, 28, 29, 39-42. Because the MK Defendants' flawed decision-making process contributed to the harm suffered by Plaintiffs, the MK Defendants' Motion should be denied.

Furthermore, the Association's architect testified in a deposition in this action that <u>all</u> the important decisions regarding the Federmans' plans were made when the MK Defendants – and not the Association – controlled the Design Committee:

The Association's architect testified:

Q. Basically, what we call the Mielcke committee, the Mauna Kea Properties Committee, when they had control, they were the entity that approved the Federman structures within the special setback area?
A.   That was my understanding.
. . . .
Q. The important approval that you need is the preliminary approval, in your mind; is that correct?
A.   That's correct.

5

> Q. And the final approval is more of a technical thing that says, well, you did what you said you were going to do in the preliminary; is that correct?
> A. Correct.
> Q. And so it's your understanding that the Mielcke-controlled committee was the one who gave preliminary approval for the structures on Lot 6, correct?
> A. That's correct.

Declaration of Terrance Revere (filed 1/5/06) ("Revere Decl."), Ex. 37 (deposition of David Stringer) at 84:12-17, 85:9-21. Plaintiffs are entitled to have a jury consider the evidence and determine who is responsible for the harm caused to Plaintiffs.

Thus, the State Court's ruling as to the decision-making process, as well as the existence of triable issues regarding the MK Defendants' responsibility for that process, show that Plaintiffs should be allowed to pursue the MK Defendants at trial.

**B.    The State Court Has Ruled That The Consequences Of A Decision Must Be Considered, And The Consequences Of The MK Defendants' Decisions Were Unreasonable.**

As noted above, the *Leone* court already ruled that, in determining whether a decision was unreasonable, its consequences must be considered. Dixon-Thayer Decl., Ex. 158 at 10:15-19. Here, there is substantial evidence that the consequences of the MK Defendants' decisions were unreasonable. The consequences of these decisions were evident during the *Leone* trial, where the Association made extensive use of an "everyone did it" defense. In his

6

opening statement, the Association's attorney told the jury that "[t]he evidence will show that every ocean front owner who has ever asked for approval from the committee to build something in the special setback area has been granted that." Dixon-Thayer Decl., Ex. 153, at 23:23-24:1; *see also id.* at 24:9-28:22 (discussing variances for ocean front lots). The Association's expert also testified at length about variances granted for the ocean-front lots. Dixon-Thayer Decl., Ex. 155, at 101:24-104:19 (Mr. Ayer). There is no dispute that numerous variances were granted when the MK Defendants controlled the Design Committee. Since these variances were – and presumably will be – used by the Association in attempting to justify its conduct, the MK Defendants also should be forced to answer for the decisions that they made.

As Plaintiffs noted in their Opposition Brief, developers such as the MK Defendants are held to higher standards than community associations, to prevent exactly the sort of situation that has occurred here. As Section 6.20 of the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 6.20 makes clear,

> Until the developer relinquishes control of the association to the members, the developer owes the following duties to the association and its members:
> 
> . . . .
> 
> (5) to comply with and enforce the terms of the governing documents, including design controls . . .

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 6.20. Commentary to Section 6.20 then provides that "[i]f the developer fails to enforce, or engages in selective enforcement of, design controls, this may jeopardize the association's future ability to enforce them . . . ." *Id.* cmt. e.[3]

The same standards should apply to the Association whether an action is brought in State Court or Federal Court. *See* Plaintiffs' Supplemental Opposition to the Association's Motion for Summary Judgment. Plaintiffs submit that the MK Defendants also should not be held to lesser standards than the Association. Indeed, the RESTATEMENT shows that the MK Defendants should be held to higher standards, both because the MK Defendants could profit from granting variances before turning the Design Committee over to the

---

[3] A recent decision by the Hawaii Supreme demonstrates that it is appropriate take guidance from the RESTATEMENT. In *Lee v. Puamana Community Association*, 109 Haw. 874, 128 P.3d 874 (Feb. 23 2006), the Hawaii Supreme Court held that "planned community associations are primarily creatures of common law," and that Hawaii's "jurisprudence with respect to restrictive covenants is, as of yet, in a comparatively pubescent state of development." *Lee*, 128 P.3d at 881, 888. Therefore, a court should rely on principles of common law as enunciated in authorities such as the RESTATEMENT. *Cf. Milgard Tempering*, 902 F.2d at 708 (in determining how state supreme court would resolve issue, "we may draw upon recognized legal sources including . . . restatements").

Furthermore, the *Lee* court recognized the validity of the RESTATEMENT by relying on out-of-state authorities and noting that each in turn relied on the RESTATEMENT. *Id.* at 884; *see also Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co.*, 100 Haw. 97, 109, 58 P.3d 608, 620 (2002) (expressly relying on the RESTATEMENT). Plaintiffs respectfully submit that this Court should apply the RESTATEMENT here.

homeowners and because the MK Defendants' decisions would have continuing effects after the Design Committee was turned over to the homeowners.

### III. CONCLUSION

For the foregoing reasons, and for the reasons discussed in Plaintiffs' Opposition to the MK Defendants' Motion for Summary Judgment as to Special Setback Claims, this Court should deny the MK Defendants' Motion.

DATED: April 7, 2006.

*[signature]*
DENELLE M. DIXON-THAYER

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC;
GUY HANDS; and JULIA HANDS

42046\3001\490515.2

# **ATTORNEY CERTIFICATION**

I have reviewed (1) Plaintiffs' Supplemental Brief in Opposition to the Mauna Kea Defendants' Motion for Summary Judgment as to All Special Setback and Punitive Damages Claims (the "Supplemental Brief"); and (2) the evidence relevant to the factual assertions made in the Supplemental Brief. I hereby certify that each factual assertion made in the Supplemental Brief has evidentiary support.

DATED: April 7, 2006.

                                                 */s/ Denelle M. Dixon-Thayer*
                                                 DENELLE M. DIXON-THAYER

                                                 Attorneys for Plaintiffs
                                                 WESTERN SUNVIEW PROPERTIES, LLC;
                                                 GUY HANDS; and JULIA HANDS

42046\3001\490541.1