# EXHIBIT 154



IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

STATE OF HAWAII

WESTERN SUNVIEW PROPERTIES, LLC,  )
                                          )
                Plaintiff,  )
                                          )
           vs.                )  CIVIL NO. 04-1-0212
                                          )
LEONE-PERKINS FAMILY TRUST; BLUFFS )
AT MAUNA KEA COMMUNITY ASSOCIATION;)
DOUGLAS LEONE AND PATRICIA LEONE,  )
INDIVIDUALLY AND AS TRUSTEES OF    )
THE LEONE-PERKINS FAMILY TRUST;    )
JOHN DOES 1-100; JANE DOES 1-100;  )
DOE PARTNERSHIPS 1-100 AND DOE     )
CORPORATIONS 1-100,                )
                                          )
                 Defendants. )

TRANSCRIPT OF PROCEEDINGS

before the HONORABLE GREG K. NAKAMURA, Judge presiding,

First Division, on Tuesday, January 31, 2006.

JURY TRIAL

APPEARANCES:

      For the Plaintiff:    TERRANCE M. REVERE, ESQ.
                          BRIANNE ORNELLAS, ESQ.
                          1000 Bishop Street, Suite 801
                          Honolulu, Hawaii 96813

      For Defendant THE BLUFFS AT MAUNA KEA COMMUNITY
      ASSOCIATION:          RONALD SHIGEKANE, ESQ.
                          1001 Bishop Street
                          Suite 2500, Pauahi Tower
                          Honolulu, Hawaii 96813

Reported by:  JENNIFER WHETSTONE, CSR 421, RMR
                Official Court Reporter
                Third Circuit Court, State of Hawaii

2

1

<u>INDEX</u>

2

Tuesday, January 31, 2006

3

4          WITNESSES                              <u>PAGE NO.</u>
              By the Plaintiff:

5

JULIA HANDS
6          Continued Direct Examination by Mr. Revere      10
           Cross-Examination by Mr. Shigekane              74
7          Redirect Examination by Mr. Revere             132

8     JAMES REINHARDT
           Direct Examination by Mr. Revere              141
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

THIRD CIRCUIT COURT, STATE OF HAWAII

1    This is the Marks family lot, correct?

2    A    That's right, yes.

3    Q    Okay, and the Marks lot is sort of the, well, it

4    was the mirror image of the Leone lot in that they were

5    duplexes, right?

6    A    That's right, yes.

7    Q    And Mr. Marks at least according to this map,

8    hasn't built anything behind this red dotted line that's

9    the special setback line, correct?

10   A    I don't believe so, no.

11   Q    Okay.  And next we have the Leone lot, which is

12   the one that we're talking about in this litigation,

13   correct?

14   A    That's right, yes.

15   Q    Okay.  And Leone is building this pool complex out

16   here, the special setback area?

17   A    That's what he's doing, yes.

18   Q    Okay, and there's also a concern, because he's now

19   planting trees on the special setback area, correct?

20   A    That's what he wants to do, yes.

21   Q    Okay.  Now, Mr. Leone is on the design committee,

22   correct?

23   A    He is, yes.

24   Q    And he is building his -- he already had a pool on

25   his lot before this?

THIRD CIRCUIT COURT, STATE OF HAWAII

13

1    A      Well, when we bought it, a completed house, yes.

2    A house and a completed pool and essentially finished

3    work.

4    Q      Behind the special setback line?

5    A      Absolutely.

6    Q      And now he's building his entire pool complex in

7    the entire setback area?

8    A      Yes.  He's moving down into what was formerly a

9    naturalized gulch.

10   Q      This gulch ran down to the shoreline beyond?

11   A      Yes, it did.  It was rather beautiful.

12   Q      Also there's a dotted line on this map that's

13   close -- that's outside of all of the lots, and it says,

14   "Center line of existing pedestrian access easement, six

15   feet wide."  Have you been on this trail?

16   A      Yes.  Many times.  I think I spoke yesterday, we

17   used to walk it quite a lot.  It goes from the Mauna Kea

18   Beach right to the Hapuna Beach.

19   Q      Okay, and what's your understanding as to how this

20   trail, how it got to be there in the first place?

21   A      Well, I've always understood that it's an ancient

22   trail.  There's a -- now for general public use, so

23   anyone can walk along there, not just people who live

24   there, but anyone can walk along there.

25   Q      Okay, and next is your lot, and according to this,

THIRD CIRCUIT COURT, STATE OF HAWAII

1  at least the drawing by their architect, there's nothing

2  in your lot that's beyond the special setback area.  We

3  talked about a ditch yesterday, and Mr. Leone -- Mr.

4  Leone.  Hello.  Sorry.  Mr. Shigekane said, "Well,

5  you've built this wall out there."  Can you describe

6  what it is that's in the special setback area of your

7  lot.

8  A    Yes.  It is -- it's what's called a ha'ha, which

9  is just a ditch.  Mr. Shigekane said, "Oh, no, it's not

10  just a ditch, it's also a wall."  That's not correct.

11  The wall is in the ditch.  The wall doesn't come above

12  the ditch by any more than a few inches, and that's now

13  covered by ground cover.  You can't see the wall, it's

14  not above ground level for any extended purposes.  All

15  there is in the special setback area is this ditch.

16  Q    And the association has admitted that this doesn't

17  create any visual problem for anybody, correct?

18  A    Absolutely.  You can barely see it.

19  Q    Okay.  Not that they've admitted --

20  A    Oh, I believe that's right.  Yes.

21  Q    Okay.  All right now, the next lot over next to

22  you is Mr. Federman, correct?

23  A    That's right.

24  Q    And Mr. Federman has his entire pool and hot tub

25  complex beyond this red dotted line, correct?

THIRD CIRCUIT COURT, STATE OF HAWAII

15

```
 1   A    I think he's got three and a half thousand square

 2   feet in the building -- in the special setback area,

 3   yes.

 4   Q    So it's fairly substantial?  There's pool, hot

 5   tub, a large lanai area for the pool, and stairs?

 6   A    That's right, yes.

 7   Q    Okay, and Mr. Federman's also on the design

 8   committee?

 9   A    Yes, he is.

10   Q    Okay.  So Federman's on the design committee, has

11   his entire pool complex in the special setback area.

12   Leone's on the design committee, has his entire pool

13   complex in the setback area.

14   A    That's correct.

15            MR. SHIGEKANE:  Objection.  Leading, Your

16   Honor.

17            MR. REVERE:  Just trying to speed it up.

18            THE COURT:  Okay.  Sustained.

19            MR. REVERE:  All right.

20   Q    Okay, the next person is the Reddy family,

21   correct?

22   A    Yes, that's right.

23   Q    Okay, what's your understanding as to what they

24   built in the special setback area?

25   A    I think they just got putting greens.  I don't
```

THIRD CIRCUIT COURT, STATE OF HAWAII

1      same town in Silicon Valley called Atherton.  They live

2      extremely close to each other.  They have business

3      connections in that Mr. Gunderson is Mr. Leone's

4      company's --

5                  MR. SHIGEKANE:  Objection.

6                  THE COURT:  Okay, excuse me.  And the basis

7      for your objection?

8                  MR. SHIGEKANE:  Foundation, Your Honor.

9                  THE COURT:  Okay, sustained.

10                 MR. REVERE:  Q    Okay.  All right,

11     Mrs. Hands, throughout this case, are you familiar --

12     you were deposed in this case, correct?

13     A    I was.

14     Q    Okay.  And a deposition is basically a recorded

15     interview under oath, correct?

16     A    Yes.

17     Q    Okay.  And there's a court reporter there just

18     like there's one here?

19     A    Yes.

20     Q    Okay.  And in addition to attending your own

21     deposition, did you read the depositions of Mr. Leone,

22     Mr. Federman, Mr. Gunderson?

23     A    Yes, I have.  Yes.

24     Q    Okay.  And on the basis of reading those

25     depositions, did you learn anything about the

THIRD CIRCUIT COURT, STATE OF HAWAII

1  relationship between these three guys?

2  A     Well, I understand that Mr. Gunderson is the

3  lawyer for the firms of both Mr. Federson and Mr. Leone.

4  Q     Okay.  Moving on to this gentleman here, is

5  Mr. Elder, that's his lot, correct?

6  A     That's right.  Yes.

7  Q     Okay.  And it looks like Mr. Elder has a portion

8  of his pool in the special setback area, correct?

9  A     Yes, it is, yes, part of the pool, but nothing

10  more, that I can see.

11  Q     Okay.  And do you recall Mr. Elder and Mr. Reddy

12  talking about Mr. Elder and Mr. Gunderson having their

13  own disputes between themselves over each other's pools?

14  A     There have been quite a few disputes, not just

15  disputes in the design committee --

16         MR. SHIGEKANE:  Objection.  Nonresponsive,

17  Your Honor.

18         THE COURT:  Sustained.  Please state the

19  question again.

20         MR. REVERE:  Q    Okay, yeah, and we'll get

21  to that, Mrs. Hands.  But with regard to -- do you

22  recall reading about disputes between Elder and

23  Gunderson to folks that are on the design committee?

24  A     Yes, I do yes.

25  Q     Okay.  The next lot it looks like, well, what's

22

1   this one, which again borders on the hotel?

2   A     It looks like a part of the pool is over --

3   overhanging it, yes.

4   Q     Okay.  So setting aside the Hoffee lot, which

5   occurred -- apparently occurred earlier, as far as you

6   know, the only people that have their entire pool

7   complexes in the special setback area are Gunderson,

8   Federman, and Leone?

9   A     That's correct.

10  Q     Okay.  And unfortunately you are on either side of

11  Leone and Federman, correct?

12  A     Yes.

13  Q     All right.  Now, for any of these lots, for any of

14  the construction on any of these lots, did, for any of

15  the construction on any of these lots, did the design

16  committee ever tell you what was going on with them?

17  A     Well, no.  But that's the problem, you see.  It's

18  a bit of a closed society.  They don't tell you when the

19  application is made, even though it dramatically effects

20  one's own property.  They don't tell you when they're

21  holding their deliberations, and they don't even tell

22  you what additions they made at the end of it.  You have

23  to wait and see what's built.  Because there was no

24  notification given to us.

25  Q     Okay.  Now, the committee has said before, "Well,

THIRD CIRCUIT COURT, STATE OF HAWAII

24

```
 1   A       Seventeen.

 2   Q       Okay.  Since you've known him, since you were that

 3   age, has he ever sued anybody before he came to the

 4   Bluffs?

 5   A       No.

 6   Q       Okay.  And there was another lawsuit involving

 7   Mr. Federman and Mr. Fogelsong and Mr. Robertson about

 8   things that went on down there, correct?

 9   A       Yes, there was.  Yes.

10   Q       Involving approvals by the design committee?

11   A       Exactly.

12   Q       And that had just nothing to do with you, correct?

13   A       That didn't, no.

14   Q       Okay.  Okay.  Now, Mr. Shigekane mentioned that,

15   in his opening statement, that this lawsuit was just

16   about you and Mr. Hands being used to having your way.

17   Do you recall that?

18   A       Oh, I certainly do, yes.

19   Q       Okay.  In your mind, is that what this lawsuit is

20   all about?

21   A       Far from it.

22   Q       What is it about, as far as you're concerned?

23   A       I think it's very much about getting what you paid

24   for.  You enter into a contract to get something, and

25   you pay for that, whatever it is.  I think you have a
```

THIRD CIRCUIT COURT, STATE OF HAWAII

1    right to have that contract upheld.  And we bought not

2    only the lot, but we also bought the view that came with

3    the lot.  It was part and parcel of what we paid for.

4    It was part of the reason why we paid so much for the

5    lot.

6         And there were rules in place at the time we

7    purchased, which we were aware of, which and should, as

8    far as we were concerned, that those -- those view

9    planes and that wonderful coastal view would be

10   maintained and preserved.  So that's -- that's -- that's

11   -- there are other reasons also why we bought it.

12        Because they're going on from that breach of that

13   promise, and those rules have not been upheld, and that

14   on both sides of this, the committee has allowed to be

15   built in the special setback area two huge

16   constructions.  The one further towards Mauna Kea, three

17   and a half thousand square feet of concrete, and the one

18   which we're talking about now, the Leone one, which is a

19   building out into this naturalized gulch of a pool with

20   eighteen foot walls in a hillside which the documents

21   say are to be preserved.

22   Q    Okay.

23   A    It's a significant change.

24   Q    Okay.  Thank you.  Let's talk about the documents,

25   Your Honor.  May I approach the clerk for exhibits eight

63

```
 1    A      He is, yes.
 2    Q      Did anybody from the committee ever talk to you
 3    about the Leone's plans?  They ever ask you how you felt
 4    about it or what you thought of it?
 5    A      No, they never did never.
 6    Q      Okay, as far as you know, did anybody from the
 7    committee ever visit your lot to gauge the impact of the
 8    Leone's construction on your lot?
 9    A      I don't believe they did, and they certainly never
10    asked for a formal -- formal permission to do so.
11    Q      Okay.  Now, the committee has, not for this
12    situation, but for any situation, has it ever announced
13    to non-committee members when they meet?
14    A      Um, I think they're very vague.  When we -- when
15    we were trying to get the plans for our house passed, it
16    was little bit smoke and mirrors as to when they were
17    going to meet, when they were going to be discussing our
18    plans, or what was going to take place.  It was very
19    difficult to pin them down to know exactly when they
20    are.
21    Q      Did they ever publish any type of agenda like,
22    okay, today we're gonna talk about Mr. Gifford's house
23    and Robertson or whoever?  Did they ever publish a
24    agenda to tell you, let you know what was going on?
25    A      Well, not formally that I ever saw, no.
```

THIRD CIRCUIT COURT, STATE OF HAWAII

69

1      fifty-five will be received in evidence.

2                  MR. REVERE:   Q     Mrs. Hand, could you read

3      -- there's a number of paragraphs in this letter.  Could

4      you read number -- paragraph numbered four and then read

5      the response.

6      A      All right.  Yeah, this is the -- the letter

7      written to Mr. Shigekane.  And we asked, "Will Western

8      Sunview have an opportunity to present its position

9      orally to the design committee?  We request that Western

10     Sunview be allowed to make an oral presentation.  We

11     note that Mr. Leone was allowed to orally present his

12     side to the committee on numerous occasions, and we

13     believe Western Sunview should be given the same

14     opportunity."

15     Q      And what was the response?

16     A      The response of Mr. Shigekane was, "Your request

17     for an oral presentation is declined."

18     Q      Okay.  How did you feel after you read that?

19     A      I was completely shocked.

20     Q      Okay.  Why were you shocked?

21     A      'Cause all we were asking was to present our point

22     of view, and it was complete, flat refusal to listen to

23     it.  Yet Mr. Leone, who was on the design committee, who

24     had friends on the committee, was allowed numerous

25     opportunities to present his point of view.

THIRD CIRCUIT COURT, STATE OF HAWAII

1    of such a concern to you?

2    A      Well, there are various issues.  Firstly, as I've

3    said many a time, I think, on reading the rules, it runs

4    completely contrary to the rules set out in the

5    declaration and the construction rules.  So it's

6    completely contrary to what we bought into when we

7    bought our lot at the Bluffs.  It does block our view,

8    whereas previously we looked across a gulch, the natural

9    naupaka and coastline, now we see a manmade swimming

10   pool with eighteen foot walls leaning up towards us.

11          I think the privacy issue is considerable.

12   Again, when we bought our lot, we had privacy.  All the

13   houses were broadly in a line.  We could sit on our

14   lanai, and no one could see us, and likewise we could

15   see no one.  It was a good state of affairs.  But now

16   he's built right out into the gulch.  He can look back

17   at us, and we can see him.  And that in itself has

18   following consequences.  Because we can see him, he's

19   expressed concern about that.

20          Now he's even put in one of his depositions that

21   he doesn't want us to see him running naked across his

22   back lawn, jumping into his swimming pool.  Well, quite

23   frankly, I don't want my two daughters to see him doing

24   that either.  So we have a -- we have a bit of a problem

25   here now.  And his way around that is he wants to plant

72

```
 1   these hau trees to completely screen his pool from us.
 2   Well, that will have the effect of completely
 3   obliterating the view south towards Kona which we've had
 4   and we paid for.
 5        So there's also the diminution in value point,
 6   because when you buy a lot and it's got a lovely
 7   unobstructed view -- a pool with umbrellas and benches
 8   and all the things that go round the pool, it's very
 9   different having that from having a view unobstructed by
10   anything other than trees and nature.
11   Q    The -- and again the view that we're talking about
12   -- this is exhibit two, which has been received into
13   evidence.  Again this picture, because there's a
14   construction dust screen for the construction guys, it's
15   blocking the view that's there.  But you're concerned
16   about the trees that, what's sort of framed by these
17   wooden sticks holding up the dust screen.  It's gonna be
18   gone once those trees get in?
19   A    Absolutely.
20   Q    Okay.  What about -- is there anything -- anything
21   in addition to what you've discussed thus far, well, let
22   me back up.  Do you believe the committee, in general,
23   has treated you fairly with regard to this?
24   A    No.  Patently not, no.  They've given us no
25   hearing.  They've asked -- they've not asked our opinion
```

THIRD CIRCUIT COURT, STATE OF HAWAII

73

1  on any of this.  They didn't notify us that the plans

2  were submitted.  They have not, to my knowledge, even

3  come on our lot to have a look at it from our point of

4  view, apart from asking us what we think.  I'm not sure

5  they would listen to us.  I think they have their own

6  reasons to decide what they have decided.  They could

7  have at least had the decency to allow us to give a

8  presentation of what we felt.

9  Q     Okay, Mrs. Hands, what do you think the committee

10 should have done that it didn't do?

11 A     Well, initially it should have notified us that

12 the plans were submitted which were going to impact on

13 our lot to the extent they obviously were going to do

14 so.  They should have notified us to give us a chance to

15 object and to put our objections to them so they could

16 at least see our side of the story.  They should also

17 have come onto our lot and seen for themselves the

18 effect of what they were planning to consider.  They

19 then should not have had people on the committee who

20 have contact with Mr. Leone, be it his lawyer or

21 business associates, voting on those and giving

22 approval.  People who are conflicted should have been

23 off the committee when the vote's taken.  They should

24 have then told us how the vote went, and they should

25 then have given us a full report of their reasons.  None

74

1    of that happened.

2                     MR. REVERE:  All right.  Thank you very

3    much, Mrs. Hand.  Your Honor, I have nothing further at

4    this time.

5                     THE COURT:  Mr. Shigekane.

6                        CROSS-EXAMINATION

7                     BY MR. SHIGEKANE:  Q     Good afternoon,

8    Ms. Hands.

9    A       Good afternoon.

10   Q       Um, I'd like to start off with some of the things

11   that you've testified to here today.  One of the first

12   things that you've testified to is that you looked at

13   the Black Sands lots, and later on you went back to

14   England, and Ms. Au called you and told you about the

15   lots at the Bluffs, is that correct?

16   A       That's correct, yes.

17   Q       And that's how you got to purchase the Bluffs, one

18   of the lots at the Bluffs, is that right?

19   A       Yes.

20   Q       Now, with respect to the Black Sands property, you

21   actually bought that property, didn't you?

22   A       We put a deposit down for it.

23   Q       And you signed the contract, didn't you?

24   A       I know we put the deposit down.  I don't know if

25   we actually signed the contract.  But perhaps we did.  I

THIRD CIRCUIT COURT, STATE OF HAWAII

105

1  could see the dotted line at the back of the drawing of

2  the Bluffs.

3  Q     Right.  But in terms of looking at the actual

4  view, did you know where the special setback line was?

5  A     Well, I don't know that you can tell from that

6  drawing, no.  That photograph however --

7  Q     And you didn't know, right?

8  A     Not from looking at that photograph, no.  We could

9  tell -- we could tell by looking at the map that we were

10  sent.

11  Q     And you say that it -- the pool, the Leone pool

12  obstructs your view, correct?

13  A     I said that the -- the -- the Leone pool is in our

14  view.  Once you -- once you start putting -- I think it

15  does obstruct the view, yes, it does.  And it's going to

16  get worse with umbrellas and people and other things

17  like that.  Yes.

18  Q     Well, this is another recent photograph,

19  plaintiffs' -- plaintiffs' two ninety-five, which your

20  counsel showed you, and this was taken earlier this

21  month?

22  A     Mm-hmm.

23  Q     How does the pool obstruct your view?

24  A     Well, previous we looked out, and all we could see

25  was plants, a gulch, vegetation.  Now we see a concrete

106

1    pool with eighteen foot walls, and we will ultimately

2    see umbrellas and chairs and people and Mr. Leone

3    without his clothes on.  So it's like standing on a

4    hillside with a lovely view towards the see with nothing

5    in your way versus standing on a hillside with a huge

6    highway going through that.  It doesn't stop you seeing

7    the highway, but it spoils the view, and that pool

8    spoils our view.

9    Q      And you also indicated in your testimony that you

10   were concerned that hau trees would be growing to fence

11   -- to serve as another blockage, is that right?

12   A      That's one of our concerns, yes.

13   Q      What's the basis for that statement?

14   A      The Leone plans that were, uh, proffered by the

15   committee to allow for the planting of hau trees with no

16   height restriction on them, and I believe that they grow

17   from ten to fifteen feet high.

18   Q      You've heard the deposition testimony of the

19   committee members, haven't you?

20   A      Yes.

21   Q      And they said that they were limiting this to

22   thirty inch, isn't that right?

23   A      I've not seen -- not seen that officially.  No one

24   has written that to us officially and told us that.  No

25   one has put that in writing with a cast-iron guarantee

THIRD CIRCUIT COURT, STATE OF HAWAII

112

1    A    Yes.

2    Q    And the question is -- that your attorneys posed

3    is, "Has the reconsideration been discussed or

4    coordinated with Mr. Leone and/or Mr. Beeman?"  By the

5    way, Mr. Beeman was Mr. Leone's attorney, right?

6    A    That's right.  Yes.

7    Q    If so, please tell us what their comments and

8    suggestions have been.  The response given to you was,

9    "As a member of the design committee, Mr. Leone is aware

10   of the committee's agreement to entertain Western

11   Sunview's request for reconsideration.  No comments or

12   suggestions have been submitted by Leone or Mr. Beeman."

13   Did that satisfy you?

14   A    Not entirely, no.

15   Q    You felt there was a conflict?

16   A    I think there's definitely a conflict.

17   Mr. Gunderson sold Mr. Leone the lot in the first place.

18   Mr. Gunderson sat on that committee, and he voted in

19   favor of Mr. Leone's plans.  Mr. Gunderson is also

20   Mr. Leone's lawyer, or his firm's lawyer.  He sits on

21   the board Mr. Leone's firm of investments, of course he

22   has a conflict, a huge conflict.

23   Q    You read the deposition testimony of both

24   Mr. Gunderson and Mr. Leone, have you not?

25   A    Yes.

THIRD CIRCUIT COURT, STATE OF HAWAII

1   design committee.  David Stringer.  I guess David Ayer.

2   Q    Okay, so it's your understanding that Ayer

3   replaced Tusher?

4   A    Sort of, yes.

5   Q    Okay.  Did you ever fully go out to lot five and

6   make observations from there?

7   A    Yes.  I've been there many times.

8   Q    Okay, did you observe the Leones' construction

9   with special setback area from the shoreline trail that

10  is between the Leone lot and the ocean?

11  A    Yes, I did.

12  Q    Okay.  What kind of impression does this -- did

13  Leone's pool make from the shoreline trail?

14  A    It looks like a dam.  It's a very large wall.

15  Q    Okay.  I'm gonna show you some photographs that

16  have been admitted into evidence.  Plaintiff's exhibit

17  two twenty-eight.  And does this photograph -- can you

18  see it --

19  A    Yes.

20  Q    -- Mr. Reinhardt?  Does this fairly and accurately

21  depict what this pool complex looks like from the

22  shoreline trail?

23  A    Yes.

24  Q    And can you describe the area between the

25  shoreline trail and this pool complex?

160

```
 1                    C E R T I F I C A T E

 2    STATE OF HAWAII      )

 3    COUNTY OF HAWAII     )
                           )
 4    _____  )

 5              I, JENNIFER WHETSTONE, CSR 421, RMR, an

 6    Official Court Reporter for the Third Circuit Court,

 7    State of Hawaii, do hereby certify that the foregoing

 8    comprises a full, true, and accurate transcription, done

 9    to the best of my ability, of the proceedings held in

10    connection with the above-entitled cause.

11              Dated this 29th day of March, 2006.

12

13                         OFFICIAL COURT REPORTER

14

15                         JENNIFER WHETSTONE

16

17

18

19

20

21

22

23

24

25
```

THIRD CIRCUIT COURT, STATE OF HAWAII