AYABE, CHONG, NISHIMOTO,
  SIA & NAKAMURA
A Limited Liability Law Partnership

SIDNEY K. AYABE         968-0
RONALD SHIGEKANE        1945-0
1001 Bishop Street, Pauahi Tower 2500
Honolulu, Hawaii  96813
Telephone: 808-537-6119
Facsimile: 808-526-3491
E-mail: Sidney.Ayabe@hawadovate.com
E-mail: Ronald.Shigekane@hawadvocate.com

Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br>　　　　　　Defendants. | CIVIL NO. CV 03-00463 JMS-LEK<br>(Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION'S **REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO THE ASSOCIATION'S  MOTION FOR SUMMARY JUDGMENT (FILED 4/7/06);** DECLARATION OF RONALD SHIGEKANE; EXHIBITS A-C; CERTIFICATE OF SERVICE |

2004-069/298956

DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION'S **REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO THE ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT (FILED 4/7/06)**

I. INTRODUCTION

Defendant The Bluffs at Mauna Kea Community Association's (hereinafter "Association") Motion for Summary Judgment was fully briefed, argued and pending the Court's disposition when Plaintiffs informed this Court that they would be seeking leave to submit supplemental briefs on the basis of the jury's verdict in the State Circuit Court case of <u>Western Sunview Properties, LLC v. Leone-Perkins Family Trust, et al.</u> Civ. No. 04-1-0212 (hereinafter, "Leone" lawsuit). (Letter of Denelle M. Dixon-Thayer to the Honorable J. Michael Seabright dated February 14, 2006.)

In the <u>Leone</u> lawsuit, the jury found that Defendant Association acted unreasonably or in bad faith when it granted approval for improvements in the special setback area of Lot 4 (owned by Defendant Leone-Perkins Family Trust) and that Plaintiff Western Sunview Properties, LLC suffered $700,000 in damages. In their Supplemental Brief, Plaintiffs contend that the jury's verdict in the <u>Leone</u> lawsuit somehow creates factual issues which preclude summary adjudication in this lawsuit.

For the reasons stated below, the jury's verdict in the <u>Leone</u> lawsuit has no impact on the previous findings of this court and upon the current status of this case - summary judgment should issue in favor of Defendant Association and against Plaintiffs.

## II. ARGUMENT

### A. Plaintiffs' Legal Position Changes, Depending Upon the Circumstances

In the introduction to their supplemental filing, Plaintiffs contend that the trial judge in the State Court proceeding ruled against the Association on important issues of Hawaii state law and that, "the principles supporting the doctrines of issue preclusion and comity do not justify re-litigating these same issues in this forum." [Plaintiffs' Supplemental Memorandum, p. 1.] Plaintiffs further argue that the State's rulings are not only persuasive authority, but should have preclusive effect against the Association. [Id., pp. 1-2.]

The jury's verdict in the State Court case has emboldened Plaintiffs to take a legal position directly opposite from the position it advocated in the State Court case. In November, 2005, Defendant Association filed a Motion for Summary Judgment before the State Court. Defendant Association argued that the Federal Court (in this case), recognized that it should not substitute its own judgment as to the reasonableness of the Federmans' plans and that that a deferential standard must be applied. Although the Defendant Association did not argue that the State

3

Court was in any way bound by the Federal Court's ruling, Plaintiffs strongly argued that the Defendant was wrongfully attempting to do just that:

> 4. <u>Judge Ezra has explicitly ruled that the parties should not attempt to use rulings in the case in another, which is exactly what the Association does in its Motion.</u>
>
> Plaintiff [sic] attempts to use one of Judge's Ezra's rulings in a federal case regarding the Association's actions pertaining to a different defendant than this case. However, Judge Ezra explicitly stated **"The fact that material issues of fact remained in [the present Third Circuit case] does not have any effect on this Court's ruling, because the cases involve different parties, different properties, different conduct and most importantly, different trial records.** Ex. 28 at 29 (emphasis added). Hence, because Judge Ezra explicitly stated that rulings in the present case had no effect on the Federal District Court case, the same should be applicable vice-versa. The different parties, properties, conduct and trial records involved in each case preclude rulings from each case adversely affecting the other. In addition, the context of Judge Ezra's ruling was with regard to the Federman Defendants and not to the Association itself, as the Association still remains in the federal action. Finally, Judge Ezra's decision was not even a final, appealable order.
>
> Exh. A , emphasis in the original

Thus, in the State Court, Plaintiffs argued that this Court's rulings had no relevance to it's consideration of the issues and that the differences in the cases "precludes rulings from each case adversely affecting the other"; however, when Plaintiffs come before this court, Plaintiffs argue just the opposite - that the State Court's jury in <u>Leone</u> "heard largely the same facts as those presented here" and that the State Court's rulings

should have preclusive effect. Plaintiffs should be judicially estopped from taking such inconsistent positions.

In accordance with the doctrine of judicial estoppel:

> [a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action. Judicial estoppel " 'partakes ... of positive rules of procedure based on manifest justice and, to a greater or less[er] degree, on considerations of the orderliness, regularity, and expedition of litigation.' "  This doctrine prevents parties from "playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation."
>
> <u>Lee v. Puamana Community Association,</u>
> 109 Haw. 561, 128 P.3d 874 (2006)

**B.    Collateral Estoppel Does Not Apply to the State Court Rulings Regarding the Applicability of Sections 8.14 and 12.10 of the CC&Rs**

Plaintiffs argue that this Court should defer to the State Court's ruling in the <u>Leone</u> case that §8.14 of the CC&Rs, rather than §12.10 applies as the standard of proof. This argument is fraught with deficiencies.

**First,** the most basic preconditions to the application of the principle of collateral estoppel have not been satisfied. Although the jury's verdict was accepted and filed with the court, no judgment has yet been entered, much less a 'final judgment'. Further, there remains pending Defendant Association's post trial motions (in the nature of a judgment notwithstanding verdict and alternatively,

5

for a new trial – see, Exh. C ) Additionally, 'final judgment' for purposes of applying 'collateral estoppel' or 'res judicata' must include a consideration of whether there is an appeal pending – that time has not even begun to run because of the absence of a final judgment.   See, e.g. <u>Kauhane v. Acutron Co., Inc.</u>, 71 Haw. 458, 465, 795 P.2d 276, 279 (1990) (holding that, once the plaintiff withdrew his appeal, the circuit court's judgment became final for res judicata purposes).

The **Second** reason why this Court should not give the State Court's ruling on any of the issues any collateral estoppel effect has already been articulated by this court in ruling upon Plaintiffs' previous Second Motion for Reconsideration (filed 11/30/04).   Plaintiffs argued in its Second Motion for Reconsideration that the Court should dismiss all of Plaintiffs' claims so that they could refile their action in state court – that the state court's refusal to grant summary judgment to the defendant Leone should be considered as controlling state law.   This court soundly rejected Plaintiffs' argument:

> …the Court is unpersuaded by Plaintiffs' argument regarding the state court decision.  The Court notes that Hawaii state courts have established a clear policy disfavoring the treatment of unpublished lower court opinions that have not been reviewed on appeal as binding precedent in other unrelated matters.  See Hawaii Rules of Appellate Procedure (HRAP) Rule 35©(1996); <u>Kema v. Gaddis</u>, 982 P.2d 334, 338 n.4(Haw. 1999) ("[D]ecisions and orders issued in unrelated…court cases that were not reviewed on appeal and addressed in published decisions have no precedential value and should not be cited as authority."  Regardless, the state court decision does not conflict with this Court's decision or change the controlling Hawaii Law.

> [Order Denying Plaintiffs' Motion for Clarification and Reconsideration filed September 21, 2004; Order Denying Plaintiffs' Second Motion for Reconsideration filed November 30, 2004; Order Denying Defendants" Motion for Entry of Final Judgment and Rule 54(B) Certification,(2/22/05) p.28]

The **Third** reason that collateral estoppel effect should not be given to the State Court's ruling dovetails with the foregoing reason – the trial judge's ruling was palpably wrong when it purported to apply §8.14 instead of §12.10 as the standard of proof sufficient to impose liability upon the Defendant Association. The sections provide as follows:

> 12.10 <u>Limited Liability</u>. Neither Declarant, the Association, the Board, nor any member…shall be liable to any party for any action or for any failure to act with respect to any matter if the action taken or failure to act was in good faith and without malice.
>
> [CSOF 18]
>
> 8.14 <u>Liability of Design Committee Members</u>. Provided that Design Committee members act in good faith and with due diligence, neither the Design Committee nor any member thereof shall be liable to the Association, any Owner or any other Person for any damage, loss or prejudice suffered or claimed on account of:  (a) the approval or disapproval of any plans, specifications and other materials, whether or not defective; …
> [See, Defendant's CSOF, Exh. B (Exh. 3)]

Although Plaintiffs have argued that there is a "well–established rule that the specific provision controls over a general one", citing <u>Kaiser Hawaii Kai</u>

Development Co. v. Murray, 49 Haw. 214, 227-228, 412 P.2d 925 (1966), it is instructive to review the actual statement of the Court in the cited case:

> …in the case of inconsistency between general and specific provisions, the specific controls the general. [citations omitted.]

[49 Haw. at 227-228]

In this case, there is no inconsistency and no ambiguity. The only defendant here is the Association itself. Neither the design committee nor any of its members are parties to this action. If the design committee or any member had been sued, §8.14 would apply to determine whether any member or the design committee itself would be imposed with individual liability for actions taken.

However, Plaintiffs here sued only the Association. Section 12.10 therefore applies, and the standard for liability is bad faith and malice.

The **Fourth** reason why the Court's ruling in the State Court proceeding cannot be given collateral estoppel effect is that even if it was correct in holding that §8.14 was the appropriate standard for determining liability, *it did not apply the stated standard* – "good faith and due diligence". Instead of instructing the jury that Plaintiff had the burden to prove that the Design Committee did not act in good faith and with due diligence, the trial court erroneously equated "good faith and due diligence" simply with "reasonable".[1] Further, the Court's use of the

---

[1] Although the court referred to Black's Dictionary; query whether alternative definitions are available in case law or in Webster's Dictionary, which defines "diligence", *inter alia*, as "steady application to

conjunctive "or" ("unreasonable **or** in bad faith") allowed the jury to make a minimal finding of 'unreasonableness' in order to overturn the Design Committee's decision.

The **Fifth** reason why the Court's ruling in the State Court proceeding cannot be given collateral estoppel effect is that even if one accepts 'reasonableness' as the applicable standard, this Court has already found that the Design Committee's actions were "reasonable" and not in bad faith.   In its Reconsideration Order of 2/22/05, this Court specifically cited evidence that the Design Committee:

> carefully considered the impact of [the Federmans] plans on Plaintiffs' viewplan.  Indeed, the committee required [the Federmans] to lower their terrace area by an additional eight feet in an effort to safeguard Plaintiffs' view.  The committee sought the advice of professional architectural consultants in reaching their decisions.  Moreover, the committee's decision to allow [the Federmans] to construct their terrace and pool in the setback area is consistent with their decisions before and after to allow such improvements by other landowners in their setback areas.  The Court finds that the process followed by the committee was reasonable, and that there is simply no evidence that it acted in bad faith."

[Reconsideration Order 2/22/05, at p. 22]

Despite the foregoing finding, Plaintiffs invite this court to reverse course, based upon a jury's determination that the Committee's action was unreasonable with respect to a ***different*** piece of property.

---

business of any kind; constant effort to accomplish what is undertaken, perseverance, industry, assiduity…"

Plaintiffs further invite this court to allow a jury to have an opportunity to make a finding inconsistent with the court's previous finding. Plaintiffs argue that although Defendant Association maintains that it has the authority to allow buildings or structures in the special setback area, the "Leone jury unanimously rejected the Association's argument." [Plaintiffs' Supplemental Memorandum, at p. 4.] Plaintiffs therefore argue that a jury in this case should similarly be allowed to make the same determination here. This court, however, has already ruled that Defendant Association has the authority to grant variances:

> the covenant [§4.17 of the Design Requirements] clearly gives the design committee the power to grant variances to the design requirements contained in Article IV, which include the establishment of the special setback area. Plaintiffs were aware that the committee had this authority when they purchased their property. Moreover, Plaintiffs were aware that the committee exercised this authority to grant variances, because they themselves received a variance for landscaping and other improvements within their setback area....

[Order Denying Reconsideration, p. 21-22]

### C.    The Jury Verdict in the State Court Proceeding is Wrong

The trial court in the Leone matter committed several critical errors leading to the jury's verdict, which Defendant Association contends is plainly wrong. The most egregious errors are presented in Defendant Association's post-trial,

Renewed Motion for Judgment as a Matter of Law, or, in the alternative, for New Trial. (See Exh. C ).[2]

While it would not be appropriate to re-argue the motion before this court, there are at least two errors committed by the trial court which Defendant Association believes constitute reversible error. First, as noted above, although the trial court accepted the proposition that the parties' rights and obligations derived from the CC&Rs (i.e. special setback requirements), it disregarded the provisions in the CC&Rs which specifically limited the liability of the Association. It rejected the controlling limitation of liability specifically provided for in §12.10 ("good faith and without malice"). Further, although it ostensibly adopted the limitation of liability in §8.14 (good faith and due diligence), the trial court actually rejected both limitations by using a broad, *de novo*-type standard of "reasonableness."

The Second major error committed by the trial court was its rejection of the "Question and Answer" ("Q & A) sheet as relevant to the case. In its discussion of the principle of "abandonment", this Court previously considered the relevance of the Q & A sheet provided to Guy Hands by his realtor before he purchase Lot 5, in which it was stated that "a pool or other structure that does not block views can be built in the 'special' setbacks."

---

[2] At the conclusion of the hearing on the motion held April 4, 2006, the Court stated that it would take the matter under advisement and that it would not issue its ruling until mid-May, 2006.

> The court finds that Section 4.17 was abandoned in that pools or terraces that did not block views were consistently permitted in the special setback area. The Bluffs does not present a case where a single property, or even a handful of properties have built in the setback area. Instead, all of the oceanfront lots, namely Lots 1 through 12, including Plaintiffs' lot, have received one or more variances to build or make improvements in the special setback area. Lots 1, 2, 6, 8, 11 and 12 have received variances to build pools and terraces in the special setback area.
>
>   *    *    *
>
> Plaintiff Guy Hands specifically requested information regarding whether a pool could be built in the Special Setback area from his realtor, Ms. Au. Ms. Au twice sent him a document entitled "Questions and Answers for the Bluffs" that stated that "a pool or other structure that does not block views can be built in the "special" setbacks. Id. Ex. 17, 21. Accordingly, because it appears that all of the Oceanfront lots have received variances to build in the setback area, making up over half of the total lots at the Bluffs, the court finds that Section 4.17 has been effectively abandoned as it pertains to structures built in the setback area that do not block views…
>
> > [Order Granting in Part and Denying in Part Defendats' Motion for Sumary judgment and Denying Plaintiffs' Counter Motion for Summary Judgment of 9/15/04 at pgs. 14-15]

The trial court in the Leone case, however, considered the Q & A sheet to be irrelevant to the issues in the case, except for credibility matters. The oral argument regarding Plaintiffs' Motion in Limine to preclude references to the Q & A sheet was relatively lengthy, which began with trial court's query:

The Court:  Now we're turning to Plaintiff's Motion in Limine to exclude a Question answer – Question and Answers Document.
        Okay, Mr. Shigekane, I – I'm a little concerned as to your argument that somehow notice to Western Sunview is somehow relevant in this case.

12

| | |
|---|---|
| Mr. Shigekane: | Your Honor, notice to the um, Western Sunview is the critical aspect of this case, your honor.<br>He's saying, I bought the property.  I had no idea, absolutely no idea that anybody could build in the special setback area.  First of all the  -- the documents themselves have provisions for variances.  Secondly, um, there was a pool already existing in the special setback area. |
| The Court: | But isn't this a – kind of like a so what situation?  Because the question would be whether – whether or not the design committee's decision was not unreasonable or not in bad faith, so we just focus  in on whether the decision was appropriate, not what Mr. Hands' expectation was… |

[Exh.  B ]

Thus, at trial, although Defendant's counsel was allowed to introduce the Q & A sheet as evidence, the trial court consistently and repeatedly admonished the jury that the document's relevance was limited to the context of assessing the credibility of the witnesses.

### III.   CONCLUSION

Plaintiffs have not presented facts which this Court has not already considered – plaintiffs merely contend that because a jury somehow found that the Defendant Association acted unreasonably or in bad faith when it allowed the Leones to build improvements in their special setback area, something about that finding has special significance to the facts of this case.   It plainly does not.

***The law of this particular case is clear***.   This court has already determined, based upon the substantial evidence presented to it in the context of the several

motions for summary judgment, that the process followed by the Defendant Association in approving the Federman's requests for improvements in the special setback area was done reasonably and that there was no evidence that it acted in bad faith. [Reconsideration Order 2/22/05, p. 22.] The DRC's approval of improvements requested by the Federmans, owners of Lot # 6, were consistent with its prior and subsequent decisions to allow improvements such as swimming pools, decks and steps in the Special Setback Areas.

    The Leone trial court's errors allowed the jury to make an independent determination of "reasonableness" according to its own collective aesthetic concerns. The question of whether or not the Leones should have been granted a variance to build a swimming pool and other improvements in their special setback area is an internal matter for which the DRC should be allowed wide discretion. As this court expressly recognized in its reconsideration order, "[t]he body most suited for this determination was the [neighborhood's] designated board the Managing Committee. The trial court's task was to see that the Committee's decision was not arbitrary or made in bad faith." Reconsideration Order 2/22/05, p. 20-21, citing McNamee v. Bishop Trust Company, Limited, 62 Haw. 397, 402, 616 P.2d 205 (1980).

    Plaintiffs in the Leone case invited the trial Court to allow the jury to second-guess the DRC. This Court should decline Plaintiffs' similar invitation.

Under the Plaintiffs' interpretation of the standard of proof applicable, every single decision of the DRC is subject to a *de novo* review by a court as to "reasonableness". The express standards of "good faith and without malice" (§ 12.10) and "good faith and with due diligence" (§8.14) are thrown out the window in favor of independent determinations of committee actions – by fact-finders (whether judge or jury) who have no history and no personal stake in the community. Was it "reasonable" for the committee to approve gray roof tiles instead of "Regency Blue"? Or a particular type of chimney because it really doesn't "blend in"? Or three coconut trees instead of one? These determinations are best left to the discretion of the committee, subject only to limited judicial review. If there are no express limitations, McNamee imposes an "arbitrary and bad faith" standard; pursuant to §12.10 of the Association's CC&Rs, it is a standard of "good faith and without malice."

For the foregoing reasons, Defendant asks that this Court grant Defendant's motion and dismiss all claims against it made by Plaintiffs.

DATED: Honolulu, Hawaii, April 21, 2006.

_____
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>　　　　　Defendants.<br>_____ | ) CIVIL NO. CV 03-00463 DAE LEK<br>) (Contract, Injunction; Other Non-<br>) Vehicle Tort; Declaratory Judgment,<br>) Other Civil Action)<br>)<br>)<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2004-069/298956

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>April 21, 2006,</u> a true and correct copy of Defendant The Bluffs at Mauna Kea Community Association's Reply to Plaintiffs' Supplemental Brief in Opposition to the Association's Motion for Summary Judgment was duly served upon the following parties listed below, at their last-known addresses, as indicated below:

| | | |
|---|---|---|
| TERRANCE M. REVERE, ESQ. | Mail | [ ] |
| BRIAN A. BILBERRY, ESQ. | Hand-Delivery | [ ] |
| JACQUELINE E. THURSTON, ESQ. | Facsimile | [ ] |
| 1000 Bishop Street, Suite 801 | Electronically | [√] |
| Honolulu, Hawaii 96813 | | |

  Attorneys for Plaintiffs
   WESTERN SUNVIEW PROPERTIES, LLC
   GUY HANDS AND JULIA HANDS

| | | |
|---|---|---|
| J. DOUGLAS ING, ESQ. | Mail | [ ] |
| BRIAN A. KANG, ESQ. | Hand-Delivery | [ ] |
| First Hawaiian Center, 23rd Floor | Facsimile | [ ] |
| 999 Bishop Street | Electronically | [√] |
| Honolulu, Hawaii 96813 | | |

  Attorneys for Defendants
   MAUNA KEA PROPERTIES, INC. and
   MAUNA KEA DEVELOPMENT CORP.

  DATED: Honolulu, Hawaii, April 21, 2006.

_____
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

2