FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE M. DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA  94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email address:  ddixon-thayer@flk.com

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Corporation

TERRANCE M. REVERE  5857-0
JACQUELINE E. THURSTON  7217-0
BRIANNE L. ORNELLAS 8376-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii  96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910
Email Address:     terry@myrhawaii.com

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS, | Civil No. 03-00463 JMS LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action) |
| Plaintiffs, | |
| vs. | |
| IRWIN FEDERMAN; CONCEPCION | (*caption continued*) |

S. FEDERMAN; THE BLUFFS AT
MAUNA KEA COMMUNITY
ASSOCIATION; MAUNA KEA
PROPERTIES, INC.; MAUNA KEA
DEVELOPMENT CORP.; COUNTY
OF HAWAII; JOHN DOES 1-100;
JANE DOES 1-100; DOE
PARTNERSHIPS 1-100 AND DOE
CORPORATIONS 1-100,

Defendants.

**PLAINTIFF WESTERN SUNVIEW
PROPERTIES, LLC'S
SUPPLEMENTAL BRIEF
REGARDING ADDITIONAL
LANDSCAPING SUBMITTED IN
OPPOSITION TO THE
ASSOCIATION'S MOTION FOR
SUMMARY JUDGMENT**

TRIAL:  December 5, 2006

**PLAINTIFF WESTERN SUNVIEW PROPERTIES, LLC'S
SUPPLEMENTAL BRIEF REGARDING ADDITIONAL LANDSCAPING
SUBMITTED IN OPPOSITION TO THE ASSOCIATION'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 1

II. FACTUAL BACKGROUND ........................................................ 3

    A.    The Committee Is Charged With Enforcing The DRs ........................ 3

    B.    The DRs Protect Views Both By Creating The Special Setback Area And By Discouraging Tall-Growing Trees Anywhere In The Bluffs ................................................................. 4

    C.    Under The Committee's Own Interpretation Of The DRs, Landscaping That Obstructs Views Is Prohibited In The Special Setback Area ................................................................. 5

    D.    The Committee Is Required To Keep A Record Of All Its Actions And To Provide Written Notice Of Its Reasons For Disapproval Of Any Aspect Of A Landscape Plan ........................... 6

    E.    The Committee Instructed Western Sunview Not To Put Ornamental Plants In The Special Setback Area, And Western Sunview Complied ................................................................. 6

    F.    Since The Initial Briefing Before Judge Ezra, The Federmans Installed Six Palm Trees That Obstruct Western Sunview's Views, And A Row Of Silver Buttonwoods That Will Obstruct Western Sunview's Views As They Grow .......................................... 6

    G.    The Committee Did Not Approve The Federmans' Additional Landscaping In February 2002 ................................................. 7

    H.    The Committee's Poor Records Prevent A Definitive Conclusion, But The Committee May Have Approved The Additional Landscaping In June 2004 .................................... 8

III. ARGUMENT ................................................................. 10

    A.    Triable Issues Of Fact Exist As To Whether The Committee Is Liable To Western Sunview For Violating The Governing Documents And Allowing Landscaping That Obstructs Western Sunview's Views ................................................................. 10

# TABLE OF CONTENTS
### (continued)

Page

B.    Even If The Committee Did Not Approve All Of The
      Additional Landscaping – A Factual Issue Created By The
      Association's Own Records And The Testimony Of Its
      Architect– The Association Still Is Liable To Western Sunview ..... 13

      1.    Triable Issues Of Fact Exist As To Whether The
            Committee's Failure To Provide Proper Notice Caused
            Western Sunview's View Obstruction ..................................... 13

      2.    Triable Issues Of Fact Exist As To Whether The
            Committee Failed To Enforce The Design Requirements
            By Failing To Take Action To Protect Western
            Sunview's Views ................................................................. 14

IV.   CONCLUSION ............................................................................ 15

**TABLE OF AUTHORITIES**

**Page**

CASES

*Touchette v. Ganal*, 82 Haw. 293, 302-03, 922 P.2d 347, 356-57 (Haw. 1996).................................................................................................. 13

*Wilson v. Handley*, 97 Cal. App. 4th 1301, 1306-07, 119 Cal. Rptr. 2d 263, 266-67 (Cal. App. 2002). ................................................................ 10

OTHER AUTHORITIES

RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 6.9 cmt. d................ 11

RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 6.13 cmt. d.............. 14

Pursuant to the Court's Orders of June 21, 2006 and July 6, 2006, Plaintiff Western Sunview submits this supplemental brief in opposition to the Association's Motion for Summary Judgment (the "Motion").

## I.    INTRODUCTION

The Association should be held to answer for what it has done. Through its actions and its inaction, the Association created a neighborhood at The Bluffs that is rife with conflict and internal strife. If the Association had simply enforced the rules equally and as written, none of this litigation would have occurred. Instead, the Association's Design Committee (the "Committee") picked and chose when and against whom to enforce certain rules – usually only when enforcing the rules benefited some committee member. This case is not about trees – it is about rules, principles, and getting what you paid for.

The answers to the six questions posed by this Court demonstrate that summary judgment cannot be granted in favor of the Association, because there are material factual disputes concerning the Committee's actions and its failure to enforce the Design Requirements (the "DRs"):

(1)    <u>Were the additional trees approved by the Committee in February 2002?</u> No.

1

(2)    <u>Did the Committee subsequently approve the trees?</u>  The

Association's own representatives created a factual dispute on this issue.

(3)    <u>When were the additional trees planted?</u>  Due to the Association's

lack of documentation, Western Sunview cannot say for sure, but it was after

the initial briefing to Judge Ezra (as confirmed by a comparison of a photo

submitted to Judge Ezra and the ones submitted here).

(4)    <u>How many additional trees were planted?</u>  In addition to other

trees outside the special setback area, approximately 6 additional palm trees

and a row or cluster of silver buttonwoods.

(5)    <u>If the Committee approved the additional trees, what was its

decision-making process?</u>  Due to the Committee's failure to maintain

required records, triable issues of fact exist as to its decision-making process.

Important meeting minutes do not exist and have been "reconstructed." The

Committee's architectural consultant testified that complete approval was

never given, but certain meeting minutes suggest that it was.  Insofar as the

Committee approved the trees, its approval appears to be based at least in part

on an improper criterion – namely, the Committee's own past failures to

provide proper notice to the Federmans.[1]  Whether or not the Committee

---

[1] The reasons stated in this brief are intended to supplement, not supersede, the reasons stated in Plaintiffs' Opposition to the Association's Motion.

formally approved the trees, it has breached the governing documents and its

obligations to Western Sunview because the Committee failed to protect views

as required by the DRs, because the Committee ignored its own interpretation

of the DRs, and because Committee policies are inconsistent with the DRs.

(6)    If the Committee did not approve the additional trees, under what

theory alleged in the Complaint may the Committee be held liable to Western

Sunview?    If the additional trees were not formally approved, the

Association's failure to enforce the governing documents still renders it liable

for breach of the governing documents, negligence, and breach of fiduciary

duty.

## II.    FACTUAL BACKGROUND

### A.    The Committee Is Charged With Enforcing The DRs.

The Committee is expressly charged "with enforcing compliance with"

the DRs and with requiring that any landscaping comply with the DRs.  Exhibit

("Ex.") 1 § 3.1, Ex. 2 § 8.5.[2]  Upon 24 hours notice the Association has the

right "to enter any Lot for the purpose of enforcing" the DRs.  Ex. 2 § 4.1.

---

[2]  All Exhibits cited herein are attached to the Declaration of Terrance M. Revere, filed herewith.

**B.    The DRs Protect Views Both By Creating The Special Setback Area And By Discouraging Tall-Growing Trees Anywhere In The Bluffs.**

The DRs state that their "Purpose" is to harmonize homesites with "the inherent natural beauty of the Hapuna Resort and The Bluffs area." Ex. 1, Art. I. "The homesites are located where they can take maximum advantage of ocean views . . . .." *Id.* Indeed, the special setback area was created for the express purpose of protecting views:

> Special setbacks have been placed on the individual Homesites to protect views and to preserve hillsides. No building or structure shall be placed within the special setback areas . . . .

Ex. 1 § 4.17.

The DRs further recognize that landscaping can defeat the purpose of the DRs by obstructing views. Section 4.10.2 provides that "[s]hrubs or trees, such as palm trees, which grow to significant heights are not encouraged" in <u>any</u> area of The Bluffs – much less in the special setback area where views are expressly protected and the obstructing of views is prohibited. Ex. 1 § 4.10.2.[3]

In evaluating whether a landscaping proposal is consistent with the DRs, the Committee should consider whether landscaping would obstruct views when mature. Ex. 1 § 4.10.3.

---

[3] The CC&Rs also provide that landscaping must not obstruct views. Ex. 2 § 2.11.

4

C.    **Under The Committee's Own Interpretation Of The DRs, Landscaping That Obstructs Views Is Prohibited In The Special Setback Area.**

Since the formation of The Bluffs, it has been understood that landscaping that blocks views is prohibited in the special setback area. In October 1997, Tom Stifler, President of Mauna Kea Realty, the developer's in-house realtor stated that:

> [T]he special setback areas are proposed to be maintained in their natural state. In addition, <u>there are to be no large plants or trees in the setbacks that might interfere with the views of the neighboring lot owners</u>. In other words, the setbacks are designed to protect the ocean views of all the homeowners.

Ex. 6 at MKR 05509 (emphasis added).[4]

The Committee's position is that clusters of palm trees are <u>not</u> allowed in the special setback area. Ex. 3 (Stringer Depo.) at 206:1-5; Ex. 7. The Committee also established a rule that (except for non-clustered palm trees)[5] landscaping that exceeds <u>30 inches</u> in height is not allowed in the special setback area. Ex. 8.

---

[4] Plaintiffs were unable to ask the Association about this important document – which evidences the developer's intent – because Plaintiffs did not know it existed until Mauna Kea produced it on July 3, 2006, long after Judge Ezra ruled. This document should have been produced years ago – before Judge Ezra ruled – since it is clearly not privileged. This late production is unfair and prejudicial to Western Sunview.

[5] Despite the fact that palm trees are the only type of tree expressly named in the DRs as "not encouraged" anywhere in The Bluffs (and not just in the special setback area), the Committee's own policy is to ignore this plain language and allow only coco palms – *i.e.*, palm trees – and ground cover in the special setback area. Ex. 1 § 4.10.2; Ex. 7.

**D.    The Committee Is Required To Keep A Record Of All Its Actions And To Provide Written Notice Of Its Reasons For Disapproval Of Any Aspect Of A Landscape Plan.**

The CC&Rs require the Committee to "keep and maintain a record of all actions taken by it." Ex. 2 § 8.5. If the Committee disapproves of any aspect of a landscape plan, the Committee is further required to provide the Owner with written notice of its reasons. Ex. 1 §§ 5.3.1, 5.2.2.f.

**E.    The Committee Instructed Western Sunview Not To Put Ornamental Plants In The Special Setback Area, And Western Sunview Complied.**

In response to Western Sunview's conceptual landscape plan, the Committee stated that "care should be taken so that the landscape does not obstruct views from surrounding properties." Ex. 9. Stating that the "special setback area exists . . . to protect views and to preserve the existing hillside," the Committee asked Western Sunview to redesign ornamental landscape and remove vertical plantings. *Id.* Western Sunview complied.

**F.    Since The Initial Briefing Before Judge Ezra, The Federmans Installed Six Palm Trees That Obstruct Western Sunview's Views, And A Row Of Silver Buttonwoods That Will Obstruct Western Sunview's Views As They Grow.**

The three trees that Judge Ezra considered can be seen in the location noted with the letter "A" in the photographs at Exhibits 18 and 19, and on the left-hand side of the photograph at Exhibits 20 (previously filed with the Court by the Federmans). Since the initial briefing before Judge Ezra, the Federmans

have installed at least six additional palm trees that appear to be in the special

setback area. Ex. 21 ¶ 6. These trees – which can be seen in locations marked

with the numbers 4 through 9 in the photographs at Exhibit 21.D – all obstruct

Western Sunview's views. Ex. 21 ¶ 7 & Ex. D thereto; Ex. 17 ¶ 3; *see also* Ex.

19 (noting the general location of new trees with the letters "B" and "C").

Since the initial briefing before Judge Ezra, the Federmans also have

installed silver buttonwoods that also appear to be in the special setback area,

and that are marked with the number 3 in Exhibit 21.D. Ex. 21 ¶¶ 6, 7 & Ex, D

thereto; *see also* Ex. 19 (silver buttonwoods in foreground near the wall).

Silver buttonwoods are native to Florida (not Hawaii) and are expected to grow

15 to 20 in height, with a 15 to 20 foot spread. Ex. 10 at 1, 3; Ex. 22 ¶ 3.

According to the Forest Service, the silver buttonwood "is ideal for use as a

screen." *Id.* at 3  Thus, as they grow, the silver buttonwoods will create a

screen and obstruct Western Sunview's views.

### G.    The Committee Did Not Approve The Federmans' Additional Landscaping In February 2002.

In violation of Section 8.5 of the CC&Rs' requirement that it keep and

maintain a record of all its actions, the Committee did <u>not</u> keep and maintain a

copy of the minutes of the January 29, 2002 meeting at which it (sometimes)

claims it approved the Federmans' plan to construct a pool-spa complex in the

special setback area. Exs. 11, 12. As such, the Association only produced

"reconstructed minutes developed from . . . notes." Ex. 11. However, these
"reconstructed" minutes make no reference to <u>any</u> approval of landscaping
plans and show that the Federmans in fact received <u>no</u> approval to build or
install anything at all.[6] Ex. 11.

Nevertheless, the Committee's attorney sent the Federmans an approval
letter on February 7, 2002. Ex. 13. The alleged approval did <u>not</u> extend to the
palm trees and silver buttonwoods at issue here. *Id.*

### H.    The Committee's Poor Records Prevent A Definitive Conclusion, But The Committee May Have Approved The Additional Landscaping In June 2004.

Due to the Committee's failure to keep and maintain proper records of
its actions (as it is required to do under Section 8.5 of the CC&Rs), and due to
the testimony of its own representatives, issues of material fact exist as to the
Committee's approval of the additional landscaping.

In responding to some of the Federmans' earlier proposals, the
Committee failed to provide written notice that it disapproved certain aspects
of the Federmans' landscaping plans – even though such notice is required by
Section 5.3.1 of the DRs. This led the Federmans to claim that all aspects of

---

[6] Based on these "reconstructed" minutes, Plaintiffs respectfully submit that Judge Ezra erred in ruling that the Federmans received proper approval for <u>any</u> "improvements" in the special setback area. The "reconstructed" minutes state that "[a] discussion was held regarding rock wall in setback area. A motion to approve was made, but decision deferred pending further information." Ex. 11.

the landscaping plan that were not expressly disapproved had in fact been approved. Ex. 8; Ex. 14 at S 344. Issues of fact exist as to whether the Committee implicitly approved aspects of the Federmans' plans by failing to provide express, written notice of disapproval.

The Committee may have approved some of the landscaping at issue here in June 2004. After noting that the Federmans believed they already had approval, the June 22, 2004 Committee Meeting Minutes state that the Committee approved the planting of six cocos and ground covers in the special setback area, as well as "the planting of shrubs adjacent to the wall on the downhill side provided the walls do not exceed the wall height. Naupaka was the preferred choice by the Committee." Ex. 15 at 060.[7] The evidence shows that the Committee's previous failures to provide the Federmans with written notice of disapproval played a role in any decision to formally approve the Federmans' plans. Ex. 16 at S 345 ("Given that . . . the owner and their consultants have assumed that such planting was approved due to lack of comment, we recommend that the submitted plan be approved pending the following . . . .").

---

[7]  Silver buttonwoods are trees – not ground cover like naupaka – and those that the Federmans installed exceed the height of the wall. Ex. 10, at 1; Ex. 19. The Association has done nothing about it.

Mr. Federman believed he had approval as of July 15, 2004. Ex. 16 ¶ 22. However, on August 3, 2004, the Committee's architectural consultant testified that final approval had not been achieved. Ex. 3 at 100:12-101:5. In November 2005, a committee member testified he could not recall the committee approving landscaping exceeding 30 inches in the Federman special setback area. Ex. 5 (Gunderson Depo.) at 32:9-11.

### III.    ARGUMENT

**A.    Triable Issues Of Fact Exist As To Whether The Committee Is Liable To Western Sunview For Violating The Governing Documents And Allowing Landscaping That Obstructs Western Sunview's Views.**

Judge Ezra's ruling was expressly limited to the two or three trees he considered. *See* Order Denying Plaintiffs' Motion for Clarification and Reconsideration (February 22, 2005), at 23. As shown in the pictures at Exhibits 19 and 21.D, issues of material fact exist as to whether the Federmans' additional landscaping obstructs Western Sunview's view and whether the Association is liable to Western Sunview for failing to enforce the written rules and the Committee's own prohibition on vegetation over 30 inches.

Section 4.17 of the DRs is absolute: To protect views, "[n]o building or structure shall be placed within the special setback areas . . . ." Ex. 1 § 4.17. Rows or clusters of trees are "structures." *Wilson v. Handley*, 97 Cal. App. 4th

1301, 1306-07, 119 Cal. Rptr. 2d 263, 266-67 (Cal. App. 2002). Even if they were not, the Committee has consistently maintained that clusters of trees are not permitted in the special setback area. Ex. 3 (Stringer Depo.) at 206:1-5; Ex. 7.[8]

Even if the trees at issue were not "clustered" (which they are), the Committee's view that only non-clustered palm trees (and ground cover) are permitted in the special setback area both is inconsistent with the DRs and is fundamentally irrational. The DRs expressly provide that "[s]hrubs or trees, such as palm tress, which grow to significant heights are not encouraged" anywhere in The Bluffs – much less in the special setback area where view planes are expressly protected. Ex. 1 § 4.10.2. (emphasis added). Thus, the Committee has adopted the absurd position that the only kind of tall-growing tree that is allowed in the special setback area is the one type of tree that is expressly named as "not encouraged" anywhere in The Bluffs. By allowing only palm trees and ground cover in the special setback area, the Committee in fact "encourages" palm trees, in direct contravention of the DRs.

---

[8] As the RESTATEMENT makes clear, "[d]ecisions made without deliberation and articulation of the reasons for the decision, decisions based on irrelevant criteria or erroneous guidelines, and decisions that violate association guidelines are nearly always held to be unreasonable." RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 6.9 cmt. d. In addition, "[i]nconsistent application of criteria may establish a prima facie case of unreasonableness." *Id.*

Silver buttonwoods grow up to 20 feet in height and are "ideal for use as a screen." Ex. 10, at 3; Ex. 22 ¶3. Thus, they are also the sort of "shrub or tree" that is "not encouraged" pursuant to Section 4.10.2. In addition, silver buttonwoods also native to Florida, not Hawaii. Ex. 10. Their installation therefore was inconsistent with the purpose of DRs, which is to "harmonize" homesites – "set within the natural landscape" – "with the existing environment." Ex. 1, Art. I.

Furthermore, the Committee's own position is that no vegetation (other than palm trees) that exceeds 30 inches is allowed in the special setback area. Ex. 8. Yet, the Committee has not done anything about the silver buttonwoods running along the other side of Western Sunview's property line.

Triable issues of fact exist as to whether any "variance" the Committee may have granted was improper. The Committee may grant a variance only if a proposal was suitable to the area – therefore in the special setback area, which exists to protect view planes, landscaping that obstructs views cannot be allowed, especially where, as here, it is the sort of tall-growing landscaping that is "not encouraged" anywhere in The Bluffs, much less in the area expressly created to protect views. Ex. 2 § 8.8; Ex. 1 §§ 4.17, 4.10.2.

Furthermore, there were significant problems with the Committee's record-keeping, with its providing of notice, and with its deliberative process.

Indeed, the evidence suggests that any approval of the Federmans' landscaping was based at least in part on an improper criterion – the Committee's own previous failures to provide the Federmans proper notice.  Triable issues of fact exist as to whether the Committee "made up" for its past violations of the DRs as to the Federmans by again violating the DRs – this time as to Western Sunview – by allowing Western Sunview's views to be obstructed.

> **B.** **Even If The Committee Did Not Approve All Of The Additional Landscaping – A Factual Issue Created By The Association's Own Records And The Testimony Of Its Architect– The Association Still Is Liable To Western Sunview.**
>
> > **1.** **Triable Issues Of Fact Exist As To Whether The Committee's Failure To Provide Proper Notice Caused Western Sunview's View Obstruction.**

The Committee violated Section 5.3.1 of the DRs by failing to provide the Federmans with written notice of disapproval, which led the Federmans to believe (or at least claim) that all aspects of their landscaping plans that had not been expressly disapproved had in fact been approved.  Ex. 8; Ex. 14 at S 344. Thus, even if the Committee did not expressly approve all aspects of the landscaping at issue, issues of material fact exist as to whether the installation of those aspects was the result of the Committee's breach of the governing documents and/or negligence.[9]

---

[9] Omissions may give rise to negligence liability. *Touchette v. Ganal*, 82 Haw. 293, 302-03, 922 P.2d 347, 356-57 (Haw. 1996).

13

**2.    Triable Issues Of Fact Exist As To Whether The Committee Failed To Enforce The Design Requirements By Failing To Take Action To Protect Western Sunview's Views.**

The Committee is expressly charged "with enforcing compliance with" the DRs. Ex. 1 at § 3.1. As noted Western Sunview's previous briefing, the Committee <u>does</u> enforce the DRs when its members' own views (or those of their clients') are threatened. Even if the Committee did not approve all aspects of the landscaping at issue, triable issues of fact exist as to whether the Committee breached the governing documents by failing to take action against that landscaping, thereby failing to <u>enforce</u> the DRs. RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 6.13 cmt. d.

Triable issues also exist as to whether the Association is liable for breach of fiduciary duty and negligence. In addition to the duties imposed by the governing documents, the Committee had the duties to use ordinary care and prudence, to treat members fairly, to act reasonably in the exercise of its discretionary powers, and to provide members with reasonable access to information. *Id.* § 6.13(1). The Committee's failure to keep records sufficient to evaluate its decisions — and its enforcement of the governing documents when Committee members' own views (or their clients') are threatened but not when Western Sunview's are — create at least a triable issue of fact as to

14

whether the Association is liable to Western Sunview for breach of fiduciary duty and negligence.

## IV.    CONCLUSION

For the foregoing reasons, and for the reasons stated in Western Sunview's Opposition to the Association's Motion, the Court should deny the Association's Motion for Summary Judgment with respect to the additional trees.

DATED: Honolulu, Hawaii, July 17, 2006.

TERRANCE M. REVERE
DENELLE DIXON-THAYER

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC;
GUY HANDS; and JULIA HANDS

15

## ATTORNEY CERTIFICATION

I have reviewed PLAINTIFF WESTERN SUNVIEW PROPERTIES, LLC'S SUPPLEMENTAL BRIEF REGARDING ADDITIONAL LANDSCAPING SUBMITTED IN OPPOSITION TO THE ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT. I hereby certify that each factual assertion made in the Brief has evidentiary support.

DATED: July 17, 2006.

_____
DENELLE M. DIXON-THAYER

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC;
GUY HANDS; and JULIA HANDS

16