# EXHIBIT 14

AT&T Webmail - Compose

## Compose

E-mail ID: **stringerarchitect**

[Send] [Cancel] [Save Draft] [Spell Check] [Address Look-Up] [Print View]

Separate multiple addresses with a comma.

**Short-List** ☑ ed

| To: | bobacree@attglobal.net (Bob Acree),jlelder@earthlink.net (Jerry | < Acree, Bob |
|---|---|---|
| Cc: | dkrueger@awlaw.com (Dennis Krueger) | < Elder, Jerry |
| Bcc: | | < Gunderson, Bob |
| | | < Hartley, Mike |
| Subject: | March Committee Meeting | < Krueger, Dennis |
| | | < Leone, Doug |

Attach
File: [                    ] [Browse] Attach more files be

Signature: None ☑ **Send copy to Sent Mail folder** ☑ **Send copy to INBOX**

**Message:**

```
Gentlemen:

Attached are the project review comments for the Hoffee submittal and the
Federman submittal for your review prior to the Committee meeting.

In response to the question of where the Special Setback boundary is for
Federman, the mauka line of the sewer easement (green line closest to the house)
is the mauka boundary of the Special Setback area.

Please advise of any questions.

David Ayer
Stringer Architects
```

**Original Attachments:**

☑ Include **Attachment 1:** hoffee final review.doc (application/msword)
☑ Include **Attachment 2:** federman lndscp review.doc (application/msword)

**Additional Attachments:**

[                    ] [Browse]
[                    ] [Browse]
[                    ] [Browse]
[                    ] [Browse]

[Send] [Cancel] [Save Draft] [Spell Check]

S   341

The Bluffs at Mauna Kea
Lot 6 - Federman Residence
Construction Modifications/Landscape Modifications
Submission Document: Boyer/Cole Drawings dated January 15, 2004 and Bulletin Log and
Drawings dated December 2, 2003

General Submission:

The design submission details numerous changes that have occurred during
construction of the residence during the 2003. Some of these had earlier been
addressed, while others have not. A number of the modifications concern interior
elements, which we typically do not rule on, as it has no bearing on the Design
Guidelines.

The exterior modifications are, in general, minor in nature, and we take no exception to
the changes. As most or all have been incorporated, this review is a post-construction
review, presumably to clear all issues of construction prior to the pending litigation. The
exterior changes are innumerated below:

•Adjust condenser unit locations - shifting of location of units within existing
approved mechanical yard (non-significant change);
•Revision to water feature at lanai - small waterfeature at lanai surrounded on
three sides by building and not visible to exterior views (non-significant change);
•Relocation of outdoor shower - wall mounted shower on lower ocean-facing
stone wall (non-significant change);
•Modifications to entry gate and court - lowered wall heights, reduced width of
gate, modified lights, modified roof elements and added grilles to gate. We find
that these changes are a benefit to the surrounding properties by the reduction of
the wall height. The other elements are non-significant in nature. The only item
requiring further follow-up is assurance from the owner that the revised gate
lighting is in compliance with Hawaii County Lighting Code.
•Reduction in size of connector roofs. These are smaller roof forms connecting
the larger roof forms, and the modification is considered non-significant.
•Added bench on inside edge of pool. This is below the water surface and
deemed non-significant change.
•Replace exterior plaster with stone. We consider this an improvement on an
approved condition.
•Delete a transom at an exterior door. The door is remote from surrounding views
and considered a non-significant change.
•Replace stone column base with wood. These column bases are shielded from
view, and the change is non-significant.
•Replace fixed glass panel with french doors. The modification does not
appreciably change exterior appearance, and considered non-significant.
•Delete low rock walls at front entry. This is behind the auto court wall and not
visible to the exterior, and thus considered non-significant change.
•Replace precast railing with wood railing. This modification creates and similar
rail design at the house as at the pool with a lighter, more sensitive rail, and is

considered a design improvement.
• Reduce trellis width at garage and guesthouse. This element is only visible from the upper tier residence, and its reduction is small, and non-significant to the overall aesthetic.
• Add exterior wood shutters at guest house to match the main house. This unifies an exterior design element through out the residence, and is considered an improvement.
• Locate the satellite dish on the flat roof behind the monkey pod tree. This element was previously approved.
• Delete roof dormers. These were small roof elements within the larger roof from, and are considered a non-significant change as it does not impact the roof silhouette.
• Build-in bench rather than a furniture item, and delete fireplace at upper terrace. This terrace is shielded from view of adjoining neighbors, and these changes have no visible impact.

As to the landscape, Mr. Beaman has raised similar complaints as to the approval, and we disagree with this statements that he received approval. The May 23, 2001 preliminary submittal acceptance was for the revised pool structure pending receipt of revised preliminary submittal including landscape (not yet submitted at time of initial preliminary). July 11, 2001 comments on the landscape plan followed such submission. Most, but not all, of these comments have been addressed to some extent. Miyabara followed up with similar comments of 15 December 2001.

As mentioned, revised landscape plans addressed a number of these items, but not all. On February 7, 2002, via Ashford and Wriston's letter, approval was granted for the variance request for four monkey pod trees in the court only, no overall approval. To our knowledge, we did not state that the landscape plan mentioned was the approved plan, but were questioning what the current plan was in trying to understand approval. A set of drawings date stamped in October 2001 was noted as Final Approved Construction Set by Terry Tusher. However, we found no correspondence that supported the approval.

We met with Mr. Beaman and the landscape consultant to help mediate the dispute. I believe that much of the question arises out of the fact that the comments addressed specific items, most of which were addressed, but was silent on other. Thus, a I believe the owner and his consultants have assumed all other items not questioned had been approved. In our discussion, we noted that the issues concern plantings in the Special Setback area only, that the submission as of that date had increased the number of coco palms, changed kiawe trees to hau, and increased the number of other palms and shrubs in the area.

Comment:

It was agreed to by the parties present to address the view channels of the adjoining

properties with respect to the planting, rather than delete all trees and shrubs greater than 30 inches in height, and to restrict the number of coco palms proposed.

The current plan has reduced the number of coco palms on the Western Sunview side of the property within the Special Setback by three, has eliminated three hau trees on the Reddy side of the property, has eliminated a number of spider buttonwoods tree/shrubs along the Western Sunview property line, and reduced a number of shrub type materials on the Western Sunview side of the Special Setback Area.

However, there remains some troubling plants. One Kentia Palm on the uphill side of the spa wall should be eliminated, as it could obstruct the ocean view from the Western Sunview property. Also, the owner should agree to maintain the other shrub/trees at a height consistent with the adjoining walls or at 30 inches. This especially includes the multi-trunk and dwarf hua, the tiare gardenia, the hibiscus, and the coccoloba uvifera (sea grape). An alternate shrub for the sea grape may be considered that would require less pruning to maintain the required height.

Other shrubs or deep ground covers also remain from the previous landscape themes. Given the topography of the site, those on the downhill side of the pool will not be a problem given the higher grades uphill of the plants. Also, two plumeria trees remain in the planters at the pool entry, given the statements that the landscape consultant for Western Sunview did not take exception to them.

## Recommendation

Given that the current submission has addressed past concerns regarding the Special Setback area, while not addressing concerns recently raised regarding the planting that may exceed the 30 inch height, and further, that the owner and their consultants have assumed that such planting was approved due to lack of comment, we recommend that the submitted plan be approved pending the following:

•Delete one Kentia Palm on the uphill side of the spa wall surround;
•An alternate shrub be considered for the four Coccoloba Uvifera, or that they agree to be maintained at a ±30 inch height;
•That the hau, hibiscus, gardenia, pohinahina and naupaka be maintained at ±30 inches;
•The two plumeria be allowed pursuant to the statement that their presence is not objectionable to Western Sunview.

S   345