AYABE, CHONG, NISHIMOTO,
    SIA & NAKAMURA
A Limited Liability Law Partnership

SIDNEY K. AYABE          968-0
RONALD SHIGEKANE         1945-0
1001 Bishop Street, Pauahi Tower 2500
Honolulu, Hawaii  96813
Telephone: 808-537-6119
Facsimile: 808-526-3491
E-mail: Ronald.Shigekane@hawadvocate.com

Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS,<br><br>    Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>    Defendants. | CIVIL NO. CV 03-00463 DAE LEK<br>(Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION'S **RESPONSE** TO PLAINTIFF'S SUPPLEMENTAL BRIEF, FILED JULY 17, 2006; DECLARATIONS OF DAVID AYER AND RONALD SHIGEKANE; EXHIBITS A – M; CERTIFICATE OF SERVICE<br><br>**Judge:  Hon. J. Michael Seabright**<br><br>Trial Date:  December 5, 2006 |

2004-069/306973

DEFENDANT THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION'S RESPONSE TO PLAINTIFF'S
SUPPLEMENTAL BRIEF (FILED JULY 17, 2006)

Defendant THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION (hereinafter, "Association") by and through its attorneys, Ayabe, Chong, Nishimoto, Sia & Nakamura, hereby submits its Response to Plaintiffs' Supplemental Brief, (filed 7/17/06.)

## I.    INTRODUCTION

At the outset, Defendant Association asks that this court strike Plaintiffs' Exhibits 6, 8, 10, 11, 12, 14, 16 and 17 on the basis that they fail to comply with Rule 56(e) of the Federal Rules of Evidence, which requires that, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

In addition to Defendant's request to strike the above designated exhibits, Defendant believes that Plaintiffs' memorandum is filled with so many misstatements and misleading 'factual' assertions that a separate motion to strike is warranted. The motion is being filed simultaneously with the present memorandum and is entitled, Motion to Strike Plaintiff's Supplemental Brief (filed 7/17/06).

Focusing on the specific inquiries posed by the Court in its Order granting Defendants' Motion For Summary Judgment (filed 6/21/06), Defendant submits its replies to Plaintiffs' responses as follows (the Court's inquiries are in **bold and underlined**; the Plaintiffs' responses are in **bold**; Defendant's replies are presented immediately below Plaintiffs' responses):

(1) **Were the additional trees approved by the Committee in February 2002?** No.

Giving plaintiffs the benefit of the doubt, this answer is technically correct. However, the February, 2002 date was significant only with respect to the issue raised by Plaintiffs regarding the approved variances for the "structures", i.e. swimming pool and related improvements in the special setback area. Previously, the approval date(s) for the Federman **landscape plans** were not addressed by the parties, since Plaintiffs never specifically identified what plantings were at issue in this lawsuit – until after this Court forced Plaintiffs to do so.

Although it may be arguable as to exactly *when* specific plants were approved during the entire approval process (which spanned over several years) it is very clear that the 6 coconut trees in the Special Setback Area were specifically approved, at the very latest, on **June 22, 2004.** [Exh. I] Plaintiffs have a copy of the approval letter. Although Defendant is unable to state when Plaintiffs first had a copy of the letter, Plaintiffs certainly had it in December, 2005, *prior* to filing their Opposition memorandum to Defendants' Motion for Summary Judgment. See affidavit of Ronald Shigekane.

(2) **Did the Committee subsequently approve the trees?** The Association's own representatives created a factual dispute on this issue.

This answer is false. There is no factual dispute. As noted above, the Committee formally and **specifically approved the 6 coconut trees in the special setback area on June 22, 2004.** [Exh. I] Plaintiffs KNOW this. The contention that there is a "factual dispute" is not true.

> (3) **When were the additional trees planted?** Due to the Association's Lack of documentation, Western Sunview cannot say for sure, but it was after the initial briefing to Judge Ezra (as confirmed by comparison of a photo submitted to Judge Ezra and the ones submitted here).

This answer continues to mislead the court. Plaintiffs misrepresent that a photograph taken by their expert, Mr. James Reinhardt (Exh. A, attached to his declaration, Exh. 21) is the one shown and considered by Judge Ezra at the hearing on August 23, 2004. It is not. The readily available transcript of the proceedings prove that Judge Ezra was shown Plaintiffs' Exh. 69 (to their Memo in Opposition filed 8/5/04) which clearly depicts the two newly planted coconut trees in the foreground (Judge Ezra ignored the two trees but made remarks about the cluster of 3 coconut trees which are depicted in the left side of the photograph).

Further, Plaintiffs' response suggests that the Federmans decided to plant trees which would block Plaintiffs view *after* Judge Ezra's ruling in February, 2005. However, all of the complained-of plantings were depicted in landscape plans which were approved by the Committee on June 22, 2004. Even before Plaintiffs opposed and argued the Federman motion for summary judgment in August, 2004, they KNEW about the planned trees, yet did not complain about them. The 2 coconut trees and a not-yet-planted cluster of 3 coconut trees further into the property are even depicted in the architect's rendering of the completed improvements and landscaping in Defendant Federmans' motion **filed two years ago** (7/27/04) – See, Defendant Federmans' CSOF Exh. 48 (filed 7/27/04).

More importantly, at the time of Defendant Association's motion for summary judgment in December, 2005, the trees were already planted pursuant to the approved plans and plaintiffs knew the exact location of the trees – yet did not present their specific objections to this court at that time. Instead, plaintiffs vaguely argued:

> After this Court ruled on the motion for reconsideration [2/22/05], the Federmans planted *numerous* additional clusters of palm trees in their special setback area. These trees do block Plaintiffs' views, in direct contravention of Section 4.17 of the Design Requirements. The Association acted unreasonably in allowing the Federmans to plant them, for the reasons discussed above.
>
> Emphasis added.
> [Plaintiffs' Memorandum in Opposition, filed 1/5/06 p. 30]

3

**(4)  How many additional trees were planted?  In addition to other trees outside the special setback area, approximately 6 additional palm trees and a row or cluster of silver buttonwoods.**

This is another statement which is demonstrably false.  Plaintiff claims that *besides the 3 palm trees* ruled upon by Judge Ezra, there are 6 additional trees in the special setback area, for a total of 9 coconut trees.  Plaintiffs make these claims with the assistance of their consultant, whose carefully crafted words like, "I believe", "I understand" and "may have" are obviously meant to *create* factual issues where none exist. (See, Plaintiff's Exh. 21).

**Fact:**  There are a total of 6 palm trees in the special setback area – 3 already ruled upon by Judge Ezra and 3 others which had been approved at the same time, on June 22, 2004.  See **Exh. J** (Landscape plans) and **Exh. I** (approval letter of 6/22/04).  Two other palm trees, labeled as "new" by the Plaintiffs, are actually outside the special setback area (see Exh. J) – **these palm trees are in the photograph shown to Judge Ezra at the hearing on August 23, 2004.  [Exh. K]**

**(5)  If the Committee approved the additional trees, what was its decision-making process?  Due to the Committee's failure to maintain required records, triable issues of fact exist as to its decision-making process.  Important meeting minutes do not exist and have been "reconstructed".  The Committee's architectural consultant testified that complete approval was never given, but certain meeting minutes suggest that it was.  Insofar as the Committee approved the trees, its approval appears to be based at least in part on an improper criterion – namely, the Committee's own past failures to provide proper notice to the Federmans.  Whether or not the Committee formally approved the trees, it has breached the governing documents and its obligations to Western Sunview because the Committee failed to protect views as required by the DRs, because the Committee ignored its own interpretation of the DRs, and because Committee policies are inconsistent the the DRs.**

False.  Plaintiffs KNOW that records of "important meeting minutes" (the January 29, 2002 meeting minutes which were the subject of Plaintiffs' previous motion for partial summary judgment) have nothing to do with the complained-of 6 palm trees and buttonwood plants.  Plaintiffs KNOW that there are many other records of the Committee's architectural consultant's recommendations specifically regarding the landscape plans (as opposed to the request for a variance

4

in building a swimming pool and other improvements.) See, e.g. **Exhs. A, B, C, E, F and H.**

(6)  <u>**If the Committee did not approve the additional trees, under what theory alleged in the Complaint may the Committee be held liable to Western Sunview?**</u>  **If the additional trees were not formally approved, the Association's failure to enforce the governing documents still renders it liable for breach of the governing documents, negligence, and breach of fiduciary duty.**

As noted above, the facts asserted by Plaintiffs are false. Plaintiffs KNOW that the "additional trees" were approved by the Committee; however, by casting their argument in the alternative (i.e. *if* the trees were *not* approved…), plaintiffs obviously hope to infuse another level of uncertainty and confusion so as to persuade the court that questions of fact remain.

## II.   ARGUMENT

### A.   <u>There No Genuine Issues of Material Fact</u>

At the time of the hearing on Defendant Federmans' Motion for Summary Judgment in August, 2004, Judge Ezra asked to see a photograph of the offending swimming pool. He looked at the photograph presented by Plaintiffs (a copy of which is provided herein for the Court's convenience as **Exh. K**) and, apparently to make a point that the swimming pool improvements did not obstruct views, remarked that a cluster of two or three coconut trees were more of an "insult" to the Plaintiffs' view of the ocean than the swimming pool in the Federman Special Setback Area. After the Court ruled in favor of the Federmans, Plaintiffs asked for "clarification" or reconsideration of its order regarding the status of the coconut trees, arguing that the Court agreed that the trees were violative of the covenants and that they should be removed. The Court reviewed the matter and ruled that

5

the process followed by the Design Committee was reasonable, that the trees did not violate the covenant, and that there was no evidence of bad faith. The Court, however, limited its ruling to the "two or three" coconut trees which it had commented upon at the hearing. Plaintiffs now claim that *after* the Court's consideration of the cluster of 3 coconut trees in August, 2004, the Federmans planted 6 additional coconut trees and a cluster of silver buttonwoods which "appear" to be in the Special Setback Area. [See, Plaintiffs' Supplemental Brief (filed 7/17/06), p. 7.] Plaintiffs are demonstrably wrong.

First, there are a total of 6 coconut trees which have been planted in the Special Setback Area (SSA). See, Declaration of David Ayer and **Exh. J**. *All 6 coconut trees were approved by the Bluffs' Design Committee at the same time, in June, 2004.* **[Exh. I]** One cluster of 3 trees had been planted and are shown in the photographs presented to the court at the August, 2004 hearing on the Federmans' Motion for Summary Judgment. **[Exh. K]** Although the other 3 trees had not been planted, Plaintiffs were well aware that a total of 6 trees had been approved in the SSA. Unless Plaintiffs can demonstrate that the 3 additional trees were given different treatment during the approval process, these trees are subject to the ruling already made by Judge Ezra – i.e. *that the approval process was reasonable and that there is no evidence that the Committee acted in bad faith.*

6

> ...the Court's only task is to determine whether the committee reached this decision reasonably and in good faith. The evidence reveals that the committee carefully considered the impact of Defendants' plans on Plaintiffs' viewplane. Indeed, the committee required the Defendants to lower their terrace area by an additional eight feet in an effort to safeguard Plaintiffs' view. The committee sought the advice of professional architectural consultants in reaching their decisions. Moreover, the committee's decision to allow Defendants to construct their terrace and pool in the setback area is consistent with their decisions before and after to allow such improvements by other landowners in their setback areas. The Court finds that the process followed by the committee was reasonable, and that there is simply no evidence that it acted in bad faith.
>
> Thus, the Court finds the planting of the trees approved by the design committee did not violate the covenant, and that no triable issue of fact remains regarding these trees. To the extant [sic] that Plaintiff's first motion for clarification and reconsideration requests that this Court establish a triable issue of fact remains regarding the two or three approved trees, it is therefore DENIED IN PART. The Court clarifies, however, that this ruling only applies to those trees that were included in Defendants' landscaping plans and approved by the design committee. The two to three trees addressed by the Court at the hearing are the only trees that have been sufficiently discussed by the parties in their arguments and factual evidence to enable this Court to reach a ruling on the subject. To the extent that Plaintiffs seek a ruling regarding other trees or trees generally, this issue was not properly before the Court.

[Reconsideration Order of 2/22/05, at pp. 22-23]

Second, the photographs submitted by Plaintiffs are clearly intended to mislead – they cannot be explained away as 'mistakes'. They are plainly false,

contrived and meant to mislead – so much so that Defendant has been compelled to file a separate Motion to Strike Plaintiffs' Supplemental Brief.

Third, the referenced "cluster of silver buttonwoods" *is not in the Special Setback Area.* Further, the buttonwoods were also approved at the same time as the 6 coconut trees, on June 22, 2004. Therefore, they are also subsumed under the approval process which Judge Ezra has already found to be reasonable and not in bad faith.

A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation. Kona Enterprises, Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) [emphasis in original]; see, also, All Hawaii Tours, Corp. v. Polynesian Cultural Center 116 F.R.D. 645 (D. Haw. 1987) (failure to raise issues in opposition to summary judgment functions as a waiver), *rev'd in part on other grounds, aff'd in part without opinion,* 855 F.2d 860 (9th Cir. 1988). Plaintiffs' objections to the 6 coconut trees and the cluster of silver buttonwoods *could have and should have* been raised at the time Plaintiffs asked for clarification and reconsideration of the Court's grant of summary judgment in the Defendant Federmans' favor in September, 2004.

Moreover, in December, 2005, Plaintiffs' objections to the 6 coconut trees and the cluster of silver buttonwoods *could have and should have* been raised in

connection with its opposition to Defendant Association's Motion for Summary Judgment (filed 11/30/05). Instead, Plaintiffs' opposition memorandum only vaguely complained about all palm trees in the Special Setback Area and stated that, "[t]hese palm trees – many of which have been planted subsequent to this Court's previous summary judgment decision – block Plaintiffs' ocean views. Plaintiffs' CSOF 54." Rather than presenting a photograph, the referenced "CSOF 54" was supported only by the declaration of their expert, James Reinhardt in Exhibit 152. Mr. Reinhardt was equally vague and gave misleading and factually inaccurate statements which were craftily calculated to generate questions of fact – "There are now many more palm and other trees in the Federman Special Setback Area even though the Committee claims that it has a rule prohibiting landscaping in excess of 30 inches in the Special Setback Area." This is also the subject of Defendant's Motion to Strike Plaintiff's Supplemental Brief (filed 7/17/06).

### B. Palm Trees are Allowed and Have Consistently Been Allowed, Both Inside and Oustide of the Special Setback Areas

Plaintiffs' Supplemental Brief is filled with repetitive arguments previously made to this court which have been implicitly rejected in its orders. There is no *prohibition* against palm trees in the community, either inside or outside the Special Setback Areas. While the Design and Construction Requirements for Homes, palm trees are "not encouraged", they certainly are not prohibited. The DCRH provides,

> 4.10.2   Shrubs or trees, such as palm trees, which grow to significant heights are not encouraged. All principally plant materials shall be subject to review and approval by the Design Committee.

[Plaintiff's Supplemental Brief filed 7/17/06, Exh. 1, p. 5 of 9]

Notwithstanding the language that palm trees are not "encouraged", palm trees have typically been allowed when requested, whether inside or outside the Special Setback Area. In all cases, including the Federman case, view planes are carefully considered before approval is granted.

Plaintiffs continue to argue that palm trees should be classified as "structures" as the term is used in the DRCs. This court has already ruled that the "two or three trees" complained of were not in violation of the covenant even if considered "structures". [See Order Denying Plaintiffs Motion for Clarification (filed 2/22/05) p. 20.] Thus, even if one accepts the argument that the trees in the setback area are "structures" and subject to the restrictions, the Committee's approval process (i.e. grant of a variance from the restrictions) has already been found to be reasonable.

Finally, although Plaintiffs also complain of palm trees even when they are not within the Special Setback Area, it should be noted that Plaintiffs requested and obtained Committee approval to put their own cluster of palm trees on their property. Plaintiffs' cluster of palm trees may be seen in **Exhs. K and L.**

## C.   The Federman Approval Process Was Reasonable

As noted above, much of the evidence submitted in connection with the Federman motion for summary judgment (filed 7/27/04) and in connection with the Association's motion for summary judgment (filed 11/30/05) dealt with the overall approval process, and specifically with the Committee's approval of the swimming pool and related improvements in the Special Setback Area. However, now that Plaintiffs change their focus, it may be useful to provide a *brief* recap of the Federmans' landscaping plans and approvals. The following items and supporting exhibits are only meant to highlight various points in the approval process.

On August 29, 2001, records show that the architectural consultant to the Design Committee received comments regarding the Federman landscaping plans. Included was a recommendation that the proposed 27 coconut trees be reduced. See, **Exh A**.

On December 17, 2001, the retained landscaping consultant forwarded comments directly to the Committee's architectural consultant. Among the comments was the following:

> While the number of Coconuts has been reduced (primarily from the side yards), there is still an abundant number of specimens that may block views from mauka properties. The locations of the Coconuts represent a continuous mass of palms rather than clusters that would allow for view channels and planes. Suggest further reduction and clustering of Coconuts.
>
> [**Exh. B**]

11

On January 7, 2002, the Federmans' Project Manager submitted revisions to the landscape plans to the Committee's architectural consultant, which included:

> The number of Coconut Palm Trees has been reduced to 14 by taking out all Coconuts in the terrace planters and moving clusters in the side yard to further open up view gaps.

[**Exh. C**]

On February 7, 2002, the Committee's counsel informed the Federmans that, "after a review of your submittal for final approval," the Committee granted its approval for commencement of construction.

[**Exh. D**]

The February 7, 2002 letter apparently was the subject of controversy over what, precisely had been approved. By letter dated January 30, 2004, the Federmans' counsel, Andrew Beaman, Esq., set forth a history of the approval process. Without waiving the Federmans' position that approval had already been given, Mr. Beaman submitted proposed changes for the Committee's approval in order to, "render moot the issue of whether plans had been approved in the past." See, **Exh. E**

The Committee's architectural consultant thereafter submitted comments to the proposed changes. Included was a statement that the number of coco palms had been reduced, other trees had been eliminated, but that there were still "troubling" plants remaining. [**Exh. F**]

By letter dated April 9, 2004, the Federmans were informed that, "[t]he Committee took no exception to the landscape planting plan as proposed with the exception of the planting within the Special Setback area. [**Exh. G**]

The Federmans again submitted revisions to their landscape plans, and via e-mail dated June 21, 2004, the architectural consultant provided comments to the revisions for the benefit of the Committee. [**Exh. H**]

By letter dated June 22, 2004, the Federmans were notified that, **"[t]he six coco palms situated in the Special Setback Area are acceptable, as is the grass and other ground covers (approximately 12" or less in height)"**. [**Exh. I**]

## III. CONCLUSION

This Court already found that, "the process followed by the committee was reasonable, and that there is simply no evidence that it acted in bad faith." [Reconsideration Order of 2/22/05, at pp. 22] All of the plants now complained of by Plaintiffs were actually approved in June, 2004, as part of the process this Court found as reasonable. Plaintiffs have not submitted any new evidence to suggest that the decision or process was arbitrary or made in bad faith.

For the foregoing reasons, Defendant Association asks that this Court issue a finding that the Federmans' landscaping plans were approved reasonably and in good faith and that judgment rendered in favor of the Defendant Association and against Plaintiffs.

DATED: Honolulu, Hawaii; _July 26, 2006_

_/s/ Ronald Shigekane_
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>　　　　　　Defendants. | CIVIL NO. CV 03-00463 JMS-LEK<br>(Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>CERTIFICATE OF SERVICE |

2004-069/306973

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _July 26, 2006_ a true and correct copy of DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION'S **RESPONSE** TO PLAINTIFF'S SUPPLEMENTAL BRIEF, FILED JULY 17, 2006 was duly served upon the following parties listed below, at their last-known address, as indicated below:

| | | |
|---|---|---|
| TERRANCE M. REVERE, ESQ. | U.S. Mail | [ ] |
| JACQUELINE E. THURSTON, ESQ.<br>1000 Bishop Street, Suite 801<br>Honolulu, Hawaii 96813 | Hand-Delivery<br>Electronically | [X]<br>[X] |

And

| | | |
|---|---|---|
| DENELLE M. DIXON-THAYER<br>275 Battery Street, 23rd Floor<br>San Francisco, California 94111 | U.S. Mail<br>Hand-Delivery<br>Electronically | [ ]<br>[ ]<br>[X] |

    Attorneys for Plaintiffs
      WESTERN SUNVIEW PROPERTIES, LLC
      GUY HANDS AND JULIA HANDS

| | | |
|---|---|---|
| J. DOUGLAS ING, ESQ.<br>BRIAN A. KANG, ESQ.<br>First Hawaiian Center, 23rd Floor<br>999 Bishop Street<br>Honolulu, Hawaii 96813 | U.S. Mail<br>Hand-Delivery<br>Electronically | [ ]<br>[X]<br>[X] |

    Attorneys for Defendants
      MAUNA KEA PROPERTIES, INC. and
      MAUNA KEA DEVELOPMENT CORP.

DATED: Honolulu, Hawaii July 26, 2006.

_____
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

2