IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS, | ) ) ) | Case No. CV03-00463 JMS/LEK |
| | ) ) | MEMORANDUM IN SUPPORT OF |
| Plaintiffs, | ) ) | MOTION |
| vs. | ) ) ) | |
| IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100, JANE DOES 1-100, DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

104839.5

TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . ii

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . 1

PLAINTIFFS' FILINGS VIOLATE THE SETTLEMENT AGREEMENT . . . . . 3

PLAINTIFFS' FILINGS ARE MATERIALLY FALSE AND MISLEADING . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>TABLE OF AUTHORITIES</u>

**CASES**

<u>Baer v. First Options of Chicago, Inc.</u>,
    72 F.3d 1294 (7th Cir. 1995) . . . . . . . . . . . . . . 2

<u>Callie v. Near</u>,
    829 F.2d 888 (9th Cir. 1987) . . . . . . . . . . . . . . 2

<u>Doi v. Halekulani Corporation</u>,
    276 F.3d 1131 (9th Cir. 2002) . . . . . . . . . . . . . 2

<u>Flanagan v. Arnaiz</u>,
    143 F.3d 540 (9th Cir. 1998) . . . . . . . . . . . . . . 2

<u>Kokkonen v. Guardian Life Ins. Co.</u>,
    511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d (1994) . . . . . 2

<u>O'Connor v. Colvin</u>,
    70 F.3d 530 (9th Cir. 1995) . . . . . . . . . . . . . . 2

**STATUTES**

Haw. Rev. Stat. § 421J-13 . . . . . . . . . . . . . . . . . . 10

**RULES**

Fed. R. Civ. Pro. Rule 26(a) . . . . . . . . . . . . . . . . 7

Fed. R. Civ. Pro. Rule 26(e)(1) . . . . . . . . . . . . . . 7

Fed. R. Civ. Pro. Rule 26(e)(2) . . . . . . . . . . . . . . 7

Fed. R. Evid. Rule 602 . . . . . . . . . . . . . . . . . 8, 18

Fed. R. Evid. Rule 702 . . . . . . . . . . . . . . . . . 8, 18

**OTHER AUTHORITIES**

28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . 2

## SUMMARY

In the Settlement Agreement between Plaintiffs and the Federmans, which this Court approved, Plaintiffs promised they would not make exactly the sorts of assertions that are contained in their most recent papers. Plaintiffs agreed they would make no claim in any proceeding that the Federmans' landscaping fails to conform to the Design and Construction Requirements for Homes for the Bluffs.

The trees now at issue were duly approved by the Design Committee long ago. The Federmans gave their approved plans to Plaintiffs before Plaintiffs filed their First Amended Complaint, and Plaintiffs chose not to object. Some of the trees now at issue are not located on the Federmans' property; most are not located in the special setback area; and those that are located in the special setback area were approved by the Design Committee in February, 2002, before any discussion of a "thirty inch rule." Judge Ezra saw photographs and an architectural rendering showing these trees at the hearing on August 23, 2004. All of the trees at issue were planted by the end of 2004, at least nine months before Plaintiffs agreed to live with them in the Settlement Agreement. Plaintiffs should now be held to their agreement.

## JURISDICTION

Section 8.F. of the Settlement Agreement, a copy of which is attached as *Exhibit B*, provides that "any action to enforce this Settlement Agreement shall be brought in the United States District Court for the District of Hawaii." This Court found the agreement to have been executed in good faith and

approved it in its Order Granting Plaintiff Western Sunview
Properties, LLC's Motion for Determination of Good Faith
Settlement entered herein on January 10, 2006.

      This Court has inherent authority to enforce the
Settlement Agreement.  Exercise of such authority is reviewed for
abuse of discretion.  <u>Doi v. Halekulani Corporation</u>, 276 F.3d
1131, 1136 (9th Cir. 2002).  The parties may agree that this
Court exclusive jurisdiction to enforce the agreement.  <u>Flanagan
v. Arnaiz</u>, 143 F.3d 540, 544 (9th Cir. 1998).  This Court also
has supplemental jurisdiction to enforce the Settlement Agreement
pursuant to 28 U.S.C. §1367(a).  *See e.g.*, <u>Baer v. First Options
of Chicago, Inc.</u>, 72 F.3d 1294 (7th Cir. 1995).

      Where (as here) an agreement is complete and definite
by its terms, and there is evidence that the agreement has been
entered into by the parties or their authorized representatives,
the Court need not conduct an evidentiary hearing before
enforcing the agreement.  <u>Doi v. Halekulani Corporation</u>, *supra*;
<u>Callie v. Near</u>, 829 F.2d 888 (9th Cir. 1987).  Because this
Settlement Agreement expressly provides for enforcement in this
Court, the agreement was approved by this Court, and the entire
action has not yet been dismissed, this Court has ancillary
jurisdiction over a proceeding to enforce the agreement to
"vindicate its authority," and there is no jurisdictional issue
presented by <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375,
114 S.Ct. 1673, 128 L.Ed.2d (1994); *cf.* <u>O'Connor v. Colvin</u>, 70
F.3d 530 (9th Cir. 1995).

         2

## PLAINTIFFS' FILINGS VIOLATE THE SETTLEMENT AGREEMENT

At the time of the Settlement Agreement, the Federmans were preparing a fee application for approximately $550,000. Because Judge Ezra had issued summary judgment on Plaintiffs' claims under the CCRs, the Federmans clearly had the right to recover these fees and costs from Plaintiffs pursuant to section 12.5 of the CCRs, which provides that the prevailing party shall be entitled to recover from the losing party its costs and expenses in connection with such litigation, including attorneys' fees. The Federmans effectively paid several hundred thousand dollars in exchange for the right to be left alone. See attached Declaration of Irwin Federman.

The Settlement Agreement provides, in relevant part:

> In further consideration of this Agreement, WSP, the Hands and the Federmans hereby covenant and agree that **they shall make no claim in any legal or administrative action that the** improvements (including the **landscaping** in the condition that it exists on either property as of the date of this Agreement) **constructed by the Federmans** on Lot 6 or by WSP on Lot 5 (as of the date of this Agreement) **do not conform to** any laws, codes, ordinances and regulations, or to the recorded Declaration of Protective Covenants, Conditions and Restrictions for the Bluffs at Mauna Kea (the "Declaration") and the unrecorded **Design and Construction Requirements for Homes** promulgated thereunder, and that they shall take no action seeking to change, modify, remove, alter, or reconstruct any such improvements (including the landscaping in the condition that it exists on either property as of the date of this Agreement); provided that WSP and the Hands shall be free to pursue a claim for damages only against the Bluffs Community Association . . . as pled in the Lawsuit.

It is clear both from the agreement itself and from the overall factual context that the reference to "any legal or administrative action" includes the case at bar; that the word "claim" is used in its ordinary sense; and that this clause is not limited to claims asserted by Plaintiffs directly against the Federmans.  See attached Declaration of Andrew V. Beaman.

This provision was material to the agreement.  It was intended, in part, to prevent Plaintiffs from seeking through the back door what they had agreed to give up through the front door. See attached Declaration of Irwin Federman.  The Federmans were concerned, for example, that the Bluffs Community Association, the Design Committee, or the County of Hawaii might be coerced, threatened or intimidated by the Plaintiffs; that these other parties might not have the same incentive to defend their interests in future proceedings; and that any number of foreseeable or unforeseeable adverse consequences might flow from some erroneous factual finding in such a tribunal.  Originally, the Federmans sought an indemnity from Plaintiffs.  In lieu of an indemnity, the Federmans ultimately agreed to accept the clause in question; but this clause was the subject of much debate and was the last provision negotiated before the agreement was signed.  See attached Declaration of Andrew V. Beaman and e-mail exchange between counsel attached hereto as *Exhibit C*.

The trees now at issue were part of "the landscaping in the condition that it exists as of" the date of the agreement. The Federmans' landscaping contractor finished work by the end of

2004, at least nine months before the Settlement Agreement was signed. Aerial photographs of the property taken by Plaintiffs in December, 2004, and by a professional photographer in March, 2005, which are attached hereto as *Exhibits D and E*, establish that fact. Except for natural growth of the trees, which obviously was expected by the parties at the time of the Settlement Agreement, the condition of the Federmans' landscaping today is the same as it was on October 7, 2005. See attached Declarations of Irwin Federman and Robert Frost.

Plaintiffs breached the agreement less than three months after they signed it. On January 5, 2006, Plaintiffs filed a Memorandum which claims in part:

> After this Court ruled on the motion for reconsideration, the Federmans planted numerous additional clusters of palm trees in their special setback area. These trees do block Plaintiffs' views, in direct contravention of Section 4.17 of the Design Requirements.

Plaintiffs' Opposition to The Bluffs at Mauna Kea Community Association's Motion for Summary Judgment filed herein on January 5, 2006 at p. 30 (emphasis in original). As will be explained in more detail below, this filing is materially false and misleading: the Federmans planted no trees after Judge Ezra ruled on the motion for reconsideration; they did not plant "numerous clusters of palm trees" in the special setback area; and Plaintiffs were well aware of all of the Federmans' trees and chose not to object to them because they did not block their views. More to the present point, however, this filing clearly makes a claim that the Federmans' landscaping in its present

condition fails to conform to the Design and Construction Requirements for Homes. See attached Declaration of Irwin Federman. Plaintiffs again breached the Settlement Agreement when they filed the accompanying Declaration of James Reinhardt dated January 4, 2006 which makes the same claims.

Plaintiffs breached the Settlement Agreement again when they filed their memorandum of July 17, 2006 which claims that the Federmans' landscaping violates section 2.11 of the CCRs and sections 4.17, 4.10.2, and 4.10.3 of the Design Requirements -- these provisions are cited, for example, in Plaintiff's July 17 memorandum at pp. 4-5. Plaintiffs again breached the Settlement Agreement by filing a second Declaration of James Reinhardt dated July 17, 2006.

The Court may wonder whether the provision allowing claims for damages only against the Bluffs Community Association "as pled in the Lawsuit" might apply here. However, no claim related to the Federmans' landscaping was "pled in the lawsuit," other than the claim related to the three trees that Judge Ezra already ruled upon. See attached Declaration of Andrew V. Beaman. The Court's attention is directed to the First Amended Complaint, Plaintiffs' Rule 26(e) disclosures, and Plaintiffs' second amended answers to interrogatories, attached hereto as *Exhibits F, G and H.*

As far as the landscaping is concerned, Paragraph 19 of the First Amended Complaint complains only of the same "cluster of palm trees" that Judge Ezra ruled upon. Somewhat less clear are Plaintiffs' references in paragraph 12 of the First Amended

Complaint to "illegal objects" and elsewhere to "actions that will cause a destruction of views" from Plaintiffs' property. However, on July 30, 2004, in response to the Federmans' interrogatories, Plaintiffs identified the "objects" and "actions" complained of (as far as the landscaping was concerned) to mean the "palm trees on the South side of the Federmans' lot that are within the setback area." Again, these are the same trees ruled upon by Judge Ezra. See Plaintiffs' Second Amended Response to Defendant Irwin Federman and Concepcion S. Federman's First Request for Answers to Interrogatories dated July 30, 2004 attached hereto as *Exhibit G*, at questions 5, 9 and 10.

This Court had ordered Plaintiffs to give complete answers to these interrogatories. See Magistrate Judge Kobayashi's order filed herein on December 30, 2003, affirmed by Judge Ezra in his order filed March 5, 2004. Under Fed. R. Civ. Pro. Rule 26(e)(2), Plaintiffs were under a duty seasonably to amend their answers to interrogatories if they learned that the response was "in some material respect incomplete or incorrect." Even though all of the trees now at issue had been planted by the end of 2004, Plaintiffs had not amended their answers to complain about these trees by the time of the Settlement Agreement.

Also, Fed. R. Civ. Pro. Rule 26(e)(1) requires a party to supplement its Rule 26(a) disclosures if it learns that in some material respect the information disclosed is incomplete. As of the date of the Settlement Agreement, Plaintiffs' most recent Rule 26 supplementation made no mention of the trees now

at issue.  See Plaintiffs' Rule 26 Supplementation filed herein
on September 15, 2004, attached hereto as *Exhibit H.*

As of October 7, 2005, the date of the Settlement
Agreement, all of the trees that are now at issue had been in the
ground for at least nine months, but no claim related to those
trees had been pled in this case.

Accordingly, there should be no doubt that Plaintiffs
have breached the Settlement Agreement.

### PLAINTIFFS' FILINGS ARE MATERIALLY FALSE AND MISLEADING

Plaintiffs filed a Declaration of James Reinhardt,
dated January 4, 2006, attached hereto as *Exhibit I*, and a second
Declaration of James Reinhardt dated July 17, 2006, attached
hereto as *Exhibit J.*  Both declarations violate the Settlement
Agreement as shown above.  In addition, both declarations should
be stricken for lack of foundation under Fed. R. Evid. R. 602 and
702, and both declarations are materially false and misleading.[1]

The facts are as follows.

There are six coconut palm trees located in the special
setback area of the Federmans' yard, arranged in two groups of
three trees each.  The first group of three trees, which Judge
Ezra ruled upon, is located in the Southwest corner of the
Federmans' property.  The second group of three trees is in the
Northwest corner.  All six trees were planted by December, 2004.

---

[1]     The July 17, 2006 Declaration of James Reinhardt, a
copy of which is attached hereto as *Exhibit J*, was attached as
Ex.21 to the Declaration of Terrance M. Revere filed herein on
July 17, 2006 ("Revere Decl.").

See aerial photograph of Lots 4, 5 and 6 taken by Plaintiffs in December, 2004, attached hereto as *Exhibit D*.

All six coconut palm trees, in their present location, were approved by the Design Committee in February, 2002.  See attached Declaration of Irwin Federman and planting plan dated October 17, 2001, attached hereto as *Exhibit K*.

The Federmans' landscaping contractor planted the first group of three coconut palm trees in or about late 2002.  In early 2003, the Federmans delivered a set of the approved landscaping plans to Plaintiffs.  On or about March 6, 2003, one of the Federmans' architects, Joel Laber, met with Plaintiffs' landscape architect Loriann Gordon at the jobsite.  Mr. Laber's notes of the meeting indicate that Ms. Gordon "suggested planting Coco Palms" on the Federmans' property, presumably to add more greenery to the Plaintiffs' view plane.  See deposition of Loriann Gordon attached hereto as *Exhibit X* at p. 149.

In or about April, 2003, Plaintiffs first complained about the Federmans' plans.  In response, the Federmans instructed their landscaping contractor to stop planting trees, even though they knew that the delay would be expensive, hoping to be good neighbors and intending to resolve matters with Mr. and Mrs. Hands.  See attached Declarations of Robert Frost and Irwin Federman.

On May 6, 2003, the Federmans had one of their landscape architects, Don Vita, meet with Plaintiffs' landscape architect on the site in an effort to work out a new landscaping

plan.  Loriann Gordon again proposed that the Federmans plant more trees in the special setback area of their property in order to provide additional greenery.  See Gordon deposition attached hereto as *Exhibit X* at p. 66.

In June, 2003, the Federmans' attorney wrote to Dennis Krueger (the attorney who had signed the February, 2002 approval letter for the committee), offered to make the Federmans' property available for inspection by the committee's architect so he could verify that the construction was appropriate, and requested that he advise his partner, Ronda Kent (who represented Plaintiffs) that the Federmans were building in conformity to the duly approved plans.  See attached Declarations of Irwin Federman and Andrew V. Beaman and letter to Dennis Krueger dated June 16, 2003, attached hereto as *Exhibit L*.

In July, 2003, in response to a demand for mediation under the Hawaii Planned Community Association law, Haw. Rev. Stat. §421J-13, the Federmans and Mr. Vita came to Honolulu to attend a mediation at the offices of Dispute Prevention and Resolution, Inc.  At the mediation, the Federmans discussed with the mediator three sketches prepared by Plaintiffs' landscape architect Loriann Gordon, who had marked up a set of the Federmans' plans and given them to the mediator.  Ms. Gordon again suggested that the Federmans plant more trees in the special setback area.

Loriann Gordon's three sketches are attached to her deposition (*Exhibit X* hereto) as Exhibits 12, 13 and 14.  In one

of those sketches, Exhibit 12, Ms. Gordon proposed deleting the three trees now at issue. Her notes read, "coconuts on north side deleted/landscape architect to design this area w/plant material not to exceed 20' ht. max." In the other two sketches, (Exhibits 13 and 14 to her deposition) the North coconut trees remain. It is clear from these notes that Ms. Gordon knew as early as July, 2003, that the Federmans intended to plant the three coconut trees on the Northwest side of their property that are now at issue. No complaint was made about these planned trees in the Northwest corner of the Federmans' property, presumably because those trees do not harm Plaintiffs' views. See attached Declarations of Andrew V. Beaman and Irwin Federman.

In summary, the Design Committee approved the six coconut palm trees in the special setback area before the "thirty inch rule" was ever considered; and Plaintiffs knew that the Federmans intended to plant the trees before this lawsuit was filed. At that time, Plaintiffs wanted **more** trees (except for the three trees in the Southwest corner, which Judge Ezra has already ruled upon), because the added greenery would create a more attractive view plane. The Federmans had no reason to believe that the Plaintiffs objected to any trees other than the three trees in the Southwest corner.

After negotiations failed, the Federmans made certain changes to their architectural and landscaping plans. As required by section 7.2.1(d) of the Design and Construction Requirements for Homes, the Federmans submitted these changes to

the Design Committee for review and approval on January 30, 2004. As the cover letter notes, these changes included adding silver buttonwood trees in the Federmans' South side yard.  These silver buttonwood trees are **not in the special setback area**.  See attached declarations of Irwin Federman and Robert Frost and final planting plan attached as *Exhibit A*.  The January 30, 2004 landscape planting plan also made slight changes to the locations of four coconut trees planned for the Federmans' South side yard, which are **also outside the Special Setback Area**.  Copies of the January 15, 2004 landscape planting plan (sheet L-13) and the cover letter dated January 30, 2004, describing these changes and requesting Design Committee approval of the changes are attached hereto as *Exhibits M and N*.

        As part of a supplemental document production in this case on March 23, 2004, the Federmans produced these revised plans, showing the silver buttonwood trees and the four side yard coconut palms, to Plaintiffs.  See attached Declaration of Andrew V. Beaman, and letter from Laura Warfield to Renee Catian dated March 23, 2004 attached as *Exhibit O*.  On April 9, 2004, the Design Committee approved the silver buttonwoods and the modifications to the four side yard coconut palms, although the committee declined to approve changes within the special setback area.  Plaintiffs received a copy of this approval letter; it was attached to Plaintiffs' Concise Statement of Facts filed herein on August 5, 2004 as Exhibit 49.

On May 18, 2004, the Federmans submitted their final
revised planting plan to the Design Committee.  This final plan
(sheet L-13 of the landscaping plans prepared by Greg Boyer
Landscaping, Inc. dated May 6, 2004) and the cover letter
requesting approval by the committee were marked by the
Federmans' attorneys as document numbers F027477 (the plan) and
F027475-6 (the cover letter) and are attached hereto as *Exhibits
A and P*.  See attached Declaration of Andrew V. Beaman.  That
same day, the Federmans produced these documents to Plaintiffs by
way of another supplemental document production.  See attached
Declaration of Andrew V. Beaman and letter from Warfield to
Catian dated May 24, 2004, and letter from Warfield to NewTech
Imaging dated May 25, 2004 attached hereto as *Exhibits Q and R*.
By letter dated June 22, 2004, the committee gave its unqualified
approval of the final landscaping plans.  See Declaration of
Andrew V. Beaman and letter dated June 22, 2004 attached as
*Exhibit S*.

The Federmans' landscaping was installed in strict
conformity to the approved final planting plan.  See attached
Declaration of Irwin Federman.  It is crystal clear that the
Plaintiffs knew about all the "new" trees at the time of the
summary judgment hearing before Judge Ezra on August 23, 2004,
but Plaintiffs chose not to make an issue of them.

In fact, some of these "new" trees were planted **before**
the hearing.  In May, 2004, Plaintiff Guy Hands took a photograph
of his view over the Federmans' property.  See Declaration of

Terrence Revere filed herein on August 5, 2004 at paragraph 73;
Guy Hands Declaration dated June 9, 2004, filed herein on August
5, 2004 as Exhibit 31 to Plaintiffs' CSOF; and May, 2004
photograph filed herein on August 5, 2004 as Exhibit 69 to
Plaintiffs' CSOF.  An extra color copy of this photograph is
attached hereto as *Exhibit T*.  This photo clearly shows that two
coconut trees (which Mr. Reinhardt incorrectly labels "new"
trees) outside the special setback area had been planted by May,
2004, and that Mr. Hands and Judge Ezra both knew of the trees
before the hearing on August 23, 2004.

At the hearing, the Federmans' counsel showed Judge
Ezra an architectural rendering showing the completed
landscaping, including the "new" coconut trees now in question,
to Judge Ezra.  A copy of this architectural rendering is
attached hereto as *Exhibit U*.  Plaintiffs's only objection was to
the three trees in the Southwest corner of the Federmans'
property that were the subject of Judge Ezra's ruling.  The
Federmans submitted declarations to Judge Ezra establishing that
their landscaping conformed to the plans approved by the Design
Committee and explaining the rendering.  *See, e.g.*, Declaration
of Robert Glazier attached hereto as *Exhibit V*, at ¶25, and
Declaration of Raymond Neal attached hereto as *Exhibit W*.[2]

---

[2]    *Ex.U* was attached as Ex.48 to Defendants Irwin and
Concepcion S. Federman's Concise Statement of Facts in Support of
Motion for Summary Judgment filed herein on July 20, 2004
("Federmans' 7/20/04 CSOF"); *Ex.V* and *Ex.W* were also attached
thereto.

The Federmans' landscaping – including all of the "new" trees now at issue – was complete by the end of 2004.  See attached Declaration of Robert Frost, and aerial photographs taken by Plaintiffs in December, 2004, attached hereto as *Ex. D*. Plaintiffs raised no objection to any of the "new" trees at the time.  Judge Ezra issued his order finding that the committee had acted in good faith when it approved the Federmans' plans on February 22, 2005.

Plaintiffs' suggestion that there is now something "new" or different on the Federmans' property from what they or the Court expected on February 22, 2005 is materially false and misleading.

For example, Mr. Reinhardt testifies that "there are now many more palm and other trees in the Federman special setback area . . . ."  *See Ex.I* at ¶2.  In fact, however, the landscaping elements on the Federmans' property were shown on the approved landscaping plan produced to Plaintiffs in May 2004, a copy of which is attached hereto as *Exhibit A*; the trees and other landscaping elements presently existing on the Federmans' property are clearly visible in two aerial photographs taken by Plaintiffs' agents in December 2004, copies of which are attached hereto as *Exhibit D*; and Plaintiffs were well aware of the details of the Federmans' landscaping, as it now exists, both at the time of the hearing on August 23, 2004 and when they entered into the Settlement Agreement in October 2005.

Mr. Reinhardt testified, in his first declaration, that "many more palm and other trees" were planted "even though the Design Committee claims it has a rule prohibiting landscaping in excess of 30 inches in the Special Setback Area." *See Ex.I* at ¶2.  These statements are materially false and misleading because, as shown above, all six of the coconut palms trees in the special setback area of the Federmans' property were approved by the Design Committee long before the committee ever considered adopting a thirty inch rule.  The Design and Construction Requirements for Homes do not include any such rule,[3] and the Design Committee has never exercised its authority to amend the design requirements.  Also, the testimony of Design Committee members indicates that, although such a rule was discussed, there is no evidence that it was formally adopted.[4]  Once again, Plaintiffs' submissions to the Court are materially misleading.

In his January 4, 2006 Declaration, Mr. Reinhardt expresses the opinion that "the added trees clearly obstruct the view of the ocean from Lot 5 and . . . the recently constructed hardscape structures on Lot 6 (the pool, pool terraces and accessory structures) in the foreground of the view from Lot 5 significantly impact the view in what was supposed to be a structure free zone." *See Ex.I* at ¶3.  If the Court compares

---

[3]     Copies of the Design and Construction Requirements for Homes were submitted to the Court as Ex.1 to the Revere Decl.

[4]     *See* Ex.42 to Federmans' 7/20/04 CSOF, at pp.61-62, and Ex. 37 to Plaintiffs' Five Concise and Separate Statements of Facts Dated April 28, 2005 filed herein on April 28, 2005 ("Plaintiffs' 4/28/05 CSOF"), at pp. 196-201.

the May, 2004 photograph taken by Mr. Hands (**Exhibit T** hereto),
which was before Judge Ezra on August 23, 2004, with the March,
2005 photo taken from the same perspective (**Exhibit E** hereto),
the Court will see that is not true.

Moreover, the Federmans' terrace can hardly be called a
"recently added hardscape structure." It was in place at the
time of the hearing before Judge Ezra, and in fact, was the focus
of most of the discussion at the hearing.[5]

Mr. Reinhardt's testimony (**Ex.I**, at ¶3), that the
special setback area was "supposed to be a structure free zone"
is equally spurious. The evidence shows that WSP had at least
two photographs in its possession, before it bought the property,
showing that lot 4 had structures in the special setback area;
and that Guy Hands specifically asked his broker whether he could
install a pool in the special setback area of lot 5 and was told
he could do so as long as it didn't block views.[6]

Neither Reinhardt declaration (**Ex.I** and **Ex.J**) is
admissible. Mr. Reinhardt simply does not know what he is
talking about. In his January 4, 2006 declaration, Mr. Reinhardt
testified that many new coconut and other trees had been planted
in the special setback area. However, in his July 17, 2006

---

[5]    See, e.g., Ex.36-37 to Plaintiffs' Separate and Concise
Statement of Facts in Opposition to Defendants Irwin and
Concepcion Federman's Motion for Summary Judgment filed herein on
June 18, 2004 (additional copies of which were marked as Ex.69-70
to Plaintiffs' 4/28/05 CSOF) and Ex.116 to Plaintiffs' 4/28/05
CSOF (August 23, 2004 hearing transcript), at pp. 43-46, 56-61,
69-72, 76.

[6]    See Ex.17,19,20,21 to Federmans' 7/20/04 CSOF.

declaration, Mr. Reinhardt admits, at ¶6, that "[i]n order to determine the exact number of new trees in the special setback area, **I would have to visit the site . . . and examine the location of the new trees.**" *Ex.J* at ¶6 (emphasis added). He continues: "I believe, however that at least 6 new coco palms and a new cluster **of what I understand are silver buttonwoods** are in the special setback area of the Federmans' property. Even more new trees or shrubs **may have been installed.**" *Ex.J* at ¶6 (emphasis added). It is abundantly clear that Mr. Reinhardt has made no effort whatsoever to check his facts. Accordingly, to the extent that Mr. Reinhardt is presented as a fact witness, his declarations should be stricken under Fed. R. Evid. Rule 602 because there is no evidence sufficient to support a finding that he has personal knowledge of the matter; and to the extent that he is presented as an expert, his testimony should be stricken under Rule 702 because it is not based upon sufficient facts or data and his testimony is not reliable.

At paragraph 7 of Mr. Reinhardt's July 17, 2006 Declaration, he compares two different photographs he says were taken of Plaintiffs' view plane on two dates that are immaterial to the issues in the case. Mr. Reinhardt testifies that "Exhibit D is a true and accurate copy of an annotated panorama view . . . annotated to mark as "NEW" those trees that are not in the photographs taken on April 5, 2004." Nine such trees are marked in Exhibit D.

As the Court will see from the attached photographs,
landscaping plans and declarations of Mr. Frost and Mr. Federman,
there is absolutely no issue about any of these trees.   Trees
number 1 and 2 are two coconut palms that are not located in the
special setback area.   Tree number 3 is a silver buttonwood tree
that also is not located in the special setback area.   All three
of these trees were approved by the Design Committee prior to the
hearing on the summary judgment motion; Plaintiffs' knowledge of
that approval is demonstrated by the fact that Plaintiffs
attached the committee's approval letter for those trees to their
August 5, 2004 CSOF as Exhibit 49.

Trees number 4 and 5 are located on Lot 7, owned by the
Reddys, **not on the Federmans' property.**   See attached
Declarations of Irwin Federman and Robert Frost.

Trees number 6 and 8 are two coconut palm trees that
are also outside in the special setback area.   See attached
Declaration of Irwin Federman.   The Design Committee approved
these trees and Plaintiffs knew the committee had approved these
trees.   Guy Hands' May, 2004 photograph shows that these two
trees were in the ground long before the August 23, 2004 hearing
on the Federmans' motion for summary judgment.

Trees number 7 and 9 are two of the three coconut palm
trees planted on the Northwest side of the special setback area.
These trees do not materially affect Plaintiffs' views.   They
were approved by the Design Committee in February, 2002, long
before any consideration of a thirty inch rule.   The Federmans

gave their approved plans, showing they intended to plant these trees, to Plaintiffs and their landscape architect Loriann Gordon long before this lawsuit was filed. Plaintiffs chose not to object to these trees in their First Amended Complaint. Plaintiffs and Judge Ezra knew that these trees would be planted because they were shown on the architectural rendering presented to Judge Ezra at the August 23, 2004 hearing. These trees were planted before the end of 2004 (as is demonstrated by the aerial photograph taken by Plaintiffs in December, 2004 attached hereto as *Exhibit D*), and Plaintiffs did not object to them before Judge Ezra issued his ruling finally disposing of the landscaping issues on February 22, 2005. Finally, in the Settlement Agreement, Plaintiffs agreed to make no claim that these trees fail to conform to the project documents.

Plaintiffs are simply re-arguing all the points on which they have lost, over and over again, on so many occasions - - and that is exactly what the Settlement Agreement prohibits.

CONCLUSION

For these reasons, Federmans respectfully request that this Court find that Plaintiffs breached the Settlement Agreement, strike the Reinhardt Declarations, enjoin further violations of the agreement, and issue sanctions to include without limitation an award of fees and costs.

104839.5                                    20

DATED: Honolulu, Hawaii, July 26, 2006.

/S/ANDREW V. BEAMAN
ANDREW V. BEAMAN
LEROY E. COLOMBE
JOSHUA A. WISCH
Chun, Kerr, Dodd, Beaman & Wong,
A Limited Liability Law Partnership

Attorneys for Defendants
IRWIN FEDERMAN and
CONCEPCION S. FEDERMAN