# EXHIBIT L

ANDREW V. BEAMAN
ANDREW R. BUNN
LEROY E. COLOMBE
RAY K. KAMIKAWA
DANTON S. WONG

GEORGINA W. Y. KWAN
IVER N. LARSON*
KALEEN S. H. MIYASATO
ADRIENNE S. YOSHIHARA

*Licensed in California only

**CHUN, KERR, DODD, BEAMAN & WONG**
A LIMITED LIABILITY LAW COMPANY
FORT STREET TOWER, TOPA FINANCIAL CENTER
745 FORT STREET, 9TH FLOOR
HONOLULU, HAWAII 96813-3815
TELEPHONE (808) 528-8200
FACSIMILE (808) 536-5869
www.ckdbw.com

SENIOR COUNSEL:
EDWARD Y. C. CHUN
WILLIAM H. DODD

OF COUNSEL:
BURNHAM H. GREELEY
ALLEN H. SAKAI
SUSAN C. SAKAI

GEORGE L. T. KERR
1933-1998
GREGORY P. CONLAN
1945-1991

June 16, 2003

Dennis A. Krueger, Esq.
Ashford & Wriston, LLP
75-5722 Kuakini Hwy., Suite 208
Kailua-Kona, Hawaii 96740

Re:   The Bluffs at Mauna Kea Lot 6

Dear Dennis:

We act for Irwin and Concepcion Federman, owners of Lot 6 at The Bluffs at Mauna Kea ("The Bluffs"), with respect to the letter from your partner Ronda Kent dated June 10, 2003. Ms. Kent expressed concerns regarding the construction of a swimming pool, terrace and landscaping in the special setback on Lot 6 and demanded that the Federmans cease and desist all construction on the pool and spa. She sent a copy of the letter to you.

We assume that she wrote to you because a "Chinese Wall" has been created within your firm in an effort to avoid the conflict of interest problems related to your firm's representation of both the owners' association and Western Sunview. We further assume that, because of the "Chinese Wall," Western Sunview does not know that the construction on the Federmans' lot has been approved by the Design Committee.

We thought it would be beneficial for the Design Committee to hear the Federmans' position on this matter so that the committee could respond appropriately to the concerns being raised by Western Sunview.

FACTS. The facts as we understand them are as follows.

Under section 8.2 of the Declaration of Protective Covenants, Conditions and Restrictions for the Bluffs at Mauna Kea (the "Declaration"), Mauna Kea Properties, Inc. ("MKP") had the sole power to appoint members of the Design Committee for 20 years or until such power was assigned to the owners' association. MKP originally appointed its president William Mielcke and James R. Bell of Belt Collins & Associates to the committee.

Mr. Mielcke and Mr. Bell consistently approved swimming pools and terraces within the special setback areas along the makai boundaries of Lots 1-12. It was their practice to

**EXHIBIT L**

**CHUN, KERR, DODD, BEAMAN & WONG**
A LIMITED LIABILITY LAW COMPANY

Dennis Krueger, Esq.
June 16, 2003
Page 2

grant variances allowing such construction. Lots 1, 2, 8, 11 and 12 all have terraces and swimming pools within the special setback areas along the makai boundaries of the lots.

After the Federmans bought Lot 6, their architect Bob Glazier submitted preliminary plans to the Design Committee for review and preliminary approval. By letter to Mr. Glazier's office dated August 18, 2000, Mr. Bell gave preliminary approval of the plans.

Mr. Bell resigned in December, 2000, leaving Mr. Mielcke as the sole remaining member of the Design Committee. The Federmans' architects submitted revised plans for their home to Mr. Mielcke, including revised plans for the improvements within the special setback area. By letter dated May 23, 2001, Mr. Mielcke approved those revised plans, as follows:

> The Design Committee has review the revised configuration of the structures proposed within the special setback area of the Federman residence – two trellis pavilions, swimming pool, retaining walls, terrace, and walkways . . .. Generally, the concepts shown in the May 17 plans are acceptable to the Committee, subject to review of a revised Preliminary Plan package, including the landscape submittal and detailing of the proposed pool area.

In July, 2001, Mr. Mielcke resigned from the Design Committee and MKP exercised its right to assign the power of appointment to the owners' association under section 8.2 of the Declaration. The owners' association then appointed its entire board of directors to the Design Committee and engaged Stringer, Tusher & Associates as its consultants.

Mr. Glazier later revised the Federmans' plans to accommodate changes suggested by the Design Committee, including the deletion of the trellis pavilions next to the swimming pool. Mr. Glazier submitted construction plans to the newly constituted Design Committee for final approval. By letter dated February 7, 2002, you informed the Federmans that "the Design Committee of The Bluffs at Mauna Kea has granted its approval for commencement of construction." Your letter also expressly approved the Federmans' request for a variance for special setback construction.

Thereafter, the Federmans' architects again revised the plans. By letter dated March 3, 2003, you informed the Federmans that certain of these changes were approved and certain of these changes were not approved. In particular, the Design Committee approved "enlargement of the approved swimming pool and adjacent lanais along with the associated structural changes, bar finishes and planter wall around the North and West faces of the pool but

**CHUN, KERR, DODD, BEAMAN & WONG**
A LIMITED LIABILITY LAW COMPANY

Dennis Krueger, Esq.
June 16, 2003
Page 3

excluding any grading or boulder wall revisions," and disapproved revisions of the grading and revisions of the boulder wall.

The Federmans then abandoned their efforts to make the revisions which were not approved by the Design Committee. All improvements and landscaping which have been and are being constructed on Lot 6 conform to the plans approved by the Design Committee.

**PROJECT DOCUMENTS**. The applicable provisions of the Declaration and Design Requirements are as follows.

Section 8.11 gives the Design Committee authority to promulgate design requirements which govern and serve as a standard for the construction of buildings within the Bluffs. In section 8.12, the Design and Construction Requirements for Homes - The Bluffs at Mauna Kea" dated February 19, 1997 (the "Design Requirements") are adopted and incorporated by reference into the Declaration, subject to any amendments or repeal thereof as may be made by the Design Committee.

Section 8.8 of the Declaration gives the Design Committee authority to grant variances from the Design Requirements:

> Notwithstanding anything to the contrary contained in this Article VIII, the Design Committee may approve plans, specifications and other materials submitted to it for buildings or improvements which are not in strict compliance with the applicable Design Requirements if any such building or improvement is suitable to the area in which it will be located.

The Design Requirements provide, at section 4.17, that "no **building or structure** shall be placed within the special setback areas as shown in Exhibit A."

Article VI of the Design Requirements gives the Design Committee authority to approve variations from the other requirements:

> Individual solutions at variance with the general design requirements will be considered on their architectural merit and their contribution to the overall purposes set forth in Article I and the specific objectives stated in Article IV above. The Design Committee through the Design Review Procedure as authorized in

**CHUN, KERR, DODD, BEAMAN & WONG**
A LIMITED LIABILITY LAW COMPANY

Dennis Krueger, Esq.
June 16, 2003
Page 4

Article V above, shall be the **sole judge** of the suitability of such variations in relation to the established objectives.

In the event of litigation between owners, section 12.5 of the Declaration provides that the prevailing party is entitled to recover costs and attorneys' fees.

**LEGAL ANALYSIS**. We believe that the Federmans are completely within their rights with regard to the construction of the swimming pool, terrace and landscaping within the special setback area of Lot 6.

First, it is our view that no variance was needed for the Federmans' swimming pool and terrace in the first place. The Design Requirements prohibit only "buildings or structures" in the special setback area (as opposed to broader prohibitions against nonconforming "buildings or improvements" found elsewhere in the project documents), and terraces and swimming pools are not buildings or structures as those terms are normally used by architects.

Second, even if a variance was required, it is generally accepted that a set of protective covenants may reserve to a privately created design review authority the power to approve plans for homes within the affected subdivision; and that such power may include the authority to grant variances from other requirements which are generally applicable to the subdivision. Such variances are generally upheld so long as the design review authority acts reasonably in the exercise of its discretion.

Here, the Design Committee established a practice of granting variances allowing swimming pools and terraces within the makai setbacks. The original committee, which acted as the "sole judge" of such matters, determined that swimming pools and terraces in the setback were suitable to the area.

Construction of the swimming pool and terrace on Lot 6 is not offensive to the overall purpose or intent of the Design Requirements. Generally, the special setbacks are intended to preserve the views from neighboring properties. The construction of a swimming pool and terrace within the special setback area on Lot 6 does not unreasonably interfere with the view of the coastline from Lot 5 because the finished grade of Lot 5 is substantially higher than the finished grade of the swimming pool and terrace on Lot 6.

The Federmans' swimming pool and terrace were approved by two different committees in consultation with two independent groups of design professionals. The first and second preliminary approvals were granted by the original committee in consultation with Belt Collins. The final and subsequent approvals were granted by the board of directors of the

**CHUN, KERR, DODD, BEAMAN & WONG**
A LIMITED LIABILITY LAW COMPANY

Dennis Krueger, Esq.
June 16, 2003
Page 5

owners' association, in its capacity as the new committee, after consultation with Stringer, Tusher & Associates. The fact that each committee independently granted such approvals is strong evidence that they acted reasonably in so doing.

**CONCLUSION**. We ask that you immediately advise your partner Ms. Kent that the construction now being undertaken on Lot 6 conforms to the plans approved by the Design Committee. We ask that the committee's consultants inspect Lot 6 at their earliest convenience so as to satisfy themselves that such is the case. We are willing to make Lot 6 available for inspection by Mr. Stringer today for that purpose.

Because your partner has threatened to initiate litigation, we have advised the Federmans and their design professionals that they are to have no further communication with her or any other representatives of Western Sunview. All further communications to the Federmans should be directed to this firm.

Very truly yours,

CHUN, KERR, DODD, BEAMAN & WONG,
a Limited Liability Law Company

Andrew V. Beaman

cc:   Mr. and Mrs. Irwin Federman
      Ms. Ronda Kent
AVB:inl
74901.3