IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS, | ) CIVIL NO. CV 03-00463 JMS-LEK ) ) |
| Plaintiffs, | ) MEMORANDUM IN SUPPORT OF ) MOTION TO STRIKE ) PLAINTIFFS' SUPPLEMENTAL |
| vs. | ) BRIEF ( FILED JULY 17, 2006) |
| IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100, | ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

2004-069/307247

MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
PLAINTIFFS' SUPPLEMENTAL BRIEF ( FILED JULY 17, 2006)

## I.    INTRODUCTION

At the time of the hearing on Defendants' motions for summary judgment on

January 25, 2006, this Court ordered counsel for several parties, including

Plaintiffs, to henceforth submit certifications that they have reviewed their

submittals and that the factual assertions are true and accurate to the best of their

knowledge.    Defendant believes, however, that Plaintiffs' recent submittal fails

to comply with the Court's order because of substantial misstatements.

## II.   ARGUMENT

Within the Court's Order Granting Defendant the Bluffs at Mauna Kea Community Association's Motion for Summary Judgment and Granting in Part and Denying in Part Defendants Mauna Kea Properties, Inc.'s and Mauna Kea Development Corporation's Motion for Summary Judgment as to All Special Setback and Punitive Damages Claims (filed 6/21/06), this Court gave Plaintiffs an opportunity to submit further evidence to show that there is a legitimate controversy worthy of continuing judicial oversight.   Simply stated, did the Federmans place additional trees in their special setback area after Judge Ezra's consideration of the facts in August, 2004 (and ruling in February, 2005) such that the Committee's approval (if any) should be subject to judicial scrutiny?

Defendant's review of Plaintiffs' submittal reveals that Plaintiffs have presented factual assertions which are false.   Some of these assertions appear to have been made deliberately to mislead the reader.    They are as follows:

### A.    The Photos Selected for Submittal to the Court Are Deceptive.

Plaintiffs claim that 6 additional trees were planted in the Special Setback Area since Judge Ezra was shown photographs at the hearing on August 23, 2004. In support, Plaintiffs submit the declaration of their expert, Mr. James Reinhardt (Exh. 21).  Mr. Reinhardt presents a photograph he took on April 5, 2004 showing a cluster of 3 coconut trees in the SSA (Exh. 21A) .   He suggests that this be compared with his photograph taken in January, 2006 (Exh. 21B) which shows the

same cluster of 3 coconut trees and 6 other coconut trees in the Special Setback Area (SSA), together with 2 more coconut trees close to the Federman home, not in the SSA.   He then attaches labels to the photograph, showing which trees are "new".   There are many problems with Mr. Reinhardt's affidavit:

1.   <u>The most significant misstatement is the presentation of the photograph taken on April 5, 2004 – it is not the one shown to Judge Ezra at the hearing on August 23, 2004.</u>

At the hearing, Judge Ezra was specifically directed to Exh. 69 of Plaintiffs' submittal.  [See transcript of proceedings, page 43, submitted as Exhibit C to Plaintiffs' Motion for Clarification (filed 9/29/04)] – portions of the transcript are attached herein for the Court's convenience as **Exh.  A**]     Exh. 69 is a May, 2004 photograph showing the **2 coconut trees in the foreground**, with the 3 "clustered" coconut in the left corner of the photo.    Thus, when Mr. Reinhardt characterizes these coconut trees as "new" – planted after the Court had its hearing and issued its ruling, he misleads the Court.

It is difficult to characterize the use of this earlier photograph as a mere "error", for **two other** earlier photographs have also presented to this court for "comparison" purposes.   A photograph dated May 6, 2003, designated as Exhibit 18 to Plaintiffs' memorandum **does not show the 2 coconut trees** in the foreground.      Exhibit 20, a photograph dated 3/6/03, **also does not show the 2 coconut trees** in the foreground.

Thus, even though Plaintiffs submitted their own Exhibit 69 in opposition to the Federmans' motion in July, 2004 and specifically referred to the photograph (which shows the cluster of 3 coconut trees **and the 2 coconut trees in the foreground**) Plaintiffs now present three different, earlier photographs to this court (Exhs. 18, 20 and 21A) which are meant to support Plaintiffs' false contention that the 2 coconut trees were planted after Judge Ezra's ruling and that the picture he considered did not have the 2 coconut trees.   For the Court's convenience, Plaintiff's original Exh. 69 shown to Judge Ezra is attached hereto as Exh. B.   This photograph should be juxtaposed with Plaintiffs' 3 other photographs submitted to this court as Exhs. 18, 20 and 21A, which are attached hereto as Exh.C1 – C3, respectively.

It is also important to note that the 2 "new" coconut trees are **not** in the Special Setback Area.   As shown below, it is also difficult to understand how Plaintiffs could make this representation by mistake.

2.   <u>Plaintiffs' allegation that there are 6 additional coconut trees in the Special Setback Area is filled with inaccuracies</u>

Mr. Reinhardt labeled the "new" coconut trees in his photograph, Exhibit D (attached to his Declaration, Exhibit 21).   In contrast to Mr. Reinhardt's statement that "[w]hat I believe are the six new palm trees located in the special setback area are marked with the numbers 4 through 9", the following is the true state of facts:

Tree #1.     In approved plans of June 22, 2004, **not in SSA.**
Tree #2.     In approved plans of June 22, 2004, **not in SSA.**
Tree #3.     Buttonwood plants, approved in plans of June 22, 2004, **not in SSA.**

| | |
|---|---|
| Tree #4. | Not Federmans' - this tree is not in the approved plans, and is probably in the neighboring property |
| Tree #5. | Not Federmans' - this tree is not in the approved plans, and is probably in the neighboring property |
| Tree #6. | In approved plans of June 22, 2004 and shown to Judge Ezra - **not in SSA** |
| Tree #7. | Part of a cluster of 3 trees, in approved plans of June 22, 2004, within SSA |
| Tree #8. | In approved plans of June 22, 2004 and shown to Judge Ezra - **not in SSA** |
| Tree #9. | Part of a cluster of 3 trees, in approved plans of June 22, 2004, within SSA. |

> [See, Exh. D (reproduction of approved landscape plans and approval letter of June 22, 2004, Defendant's Exhs. J and I, respectively, attached to its Reply to Plaintiffs' Supplemental Brief)]

Note:  While Mr. Reinhardt mistakenly identified tree #s 4 and 5 as those of the Federmans (rather than the next door neighbors), he missed the third coconut tree in the approved cluster – it is immediately behind # 7 and can be seen more clearly in Mr. Reinhardt's unlabeled photograph, Exhibit 21B.

The point of this motion is that Mr. Reinhardt's declaration that he "believes" that 6 new coconut trees and a cluster of buttonwoods have been planted in the SSA and that even more new trees or shrubs "may have been installed" does not appear to be a good faith effort to present the true facts before the Court.  In light of the many documents that were readily available to Plaintiffs throughout this lawsuit, such equivocal statements appear to be a deliberate attempt to infuse confusion and to *create* factual controversies where none exist, solely for the purpose of avoiding or circumventing this Court's complete award of summary judgment.

7

**B.    The Misstatements of Plaintiffs' Expert Appear to be a Deliberate Attempt to Manufacture Factual Issues**

Plaintiffs submitted the declaration of Mr. James Reinhardt in support of their opposition to the Defendant's motion for summary judgment in January, 2006. The declaration appears to have been the basis for this Court's concern that, even if it ruled in favor of Defendants regarding its approval of the man-made structures in the SSA, there may still be outstanding issues of fact regarding the Federmans' landscaping. Mr. Reinhardt's declarations of January 4, 2006 (Plaintiffs' Exh. 152) are provided for the Court's convenience as Exh. E herein, and are are reproduced below, in bold print. Defendant's comments immediately follow:

**1.    At the time of the initial summary judgment ruling in this case there were only three palm trees at issue in the Federman Special Setback Area.**

This is wrong. Judge Ezra was shown a photograph with 5 coconut trees. He made his remarks regarding only a cluster of 3 coconut trees because the other 2 coconut trees were not, in anyone's mind, obstructing any view. In order to now place "in issue" the 2 coconut trees, Plaintiffs deceptively presented 3 other earlier photographs *without the 2 coconut trees* (Exhs. 18, 20 and 21A) to suggest that the trees were not there when Judge Ezra saw the photographs.

**2.    There are now many more palm and other trees in the Federman Special Setback Area even though the Committee claims that it has a rule prohibiting landscaping in excess of 30 inches in the Special Setback Area.**

Although Mr. Reinhardt had full access to information regarding what was approved to be planted in the special setback area, what was actually planted, and whether such plants were inside or outside the special setback area, he was purposely vague, claiming that there were, "many more palm and other trees" in the SSA.   As noted above, there are only 3 additional coconut trees in the SSA – which trees had been approved by the Committee in June, 2004 at the same time as the other trees considered by Judge Ezra.  [See, Exh. D1-D2]   Further, even though Mr. Reinhardt was well aware that a so-called, "30 inch rule" never applied to palm trees, he used the term in a way calculated to mislead the reader – that there was an actual "30-inch rule" and that palm trees violated the rule.    There is no such evidence, either in writing or by way of testimony.

**3.    In my opinion the added trees clearly obstruct the view of the ocean from Lot 5 and that the recently constructed hardscape structures on Lot 6 (the pool, pool terrace and accessory structures) in the foreground of the view from Lot 5 significantly impact the view in what was supposed to be a structure free zone.**

Again, the purposely vague *opinion* regarding added trees which purportedly obstructed views had no basis in fact and was made solely to confuse and create factual issues.   Especially telling was the absence of any photograph supporting his opinion at that time.

**C.    Plaintiffs' Apparent Factual Assertions are Actually Arguments**

Throughout Plaintiffs' memorandum, factual assertions are supported by references to the record.   However, when one checks the citations for accuracy, it

is clear that the apparent factual assertions are actually *arguments*.    Examples are as follows:

**Factual Assertion:**     Section 4.10.2 provides that "[s]hrubs or trees, such as palm trees, which grow to signigicant heights are not encouraged" in any area of The Bluffs – much less in the special setback area **where views are expressly protected and the obstructing of views is prohibited.** Ex. 1 §4.10.2.

**Cited Source:**     [Plaintiffs' memo at p. 4 (emphasis added)]
§4.10.2:    Shrubs or trees, such as palm trees, which grow to significant heights are not encouraged.  All principal plant materials shall be subject to review and approval by the Design Committee.

**Factual Assertion:**     The CC&Rs also provide that landscaping **must not obstruct views.** Ex. 2 §2.11

[Plaintiffs' memo at p. 4(emphasis added)]

**Cited Source:**     §2.11:     Maintenance.  …All trees, shrubbery and other plants on any Lot shall be kept at reasonable heights as contemplated by the original landscaping plans therefore, so as not to unreasonably obstruct views from other Lots.

Plaintiffs also take matters out of context to support their claims:

**Factual Assertion:**     The Committee's position is that clusters of palm trees are not allowed in the special setback area.  Ex. 3 (Stringer Depo) at 206:1-5; Ex. 7.

**Cited Source:**     Stringer Depo at 206:1-5:
**Q.**     What is said here about clusters of coco palms not be allowed in the special setback area, that's your understanding of what the committee's position is?
**A.**     Yes.

**Omitted Context:**  Mr. Stringer had been shown a letter from his assistant architect, David Ayer, addressed to the Federmans' attorney, Andrew Beaman, (April 9, 2004, Exh. G herein) which stated, inter alia:

> *The Committee allows planting in the Special Setback area, but restricts the type of planting to coco palms that are not clustered or planted such that they create a major view plane, hindrance, and ground covers that are limited in vertical height.*

**[Exh. F** (excerpts of Stringer Depo)]

Immediately before the quoted question and answer, Plaintiffs' counsel asked:

> Q:  ....[do] you recall if you reviewed that letter before it went out or not.
>
> A:  The answer is this specific letter, no.  The clustering issue and general acceptability of cocos, my answer is generally yes.

**[Exh. F** (Stringer Depo, tr. at p.205, lines 21-25)]

Most importantly, although Plaintiffs suggest that the Committee (through its consultant, Mr. Stringer) admitted that the Federmans had a "cluster of palm trees" which violated the rules, Mr. Stringer was actually asked about the specific cluster much earlier in the deposition:

> Q:  I believe you testified earlier that palm trees are okay as long as they weren't clustered to block view?
>
> A.  They weren't clustered, right....
>
> Q:  Isn't there a cluster of palm trees located on the Lot 5 side of the Federman swimming pool?
>
> A.  That's a subjective question as to what cluster is, and how tight.  People will take palm trees and put them five or six feet apart so that their head forms

11

create one giant ball. So it is a matter of judgment as to how far apart those things want to be before they are a cluster.

What we attempted to do is make sure they were, at least hopefully, far enough part that the head forms of cocos don't join to form a broad occlusion.

Q. But if they do form a broad occlusion, like a continuous occlusion, you would consider that to be a cluster, correct?

[Objection made]

A. It's subjective.

[**Exh. F** (Stringer Depo at 99:4 -100:4)]

**Factual Assertion:**    Since the initial briefing before Judge Ezra, the Federmans also have installed silver buttonwoods that also appear to be in the special setback area, and that are marked with the number 3 in Exhibit 21.D. Ex. 21 ¶¶ 6,7 & Ex, D thereto; *see also* Ex. 19 (silver buttonwoods in foreground near the wall).

[Plaintiffs' memo at p. 7]

Furthermore, the Committee's own position is that no vegetation (other than palm trees) that exceeds 30 inches is allowed in the special setback area. Ex. 8. Yet, the Committee has not done anything about the silver buttonwoods running along the other side of Western Sunview's property line.

[Plaintiffs' memo at p. 12]

**Cited Source:**    None.  Plaintiff proceeds from Mr. Reinhardt's declaration, in which he states that he "believes" the buttonwoods are in the special setback area – then argues as if it is an established fact and that the Committee, has not done anything" about them. [See, Plaintiffs' Exh. 21, Declaration of James Reinhardt.]  However, it is very clear that the buttonwoods are not within the SSA (see Defendant's Exhibit J) – a fact which Mr. Reinhardt

> *could have* and *should have* determined with the documents readily available to him.

### D.    Through the "Back Door", Plaintiffs Attempt to Resurrect an Argument Already Rejected by the Court.

Plaintiffs contend that "poor records prevent a definitive conclusion, but the Committee may have approved the additional landscaping in June 2004." See, Plaintiffs' Supplemental Brief (filed 7/17;/06).   Plaintiffs previously filed a Motion for Partial Summary Judgment against the Defendants, claiming that because the Committee only had "reconstructed" minutes of its January 29, 2004 minutes, the principle of "spoliation" applied, that the purported actions in approving the variance for the swimming pool was invalid, and that Plaintiffs were entitled to summary judgment on the issue.  The Court soundly denied Plaintiffs' motion in its order filed August 31, 2004, holding first that Plaintiffs did not satisfy the requirements which would make "spoliation" applicable.   The Court also addressed Plaintiffs' argument that its actions were void because of the "missing minutes":

> Although the Design Committee may have violated its by-laws by failing to record the vote, the failure to record its minutes does not necessarily invalidate the actions taken at a particular meeting. Moreover, Defendants do not rely solely on the January 29 meeting as a record of the approval of the variance.  Instead, they point to subsequent approvals of changes given to Defendants' construction plans, and an approval letter Defendants received from the Design Committee's attorney....

> [Order Denying Plaintiff's Motion for Partial Summary Judgment Re: Missing Minutes (filed 8/31/04)]

13

Plaintiffs' argument in its Supplemental Brief reflects an attempt to accomplish two goals. First, Plaintiffs improperly try to resurrect an argument already rejected by the Court, i.e. that the minutes must affirmatively show the action taken (rather than a letter by the committee's counsel). See, Plaintiff's Supplemental Brief (filed 7/17/06), p. 8 fn. 6 – ("...Plaintiffs respectfully submit that Judge Ezra erred in ruling that the Federmans received proper approval for any "improvements" in the special setback area.")

Second, Plaintiffs deliberately attempt to confuse the issues by referring to and arguing about the "missing minutes" of January 29, 2002, when Plaintiffs KNOW that the landscaping plans (as opposed to the swimming pool plans) were variously discussed at subsequent meetings and that the 6 coconut trees were unquestionably approved in June, 2004 [See Exh. D1-D2]

## III.  CONCLUSION

Attorneys have an obligation to be zealous advocates for their clients; at the same time, however, they have an equal, if not paramount obligation to be truthful and forthright with the Court.   While legal arguments necessarily entail differing interpretations and points of view, the Court should be able to rely upon *factual representations* made by counsel.    Plaintiffs have presented to this Court a document upon which it cannot rely. For these reasons, Defendant asks that the Supplemental Brief filed by Plaintiffs on 7/17/06 be stricken and that the Court grant other relief which it deems appropriate.

14

Defendant has no objection if the Court determines that an oral hearing would be appropriate or helpful regarding the matters raised herein.


DATED:  Honolulu, Hawaii;  _July 26, 2006_ .

_Ronald R_
_____
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC.; GUY HANDS; AND JULIA HANDS,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>　　　　　　Defendants. | ) CIVIL NO. CV 03-00463 JMS-LEK<br>) (Contract, Injunction; Other Non-<br>) Vehicle Tort; Declaratory Judgment,<br>) Other Civil Action)<br>)<br>) CERTIFICATE OF SERVICE<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

2004-069/307247

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _____July 26, 2006_____ a true and correct

copy of DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY

ASSOCIATION'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL

BRIEF was duly served upon the following parties listed below, at their last-known

address, as indicated below:

| | | |
|---|---|---|
| TERRANCE M. REVERE, ESQ. | U.S. Mail | [  ] |
| JACQUELINE E. THURSTON, ESQ. | Hand-Delivery | [X] |
| 1000 Bishop Street, Suite 801 | Electronically | [X] |
| Honolulu, Hawaii 96813 | | |

And

| | | |
|---|---|---|
| DENELLE M. DIXON-THAYER | U.S. Mail | [  ] |
| 275 Battery Street, 23rd Floor | Hand-Delivery | [  ] |
| San Francisco, California 94111 | Electronically | [X] |
|     Attorneys for Plaintiffs | | |
|     WESTERN SUNVIEW PROPERTIES, LLC | | |
|     GUY HANDS AND JULIA HANDS | | |

| | | |
|---|---|---|
| J. DOUGLAS ING, ESQ. | U.S. Mail | [  ] |
| BRIAN A. KANG, ESQ. | Hand-Delivery | [X] |
| First Hawaiian Center, 23rd Floor | Electronically | [X] |
| 999 Bishop Street | | |
| Honolulu, Hawaii 96813 | | |
|     Attorneys for Defendants | | |
|     MAUNA KEA PROPERTIES, INC. and | | |
|     MAUNA KEA DEVELOPMENT CORP. | | |

DATED: Honolulu, Hawaii ___July 26, 2006___.


_____
SIDNEY K. AYABE
RONALD SHIGEKANE
Attorneys for Defendant
THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION