1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF HAWAII

 3

 4   WESTERN SUNVIEW PROPERTIES, LLC ) CIVIL NO. 03-00463DAE
                                     )
 5                  Plaintiff,       )
                                     )
 6        vs.                        )
                                     )
 7   IRWIN FEDERMAN, et al.,         )
                                     )
 8                  Defendants.      )
     _____)

 9

10                     TRANSCRIPT OF PROCEEDINGS

11          The above-entitled matter came on for hearing on

12   Monday, August 23, 2004, at 10:38 a.m., at Honolulu, Hawaii,

13   BEFORE:         THE HONORABLE DAVID ALAN EZRA
                     Chief United States District Judge
14
     REPORTED BY:    STEPHEN B. PLATT, RMR, CRR
15                   Official U.S. District Court Reporter

16   APPEARANCES:    TERRANCE M. REVERE, ESQ.
                     Motooka Yamamoto & Revere
17                   1001 Bishop Street, Suite 801
                     Honolulu, Hawaii  96813
18
                     CHAD P. LOVE, ESQ.
19                   BARBARA JEAN KIRSCHENBAUM, ESQ.
                     Love & Narikiyo
20                   1164 Bishop Street
                     Finance Factors Center, Suite 1105
21                   Honolulu, Hawaii  96813

22
                                    Attorneys for the Plaintiff
23

24

25
```





```
1   APPEARANCES (Continued):

2

3

4                       ANDREW V. BEAMAN, ESQ.
                        LEROY E. COLOMBE, ESQ.
5                       Chun Kerr Dodd Beaman & Wong
                        745 Fort Street, 9th Floor
6                       Honolulu, Hawaii  96813

7                                 Attorneys on behalf
                                    Mr. and Mrs. Federman
8

9                       MARK B. DESMARAIS, ESQ.
                        Tom Petrus & Miller
10                      1164 Bishop Street
                        Finance Factors Center, Suite 650
11                      Honolulu, Hawaii  96813

12                                Attorney on behalf
                                    Mr. and Mrs. Federman
13

14                      RONALD M. SHIGEKANE, ESQ.
                        Ayabe Chong Nishimoto Sia & Nakamura
15                      1001 Bishop Street
                        Pauahi Tower, Suite 2500
16                      Honolulu, Hawaii  96813

17                                Attorney on behalf of The
                                    Bluffs at Maunakea Association
18

19                      J. DOUGLAS ING, ESQ.
                        EMI M. KAIMULOA, ESQ.
20                      Watanabe Ing Kawashima & Komeiji
                        999 Bishop Street
21                      First Hawaiian Center, 23rd Floor
                        Honolulu, Hawaii  96813

22
                                  Attorneys on behalf of Defts
23                                  Maunakea Properties and
                                    Maunakea Development Corp.
24

25
```

EXHIBIT <u>C</u>



1  the LLC, Western Sunview. And Exhibit 14 shows that they are
2  making particular inquiries as to the topography of the lot.
3        Mr. Beaman showed you --
4        (Discussion off the record between counsel.)
5        MR. REVERE: In this photograph, Mr. Beaman points
6  to this photograph and says, look at lot four; it's obvious
7  that structures are allowed in the special setback area of lot
8  four. Look at that stake. And then he says, Guy Hands
9  acknowledges that that shows the special setback area.
10        Guy Hands acknowledged that in his deposition, which
11  is years after, when he is in the middle of litigation, not at
12  the time.
13        The other really important fact is that lots three
14  and four are model units for a condominium development that
15  existed before these CC&Rs. And these CC&Rs, Section 2.13,
16  specifically state, there are non-conformance structures on
17  lots three and four, and they are grandfathered in. So this
18  thing proves absolutely nothing.
19        The other point that Mr. Beaman went through --
20        THE COURT: Well, is that rendering that Mr. Beaman
21  showed of the view across your -- from your client's property
22  accurate?
23        MR. REVERE: No, it's not. And we've got an opinion
24  from an architect, a Hawaii architect, Jim Reinhardt, showing
25  that it's not accurate; that they emphasize things in the


EXHIBIT C

1  foreground, make things in the background look smaller.  And
2  especially in summary judgment, I don't think it's fair to
3  say, give me summary judgment based upon a pretty picture that
4  our architects drew when there's another architect saying,
5  this isn't accurate.
6          THE COURT:  Why didn't he just take a picture?
7          MR. REVERE:  What's that?
8          THE COURT:  Why didn't somebody just take a picture?
9          MR. REVERE:  Well, we've got that, actually,
10 Your Honor.
11         THE COURT:  I mean for presentation today.  Do you
12 have one?
13         MR. REVERE:  Yes, Your Honor (placing blowup on the
14 flip chart).
15         Your Honor, 68 and 69, they showed you the pretty
16 picture.  And this is the not so pretty reality.
17         Also, this picture, I believe it was taken by my
18 client in May of this year.  Also I know this is an
19 evidentiary hearing, Mr. Love and I were in.  On the Big
20 Island, it looks pretty much like this, still, except there is
21 a railing going across here.  The pool is not completed -- at
22 least as of last Saturday.  And that's the angle that we got.
23 This is where the sun is going to be setting; there's a
24 cluster of palm trees and 3,500 square feet of structures.
25         This is another view showing what it is that we're



EXHIBIT C

1  talking about here.  It's not just the swimming pool, it's
2  monolithic stairs; there's going to be a bar over here; that
3  is a spa in the foreground.  So it's not just a swimming pool,
4  it's 3,500 square feet, which is way bigger than even the
5  average mainland house.
6         And the other thing, I think, that's important is
7  that my client, Mrs. Hands, testified that she read and relied
8  upon the governing documents.  And Mr. Beaman also likes to
9  talk about, well, what did people know, when?  Before the
10 Federmans -- we attach this as an exhibit -- even bought into
11 the property, their Realtor walked them around when they were
12 debating between buying lot six and lot nine.  In the
13 Realtor's notes -- and she submitted an affidavit -- she says,
14 these are the notes of my conversation that I had with them.
15 She pointed out to them specifically, you can't build a pool
16 in the special setback area, and lot six has a bigger special
17 setback area than lot nine, the other one you're considering.
18        The important rule here is Rule 4.17.  And what I
19 like about this rule is --
20        THE COURT:  I want to see that other picture again.
21        MR. REVERE:  (Placing photograph on flip chart.)
22 This one?
23        THE COURT:  Yeah, let me see that again.
24        MR. REVERE:  (Holding up blowup.)
25        THE COURT:  Well, I am going to be honest with you:



EXHIBIT C

1  The only thing that I can see there, that would appear to in
2  any way impede your client's view plain -- view plain, now --
3  would be the planted palm trees next to the pool on the left
4  and on the right.
5         MR. REVERE: Okay, I understand, Your Honor.
6         THE COURT: The pool itself, you're going to have a
7  hard time convincing this judge impedes your clients' view
8  plain.
9         MR. REVERE: Okay.
10        Well, Your Honor, I think that we have to -- I'll do
11 my best... but Rule 4.17 here talks about it is to protect
12 views, and also to preserve hillsides.
13        What we've got, instead of having the natural area
14 that was promised to us by Maunakea, we've now got a scene
15 that's reminiscent of Waikiki: There's people drinking at a
16 bar, going in their swimming pool. My clients didn't pay for
17 this. That's not what was promised to them.
18        THE COURT: Well, you know, I think that's kind of
19 an unreasonable expectation, if that's their expectation. I
20 mean, they are buying in a subdivision, okay. And when they
21 buy, they know that there are going to be people building next
22 door to them. What did they think? They were all going to
23 stay inside the house perpetually? Nobody's ever going to go
24 out? And just because it's a setback area doesn't mean people
25 can't go out there; they still own it. Even if they don't

EXHIBIT C

```
 1  build on it, they could do lawn bowling out there if they
 2  wanted to.
 3          MR. REVERE:  That's correct.
 4          THE COURT:  They could put up badminton stakes out
 5  there and play badminton.
 6          MR. REVERE:  That's correct, but we think there is a
 7  material difference -- first of all, in this map which is
 8  incorporated into the governing documents, there is
 9  literally -- not figuratively, literally -- a bright line
10  special setback rule that the Federmans received and that my
11  clients received --
12          THE COURT:  So did everybody else, virtually.
13          MR. REVERE:  That's correct, Your Honor.  I will
14  talk about the design --
15          THE COURT:  So is everybody in the entire
16  subdivision part of this conspiracy except your clients?
17          MR. REVERE:  No, not at all, Your Honor.  But on
18  Mr. Beaman's map that he shows you, he doesn't tell you a few
19  things that are very important.  Everyone else's intrusion is
20  extremely minor except for three people who are tied together:
21  Lot number eight is Mr. Gunderson, who is the attorney who's
22  got his pool completely in the setback -- although he worked
23  with his next-door neighbors, unlike the Federmans.
24  Mr. Federman built his pool in the setback.  And this guy on
25  lot four, Mr. Leone's -- (inaudible) --
```

EXHIBIT  C

```
 1                THE COURT:  They have a coastal view.
 2                MR. REVERE:  And this area where the swimming pool
 3   is, is part of that coast.  And it's not only a swimming pool,
 4   that's not minor; it's 3,500 square feet.
 5                THE COURT:  Well, let me ask you this question.  Can
 6   you give me the -- leave the picture there.  Where is the
 7   laser?
 8                (Discussion off the record.)
 9                THE COURT:  Okay, do you see those trees there?
10                MR. REVERE:  Those are Mr. Gunderson's, yes.
11                THE COURT:  Those don't have anything to do with
12   Mr. Federman, do they?
13                MR. REVERE:  No.
14                THE COURT:  Now, they block out the view
15   substantially, don't they?
16                MR. REVERE:  Uh -- my clients -- those were, again,
17   installed after my clients' purchase, but --
18                THE COURT:  Are they suing Mr. Gunderson?
19                MR. REVERE:  No.
20                THE COURT:  Okay.  That is, in my view, more of an
21   insult to their view than this is down here.  This is an
22   insult to their view, right there, because this is what they
23   want to see.
24                Now, I would agree with you that this palm tree here
25   and this palm tree here may be an insult to their view.  And
```



EXHIBIT C

1  this certainly is an insult to their view. Now, whether that
2  comes within something they can or cannot do within the
3  special setback zone is a whole 'nother story because that's
4  foliage, and maybe they can or they can't. I don't know.
5  We'll have to look at that carefully. But, I'll tell you,
6  that, in my view, is not an insult to the coastal view.
7         MR. REVERE: Okay.
8         THE COURT: It may be what they don't like to see.
9  Maybe they don't want to see it. But, then, they don't want
10 to see this either.
11        MR. REVERE: They've got no problem with the house.
12        THE COURT: They have no problem with the house?
13        MR. REVERE: No.
14        THE COURT: Well, the house is more of an insult to
15 their view than that is.
16        MR. REVERE: Well, they are going to be looking out,
17 so --
18        THE COURT: Well, they are not, actually. They are
19 looking -- I don't want to give anybody a "laser eye" here...
20 but they are looking out, actually, where you're standing,
21 counsel. They have to walk out on their side and look to the
22 hard right, and then there's this pool down here which isn't,
23 actually, that huge a pool, I don't think.
24        MR. REVERE: It's -- it's -- uh, the whole complex
25 is 3,500 square feet --


EXHIBIT __C__

```
 1              THE COURT:  Well, I know, but that includes all
 2   that -- the pool itself looks like a normal --
 3              MR. REVERE:  It's 780 square feet.
 4              THE COURT:  All right, so it's a normal pool for --
 5   it's a normal residential pool.  It's not an Olympic sized
 6   swimming stadium here, right?
 7              MR. REVERE:  That's pretty large, but, yeah, not an
 8   Olympic pool.
 9              THE COURT:  Definitely not an Olympic pool.
10              MR. REVERE:  Right.
11              THE COURT:  So you have a normal-sized -- or maybe a
12   slightly -- certainly a normal sized pool for a home of this
13   quality.  You've got that down here.
14              MR. REVERE:  Uh-huh.
15              THE COURT:  And then you've got the view plain
16   that's way over it, looking out this way.  I mean, I am just
17   having a really hard time --
18              MR. REVERE:  Well, Your Honor, I guess --
19              THE COURT:  -- finding how this -- the real insult
20   to their view is over here on somebody else's lot.
21              MR. REVERE:  Your Honor --
22              THE COURT:  These trees here -- I don't know.
23              MR. REVERE:  Your Honor, just to address that issue
24   of is a cluster of trees a "structure" or not, a California
25   appellate court did come out and say, only God can make a
```



EXHIBIT C

1   tree, but anyone with a shovel and some saplings can make a
2   cluster of trees, and clearly a cluster of trees is a
3   structure, because -- it has the same effect as if you put up
4   deadwood, which is a house, or -- whatever, a rail, and so
5   those clearly are structures that shouldn't be allowed. And,
6   in fact, the design rules specifically state, palm trees are
7   not encouraged in the special setback area.
8            And, Your Honor --
9            THE COURT: It says they can't do it?
10           MR. REVERE: Well, it says you can't place a
11  structure. Under Rule 4.17, we cited case law that says, a
12  cluster of trees is a structure. And the California court
13  went through the whole analysis as to why a cluster of trees
14  is considered a structure.
15           And, Your Honor, I believe that --
16           THE COURT: The only -- I don't know, I'm not going
17  to decide this case upon my own view of things, obviously; I'm
18  going to look at the law, and I'm going to look at what the
19  facts are. But, just looking at this, if I were a meditator,
20  I would say take the two palm trees out, get rid of the
21  cluster of trees, and that's it. That would be it.
22           MR. REVERE: All right.
23           THE COURT: So far as the house is concerned -- if I
24  was just mediating this case. Because, to me, this swimming
25  pool doesn't seem, to me, to block any type of plain or view.

EXHIBIT __C__

```
1            MR. REVERE:  Okay.  Well, Your Honor --
2            THE COURT:  These trees are a problem.  I would
3   agree that the trees are a problem.  They certainly block the
4   view.
5            MR. REVERE:  Your Honor, if I could -- and I know I
6   have taken a lot of time.  If I could just briefly address a
7   few points --
8            THE COURT:  That's all right.  I will tell you if
9   you have taken too much time.
10           MR. REVERE:  All right, thank you.
11           They go to reasonableness and good faith, and we
12  think that they've never talked about the law, what is the
13  law, and I think we have laid that out in our reply memo.  The
14  bottom line is, this committee didn't ever ask our clients;
15  that is found to be a wrong thing to do under the Leonard
16  case, which is the Nevada Supreme Court.  They didn't visit
17  the site, which, again, is wrong under the Leonard case; they
18  didn't enforce the written rules, which is that special
19  setback area rule, which is wrong under the Cohen case, which
20  is adopted by the California Supreme Court.
21           The other thing, too, that's very important as a
22  matter of Hawaii law, this is private zoning.  That's what
23  covenants are.  You pay for this zoning.  You ask for this
24  zoning.  What Hawaii said in the Korean temple cases, you
25  don't just get a variance because you want to increase the
```



EXHIBIT  C