```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF HAWAII

 3     -----------------------------------

 4     WESTERN SUNVIEW PROPERTIES, LLC,  )

 5     et al.,                           )

 6            Plaintiffs,                ) Civil No.

 7            vs.                        ) CV03-00463 DAE LEK

 8     IRWIN FEDERMAN; CONCEPCION S.     )

 9     FEDERMAN, et al.,                 )

10            Defendants.                )

11     -----------------------------------

12

13              DEPOSITION OF DAVID STRINGER

14

15     Taken on behalf of the Defendants at the offices of

16     Chun, Kerr, Dodd, Beaman & Wong, 9th Floor, 745 Fort

17     Street, Honolulu, Hawaii, commencing at 9:09 a.m.,

18     Tuesday, August 3, 2004.

19

20

21

22

23

24     BEFORE:  CHARI L. POSSELL, CSR NO. 414

25              Certified Shorthand Reporter
```

EXHIBIT F

Page 98

1  BY MR. REVERE:
2      Q.  As you are sitting here today, you are not
3  sure how 4.10.2, which discourages palm trees,
4  transmogrified into a committee policy to actually
5  encourage palm trees in the special setback area?
6      A.  I'm sorry.  Transmogrified?
7          MR. BEAMAN:  Object to the form of the
8  question.
9          MR. SHIGEKANE:  Objection.
10 BY MR. REVERE:
11     Q.  That it changed from a policy of -- a
12 written policy discouraging palm trees to a de facto
13 policy of encouraging palm trees?
14         MR. BEAMAN:  Object to the form of the
15 question.  Misstates evidence.
16         MR. SHIGEKANE:  Same objection.
17         MR. KANG:  Join.
18         THE WITNESS:  I can tell you in a
19 general sense that it definitely did not encourage
20 palm trees.
21 BY MR. REVERE:
22     Q.  When you say "it," you mean the rules, or
23 design committee, or something else?
24     A.  The decision to accept what Gunderson had,
25 that's what I am assuming, did that affect the

Page 99

1  decision to encourage?  And, A, I don't think any
2  position was taken, but it definitely didn't
3  encourage the decision to allow.
4      Q.  I believe you testified earlier that palm
5  trees are okay as long as they weren't clustered to
6  block views?
7      A.  They weren't clustered, right.
8          MR. BEAMAN:  Well --
9  BY MR. REVERE:
10     Q.  Isn't there a cluster of palm trees located
11 on the Lot 5 side of the Federman swimming pool?
12     A.  That's a subjective question as to what
13 cluster is, and how tight.  People will take palm
14 trees and put them five or six feet apart so that
15 their head forms create one giant ball.  So it is a
16 matter of judgment as to how far apart those things
17 want to be before they are a cluster.
18         What we have attempted to do is make sure
19 they were, at least hopefully, far enough part that
20 the head forms of cocos don't join to form a broad
21 occlusion.
22 BY MR. REVERE:
23     Q.  But if they do form a broad occlusion, like
24 a continuous occlusion, you would consider that to be
25 a cluster, correct?

Page 100

1          MR. BEAMAN:  Object to the form of the
2  question.  Vague and ambiguous.  Object to -- again,
3  the term "cluster" is subjective.
4          THE WITNESS:  It's subjective.
5  BY MR. REVERE:
6      Q.  Did the Federmans have a landscape plan
7  that's approved or not?
8          MR. BEAMAN:  Object to the form of the
9  question.
10 BY MR. REVERE:
11     Q.  For Lot 6 of The Bluffs at Mauna Kea?
12     A.  My general recollection is that the
13 Federman landscape plan has gone through a flux of
14 approvals and denials.  And it started, I think, when
15 we came aboard, and I am trying to be as clear as I
16 can.  When we came aboard, there was a submission to
17 put pavilions and raised elements down by the pool.
18         We were apprised of what had taken place
19 prior, and we, after reading the open space
20 requirements, felt that those man-made improvements
21 definitely shouldn't go there.
22         And then there was some discussion about
23 whether or not they had approval to do that from
24 Mielcke before.  And then there was a letter from
25 Mielcke that I had heard about, never seen, that

Page 101

1  rescinded this approval.  And so it was always this
2  sort of vague process.
3          Final approval on all of the landscape
4  documents I don't, in my mind, think was ever
5  achieved.
6          Terry Tusher could probably enlighten you
7  more on that.
8      Q.  With regard to Mr. Gunderson, again, is the
9  committee -- let me ask a more general question.
10         Are you aware of Gunderson planting palm
11 trees even past his property line, out on Lot 29 that
12 Mauna Kea owns?
13     A.  I personally don't know that in fact
14 happened, but that assertion has been made.
15     Q.  Do you know -- not whether he did it or
16 ordered somebody to do it, but do you know one way or
17 the other that there are palm trees between
18 Mr. Gunderson's lot and the ocean?
19     A.  You know, I never really considered where
20 the line was.
21     Q.  Do you know one way or the other as to
22 whether or not Mr. Gunderson caused the shoreline
23 trail that is between the homes located at The Bluffs
24 at Mauna Kea and the ocean, if he caused that to be
25 moved?

26 (Pages 98 to 101)

Page 202

1  A. No, I think it was just a comment.
2  Q. Do you know who it was?
3  A. No.
4  Q. If you could look at page 58, which is
5  the -- looks like an April 6th, 2004 -- I will give
6  it back to you -- meeting. And under Federmans, I'm
7  wondering if you could just read under the line that
8  says Federmans. If you could read it out for the
9  record, if you can read it.
10  A. "Federmans, insignificant changes, maintain
11  elements, further modifications to landscape in
12  special setback after previously received
13  approval" -- I can't make out the other word, and DC.
14  And in the bubbles, it says, "30-inch rule,
15  questioned by JE, would like a copy of the approval
16  minutes."
17  As I recall, Jerry Elder was saying if
18  there are approvals, if they did approve the 30-inch
19  rule, show me the minutes. I think I remember that
20  incident.
21  Q. Okay.
22  A. That's all I can make of it.
23  Q. Okay. There's also discussion on the same
24  page, says, "Cannot approve anything that is a
25  nuisance." And is that your understanding, that the

Page 203

1  committee can't approve things that are nuisances?
2  A. Is that what that says?
3  Q. Yes. On the left column?
4  MR. BEAMAN: Object for lack of
5  foundation. Calls for speculation.
6  MR. SHIGEKANE: Same objections.
7  THE WITNESS: The Bochco issue in
8  general was an issue over the planting of the wrong
9  grass that would eventually infect the golf course,
10  and I think that's what that whole paragraph is
11  about.
12  BY MR. REVERE:
13  Q. Is that your understanding, that the
14  committee can't approve something that is a nuisance?
15  MR. BEAMAN: Same objections.
16  THE WITNESS: I don't think that was
17  in reference to the design committee per se, but
18  rather the golf course committee. And the whole
19  discussion was whether or not it was Mauna Kea's
20  responsibility to enforce the golf course
21  restrictions and the adjoining properties, the use of
22  grass and the particular use of grass that Bochco was
23  using was contrary to the direction that Mauna Kea
24  Properties, et al., were using on the golf course,
25  and the whole subject was centered around their

Page 204

1  enforcement procedures.
2  BY MR. REVERE:
3  Q. On the second page of this, there's -- what
4  I can tell from the writing, it says, "Coco palms and
5  ground cover in SS only. BG questioned SS area, need
6  reiterate only cocos and ground cover."
7  And I was wondering if, first of all, if
8  that meets with your reading of that, and if you
9  recall any discussion about that in this April 2004
10  meeting.
11  MR. BEAMAN: Object for lack of
12  foundation.
13  THE WITNESS: On the surface, I think
14  that's generally the subject matter. Cocos and
15  ground cover in the special setback area. And I
16  think -- I shouldn't think -- Bob Gunderson is asking
17  that that position be reiterated.
18  BY MR. REVERE:
19  Q. Be formalized in a document or something?
20  A. Appears that way.
21  Q. There's another thing here, "DSA and DK to
22  review approvals that BG voted only re: Federman, Sid
23  Ayabe." Do you recall what that discussion was
24  about?
25  A. No.

Page 205

1  Q. Do you recall anyone expressing that
2  concern about going back to see what and review what
3  Gunderson voted on with regard to the Federmans?
4  A. No, I don't think that issue came up.
5  Q. Why don't you read that over and tell me
6  what you think this is referring to.
7  A. In this context, I am not sure.
8  Q. You just don't have any recollection of
9  what it was?
10  A. I can tell you what it says here, but it
11  doesn't ring a bell.
12  Q. What does it say there?
13  A. Says DSA -- "DSA and DK to review approvals
14  that BG voted only re: Federman." Then it says, "Sid
15  Ayabe, litigation."
16  Q. And that isn't ringing any bells?
17  A. I didn't even know Sid Ayabe was involved
18  at that point in time.
19  Q. Look at page 123, please, a letter from
20  Dave Ayer to Andy Beaman. And my question to you is
21  if you recall if you reviewed that letter before it
22  went out or not.
23  A. The answer is this specific letter, no.
24  The clustering issue and general acceptability of
25  cocos, my answer is generally yes.

Page 206

1   Q. What is said here about clusters of coco
2   palms not be allowed in the special setback area,
3   that's your understanding of what the committee's
4   position is?
5   A. Yes.
6   Q. Do you recall if you met with Andy Beaman
7   at all in this year of 2004?
8   A. If I recall meeting with Andy.
9   Q. Other than today's deposition.
10  A. He was in our office one day.
11  Q. When was that?
12  A. Tempus fugit.
13      Sometime in the last six months.
14  Q. Do you recall what he was doing in your
15  office?
16  A. He was poring through documents.
17  Q. Do you recall what documents he was looking
18  through?
19  A. No. Not specifically.
20  Q. Were they Federman files, or were they for
21  other owners?
22  A. I stepped in the conference room, and Andy
23  was a complete surprise. He was there, and he was
24  poring over some documents.
25  Q. And do you know what they were?

Page 207

1   A. No.
2   Q. Did you call security?
3   A. No, I think Dave Ayer let him in.
4   Q. Did you ever have any discussion with Dave
5   as to why Andy was doing that?
6   A. In general, he was going over documents,
7   and I am not sure if he clearly explained which
8   documents.
9   Q. I want to show you page 138 of the same
10  records deposition, and looks like it is an e-mail.
11  The bottom portion I am referring to is an e-mail
12  from John Reid to Bob Gunderson, Bob Acree, Doug
13  Leone, Jerry Elder, John Reid, Mike Hartley. And the
14  cc is Dennis Krueger, David Stringer, and Randy
15  Stingel.
16      This is a reference to a discussion that
17  Reid reported on that he had with Guy Hands, and in
18  the second-to-last paragraph, he closes with this
19  sentence, which is, quote, "Perhaps someone can go
20  and see for themselves what the impact of the
21  Federmans' building has on his view to see if this is
22  material," end quote.
23      If you could just read what I just referred
24  you to over. Let me know when you are done.
25  A. Okay.

Page 208

1       The question again, please?
2   Q. Well, my first question is if I read that
3   sentence correctly, about what Reid wrote?
4   A. Yes.
5   Q. Do you recall if any addressees to that
6   Reid e-mail took him up on his suggestion to go out
7   there and see for themselves the impact of the
8   Federman construction on Lot 5?
9       MR. BEAMAN: Object for lack of
10  foundation. Calls for speculation.
11      MR. SHIGEKANE: Same. Go ahead.
12      THE WITNESS: I only know of one party
13  that did, and that would be Jerry Elder.
14  BY MR. REVERE:
15  Q. And when did Jerry Elder do that?
16  A. Frequently. He has a keen interest in this
17  property, and for better or worse, Jerry has been
18  there in the field -- been the field operative, so to
19  speak.
20  Q. Where does Jerry -- where does he live?
21  A. He lives in La Jolla.
22  Q. Do you know how much time he spends at the
23  Mauna Kea?
24  A. Since he's been building his home, I would
25  say as much as 25 percent of his time.

Page 209

1   Q. And is his home built out now, the
2   residence, is that built?
3   A. Just roofed out.
4   Q. Did Jerry tell you what -- did Jerry say he
5   went to Lot 5 and looked down to Lot 6?
6   A. No.
7   Q. Did Jerry ever report to you that he went
8   to Lot 5 and informed you of what he observed about
9   the construction and the special setback area in
10  Lot 6?
11  A. We had conversations.
12  Q. What did he say?
13  A. In general or specifically?
14  Q. As much as you can recall.
15  A. Most of Jerry's comments went to the issue
16  of ground cover and the relative occlusion of
17  landscaping in the area.
18  Q. Did Jerry have any discussions or other
19  communications with you regarding the palm trees in
20  the special setback area of the Federman lot?
21  A. Not that I can clearly recall.
22  Q. Is there any that you generally recall?
23  A. I think the subject has come up.
24  Q. And what --
25  A. Specifics, I can't tell you.

1                C E R T I F I C A T E

2    STATE OF HAWAII             )
                                  ) SS:
3    CITY AND COUNTY OF HONOLULU )

4            I, CHARI L. POSSELL, Notary Public, State

5    of Hawaii, do hereby certify:

6            That on Tuesday, August 3, 2004, at

7    9:09 a.m., appeared before me DAVID STRINGER, the

8    witness whose deposition is contained herein; that

9    prior to being examined he/she was by me duly sworn;

10           That the deposition was taken down by me in

11   machine shorthand and was thereafter reduced to

12   typewriting under my supervision; that the foregoing

13   represents, to the best of my ability, a true and

14   correct transcript of the proceedings had in the

15   foregoing matter.

16           I further certify that I am not attorney

17   for any of the parties hereto, nor in any way

18   concerned with the cause.

19           DATED this 3rd day of August, 2004, in

20   Honolulu, Hawaii.

21

22

23                    CHARI L. POSSELL, CSR NO. 414
                      Notary Public, State of Hawaii
24                    My Commission Exp: 7-25-2007

25


**DAVID STRINGER ARCHITECTS LLC AIA**

April 9, 2004

Suite 200 · 1100 Alakea Street · Honolulu, Hawaii 96813
tel. (808)531-5967 · fax. (808)526-1857 · email. dsarch@att.net

Mr. and Mrs. Irwin Federman
c/o Chun, Kerr, Dodd, Beaman & Wong, LLP.
745 Fort Street, 9th Floor
Honolulu, Hawaii 96813-3815

Attn.:  Mr. Andrew Beaman

Re:  The Bluffs at Mauna Kea
     Federman Residence - Lot 6
     Construction Modification Submission

Dear Mr. and Mrs. Federman:

The Design Review Committee for the Bluffs at Mauna Kea Homeowners Association met 6 April 2004 to review the construction modification submission dated 30 January 2004 for the modifications to the previously approved residence and the landscape planting within the Special Setback area. The Committee has approved the following portions of your submittal:

1. All modification items to the existing residence delineated in bulletins 2D, 17A, 18 through 21, 21A, 22 through 37, 37A and 38 through 44.

2. The Committee took no exception to the landscape planting plan as proposed with the exception of the planting within the Special Setback area.

The Committee allows planting in the Special Setback area, but restricts the type of planting to coco palms that are not clustered or planted such that they create a major view plane, hindrance, and ground covers that are limited in vertical height.

The Committee appreciates your cooperation in seeking approval for the modifications made during construction, and your continued review of the work within the Special Setback. If you have any questions regarding this review, please do not hesitate to contact me or David Stringer at David Stringer Architects. We are willing to meet to discuss the resolution of the landscaping at your convenience.

Very truly yours,

Stringer Architects, AIA, LLC.

David C. Ayer

*Referenced at David Stringer's Deposition, page 205, line 19*

*Western Sunview Properties, LLC vs Federman; Case No. CV03-00463 DAE LEK*
*Records from David Stringer Architects, LLC, AIA taken 04/26/04*

123