IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>               Plaintiffs,<br><br>  vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100, JANE DOES 1-100, DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>               Defendants. | Case No. CV03-00463 DAE/LEK<br><br>DECLARATION OF IRWIN FEDERMAN; EXHIBITS A AND K<br><br>Trial Date: **December 5, 2006** |

DECLARATION OF IRWIN FEDERMAN
------------------------------

      1.   I am IRWIN FEDERMAN. I was originally named as one of the Defendants in this case, but my wife and I were dismissed as Defendants following our settlement agreement with the Plaintiffs. I make this declaration on personal knowledge.

      2.   I am familiar with the trees on our property at the Bluffs at Mauna Kea. For the last several years, my wife Concepcion and I worked closely with our landscape architects and landscape contractor to develop a landscaping plan that would be suitable for the area and in harmony with the neighborhood.

      3.   I understand that Plaintiffs filed a memorandum in this case on January 5, 2006 which asserts that "after this Court ruled on the motion for reconsideration, the Federmans planted

105027.4

**EXHIBIT G**

numerous additional clusters of palm trees in their special setback area," and also asserts that these trees "block Plaintiffs' views, in direct contravention of Section 4.17 of the Design Requirements." These assertions are false. All of our trees had been planted by the time Judge Ezra issued his ruling on February 22, 2005; there are only six coconut palm trees in the special setback area of our property, three of which were the subject of Judge Ezra's decision; **Plaintiffs have known that we intended to plant the other three trees since before the lawsuit was filed**; and those trees do not block Plaintiffs' views. In addition, Plaintiffs' submission of these declarations and this memorandum clearly violates both the spirit and the letter of our settlement agreement with Plaintiffs.

4. We and our design professionals spent many months developing our landscaping plan, in consultation with Stringer Tusher Architects and landscape architect Mike Miyabara, both of whom advised the Design Committee concerning our plans. Attached hereto as **Exhibit K** is a true and accurate copy of our first approved landscaping plan (Todd Cole landscape architects planting plan dated October 17, 2001, as modified). By letter dated February 6, 2002 from the Design Committee's attorney Dennis Krueger, the committee confirmed that it had approved this plan. All six of the coconut palm trees planted in our special setback area are on this approved plan.

5. In or about late 2002, our landscaping contractor Robert Frost planted three trees in the Southwest corner of our property. These trees, and all of the other landscaping on our

property, were planted in strict conformity to the approved plans.

6. In early 2003, our design professionals shared our plans with Plaintiffs' design professionals. In or about April, 2003, we learned that Plaintiffs were unhappy with the pool and terrace in our yard and the three coconut palm trees that we had planted in the Southwest corner of our property. Because our neighbors had complained, I instructed our landscaping contractor not to plant certain other trees. Robert Frost told us that because of problems with equipment access that might be created if we were to delay planting of the additional trees, it would be expensive to delay the planting of the trees. We decided to pay this additional cost, hoping to be good neighbors and intending to make efforts to work out the problem with Mr. and Mrs. Hands.

7. In May, 2003, before we had retained counsel, I instructed one of our landscape architects, Don Vita, to meet with Western Sunview Properties' landscape architect Loriann Gordon in an effort to work out a new landscaping plan that would be acceptable to both parties.

8. In July, 2003, Mr. Vita and my wife and I came to Honolulu to attend a mediation at the offices of Dispute Prevention and Resolution, Inc. At the mediation, we discussed three alternative schemes that had been prepared by Loriann Gordon, who had marked up copies of our plans to show three alternative landscaping schemes she suggested. We understood at that time that Plaintiffs did not like the three coconut palm trees in the Southwest corner of our property, but no complaint

105027.4                                3

was made about the other trees shown on our approved plans. In fact, the whole point of the exercise was to see whether we could overcome Plaintiffs' objections to our terrace by planting more trees or other landscaping.

9. We continued to make efforts after the mediation to come to a mutually acceptable landscaping solution. My wife and I called Mr. and Mrs. Hands after the mediation, and we instructed Don Vita again to meet with Loriann Gordon in an effort to resolve the problems Mr. and Mrs. Hands seemed to have with our plans. Again, we were willing to pay the costs caused by the delay because we hoped to work the matter out with Mr. and Mrs. Hands.

10. When those efforts were unsuccessful, we instructed our landscape architects to make additional modifications to the landscaping plans. These changes included minor modifications to the location of some palm trees in the South side yard of our property and planting of silver buttonwood trees in front of the South windows of our home. None of those trees, however, are within the special setback area.

11. To conform with the Design and Construction Requirements for Homes, we instructed our attorneys to submit these revised landscaping plans, along with revised architectural plans, to the Design Committee for review and approval. Our attorneys submitted a revised landscape planting plan to the committee. The committee approved the minor modifications to the location of the palm trees in the South side yard of our property and planting of silver buttonwood trees referred to above, and

105027.4  4

all other changes we had proposed, except for modifications to the previously approved plantings within the special setback area, by letter dated April 9, 2004.

12. We attended another mediation in Magistrate Judge Kobayashi's chambers in April, 2004. At this mediation, my wife and I sat down with Mr. and Mrs. Hands, but we were unable to resolve the matter at that time.

13. Our landscape architects then prepared a final revised planting plan (Boyer Landscape Architects sheet L-13 dated May 6, 2004, a true and exact copy of which is attached hereto as **Exhibit A**) and our attorneys submitted this final plan to the Design Committee for approval. By letter dated June 22, 2004, the committee approved this final plan.

14. All of our landscaping was installed in strict conformity to the approved planting plan dated May 6, 2004. All of our trees were planted by the end of 2004.

15. In August, 2005, we attended a two day mediation at the Hapuna Beach Prince Hotel with Judge Eugene Lynch. At the time of the mediation, Judge Ezra had ruled in our favor on the claims related to the CCRs, and our attorneys were in the process of preparing a request for an award of fees and costs (in addition to the discovery sanctions previously awarded by this Court) pursuant to the provisions of the CCRs that allow the prevailing party to recover its fees. I understood that the amount of the fee application would be approximately $550,000.

16. At the conclusion of the mediation, we gave up this claim in exchange for a mutual release and dismissal of the

case; but that was on the condition that we would have complete peace with our neighbors – in substance, that we would just leave each other alone. However, since the court had already ordered Plaintiffs to pay about $16,000 in discovery sanctions, I felt strongly that we should insist on payment of that award, and we offered to donate this money to charity. We ultimately paid the money to the North Hawaii Community Hospital.

17. At the August, 2005 mediation, we told the mediator in substance that we wanted complete peace and that Plaintiffs should not try to "back door" us by asserting claims against the County or the Bluffs Community Association (for example) that there was some problem with our home or our landscaping. Plaintiffs' promise in the settlement agreement that they would "make no claim" against others related to our property was very important to us for that reason.

18. Except for natural growth of the trees, which obviously was expected by everyone at the time of the Settlement Agreement, the condition of our landscaping today is the same as it was at the end of 2004 and the same as it was when we signed the settlement agreement on October 7, 2005.

19. I have seen Exhibit D to the Declaration of James Reinhardt dated July 17, 2006 which labels nine "new" trees. I am personally familiar with these trees. Trees number 1 and 2 are two coconut palms that are not located in the special setback area. Tree number 3 is a silver buttonwood tree that also is not located in the special setback area that was approved by the Design Committee on April 9, 2004. Trees number 4 and 5 are not

105027.4                                    6

on our land; they are located on Lot 7, owned by the Reddys. Trees number 6 and 8 are two coconut palm trees that are outside our special setback area. Both were planted in April or May, 2004. Trees number 7 and 9 are two of the three coconut palm trees planted on the Northwest side of the special setback area. They were approved by the Design Committee in February, 2002 and Plaintiffs had the approved plans showing these trees before this lawsuit was filed. These trees were planted before the end of 2004, and Plaintiffs did not object to them before Judge Ezra issued his ruling finally disposing of the landscaping issues on February 22, 2005. In our Settlement Agreement, Plaintiffs agreed to make no claim that these trees fail to conform to the project documents.

    I, IRWIN FEDERMAN, do declare under penalty of law that the foregoing is true and correct.

DATED: Atherton, California, July 25, 2006

IRWIN FEDERMAN