FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE M. DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email address: ddixon-thayer@flk.com

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Corporation

TERRANCE M. REVERE 5857-0
JACQUELINE E. THURSTON 7217-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii 96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, and JULIA HANDS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES LLC; GUY HANDS; AND JULIA HANDS, | Civil No. 03-00463 JMS LEK |
| | (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action) |
| Plaintiffs, | |
| vs. | |
| IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT | (*caption continued*) |

| | |
|---|---|
| MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; AND DOE CORPORATIONS 1-100, | TRIAL:  December 5, 2006 |
| Defendants. | |

## PLAINTIFF WESTERN SUNVIEW PROPERTIES, LLC'S OPPOSITION TO THE ASSOCIATION'S MOTION TO STRIKE

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT .............................................................................................. 2

    A.   Western Sunview Correctly Describes When The Additional Trees Were Installed, And Correctly Shows The Court Which Trees Were The Subject Of Judge Ezra's Ruling ............................... 2

        1.   The Association Misrepresents The Supplemental Brief's Position On When The Additional Trees Were Installed ......... 2

        2.   The Association Falsely Asserts That Western Sunview Maintained That Judge Ezra Was Shown A Reinhardt Photograph. ................................................................................ 4

        3.   The Association Misrepresents Mr. Reinhardt's Use Of The Word "New" In His July 2006 Declaration ...................... 4

        4.   The Photographs Western Sunview Submitted To This Court Clearly And Accurately Show Which Trees Were The Subject Of Judge Ezra's Ruling ......................................... 5

    B.   The Association Fails To Show That There Are No Triable Issues Of Fact As To Trees Allegedly "Not In" The Special Setback Area .............................................................................. 6

    C.   Mr. Reinhardt's January 2006 Declaration Does Not Contain Misstatements ............................................................................. 8

        1.   Mr. Reinhardt Correctly States That Only Three Trees Were "At Issue" Before Judge Ezra ........................................ 9

        2.   Mr. Reinhardt Correctly States That There "Are Now Many More Palm And Other Trees" In The Special Setback Area, Despite The Committee's Thirty-Inch Rule .... 11

        3.   Mr. Reinhardt Properly Expressed His Opinion That The Additional Trees Obstruct Views ........................................... 12

    D.   The Association Fails To Explain Away Other Evidence Referenced In The Supplemental Brief ........................................... 13

    E.   The Association's Improper Arguments Concerning The Meeting Minutes Are Simply Wrong ................................................ 16

      F.     Landscaping That Obstructs Western Sunview's Views Has Unquestionably Been A Part Of This Lawsuit From The Beginning.......................................................................................... 17

      G.    The Court Should Not Strike Any Portion Of Western Sunview's Evidence. ........................................................................ 18

III.    CONCLUSION............................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

*Burch v. Regents of the University of California,*
    433 F. Supp. 2d 1110 (E.D. Cal. June 5, 2006) .................................................... 18

*Fenje v. Feld,*
    301 F. Supp. 2d 781 .............................................................................................. 19

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,*
    809 F.2d 626 (9th Cir. 1987) ............................................................................... 13

*Western Sunview Properties, LLC v. Federman,*
    338 F. Supp. 2d 1106 ........................................................................................... 17

## I.    INTRODUCTION

The Association's Motion to Strike (the "Motion") is merely an unsuccessful attempt to discredit Western Sunview.  The Motion relies on smoke and mirrors – not facts or citations to any actual "misrepresentations" – because smoke and mirrors are all the Association has.  In its Motion and its "Supplement," the Association does not identify a <u>single</u> misstatement made in Western Sunview's Supplemental Brief or in Mr. Reinhardt's Declarations – even though that is what the Association contends is the point of the Motion.  It is telling that even though it seeks to strike Western Sunview's *entire brief,* the Association does not quote a passage from that brief until page 10 of its Motion.  Rather than quote what Western Sunview says and then explain why the quoted language is wrong and should be stricken, the Association instead attacks "statements" that it insists are in the Supplemental Brief, when a fair reading of the Supplemental Brief shows that they are not.

When the Association finally does quote passages of Western Sunview's Supplemental Brief, the Association puts its own "spin" on the evidence.  This is argument directed to the pending summary judgment motion, not evidence of some misrepresentation that warrants a motion to strike.  The Association should have attempted to explain away the evidence in its Response to Western Sunview's Supplemental Brief, not in a separate motion.  The Association's evidentiary

arguments provide no basis for striking <u>any</u> portion of Western Sunview's Supplemental Brief, much less for striking it in its entirety.

In filing its baseless Motion and "Supplement," all the Association did was increase the number of pages presented to this Court.[1]  Even with the Association's extra briefing, the only thing established is that the Association has not met its burden of showing that summary judgment is warranted because there are no triable issues of fact.

## II.  ARGUMENT

A.  **Western Sunview Correctly Describes When The Additional Trees Were Installed, And Correctly Shows The Court Which Trees Were The Subject Of Judge Ezra's Ruling.**

1.  **The Association Misrepresents The Supplemental Brief's Position On When The Additional Trees Were Installed.**

Without providing any quote or citation, the Association asserts that "Plaintiffs claim that six additional trees were planted in the Special Setback Area <u>since Judge Ezra was shown photographs at the hearing on August 23, 2004</u>." Motion, at 4 (emphasis added).  Western Sunview's Supplemental Brief does not mention the August 23, 2004 hearing, much less claim that six additional trees

_____

[1] With the briefing on its Motion, the Association made an end-run around the 15-page briefing limit ordered by this Court for any Opposition to Western Sunview's Supplemental Brief.  The Association filed not only a 14-page Response to the Supplemental Brief – containing extensive single-spacing in violation of Local Rule 10.2(a) – but also its 15-page Motion and 6-page "Supplement," for a total of 35 pages.

were installed after it.  The Supplemental Brief instead states that "[s]ince the
initial briefing before Judge Ezra, the Federmans have installed at least six
additional palm trees that appear to be in the special setback area . . . ."  Plaintiff's
Supplemental Brief, at 6-7 (emphasis added).[2]  The "initial briefing before Judge
Ezra" was the Federman's initial Motion for Summary Judgment, which they filed
in April 2004.   Plaintiffs opposed the Federmans' motion on June 18, 2004.  Since
the Association does not dispute that six of the trees at issue were installed after
either date,[3] the Association cannot justifiably maintain that the Supplemental
Brief misrepresents when the additional trees were installed.[4]

---

[2] In the process of editing its January 4, 2006 Opposition to Association's Motion
for Summary Judgment, Western Sunview inadvertently stated at page 30 that
additional trees were installed after Judge Ezra ruled on the Motion for
Reconsideration.  This inadvertent statement is not the subject of the Association's
Motion to Strike.  Plaintiffs intend to file an errata correcting this statement.

[3] The Association maintains that the Committee approved the trees at issue on
June 22, 2004 – which was after the initial briefing to Judge Ezra.  Interestingly,
this alleged approval date also was well after the installation of the three trees that
were the subject of Judge Ezra's ruling.  See Declaration of Terrance M. Revere
(July 17, 2006) ("Revere Declaration"), Exhibits ("Exh.") 18, 20, 21.A.

   Unless otherwise noted, all Exhibits cited herein are attached to the Revere
Declaration.

[4] Even if the Supplemental Brief did state that six additional trees were installed
after the August 23, 2004 hearing – which it does not – the Association provides
no evidence that this is incorrect.

2.     **The Association Falsely Asserts That Western Sunview Maintained That Judge Ezra Was Shown A Reinhardt Photograph.**

According to the Association, "[t]he most significant misstatement is the presentation of the photograph taken on April 5, 2004 – it is not the one shown to Judge Ezra at the hearing on August 23, 2004." Motion, at 5. The Association's claims are belied by even a quick glance at the record: Neither Western Sunview nor Mr. Reinhardt stated that this photograph <u>was</u> shown to Judge Ezra. In the sentence discussing the trees that Judge Ezra considered, Western Sunview did not mention or cite this photograph. *See* Supplemental Brief, at 6.[5] Mr. Reinhardt's July 2006 Declaration does not even mention Judge Ezra or any court hearing, much less state that Judge Ezra was shown any photographs. Thus, the so-called "most significant misstatement" was not "stated" by anyone (except the Association).

3.     **The Association Misrepresents Mr. Reinhardt's Use Of The Word "New" In His July 2006 Declaration.**

Despite the fact that Mr. Reinhardt's July 2006 Declaration does not mention the Court or any hearing or ruling, the Association claims that "when <u>Mr.</u>

---

[5] Western Sunview correctly stated that Exhibit 20 (not Exhibit 21, which contains the Reinhardt photographs) was "previously filed with the Court by the Federmans." The Association does not and cannot dispute this statement.

<u>Reinhardt characterizes . . . coconut trees as 'new' – planted after the Court had its hearing and issued its ruling</u>, he misleads the Court." Motion, at 5 (emphasis added). Mr. Reinhardt's declaration shows that uses the word "new" to refer to trees that are present in his January 2006 photographs, but that are not present in his April 2004 photographs. *See* Exh. 21 ¶ 7 ( "This version has been annotated to mark as 'NEW' those trees that are not in the photographs taken on April 5, 2004."); *see also id.* ¶¶ 3, 4, 6.[6] The Association does not and cannot dispute the truth of what Mr. Reinhardt actually said.

> **4.    The Photographs Western Sunview Submitted To This Court Clearly And Accurately Show Which Trees Were The Subject Of Judge Ezra's Ruling.**

In submitting photos showing the Federmans' landscaping as it existed in May 2003 and April 2004,[7] Western Sunview's sought to clearly and accurately show this Court which three trees were the subject of Judge Ezra's ruling. The Association does not contend that the trees depicted in these pictures are <u>not</u> the

---

[6] The Supplemental Brief states that the additional trees were installed after the initial briefing to Judge Ezra. Even if Mr. Reinhardt's July 26, 2006 Declaration stated that the trees were "new" in this sense (which it did not), that statement would be completely true.

[7]  The Association does not dispute that these trees were in the special setback area as of <u>May 2003</u>. The Association never explains, however, why these trees were in the special setback area prior to the date (June 22, 2004) on which the Association contends that the Committee approved them. Nor does the Association explain why the Committee failed to take any action against the non-approved trees in the special setback area during the time period in which they were not approved.

ones upon which Judge Ezra ruled. Thus, the Association cannot justifiably maintain that Western Sunview sought to mislead the Court by using these photographs to make it clear exactly which trees, of the many trees currently on the Federman property, are the ones that were the subject of Judge Ezra's ruling.

Western Sunview does not dispute that the Exhibit 69 referenced by the Association, which shows both the three trees that Judge Ezra ruled upon and two other trees, was submitted to Judge Ezra. Nor did Western Sunview claim in its Supplemental Brief that Judge Ezra did not see this photograph. <u>Judge Ezra, however, explicitly did not rule on two of the trees in this picture.</u>[8]

### B.    The Association Fails To Show That There Are No Triable Issues Of Fact As To Trees Allegedly "Not In" The Special Setback Area.

The Association argues the evidence by claiming that "in light of the many documents that were readily available," Western Sunview's statements as to additional trees in the special setback area do not "appear" to have been made in "good faith." Motion, at 7. For example, the Association claims that two of the six palm trees at issue "are **not** in the Special Setback Area," and that it is "difficult

---

[8] As Judge Ezra stated, "<u>[t]he two to three trees addressed by the Court</u> at the hearing are the only trees that have been sufficiently discussed by the parties . . . To the extent that Plaintiffs seek a ruling regarding <u>other trees</u> or trees generally, <u>this issue was not properly before the Court</u>." Order on Reconsideration (February 22, 2005), at 23.

to understand how Plaintiffs could make this representation by mistake." Motion, at 6.

Western Sunview did not "make this representation by mistake." Indeed, Western Sunview believes, based on the declaration of its expert, that these trees are in the special setback area. The Association does not prove this to be false; instead, the Association relies on a declaration from Mr. Ayer, and a Federman landscaping plan (which is a drawing), on which Mr. Ayer marked "the approximate location of the boundary of the special setback area." Ayer Decl. ¶ 3 (emphasis added).[9] Even on the plan, the two palm trees are extremely close to the "approximate" boundary (indeed, their crowns cross over the "approximate" line), and the silver buttonwoods abut it. If Mr. Ayer was off in his "approximation," then even on the drawing the trees would be in the special setback area. Moreover, unlike Mr. Ayer, Mr. Reinhardt's office visited The Bluffs and, using reference

---

[9] In discussing this plan, the Association represents that Exhibit D (which is the same as Exhibit J to the Association's Response to the Supplemental Brief) is a "reproduction of approved landscape plans," thereby representing that the plan as approved contained Mr. Ayer's marking of the "approximate" boundary. Motion, at 7. However, Mr. Ayer states that he drew the approximate boundary "at the request of Ronald Shigekane" – never attesting that this plan with the marking was available to the Association at the time the decision to approve the landscaping was approved. Ayer Decl. ¶ 2. If the approved plan did not contain Mr. Ayer's marking, then the Committee apparently approved a plan that did not even contain an "approximation" of the special setback boundary, much less show exactly where that boundary is. This, in itself, would be sufficient to create triable issues of fact regarding the Committee's decision-making process.

points and plans, concluded that the two palm trees <u>are</u> in the SSA, and that a silver

buttonwood is growing into it.  Declaration of Janelle Suyemura ¶ 4.[10]

Thus, the Association fails to show that Western Sunview's position is not

"in good faith."  All the Association does is present its own evidence, which is

insufficient to meet the Association's burden of establishing that there are no

triable issues of fact.[11]  As such, summary judgment is not warranted, much less a

motion to strike.

### C.    Mr. Reinhardt's January 2006 Declaration Does Not Contain Misstatements.

Mr. Reinhardt's January 2006 Declaration was originally filed over six

months ago.  The Association did not move to strike it then.  Nor was it stricken or

---

[10] The Association contends that Plaintiff missed one tree, and that two of the palm trees Mr. Reinhardt refers to are (or at least may be) on the Reddy property.  Mr. Reinhardt explained he could not conclusively determine the number of trees unless he visited the property.  Exh. 21 ¶ 6.

[11] Even if a jury determines that the Association is correct as to the actual location of the trees in relation to the special setback boundary, Mr. Reinhardt did not made a misstatement, because he qualified his statements and made it clear that were based upon the information available to him:

> In order to determine the exact number of new trees in
> the special setback area, I would have to visit the site, lay
> out the special setback line and the property lines, and
> examine the location of the new trees.  I believe,
> however, that at least 6 new coco palms and a new
> cluster of what I understand are silver buttonwoods are in
> the special setback area of the Federmans' property.

Exh. 21 ¶ 6.

deemed inadmissible by this Court. Thus, Mr. Reinhardt's January 2006 Declaration is part of the record evidence in this case. In falsely claiming that the statements in this declaration are wrong, misleading, or made in bad faith, Motion, at 8-9, the Association fails to explain away this record evidence. Any attempt to explain away record evidence also should have been made in the Association's Response to the Supplemental Brief, not in a separate motion to strike.

### 1. Mr. Reinhardt Correctly States That Only Three Trees Were "At Issue" Before Judge Ezra.

Mr. Reinhardt's January 2006 Declaration states that "[a]t the time of the initial summary judgment ruling in this case there were only three palm trees at issue in the Federman Special Setback Area." Exh. 17 ¶ 1. The Association claims that "[t]his is wrong," because "Judge Ezra was shown a photograph with 5 coconut trees." Motion, at 8. The Association's suggestion that five trees were "at issue" is belied by Judge Ezra's Order on Reconsideration:

> The two to three trees addressed by the Court at the hearing are the only trees that have been sufficiently discussed by the parties in their arguments and factual evidence to enable this Court to reach a ruling on the subject. To the extent that Plaintiffs seek a ruling regarding other trees or trees generally, this issue was not properly before the Court.

Order on Reconsideration (February 22, 2005), at 23. Thus, Judge Ezra made it clear that the only trees at "issue" were the (two or) three upon which he ruled.

Mr. Reinhardt was not "wrong."[12]

The Association also falsely claims that Judge Ezra "made his remarks regarding only a cluster of 3 coconut trees because the other two coconut trees were not, in anyone's mind, obstructing any view." Motion, at 8. Plaintiffs have always maintained that the other two trees obstruct views; Western Sunview respectfully submits that a look at the Exhibit 69 cited by the Association will show that there is, at the very least, a triable issue of fact on this issue.

Indeed, Judge Ezra's remarks at the hearing suggest that he may have thought that those two trees obstruct views:

> The only thing that I can see there, that would appear to in any way impede your client's view plain – view plane, now – would be the planted palm trees next to the pool on the left and on the right. . . .
>
> . . . .
>
> [J]ust looking at this, if I were a mediator, I would say take the two palm trees out, get rid of the cluster of trees, and that's it.

Transcript (August 23, 2006), at 45:1-4; 62:19-21 (attached as Exh. A to the Association's Motion).

_____

[12] The Association's accusation that Mr. Reinhardt is "wrong" also contradicts the Association's own position. Mr. Reinhardt stated that there "were only three palm trees at issue in the Federman Special Setback Area." Exh. 17 ¶ 1. In noting that Judge Ezra was shown a photograph containing 5 coconut trees, the Association forgets its own argument that two of those five trees "are **not** in the Special Setback Area." Motion to Strike, at 6. Thus, the Association itself believes that only three trees at issue before Judge Ezra were in the special setback area.

Plaintiffs respectfully submit that it is unclear why Judge Ezra limited his ruling to the three threes only.  Judge Ezra decided the Motion for Reconsideration without a hearing, and the Order does not expressly state why he ruled on some, but not all, of the trees in Exhibit 69.  Judge Ezra <u>may</u> have ruled on three trees only because the Federman's represented that the "evidence shows that the three trees were approved by the design committee,"[13] but Western Sunview cannot say for sure.  There is no evidence, however, that Judge Ezra "made his remarks regarding only a cluster of 3 coconut trees because the other coconut trees were not, in anyone's mind, obstructing any view."  Motion, at 8.

> **2.    Mr. Reinhardt Correctly States That There "Are Now Many More Palm And Other Trees" In The Special Setback Area, Despite The Committee's Thirty-Inch Rule.**

The Association's incorrectly argues that Mr. Reinhardt attempted to mislead the Court by stating that "[t]here are now many more palm and other trees in the Federman Special Setback Area even though the Committee claims that it has a rule prohibiting landscaping in excess of 30 inches in the Special Setback Area."  Exh. 17 ¶ 2.  The Association concedes that there are three additional

---

[13] *See* Federmans' Opposition to Plaintiffs' Motion for Clarification and Reconsideration (October 13, 2004), at 16.  However, the Federmans assert that they received approval for the three trees in <u>February 2002</u>, which is contrary to the Association's position that approval was given on June 22, 2004 (which was well after the three trees were installed).

coconut trees in the special setback area. Motion to Strike, at 9.[14] Two other palm trees also appear to be in the special setback area, and a silver buttonwood tree in excess of thirty inches abuts the special setback area and appears to be growing into it. Suyemura Decl. ¶ 5.[15] Furthermore, the Committee also has a rule that, with the exception of palm trees, landscaping higher than 30 inches is prohibited in the special setback area. Exh. 8. Thus, the Association fails to show that Mr. Reinhardt was incorrect, much less that he attempted to mislead the Court.

### 3. Mr. Reinhardt Properly Expressed His Opinion That The Additional Trees Obstruct Views.

The Association improperly criticizes Mr. Reinhardt's statement that the addition trees block views, by claiming that "the purposely vague *opinion* regarding added trees . . . had no basis and fact and was made solely to confuse and create factual issues. Especially telling was the absence of any photograph supporting his opinion at the time." Mr. Reinhardt is a landscape architect who

---

[14] Mr. Reinhardt also testified that from the photograph it appeared there were two more palm trees in that area, and the Association claims that these trees are on the Reddy property. After having viewed the property in person (as Mr. Reinhardt declared must be done to verify the location of the trees), Mr. Reinhardt's office would now agree. The Association would argue that this is a misreprestation – however, Mr. Reinhardt's Declaration clearly stated: "In order to determine the exact number of new trees in the special setback area, I would have to visit the site, lay out the special setback line and the property lines, and examine the location of the new trees. I believe, however, that at least 6 new coco palms . . . are in the special setback area of the Federmans' property." Exh. 21 ¶ 6.

[15] In light of this evidence, the Association also fails to establish that all the buttonwoods are not in the special setback area. *See* Motion, at 12.

Case 1:03-cv-00463-JMS    Document 652    Filed 08/07/2006    Page 18 of 26

has been designated as an expert in this case.  His statement that the added trees obstruct views was made on the basis of his own observations.  There is no requirement that he provide photographs to corroborate his views, and the Association fails to provide any evidence whatsoever that Mr. Reinhardt's opinion is not genuine.[16]  In casting aspersions as to motive without providing any showing to support its view, the Association unsuccessfully attempts to explain away the evidence.  Again, this does not warrant a motion to strike.

### D.    The Association Fails To Explain Away Other Evidence Referenced In The Supplemental Brief.

The Association falsely suggests that Western Sunview makes "factual assertions" that are not based in fact, and are instead argument.  Motion, at 9-10.  Western Sunview explains the facts and the evidence from Western Sunview's perspective.  The same could be said for the Association's brief.  The Association cannot justifiably criticize Western Sunview for not putting the Association's "spin" on the evidence.  Indeed, in considering a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, which here is Western Sunview.  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630-31 (9th Cir. 1987).  Insofar as the

---

[16] Indeed, the Court currently has before it photographs that Mr. Reinhardt took two days after his January 4, 2006 Declaration.  Exh. 21 B, D.  These photographs support Mr. Reinhardt's opinions.

Association contends that Western Sunview's Supplemental Brief makes factual assertions that do not have evidentiary support, that contention is simply not true:

First, the Association incorrectly criticizes Western Sunview's statement that "Section 4.10.2 provides that '[s]hrubs or trees, such as palm trees which grow to significant heights are not encouraged' in any area of The Bluffs – much less in the special setback area **where views are expressly protected and the obstructing of views is prohibited**." In challenging only the bolded portion of this sentence, the Association ignores Section 4.17 of the DRs, which provides that "[s]pecial setbacks have been placed on the individual Homesites to protect views and to preserve hillsides. No building or structure shall be placed within the special setback areas." Exh. 1 § 4.17 (emphasis added). The Association also ignores other evidence, including the 1997 Stifler letter, which provides that "[t]here are to be no large plants or trees in the setbacks that might interfere with the views of the neighboring lot owners." Exh. 6 at MKR 05509 (emphasis added). Thus, the evidence more than supports Western Sunview's position, especially when it is viewed in the light most favorable to Western Sunview, as here it must be.

Second, the Association falsely suggests that Western Sunview misrepresented the CC&Rs by stating, in a footnote, that they "provide that landscaping must not obstruct views. Exh. 2 § 2.11." Western Sunview did not use quotation marks in summarizing Section 2.11, thus making it clear that was

14

providing a paraphrase.  The relevant passage of Section 2.11 provides that "[a]ll trees, shrubbery and other plants on any Lot <u>shall</u> be kept at reasonable heights as contemplated by the original landscaping plans therefore, so as <u>not</u> to <u>unreasonably obstruct views</u> from other Lots."   (Emphasis added.)  Thus, Western Sunview provided an accurate, short-hand summary of the relevant provision.

<u>Third</u>, the Association falsely claims that Western Sunview "take[s] matters out of context" in stating that the Committee's position is that clusters of palm trees are not allowed in the special setback area.  Motion, at 10.  However, Mr. Stringer, the Committee's own architect testified that this <u>is</u> his understanding of the Committee's position.  Exh. 7, at 206:1-5.  The Association fails to cite any "context" that contradicts this point.  Indeed, the Association itself notes that Mr. Stringer was shown a letter from Mr. Ayer stating that "[t]he Committee allows planting in the Special Setback area, but restricts the type of planting to <u>coco palms that are not clustered</u> or planted such that they create a major view plane hindrance . . . ."  Motion, at 11.  Since the record shows that the Committee's position <u>is</u> that clusters of palm trees are prohibited in the special setback area, it is not clear what the Association is complaining about.

<u>Fourth</u>, the Association falsely states that Western Sunview "suggest[s] that the Committee (through its consultant, Mr. Stringer) admitted that the Federmans had a 'cluster of palm trees' which violated the rules."  Motion to Strike at 11.  The

Association fails to provide any citation for this alleged "suggestion," because the Supplemental Brief makes no such statement. Furthermore, the Association itself concedes in its Motion that the Committee approved a "cluster" of trees in the Federman special setback area. Motion, at 7 ("Part of <u>cluster</u> of 3 trees, in approved plans of June 22, 2004, within SSA.") (emphasis added). Given this concession, it again is not clear what the Association is complaining about.

What is clear is that, in making the arguments discussed in this section, the Association attempts to put its own "spin" on the evidence. The Association should have made such arguments in its Response to Western Sunview's Supplemental Brief. By placing these arguments in a separate Motion to Strike, the Association circumvented the briefing limits ordered by this Court.

### E.    The Association's Improper Arguments Concerning The Meeting Minutes Are Simply Wrong.

The Association falsely claims that Western Sunview attempts "to confuse the issue by referring to . . . the 'missing minutes' of January 29, 2002, when Plaintiffs KNOW that . . . the 6 coconut trees were unquestionably approved in June, 2004." Motion to Strike, at 14. The Association's claim is belied by the Association's own evidence. In support of its Supplement, the Association attaches a Declaration of Mr. Federman, in which Mr. Federman states that the six coconut trees were approved in <u>February 2002</u>. Federman Decl. ¶ 4. By submitting evidence that the six trees were approved in February 2002, as well as

evidence that they were approved in June 2004, the Association itself creates a uncertainty on the issue. Thus, the Association again demonstrates Western Sunview's point that Association representatives themselves have created a triable issue regarding the actual approval date.

### F. Landscaping That Obstructs Western Sunview's Views Has Unquestionably Been A Part Of This Lawsuit From The Beginning.

The Association's Supplement makes additional arguments about the evidence. There, the Association claims that Western Sunview knew of <u>proposed</u> additional landscaping in 2003 and May 2004. The Association then falsely infers that, because Plaintiffs did not expressly seek to make that proposed landscaping the subject of a Court ruling until <u>after</u> it was installed, Plaintiffs were somehow not concerned with the proposals.

The Association's claims are patently false. As a review of the pleadings indicates, Plaintiffs have always been concerned with view obstruction, and improper landscaping always has been the subject of Western Sunview's claims. Furthermore, under the Court's rulings, claims concerning view obstruction would not be ripe until views are actually obstructed. *Western Sunview Properties, LLC v. Federman*, 338 F. Supp. 2d 1106, 1115 n.3 (2004 ("Plaintiffs pointed out that Defendants' pool has not yet been filled. The court is thereby unclear as to precisely how Plaintiffs are so convinced that they would even be affected by glare

17

from the pool as there was no water in the pool at the time of his hearing."). Thus, the Association's argument is disingenuous and, once again, fails.

**G.    The Court Should Not Strike Any Portion Of Western Sunview's Evidence.**

In responding to Western Sunview's Supplemental Brief, the Association also requests that the Court strike portions of Western Sunview's evidence, asserting (without stating any particular objection to any particular evidence) that such evidence does not meet the requirements of "Rule 56(e) of the Federal Rules of Evidence." Response, at 1.  (The Association apparently means Rule 56(e) of the Federal Rules of Civil Procedure.)  Much of the evidence in question originated from Defendants, and the Association makes no effort to show that it would not be admissible at trial. *See Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. June 5, 2006).

Exhibit 6 is the 1997 Stifler letter, which shows that landscaping that obstructs views has been prohibited in the special setback area since the formation of The Bluffs.  The Mauna Kea Defendants produced this letter to Plaintiffs on July 2006.  The Association does not contest its authenticity, nor does it give any reason why it would not be admissible at trial.[17]

---

[17] The Mauna Kea Defendants have objected to Plaintiffs taking depositions with respect to documents that were produced after the discovery cutoff, including Exhibit 6.  Plaintiffs expect to file a motion in the near future seeking leave to take the deposition of Mr. Stifler (as well as two other witnesses).  If the Court

Exhibits 8, 11, and 14 are documents from Mr. Ayer, the Committee's consultant. Exhibits 8 and 14 were produced by the Association. It is unclear why the Association objects to this evidence, especially given its own views as to the reliability of the documents that "were readily available in this litigation." *Cf. Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003 ("Even if a party fails to authenticate a document properly or to lay a proper foundation, the opposing party is not acting in good faith in raising such an objection if the party nevertheless knows that the document is authentic."). Exhibit 11 was sent by Mr. Ayer to Mr. Revere, so Mr. Revere has personal knowledge of receiving these materials. Again, the Association has not given any reason why these documents would not be admissible at trial.

Exhibit 10 is a Forest Service document that states facts about silver buttonwoods. The Association does not contest the accuracy of the information in that document. Pursuant to Federal Rule of Evidence 201(b)(2), the Court can take judicial notice of the facts that silver buttonwoods are native to Florida and may grow 15 to 20 feet tall, facts which can be readily determined from sources whose accuracy cannot reasonably be questioned.

---

concludes that there is any question regarding the admissibility of Exhibit 6 (or any of the other documents that the Association objects to), Western Sunview respectfully requests a continuance pursuant to Rule 56(f) to permit Western Sunview to obtain additional declarations or take additional discovery to establish the admissibility of the documents.

Exhibit 12 is a letter from Mr. Love to Mr. Shigekane, which Mr. Love has authenticated.  *See* Declaration of Chad P. Love (August 5, 2004) ¶ 39.

Exhibit 16 is a Declaration from Mr. Federman, dated July 15, 2004.  In the Declaration, Mr. Federman asserts that he has personal knowledge of the facts stated therein.

Exhibit 17 is a Declaration from Mr. Reinhardt, dated January 4, 2006.  This Declaration was previously filed with the Court on January 5, 2006 and was not stricken or deemed inadmissible by this Court.  Thus, this Declaration forms a part of the record evidence in this case.

### III.    CONCLUSION

For the foregoing reasons, the Court should deny the Association's Motion to Strike in its entirety.

DATED:  August 7, 2006.


_____/s/_____
DENELLE M. DIXON-THAYER
TERRANCE M. REVERE

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC;
GUY HANDS; and JULIA HANDS

## ATTORNEY CERTIFICATION

I have reviewed Plaintiff Western Sunview Properties, LLC's Opposition to the Association's Motion to Strike (the "Opposition").  I hereby certify that each factual assertion made in the Opposition has evidentiary support.

DATED: August 7, 2006.

_____/s/_____
DENELLE M. DIXON-THAYER

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES,
LLC;GUY HANDS; and JULIA HANDS

42046\3001\507632.2