FOLGER LEVIN & KAHN LLP

SAMUEL R. MILLER (*pro hac vice*)
DENELLE M. DIXON-THAYER (*pro hac vice*)
275 Battery Street, 23rd Floor
San Francisco, CA 94111
Tel. No. (415) 986-2800
Fax No. (415) 986-2827
Email address: ddixon-thayer@flk.com

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Corporation

TERRANCE M. REVERE 5857-0
JACQUELINE E. THURSTON 7217-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii 96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, and JULIA HANDS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES LLC; GUY HANDS; AND JULIA HANDS,<br><br>Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY | Civil No. 03-00463 JMS LEK<br><br>(Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br><br><br>(*caption continued*) |

ASSOCIATION; MAUNA KEA
PROPERTIES, INC.; MAUNA KEA
DEVELOPMENT CORP.; COUNTY
OF HAWAII; JOHN DOES 1-100;
JANE DOES 1-100; DOE
PARTNERSHIPS 1-100; AND DOE
CORPORATIONS 1-100,

TRIAL:  December 5, 2006

Defendants.

## PLAINTIFFS' OPPOSITION TO THE FEDERMANS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................... 1

II.  FACTUAL BACKGROUND........................................................... 4

     A.   Western Sunview Pled Claims for Damages Against the
          Association Based On, Among Other Things, The Federmans'
          Landscaping................................................................................ 4

     B.   At The Time The Parties Entered Into The Settlement
          Agreement, Western Sunview Had Pending Claims Against
          The Federmans For, Among Other Things, Fraud And Civil
          Conspiracy .................................................................................. 6

     C.   The Settlement Agreement Expressly Preserved Western
          Sunview' Claims Against the Association ......................................... 7

     D.   The Stipulation For Dismissal Expressly Preserved Western
          Sunview's Claims Against The Association ....................................... 8

     E.   All Claims Against The Federmans Have Been Dismissed, And
          The Federmans Are No Longer Parties To This Action .................... 9

III. ARGUMENT ................................................................................. 9

     A.   This Court Lacks Jurisdiction to Hear This Motion; Any
          Attempt To Enforce the Settlement Agreement Must Be Raised
          In Mediation Or A Separate Action ................................................ 9

          1.   The Court Does Not Have Ancillary Jurisdiction,
               Because The Parties' Did Not Request, And This Court
               Did Not Retain, Continuing Jurisdiction To Enforce The
               Settlement Agreement........................................................... 10

          2.   This Court Is A Court of Limited Jurisdiction, And The
               Jurisdictional Requirements Are Not Met. ............................ 13

     B.   Western Sunview Has Not Breached The Settlement Agreement
          By Pursuing Its Claims For Damages Against The Association....... 15

          1.   The Settlement Agreement Expressly Allows Plaintiffs
               To Pursue Its Claim For Damages Against The
               Association ............................................................................ 16

          2.   Western Sunview Is Pursuing Claims Against The
               Association That Were Pled In The Lawsuit – As The
               Settlement Agreement Expressly Allows It To Do. ............... 17

TABLE OF CONTENTS

3.      The Federmans Are Playing A Game Of "Gotcha" –
        Incorrectly Arguing That Their Counsel's Unexpressed
        Intent Is Somehow Controlling ............................................... 19

C.      The Federman's Motion Should Be Denied Because It Was
        Brought for an Improper Purpose ...................................... 22

IV.     CONCLUSION ............................................................................. 23

# TABLE OF AUTHORITIES

## CASES

*Baer v. First Options of Chicago, Inc.*,
   72 F.3d 1294 (7th Cir. 1995) - ............................................................12

*Brown v. KFC Nat'l Management Co.*,
   921 P.2d 146 (Haw. 1996) .................................................................16

*Callie v. Near*,
   829 F.2d 888 (9th Cir. 1987) .............................................................20

*Flores v. American Seafood, Co.*,
   335 F.3d 904 (9th Cir. 2003) .............................................................20

*Foundation International, Inc. v. E.T. Ige Construction, Inc.*,
   78 P.3d 23 (Haw. 2003) .....................................................................21

*Hagestad v. Tragesser*,
   49 F.3d 1430 (9th. Cir. 1995) ............................................................11

*Hanagami v. China Airlines, Ltd.*,
   978 P.2d 1139 (Haw. 1984) ...............................................................16

*Harris Corp. v. Giesting & Associates, Inc.*,
   297 F.3d 1270 (11th Cir. 2002) .........................................................21

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994).............................................................................9

*McGary v. City of Portland*,
   386 F.3d 1259, Fed. R. Civ. Proc. 8 (a).........................................4, 18

*Metronet Services Corp. v. U.S. West Communications*,
   329 F.3d 986 (9th Cir. 2003) .............................................................10

*Morrison v. Allstate Indem. Co.*,
   228 F.3d 1255 (11th Cir. 2000) .........................................................14

## TABLE OF AUTHORITIES

*O'Connor v. Colvin,*
   70 F.3d 530 (9th Cir. 1995) ......................................................9, 13, 15

*Snow v. Ford Motor Co.,*
   561 F.2d 787 (9th Cir. 1997) ............................................................14

*Western Sunview Properties, LLC v. Federman,*
   338 F. Supp. 2d 1106 (D. Hawaii 2004)...............................................6

*William Keeton Enterprises, Inc. v. All American Strip-O-Rama, Inc.,*
   74 F.3d 178 (9th Cir. 1996) ..............................................................11

### STATUTES

28 U.S.C. § 1332 ...................................................................................13

# I.    INTRODUCTION

The Federmans' Motion to Enforce Settlement Agreement (the "Motion") is improper. The Federmans have no standing or good faith basis to file the motion, and this Court lacks jurisdiction to hear it.

Over nine months ago, Irwin Federman and Concepcion S. Federman (collectively the "Federmans") entered into a settlement agreement, dated October 7, 2005 (the "Settlement Agreement") with Western Sunview Properties, LLC, Guy Hands and Julia Hands (collectively "Western Sunview"). Under the terms of the Settlement Agreement, the Federmans and Western Sunview expressly agreed that Western Sunview could continue to pursue its claim for damages against The Bluffs Community Association (the "Association") for the Association's failure to enforce the Covenants Conditions & Restrictions and the Design Requirements ("DRs") as to the Federman lot at The Bluffs. The parties' express agreement that Western Sunview could pursue the claims against the Association is emphatically included in two separate provisions of the Settlement Agreement:

> provided that WSP and the Hands shall be free to pursue a claim for damages only against the Bluffs Community Association, Mauna Kea Properties, Inc., and Mauna Kea Development Corp. as pled in the Lawsuit.

> It is understood and agreed that the Settling Parties are not releasing, but rather are expressly reserving, any claims against Mauna Kea Properties, Inc., Mauna Kea Development Corp., and The Bluffs at Mauna Kea Community Association (collectively, the "Remaining

1

Defendants"), including without limitation the claims
asserted by WSP and the Hands against the Remaining
Defendants in the Subject Lawsuit.

Settlement Agreement ¶¶ 5, 6B (attached as Exhibit ("Exh.") B to the

Declaration of Andrew v. Beaman ("Beaman Decl.")).

In reliance on the Federmans' agreement that the Settlement Agreement

would not limit or otherwise affect Western Sunview's pending claims against

the Association, Western Sunview dismissed their claims against the

Federmans. The Stipulation and Order for Dismissal, which was prepared by

the Federman's counsel, signed by the Association's counsel and entered by

the Court on February 14, 2006, dismissed only the claims against the

Federmans and expressly stated that "[a]ll other claims and parties remain in

this action." Stipulation for Dismissal with Prejudice as to All Claims Against

Federman Defendants (February 14, 2006) ("Stipulation for Dismissal"), at 2

(attached as Exh. A to the Declaration of Denelle M. Dixon-Thayer ("Dixon-

Thayer Decl.") filed herewith).

Now, for the first time, the Federmans, who are no longer a party to this

action, contend that, contrary to the express language of both the Settlement

Agreement and the Stipulation and Order for Dismissal, Western Sunview

agreed to somehow limit or release its damages claim against the Association.

Nothing could be further from the truth.

2

In fact, the Federmans' Motion has nothing to do with the Federmans' concern for the Settlement Agreement. Rather, it is part of a concerted effort to circumvent the Court-imposed page limitations on the Western Sunview's and the Association's summary judgment briefs – and to assist the Association in attempting to meet its burden of showing that there are no triable issues of fact.[1]

The Federmans' Motion should be denied for the following reasons:

First, this Court lacks jurisdiction to hear the Motion. The Federmans filed the Motion in this Court (and declined to withdraw the Motion despite Plaintiffs' request), even though this Court does not have continuing jurisdiction to enforce the Settlement Agreement. The Plaintiffs' claims against the Federmans are no longer part of this litigation. Any action concerning the Settlement Agreement must be separately filed.

Second, the Motion is entirely baseless. It was not filed to "protect" the Settlement Agreement, but to support the Association's Motion for Summary Judgment – indeed, the Federmans do not seek damages, do not articulate any cognizable injury, and only state that some other tribunal, might make "some erroneous factual finding," which might result in "foreseeable [but not articulated] and unforeseeable adverse consequences" to the Federmans.

---

[1] Mr. Federman is a member of the Design Committee and the Association's Board.

Motion, at 4.  The Federmans' Motion also does not include a single citation to any Hawaii authority regarding breach of a contract, even though the Motion was ostensibly made to enforce a contract governed by Hawaii law.  Moreover, the vast majority of the Federmans' Motion, and the evidence included in support thereof, has nothing to do with the Settlement Agreement.

## II.    FACTUAL BACKGROUND

### A.    Western Sunview Pled Claims for Damages Against the Association Based On, Among Other Things, The Federmans' Landscaping.

Western Sunview pled multiple causes of action against the Association based on the Association's conduct with respect to the Federman lot and landscaping, including breach of the governing documents, negligence, and breach of fiduciary duty.  The operative complaint is the First Amended Complaint, which was filed by Western Sunview on April 27, 2004 ("FAC"). The causes of action against the Association clearly concern all landscaping on the Federman lot that obstructs Western Sunview's views and/or is inconsistent with the governing documents, especially when the Complaint is read liberally, as it must be.  *See McGary v. City of Portland,* 386 F.3d 1259, 162 (9th Cir. 2004); FED. R. CIV. PROC. 8(a).

In the FAC, Western Sunview makes the following specific allegations:

> The . . . Association . . . failed to observe requirements required by law and the governing documents of The

4

> Bluffs by placing or allowing illegal objects with/or in
> the "special setback" area of Lot 6, by engaging in or
> allowing actions that will cause glare or reflection onto
> Lot 5 and a obstruction, destruction, or impairment, of
> views from Lot 5.

FAC ¶ 12 (Beaman Decl. Exh. F).

> [The Association] allowed, permitted, encouraged, or
> assisted [the Federmans in constructing or placing] a
> pool, deck, spa, cluster of palm trees and other structures
> on Lot 6 that obstruct, destroy, or impair the view from
> Lot 5.

FAC ¶ 19 (Beaman Decl. Exh. F).

> [The Association] breached the covenants, conditions and
> restrictions as set forth in The Bluffs' governing
> documents, including its Declaration and Design
> Requirements.

FAC ¶ 21 (Beaman Decl. Exh. F).

> [The Association] violated Hawaii common and statutory
> law with regard to the covenants, conditions and
> restrictions, the governing documents, the Declaration
> and Design Requirements.

FAC ¶ 22 (Beaman Decl. Exh. F).

> [The Association was] negligent in various ways,
> including but not limited to constructing or allowing to
> be constructed a pool, deck, spa, cluster of palm trees and
> other structures in violation of the SMA and 'special
> setback' area of Lot 6, by engaging in or allowing actions
> that will cause glare or reflection onto [Western
> Sunview's property] and a obstruction, destruction, or
> impairment, of views from [Western Sunview's
> property].

FAC ¶ 53 (Beaman Decl. Exh. F).

> As a . . . result of [the Association's wrongful acts,
> Western Sunview has] suffered damage and loss,

including diminution in value, loss of view plane, loss of
enjoyment of [Western Sunview's property], and other
damages in an amount to be shown at trial.

FAC ¶¶ 23, 54 (Beaman Decl. Exh. F).

Thus, Western Sunview's claims against the Association include a claim

for damages based on the landscaping discussed in Western Sunview's

Supplemental Brief Regarding Additional Landscaping.

**B.    At The Time The Parties Entered Into The Settlement Agreement,
Western Sunview Had Pending Claims Against The Federmans
For, Among Other Things, Fraud And Civil Conspiracy.**

At the time the parties entered into the Settlement Agreement, all of

Western Sunview's claims against the Association were pending.  Western

Sunview also had pending claims against the Federmans for, among other

things, fraud and civil conspiracy.  These claims were based upon the

Federmans' conduct in furtherance of the Mauna Kea Defendants' secret

discount scheme, which Mr. Federman acknowledged was an "accounting

artifice."  *Western Sunview Properties, LLC v. Federman*, 338 F. Supp. 2d

1106, 1122 (D. Hawaii 2004).  The Court denied the Federmans' motion for

summary judgment as to fraud and civil conspiracy, meaning the Federmans

still faced potential joint and several liability for fraud.  *Id.* at 1122-23.  Given

this potential liability, the Federmans' assertion that, in entering into the

Settlement Agreement, they "effectively paid several hundred thousand dollars for the right to be left alone" is disingenuous at best. Motion, at 3.

### C. The Settlement Agreement Expressly Preserved Western Sunview' Claims Against the Association.

Western Sunview and the Federmans settled their dispute by entering into the Settlement Agreement. The Settlement Agreement did not settle any of Western Sunview's disputes with the Association, and clearly preserved Western Sunview's claims against the Association. The Federmans and Western Sunview agreed:

> In further consideration of this Agreement, WSP, the Hands and the Federmans hereby covenant and agree that they shall make no claim in any legal or administrative action that the improvements (including the landscaping in the condition that it exists on either property as of the date of this Agreement) constructed by the Federmans on Lot 6 or by WSP on Lot 5 (as of the date of this Agreement) do not conform to any laws, codes, ordinances and regulations, or to the recorded Declaration of Protective Covenants, Conditions and Restrictions for the Bluffs at Mauna Kea (the "Declaration") and the unrecorded Design and Construction Requirements for Homes promulgated thereunder, and that they shall take no action seeking to change, modify, remove, alter, or reconstruct any such improvements (including the landscaping in the condition that it exists on either property as of the date of this Agreement); provided that WSP and the Hands shall be free to pursue a claim for damages only against the Bluffs Community Association, Mauna Kea Properties, Inc., and Mauna Kea Development Corp. as pled in the Lawsuit.

Settlement Agreement ¶ 5 (Beaman Decl. Exh. B) (emphasis added).

Likewise, the Federmans and Western Sunview agreed that:

> It is understood and agreed that the Settling Parties are not releasing, but rather are expressly reserving, any claims against Mauna Kea Properties, Inc., Mauna Kea Development Corp., and The Bluffs at Mauna Kea Community Association (collectively, the "Remaining Defendants"), including without limitation the claims asserted by WSP and the Hands against the Remaining Defendants in the Subject Lawsuit.

Settlement Agreement ¶ 6B (Beaman Decl. Exh. B) (emphasis added).

In reliance on the parties' agreement that Western Sunview preserved its claims against the Association, Western Sunview entered into the Stipulation for Dismissal with Prejudice as to All Claims Against Federman Defendants.

### D.    The Stipulation For Dismissal Expressly Preserved Western Sunview's Claims Against The Association.

Like the Settlement Agreement, the Stipulation for Dismissal, which was submitted on the Federmans' pleading paper, also expressly preserved Western Sunview's right to pursue its claims against the Association:

> Comes now Plaintiffs above-named, by their attorneys, and Defendants Irwin Federman and Conception S. Federman (hereinafter "the Federmans") and stipulate to dismissal with prejudice of all claims against the Federmans. This Stipulation is entered into pursuant to Rule 41 (a) (1) (ii). Plaintiff and the Federmans shall bear their own attorneys' fees. All other claims and parties shall remain in this action. This stipulation has been signed by all parties appearing herein.

Stipulation for Dismissal, at 1-2 (Dixon-Thayer Decl. Exh. A).

8

**E.     All Claims Against The Federmans Have Been Dismissed, And The Federmans Are No Longer Parties To This Action.**

Based on the Stipulation for Dismissal, this Court dismissed all claims against the Federmans on February 14, 2006. *Id.* at 2. Since the claims against the Federmans have been dismissed, the Federmans are no longer parties to this action.

## III.    ARGUMENT

**A.     This Court Lacks Jurisdiction to Hear This Motion; Any Attempt To Enforce the Settlement Agreement Must Be Raised In Mediation Or A Separate Action.**

The Federmans' assertion that the Court has inherent authority to enforce the Settlement Agreement (Motion at 2) is belied by the Agreement, this Stipulated Dismissal, and well-settled authority.[2] When the initial action is dismissed, as is the case here as to the Federmans, federal jurisdiction terminates. *See O'Connor v. Colvin,* 70 F.3d 530, 532 (9th Cir. 1995). A motion to enforce a settlement agreement is a separate contract dispute, which requires its own independent basis for jurisdiction. *See id.; see also Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 378 (1994) (enforcement of a settlement agreement "is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction").

---

[2] Plaintiffs' counsel contacted counsel for the Federmans and requested that the Motion be withdrawn. *See* Dixon-Thayer Decl. Exh. B. Despite the clear authority cited in counsel's request, the Federmans declined to withdraw the Motion.

Since the Federmans raise a separate contract dispute that requires its own basis for jurisdiction, the Court does not have jurisdiction to decide the Federmans' Motion or to enforce the Settlement Agreement.[3]  As discussed below, this Court does not have ancillary jurisdiction to enforce the Settlement Agreement, because such jurisdiction was not intended by the parties or retained by this Court.  Thus, any attempt to enforce the Settlement Agreement must be raised in a separate action.  Moreover, the Federmans fail to show that a Federal Court would have jurisdiction to decide this "controversy," even if they had filed a separate action.  There simply is no basis for any finding that this Court has jurisdiction to enforce the Settlement Agreement where, as here, such jurisdiction was not requested by the parties or retained by the Court, and the Federmans are no longer parties to this Action.

1.    **The Court Does Not Have Ancillary Jurisdiction, Because The Parties' Did Not Request, And This Court Did Not Retain, Continuing Jurisdiction To Enforce The Settlement Agreement.**

This Court does not have ancillary jurisdiction – and the Federmans' assertion that this Court does is not supported by the facts or the law.  Ancillary jurisdiction may only exist "if the parties' obligation to comply with the terms

---

[3] While Federal Courts have inherent authority to enforce settlement agreements between parties where the claims have not yet been dismissed, *see e.g. Metronet Services Corp. v. U.S. West Communications,* 329 F.3d 986, 1013-1014 (9th Cir. 2003), no such continuing jurisdiction exists here, because all claims against the Federmans have been dismissed.

of the settlement agreement had been made part of the order of dismissal –

either by separate provision (such as a provision 'retaining jurisdiction' over

the settlement agreement) or by incorporating the terms of the settlement

agreement in the order." *William Keeton Enterprises, Inc. v. All American*

*Strip-O-Rama, Inc.,* 74 F.3d 178, 182 (9th Cir. 1996) (*quoting Kokkonen* 114

S. Ct. at 1677).

   The requirements for ancillary jurisdiction to enforce a settlement

agreement are strictly applied. *See Hagestad v. Tragesser,* 49 F.3d 1430, 1433

(9th Cir. 1995).  In *Hagestad*, the court presided over settlement negotiations

and stated that he "would act as a czar with regard to . . . the execution of the

settlement," but did not include a provision retaining jurisdiction in the order of

dismissal. *See id.*  The Ninth Circuit concluded that despite the court's

intention to do so, the court did not maintain continuing jurisdiction to enforce

the settlement agreement because the dismissal did not expressly reserve

jurisdiction or incorporate the terms of the settlement agreement. *See id.*  Thus,

in the absence of language that retains jurisdiction, jurisdiction is not retained.

   No jurisdiction-retaining language was included here.  Neither the

parties nor this Court sought this Court's continuing jurisdiction to enforce the

Settlement Agreement.  The Settlement Agreement does not request that this

Court maintain jurisdiction.  Instead, it contemplates that, in the event of a

purported breach, the parties will mediate the dispute before bringing an "action" to enforce the agreement. Settlement Agreement ¶ 8B (Beaman Decl. Exh. B). Thus, the Settlement Agreement reflects no intent that this Court retain jurisdiction. Similarly, the Order of Dismissal does not mention the Settlement Agreement or in any way purport to retain this Court's jurisdiction to enforce it. Stipulation for Dismissal, at 1-2 (Dixon-Thayer Decl. Exh. A).[4]

The Federmans' suggestion that ancillary jurisdiction is appropriate for the Court to "vindicate its authority" – by preventing Plaintiffs from pursuing their claims against the Association – is absurd on its face. The Federmans offer no explanation of how it would be a vindication of the Court's authority to prevent Western Sunview from pursuing its claims against the Association, where those claims were expressly reserved in the Settlement Agreement and the Court's Order of Dismissal. What the Federmans are really asking this Court to do is redraft the terms of the Settlement Agreement, which this Court has no authority to do.

---

[4] *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294 (7th Cir. 1995) – which the Federmans cite for the proposition that this Court has "supplemental jurisdiction" to enforce the Settlement Agreement – involved a Title VII action in which the court "specifically retained jurisdiction." *Id.* at 1301 n.7. Thus, *Baer* does not support the Federmans' position here.

**2.    This Court Is A Court of Limited Jurisdiction, And The Jurisdictional Requirements Are Not Met.**

Even if the Federmans had brought a separate action to enforce the Settlement Agreement (which they did not), they fail to make any showing that jurisdiction is proper in Federal Court.[5] This Court is a court of limited jurisdiction, and there is nothing suggesting that the jurisdictional prerequisites are met by this "controversy." Since there is no federal question, the Federmans must seek to implicate the Court's diversity jurisdiction, which requires complete diversity and an amount in controversy that exceeds $75,000. *See* 28 U.S.C. § 1332. There is no showing that the amount in controversy exceeds $75,000 here.

The Federmans do not contend that they have been "damaged" by Western Sunview's alleged conduct and therefore that they are entitled to monetary compensation. Instead, the Federmans seek to enjoin Western

---

[5] Paragraph 8F of the Settlement Agreement provides that "any action to enforce this Settlement Agreement shall be brought in the United States District Court for the District of Hawaii." Settlement Agreement ¶ 5 (Beaman Decl. Exh. B). Notwithstanding this language, this Court's jurisdictional prerequisites still must be met. *See O'Connor v. Colvin,* 70 F.3d 530, 532 (9th Cir. 1995).

Moreover, the Federmans have not even brought an "action." Indeed, the Settlement Agreement's express reference to "any action" demonstrates that the parties intended that any attempt to enforce the Settlement Agreement through the judicial system would be initiated by a separate action. There is no indication that the parties intended that a Court could enforce the Settlement Agreement in the absence of such an action, which is what the Federmans seek here.

13

Sunview from pursuing claims against the Association concerning the

Federmans' landscaping.  There is nothing to show that the requested relief has

a value exceeding $75,000.  *See Snow v. Ford Motor Co.*, 561 F.2d 787, 790

(9th Cir. 1997).

Not only have the Federmans not offered any evidence to support such a

finding of jurisdiction, the Federmans purported injury is so speculative and

uncertain that it would be impossible for the Court to determine whether the

amount in controversy exceeds $75,000.  *See Morrison v. Allstate Indem. Co.*,

228 F.3d 1255, 1262 (11th Cir. 2000).  In support of their request for an

injunction, the Federmans argue that without an injunction they may be injured

in one of the following ways:

> (1)  The Association, the Design Committee, or the
> County of Hawaii "might be coerced, threatened or
> intimidated by the Plaintiff." (Motion p. 4.);[6]
>
> (2)  "[T]hese other parties might not have the same
> incentive to defend their interest in future proceedings."
> (Motion p. 4.); and
>
> (3)  "[A]ny number of foreseeable or unforeseeable
> adverse consequences might flow from some erroneous
> factual finding in such a tribunal." (Motion p. 4).

---

[6] This unsupported assertion demonstrates the absurdity of the Federman's motion.
The notion that Western Sunview's claims against the Association should be
barred because it might "coerce" the Association, the Design Committee, or the
County of Hawaii into following and enforcing the relevant laws, rules, regulations
and agreements is preposterous.

The Federman's assertions of potential future harm are speculative, should have been contemplated at the time they entered into the Settlement Agreement, and do not support diversity jurisdiction. *See Morrison* 228 F.3d at 1262.

The parties did not request that this Court retain jurisdiction to enforce the Settlement Agreement, and this Court did not do so on its own. Thus, there is nothing to support a finding that this Court has jurisdiction (either ancillary – as the Federmans suggest – or diversity) to enforce the Settlement Agreement. The Motion therefore is jurisdictionally improper and should be denied.

**B.    Western Sunview Has Not Breached The Settlement Agreement By Pursuing Its Claims For Damages Against The Association.**

The Federmans' Motion is essentially a claim that Western Sunview breached the Settlement Agreement. Therefore, it is a separate action for breach of contract. *See O'Connor v. Colvin,* 70 F.3d 530, 532 (9th Cir. 1995). Here, the parties agreed that the Settlement Agreement would be "enforced pursuant to the laws of the State of Hawaii." Settlement Agreement ¶ 8F (Beaman Decl. Exh. B). Although the Federmans purport to seek enforcement of the Settlement Agreement, they devote very few lines in their Motion to a discussion of how Western Sunview allegedly breached that agreement. They also fail to cite any relevant Hawaii statute or case to support their position.

15

### 1.    The Settlement Agreement Expressly Allows Plaintiffs To Pursue Its Claim For Damages Against The Association.

The Settlement Agreement is clear and unambiguous.  The parties'
intentions are expressed by the highly negotiated terms that they used.  Under
Hawaii law, the court's principal objective in construing a contract is to
ascertain and effectuate the intention of the parties as manifested by the
contract in its entirety.  *See Brown v. KFC Nat'l Management Co.,* 921 P.2d
146, 159 (Haw. 1996).  The terms should be interpreted according to their
plain, ordinary and accepted use in common speech, unless the contract
indicates a different meaning.  *See id.*  If there is any doubt, the interpretation
which most reasonably reflects the intent of the parties must be chosen.  *See id.*
Where the contract is unambiguous and contains the entire agreement of the
parties, the court should look no further than the four corners of the agreement
to determine its meaning.  *See Hanagami v. China Airlines, Ltd.,* 978 P.2d
1139, 1143 (Haw. 1984).

Here, the Settlement agreement is fully integrated:

> This Agreement contains the entire agreement between
> the Settling Parties and supersedes all prior and
> contemporaneous agreements and understandings in
> connection therewith.

Settlement Agreement ¶ 8E (Beaman Decl. Exh. B).

The Settlement Agreement also unambiguously provides that Western Sunview claims against the Association are preserved.  At the end of the sentence setting forth the parties' agreement regarding claims about landscaping, the parties expressly agreed that:

> WSP and the Hands <u>shall be free to pursue a claim for</u> <u>damages only against the Bluffs Community Association,</u> Mauna Kea Properties, Inc., and Mauna Kea Development Corp. as pled in the Lawsuit.

Settlement Agreement ¶ 5 (Beaman Decl. Exh. B) (emphasis added).

Likewise, Paragraph 6B states:

> It is understood and agreed that the Settling Parties are not releasing, <u>but rather are expressly reserving, any</u> <u>claims against Mauna Kea Properties, Inc., Mauna Kea</u> <u>Development Corp., and The Bluffs at Mauna Kea</u> <u>Community Association (collectively, the "Remaining</u> <u>Defendants"), including without limitation the claims</u> <u>asserted by WSP and the Hands against the Remaining</u> <u>Defendants in the Subject Lawsuit.</u>

Settlement Agreement ¶ 6B (Beaman Decl. Exh. B) (emphasis added).  Thus, the Settlement Agreement unambiguously provides that Western Sunview can pursue the claims against the Association that currently are pending.

### 2.    Western Sunview Is Pursuing Claims Against The Association That Were Pled In The Lawsuit – As The Settlement Agreement Expressly Allows It To Do.

In the FAC, Plaintiffs asserted claims against the Association concerning the pool complex, palm trees and other objects included in the special setback area of the Federmans' lot.  *See e.g.*, FAC ¶¶ 12, 19, 21, 22, 23, 53, 54.  In

17

response to interrogatory requests, Plaintiffs also stated that that their claims

against the Association concerned palm trees and other structures on the

Federmans' property.  For example, Plaintiffs repeatedly stated:

> Defendants have violated the Declaration of Protective
> Covenants Conditions and Restriction for the Bluffs at
> Mauna Kea, The Design and Construction Requirements
> for Homes for the Bluffs at Mauna Kea and The Bluffs at
> Mauna Kea Homeowners Rules by installing palm trees
> and structures within the Special Setback Area.
> Defendants have also violated the November 19, 1991,
> Final Plan Approval issued by the County of Hawaii for
> the Bluffs at Mauna Kea and Special Management Area
> Use Permit Number 231, issued on December 30, 1985.

Plaintiff Western Sunveiw Properties, LLC's Second Amended Response to

Defendants Irwin Federman and Concepcion S. Federman's First Request For

Answers to Interrogatories ("Interrogatory Responses"), Responses 1, 2, and 3

(Beaman Decl. Exh. G).

It is unquestionably clear that the litigation against the Association

encompassed all of the objects – including landscaping – improperly allowed

to be installed in the Federmans' special setback area.  *See McGary v. City of

Portland,* 386 F.3d 1259, 162 (9th Cir. 2004); FED. R. CIV. PROC. 8(a).

The Federmans argue that, despite these allegations and Interrogatory

Responses, the claims against the Association have somehow morphed since

the Settlement Agreement – and that Plaintiffs are now pursuing claims that

were not "pled" in this litigation.  As discussed below, the Federmans are

18

pursuing a "gotcha" litigation strategy that should not be countenanced by this Court. Even a cursory review of Plaintiffs' pleadings in this case shows that the Federmans' assertions are baseless, disingenuous and are simply an attempt to re-write the Settlement Agreement. It has been clear since the beginning of this litigation that Plaintiffs objected to, pursued claims concerning and sought damages for all objects installed in the Federmans' special setback area – and particularly those objects that block, impair or restrict Plaintiffs' views. *See* e.g. Complaint, FAC (Beaman Decl. Exh. F), Interrogatory Responses (Beaman Decl. Exh. G). Plaintiffs' claims against the Association have not changed since the Settlement Agreement, and nothing that the Federmans argue in this Motion demonstrates otherwise.

> **3.    The Federmans Are Playing A Game Of "Gotcha" – Incorrectly Arguing That Their Counsel's Unexpressed Intent Is Somehow Controlling.**

The Federmans now argue that the Settlement Agreement did not mean that Plaintiffs could pursue their claims against the Association – not because of the Settlement Agreement says Plaintiffs are prohibited from doing so – but because the Federmans' counsel believed that essentially no claims continued to exist.

The Federmans' counsel admits that he knew that Western Sunview understood that the phrase "shall be free to pursue a claim for damages only

against the Bluffs Community Association" meant that Western Sunview

would not be limited in the pursuit of their damages claims in this action

against the Association. *See* Beaman Decl. ¶ 7 ("Plaintiffs' counsel Denelle

Dixon-Thayer advised me that Plaintiffs wanted to be able to continue to

pursue the claims they had pled against the Bluffs Community Association.")

However, Mr. Beaman states this was not "objectionable" to him because at the

time it was his belief that the claims were disposed of. *See id.* ("It was my

view at the time that Judge Ezra's orders essentially disposed of the 'claims as

pled' and that the Plaintiffs' request for a carve-out of such claims was not

objectionable because I expected that such claims would be 'dead on arrival' in

any event.")

Mr. Beaman's unexpressed view is irrelevant. Not only did Mr. Beaman

fail to explain his "view" to Plaintiffs' counsel (*see* Dixon-Thayer Decl. ¶ 5),

his view is wholly irrelevant to an agreement to which he is not a party and that

is clear on its face. *See Flores v. American Seafood,* Co., 335 F.3d 904, 910

(9th Cir. 2003) ("the intent of the parties must be ascertained from the contract

itself").[7]  Moreover, his "view" appears only to be a mistaken understanding or

---

[7] Even if this Court somehow had jurisdiction to hear the Federmans' motion, the matter could not be resolved without conducting an evidentiary hearing. *See Callie v. Near,* 829 F.2d 888, 891 (9th Cir. 1987) ("[T]he district court erred in failing to conduct an evidentiary hearing regarding the intent of the parties" before ruling on enforcement of settlement agreement.).

"expectation" of the effect of Judge Ezra's ruling – not some suggestion that

the Settlement Agreement does not mean what it says.[8]   Indeed, Mr. Beaman's

failure to express his understanding that any claims not already "disposed of"

were somehow barred  – despite the fact that he knew (or should have known)

that this understanding was contrary to Plaintiffs' – suggests that he sought to

lay a "gotcha" trap in order to prevent Western Sunview from getting the full

benefit of its bargain.

   The Federmans' attempt to play a game of "gotcha" is outrageous and

improper.  Where there is a misunderstanding as to a contract term, and one

party knew or reasonably should have known that the other party construed the

term in a particular fashion, the latter party's interpretation will control.  *See*

*Foundation Int'l, Inc. v. E.T. Ige Constr., Inc.,* 78 P.3d 23, 33 (Haw. 2003)

(citing RESTATEMENT (SECOND) OF CONTRACTS § 201(2) (1979)); *see also*

*Harris Corp. v. Giesting & Assocs., Inc.,* 297 F.3d 1270, 1273 (11th Cir. 2002)

("party who willingly and without protest enters into a contract with

knowledge of the other party's interpretation is bound by such interpretation

---

[8] The Federmans' attempt to ignore the plain language of the Settlement
Agreement and to rewrite it via declarations is not limited to the issue of whether
Western Sunview can bring its claim for damages against the Association.  The
Federmans also invent  a non-existent "understanding" that the vegetation can
grow unchecked, even though the plain language of the agreement is expressly to
the contrary, *i.e.*, it specifically refers to landscaping "in the condition that it exists
on the date of this agreement."  Settlement Agreement ¶ 5 (Beaman Decl. Exh. B).

and cannot later claim that it thought something else was meant"). Plaintiffs did not know about, and would not have agreed to, Mr. Beaman's interpretation that the Settlement Agreement left Western Sunview with <u>no</u> viable claims against the Association. Were this interpretation correct, there would have been no need for Western Sunview to expressly preserve such claims. The Settlement Agreement is clear, and the claims against the Association have not changed since the Settlement Agreement was executed. The Federmans attempt to suggest some other meaning or circumstance concerning the terms of the Settlement Agreement is belied by the Settlement Agreement and the Federmans' own arguments. The Federmans are bound by the terms of the Settlement Agreement – terms that Plaintiffs have not violated – and have no right to argue that Western Sunview cannot pursue a damages claim against the Association.

### C.    The Federman's Motion Should Be Denied Because It Was Brought for an Improper Purpose

The circumstances and the timing of the Federmans' Motion demonstrate that it was not filed in good faith. The Motion is obviously part of a concerted effort to assist the Association in its summary judgment briefing and to circumvent the Court-imposed page limits on that briefing. The Federmans filed the Motion on July 26, 2006, within minutes of the Association filing a response to Plaintiffs' Supplemental Opposition to The

22

Association's Motion for Summary Judgment.  The Federmans waited until July 26, 2006 to file the Motion even though they contend that Western Sunview breached the Settlement Agreement as early as January 2006. Moreover, the vast majority of the Federmans' motion, and the evidence included in support thereof, has nothing to do with the Settlement Agreement.[9] The Federmans' and the Association's gamesmanship should not be rewarded.

## IV.    CONCLUSION

For the foregoing reasons, the Federmans' Motion to Enforce Settlement Agreement should be denied.

DATED: August 7, 2006.


_____/s/_____

DENELLE DIXON-THAYER
TERRANCE M. REVERE

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC;
GUY HANDS; and JULIA HANDS

---

[9] Plaintiffs have addressed the substantive issues concerning the Plaintiffs' pleadings and evidence with respect to the Association's Motion for Summary Judgment in Plaintiffs' Opposition to the Association's Motion to Strike and in Plaintiffs' Reply to the Association's Response.  The arguments made by the Federmans (at pages 8 to 20 of their Motion) concerning Plaintiffs' pleadings and evidence are incorrect, merely gratuitous attempts to cast aspersions on Plaintiffs, and are not relevant to this Motion to Enforce.  Therefore, Plaintiffs will not repeat that discussion here.

23

## ATTORNEY CERTIFICATION

I have reviewed Plaintiffs' Opposition to the Federmans' Motion to Enforce Settlement Agreement (the "Opposition"). I hereby certify that each factual assertion made in the Opposition has evidentiary support.

DATED: August 7, 2006.

/s/
_____
DENELLE M. DIXON-THAYER

Attorneys for Plaintiffs WESTERN SUNVIEW PROPERTIES, LLC;GUY HANDS; and JULIA HANDS

42046\3001\507623.2

24