CHUN, KERR, DODD, BEAMAN & WONG,
a Limited Liability Law Partnership

ANDREW V. BEAMAN     #2914-0
LEROY E. COLOMBE     #3662-0
JOSHUA A. WISCH      #7816-0
745 Fort Street, 9th Floor
Honolulu, HI 96813
Telephone: (808) 528-8200
Facsimile: (808) 536-5869
E-mail: abeaman@ckdbw.com
        lcolombe@ckdbw.com
        jwisch@ckdbw.com

Attorneys for Defendants
IRWIN FEDERMAN and
CONCEPCION S. FEDERMAN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>               Plaintiffs,<br><br>  vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100, JANE DOES 1-100, DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>               Defendants. | Case No. CV03-00463 JMS/LEK<br><br>IRWIN FEDERMAN AND CONCEPCION S. FEDERMAN'S **REPLY MEMORANDUM** REGARDING THEIR MOTION TO ENFORCE SETTLEMENT AGREEMENT<br><br><br><br>Trial Date: **December 5, 2006** |

105293.3

IRWIN FEDERMAN AND CONCEPCION S. FEDERMAN'S REPLY MEMORANDUM
REGARDING THEIR MOTION TO ENFORCE SETTLEMENT AGREEMENT

### This Court Has Jurisdiction

This Court has inherent jurisdiction over the motion to enforce the settlement agreement because the action is still pending. **Every** federal court to consider the fact pattern presented here has determined that it has authority to enforce the settlement agreement. As the First Circuit explained:

> A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. If, at the time of the claimed breach, the court case already has been dismissed, the aggrieved party may bring an independent action for breach of contract. **If, however, the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement.**

Malave v. Carney Hospital, 170 F.3d 217, 220 (1st Cir. 1999) (emphasis added). This rule is a corollary of Rule 54(b) of the Federal Rules of Civil Procedure, which provides:

> . . . [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to . . . fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. **In the absence of such determination and direction,** any order or other form of decision, however designated, **which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action** . . . .

F.R.C.P. 54(b) (emphasis added). The Stipulation for Dismissal With Prejudice as to All Claims Against Federman Defendants

105293.3

2

entered herein on February 14, 2006 does not include a Rule 54(b) certification. The entire case has not been dismissed, so this Court has the authority to enforce the Settlement Agreement.

It is well established that the district courts have inherent jurisdiction to enforce settlement agreements. The Ninth Circuit has long "recognized a district court's inherent power to enforce a settlement agreement in a case pending before it." Metronet Services Corp. v. US West Communications, 329 F.3d 986, 1013-14 (9th Cir. 2003). The Circuit Courts of Appeal "have uniformly stated that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." Wilson v. Wilson, 46 F.3d 660, 664 (7th Cir. 1995). This power "falls within the court's role as supervisor of litigation," and does not require the filing of a new lawsuit or independent proof of subject matter jurisdiction. Id. Such a motion is "akin to a motion for summary judgment" that may be granted where, as here, there are no material facts in dispute. City Equities, Ltd. V. Lincoln Plaza Development Company, 22 F.3d 954, 958-59 (9th Cir. 1994). The Ninth Circuit explained:

> The practice of summary enforcement evolved for two reasons. First is the "high judicial favor" accorded the voluntary settlement of disputes. Second is the efficiency of having one court see litigation through to its conclusion, thereby avoiding duplication of effort.

Id., 22 F.3d at 957 (citation omitted).

The exception to this general rule created by the Supreme Court in <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) does not apply here because this case is still pending. In <u>Kokkonen</u>, all parties and all claims had been dismissed when respondent sought to reopen the dismissed suit and enforce the settlement agreement. The present case, in contrast, is still pending, and the order of dismissal as to Mr. and Mrs. Federman was interlocutory. This Court never lost jurisdiction and has the inherent power to enforce the settlement agreement.

All of the cases cited by Plaintiffs regarding this issue are distinguishable for that reason. In <u>O'Connor v. Colvin</u>, 70 F.3d 530 (9th Cir. 1995), <u>William Keeton Enterprises, Inc. v. A All American Strip-O-Rama, Inc.</u>, 74 F.3d 178 (9th Cir. 1996), and <u>Hagestad v. Tragesser</u>, 49 F.3d 1430 (9th Cir. 1995), the entire action had been dismissed and final judgment entered, and the suit was no longer pending when the motion to enforce the settlement agreement was filed.

In contrast, <u>Consolidated Coal Co. v. U.S. Dept. of the Interior</u>, 43 F.Supp.2d 857 (S.D. Ohio, 1999), was a situation like the case at bar, where some of the parties entered into a partial settlement agreement dismissing some but not all of the claims pled in the case, subject to a "reopener" that would be triggered under certain defined circumstances. The settled claims were dismissed, but there was no Rule 54(b) certification of finality and the case remained pending. The event triggering

the "reopener" occurred and one party filed a motion to enforce the settlement agreement. The court determined that it had jurisdiction to enforce the settlement agreement:

> In the Court's view, by focusing on *Kokkonen*, the parties have not addressed the correct issue. Although a stipulation of dismissal was . . . approved by the Court, that dismissal entry did not terminate the Court's jurisdiction . . . . Rather, . . . the dismissal order was clearly interlocutory.
>
> * * *
>
> [F.R.C.P. 54(b)] explicitly applies to the dismissal of all claims against a particular party, so long as claims against other parties remain for adjudication . . . **and to dismissals under Rule 41(a)(2) predicated upon a settlement agreement** . . . .
>
> [T]his Court concludes that it has the power to adjudicate the current dispute . . . because **it never lost jurisdiction** over the original dispute . . . . In other words, **where an order of dismissal is merely interlocutory, no reservation of jurisdiction over the parties' dispute is needed because jurisdiction has never been lost.**

*Id.*, 53 F.Supp.2d at 862-63 (citations omitted; emphasis added). The court ruled that it had jurisdiction to enforce the settlement agreement and scheduled the matter for further hearing on a disputed evidentiary issue.

Other district courts have reached the same conclusion. For example, in <u>Sadighi v. Daghighfekr</u>, 66 F.Supp.2d 752 (D. S.C. 1999), the court granted plaintiffs's motion to enforce the settlement agreement, finding <u>Kokkonen</u> inapplicable because no

order of dismissal was issued and the case remained on the court's docket when the motion to enforce was filed:

> . . . Defendants argue that this court is without jurisdiction to enforce the settlement agreement . . . .
>
> * * *
>
> Defendants' argument might win the day if this court had dismissed the case . . . . However, that did not happen . . . .

Id., 66 F.Supp.2d at 758. The court noted that "[t]he majority of circuits have uniformly stated that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a **case pending before it**." Id. (emphasis in original).

Other district courts reached the same conclusion in United States v. Certain Land Situated in the City of Detroit, Wayne County, Michigan, 178 F.Supp. 792, 797-98 (E.D. Mich. 2001) (since no final judgment adjudicating the rights and liabilities of all defendants was entered, court has authority pursuant to F.R.C.P. 54(b) to revise any orders previously entered); DBSI/TRI IV Limited Partnership v. United States, 2004 WL 2889750 at *2 (D. Or., Dec. 13, 2004, No. CV 98-1325-BR) (Kokkonen inapplicable to motion to enforce agreement between two of several parties); and The Brandner Corp. v. V-Formation, Inc., 2004 WL 1945761 (S.D.N.Y. March 4, 2004, No. 96 Civ. 3163 JSR).

An unreported case from the Northern District of Texas has a very similar fact pattern. American Tourmaline Fields v. International Paper Company, 1999 WL 325021 (N.D. Tex., May 19,

1999, No. CIV.A.3:96-CV-3363-D), a contract case filed against multiple defendants, was removed to the federal court on the basis of diversity of citizenship. Plaintiff settled with some but not all of the defendants. Included in the settlement agreement was an affirmative covenant by the Plaintiff "not to sue them for any acts or omissions arising out of the same nucleus of operative facts[.]" *Id.* at *1. Plaintiff then dismissed its claims against the settling defendants.

Plaintiff threatened to file a new state court lawsuit against the settling defendants, who sought an "emergency injunction" preventing plaintiff from filing the state court lawsuit. With respect to the jurisdictional issue, the court held that it had subject matter jurisdiction to enforce the terms of the agreement. Citing <u>Kokkonen</u>, the court ruled:

> It is only after the court dismisses the suit in its entirety that the court must have an independent basis for jurisdiction to enforce a settlement agreement.[1]

*Id.* at *2.

The Federmans' research has disclosed **no** case where any federal court determined that it lacked jurisdiction to enforce a settlement agreement before the entire action was dismissed.

This Court has already given careful and thorough consideration to the issue of whether it has subject matter

---

[1] The Texas court declined to issue the injunction, holding it was forbidden to do so by 28 U.S.C. §2283, the Anti-Injunction Act. In the present case, however, the claims that violate the agreement have been made in this court and not in state court, so the Anti-Injunction Act is not implicated.

jurisdiction and concluded that it does have diversity jurisdiction. See Order Denying Plaintiffs' Objections to Order Granting Defendants' Motion for Reconsideration entered herein on August 19, 2004. This action is still pending, so this Court has jurisdiction to enforce the Settlement Agreement.

### Plaintiffs Breached the Settlement Agreement

It is well settled, in Hawaii and elsewhere, that courts have the authority to enforce contracts, including settlement agreements. See, e.g., Amantiad v. Odum, 90 Haw. 152, 162-64, 977 P.2d 160, 169-71 (Haw. 1999).

As Plaintiffs admit (at page 16 of their opposition), the Court must look at the "four corners" of the Settlement Agreement (attached as Ex.B to the motion to enforce) and the plain language thereof to determine its meaning.

Plaintiffs rely on the "carve-out" in section 5 of the Settlement Agreement ("WSP and the Hands shall be free to pursue a claim for damages only . . . as pled in the Lawsuit") and suggest that their First Amended Complaint should be "read liberally" so as to refer to "all landscaping on the Federman lot that obstructs Western Sunview's views and/or is inconsistent with the governing documents." See opposition at p. 4. But it is the reading of the Settlement Agreement, not the First Amended Complaint, that is at issue here. The evidence is uncontroverted that the claims concerning the Federmans' landscaping that the parties understood to have been "pled in the Lawsuit" at the time of the Settlement Agreement were defined by Plaintiffs' answers

to the Federmans' interrogatories to mean the three palm trees in the southwest corner of Lot 6.  It is also uncontroverted that Plaintiffs failed to disclose to the Federmans that they intended to pursue the claims pertaining to their landscaping that are now at issue.[2]

Plaintiffs were ordered **twice** to respond completely to the interrogatories propounded by Federmans.[3]  Plaintiffs swore that the "illegal objects" of which they complained were "a pool, spa, bar, mechanical room, **palm trees on the South side of the Federmans' lot that are within the setback area**, a large expanse of a concrete deck stairs and other structures appurtenant to the objects listed above."[4]  Plaintiffs cannot simply wave a magic wand and turn three "palm trees on the South side of the

---

[2]     See Declaration of Andrew V. Beaman filed with the motion for enforcement on July 26, 2006 at ¶¶5-7.

[3]     See Order Granting Defendants Irwin Federman and Concepcion S. Federman's Motion to Compel Answers to Interrogatories, Filed November 7, 2003 entered herein on December 30, 2003 at p. 2, ¶1 ("Plaintiff Western Sunview Properties LLC is hereby ORDERED to serve upon the Federmans' counsel on or before 4:00 p.m. on December 29, 2003, **complete** answers to Defendants Irwin Federman and Concepcion S. Federman's First Request for Answers to Interrogatories to Plaintiff Western Sunview Properties, LLC") (emphasis added) and Order Affirming Magistrate Judge's December 30, 2003 Order Granting Defendants Irwin Federman and Concepcion S. Federman's Motion to Compel Answers to Interrogatories, Filed November 7, 2003 entered herein on March 5, 2004 at p. 1 ("the Court AFFIRMS the Magistrate Judge's December 30, 2003 Order") and pp. 12-13 ("this court agrees with the Magistrate Judge's order in finding no substantial justification on the part of Plaintiff").

[4]     See Plaintiff Western Sunview Properties, LLC's Second Amended Response to Defendants Irwin Federman and Concepcion S. Federman's First Request for Answers to Interrogatories to Plaintiff Western Sunview Properties, LLC Served herein on July 30, 2004 (Ex.G to the motion to enforce) at p. 5, no. 5 (emphasis added).

Federmans' lot that are within the setback area" into "many more palm and other trees."

Plaintiffs cite section 6.B of the Settlement Agreement, which addresses the scope of the mutual releases exchanged by the parties. However, section 6.B is not implicated here. Section 6.B defines the claims released by the Settlement Agreement. Section 5, on the other hand, is a specific affirmative covenant that the parties shall "make no claim" related to the improvements and landscaping on their respective properties. Section 5 is independently enforceable by the parties. Section 5 addresses the specific question of claims related to the existing improvements and landscaping **on the parties' properties**, as opposed to the more general releases contained in section 6.B. It is generally accepted that the more specific provisions in an agreement control over more general provisions. See <u>Kaiser Hawaii Kai Development Co. v. Murray</u>, 49 Haw. 214, 227, 412 P.2d 925, 932 (Haw. 1966). Therefore section 5 is the operative provision here.

Plaintiffs suggest (at page 9 of their opposition) that Plaintiffs and Federmans agreed to mediate any dispute arising from the Settlement Agreement. What the Settlement Agreement actually provides is:

> [i]f there are any claims, issues or disputes between the Settling Parties regarding this Agreement . . . such claims, issues or disputes **may** be referred to and mediated by Eugene Lynch of JAMS or . . . such other mediator associated with JAMS as is mutually agreeable to the Settling Parties.

105293.3                           10

Settlement Agreement at § 8.J (emphasis added). The Settlement Agreement also provides "any action to enforce this Settlement Agreement **shall** be brought in the United States District Court for the District of Hawaii." Settlement Agreement at § 8.F.

### The Reinhardt and Suyemura Declarations Should Be Stricken from the Record

In addition to being in violation of the Settlement Agreement, Plaintiffs' filings on the subject of the "additional trees" are false, misleading and not based on any admissible evidence. Plaintiffs practically acknowledge as much: "Mr. Reinhardt explained he could not conclusively determine the number of trees unless he visited the property." *See* Plaintiffs' opposition to Association's motion to strike at n.10. Indeed, Plaintiffs have admitted that Mr. Reinhardt's original declaration was in error:

> Mr. Reinhardt . . . testified that from the photograph it appeared there were two more palm trees in that area, and the Association claims that those trees are on the Reddy property. **After having viewed the property in person** . . . **Mr. Reinhardt's office** [apparently in the person of Janelle Suyemura] **would now agree**.

*See id.* at n.14. Mr. Reinhardt should not have sworn to, and Plaintiffs should not have filed, a declaration that misrepresented the facts. Yet Plaintiffs -- even though they now admit that Mr. Reinhardt was wrong -- have refused the Federmans' requests to withdraw Mr. Reinhardt's declaration. Similarly, Plaintiffs have admitted to misstating the facts in their briefing:

105293.3                              11

> Western Sunview inadvertently stated at page 30 [of its January 4, 2006 opposition] that additional trees were installed after Judge Ezra ruled on the Motion for Reconsideration. . . . Plaintiffs intend to file an errata correcting this statement.

See id. at n.2. Yet no such errata has been filed, to Federmans' knowledge.

Even the more recent declarations of James Reinhardt (filed July 17, 2006) and Janelle Suyemura (filed August 8, 2006) offer no foundation for the conclusory statements set forth therein. Mr. Reinhardt admits that, "[i]n order to determine the exact number of new trees in the special setback area, I would have to visit the site, lay out the special setback line and the property lines, and examine the location of the new trees." 7/17/06 Reinhardt Decl. at ¶6. Surely Ms. Suyemura, too, would have to go through the same exercise to determine the exact number of trees in the Federmans' special setback area -- yet her declaration does not say anything to indicate that she did so. Indeed, Ms. Suyemura's declaration raises more questions than it answers: Ms. Suyemura does not indicate which plans and drawings she "observed," whether she reviewed the Federman's approved landscaping plan, whether she took it with her when she visited Plaintiffs' property, whether she took any photographs, whether she made any notes, or how she was able to determine on which lot any particular tree is located (as well as whether or not it is within or outside of the special setback area). Ms. Suyemura's vague statement (at ¶6 of her declaration) that "there is a significant impact on the ocean/coastal view due to the palm

trees planted on Lots 6, 7, and 8" in fact suggests that she was unable to ascertain on which lot such trees were located.

None of these declarations meets the requirements for admissible evidence set forth in Rules 602 and 702 of the Federal Rules of Evidence.

After filing three separate declarations and a number of briefs regarding the "new trees," Plaintiffs remain unable -- or unwilling -- to indicate how many and which trees are at issue. Given Plaintiff's record of gamesmanship, it is apparent that the Reinhardt and Suyemura declarations are intentionally misleading as well as violative of the Settlement Agreement and they should therefore be stricken from the record.

### Conclusion

Plaintiffs promised to make no claim related to the Federmans' trees, quickly breached that agreement, misrepresented the facts to this Court in so doing, and now argue that the Federmans should have complained sooner. It is Plaintiffs' conduct -- not Federmans' -- that is outrageous.

By now it must be clear to the Court that Plaintiffs' word is suspect, as are their factual representations. With each new filing, Plaintiffs invent new claims, present questionable "evidence," and create new "expert opinions." As each misrepresentation is exposed, Plaintiffs point to the fine print -- where the expert admits he really did not know what he was talking about -- and then promise to make corrective filings,

which never appear.  Plaintiff's opposition to Federmans' motion is just one more example of Plaintiffs' pattern of bad faith.

**Three times** this Court has sanctioned Plaintiffs for their conduct in this litigation -- and yet it continues. Plaintiffs appear to have no more respect for this Court's orders than they do for the Settlement Agreement.  Mr. Hands is a sophisticated litigant with a very deep checkbook, and it appears that he views each decision in this litigation merely in terms of risk and reward; so long as all he has at risk is a few thousand dollars in fees, his behavior will not change.

Under these circumstances, the policy of the federal courts to accord "high judicial favor" to settlement of disputes is best served, not by giving Plaintiffs yet another chance, and not by imposing certification requirements on counsel, but by simply enforcing the Settlement Agreement (after careful review of the admissible evidence and faithful application of the rules) and imposing sanctions that are sufficient to deter any future breach thereof.

Mr. and Mrs. Federman respectfully request that the Court grant the motion and issue such sanctions as it determines to be appropriate, including but not limited to striking the declarations of James Reinhardt and Janelle Suyemura from the record herein.

DATED: Honolulu, Hawaii, August 10, 2006.

/S/ ANDREW V. BEAMAN
ANDREW V. BEAMAN
LEROY E. COLOMBE
JOSHUA A. WISCH
Chun, Kerr, Dodd, Beaman & Wong,
A Limited Liability Law Partnership

Attorneys for Defendants
IRWIN FEDERMAN and
CONCEPCION S. FEDERMAN