IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>　　　　　Defendants. | Civil No. 03-00463 JMS LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION<br><br><br><br><br><br><br><br><br><br><br>TRIAL:  December 5, 2006 |

## MEMORANDUM IN SUPPORT OF MOTION

Pursuant to Federal Rule of Civil Procedure Rule 16(b) and to Judge Seabright's Orders of March 6, 2006 and July 6, 2006, Plaintiffs respectfully move for an order allowing them to take depositions of Bettina Lum, Terence Yamamoto, and Thomas Stifler.[1]

---

[1]　　Plaintiffs do not at this time, but reserve the right to later, seek sanctions

## INTRODUCTION

The MK Defendants committed fraud by using so-called "landscaping credits" to give secret discounts to certain purchasers of lots at The Bluffs, and then by falsely representing that those purchasers paid more for the lots than they actually did. To further its scheme, the MK Defendants had purchasers who received the "landscaping credits" sign confidentiality agreements in which they promised to keep the "credits" a secret, so that future prospective purchasers like Plaintiffs would be misled as to how much was actually paid.

Special Master McConnell and Judge Seabright both ordered the MK Defendants to produce documents regarding the "landscaping credits" and confidentiality agreements that would otherwise be protected by the attorney-client privilege, because the crime-fraud exception to the attorney-client privilege applied. Judge Seabright ruled that the "MK Defendants used the services of lawyers to enable them to commit what the MK Defendants 'knew or reasonably should have known' to be a fraud," and that the MK Defendants "cannot rely on the attorney-client privilege to refuse to provide plaintiffs with documents relating to landscaping credits or confidentiality agreements that are otherwise subject to

---

against Mauna Kea Properties, Inc. and Mauna Kea Development Corp. (collectively, the "MK Defendants") for the fees and costs associated with bringing this Motion and for the fees and costs associated with taking depositions that would have unnecessary had the MK Defendants produced non-privileged, responsive documents in a timely manner.

discovery in this matter." Order Denying Appeal From Amended Order Adopting Special Master's Discovery Order Filed October 24, 2005 (March 6, 2006) ("Judge Seabright's Order" or "3/06/06 Order") (attached as Exhibit ("Exh.") 1 to the Declaration of Terrance M. Revere ("Revere Decl.") filed herewith) at 11-12.

Judge Seabright's Order was not entered until after the discovery cutoff date. After the Order was entered, the MK Defendants produced over 400 pages of documents. These productions included numerous documents for which no colorable claim of privilege could ever have been made, including documents that evidence no attorney involvement and/or that were sent to third parties. These documents – many of which Mauna Kea failed to even put on a privilege log – should have been produced long ago.

The MK Defendants' failure to produce these documents in a timely manner prejudiced the Plaintiffs. For example, the MK Defendants' recently-produced documents directly refute arguments that the MK Defendants made in their summary judgment briefing, including the MK Defendants' argument that the purchase price of lots at The Bluffs was the list price – not the purchase price minus the so-called "landscaping credit" – as the MK Defendants' belatedly-produced documents prove to be the case. In addition, some of the belatedly-produced documents are relevant not only to Plaintiffs' claims against the MK Defendants, but also to claims that Plaintiffs asserted against other parties – some

of which have been dismissed.   After hiding the ball by withholding non-privileged, responsive documents, the MK Defendants now attempt to hide behind the discovery cutoff date.   The MK Defendants' recently-produced documents show that Ms. Lum and Mr. Yamamoto (the MK Defendants' attorneys) and Mr. Stifler (the former President of Mauna Kea Realty) all were involved in the MK Defendants' secret discount scheme.   Plaintiffs requested that the MK Defendants agree to allow Plaintiffs to depose these three people, but the MK Defendants refused.   *See* Revere Decl. Ex. 2.

The Court should allow Plaintiffs to take the depositions of Ms. Lum, Mr. Yamamoto, and Mr. Stifler for at least four reasons:

First, trial is almost four months away.   The taking of these three depositions will leave the parties ample time to prepare for trial.

Second, the three people that Plaintiffs seek to depose all were agents of the MK Defendants at the time the secret discount scheme was created and implemented.   Thus, the MK Defendants will not be surprised by their testimony and allowing the depositions would not prejudice the MK Defendants.

Third, prior to the entry of Judge Seabright's Order, it would have been futile for Plaintiffs to seek to depose Ms. Lum and Mr. Yamamoto, as the MK Defendants would have asserted attorney-client privilege grounds to block their testimony.   Judge Seabright did not enter his Order until after the discovery cutoff

date.  To allow the MK Defendants to now rely on the discovery cut-off date to block the testimony would substantially diminish the scope of Judge Seabright's Order.  It also would be unfair and prejudicial to Plaintiffs to deny them pre-trial access to relevant, non-privileged information that is available to the MK Defendants.

Fourth, many of the clearly non-privileged documents that the MK Defendants produced after the discovery cutoff date were sent to or from Mr. Stifler.  The MK Defendants cannot justifiably withhold such clearly non-privileged documents until after the discovery cutoff date and then complain when Plaintiffs want to depose Mr. Stifler based on information contained in those documents.  To deny Plaintiffs the opportunity to depose Mr. Stifler would not only be unfair and prejudicial to Plaintiffs, it would also serve to reward the MK Defendants' gamesmanship and discovery abuses.

## FACTUAL AND PROCEDURAL BACKGROUND

### The MK Defendants Used Attorneys To Assist Them In Committing What They "Knew Or Reasonably Should Have Known" To Be Fraud.

To facilitate the sale of lots at The Bluffs, the MK Defendants gave secret discounts in the form of "landscaping credits" to certain purchasers.  The MK Defendants did not require purchasers to use the so-called "landscaping credits" for landscaping.  These so-called "landscaping credits" also were not reflected in the purchase prices listed in the MK Defendants' Price List, or in the purchase

prices reported to the State Bureau of Conveyances.  The MK Defendants' own expert, Byron Ganges, testified that the MK Defendants' conduct as to the so-called "landscaping credits" was "deliberately misleading."  *See* 3/06/06 Order (Exh. 1) at 10.

To conceal the "landscaping credits" from prospective future purchasers, the MK Defendants had purchasers who received them sign confidentiality agreements in which the "landscaping credits" were the only thing required to be kept confidential.

Judge Seabright found that in employing "[a] Honolulu law firm [Price Okamoto Himeno & Lum] [to assist] in drafting the documents," "the MK Defendants used the services of lawyers to enable them to commit what the MK Defendants 'knew or reasonably should have known' to be a fraud."  3/06/06 Order (Exh. 1) at 2, 11.  Ms. Lum and Mr. Yamamoto were the main two attorneys who assisted the MK Defendants with the "landscaping credits" and the confidentiality agreements.  Mr. Mielcke – the former President of Mauna Kea Properties – testified that the so-called "landscaping credits" were discussed with Ms. Lum, and that she "drafted the confidentiality agreement[s]."  Revere Decl. Exh. 3 (Mielcke Depo.), at 56:18-20.  The MK Defendants' recently-produced documents further show that Mr. Yamamoto was significantly involved in the MK Defendants' secret discount scheme – his name appears on over 40 of the recently-

produced documents.  *See, e.g.*, Revere Decl. Exh. 4.

The MK Defendants recently-produced documents further show that Mr. Stifler – the former President of Mauna Kea Realty – was significantly involved in the secret discount scheme.  His name appears on over 50 of the recently produced documents.  *See. e.g.*, Revere Decl. Exhs. 5, 6.

**After Special Master McConnell Stated By Email That He Would Order Production Of Attorney Documents, Judge Ezra Stayed All Deadlines In The Case Pending Mediation.**

After it became clear that attorneys played a role in the MK Defendants' secret discount scheme, Plaintiffs moved for an Order requiring production of attorney documents under the crime-fraud exception to the attorney-client privilege.  Plaintiffs sought documents relating to:  (1) the MK Defendants' secret discounts or so-called "landscaping credits;" and (2) the confidentiality agreements that the MK Defendants used to conceal their secret discounts.

Special Master McConnell heard Plaintiffs' motion on May 16, 2005.  That same day, Special Master McConnell sent the parties an email, stating that he was "ordering that documents between MK and its attorneys related to the[] [landscaping credit and confidentiality] agreements be produced."  Revere Decl. Exh. 12 at 1.  At the time, the discovery cutoff date was June 24, 2005, or over a month away.  Plaintiffs therefore had time to review the attorney documents, and to seek the depositions of any attorneys who those documents might reveal to have

assisted the MK Defendants in perpetrating their fraud.

Two days later, however, Judge Ezra ordered the parties to mediate their dispute, and stayed all deadlines in the case pending the mediation.  Judge Ezra's Order was formally entered on May 23, 2005.  *See* Order (entered May 23, 2005). To respect Judge Ezra's Order, Plaintiffs refrained from submitting to Special Master McConnell a proposed order that would formalize the order stated in Special Master McConnell's email of May 16 – *i.e.*, a proposed order that would formally require the MK Defendants to produce the attorney documents.

## After The Stay Was Lifted, Special Master McConnell Formally Ordered The MK Defendants To Produce Attorney-Client Documents.

On October 14, 2005, after the stay was lifted, Special Master McConnell issued a formal order requiring the MK Defendants to produce the documents. Special Master McConnell found that "it plainly appears that the confidentiality and landscape credit agreements are at issue with respect to Plaintiffs' fraud and misrepresentation claims and that the crime/fraud exception to the privilege is applicable."  Revere Decl. Exh. 7 at 3.  Thus, Special Master McConnell ordered the MK Defendants to produce documents "between Mauna Kea and its attorneys related to confidentiality agreements and landscape credits . . . ."  *Id.*

## After Extending The Discovery Cutoff Date And Setting Trial For Approximately Two Months After The Cutoff, This Court Adopted The Special Master's Order Without Review.

On October 19, 2005, this Court extended the discovery cutoff to January

13, 2006 and set the trial date as March 14, 2006 – or approximately two months after the discovery cutoff.

On October 24, 2005, this Court adopted Special Master McConnell's order without review, allowing an appeal to Judge Seabright. The MK Defendants filed a notice of appeal on November 1, 2005.

**In Their Summary Judgment Briefing, The MK Defendants Made Arguments That Are Directly Contradicted By Documents They Later Produced.**

The MK Defendants moved for summary judgment two days later. In one of their summary judgment briefs, they made at least two arguments that are directly contradicted by documents they later produced.

First, the MK Defendants argued that the list price of "$3,000,000 . . . was indeed the 'purchase price'" of the Federman's lot – not the $2,550,000 dollars that the Federmans actually paid (the list price minus the secret discount). *See* MK Defendants' Motion for Summary Judgment Based on Failure to Prove Damages (November 3, 2005) at 17. This argument is contradicted by documents the MK Defendants produced in July 2006, which show that, at the time of the sales, the MK Defendants regarded the purchase price of the lots to be the list price minus the secret discount – the very position the MK Defendants argued against on summary judgment.[2]

---

[2]    For example, the recently-produced documents show that Mauna Kea Realty was involved in a dispute with MacArthur & Company regarding whether the 3%

Second, the MK Defendants argued on summary judgment that Plaintiffs had "constructive notice" of the secret discounts, because another broker in the office of Plaintiffs' real estate agent was the broker for an owner who previously received a discount. *See* MK Defendants' Motion for Summary Judgment Based on Failure to Prove Damages (November 3, 2005) at 25. Just days before the summary judgment hearing – after Plaintiffs filed their Opposition – the MK Defendants produced documents showing that they required this other agent to keep confidential her knowledge of the discount. *See* Revere Decl. Exh. 9; Exh. 10. Thus, at the time the MK Defendants were arguing that Plaintiffs had "constructive notice" of the secret discounts, the MK Defendants were withholding documents that refuted that argument.

**After The Discovery Cutoff Date, Judge Seabright Denied The MK Defendants' Appeal And Ordered The MK Defendants To Produce Attorney-Client Documents.**

On March 6, 2006 – almost two months after the January 13, 2006 discovery cutoff date – Judge Seabright denied the MK Defendants' appeal of Special Master McConnell's crime-fraud ruling and ordered the MK Defendants to produce

---

commission for Lot 12 should be based on the list price of $2,500,000 (which would be a $75,000 commission) or the list price minus the secret discount (which would be a $60,000 commission). *See* Revere Decl. Exhs. 5, 8. Kathrin Kohler of Mauna Kea Realty stated that "the commission is 3% of the purchase price, and we know what the purchase price is." *Id.* Ex. 8 (emphasis added). In going on to state that the commission was $60,000, Ms. Kohler established that, at the time of the sale, the MK Defendants regarded the purchase price to be the list price minus the secret discount. *Id.*

attorney-client documents relating to the so-called "landscaping credits" and confidentiality agreements. *See* 3/06/06 Order (Exh. 1).

**After Judge Seabright's Order, The MK Defendants Produced Previously Withheld Documents – Many Of Which Are Clearly Non-Privileged – That Are Relevant Not Only To Plaintiffs' Claims Against The MK Defendants, But Also To Claims That Plaintiffs Asserted Against Other Parties.**

Since Judge Seabright's Order, the MK Defendants have produced previously withheld documents that are directly relevant to Plaintiffs' claims. The MK Defendants most recent production was on July 3, 2006 – almost four months after entry of Judge Seabright's Order.

No colorable claim of privilege ever existed for many of the documents contained in the MK Defendants' recent production. For example, many of these documents were sent to or from third parties – including communications between the MK Defendants (or their agents) and real estate agents for another owner. *See, e.g.*, Revere Decl. Exhs. 6, 8. Some of the documents also evidence no attorney involvement whatsoever. *See, e.g.*, *id.* Thus, even if the crime-fraud exception did not apply (which it does), these documents would not be privileged.

Some of these clearly non-privileged documents are relevant not only to Plaintiffs' claims against the MK Defendants, but also to claims that Plaintiffs asserted against third parties. For example, the July 3, 2006 production contained a letter from Ms. Kohler, a broker for Mauna Kea Realty, to the real estate agent for the Giffords. In this letter, Ms. Kohler stated that "we know what the purchase

price is" – and then showed that the MK Defendants regarded the purchase price as the list price minus the secret discount *See, e.g.* Revere Decl. Exh. 8. This documents is relevant not only to Plaintiffs claims against the MK Defendants, but also was relevant to Plaintiffs' allegation that the Federmans were part of a conspiracy to commit fraud. Plaintiffs settled with the Federmans well before the MK Defendants produced this document.

Indeed, at least one clearly non-privileged document that the MK Defendants belatedly produced is directly relevant to claims of Plaintiffs' that have been dismissed. For example, on July 3, 2006, the MK Defendants produced an October 1997 letter from Mr. Stifler, the former President of Mauna Kea Realty, to a real estate agent for the Giffords, which stated that:

> [T]he special setback areas are proposed to be maintained in their natural state. In addition, <u>there are to be no large plants or trees in the setbacks that might interfere with the views of the neighboring lot owners</u>. In other words, the setbacks are designed to protect the ocean views of all the homeowners.

Revere Decl. Exh. 11 (emphasis added). This document clearly establishes the developer's intent to prohibit landscaping that obstructs views in the special setback area. Plaintiffs, however, did not have the benefit of this document when Judge Ezra ruled that Plaintiffs had no claim against the Federmans based on two or three trees that the Federmans installed in the special setback area, which Plaintiffs maintain obstruct their views. *See* Order on Reconsideration (Feb. 22,

2005) at 23.[3]  Plaintiffs also did not have the benefit of this document when Judge

Seabright relied on Judge Ezra's ruling in deciding that the law of the case doctrine

bars other aspects of Plaintiffs' claims against the Association as well.  *See* Order

Granting The Bluffs at Mauna Kea Community Association's Motion for

Summary Judgment (June 21, 2006), at 12-15.   Thus, the MK Defendants'

withholding of clearly non-privileged documents implicates not only Plaintiffs'

claims against the MK Defendants, but also prejudiced Plaintiffs' cases against the

Federmans and the Association.

**The Trial Date Is Almost Four Months Away – Or Almost Two Months Longer Than The Period Between The Discovery Cutoff Date And The Previous Trial Date.**

On July 6, 2006, Judge Seabright moved the trial date to December 5, 2006.

Thus, trial is still months away.  The period between now and the trial date also is

almost two months longer than the period between the discovery cutoff date and

the previous trial date of March 14, 2006.

**ARGUMENT**

"The purpose of a discovery cutoff date is to protect the parties from a

---

[3]      Although Plaintiffs' claims against the Association have been dismissed as to two or three trees and other "improvements" in the special setback area, Western Sunview still has claims pending against the Association based upon other landscaping in the special setback area.  Mr. Stifler's 1997 letter – as well as his understanding that the Design Requirements, as promulgated, prohibit landscaping that interferes with views from being installed in the special setback area – are directly relevant to these pending claims.

continuing burden of producing evidence and to assure them adequate time to prepare <u>immediately</u> before trial." *Whittaker Corp. v. Execuair Corp., EMC*, 736 F.2d 1341, 1347 (9th Cir. 1984) (emphasis added).   Federal Rule of Civil Procedure 16(b) allows for modifications to the discovery cutoff date "upon a showing of good cause."  FED. R. CIV. P. 16(b).  Local Rule 16.3 provides that "[u]nless otherwise ordered, all discovery must be completed no later than thirty (30) days prior to the scheduled trial date."

**Allowing The Three Depositions Would Leave The Parties With Ample Time To Prepare For Trial.**

Here, the trial date is still months away.  Plaintiffs are <u>not</u> asking to change the discovery cutoff.  Plaintiffs merely request to take three depositions based on (1) the post cutoff date ruling that the crime-fraud exception applies; and (2) documents produced by the MK Defendants after the discovery cutoff date, many of which should have been produced earlier.   Even assuming that the MK Defendants were not estopped from relying on the discovery cutoff date – which they are based upon their failure to produce clearly non-privileged, responsive documents prior to that date – allowing these depositions would still leave the MK Defendants with more than ample time to prepare for trial.

**Since The MK Defendants Will Not Be Surprised By The Testimony Of Its Three Agents, Allowing The Depositions Would Not Prejudice The MK Defendants.**

All three of the proposed deponents were agents of the MK Defendants

when the secret discount scheme was created and implemented:  Ms. Lum and Mr.

Yamamoto were the MK Defendants' attorneys; Mr. Stifler was the President of

Mauna Kea Realty.     All three participated in the development and/or

implementation of the secret discount scheme.  Since all three people were agents

of the MK Defendants at the time of the events in question, the MK Defendants

will not be surprised by their testimony.  Thus, the MK Defendants cannot claim

that they would be prejudiced by allowing the three depositions, especially where,

as here, trial is almost four months away.

**Good Cause Exists For Allowing Plaintiffs To Take Ms. Lum's And Mr. Yamamoto's Depositions.**

**The MK Defendants Cannot Rely On The Attorney-Client Privilege In Objecting To The Depositions.**

Judge Seabright found that "[a] Honolulu law firm assisted the MK

Defendants in drafting" documents that Plaintiffs submit constitute evidence of the

MK Defendants' fraud.  3/06/06 Order (Exh. 1) at 2.  Plaintiffs requested to take

the depositions of two lawyers at that firm who appear to have been most involved

with the confidentiality agreements and secret discount scheme – Bettina Lum and

Terence Yamamoto.  The MK Defendants refused.  *See* Revere Decl. Exh. 2.

Judge Seabright found that:

> the MK Defendants used the services of lawyers to enable them to
> commit what the MK Defendants "knew or reasonably should have
> known' to be a fraud.  Coupling the landscaping credits with the
> confidentiality agreements cloaked the true selling price of the lots in

secrecy.  Future buyers would be misled.

. . . . Although a credit standing alone may be legitimate, a substantial credit coupled with a continuing obligation to maintain confidentiality is not legitimate in the court's view.

*Id.* at 11.  Judge Seabright therefore ruled that "[t]he MK Defendants cannot rely on the attorney-client privilege to refuse to provide plaintiffs with documents relating to landscaping credits or confidentiality agreements that are otherwise subject to discovery in this matter."  *Id.* at 11-12.

Since the MK Defendants cannot rely on the attorney-client privilege in refusing to provide Plaintiffs with such documents, it follows that the MK Defendants also cannot rely on the attorney-client privilege in refusing to allow depositions on the same issues.

**The MK Defendants Should Not Be Allowed To Rely On The Discovery Cutoff Date In Objecting To The Depositions, Because It Would Have Been Futile For Plaintiffs To Notice The Depositions Prior To That Date.**

Prior to Judge Seabright's ruling, the MK Defendants instructed their witnesses not to answer questions concerning communications with Ms. Lum or other attorneys in her office.  Mr. Ing specifically instructed Mr. Mielcke not to answer such questions:

Q.     Okay.  Do you recall if Ms. Lum or anyone from her office expressed any concern about the legality of the landscape credits?

MR. ING:   Object to the form of the question.  Don't answer that. It's a privileged communication.

. . . .

16

MR. ING:   If you're going to ask him about his discussions with Tina or other attorneys in that office, then the answer is, yes, I'm going to instruct him not to answer.

Revere Decl. Exh. 3 (Mielcke Depo.) at 79:7-21.  As these remarks establish, it would have been futile for Plaintiffs to notice depositions of Ms. Lum or anyone from her office prior to having received an order that the crime-fraud exception applies.

Furthermore, Plaintiffs could not have been expected to know which other attorney(s) in Ms. Lum's office it would be most fruitful to depose until after Plaintiffs received the attorney-client documents – which also did not happen until after the discovery cutoff date.  In seeking to depose Ms. Lum and Mr. Yamamoto, Plaintiffs have targeted their requests to attorneys who the MK Defendants' recently produced documents show were clearly involved in the MK Defendants' perpetration of fraud.   Plaintiffs should not be penalized for refraining from throwing a wider net in the absence of such confirmation.

**It Would Be Unfair And Prejudicial To Plaintiffs If They Are Denied Pre-Trial Access To Relevant, Non-Privileged Information Possessed By The MK Defendants.**

As the MK Defendants' attorneys, Ms. Lum's and Mr. Yamamoto's knowledge on the "landscaping credits" and confidentiality agreements is imputed to the MK Defendants.  *Imperial Finance Corp. v. Finance Factors, Ltd.*, 53 Haw. 203, 207, 490 P.2d 662, 664 (Haw. 1971) (stating general rule of imputing

knowledge of an agent to the principal). This information is not protected by the attorney-client privilege. *See* 3/06/06 Order (Exh. 1) at 11-12. Since information possessed by Ms. Lum and Mr. Yamamoto is imputed to the MK Defendants (and since the MK Defendants obviously have the right and ability to obtain such information from Ms. Lum and Mr. Yamamoto), it would unfair and prejudicial to Plaintiffs if they were denied pre-trial access to the same information. It also would be inefficient for the Court and the parties if Plaintiffs had to obtain that information through trial testimony without the benefit of pre-trial depositions. Plaintiffs therefore should be allowed to depose Ms. Lum and Mr. Yamamoto.

**Good Cause Exists To Allow Plaintiffs To Take The Deposition Of Mr. Stifler.**

**The MK Defendants Cannot Rely On The Discovery Cutoff, Because They Withheld Numerous Stifler Documents – Which Clearly Were Not Privileged – Until After That Date.**

The MK Defendants withheld – until after the discovery cutoff date – numerous documents that were sent to or from Mr. Stifler. *See, e.g.*, Revere Decl. Exhs. 10, 11. Many of these documents were clearly non-privileged even before Special Master McConnell and Judge Seabright's rulings on the crime-fraud exception, because they either were sent to or from third parties and/or were not sent to or from attorneys. *See id.* In addition to relating to the "landscaping credits" and confidentiality agreements, at least one of these documents relates to still pending claims regarding landscaping that Western Sunview has asserted

against the Association.[4]  Based on Plaintiffs' review of documents that the MK Defendants produced after the discovery cutoff date, Plaintiffs requested that the MK Defendants agree to allow Plaintiffs to depose Mr. Stifler.[5]  The MK Defendants refused.  *See* Revere Decl. Exh. 2.  The MK Defendants should not be allowed to withhold relevant and clearly non-privileged documents until after the discovery cutoff date, and then rely upon that date in refusing to allow a deposition based on those documents.

**Refusing To Allow The Deposition Both Would Be Unfair And Prejudicial To Plaintiffs And Would Reward The MK Defendants' Gamesmanship And Discovery Abuses.**

When the secret discount scheme and the Design Requirements were created and implemented, Mr. Stifler was an agent of the MK Defendants.  His knowledge is therefore imputed to them.  *Imperial Finance Corp. v. Finance Factors, Ltd.*, 53 Haw. 203, 207, 490 P.2d 662, 664 (Haw. 1971).  Since he is not an attorney, there can be no claim of privilege.  The MK Defendants should not be

---

[4]    This document shows the developer's intent to prohibit landscaping that obstructs views in the special setback area.  *See* Revere Decl. Exh. 11.  Western Sunview's claim against the Association – based on its failure to prevent additional landscaping in the special setback area that obstructs Plaintiffs' views – is still pending.

[5] The MK Defendants cannot justifiably object that Plaintiffs should have deposed Mr. Stifler before.  Decisions as to whom to depose are based on available information.  The MK Defendants withheld clearly non-privileged documents regarding Mr. Stifler, which the MK Defendants should have produced years ago.  It is based on these previously, and unjustifiably, withheld documents that Plaintiffs seek to depose Mr. Stifler.

allowed to withhold responsive, non-privileged documents until after the discovery cutoff date – especially where, as here, Plaintiffs requested these documents almost two years ago – and then hide behind the discovery cutoff date in refusing to allow a deposition that Plaintiffs requested based on their review of those documents. Relevant, non-privileged information possessed by the MK Defendants should also be available to Plaintiffs. Good cause therefore exists for allowing the deposition of Mr. Stifler. To refuse to allow this deposition would only reward the MK Defendants' gamesmanship and discovery abuses, and subject the Court and the parties to the inefficiencies associated with any examination of Mr. Stifler at trial that might be conducted without the benefit a pre-trial deposition.

**CONCLUSION**

For the foregoing reasons, the Court should allow Plaintiffs to take the depositions of Ms. Lum, Mr. Yamamoto, and Mr. Stifler.

DATED: Honolulu, Hawaii, <u>August 14, 2006</u>.


<u>  /s/ Terrance M. Revere  </u>
TERRANCE M. REVERE
DENELLE DIXON-THAYER

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC;
GUY HANDS; and JULIA HANDS

20