# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; and JULIA HANDS,<br><br>Plaintiffs,<br><br>vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; and DOE CORPORATIONS 1-100,<br><br>Defendants. | CIVIL NO. 03-00463 JMS/LEK<br><br>ORDER DENYING APPEAL FROM AMENDED ORDER ADOPTING SPECIAL MASTER'S DISCOVERY ORDER FILED OCTOBER 24, 2005 |

ORDER DENYING APPEAL FROM AMENDED ORDER ADOPTING
SPECIAL MASTER'S DISCOVERY ORDER FILED OCTOBER 24, 2005

I. INTRODUCTION

Defendants Mauna Kea Properties, Inc. and Mauna Kea Development

Corporation ("MK Defendants") appeal from Magistrate Judge Leslie E.

Kobayashi's order adopting a discovery order entered by Special Master John

McConnell. Based on the following, the MK Defendants' appeal is hereby DENIED.

## II. BACKGROUND

In this extremely litigious matter, plaintiffs Western Sunview Properties, LLC, Guy Hands, and Julia Hands ("plaintiffs") claim that MK Defendants engaged in fraud that misled plaintiffs in the purchase of land at the Bluffs of Manua Kea, a Big Island development. Specifically, plaintiffs claim that the MK Defendants sold other lots below asking price by offering a landscaping credit and requiring the purchaser to execute a confidentiality agreement cloaking the landscaping credit in secrecy. Plaintiffs further allege that they were unaware of the landscaping credits provided to others, and that they relied on the falsely reported sales prices (that is, the sales price before applying the landscaping credit) in determining how much to offer for the purchase of a lot.

A Honolulu law firm assisted the MK Defendants in drafting the confidentiality agreements. At issue is whether communications between the MK Defendants and that law firm are subject to discovery under an exception to the attorney-client privilege. Reviewing this matter de novo, the court finds that the documents are not protected from disclosure pursuant to the crime-fraud exception to the attorney-client privilege.

This matter comes to this court on an appeal from an order issued by Magistrate Judge Leslie E. Kobayashi adopting a discovery order entered by a Special Master. By order dated February 22, 2005, and pursuant to Federal Rule of Civil Procedure 53(a), Judge Kobayashi appointed John McConnell as a Special Mater re Discovery ("Master") in this matter.[1] The Master is empowered to "issue rulings on all matters involving discovery issues in the above-entitled action." Any appeal from the Master's discovery order requires submission to Judge Kobayashi for adoption. Once adopted, an appeal must be taken within eleven days after the issuance of Judge Kobayashi's order.

On May 16, 2005, the Master held a telephonic hearing on plaintiffs' motion for an order that the MK Defendants produce documents being withheld as privileged. The plaintiffs argued that these documents were discoverable based on a claim of waiver and application of the crime-fraud exception to the attorney-client privilege. Plaintiffs sought documents relating to: 1) the landscaping credits given to the purchasers of land at the Bluffs at Mauna Kea; and 2) the confidentiality agreements entered into between the MK Defendants and such purchasers.

---

[1] John McConnell was likewise appointed by the order as a Special Master in a state case involving overlapping discovery disputes.

3

On October 14, 2005, the Master ruled that "it plainly appears that the confidentiality and landscape credit agreements are at issue with respect to Plaintiff's fraud and misrepresentation claims and that the crime/fraud exception to the privilege is applicable." The Master thus ordered the production of documents "between Mauna Kea and its attorneys related to confidentiality agreements and landscape credits. . . ."[2] Exhibit B to MK Defendants' Appeal.

On October 24, 2005, Judge Kobayashi entered an Amended Order Adopting Special Master's Discovery Order. Pursuant to the terms of the Order appointing the Master, Judge Kobayashi adopted the Master's discovery order without review, thus allowing the parties to appeal to this court. The MK Defendants filed a timely notice of appeal on November 1, 2005.[3]

### III. DISCUSSION

**A.   The Crime-Fraud Exception to the Attorney-Client Privilege**

Federal Rule of Evidence ("FRE") 501 provides that in civil actions "with respect to an element of a claim or defense as to which State law supplies the

---

[2] Because the court ultimately agrees with the Master's conclusion that documents relating to the landscaping credit and confidentiality agreements are not protected by the attorney-client privilege, the court is not addressing the Master's other finding that the documents are "at issue" in the litigation and thus subject to disclosure.

[3] Plaintiffs filed a Memorandum in Opposition to the MK Defendants' Appeal on November 10, 2005. On February 13, 2006, plaintiffs filed an Amended Memorandum in Opposition to the Appeal. The Amended Memorandum includes Exhibit 9a, a deposition transcript of Byron Gangnes, which was inadvertently not attached to the original filing.

4

rule of decision, the privilege of a witness . . . shall be determined in accordance with State law." Hawaii law on privilege thus controls the current appeal. Hawaii Rule of Evidence ("HRE") 503 adopts a standard formulation of the attorney-client privilege. The codified crime-fraud exception to the privilege exempts communications from protection "[i]f the services of the lawyer were sought, obtained, or used to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." HRE 503(d)(1).[4]

The Supreme Court of Hawaii recently explained the relationship between the attorney-client privilege and its crime-fraud exception:

> Although the underlying rationale for the privilege has changed over time, ... courts long have viewed its central concern as one to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.... That purpose, of course, requires that clients be free to make full disclosure to their attorneys of past wrongdoings, ... in order that the client may obtain the aid of persons having knowledge of the law and skilled in its practice[.] The attorney-client privilege is not without its costs.... [S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose.... The attorney-

---

[4] A lawyer need not know of client's wrongful purpose for the crime-fraud exception to apply. *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996).

5

> client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection--the centrality of open client and attorney communication to the proper functioning of our adversary system of justice--ceas[es] to operate at a certain point, namely, where the desired advice refers not to prior wrongdoing, but to future wrongdoing.... It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy, ... between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime...

*State v. Wong*, 97 Haw. 512, 518, 40 P.3d 914, 920 (2002) (alterations in original), quoting *United States v. Zolin*, 491 U.S. 554, 562 (1989).

While the initial burden of establishing the attorney-client privilege falls upon the client, "the burden of establishing the crime fraud exception to the attorney-client privilege falls upon the proponent of the exception." *Id.* at 520. The Hawaii Supreme Court has also clarified that HRE 104, requiring that "[p]reliminary questions concerning ... the existence of a privilege ... shall be determined by the court," applies to determinations concerning the applicability of the privilege and its exceptions. *Id.* (alteration in original).

The United States Supreme Court has established a two-step process for courts to follow in ruling on the crime-fraud exception:

> Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in*

6

> *camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies.
>
> Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through *in camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply.

*Zolin,* 491 U.S. at 572 (citation and internal quotations signals omitted).[5]

The exact burden that applies to prove the crime-fraud exception is not clear. In the Ninth Circuit, although mere suspicion or allegations are not sufficient, the burden only requires proof of "'reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *United States v. Chen,* 99 F.3d 1495, 1503 (9th Cir. 1996), *quoting In re Grand*

---

[5] The Master's Discovery Order, Judge Ezra's summary judgment order (Western Sunview Properties, LLC v. Federman, 338 F. Supp. 2d 1106 (D. Haw. 2004)), as well as plaintiffs' memorandum in opposition to the MK Defendants' appeal provided the court with an ample factual basis to support a good faith belief that material sought and claimed to be privileged may support application of the crime-fraud exception. As a result, the court requested that the documents be provided to the court *in camera*. Neither party objected to this request. The first set of documents provided by the MK Defendants appeared to be unrelated to the landscaping credit and confidentiality agreements. The court thus held a status conference, after which the MK Defendants provided the court with more documents *in camera*. The court is not relying on the documents submitted *in camera* in reaching its ultimate conclusion affirming the discovery order.

*Jury Proceedings (The Corporation)*, 87 F.3d 377, 381 (9th Cir. 1996). This standard is more than suspicion but less than a preponderance of the evidence. *Id.*

Hawaii courts have not articulated a standard to apply to HRE 503 exceptions to the attorney-client privilege. *Wong* held that HRE 104 applies to a determination of the crime-fraud exception; Rule 104 determinations are based on a preponderance of the evidence in Hawaii courts. *State v. McGriff*, 76 Haw. 148, 157-58, 871 P.2d 782, 791-92 (1994). Therefore, when confronted directly with the issue of the burden placed on the proponent of the crime-fraud exception, the Hawaii Supreme Court may very well apply a preponderance of the evidence standard.

This court need not resolve the standard that the Hawaii Supreme Court would apply. Whether the court applies a "reasonable cause" or a preponderance standard, plaintiffs have met their burden to pierce the privilege.

**B.   Plaintiffs Have Met Their Burden to Prove that the Crime-Fraud Exception Applies to Documents Relating to the Landscaping Credits and Confidentiality Agreements**

Reviewing this matter de novo,[6] the court finds that plaintiffs, under either a "reasonable cause" or preponderance standard, have shown that the

---

[6] Pursuant to Fed.R.Civ.P. 53(g)(3), a de novo review is applied to both findings of fact and conclusions of law by the Master, unless the parties stipulate, with consent of the court, to a clear error standard to review factual findings. Because no standard of review stipulation was entered in this case, this court applies a de novo standard of review to both the facts and the law.

8

services of lawyers were used "to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud." HRE 503(d)(1).

The MK Defendants claim that plaintiffs have failed to present any evidence of fraud beyond a "sneaking suspicion" that the MK Defendants sought legal advice to further a fraud.[7] The MK Defendants argue that the landscaping credits did not involve misrepresentations and were simply offered to purchasers "to be used for necessary landscaping and grading." MK Defendants' Appeal at 12. The evidence presented to the court shows otherwise.

The former President of Mauna Kea, William Mielcke, testified in a deposition that the landscaping credit was "a form of discounting the selling price," and that a subsequent purchaser "might not" know the actual price of a previously sold lot given the landscaping credit because "[the credits] were also covered by a confidentiality agreement." Exhibit 4 to Plaintiff's Memorandum in Opposition to MK Defendants' Appeal ("Memo in Opposition"). Mr. Mielcke explained further during his testimony the relationship between the landscaping credit and the listing price of the property:

---

[7] The MK Defendants do not dispute that they sought legal advice from a Honolulu law firm regarding the landscaping credits and confidentiality agreements. Instead, the MK Defendants argue that plaintiffs have failed to carry their burden to prove the applicability of the crime-fraud exception.

9

> Question: When you say Mr. Stifler [Mauna Kea Realty's principle broker] wanted to do this to maintain the integrity of the price, it was so you could tell the next purchaser that, hey, the selling price is the listing price, correct?
>
> Mielcke: Correct.

*Id.* Jeanne Buboltz, a realtor with Mauna Kea Realty, likewise testified in her deposition that the landscaping credit was a confidential discount. Exhibit 7 to Memo in Opposition.

The MK Defendants' expert, Byron Gangnes, after having read a portion of Mr. Mielcke's deposition explaining the confidential discounts, testified that, "[i]t sounds to me to be deliberately misleading." Exhibit 9a to Memo in Opposition.

Plaintiffs also claim that Judge Ezra's September 15, 2004 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Counter Motion for Summary Judgment supports their position. *Western Sunview Properties, LLC v. Federman*, 338 F.Supp.2d 1106 (D. Haw. 2004). The court agrees. Although ruling on a motion as to the Federmans (Plaintiffs' neighbors who obtained a landscaping credit and signed a confidentiality agreement) and not as to the MK Defendants, the court nonetheless found that the plaintiffs "submitted conclusive proof that Defendant Irwin Federman knew that the landscaping credit was an artifice. . . ." *Id.* at 1120 n.6. If

10

Defendant Irwin Federman, the purchaser of a lot, knew that the landscaping credit was an artifice, then it naturally follows that the MK Defendants (the creators of the landscaping credit) also knew it was an artifice. Based on the evidence presented by plaintiffs, the court finds that the MK Defendants used the services of lawyers to enable them to commit what the MK Defendants "knew or reasonably should have known" to be a fraud. Coupling the landscaping credits with the confidentiality agreements cloaked the true selling price of the lots in secrecy. Future buyers would be misled.

The court also notes that although plaintiffs have the burden to prove the crime-fraud exception applies, the MK Defendants have failed to provide any explanation as to why they required buyers to enter into a confidentiality agreement. Instead, the MK Defendants simply argue that the landscaping credit was legitimate. Although a credit standing alone may be legitimate, a substantial credit coupled with a continuing obligation to maintain confidentiality is not legitimate in the court's view.

### III. CONCLUSION

The MK Defendants Appeal From the Amended Order Adopting Special Master's Discovery Order is DENIED. The MK Defendants cannot rely on the attorney-client privilege to refuse to provide plaintiffs with documents relating

11

to landscaping credits or confidentiality agreements that are otherwise subject to discovery in this matter.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 6, 2006.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Western Sunview Properties, et. al. v. Federman, et al.*, Civ. No. 03-00463 JMS/LEK, Order Denying Appeal From Amended Order Adopting Special Master's Discovery Order Filed October 24, 2005