**EXHIBIT 2**

## Statement of David L. Callies

Since my Report of June 2, 2004 I have read the March 23, 2005, report by David Knox of Knox Hoverland Architects Ltd. (hereafter the Knox Report). Based largely on the above, I make the following additions to my June 2nd Report:

1. The Knox Report discusses at length the duties and practices of design committees associated with homeowners associations in a valiant attempt to justify the variances apparently granted to the Federmans permitting a swimming pool in an area in which structures are prohibited by the applicable convenants and restrictions pertaining to the Federman lot, but without providing any support for its view of such duties and practices. Even with such support, the Knox Report ignores (particularly in its paragraphs 6 and 7) the fact that the language permitting variances of any kind specifically provides for variances to the design standards and provisions in the applicable covenants, conditions and restrictions, but says nothing about power or authority to grant similar variances for construction standards, all as set out in my Report of June 2, 2004. Therefore, whether or not a duly-constituted design committee granted a variance to construct and build a swimming pool in a required setback area, and whether or not a duly constituted design committee granted such a variance in good faith, it lacked the power, authority and jurisdiction to do so according to the plain language of the applicable covenants, conditions and restrictions.

2. Moreover, even if a design committee did grant such a variance and even if it has the power to grant such a variance under the applicable covenants, conditions and restrictions, the committee should be held to a higher standard than it apparently used in exercising the variance power, as set out in my Report at numbers 6, 7 and 8. It is improper for a body approaching quasigovernmental status, such as a homeowners association in Hawaii, to grant a variance without adhering to some standard similar to that applicable in Hawaii to the granting of variances by local zoning boards of appeal, as set out in my June 2nd report. The applicable standards are clearly set out in *Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan*, 953 P.2d 1315 (Haw. 1998): (1) without the variance, the applicant would be denied reasonable use of the land; (2) the hardship is based on unique circumstances; (3) the variance does not alter the essential character of the neighborhood. These mirror common law standards in most jurisdictions. See Juergensmeyer and Roberts, Land Use Planning and Control Law (1998) at s.5.16. Thus, in *In Re Bienstock*, 589 N.Y.S.2d 1004 (N.Y. Super. Ct. 1992) the court concluded that it was rational to deny a variance for the construction of a swimming pool because the applicant could not demonstrate practical difficulties. The court observed that applicants merely wanted to construct the pool because it was "significant to their enjoyment of their house and property." (at 1005) and this did not rise to a practical difficulty which would

prevent the use of the single-family house without the pool. To the same effect: *McMorrow v. Board of Adjustment*, 765 S.W.2d 700 (Mo. Ct. App. 1989) holding that a setback variation for a swimming pool was properly denied because the applicant could demonstrate neither practical difficulties nor unnecessary hardship. The court found that the residence was useable without a swimming pool and that the pool was not a necessity. Indeed, in *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979) the Alaska supreme court overturned a grant of a variance from off-street parking requirements on the ground that such a variance amounted to a grant of special privilege and the property was as useful as surrounding properties without such a variance.

3. So in the present case, it is difficult to see how a variance to the Federmans to construct a swimming pool in a required setback area is anything but the grant of a special privilege. There is no demonstration of hardship. There is no demonstration of unique circumstances. Indeed, a swimming pool can be constructed on the Federman lot outside the setback area and in full conformance with the applicable construction/building requirements set out in the relevant covenants, conditions and restrictions pertaining to The Bluffs at Mauna Kea.

4. Lastly, property owners have a right in equity to enforce restrictive covenants, and the association and committees have a fiduciary duty to enforce restrictive covenants. By failing to enforce the building/construction restriction against structures in the required setback area, the design committee of the homeowners association for The Bluffs at Mauna Kea has breached their fiduciary duty to property owners such as Western Sunview who exercise their equitable right to enforce the burden of this particular restrictive covenant, which right Western Sunview retains whether or not the association has enforced this or any other covenant under the express terms of the Declaration of Protective Covenants, Conditions and Restrictions for the Bluffs at Mauna Kea at Section 12.5.

                                           David L. Callies
                                           April 18, 2005