**EXHIBIT 7**

# Architectural Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

14 June 2004

Terrance Revere, Esq
Motooka, Yamamoto and Revere
1000 Bishop Street, #801
Honolulu, HI, 96813

**PROJECT:** Western Sunview v Federman
**SUBJECT:** Preliminary Report

Dear Mr. Revere:

At your request, I have reviewed documents relevant to the dispute between the owners of Western Sunview Properties and their neighbor, Irwin Federman. While many of these documents are legal in nature, I am considering them from the point of view of an architect who would use the documents as part of the design process.

1.  REINHARDT QUALIFICATIONS:
    1.1  See attached Resume of James N. Reinhardt, with a list of publications
    1.2  See attached CC&R experience list
    1.3  See attached Court qualifications list
    1.4  See attached depositions list

2.  BACKGROUND:
    2.1  The Bluffs at Mauna Kea is a 22 lot subdivision on the waterfront in South Kohala, Hawaii County. While development of the area dates back to 1986, the development of The Bluffs subdivision in its present form was approved in 1995, as a modification of previously approved development plans. TMK 6-2-2:13
    2.2  The area of the Bluffs subdivision is zoned: RM-1.5 (Multi-family)
    2.3  The standard County required setbacks for this zone are:
    •  Front yard - 20'
    •  Side yards - 8' for one-story, 10' for two-story
    •  Rear yard - 20'
    2.4  The standard State required shoreline setback was 40'. The County, however, added to that requirement, requiring a 100' shoreline setback.
    2.5  The Hawaii County General Plan indicates an "Open" zone about 500' wide along the shoreline between Kaunaoa Bay and Hapuna Bay. Uses permitted in an Open zone are: Public parks, golf courses & country clubs, historical monuments, tourist attractions, private recreational uses, aquaculture, accessory uses.
    2.6  The Association of Homeowners of The Bluffs at Mauna Kea was formed in 1997. The Declaration of Protective Covenants, Conditions and Restrictions (the "Covenants, Conditions and Restrictions"), the "Design and Construction Requirements", and the "Homeowner Rules" were filed in early 1997.
    2.7  The lots were first offered for sale in April 1997.
    2.8  The owners of Western Sunview Properties purchased lot 5 of The Bluffs at Mauna Kea on 20 September 1999.

2.9  The Federman's purchased lot 6 in December 1998.

3.  THE DISPUTE:  The owners of Western Sunview Properties have claimed that construction of a 780 sf swimming pool, and a 2,780 sf pool deck and related structures around the pool within the Special Setback Area of Lot 6 violates the "Design and Construction Requirements", the "Homeowner Rules", and the requirements of the County subdivision approval, and that the Design Committee of the Homeowners Association erred in approving the design.

4.  SUMMARY: The owners of Western Sunview Properties purchased Lot 5 of The Bluffs at Mauna Kea when the subdivision area was raw, undeveloped land- beautiful but undeveloped.  They understood that 22 homes would be constructed in the subdivision and that it would no longer be the undeveloped natural land and shoreline which they saw, but, based on the depositions of Guy and Julia Hands, they made their purchase under the explicit understanding and expectation that all design and construction in the subdivision would be regulated by the rules set forth in the "Covenants, Conditions and Restrictions" and "Design and Construction Requirements", and that those rules would apply to all Owners.  They understood that they would be limited in their options to develop Lot 5 but that, in turn, they would be able to anticipate and plan for the affect of the development of other lots on their views, and that the value of their investment would be protected because their neighbors would be required to comply with those same "Covenants, Conditions and Restrictions" and "Design and Construction Requirements".  The Bluffs documents make it very clear that all buildings and improvements to be constructed at The Bluffs would have to comply with the Design Requirements.

Irwin Federman pushed the development of Lot 6 well beyond the limits allowed by the clear language of the Regulations, intruding into the view which the owners of Western Sunview Properties understood to be protected by the "Design and Construction Requirements".  As a consequence, the Owners of Western Sunview Properties were deprived of their reasonably expected views.

5.  DOCUMENTS REVIEWED:
    5.1  See attached list of documents received from Motooka, Yamamoto and Revere.
    5.2  See attached list of Mauna Kea Properties (MKP) documents reviewed.
    5.3  The Hawaii County Zoning Code, 1991
    5.4  Sun Angles for Design, by Bennett, 1978
    5.5  Map of Hawai'i, the Big Island, University of Hawai'i Press
    5.6  Webster's Encyclopedic Unabridged Dictionary of the English Language, Gramercy Books, 1989
    5.7  Construction Glossary, An Encyclopedic Reference and Manual, Stein, John Wiley & Sons, 1980
    5.8  Subdivision Map for The Bluffs at Mauna Kea, Belt Collins Hawaii, 10 Oct '96
    5.9  Design Review Committee Worksheet, Ex 1, David Stringer Architects, 16 Jan '03
    5.10  Federman Residence, Sht L-2, Todd Cole/Joel Laber, 17 Jul '01
    5.11  Deposition of Joel Laber.
    5.12  Deposition of Lisa Reinke
    5.13  Deposition of Terry Tusher
    5.14  Deposition of Guy Hands

Revere: Western Sunview Properties v Federman                 14 June 2004
Preliminary Opinion Report                                          Page 3

    5.15  Deposition of Julia Hands
    5.16  www.gunder.com
    5.17  www.usvp.com
6.  LOT AND SPECIAL SETBACK AREA CALCULATIONS.  See attached sheet

7.  OPINIONS and supporting evidence. Based on my experience as an architect and on the
    documents described above, I have the following opinions:

  It is my opinion that the "Covenants, Conditions and Restrictions", "Design and
    Construction Requirements" and "Homeowner Rules" provided a framework to enable
    prospective buyers of the then undeveloped Bluffs subdivision, including the owners
    of Western Sunview Properties, to anticipate the affect of the planned development of
    22 single-family houses on the lot which they contemplated buying.

    · According to the Preamble to the Declaration of the "Covenants, Conditions and
      Restrictions", the "Covenants, Conditions and Restrictions" were adopted, "for the
      purpose of increasing the economic value, desirability and attractiveness of said
      real property and for the mutual benefit of the owners of any interest therein."
    · The "Design and Construction Requirements", at paragraph 5.1 define the intent of
      the Design Review Procedure. "In the interest of preserving the natural character
      and beauty of the area and in accomplishing the purposes set forth under the
      Declaration and Article I of these Design Requirements, all development including
      major repair or renovation of buildings, structures, landscape, and other sitework or
      improvements, including the installation of solar systems, shall be subject to review
      and approval by the Design Committee."
    · The Preamble to the Declaration establishes that **all design and construction in
      The Bluffs subdivision** will be governed by the "Covenants, Conditions and
      Restrictions" and the "Design and Construction Requirements" which "... shall be
      binding upon all persons acquiring any right, title of interest in and to said real
      property..." [Emphasis added]
    · Paragraph 2.8 of the "Covenants, Conditions and Restrictions" states that **no new
      improvements may be constructed on any Lot** without approval "by the Design
      Committee, and in accordance with the applicable Design Requirements."
      [Emphasis added]
    · Article I, Purpose, of the "Design and Construction Requirements" states that the
      Design and Construction Requirements "shall govern the construction of all
      buildings and improvements within The Bluffs" and that Each homesite is to be
      "developed under a series of protective design requirements."
    · Paragraph 8.11 of the "Covenants, Conditions and Restrictions" authorizes the
      Design Committee to adopt Design Requirements which are to "govern and **serve
      as a standard for the construction** of buildings and improvements to be constructed
      and maintained within The Bluffs and the procedures for review and approval of
      plans." [Emphasis added]
    · Paragraph 1.2 of the "Homeowner Rules", Compliance with Rules, states that each
      Owner is responsible for complying with the Declaration, By-laws, "Design and
      Construction Requirements" and the "Homeowner Rules".
    · Paragraph 12.5 of the "Covenants, Conditions and Restrictions", Enforcement and
      Remedies, empowers "any Owner" to seek enforcement of "each provision of this
      Declaration with respect to an Owner or the Lot of an Owner"

Revere: Western Sunview Properties v Federman                        14 June 2004
Preliminary Opinion Report                                               Page 4

> •• Paragraph 12.5 of the "Covenants, Conditions and Restrictions", Enforcement and
> Remedies, notes "Failure to enforce any provision hereof shall not constitute a
> waiver of any right to enforce such provision or any other provision hereof."

 It is my opinion, based on my experience in other homeowner/community association disputes, that "Covenants, Conditions and Restrictions", "Design and Construction Requirements" and "Homeowner Rules" are like private, project-specific building/ zoning codes and that they must be viewed by owners and their designers as the definitive rules for development of the lots. Each homeowner can, in turn, rely on those requirements to provide a predictable development environment for his home/investment, where he/she can anticipate the limits of what his/her neighbors will be allowed to construct on their lots, and to provide protection from potential abuses by their neighbors.

7.3 Regarding construction of the Federman swimming pool, the surrounding pool deck and related structures within the Special Setback of Lot 6:

   7.3.1 It is my opinion that construction of the swimming pool, the surrounding pool deck and related structures within the Special Setback for Lot 6 violates the "Design and Construction Requirements" and the "Homeowner Rules" for The Bluffs at Mauna Kea.

   > •• Section 4.17 of the "Design and Construction Requirements", Special Set-
   > backs, states that Special Setbacks have been placed on the individual
   > Homesites to protect the views and to preserve hillsides.  No building or
   > structure shall be placed within the special setback areas as shown in
   > Exhibit A. [site plan for The Bluffs at Mauna Kea- Site Plan][Emphasis added]
   > • Exhibit A to the "Design and Construction Requirements" shows an 86' to 90'
   > wide Special Setback Area for Lot 6.
   > • On 20 Apr '01 William Mielcke of the Design Committee wrote a letter to
   > Loriann Gordon, the landscape architect for Western Sunview, advising her
   > during the predesign period that "a Special Setback Area exists in the rear
   > yard to protect views and to preserve the existing hillside."
   > • Paragraph 4.4 of the "Homeowner Rules" states, "All construction on Lots
   > shall be carried out strictly in compliance with the provisions of the Design
   > Requirements, and any conditions imposed by the Design Committee."
   > [Emphasis added]

   7.3.2 It is my opinion that the word "structure" includes the swimming pool and the surrounding pool deck and related structures of Lot 6.

   > • Structure, as defined by The Hawaii County Zoning Code, 1991, means any
   > combination of materials forming any construction the use of which requires
   > location on the ground or attachment to something having location on the
   > ground, and shall be construed as though followed by the words "or part thereof."
   > • Structure, as defined by Webster's Encyclopedic Unabridged Dictionary, is
   > something built or constructed, as a building, dam, etc.
   > • Structure, as defined by The Construction Glossary, An Encyclopedic
   > Reference and Manual, 1980, means 1) part of an assemblage of parts

Revere: Western Sunview Properties v Federman                 14 June 2004
**Preliminary Opinion Report**                                   Page 5

constructed to support certain definite loads. 2) Assembly of materials
forming a construction frame of component structural parts for occupancy or
use, including buildings.
- Structure, as defined by The Dictionary of Architecture and Construction,
1975, means 1) a combination of units constructed and so interconnected, in
an organized way, as to provide rigidity between its elements.

7.3.3   It is my opinion that construction of the swimming pool, the surrounding pool
deck and related structures within the Special Setback Area violates the
requirements of the County's approval of The Bluffs subdivision.

- Special Management Area Use Permit #133, 7 May '80, required Mauna Kea
Properties to "provide lateral public access along the shoreline."
- The Settlement Agreement to Civil Suits Nos. 3072, 4961, and 5935 required
Mauna Kea Properties to provide public access to the shoreline.
- Shoreline Setback Variance #614 required Mauna Kea Properties to provide
access to "open up the shoreline to the public and assure public assess to
the shoreline for generations to come", to provide access that will be
"continuous and not obstructed by private improvements" and to respect
habitation features within 100' of the shoreline between Hapuna Beach and
Kaunaoa Beach.
- The County of Hawaii General Plan shows an "Open" zone approximately
500' wide along the shoreline from Kaunaoa Bay to Hapuna Bay.
- In June '85 Mauna Kea Properties applied for a change of zone from
Unplanned, Agricultural and Single Family Residential to Open and
Multifamily Residential for The Bluffs area, two SMA Use Permits and a
Shoreline Setback Variance.  The SMA Use Permits and the Shoreline
Variance were granted.  The change of zone was apparently also granted but
in not mentioned in the Planning Department report.
- SMA Use Permit #85-16, 16 Jan '86, allowed development of a 150 to 250
unit condominium project but contained many conditions, including the
requirements that Mauna Kea Properties obtain "Final Plan Approval" prior to
preceding with construction, that the shoreline access be provided, that
Mauna Kea Properties minimize any possible visual impact from the
shoreline, that no structures be built within the 100 year Flood Insurance
Rate Map, and that no uses were allowed of the land within the 40' shoreline
setback and 20' mauka of the shoreline trail.
- On 26 Feb '91, Norman Hayashi of the County Planning Department notified
WATG, the architect for The Bluffs condominium, that he had received "the
plans for review for Plan Approval".
- WATG's notes of their 5 Mar '91 and 10 Apr '91 meetings with the County
Planning Department regarding the submitted plan refer discussions of a 100'
shoreline setback.
- The County Planning Department's 19 Nov '91 Final Plan Approval form
includes notations that the required shoreline setback is 100' and that the
submitted plan provides a 100' rear yard.
- On 9 Feb '94, the Hawaii County Planning Department issued a "Background
Report" on the Change of Zone Application by Mauka Kea Properties for
TMK: 6-2-2: Portion of 13 [The Bluffs area].  Mauka Kea Properties requested

> rezoning 4.592 acres of land [approximately 200,000 sf] in order to develop The Bluffs. The project is being down sized from a 150-250 unit residential development as described in SMA Use Permit 231 to a 42-unit residential development in 21 buildings.

- On 9 Oct '95 Anne Mapes of Belt Collins Hawaii, the planning and engineering firm for Mauna Kea Properties, confirmed the outcome of a meeting between Mielcke and the County Planning Department that Mauna Kea Properties intends to change the proposed development from a 150 to 250 unit condominium development as approved in SMA Use Permit #231, later changed to a 42 unit condominium in 21 buildings as approved in Change of Zone Application 93-21, to "approximately 20 single-family lots of at least 30,000 sf and one duplex lot containing the constructed model units", and that a new "SMA Use Permit is not required since the proposed single-family development will be within the same parcel footprint as the multifamily development". The letter contains a Proposed Development Map of the area which is substantially like that finally utilized.

- A 100' setback from the certified shoreline runs thru the Federman pool and deck, with about 80% of the pool within the County required setback area.

**7.4** Regarding intrusion into the views from Lot 6 by the construction within the Special Setback Area:

**7.4.1** It is my opinion that construction of the 780 sf swimming pool and the 2,780 sf surrounding pool deck and related structures, for a total area of 3,560 sf, within the Special Setback Area of Lot 6 violates the letter and purpose of the "Design and Construction Requirements" and "Covenants, Conditions and Restrictions".

- Article I of the "Design and Construction Requirements", Purpose, states that the "Design and Construction Requirements" "shall govern the construction of all buildings and improvements within The Bluffs", that each homesite is to be "developed under a series of protective design requirements." and that "The homesites are located where they can take maximum advantage of ocean views and breezes." [Emphasis added]

- The swimming pool, the surrounding pool deck and related structures are clearly visible from the northern portions of the house on Lot 5. See photo #2

- The swimming pool, the surrounding pool deck and related structures changes the foreground of the northwest view from Lot 5 from one of the ocean, the natural coast, natural vegetation, trees, grasses and shrubs, the horizon and the sky, to one of an active recreation area with a swimming pool, lounging areas with a bar and covered pavilions, if Mr. Federman has his way as expressed in his 28 April '03 questions for Hill-Glazier or Joel Laber's suggestions to Camilo Carrillo of HGA.

- The sunsets, as viewed from Lot 5, will occur on azimuths ranging from 245° on the 22 of December to 300° on 21 June. See photo #2 and Sun Angles for Design.

- Paragraph 4.10.2 of the DR's states that shrubs or trees, such as palm trees, which grow to significant height are not encouraged.

- A cluster of coco palms (which is a structure as defined by paragraph 7.3.2 above) has been planted at the south-western corner of the Special Setback

Area for Lot 6, blocking significant portions of the view from the house on lot 5, in front of the sunset from the middle of June and thru the middle of July. See photo #2.

7.5 Regarding the conduct of the Design Committee prior to July 2001 (the old Design Committee):

7.5.1 It is my opinion that the Design Committee, as constituted prior to July 2001, did not act in compliance with the requirements of the "Covenants, Conditions and Restrictions", the "Design and Construction Requirements", and the "Homeowner Rules".

- The Preamble to the "Covenants, Conditions and Restrictions" states that the "Covenants, Conditions and Restrictions" were established "for the purpose of increasing the economic value, desirability and attractiveness of said real property and for the mutual benefit of the owners of any interest therein."
- The "Covenants, Conditions and Restrictions", at Paragraph 2.8, states that all "new improvements... shall be constructed... in accordance with plans, specifications... approved by the Design Committee, and in accordance with the applicable Design Requirements." and "The Design Committee shall not approve any work or improvements for a Lot or portion of a Lot for use which is inconsistent with the provisions of this Declaration." [Emphasis added]
- The "Covenants, Conditions and Restrictions", at Paragraph 8.5, states, "The function of the Design Committee... shall be so consider and approve or disapprove any plans, specifications or other materials submitted to it... for the... construction... of any buildings, landscaping or other improvements within The Bluffs... to require that any such building, landscaping or other improvements to be constructed within The Bluffs comply with this Declaration and the applicable Design Requirements." [Emphasis added]
- The "Design and Construction Requirements", at paragraph 3.1: "The Bluffs Design Committee ("Design Committee") which is established or will be established pursuant to the Declaration, is charged with enforcing compliance with these Design Requirements." [Emphasis added]
- The "Covenants, Conditions and Restrictions", at Paragraph 8.6 require the Design Committee to "approve or disapprove said plans, specifications and other materials in accordance with the procedures set forth in its Design Requirements..." [Emphasis added]
- The "Covenants, Conditions and Restrictions", at Paragraph 8.8, require the Design Committee, in reviewing submittals, to "consider their compliance with any applicable Design Requirements; the suitability of the proposed building or other improvement for the area in which it will be located...and the effect of the proposed building or other improvement on The Bluffs...". The paragraph continues, "the Design Committee may approve plans, specifications and other materials submitted to it for buildings or improvements which are not in strict compliance with the applicable Design Requirements if any such building is suitable to the area in which it will be located." [Emphasis added]
- The "Design and Construction Requirements", at Article VI- Variations, says "Individual solutions at variance with the general design requirements will be considered on their architectural merit and their contribution to the overall

purposes set forth in Article I". The General Requirements are addressed in Article III of the "Design and Construction Requirements" which set forth the requirements for the Individual Homesites. Special Setbacks are addressed in Article IV and are not general requirements.

- C. N. Reddy, the owner of Lot 7, wrote to Bettina Lum, Jim Bell, Mielcke, John Reid and Katherine Augustine on 19 Dec '00 complaining about intrusion of construction on Lot 8 into the views from Lot 7. "We purchased this particular lot because of the views that we would have and the assurance that the CC&R's would protect any structures to be built beyond the specified area thus, maintaining each lots views. We strongly urge the Mauna Kea Properties to enforce the CC&R rules."

- The Bluffs Community Association Board of Directors (consisting of Acree, Elder, Gunderson, Hartley & Reid), in a 13 Jan '01 letter to the Homeowners, commented, "It is the Board's feeling that many of the design conflicts that have occurred at The Bluffs could have been minimized with a closer adherence to the original intent of the "Covenants, Conditions and Restrictions".

- Robert Gunderson, in 28 Nov '01 response a 27 Nov '01 email from Dennis Krueger, wrote, "This is yet another example of the mischief worked by Mielcke. I do not think is an exaggeration to say that every submittal that Mielcke touched has (or had) a similar problem. This is Robertson's problem. This was our [Gunderson's] problem. It is Federman's problem."

- The "Covenants, Conditions and Restrictions", at Paragraph 8.14, states that as long as "the Design Committee members act in good faith and with due diligence, neither the Design nor any member thereof shall be liable to the Association, any Owner or any other Person for any damage, loss or prejudice suffered or claimed on account of." [Emphasis added]

7.5.2 It is my opinion, based on the documents and my experience in drafting CC&R type requirements, in serving as the technical advisor to a Design Review Committee, and in working with Design Review Committees reviewing design submittals, that the language of Covenants, Conditions & Restrictions, paragraph 8.8, "Design and Construction Requirements", Article VI, were included to allow the Design Committee the flexibility to deal with unusual design problems that are the result of unusual conditions encountered on the site, not to waive requirements because a particular Owner didn't like the impact of the requirements on his/her design options or the use of his/her lot.

7.5.3 It is my opinion that the deviations from the "Covenants, Conditions and Restrictions" and the "Design and Construction Requirements" allowed by the Design Committee were not subtle adjustments to deal with unusual conditions but were gross deviations from the letter and intent of the requirements. Clearly the construction of a 3,560 sf concrete structure (about twice the size of the average Hawaii home) within an area where the "Design and Construction Requirements say "no building or structure shall be placed" is not a minor adjustment to accommodate an unusual condition. It is a "thumb in eye" of the intent of the "Design and Construction Requirements".

7.5.4 It is my opinion that the Design Committee erred in failing to evaluate and consider the impact on the views of Lot 5 of the proposed construction of a

swimming pool, the surrounding pool deck and related structures within the Special Setback Area of Lot 6. It appears that all focus was on Lot 7 because of the Reddy's complaints.

- Joel Laber, in his 23 Apr '01 Fax memo to Vladimir Ilic of HGA, discusses his meeting with Mielcke and Lisa Reinke representing the Design Committee. Laber, Mielcke and Reinke then went to the site to view the proposed improvements in the Special Setback Area "from the adjacent property building pad to the north."
- Lisa Reinke of Bell Collins Hawaii, the consultant to the Design Committee, in her 1 May '01 email to Mielcke and Willis notes that "... it did not block Reddy's (lot 7) view ..."
- In her Technical Review Memo to Bettina Lum and Mielcke of 11 Jul '01 regarding The Bluffs Lot 6, Federman Residence, Reinke, notes, "An excessive number of tall coconut palm clusters are proposed which may block views from mauka Bluff's lots...". She also discusses the Special Setback Area, "As viewed from Lot 7, the structures do not appear to block the shoreline views...". Reinke comments on the impact of the view from Lot 7 of the swimming pool heater and a two-sided wall and notes that a raised bar counter "does not appear to block views". There is no indication in the memo that the proposed structures were viewed from Lot 5.
- Joel Laber's 29 Aug '01 letter to David Stringer explains that the previous Design Committee "arrived at pavilion/palapa configuration that did not inhibit the shoreline view from the adjacent lot to the north."
- Laber's 7 Sep '01 letter to the Design Committee notes that "We have worked with the previous Design Committee... so as to not inhibit the shoreline views from the adjacent lot 7" and observes that their changes "successfully mitigating any shoreline view encroachment from the neighboring lot 7."
- Joel Laber, in his 23 Oct '01 letter to Stringer says that the Federman architects worked with the previous Design Committee "so as not to inhibit the shoreline view from the adjacent lot 7."
- Joel Laber, in his deposition of 24 Oct '03, does not think that he or the Design Committee, while he was with them, viewed the proposed construction in the Special Setback Area of Lot 6 from Lot 5.
- Reinke, in her 28 Oct '03 deposition, does not have any notes or photos showing that the Design Committee viewed the proposed construction in the Special Setback Area of Lot 6 from Lot 5, not does she have any specific recall of a visit. There is no indication that the concern was ever discussed by the Design Committee.
- In his 24 Oct '03 deposition, Joel Laber says, "it would have been reasonable for us [Laber, Reinke and Mielcke] to walk up on Lot Number 5 and take a look from there. And I don't specifically recall having done that."

7.5.6. It is my opinion that the approval-suspended approval-denied approval sequence and the transition from the old Design Committee and the new Design Committee caused significant confusion as to what had been approved and what had not.

- 18 Apr '00- Mielcke and the Design Committee grant preliminary approval of the Federman plans, including construction of a pool, pool deck and two pavilion structures within the Special Setback Area.
- 17 Oct '00- Jim Bell, writing for the Design Committee, asks Lynn Reda of Hill Glazier Architects, the designers of the Federman house and related improvements, to "reconsider your request for the pavilions and any other structures or buildings within the Special Setback area that might impact views from other lots in the Bluffs."
- 22 Dec '00- Mielcke "suspends" the Design Committee's approval of the plans, with respect to the pool pavilions. Federman is to stake out the proposed pavilions and the Design Committee will consider them.
- 19 Jan '01- Mielcke sent a letter to Federman in response to the Federmans submittal for a building permit to the Hawaii County, reiterating and emphasizing that the Design Committee had suspended its previous approval and stating "that construction of these improvements should not commence before further review by the Design Committee."
- 20 Apr '01- Laber, Mielcke and Reinke met on site to review the stake out of the proposed pavilions. The Design Committee advised Laber that they will consider only non-roofed structures in the Special Setback Area.
- Mielcke, Laber & Reinke met on site on 16 May '01 to view the "corrected stake out" of proposed pavilions after it was discovered that the stakeout viewed on 20 Apr '01 was inaccurate.
- In his 23 May '01 letter to Laber, Mielcke says, "the Design Review Committee has reviewed the revised configuration of the structures proposed within the special setback area... Generally, the concepts... are acceptable to the Committee, **subject to review** of a revised Preliminary Plan package, including the landscape submittal and detailing of the proposed pool area." [Emphasis added]
- 11 Jul '01- Mielcke resigns. In his letter to Laber, Hill-Glazier and Greg Boyer, the designers for the Federmans, Mielcke says that the Design Committee has taken no action on their most recent submittal [for approval of the pool, pool decks, and poolside pavilions in the Special Setback Area]
- 7 Sep '01- David Stringer, the new adviser to the new Design Committee wrote to the Board of Directors of The Bluffs that, after reviewing the previous Design Review Board's work and after consultation with Belt Collins, the previous review committee's advisory group, "I would recommend that you approve the preliminary submission of the Federman residence with the exceptions noned below: 1) the two pool trellis pavilions would be subject to the new design committee's policy regarding structures in the special setback area."
- 7 Sep '01- Laber requests new Design Committee to grant a variance for poolside pavilions
- 23 Oct '01- Stringer agrees with Laber that the pavilions do not inhibit views from lot 7.
- 27 Nov '01- Dennis Krueger, the attorney for The Bluffs Community Association, passes on a request that the new Design Committee reconsider their denial of the poolside pavilions
- 27 Dec '01- Laber requests the new Design Committee to grant a variance for construction of a pool, pool equipment, pool deck areas and poolside

pavilions within the Special Setback Area
- The reconstructed minutes of the 29 Jan '02 Design Review Committee meeting say that the Federman request for variance was discussed, that questions remained but "decision deferred pending further information."
- Krueger's 7 Feb '02 letter to Federman advises him that the Design Committee has approved beginning of construction and **granted variances for front yard paving, special setback construction and monkey pod installation.**
- In his 5 Dec '03 Declaration, Mielcke says that he didn't approve the Federman pool, deck, and poolside pavilions.
- In his 3 Nov '03 Declaration, Terry Tusher says he only reviewed proposed changes after the previous Design Committee had approved construction.

7.56  It is my opinion that Mielcke's involvement with the Sales activities for the Developer while being the member of the Design Review Committee most involved with reviewing and approving or rejecting submitted designs, put him in a conflict of interest which may have been responsible for his inconsistent enforcement of the Design Requirements.

- On 20 Apr '01, the exact time period of the Federman Special Setback Area controversy, Mielcke wrote a letter to Loriann Gordon, the landscape architect for Western Sunview, telling her 1) The "Design and Construction Requirements" don't encourage coco palms. Care should be taken so that the landscape does not obstruct views from surrounding properties (to each side of Lot 5 and the mauka properties). 2) Special Setback Area: A special setback area exists in the rear yard to protect views and to preserve the existing hillside. At the northwest corner of the property, the Committee requests that you consider a redesign of the ornamental landscape at the lot's corner and remove vertical plantings. The Committee has not received landscape plans from the Federmans on Lot 7, however their architectural plans do not indicate a perimeter wall in this special setback area.
- After a series of communications with the Federmans, Mauna Kea Properties realtor Katherin "Chacha" Kohler faxed a handwritten note advising Ceppie Federman that Mauna Kea Properties owners "will go up to 15% discount- not more.  $3,000,000 - 15% = $2,550,000"
- The Tentative Seller Statement of 19 Jan '99 shows a sales price of $3,00,000 minus a $450,000 landscape credit. It was initialed by Federman on 19 Jan '99.
- The records of the Hawaii County Real Property Tax Office show the 27 Jan '01 Sale Amount for Lot 6 of The Bluffs to Concepcion Federman as $3,000,000.
- In a 10 May '01 e-mail, Kohler urged Mielcke to help the Federmans with the "palalas (whatever that is)"

7.57  It is my opinion that the participation of Bell Collins, Hawaii as an advisor to the Design Committee while simultaneously performing engineering design work which would be reviewed by the Committee was inappropriate, unless there were disclosures and recusals.

- Jim Bell of Belt Collins Hawaii was a member of the Design Committee until his resignation on 20 Dec '00.
- Lisa Reinke, in her 28 Oct '03 Deposition, says that Belt Collins was a technical advisor to the Design Committee for plan review.
- Alan Kato, a design engineer for Belt Collins Hawaii, in a 11 Sep '00 e-mail to Jim Bell asks questions about the County Requested shoreline setback, the Archeological setback and oceanside construction.

7.6 Regarding the conduct of the Design Committee after July 2001 (the new Design Committee):

7.6.1 It is my opinion that review and approval of the Federman improvements in the Special Setback Area of Lot 6 was mishandled in the hand-off between the old Design Committee and the new Design Committee. It appears that the new Design Committee understood that the old Design Committee had approved the improvements in the Special Setback Area of Lot 6, but, in fact, the proposed construction in the Special Setback Area of Lot 6 may never have been approved.

- 22 Dec '00- Mielcke "suspends" the Design Committee's approval of the plans, with respect to the pool pavilions.
- 19 Jan '01- Mielcke sent a letter to Federman reiterating and emphasizing that the Design Committee had suspended its previous approval.
- 13 Jan '01, The Bluffs Community Association in a letter to the Homeowners: "It is the Board's feeling that many of the design conflicts that have occurred at The Bluffs could have been minimized with a closer adherence to the original intent of the "Covenants, Conditions and Restrictions"... we are going to tighten up the "Covenants, Conditions and Restrictions" to remove as much ambiguity and interpretation from the process as possible. 5) want the process to be as open as possible. 5) revisit the cost structure of the DR process"
- In his 7 Feb '02 Dennis Krueger, attorney for the Design Committee, notifies the Federmans, that the Design Committee of The Bluffs has granted its approval for commencement of construction, and has approved their "request for variance... for front yard driveway paving, special setback construction and monkey pod tree installation".
- The reconstructed minutes of the 29 Jan '02 Design Review Committee meeting say only that the Federman request for variance was discussed, that questions remained but "decision deferred pending further information." The original minutes from that meeting were mysteriously lost.
- Terry Tusher says the new Design Committee understood Mielcke had approved the proposed Federman work in Special Setback Area.
- Terry Tusher says in 3 Nov '03 Declaration that he reviewed only proposed changes after the previous [old] Design Committee had approved the plan for construction.

7.6.2 It is my opinion that the represention of Irwin Federman's firm, U.S. Venture Partners, by Robert Gunderson's law firm, Gunderson Dettmer, should have been disclosed to the Community Association Board, the Design Committee,

the Reddy's and Western Sunview in any decisions relating to Federman's property and proposed improvements since Gunderson was a member of The Bluff's Community Association Board and Design Review Committee.

- See www.gunder.com/transactions and clients
- See www.usvp.com

7.6.3  It is my opinion, based on the correspondence, that the Design Committee, during its consideration and evaluation of the variances requested by the Federmans, did not act reasonably in that it should have notified the affected neighbors, including the owners of Lot 5, of the pending issues and considered their input and should have evaluated and considered the impact of the proposed construction in the Special Setback Area of Lot 6 on the views from Lot 5.

7.7  Regarding the conduct of Irwin Federman and his consultants with regard to the Design Committee and the Design and Construction Requirements:

7.7.1  It is my opinion, based on his correspondence and that of his consultants, that Mr. Federman was willing to circumvent the "Covenants, Conditions and Restrictions", the "Design and Construction Requirements", the "Homeowner Rules", and the County Building Code when they interfered with his goals, encouraged his design team to do so, and was willing to risk the potential consequences.

- As recorded in her 8 Jul '98 handwritten notes, Kohler advised Federman that "2) [lot 6 has a] deeper set back, 3) can't build pool into set back due to sewer line underground".
- In an 11 Apr '02 e-mail exchange with Joel Laber, Federman said, "I am not disrespectful of the Design Review folks, but, on the other hand, have already experienced how their well-intended directives accomplish no useful community purpose, but cause us a great deal of cost and angst. We intend to landscape that area in a manner which completely precludes any problem, aural, visual of otherwise, for our neighbors, the Reddy's. Unless they can forcibly, or legally enjoin us from executing the Plans as drawn, my view is that we should move forward."
- In a 27 Dec '02 to Federman, Don Vita of Vita Landscape Architecture, says that he will issue a directive to add coconut palms on the makai side of the building and substitute Formosan koas for the kiawes along the beach path. "As we discussed, it is not your intention to submit this change to the design review committee and, consequently, the work will completed at some degree of risk."
- In a 16 Jan '03 e-mail to Don Vita, Federman says that he now wants to obtain Design Committee approval on coconut trees "if it is virtually assured that approval will be granted.... I'd like to save the exceptions for the serious 'silver bullets' and not run the risk of being tagged as a habitual non-complier."
- On 3 Mar '03, Dennis Krueger notified Federman and his consultants that the Design Committee had denied his request to 1) revise the grading in the

Revere: Western Sunview Properties v Federman                    14 June 2004
Preliminary Opinion Report                                           Page 14

Special Setback Area. 2) revise the boulder wall location in the southwest corner of the pool, 3. add a gate at the northwest corner and 4) revise the railing on the West wall of the Outlook Pavilion.

- In a 19 Mar '03 fax, Joel Laber comments on the items denied by the Design Committee to Bob Glazier that 1) the proposed revision to the grading plan in the Special Setback Area can be withdrawn as "The difference is an imperceptible 1 foot and unlikely that Terry Tusher would see this on inspection." 2) the proposed revision to the landscaping boulder wall at the south-makai corner of the Pool and Spa Lanai can be withdraw as "The difference between the approved configuration is again imperceptible and unlikely Terry would see any difference. Also we could send a letter to Rhonda Kent, the attorney for the neighbors, withdrawing our request for their approval letter for the Federman's 'adjusted' boulder wall and landscaping also siting non-implementation."

- In his questions/comments to Hill-Glazier Architects of 28 Apr '03, Federman included, at item #25: "It would be nice if the nature trail somehow reinvented itself so that it moved further towards the ocean and not so close to the property."

- In a 2 May '03 e-mail to Rob Frost, Federman says, " Our neighbors on Lot 5 are upset, among other things, over our tree planting plan (they apparently think that coco palms in Hawaii are unattractive) and are gearing up to give us some grief, I fear.  Accordingly, I'd like to get as many trees in the ground as rapidly as you can stick them in."

- In a 13 May '03 e-mail to Robert Glazier of HGA, Federman says, "I'm sorry that I asked Joel to check on their [the Hands] plans.  I had intended to back-channel with Tusher, not to contact Ronda Kent."

- In a 20 Dec '02 e-mail to Glazier, Federman expressed concern about building department approval of the guest house kitchen.  "As you know, that kitchen has been integral to the intended guest house functionality from the outset.  My understanding was that it was spec'd as a laundry room to avoid possible rejection, and was to be completed after inspections, or in some sort of manner which would avoid exposure to rejection..."

- In a 10 Jan '03 letter to the Design Committee, Camilo Carrillo of HGA sends revised drawings to showing that the pool is to be widened by 3'-0", that the lanai is to be widened by 6'-0" and the lawn area between the house and the pool deck will be 9"-0" smaller.

- It should be noted that photos taken by Alan Kato of Belt Collins Hawaii on 27 Sep '02 (3½ months before the request for approval of the "proposed" modifications) show that construction of the swimming pool shell was under way.

- A 3 Mar '03 letter from Krueger for the Design Committee notified Federman that his request for Design Committee approval of his enlargement of the pool and adjacent lanais but that his request for approval to revise the grading of the Special Setback Area was denied.

- A 6 Mar '03 (3 days after Krueger's approval letter) photo shows the pool shell substantially constructed.

- Also see the documents referred to in item 7.7.2 below.

7.7.2  Based on the documents, it is my opinion that Mr. Federman intended and

possibly still intends to pursue construction of the poolside pavilions/palapas in spite of the Design Committee's repeated rejection of them.

- In her report of the 20 Apr '01 meeting with Mielcke, Lisa Reinke notes that Irwin Federman is upset about the Design Committee's reversal of its previous approval of the pool pavilions.
- In a 23 Apr '01 e-mail to Vlad Ilic of HGA, Joel Laber discusses his meeting with Mielcke and Reinke, the Design Committee. He notes that they discussed the swimming pool and two adjacent pavilion structures within the special setback area. The Design Committee advised Laber that it would not allow roofed structures within the Special Setback Area and "will only consider unroofed structures such as pools and uncovered decks and then only if the views from the adjacent lots were not encroached."
- In his 5 Feb '02 fax/letter to Camilo Carrillo of HGA, which was copied to Federman, Laber suggests that they could make the support columns for the palapa/pavilion roofs temporary and call them photographic, cinematic or performing sets, but says "let's remember that County has no problem with issuing a permit for the pavilions and that the problem is with the Design Committee and their 'Special Setback Area'. It could be our position that the temporary nature of the pavilion set does not constitute and improvement or building which have permanent connotations. As we discussed with Irwin a couple of months ago, build it after construction has been completed and final inspected by the County and the Design Committee. Better to have the constructed functional use of the pavilions, with the Design Committee having to initiate and pursue legal action, than the Federmans in pursuit of approval without the completed functional use of the pavilions. The anytime escape would be unbolting and dismounting them."
- Federman's e-mailed questions/comments to Hill-Glazier of 28 Apr '03 include at item #3: "We are not ready to abandon Palapas."
- In a 13 May '03 e-mail to Glazier, Federman says, "We dug deep into the grade to allow for palapas, which increasingly appear not to be a near-term possibility. Now we are faced with the pool area being completely exposed to a house on the south, which looks to have its floor level not 7' above our highest grade but perhaps 13'. That will make it 20-30' above the pool at their deck level and God knows how high their roof will stick up." "Our not-so-friendly neighbors might withhold such approval [of landscaping to screen the lot 6 pool from lot 5] even though it serves their interests, unless we move the 3 palms. I am disinclined to accede to that request."

7.8 Regarding installation of a second kitchen in the guest house of Lot 6:

    7.8.1 It is my opinion, based on the documents, that Irwin Federman intended, and possibly still intends, to install a second kitchen without going thru the required building permit and Design Committee reviews.

- In a 27 Dec '00 e-mail Laber advised Vladimir Ilic of HGA that a second kitchen would not be allowed.
- In a 20 Dec '02 e-mail to Glazier, Federman comments, "I am concerned about building department permit approval for the guest house kitchen. As

Revere: Western Sunview Properties v Federman                    14 June 2004
Preliminary Opinion Report                                              Page 16

> you know, that kitchen has been integral to the intended guest house
> functionality from the outset. My understanding was that it was spec'd as a
> laundry room to avoid possible rejection, and was to be completed after
> inspections, or in some sort of manner which would avoid exposure to
> rejection..."

The opinions expressed above are to a reasonable degree of achitectural probability. This
report is based on information known to me at this time. Should new information become
known to me, the opinions could be subject to change.

Sincerely,

ARCHITECTURAL DIAGNOSTICS, Ltd.

Jim Reinhardt, AIA
Its President

Revere: Western Sunview Properties v Federman　　　　　14 June 2004
Preliminary Opinion Report　　　　　　　　　　　　　　　　　Page 17

**5.1 Documents received from Motooka, Yamamoto and Revere**

| | |
|---|---|
| May 1981 | Application for Variance from Subdivision or Zoning Code re Shoreline Trail with attachment |
| May 1981 | Application for Variance from Subdivision or Zoning Code re Shoreline Trail with Map |
| 7 Jun 1982 | Orita letter to Mielcke re Shoreline setback variance application |
| 16 Jan 1986 | Findings of Fact Conclusions of Law and Decision and Order re SMA Permit 231 |
| 26 Feb 1991 | Planning Dept letter to WATG with attached site plan |
| 5 Mar 1991 | WATG memo re The Bluffs at Mauna Kea Meeting on 910227 |
| 10 Apr 1991 | WATG Minutes of 910328 Meeting of The Bluffs at Manna Kea |
| 19 Nov 1991 | Planning Dept Final Plan Approval re The Bluffs at Mauna Kea |
| 9 Feb 1994 | Planning Dept Background Report re Mauna Kea Prop Change of Zone Application |
| 9 Oct 1995 | Belt Collins letter to Planning Dept re SMA Use Permit re The Bluffs |
| 10 Dec 1996 | Belt Collins Hawaii, Subdivision plan for The Bluffs at Mauna Kea |
| 19 Feb 1997 | Design & Construction Requirements |
| 19 Feb 1997 | Homeowners Rules |
| 17 Mar 1997 | Declaration of Protective Covenants |
| 8 Jul 1998 | Kohler notes re advantages & disadvantages of Lot 6 & 9 |
| 15 Sep 1998 | Kohler letter to Federman re $2.6 million counter-offer |
| 21 Dec 1998 | Kohler handwritten note to Federman re discount for Lot 7 |
| 28 Dec 1998 | Dual Agency Agreement |
| 11 Jan 1999 | Preliminary Title Report for Lot 6 |
| 19 Jan 1999 | Tentative Seller Statement for Lot 6 |
| 25 Jan 1999 | Kohler letter to Won enc executed Addendum 1 |
| 27 Jan 1999 | Kohler Memo to Federman w/ enc part of subdivision plan which explains easement 28 |
| 27 Jan 1999 | Sales amount of Lot 7 recorded with the Hawaii County Property Tax |
| 11 Sep 2000 | Kato/Bell email exchange re new home building in setback area |
| 17 Oct 2000 | Bell letter to Reda (Hill Glazier) granting prelim approval for 2 pavilion structures in setback area |
| 20 Dec 2000 | Lum letter to Board re Bell resignation from the Design Committee |
| 22 Dec 2000 | Design Committee letter to Federmans re design review approvals |
| 27 Dec 2000 | Laber email to Ilic (Hill Glazier) re shoreline survey & SMA permit |
| 27 Dec 2000 | Emails between Ilic (Hill Glazier) & Laber re shoreline setback & guest kitchen |
| 13 Jan 2001 | Community Association memo to homeowners re design review process |
| 19 Jan 2001 | Design Committee Letter to Federmans re 001222 Letter |
| 24 Jan 2001 | Mielcke letter to Reddy |
| 20 Apr 2001 | Mielcke letter to Gordon re conceptual landscape plan for lot 5 |
| 23 Apr 2001 | Laber fax to Ilic (Hill Glazier) re Federman residence |
| 27 Apr 2001 | Yuen (HI County) letter to Laber re final approval |
| 1 May 2001 | Reinke email to Mielcke & Willis re call from Laber |
| 10 May 2001 | Kohler email to Mielcke re palapas |
| 15 may 2001 | Reddys letter to Mielcke re Federman lot 6 |
| 16 May 2001 | Laber fax to Ilic (Hill Glazier) re pool & pavilion roofs |
| 23 May 2001 | Mielcke letter to Laber re acceptable contig of structures in setback area |
| 11 Jul 2001 | Mielcke letter re resignation from Design Committee |
| 11 Jul 2001 | Reinke memo to Lum & Mielcke re Federman residence |
| 29 Aug 2001 | Laber letter to Stringer re view from Lot 7 |

Revere: Western Sunview Properties v Federman                14 June 2004
Preliminary Opinion Report                                          Page 18

| | |
|---|---|
| 7 Sep 2001 | Laber letter to Design Committee re monkey pod tree variance |
| 7 Sep 2001 | Laber letter to Design Committee re pavilion & pool variance |
| 23 Oct 2001 | Laber fax to Stringer re mitigation of view impact from lot 7 |
| 5 Oct 2001 | Federman letter to Committee confirming that final plans are in compliance except for variances requested |
| 19 Oct 2001 | Todd Cole Landscape Plans for Federman Residence shts L-2, L-10, 11, 12 |
| 14 Nov 2001 | Federman ltr to Stringer re liquid net worth & association w/ Gunderson |
| 27 Nov 2001 | Krueger email to Design Committee re Federman pavilions |
| 28 Nov 2001 | Gunderson email to Krueger and Design Committee re Federman pavilions |
| 27 Dec 2001 | Laber letter to Design Committee requesting variance for pool & deck |
| 5 Feb 2002 | Laber fax to Carillo re pavilion |
| 7 Feb 2002 | Krueger letter to Federmans re approval of driveway & monkey pod trees |
| 11 Apr 2002 | Email exchange between Laber & Federman |
| 17 Dec 2002 | Photo of coco palms planted at south makai landscape wall |
| 22 Dec 2002 | Laber letter to Tusher re bulletin change order summary |
| 27 Dec 2002 | Vita memo to Federmans re additional palms on makai side of building |
| 30 Dec 2002 | Federman email to Glazier re second kitchen |
| 10 Jan 2003 | Carrillo letter to Tusher re revised plans |
| 16 Jan 2003 | David Stringer Architects, Design Review Committee Worksheet for The Bluffs at Mauna Kea |
| 16 Jan 2003 | Federman email to Laber & Stratton re trees & getting approval from the Design Committee |
| 3 Mar 2003 | Krueger for Design Committee ltr to Federmans from re construction modification requests- items approved, items denied |
| 6 Mar 2003 | Photo View North from Lot 5 |
| 19 Mar 2003 | Laber fax to Glazier re Design Committee denied approval items |
| 20 Mar 2003 | Photo of lawn area finish graded |
| 28 Apr 2003 | Kent email to Vita re Federman construction |
| 28 Apr 2003 | Glazier responses to Federman email of 030428 |
| 30 Apr 2003 | Federman email re moving trail makai |
| 2 May 2003 | Federman email to Frost re planting of palms |
| 13 May 2003 | Federman email to Glazier re Hands plans |
| 19 Jun 2003 | Photo of pool & makai view from roof of Federmans |
| 7 Aug 2003 | Western Sunviews Complaint |
| 1 Oct 2003 | Paul Rosendahl, PhD of PHRI ltr to P.H. McEldowney, State of HI Historic Preservation Office re Western Sunview Properties, Amendment to PHRI Report 1404-091 597 Phase III Site Preservation Plan, Archeological Mitigation, The Bluffs at Mauna Kea |
| 16 Dec 2003 | P.H. McEldowney ltr to Paul Rosendahl re Amendment to PHRI Report on Archeological Mitigation Program for the Bluffs at Mauna Kea. |
| 6 Nov 2003 | Declaration of Terry Tusher |
| 5 Dec 2003 | Declaration of William Mielcke |
| 8 Dec 2003 | Declaration of Kathrin Kohler |
| | DRAFT Complaint 1st Amended |
| | Mauna Kea Testimony re Landscaping Credits |
| | Photo re pool area layout & equipment access ramp in place |
| | Photos of Federmans Pool |
| | Pre-construction photos taken from direction of lot 7 of lot 6 or views from lot 6 to ocean |

Revere: Western Sunview Properties v Federman                14 June 2004
Preliminary Opinion Report                                          Page 19

Depositions:
27 Aug 2001   Deposition of Lisa Reinke in Fogelsong case
24 Oct 2003   Condensed Depo Transcript of Joel Laber
24 Oct 2003   Exhibits to Deposition of Joel Laber
28 Oct 2003   Condensed Depo transcript of Lisa Reinke
28 Oct 2003   Exhibits to Deposition of Lisa Reinke
29 Nov 2003   Condensed depo transcript of Guy Hands
 2 Dec 2003   Condensed depo transcript of Julia Hands
 4 Dec 2003   Condensed depo transcript of Ronda Kent
 8 Dec 2003   Condensed depo transcript of Concepcion Federman
 9 Dec 2003   Condensed depo transcript of Irwin Federman
12 Dec 2003   Condensed depo transcript of Lorianne Gordon
24 Feb 2004   Condensed depo transcript of Terry Tusher (AOAO 30b6)
24 Feb 2004   Exhibits to Deposition of Terry Tusher (AOAO 30b6)


5.2  Mauna Kea Properties Documents Reviewed:

Project Documents for The Bluffs at Mauna Kea
1.   Amended Public Offering Statement
2.   Specimen Sales Contract
3.   Specimen Limited Warranty Deed
4.   Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna
     Kea
5.   By-Laws of The Bluffs at Mauna Kea Community Association
6.   Articles of Incorporation for The Bluffs at Mauna Kea Community Association
7.   Annexing Declaration -Hapuna Resort
8.   Declaration of Protective Covenants, Conditions and Restrictions for Hapuna Resort
9.   By-laws of the Hapuna Community Association
10.  Articles of Incorporation for the Hapuna Community Association
11.  Design and Construction Requirements for Homes (the Design and Construction
     Requirements)
12.  The Bluffs at Mauna Kea Homeowners' Rules
13.  Escrow Agreement - The Bluffs at Mauna Kea
14.  Limited Warranty Deed - Common Area and Roadway Lots
15.  Grant of Easement (Pedestrian Access)
16.  Grant of Easement (Pedestrian Access - SKRC)
17.  Easement Agreement
18.  Grant of Easement (Hapuna Resort Entry Road - Mauna Kea Development Corp.)
19.  Grant of Easement (Underpass Easement)
20.  Site Plan
21.  Documents for other Mauna Kea Properties developments
22.  The CC&R's for the Fairways at Mauna Kea North
23.  The Design and Construction Requirements for the Fairways at Mauna Kea North
24.  The Design and Construction Requirements for the Mauna Kea Fairways
25.  The Design and Construction Requirements for the High Bluffs at Mauna Kea

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

1.1  RESUME OF:  JAMES N. REINHARDT, AIA, CSI                    **April 2004**

**EMPLOYMENT:**
Architectural Diagnostics, Ltd., Honolulu, HI; President, 1990 to present.
TRB/Hawaii, Ltd., Honolulu, HI; President, 1982 - 1990
CJS Group Architects, Honolulu, HI; Principal, 1980 - 1982
Anderson/Johnson/Reinhardt Ltd. Honolulu, HI; President, 1972 - 1980
Au, Cutting, Smith & Associates, Honolulu, HI; Associate, 1968 - 1972
Mithun & Associates, Bellevue, WA; 1966 - 1968

**EDUCATION:**
Dartmouth College, Hanover, NH; Bachelor of Arts- Art History 1960
University of California, Berkeley, CA; Department of Architecture, 1960 - 1962
University of Washington, Seattle, WA; Bachelor of Architecture, 1966

**LICENSES:**
Architect- Washington #1835, 1969 to present
Architect- Hawaii #2731, 1970 to present
Architect- Colorado #306440, 2002 to present

**PROFESSIONAL ASSOCIATIONS:**
American Institute of Architects (AIA), 1969 to present
    President, Hawaii Society:  1979
    Vice president, Hawaii Society: 1978
    Secretary, Hawaii Society: 1976
    Director, Hawaii Society: 1973 & 74
    Editor, Hawaii Architect:  1972 - 1978
Construction Specifications Institute (CSI), 1983 to present
    Construction Document Technologist, 1992 to present
    Technical Committee, 1997-2000
American Society of Testing and Materials (ASTM)
International Conference of Building Officials (ICBO)
American Arbitration Association (AAA), 1986 to 2002
    Large, Complex Case Panel, 1993 to 2002
Hawaii Pest Control Association
    Industry Improvement Committee 1999-2001
    Termite Inspection Training Seminars, Instructor, 1995-2001
Advisory Committee to the Honolulu Building Department on Termite Protection 1996-99

**CONTINUING EDUCATION:**
Louisiana State University, Agriculture Research Center; Practices to Prevent Subterranean
    Termite Damage.  June 2000
ASTM Symposium; Science & Technology of Building Seals, Sealants and Waterproofing. '98
Univ. of Wisconsin, College of Engineering; Plaza and Below-Grade Waterproofing. 1996
Univ. of Wisconsin, College of Engineering; Ensuring Failure Free Buildings. 1994
Univ. of Hawaii, School of Architecture; Wood Behavior and Treatment. 1990
ASTM Symposium; Water in Exterior Building Walls- Problems and Solutions. 1990
Univ. of Hawaii, School of Architecture; Chemistry of Construction Materials. 1987
Univ. of Hawaii, School of Architecture; Wood Characteristics, Behavior and Problems. 1981
Univ. of Hawaii, Depart of Continuing Education; Construction Litigation. 1979
Univ. of Hawaii, School of Architecture; Water Infiltration, Theory and Practice.  1977

RESUME OF JAMES N. REINHARDT                                              Page 21

**TEACHING:**

"Construction Defect Claims in Hawaii" Lorman Ed. Svcs. Apr 2004
"Build and Buy Green/Hawaii: Health & Indoor Air Quality", BIA, EPA, GSA, DBET, Apr '04
"Solving Water Infiltration and Mold Problems in Hawaii," Lorman Ed. Svcs. Mar 2004
"History and Design of Curtain Walls", Roofing Consultants Institute. Jan '04
"Mold Prevention thru Design- Case Studies," Institute for Mold Control, Univ. of HI, Jun '03
"Build and Buy Green/Hawaii: Health & Indoor Air Quality", BIA, EPA, GSA, DBET, Apr '03
"Solving Water Intrusion and Mold Problems in Hawaii", Lorman Educational Svcs. Mar '03
"Sick Buildings in Hawaii", State of Hawaii, Department of Health.  July 2002
"Failures in Fiber-Cement Shingles in Hawaii", Roofing Consultants Institute. Jan '02
"Selection of Residential Windows", AIA, Honolulu Chapter.  November 2001
"Termite Protection Practices in Hawaii". Tokyo Termite Symposium.  May 2001
"Termite Protection Practices in Hawaii", Louisiana State Univ, Agriculture Research Center,
   Conference- Practices to Prevent Subterranean Termites Damage, June 2000
"Termite Protection of Wood Frame Structures in HI", Amer. Wood Preservers Assoc. May 2000
"Toxic Mold in the Home", Community Associations Institute. 17 February 2000
"Installation Procedures for Basaltic Termite Barrier", Univ. of Hawaii, Dept of Entomology '98
"Maintenance and Renewal of your 20 year old Building", Community Associations Institute. 1998
"Termite Prevention in Wood Frame Structures II", AIA- Honolulu Chapter. 1997
"Coating Failures", Construction Specifications Institute. Hawaii Chapter. 1997
"Termite Prevention in Existing Structures", Community Associations Institute. 1997
"Wood Treatment for Hawaii", AIA, Honolulu Chapter. 1996
"Hazards of Hawaii- Termites", AIA, Hawaii Island Section. 1995
"Termite Prevention in Wood Frame Condominiums", Community Associations Institute. '95
"Termite Mitigation Measures for Design". Univ. of HI, School of Architecture w/ AIA, Honolulu. '94
"Termite Inspector Training Course", Hawaii Pest Control Association. 1993 - 2001
"Modified Bitumen Roofing Systems", Hawaii Roofing Contractors Association. 1988.
"Materials and Methods of Construction". Univ. of Hawaii, School of Architecture. 1976-87.

**PUBLICATIONS:**

Building Management Hawaii, "The Destructive Power of Fire"; Elisha & Reinhardt, Aug/Sep 02
Journal of Sociobiology, "Installation Guidelines for the Basaltic Termite Barrier: A Particle
   Barrier to Formosan Subterranean Termites"; Yates, Grace & Reinhardt, Vol 35, No.1, 2000
Journal of the International Society of Indoor Air Quality and Climate, "Air Sampling and
   the Extent of Mold Contamination in Some Mold-Damaged Buildings", Miller, Haisley &
   Reinhardt, Vol X-2000, p. 146-151.
Pacific Rim Standards, "Troubleshooting Waterproofing Failures". June/July '98
The Community Assoc. Inst. Reference Book, "Termite Control in Existing Bldgs";'96,'97,'98
Hawaii/Pacific Architecture, "The Wood Treatment Wars", "Alternative Wood Products", Jul '96
Hawaii/Pacific Architecture, "Wood Treating- A Primer", March '96
Hawaii/Pacific Architecture, "Single Barrier vs Multi-Barrier Waterproofing", Feb '96
Hawaii/Pacific Architecture, "Weapons Against Termites", October '95
Hawaii/Pacific Architecture, "Termite Mitigation Measures in Design", January '95
Hawaii/Pacific Architecture, "Moisture in Buildings", January '95
Hawaii Architect, "Solving Flashing Problems", July 1988
Hawaii Architect, "Designing a Waterproof Structure", May 1987
Hawaii Architect, "Five Common Waterproofing Problems", May 1986
Hawaii Architect, "Renovating Chinatown's Oahu Market", May 1984
AIA Journal, "A Climate-Bred System of House Building", March '82.

**EXPERT QUALIFICATIONS:** State of Hawaii, District Court, 1st & 2nd Circuits.
Architectural design, practice, and ethics, construction and construction industry practices,
waterproofing, window systems, repair and maintenance of buildings, selection and evaluation of
flooring materials, design and evaluation of steps and stairways, interpretation of construction
contracts and documents, interpretation of property restrictions and restrictive covenants.

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

1.2  SUBJECT: Reinhardt Background with CC&R Issues                    DATE: 17 April 2004

| | |
|---|---|
| AOAO Hillside Terrace v Arnold | Client- AOAO.  Dispute over construction done without AOAO approval.  Examination of CC&R's, Design Rules and the as-built conditions.  Area and structural calculations.  Court Testimony. Monitoring of the required corrective measures.  Neeley & Anderson (Anne Anderson) 2003. |
| Fogelsong v Robertson | Client- Homeowner.  Dispute over alleged violations of subdivision CC&R's and Design Rules.  Examination of CC&R's, Design Rules, construction documents and the site. Construction of a scale model and computer model.  Arbitration hearing testimony.  Jerry Hiatt 2001-02. |
| Elder v Gunderson | Client- Homeowner.  Dispute over compliance with the CC&R's and Design Rules.  Examination of CC&R's, Design Rules, construction documents and the site. Bays, Deaver, Lung, Rose & Baba 2000 |
| West Molokai Homeowners Association v Younge | Co-Mediator with Keith Hunter of a dispute between homeowners association and an owner regarding compliance with the CC&R's. Monitoring of compliance following settlement.  Dispute Prevention & Resolution. 1999 |
| Kahala Community Assoc v Suenaga/Dinsmore | Client- Homeowner.  Review of subdivision CC&R's as applied to the owner's construction.  Court testimony.  Bays Deaver Hiatt Lung & Rose (Crystal Rose) '97. |
| Becker v Kaanapali Hillside Association | Client- Association.  Examination of subdivision CC&R's relating to view protection, examination of design review committee's obligations and authority.  Larry Lee. 1995 |
| Fong v Hashimoto | Client- Home Owner. Dispute over yard and height restrictions in 1938 subdivision.  Investigation and evaluation of deed restrictions. Court testimony.  Ning, Lilly & Jones (Michael Lilly) 1995 |
| Hiner v Hoffman | Client- Community Association.  Dispute over compliance of a new house with the subdivision CC&R's.  Examination of building and zoning codes. Ning, Lilly & Jones (Michael Lilly) 1995. |
| Princeville HOA v Dunatov: | Client- Homeowners Association. Dispute over violations of subdivision CC&R's and Design Rules.  Examination of the CC&R's & DR's, building codes, construction documents and as-built conditions.  Foley, Maehara, Nip & Chang (Porter) 1994. |
| Newtown Estates Design Guidelines: | Client- Association. Review of CC&R's relating to subdivision of lots and design for additions to existing houses.  Review of plan submissions. Development of options. Neeley & Anderson. 1993 |

Reinhardt Background with CC&R Issues                                    Page 23

| | |
|---|---|
| Hawaii Loa Ridge Honolulu, HI | Member of the committee to develop the CC&R's for future development. 1981-82 |
| Subdivision in Bellevue, WN | Consultant to the Design Review Committee- retained to review plans submitted to the Design Review Committee. Reviewed submittals over a two year period. 1966-68 |
| Mountain Village Telluride, CO. | Submitted residence plans for review and approval. Approval received. 2004 |
| Lake Durango Estates Durango, CO. | Submitted residence plans for review and approval. Approval received. 1998 |
| Wiliwilinui Ridge Subdivision, Honolulu | Submitted residence plans for review and approval. Approval received. 1972 |

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

**1.3 COURT QUALIFICATIONS** - James N. Reinhardt, AIA, CSI          April 2003

1.  AOAO Imperial Plaza v DMJM et al — Qualification as an expert in architecture and construction. 1st Circuit. Judge Hifo. 2003

2.  AOAO Hillside Terrace v James Arnold — Qualification as an expert in architecture and construction. 1st Circuit. Judge Hifo. 2003

3.  Standard Sales v Ikazaki, Devens, Lo, Youth & Nakano — Qualification as an expert in architecture and the interpretation of contracts relative to construction. 1st Circuit. Judge Marks. 2001

4.  Birch v HOPACO — Qualification as expert in architecture. 1st Circuit. Judge Nakatani. 1998

5.  Kahala Community Assoc'n v Suenaga/Dinsmore — Qualification as an expert in architecture and in interpreting subdivision restrictive covenants as an architect. 1st Circuit. Judge Weil. 1997

6.  Fong v Hashimoto: — Qualification as expert in architecture and interpretation of property restrictions. 1st Circuit. Judge Kochi. 1995

7.  Kusano v Park — Qualification as expert in architecture and construction. 1st Circuit. Judge Kochi. 1995

8.  Makaua Villages v Zirbes — Qualification as expert in architecture. 1st Circuit. Judge Blondin. 1995

9.  Gambino v MFD Partners: — Qualification as an expert in architectural design and in the selection and evaluation of flooring materials. 1st Circuit. Judge Chang. 1994

10. Samson v GTE: — Qualification as an expert in the design of and the service and maintenance of utility infrastructures. 1st Circuit. Judge Luke. 1993

11. Hanson v FB Development: — Qualification as an expert in architectural design and site development standards. 2nd Circuit. Judge Mossman. 1992

12. Penner v McDonald's: — Qualification as an expert in architectural design and in the selection and evaluation of flooring materials. 1st Circuit. Judge Crandall. 1991

13. Jacoby v AOAO Marco Polo: — Qualification as an expert in evaluation of the state of repair and maintenance of buildings. 1st Circuit. Judge Milks. 1990

| COURT QUALIFICATIONS | James N. Reinhardt | Page 25 |
|---|---|---|

14. AMFAC v Cummins:    Qualification as an expert in architecture and construction industry practices. 1st Circuit. Judge Sasaki  1990

15. Jennings v Kurisu:    Qualification as an expert in architectural practice and ethics.  1st Circuit.  1982

16. ??? v The Tomato:    Qualification as an expert in architectural design and in the design and evaluation of steps and stairways. 1st Circuit.  Judge Chang.  1981

17. Kuroda v Jamal Inc., Ohta Wolf & McCormack Realtors    Qualification as an expert in architectural design, waterproofing and window system evaluation.  Judge Greig, 1st Circuit. 1979

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

1.3  DEPOSITIONS in LAST 4 YEARS- James N. Reinhardt, AIA, CSI          **April 2003**

1.   Robertson v Mauna Kea Properties     16 Nov '03
     Deposition as an expert in a related previous case (see Fogelsong)

2.   AOAO Imperial Plaza v DMJM et al
     6 May '00; 25 & 25 Jul '00; 9, 13 thru 17 Jun '00; 8 Sep '00; 25 Apr '03; 2 May '03
     Deposition as the expert for the Association of Apartment Owners.

3.   Owners of Hokulei Estates v. Schuler Homes, et al   25, 25 Mar '03; 4, 10, 21 Apr '03
     Deposition as the expert for the homeowners participating in the suit.

4.   Bingman v Jenkins                    8 Jan '03
     Deposition as the expert for the home owner

5.   Faumuina v City and County of Honolulu     28 Oct '02
     Deposition as an expert for the Plaintiffs

6.   Moana Hotel v James Hardie           10 Sep '02
     Deposition as an expert for James Hardie

7.   One Kalakaua Partners v WATG         18 Jan '02
     Deposition as an expert for the Plaintiffs

8.   Harbor Court v Lacayo, et al         28 & 30 Aug '01; 12 & 25 Feb '02; 3 Apr '02
     Deposition as a member of the design team

9.   Fogelsong v Robertson               28 Jun '01; 4 Oct '01; 5 Nov '01
     Deposition as an expert for the Plaintiff

10.  Soeda v Design Partners             3 Nov '00
     Deposition as an expert for the architects

11.  West Loch Fairway v Horita Realty     4 Aug '00
     Deposition as an expert for the AOAO

12.  Santana Partitions v Bobrick        29 Jul '00
     Deposition as an expert for the Plaintiff

# Architectural
# Diagnostics Ltd.
Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

1.1  RESUME OF:  JAMES N. REINHARDT, AIA, CSI                    April 2004

**EMPLOYMENT:**

Architectural Diagnostics, Ltd., Honolulu, HI; President, 1990 to present.
TRB/Hawaii, Ltd., Honolulu, HI; President, 1982 - 1990
CJS Group Architects, Honolulu, HI; Principal, 1980 - 1982
Anderson/Johnson/Reinhardt Ltd. Honolulu, HI; President, 1972 - 1980
Au, Cutting, Smith & Associates, Honolulu, HI; Associate, 1968 - 1972
Mithun & Associates, Bellevue, WA; 1966 - 1968

**EDUCATION:**

Dartmouth College, Hanover, NH; Bachelor of Arts- Art History 1960
University of California, Berkeley, CA; Department of Architecture, 1960 - 1962
University of Washington, Seattle, WA; Bachelor of Architecture, 1966

**LICENSES:**

Architect- Washington #1835, 1969 to present
Architect- Hawaii #2731, 1970 to present
Architect- Colorado #306440, 2002 to present

**PROFESSIONAL ASSOCIATIONS:**

American Institute of Architects (AIA), 1969 to present
   President, Hawaii Society:  1979
   Vice president, Hawaii Society: 1978
   Secretary, Hawaii Society: 1976
   Director, Hawaii Society: 1973 & 74
   Editor, Hawaii Architect:  1972 - 1978
Construction Specifications Institute (CSI), 1983 to present
   Construction Document Technologist, 1992 to present
   Technical Committee, 1997-2000
American Society of Testing and Materials (ASTM)
International Conference of Building Officials (ICBO)
American Arbitration Association (AAA), 1986 to 2002
   Large, Complex Case Panel, 1993 to 2002
Hawaii Pest Control Association
   Industry Improvement Committee 1999-2001
   Termite Inspection Training Seminars, Instructor, 1995-2001
Advisory Committee to the Honolulu Building Department on Termite Protection 1996-99

**CONTINUING EDUCATION:**

Louisiana State University, Agriculture Research Center; Practices to Prevent Subterranean
   Termite Damage. June 2000
ASTM Symposium; Science & Technology of Building Seals, Sealants and Waterproofing. '98
Univ. of Wisconsin, College of Engineering; Plaza and Below-Grade Waterproofing. 1996
Univ. of Wisconsin, College of Engineering; Ensuring Failure Free Buildings. 1994
Univ. of Hawaii, School of Architecture; Wood Behavior and Treatment. 1990
ASTM Symposium; Water in Exterior Building Walls- Problems and Solutions. 1990
Univ. of Hawaii, School of Architecture; Chemistry of Construction Materials. 1987
Univ. of Hawaii, School of Architecture; Wood Characteristics. Behavior and Problems. 1981
Univ. of Hawaii, Depart of Continuing Education; Construction Litigation. 1979
Univ. of Hawaii, School of Architecture; Water Infiltration, Theory and Practice.  1977

RESUME OF JAMES N. REINHARDT                                        Page 21

TEACHING:

"Construction Defect Claims in Hawaii" Lorman Ed. Svcs. Apr 2004
"Build and Buy Green/Hawaii: Health & Indoor Air Quality", BIA, EPA, GSA, DBET, Apr '04
"Solving Water Infiltration and Mold Problems in Hawaii," Lorman Ed. Svcs. Mar 2004
"History and Design of Curtain Walls", Roofing Consultants Institute, Jan '04
"Mold Prevention thru Design- Case Studies," Institute for Mold Control, Univ. of HI, Jun '03
"Build and Buy Green/Hawaii: Health & Indoor Air Quality", BIA, EPA, GSA, DBET, Apr '03
"Solving Water Intrusion and Mold Problems in Hawaii", Lorman Educational Svcs. Mar '03
"Sick Buildings in Hawaii", State of Hawaii, Department of Health.  July 2002
"Failures in Fiber-Cement Shingles in Hawaii", Roofing Consultants Institute. Jan '02
"Selection of Residential Windows", AIA, Honolulu Chapter.  November 2001
"Termite Protection Practices in Hawaii", Tokyo Termite Symposium.  May 2001
"Termite Protection Practices in Hawaii", Louisiana State Univ. Agriculture Research Center,
   Conference- Practices to Prevent Subterranean Termites Damage, June 2000
"Termite Protection of Wood Frame Structures in HI", Amer. Wood Preservers Assoc. May 2000
"Toxic Mold in the Home", Community Associations Institute. 17 February 2000
"Installation Procedures for Basaltic Termite Barrier", Univ. of Hawaii, Dept of Entomology '98
"Maintenance and Renewal of your 20 year old Building", Community Associations Institute. 1998
"Termite Prevention in Wood Frame Structures II", AIA- Honolulu Chapter. 1997
"Coating Failures", Construction Specifications Institute. Hawaii Chapter. 1997
"Termite Prevention in Existing Structures", Community Associations Institute. 1997
"Wood Treatment for Hawaii", AIA, Honolulu Chapter. 1996
"Hazards of Hawaii- Termites", AIA, Hawaii Island Section. 1995
"Termite Prevention in Wood Frame Condominiums", Community Associations Institute. '95
"Termite Mitigation Measures for Design", Univ. of HI, School of Architecture w/ AIA, Honolulu. '94
"Termite Inspector Training Course", Hawaii Pest Control Association. 1993 - 2001
"Modified Bitumen Roofing Systems", Hawaii Roofing Contractors Association. 1988.
"Materials and Methods of Construction", Univ. of Hawaii, School of Architecture. 1976-87.

PUBLICATIONS:

Building Management Hawaii, "The Destructive Power of Fire": Elisha & Reinhardt. Aug/Sep 02
Journal of Sociobiology, "Installation Guidelines for the Basaltic Termite Barrier: A Particle
   Barrier to Formosan Subterranean Termites"; Yates, Grace & Reinhardt, Vol 35, No.1, 2000
Journal of the International Society of Indoor Air Quality and Climate. "Air Sampling and
   the Extent of Mold Contamination in Some Mold-Damaged Buildings". Miller, Haisley &
   Reinhardt. Vol X-2000, p. 146-151.
Pacific Rim Standards, "Troubleshooting Waterproofing Failures". June/July '98
The Community Assoc. Inst. Reference Book. "Termite Control in Existing Bldgs"; '96,'97,'98
Hawaii/Pacific Architecture, "The Wood Treatment Wars", "Alternative Wood Products". Jul '96
Hawaii/Pacific Architecture, "Wood Treating- A Primer", March '96
Hawaii/Pacific Architecture, "Single Barrier vs Multi-Barrier Waterproofing", Feb '96
Hawaii/Pacific Architecture, "Weapons Against Termites". October '95
Hawaii/Pacific Architecture, "Termite Mitigation Measures in Design", January '95
Hawaii/Pacific Architecture, "Moisture in Buildings", January '95
Hawaii Architect, "Solving Flashing Problems", July 1988
Hawaii Architect, "Designing a Waterproof Structure", May 1987
Hawaii Architect, "Five Common Waterproofing Problems", May 1986
Hawaii Architect, "Renovating Chinatown's Oahu Market". May 1984
AIA Journal, "A Climate-Bred System of House Building", March '82.

EXPERT QUALIFICATIONS: State of Hawaii, District Court. 1st & 2nd Circuits.
   Architectural design, practice, and ethics, construction and construction industry practices,
   waterproofing, window systems, repair and maintenance of buildings, selection and evaluation of
   flooring materials, design and evaluation of steps and stairways, interpretation of construction
   contracts and documents, interpretation of property restrictions and restrictive covenants.

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

1.2  SUBJECT: Reinhardt Background with CC&R Issues                **DATE:** 17 April 2004

| | |
|---|---|
| AOAO Hillside Terrace<br>v Arnold | Client- AOAO.  Dispute over construction done without AOAO approval.  Examination of CC&R's, Design Rules and the as-built conditions.  Area and structural calculations. Court Testimony.  Monitoring of the required corrective measures.  Neeley & Anderson (Anne Anderson) 2003. |
| Fogelsong v Robertson | Client- Homeowner.  Dispute over alleged violations of subdivision CC&R's and Design Rules.  Examination of CC&R's, Design Rules, construction documents and the site.  Construction of a scale model and computer model.  Arbitration hearing testimony.  Jerry Hiatt 2001-02. |
| Elder v Gunderson | Client- Homeowner.  Dispute over compliance with the CC&R's and Design Rules.  Examination of CC&R's, Design Rules, construction documents and the site. Bays, Deaver, Lung, Rose & Baba 2000 |
| West Molokai Homeowners Association v Younge | Co-Mediator with Keith Hunter of a dispute between homeowners association and an owner regarding compliance with the CC&R's.  Monitoring of compliance following settlement.  Dispute Prevention & Resolution. 1999 |
| Kahala Community Assoc v Suenaga/Dinsmore | Client- Homeowner.  Review of subdivision CC&R's as applied to the owner's construction.  Court testimony.  Bays Deaver Hiatt Lung & Rose (Crystal Rose) '97. |
| Becker v Kaanapali Hillside Association | Client- Association.  Examination of subdivision CC&R's relating to view protection, examination of design review committee's obligations and authority.  Larry Lee. 1995 |
| Fong v Hashimoto | Client- Home Owner. Dispute over yard and height restrictions in 1938 subdivision.  Investigation and evaluation of deed restrictions. Court testimony.  Ning, Lilly & Jones (Michael Lilly) 1995 |
| Hiner v Hoffman | Client- Community Association.  Dispute over compliance of a new house with the subdivision CC&R's.  Examination of building and zoning codes.  Ning, Lilly & Jones (Michael Lilly) 1995. |
| Princeville HOA v Dunatov: | Client- Homeowners Association. Dispute over violations of subdivision CC&R's and Design Rules. Examination of the CC&R's & DR's, building codes, construction documents and as-built conditions.  Foley, Maehara, Nip & Chang (Porter) 1994. |
| Newtown Estates Design Guidelines: | Client- Association. Review of CC&R's relating to subdivision of lots and design for additions to existing houses.  Review of plan submissions. Development of options. Neeley & Anderson, 1993 |

Reinhardt Background with CC&R Issues                                    Page 23

| | |
|---|---|
| Hawaii Loa Ridge<br>Honolulu, HI | Member of the committee to develop the CC&R's for future<br>development.  1981-82 |
| Subdivision in<br>Bellevue, WN | Consultant to the Design Review Committee- retained to review<br>plans submitted to the Design Review Committee.  Reviewed submittals<br>over a two year period.  1966-68 |
| Mountain Village<br>Telluride, CO. | Submitted residence plans for review and approval.  Approval<br>received.  2004 |
| Lake Durango Estates<br>Durango, CO. | Submitted residence plans for review and approval.  Approval<br>received. 1998 |
| Wiliwilinui Ridge<br>Subdivision, Honolulu | Submitted residence plans for review and approval.  Approval<br>received.  1972 |

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

---

## 1.3  COURT QUALIFICATIONS - James N. Reinhardt, AIA, CSI                April 2003

1.  AOAO Imperial Plaza v
    DMJM et al
    Qualification as an expert in architecture and
    construction.  1st Circuit.  Judge Hifo. 2003

2.  AOAO Hillside Terrace
    v James Arnold
    Qualification as an expert in architecture and
    construction.  1st Circuit.  Judge Hifo. 2003

3.  Standard Sales v Ikazaki,
    Devens, Lo, Youth & Nakano
    Qualification as an expert in architecture and the
    interpretation of contracts relative to construction.
    1st Circuit.  Judge Marks. 2001

4.  Birch v HOPACO
    Qualification as expert in architecture.
    1st Circuit.  Judge Nakatani.  1998

5.  Kahala Community Assoc'n
    v Suenaga/Dinsmore
    Qualification as an expert in architecture and in
    interpreting subdivision restrictive covenants as an
    architect.  1st Circuit.  Judge Weil.  1997

6.  Fong v Hashimoto:
    Qualification as expert in architecture and interpretation
    of property restrictions.  1st Circuit.  Judge Kochi.  1995

7.  Kusano v Park
    Qualification as expert in architecture and construction.
    1st Circuit.  Judge Kochi.  1995

8.  Makaua Villages v Zirbes
    Qualification as expert in architecture.
    1st Circuit.  Judge Blondin.  1995

9.  Gambino v MFD Partners:
    Qualification as an expert in architectural design and in
    the selection and evaluation of flooring materials.
    1st Circuit.  Judge Chang.  1994

10. Samson v GTE:
    Qualification as an expert in the design of and the
    service and maintenance of utility infrastructures.
    1st Circuit.  Judge Luke.  1993

11. Hanson v FB Development:
    Qualification as an expert in architectural design and site
    development standards.  2nd Circuit.  Judge Mossman. 1992

12. Penner v McDonald's:
    Qualification as an expert in architectural design and in
    the selection and evaluation of flooring materials.
    1st Circuit.  Judge Crandall.  1991

13. Jacoby v AOAO Marco Polo:
    Qualification as an expert in evaluation of the state of
    repair and maintenance of buildings. 1st Circuit.  Judge
    Milks. 1990

---

| COURT QUALIFICATIONS | James N. Reinhardt | Page 25 |
| --- | --- | --- |

14. AMFAC v Cummins:

Qualification as an expert in architecture and construction industry practices. 1st Circuit. Judge Sasaki 1990

15. Jennings v Kurisu:

Qualification as an expert in architectural practice and ethics. 1st Circuit. 1982

16. ??? v The Tomato:

Qualification as an expert in architectural design and in the design and evaluation of steps and stairways. 1st Circuit. Judge Chang. 1981

17. Kuroda v Jamal Inc., Ohta Wolf & McCormack Realtors

Qualification as an expert in architectural design, water-proofing and window system evaluation. Judge Greig, 1st Circuit. 1979

# Architectural
# Diagnostics Ltd.

Building Diagnostics • Failure Analysis • Remedial Architecture • Architecture

1.3  DEPOSITIONS in LAST 4 YEARS- James N. Reinhardt, AIA, CSI          April 2003

1. Robertson v Mauna Kea Properties     16 Nov '03
   Deposition as an expert in a related previous case (see Fogelsong)

2. AOAO Imperial Plaza v DMJM et al
   6 May '00; 25 & 25 Jul '00; 9, 13 thru 17 Jun '00; 8 Sep '00; 25 Apr '03; 2 May '03
   Deposition as the expert for the Association of Apartment Owners.

3. Owners of Hokulei Estates v. Schuler Homes, et al   25, 25 Mar '03; 4, 10, 21 Apr '03
   Deposition as the expert for the homeowners participating in the suit.

4. Bingman v Jenkins                     8 Jan '03
   Deposition as the expert for the home owner

5. Faumuina v City and County of Honolulu       28 Oct '02
   Deposition as an expert for the Plaintiffs

6. Moana Hotel v James Hardie           10 Sep '02
   Deposition as an expert for James Hardie

7. One Kalakaua Partners v WATG        18 Jan '02
   Deposition as an expert for the Plaintiffs

8. Harbor Court v Lacayo, et al         28 & 30 Aug '01; 12 & 25 Feb '02; 3 Apr '02
   Deposition as a member of the design team

9. Fogelsong v Robertson                28 Jun '01; 4 Oct '01; 5 Nov '01
   Deposition as an expert for the Plaintiff

10. Soeda v Design Partners             3 Nov '00
    Deposition as an expert for the architects

11. West Loch Fairway v Horita Realty    4 Aug '00
    Deposition as an expert for the AOAO

12. Santana Partitions v Bobrick        29 Jul '00
    Deposition as an expert for the Plaintiff