**EXHIBIT 10**

# STELLMACHER & SADOYAMA, LTD.

Real Estate Appraisers, Arbitrators and Counselors / Feasibility and Market Analysts

1042 Fort Street Mall / Suite 300 / Honolulu, Hawaii 96813 / Phone (808) 545-2622 / Fax 545-3743

February 14, 2005

Chad P. Love, Esquire
Love & Narikiyo, LLC
1164 Bishop Street, Suite 1105
Honolulu, Hawaii 96813

Re: <u>Western Sunview Properties, LLC vs. Irwin Federman, etal. Civil No. CV03-00463 DAE/LEK</u>

Dear Mr. Love:

This report responds to your request for appraisal services regarding several valuation issues relative to properties owned by Western Sunview Properties and Irwin Federman within "The Bluffs at Mauna Kea" project located in Waimea, South Kohala, Hawaii. The two subject properties are identified below:

| Third Division Tax Map Key | Property Owner | Land Area in Sq. Ft. | Property Type |
|---|---|---|---|
| 6-2-14-05 | Western Sunview Properties | 38,262 | Residential |
| 6-2-14-06 | Irwin Federman | 48,020 | Residential |

The intended use of this appraisal is to assist in preparing for the above captioned litigation. This report presents a summary of our analyses for three value estimates regarding the subject properties. Our analyses and the data disclosed by our research and investigation are set forth in the accompanying summary report. This analysis has been performed in conformance with and is subject to the requirements of the Code of Professional Ethics and Standards of Professional Conduct of the Appraisal Institute (AI).

The first issue is the impact on value to the property owned by Western Sunview Properties resulting from the project developer's practice of providing "undisclosed discounts" to lot buyers.

It is our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated impact on value to the property owned by Western Sunview Properties resulting from the project developer's practice of providing "undisclosed discounts" to lot buyers, appraised as of September 21, 1999 and reported February 14, 2005 was:

<u>FOUR HUNDRED THOUSAND DOLLARS</u>
($400,000)

Chad P. Love, Esqui.
February 14, 2005
Page 2

The second issue is the diminution in value to the property owned by Western Sunview Properties resulting from the construction of the pool, spa, decking, terraces, bar and other structures in the Special Setback Area on the Federmans' property.



It is our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated diminution in value resulting from the construction in the Special Setback Area appraised as of February 1, 2005 and reported February 14, 2005 was:

SEVEN HUNDRED THOUSAND DOLLARS
($700,000)

The third issue is the increase in value to the property owned by the Federmans' resulting from the construction of the pool, spa, decking, terraces, bar and other structures in the Special Setback Area on the Federmans' property.

It is our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated increase in value resulting from the construction in the Special Setback Area, appraised as of February 1, 2005 and reported February 14, 2005 was:

EIGHT HUNDRED FIFTY THOUSAND DOLLARS
($850,000)

We appreciate the opportunity to have performed this appraisal.

Sincerely,

STELLMACHER & SADOYAMA, LTD.

Richard A. Stellmacher, MAI, CRE
President

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **I.** | **ASSIGNMENT AND SUMMARY** | 1 |
| | A.   Assignment | 1 |
| | B.   Summary of Conclusions | 1 |
| | C.   Definition of Terms | 2 |
| | D.   Limiting Conditions and Assumptions | 3 |
| **II.** | **ECONOMIC BACKGROUND** | 6 |
| **III.** | **ENVIRONS** | 7 |
| **IV.** | **PROPERTY DATA** | 9 |
| | A.   Identification | 9 |
| | B.   Easements and Restrictions | 9 |
| | C.   Utilities | 9 |
| | D.   Zoning | 9 |
| | E.   Assessed Value and Taxes | 10 |
| | F.   Flood Hazard District | 11 |
| | G.   Census Tract Number | 11 |
| | H.   Ownership | 11 |
| **V.** | **PROPERTY DESCRIPTION** | 12 |
| | A.   Land | 12 |
| | B.   Improvements | 12 |
| **VI.** | **VALUATION** | 13 |
| | A.   Rights Appraised | 13 |
| | B.   Highest and Best Use | 13 |
| | C.   Methodology | 14 |
| | D.   Site Value and the Impact of "Undisclosed Discounts" | 14 |
| | E.   Diminution in Value from Development in the Special Setback Area | 18 |
| | F.   Increase in Value from Development in the Special Setback Area | 19 |
| | G.   Concluded Value Estimates | 20 |
| **VII.** | **CERTIFICATION** | 22 |

Professional Qualifications

# I.    ASSIGNMENT AND SUMMARY

## A.    Assignment

Our assignment has been to provide three value estimates regarding the subject properties, which are located within "The Bluffs at Mauna Kea" project located in Waimea, South Kohala, Hawaii. The two subject properties are identified below:

| Third Division Tax Map Key | Property Owner | Land Area in Sq. Ft. | Property Type |
|---|---|---|---|
| 6-2-14-05 | Western Sunview Properties | 38,262 | Residential |
| 6-2-14-06 | Irwin Federman | 48,020 | Residential |

The intended use of this appraisal is to assist in preparing for litigation. This report presents a summary of our analyses for three value estimates regarding the subject properties. Our analyses and the data disclosed by our research and investigation are set forth in the accompanying summary report. This analysis has been performed in conformance with and is subject to the requirements of the Code of Professional Ethics and Standards of Professional Conduct of the Appraisal Institute (AI).

The dates of appraisal valuation are September 21, 1999 and February 1, 2005, reported on February 14, 2005.

## B.    Summary of Conclusions

Our conclusions regarding the property, based on our inspection of the site and its environs and our analysis of the market are summarized below:

1.    The subject properties are located within a resort development located in South Kohala, Hawaii. The subject subdivision is a luxury project known as "The Bluffs at Mauna Kea".

2.    Both subject properties are presently under construction and appear to be nearing completion. It is our understanding that the projected completion date for the property owned by Western Sunview Properties is May 1, 2005.

3.    It is our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated impact on value to the property owned by Western Sunview Properties resulting from the project developer's practice of providing "undisclosed discounts" to lot buyers, appraised as of September 21, 1999 and reported February 14, 2005 was $400,000.

4.    It is further our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated diminution in value in the Western Sunview Properties residence resulting from the construction in the Special Setback Area on the Federman property, appraised as of February 1, 2005 and reported February 14, 2005 was $700,000.

5.    It is further our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated increase in value to the Federman property resulting from the construction in the Special Setback Area, appraised as of February 1, 2005 and reported February 14, 2005 was $850,000.

## C.    Definition of Terms

Various special terms are used in this report. These terms are defined in the following paragraphs to assist the reader in understanding special appraisal terminology. The first five definitions are excerpts from the Third Edition of The Dictionary of Real Estate Appraisal, published by the Appraisal Institute, Chicago, Illinois, 1993.

### 1.    Market Value

Market Value is "the major focus of most real property appraisal assignments. Both economic and legal definitions of market value have been developed and refined. Continual refinement is essential to the growth of the appraisal professional".

The following definition has been agreed upon by agencies that regulate federal financial institutions in the United States including the Resolutions Trust Corporation (RTC):

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1.    Buyer and seller are typically motivated.

2.    Both parties are well informed or well advised, and acting in what they consider their best interests.

3.    A reasonable time is allowed for exposure in the open market.

4.    Payment is made in terms of cash in United States dollars or in terms of financial arrangements comparable thereto; and

The price represents the normal consideration for the property sold: unaffected by special or creative financing or sales concessions granted by anyone associated with the sale. (USPAP, 1992 edition)".

2.    **Highest and Best Use**

"The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability."

3.    **Fee Simple Estate**

"Absolute ownership unencumbered by any other interest or estate subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."

4.    **Leasehold Estate**

"The interest held by the lessee (the tenant or renter) through a lease conveying the rights of use and occupancy for a stated term under certain conditions."

5.    **Fee simple Estate**

"An ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others. The rights of the lessor (the fee simple owner) and the fee simple are specified by contract terms contained within the lease."

6.    **Hawaiian Terms**

The Hawaiian words "mauka" and "makai" are commonly used in the Islands as indicators of direction. The word "mauka" means toward the mountains and "makai" means toward the ocean.

D.    **Limiting Conditions and Assumptions**

The conduct of any appraisal is necessarily guided by, and its results influenced by, the terms of the assignment and the assumptions, which form the basis of the study. The following conditions and assumptions embodied in this report constitute the framework of our analysis and conclusions.

1.    This appraisal is based upon the present condition of the national economy and the present purchasing power of the dollar. Fuel and energy available are assumed to remain at the levels of the time of appraisal.

2.    This report expresses the opinion of the signers as of the date of appraisal; in no way has it been contingent upon the reporting of specified values or findings.

3.    It is assumed that the subject property is free and clear of any and all encumbrances other than those referred to herein, and no responsibility is assumed for matters of a legal nature. This report is not to be construed as rendering any opinion of title, which is assumed to be good and marketable. No title information or data regarding easements, which might adversely affect the use, access or development of the property, was found in our analysis.

4.    Any maps or plot plans reproduced and included in this report are intended only for the purpose of showing spatial relationships. They are not measured surveys or measured maps, and we are not responsible for topographic or surveying errors. No engineering tests were furnished. No liability is assumed for soil conditions, bearing capacity of the subsoil or for engineering matters relating to the existing structure.

5.    The appraiser is not required to give testimony or appear in court because of having made this appraisal, unless arrangements for the appearance and the fee for such appearance have been agreed upon by the person or corporation requiring such testimony.

6.    Information provided by informed local sources such as governmental agencies, financial institutions, realtors, buyers, sellers and others, was weighed in the light in which it was supplied and checked by secondary means where possible; however, no responsibility is assumed for possible misinformation.

7.    Possession of this report, or a copy thereof, does not carry with it the right of publication, and the report may not be used by any person or organization except the client without the previous written consent of the appraisers, and then only in its entirety.

8.    Disclosure of the contents of this report is governed by the By-laws and Regulations of the Appraisal Institute. The contents of this report may be divulged in confidence to an authorized committee of the AI. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser, or the firm with which he is connected), or any reference to the Appraisal Institute, or the MAI designation, shall be disseminated to the public through advertising, public relations, news, sale, or any public means of communication without the prior consent and approval of the appraisers.

STELLMACHER & SADOYAMA APPRAISAL JOB NO. 2278 AS OF FEB. 1, 2005 P. 4

9. When the appraisal report contains an allocation of the total valuation between land and improvements, such allocation applies only under the existing program of utilization. The separate valuations for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used.

10. When the appraisal report contains a valuation relating to an estate in land that is less than the whole fee simple estate, the value reported for such estate relates to a partial interest only in the real estate involved. The value of this partial interest plus the value of all other interests may or may not equal the value of the entire fee simple estate considered as a whole.

11. The appraisers have extensive experience in the valuation of properties like the subject and consider themselves competent to determine a fair and reasonable value for the subject property. Professional qualification(s) have been included in the report following the Certification.

12. Unless otherwise stated in this report, the existence of hazardous material, and/or gases, which may or may not be present on the property, were not observed by the appraiser. The appraiser has no knowledge of the existence of such materials or gases on or in the property. The appraiser, however, is not qualified to detect such substances. The presence of friable or non-friable asbestos building material, urea-formaldehyde foam insulation, poly-chlorinated biphenyl (PCB) filled transformers, aluminum based electrical wiring, or other elements of potentially hazardous materials not currently recommended by Uniform Building Codes may affect the value of the property that would cause a loss in value. No responsibility is assumed for any such conditions or for any expertise or engineering knowledge required to discover them. The client is urged to retain an expert in this field, if desired.

13. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey together with a detailed analysis of the requirements of the ADA could reveal that the property is not in compliance with one or more of the requirements of the act. If so, this fact could have a negative effect upon the value of the property. We did not consider possible noncompliance with the requirements of ADA in estimating the value of the property.

**II.    ECONOMIC BACKGROUND**

The subject properties are located in the South Kohala District of the Island of Hawaii, the largest island in the Hawaiian chain. Although Hawaii is located in the middle of the Pacific Ocean, approximately 2,400 miles from the nearest continent, the West Coast of the United States, it is a very desirable place to live. Hawaii enjoys a mild climate, good ventilation from the prevailing trade winds and great variety in terms of dry or wet areas, in terms of cool or warm areas, and in terms of level or sloping areas.

Hardly a day goes by without some sunshine. In an average year there are 108 clear days, 178 partly cloudy days and 79 cloudy days. The prevailing trade winds average about 10 to 15 miles per hour. High winds of 50 to 60 miles per hour are rare. There are occasional spells of still humidity known locally as "Kona weather."

The population has grown slowly and steadily. The population of the state is currently about 1,212,000 people.

Socially, Hawaii is an interesting amalgam of many ethnic groups and cultures. Since there is no single majority, Hawaii has been able to avoid some of the serious confrontations, which have plagued the mainland states. The ethnic mix at present is about 22% Caucasian, 21% Hawaiian or Part-Hawaiian, 18% of Japanese origin, 13% Filipino, 5% Chinese, and the rest of other mixes.

Hawaii's cultural diversity together with its position at the crossroads of the Pacific and its many visitors produces a wide variety of social opportunities. Almost anyone can find social groups with which to relate.

Politically Hawaii is strongly Democratic with distinct liberal leanings. This means that such things as the landlord-tenant code are weighted towards the tenant, but this does not seem to affect real property values adversely. Hawaii has a strong tradition of property ownership and politically the state appears to be very stable.

Hawaii has had a strong economic base with rapid growth rates through the late 1980s. Currently the State's economy appears strong with recent increases in market demand for residential properties, which has spurred construction.



ISLAND MAP

ISLAND OF HAWAII
HAWAII COUNTY, HAWAII

## III.    ENVIRONS

The subject properties are located in The Bluffs at Mauna Kea subdivision in the District of South Kohala, on the northwesterly end of the Island of Hawaii.

The South Kohala district is located on the northwestern coast of the island of Hawaii and is flanked on the north by the North Kohala District; on the east by the Hamakua District; on the south by the North Kona District; and the Pacific Ocean along the western boundary. Along the coastline, the southern boundary is marked by Anaehoomalu Bay and Kawaihae marks the northern boundary. The district comprises approximately 308 square miles of land area.

The South Kohala district has two distinct physical environments: the Waimea highland and the coastal area from north of Kawaihae to Anaehoomalu Bay, along which the subject is located. The coastal region consists of an arid plain of lava flows, sharply contrasting with the wetter, green rolling hills of the highlands. All of this is off set by the deep blues of the ocean, which falls to great depths directly off shore creating excellent fishing conditions close to shore.

The economy of South Kohala has been historically been based on cattle ranching and diversified agriculture. The Parker Ranch, one of the world's largest privately owned ranches, is headquartered mauka in Waimea town. Today tourism is the primary growth industry of South Kohala. In addition, there have been a significant number of high end resort and residential developments being completed.

The 2000 census figures for the South Kohala district number 13,131 people, which is a significant increase over the 1999 figure of 9,100 people. Much of this increase was attributable to development of the five major resorts of Hualalai, Kona Village, Hapuna/Mauna Kea Beach Resort, Mauna Lani Resort, and the Waikoloa Beach Resort.

Kawaihae Harbor is the only deep draft harbor on the west coast of the Big Island and is used primarily by inter-island barges. The harbor is a focal point for the continued economic stability and growth of the area. It is used for transit of building materials, consumer goods, large equipment, machinery and supplies for servicing the hotels and resorts in South Kohala and Kona. The harbor also serves as a recreational harbor facility. Because of its increased usage plans are proposed for expansion to accommodate the sipping trade as well as its recreational uses.

Police services are located in Waimea, which serves from Anaehoomalu to the south to Mahukona (located in North Kohala) to the north. Fire protection and emergency medical services are provided by the South Kohala station that is located near the Mauna Lani Hotel, 8 to 9 miles from Kawaihae Harbor on the Queen Kaahumanu Highway. Health care services are provided by two state operated hospitals, the Kohala Hospital in Kapaau, North Kohala and the Kona Hospital in Kealekekua, North Kona. Both are "full service" health care facilities. The Lucy Henriques Medical Center is a privately owned, non-profit facility, which provides outpatient health care services.

Recreation facilities in the West Hawaii region consist of golf courses, tennis courts, hiking trails, historic sites, parks, boat launching ramps and beach parks. The two major public recreation areas are the Hapuna Beach State Recreation Area and the Samuel M. Spencer Beach Park. Hapuna is 65 acres with a wide white sand beach while Spencer is smaller at 13 acres. In addition there is Anaehoomalu Bay at Waikoloa Beach Resort and Puako Beach.

Schools that serve this district include Waimea Elementary, Intermediate and the Honokaa High School (located in the Hamakua district). Private schools include Kamuela Montessori, Parker School and Hawaii Preparatory Academy.

The major population and commercial center within the South Kohala district is Waimea, or Kamuela, where a variety of small businesses serve the local population. The town of Waimea is located northern portion of the district at an elevation of approximately 2,700 feet, which allows for cooler than normal temperatures. This is in contrast with the lower elevations in the South Kohala district, which are some of the warmest and driest in the State.

IV.    **PROPERTY DATA**

A.    **Identification**

The subject properties, as shown on the accompanying Hawaii State Tax Map, is identified as Third Division Tax Map Key 6-2-14, Parcels 05 and 06, and are located in The Bluffs at Mauna Kea, Waimea, South Kohala, Hawaii. The sites contain a total areas of 38,262 and 48,020 square feet, respectively.

B.    **Easements and Restrictions**

To our knowledge there are no other recorded easements or restrictions, other than the Protective Covenants, Conditions and Restrictions together with the Design and Construction Requirements of the subject subdivision, that adversely affect the marketability or value of the subject property.

C.    **Utilities**

The subject property is fully improved with all available public utilities including water, sewer service, electricity and telephone.

D.    **Zoning**

The subject properties are zoned RM-1.5, Multiple-Family Residential District. This classification provides for high-density residential use. It covers areas with full community facilities and services. It may also occupy transition areas between commercial or industrial areas and other districts of less intense land use.

Each RM district is followed by a number which indicates the required land area in thousands of square feet for each dwelling unit (or for each separate rentable unit in the case of boarding rooming, or lodging houses, fraternity or sorority houses). The maximum density designation in a RM district shall be 0.75. This means that seven hundred fifty square feet of land area is required per dwelling unit or separate rentable unit. The density designations are 0.75, 1, 1.5, 2, 2.5 and upward in 0.5 increments.

The following types of uses and structures are permitted: adult day care homes, bed and breakfast establishments, boarding facilities, small scale commercial or personal services, duplexes, multiple-family and single-family dwellings, crop production, neighborhood parks, tennis courts and swimming pools and similar neighborhood recreational uses.



HAWAII STATE TAX MAP
Third Division Tax Map, Key 6-2-14, Parcels 05 & 06
Waipuaa, South Kohala, Hawaii

Since the subject is located outside of Hilo, the height limit is forty-five feet; else it would be 120 feet. Minimum building site in the district shall be 7,500 square feet. Minimum site width shall be 60 feet. The minimum front and rear yard is 20 feet and for side yards, eight feet for one story buildings, plus an additional two feet for each additional story. There is a building distance between main buildings of at least fifteen feet for sites with more than one structure.

More details regarding permitted uses and requirements for this zoning can be found in Ordinance No. 96-160, the Amended Chapter 25 of the Hawaii County code relating to zoning.

E.    **Assessed Value and Taxes**

The land and improvements for the subject properties have been assessed for ad valorem tax purposes for the current year as follows:

Parcel 05, Western Sunview Properties

|  | 2004 |
|---|---|
| Land | $3,233,100 |
| Improvements | 0 |
| Total | $3,233,100 |

|  | 2004-2005 |
|---|---|
| Annual Taxes | $31,846.04 |

Parcel 06, Federman

|  | 2004 |
|---|---|
| Land | $3,121,300 |
| Improvements | 1,612,800 |
| Total | $4,734,100 |

|  | 2004-2005 |
|---|---|
| Annual Taxes | $46,630.89 |

In accordance with the revised laws of Hawaii, real property may be assessed at one hundred percent (100%) of market value. A one hundred percent (100%) assessment-to-value ratio has been adopted for the current year.

The Hawaii county tax rate per thousand dollars of assessed value for apartment land class property for the fiscal year of 2004-2005 was $9.85 per $1,000 net assessed valuation on land and improvements.

**F.**    **Flood Hazard District**

Within the County of Hawaii, certain areas are prone to periodic flooding and/or tsunami hazards, which may result in loss of life and property. Flood Hazard Districts are delineated on Flood Boundary and Floodway Maps and the Federal Insurance Rate Maps prepared by the Federal Insurance Administration and Federal Emergency Management Agency.

Pursuant to these Flood Hazard Districts, lending institutions subject to Federal Deposit Insurance Corporation regulations require flood insurance in order to complete mortgage loan transactions involving property located in a designated flood or tsunami zone. According to Flood Insurance Rate Map Community-Panel Number 155166 0139C, effective September 16, 1988, the subject properties are located in an area designated Zone X (unshaded) areas determined to be outside 500-year flood plain.

**G.**    **Census Tract Number**

The subject properties are located within the boundaries of Census Tract Number 217.01 in the County of Hawaii in the 2000 Census Tracts for the Island of Hawaii.

**H.**    **Ownership**

Public records disclose that the fee simple title to the subject property identified as Parcel 05 is held by Western Sunview Properties. The property was acquired by Deed dated January 12, 2000 for a purchase price of $3,250,000 from Mauna Kea Development Corporation. This transaction was recorded in Regular System Document Number 00-009911 on January 24, 2000.

The fee simple title to the subject property identified as Parcel 06 is currently held by Irwin and Concepcion S. Federman. The property was acquired by Deed dated January 27, 1999 for a purchase price of $2,550,000 (recorded price $3,000,000) from Mauna Kea Development Corporation. This transaction was recorded in Regular System Document Number 99-1015113 on February 1, 1999.

## V.    PROPERTY DESCRIPTION

### A.    Land

The subject properties, as shown on the accompanying Hawaii State Tax Map, are identified as Third Division Tax Map Key 6-2-14, Parcels 05 and 06, and are located on Kewai Street within The Bluffs at Mauna Kea subdivision in Waimea, North Kohala, Hawaii. Parcel 05, owned by Western Sunview Properties, is a fairly rectangular shaped lot and contains a land area of 38,262 square feet. Parcel 06, owned by the Federmans is a fairly rectangular shaped lot and contains a land area of 48,020 square feet. Topography of the subject properties are gently sloping toward the ocean in a mauka to makai direction. Elevations range from about twenty to fifty feet above sea level. The Federman property is at a slightly lower average elevation.

### B.    Improvements

Both properties are currently being developed with large luxury single family residences. Both homes are nearing completion. The Western Sunview Properties home is scheduled for completion in May of 2005. The Federman property is completed except for the landscaping, since the improvements have already been assessed for tax purposes.

## VI.    VALUATION

### A.    Rights Appraised

Our assignment has been to provide three value estimates regarding the subject properties, which are located within "The Bluffs at Mauna Kea" project located in Waimea, South Kohala, Hawaii. The two subject properties are identified below:

| Third Division Tax Map Key | Property Owner | Land Area in Sq. Ft. | Property Type |
|---|---|---|---|
| 6-2-14-05 | Western Sunview Properties | 38,262 | Residential |
| 6-2-14-06 | Irwin Federman | 48,020 | Residential |

The intended use of this appraisal is to assist in preparing for litigation. This report presents a summary of our analyses for three value estimates regarding the subject properties. Our analyses and the data disclosed by our research and investigation are set forth in the accompanying summary report. This analysis has been performed in conformance with and is subject to the requirements of the Code of Professional Ethics and Standards of Professional Conduct of the Appraisal Institute (AI).

The dates of appraisal valuation are September 19, 1999 and February 1, 2005, reported on February 14, 2005.

### B.    Highest and Best Use

The highest, best and most productive use of a property is that use which may reasonably be expected to yield the highest net return to the land over a given period of time. The use must be physically possible, appropriately supported, financially feasible, and result in the highest land value. The use must be legal and in compliance with regulations and ordinances within the police power of the City, County and State, including health regulations, zoning ordinances, building code requirements, etc.

The two subject properties are located within The Bluffs at Mauna Kea project. This project consists of 22 parcels, 12 of which are located along the ocean frontage. It is noted that there is a long parcel that actually separates the 12 ocean front parcels from the sea. It is also noted that parcels 01 and 02 were sold together, as were Parcels 18 and 19.

The county zoning of the properties is RM-1.5, which allows for multi-family development. However, the Protective Covenants, Conditions and Restrictions together with the Design and Construction Requirements impose greater restrictions to development than the zoning. The subject properties are restricted to single family resort residential homes.

Both subject properties are presently being developed with large luxury residences that are nearing completion. Based on our inspection of the properties it is our opinion that the improvements represent the highest and best uses for the properties. However, it is noted that the improvements on the Federman property appear to violate the Design and Construction Requirements due to the nature of the construction within the Special Setback Area. We conducted a complete inspection of the property owned by Western Sunview Properties but only inspected the exterior of the Federman residence.

C.     **Methodology**

The valuation of any real property may be derived principally through three approaches to market value: estimated replacement cost less depreciation, capitalization of income and direct sales data comparison. From the indications of these analyses and the weights accorded each, a correlated opinion of market value is reached.

In estimating the impact on value resulting from the project developer's practice of providing "undisclosed discounts" to lot buyers we have utilized a direct sales comparison approach using lot sales within the subject subdivision.

In estimating the diminution in value to the property owned by Western Sunview Properties resulting from the construction in the Special Setback Area on the Federman property we have focused on the actual historical costs and projected future costs to establish value. It is our opinion that this is the most reliable method for estimating value in this case. We have then applied a percentage factor, which reflects the damage to this property.

In estimating the increase in value to the property owned by the Federmans' resulting from the construction in the Special Setback Area we have focused on the actual historical acquisition cost of the lot to establish value. It is our opinion that this is the most reliable method for estimating value in this case. We have then applied a percentage factor, which reflects the enhancement to this property.

D.     **Site Value & the Impact of "Undisclosed Discounts"**

In estimating the unencumbered fee simple value of the land underlying the subject property owned by Western Sunview Properties (Parcel 05), the site has been valued as though vacant and available for development. Based on the principle of substitution, the value of the site is best measured by prices generally obtained for similar property located within the subject's immediate neighborhood.

The land underlying the subject is zoned RM-1.5, Multiple-Family Residential District. The fee simple interest in the subject parcel has been estimated by direct market comparison utilizing market land transactions. We have analyzed the comparables on a price per lot basis, which we feel is the most appropriate unit of comparison for this assignment. The subject and comparable sites are of sufficient size to provide adequate potential for development of large luxury homes, which is the highest and best use for these properties.

Of the transactions disclosed by our research, six were selected for comparison in order to establish an estimate of value for the subject site. The selected comparable transactions are discussed below and are analyzed in summary form in Tables 1 and 2. It is noted that Table 1 presents our valuation giving consideration to the "undisclosed discounts" and Table 2 presents our valuation based on the recorded sale prices without the discounts factored in.

Transaction L-1 was the sale of a 43,949 square foot vacant parcel of land located at 62-3632 Kewai Street. It is identified as Third Division Tax Map Key 6-2-14, Parcel 12. This transaction had a contract date of October 30, 1997. Transaction was by Deed dated December 2, 1997 from Mauna Kea Development Corp. to SSI Properties, Inc. The actual recorded sale price for the site was $2,500,000. There was apparently an "undisclosed discount" of $500,000, bringing the actual net sale price down to $2,000,000. Transaction was recorded December 9, 1997 in the State Bureau of Conveyances in Regular System Document 97-171132.

Transaction L-2 was the sale of a 108,726 square foot vacant parcel of land located at 62-3700 Kewai Street. It is identified as Third Division Tax Map Key 6-2-14, Parcel 01. This transaction had a contract date of July 15, 1997. The property was previously two separate lots known as Parcels 01 and 02; however, Parcel 02 was later dropped. Transaction was by Deed dated December 22, 1997 from Mauna Kea Development Corp. to John W. Hoffe II. The actual recorded sale price for the site was $6,000,000. There was apparently an "undisclosed discount" of $1,300,000, bringing the actual net sale price down to $4,700,000. Transaction was recorded December 30, 1997 in the State Bureau of Conveyances in Regular System Document 97-182642.

Transaction L-3 was the sale of a 48,020 square foot vacant parcel of land located at 62-3676 Kewai Street. It is identified as Third Division Tax Map Key 6-2-14, Parcel 06. This transaction had a contract date of December 27, 1998. Transaction was by Deed dated January 27, 1999 from Mauna Kea Development Corp. to Irwin Federman and Concepcion S. Federman. The actual recorded sale price for the site was $3,000,000. There was apparently an "undisclosed discount" of $450,000, bringing the actual net sale price down to $2,550,000. Transaction was recorded February 1, 1999 in the State Bureau of Conveyances in Regular System Document 99-015113.

Table 1

**COMPARATIVE LAND TRANSACTIONS AND ADJUSTMENT SCHEDULE**
(As of September 21, 1999)
Third Division Tax Map Key 6-2-14, Parcel 05
"The Bluffs at Mauna Kea", Waimea, South Kohala, Island and State of Hawaii

| Transaction | Subject | L-1 | L-2 | L-3 | L-4 | L-5 | L-6 |
|---|---|---|---|---|---|---|---|
| Number | Western Sunview Properties LLC | BSI Properties Inc. | Haflse Property | Federman Property | Robertson Property | Reddy Property | Gunderson Property |
| Address | 62-3632 Kewai Street | 62-3700 Kewai Street | 62-3876 Kewai Street | 62-3676 Kewai Street | 62-3624 Kewai Street | 62-3666 Kewai Street | 62-3658 Kewai Street |
| Tax Map Key | 6-2-14-05 | 6-2-14-12 | 6-2-14-01.02 | 6-2-14-58 | 6-2-14-11 | 6-2-14-07 | 6-2-14-08 |
| Land Area in SF | 38,262 | 48,949 | 708,728 | 49,020 | 96,087 | 48,521 | 48,940 |
| County Zoning | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 |
| Contract Date | | Oct-97 | Jul-97 | Dec-98 | Feb-99 | Aug-99 | Jul-99 |
| Transaction Date | | Dec-97 | Dec-97 | Jan-98 | Mar-99 | Oct-99 | Oct-99 |
| Type of Transaction | | Deed | Deed | Deed | Deed | Deed | Deed |
| Sale Price | | $2,505,000 | $9,000,300 | $3,000,000 | $3,500,000 | $2,750,000 | $2,750,000 |
| Amount of Discount | | $500,000 | $1,350,000 | $450,000 | $500,000 | $250,000 | $212,000 |
| Indicated Land Value | | $2,000,000 | $4,700,000 | $2,550,000 | $3,000,000 | $2,600,000 | $2,538,000 |
| **Indicated Value / Parcel** | $2,000,000 | | $3,350,000 | $2,550,000 | $3,000,000 | $2,500,000 | $2,538,000 |
| Time Adjustment | 1.00 | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Time Adjusted Value | $2,000,000 | | $3,350,000 | $2,550,000 | $3,000,000 | $2,500,000 | $2,538,000 |
| **Adjustments** | | | | | | | |
| Terms | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| View | | 1.10 | 1.00 | 1.10 | 1.10 | 1.10 | 1.10 |
| Street Frontage | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Shape & Physical Character | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Zoning & Land Use | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Net Adjustments | | 1.10 | 1.00 | 1.10 | 1.10 | 1.10 | 1.10 |
| Adjusted Unit Value | $2,200,000 | | $2,350,000 | $2,805,000 | $3,300,000 | $2,750,000 | $2,791,900 |
| Size Adjustment | 1.00 | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Indicated Value Per Parcel | $2,220,000 | | $2,350,000 | $2,805,000 | $3,300,000 | $2,750,000 | $2,791,900 |
| Weighting Factor | 0.10 | | 0.10 | 0.15 | 0.15 | 0.25 | 0.25 |
| Weighted Value | $220,000 | | $235,000 | $420,750 | $495,000 | $687,500 | $697,950 |
| Range of Adj. Values | $2,200,000 | to | $3,300,000 | | | | |
| Mean of Adj. Values | $2,699,467 | | | | | | |
| Weighted Value | $2,756,200 | | | | | | |
| Concluded Fee Simple Value | $2,760,000 | | | | | | |

Source: Sidymacher & Sudoyama, Ltd., February 2005.

Table 2

## COMPARATIVE LAND TRANSACTIONS AND ADJUSTMENT SCHEDULE
(As of September 21, 1999)
Third Division Tax Map Key 6-2-14; Parcel 05
"The Bluffs at Mauna Kea", Waimea, South Kohala, Island and State of Hawaii

| Transaction Number Address | Subject Western Survview Properties LLC | L-1 SSII Properties Inc. (Gifford) 62-3622 Kawai Street | L-2 Hoffee Property 62-3700 Kawai Street | L-3 Federman Property 62-3676 Kawai Street | L-4 Robertson Property 62-3634 Kawai Street | L-5 Raddy Property 62-3660 Kawai Street | L-6 Gunderson Property 62-3655 Kawai Street |
|---|---|---|---|---|---|---|---|
| Tax Map Key | 6-2-14-55 | 6-2-14-12 | 6-2-14-01 & 02 | 6-2-14-06 | 6-2-14-11 | 6-2-14-07 | 6-2-14-08 |
| Land Area in SF | 38,282 | 43,949 | 108,728 | 48,020 | 36,087 | 48,521 | 48,940 |
| County Zoning | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 | RM-1.5 |
| Contract Date | | Oct-97 | Jul-97 | Dec-98 | Feb-99 | Aug-99 | Jul-99 |
| Transaction Date | | Dec-97 | Dec-97 | Jan-99 | Mar-99 | Oct-99 | Oct-99 |
| Type of Transaction | | Deed | Deed | Deed | Deed | Deed | Deed |
| Sale Price | | $2,500,000 | $6,000,000 | $3,000,000 | $3,500,000 | $2,750,000 | $2,750,000 |
| Amount of Discount | | $0 | $0 | $0 | $0 | $0 | $0 |
| Indicated Land Value | | $2,500,000 | $6,000,000 | $3,000,000 | $3,500,000 | $2,750,000 | $2,750,000 |
| Indicated Value / Parcel | | $2,500,000 | $3,000,000 | $3,000,000 | $3,500,000 | $2,750,000 | $2,750,000 |
| Time Adjustment | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Time Adjusted Value | | $2,500,000 | $3,000,000 | $3,000,000 | $3,500,000 | $2,750,000 | $2,750,000 |
| Adjustments | | | | | | | |
| Terms | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| View | | 1.10 | 1.00 | 1.10 | 1.10 | 1.10 | 1.10 |
| Street Frontage | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Shape & Physical Character | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Zoning & Land Use | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Net Adjustments | | 1.10 | 1.00 | 1.10 | 1.10 | 1.10 | 1.10 |
| Adjusted Unit Value | | $2,750,000 | $3,000,000 | $3,300,000 | $3,850,000 | $3,025,000 | $3,025,000 |
| Size Adjustment | | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 |
| Indicated Value Per Parcel | | $2,750,000 | $3,000,000 | $3,300,000 | $3,850,000 | $3,025,000 | $3,025,000 |
| Weighting Factor | | 0.10 | 0.10 | 0.15 | 0.15 | 0.25 | 0.25 |
| Weighted Value | | $275,000 | $300,000 | $495,000 | $577,500 | $756,250 | $756,250 |
| Range of Adj Values | $2,750,000 to $3,850,000 | | | | | | |
| Mean of Adj Values | $3,158,333 | | | | | | |
| Weighted Value | $3,160,000 | | | | | | |
| Concluded Fee Simple Value | $3,160,000 | | | | | | |

Source:  Stellrecker & Sadoyama, Ltd., February 2005.

Transaction L-4 was the sale of a 36,087 square foot vacant parcel of land located at 62-3634 Kewai Street. It is identified as Third Division Tax Map Key 6-2-14, Parcel 11. This transaction had a contract date of February 1, 1999. Transaction was by Deed dated March 15, 1999 from Mauna Kea Development Corp. to Sanford R. Robertson and Jeanne Robertson. The actual recorded sale price for the site was $3,500,000. There was apparently an "undisclosed discount" of $500,000, bringing the actual net sale price down to $3,000,000. Transaction was recorded March 18, 1999 in the State Bureau of Conveyances in Regular System Document 99-040987.

Transaction L-5 was the sale of a 48,521 square foot vacant parcel of land located at 62-3668 Kewai Street. It is identified as Third Division Tax Map Key 6-2-14, Parcel 07. This transaction had a contract date of August 17, 1999. Transaction was by Deed dated October 5, 1999 from Mauna Kea Development Corp. to Chitranjan N. Reddy and Elsa Reddy. The actual recorded sale price for the site was $2,750,000. There was apparently an "undisclosed discount" of $250,000, bringing the actual net sale price down to $2,500,000. Transaction was recorded October 14, 1999 in the State Bureau of Conveyances in Regular System Document 99-164567.

Transaction L-6 was the sale of a 48,940 square foot vacant parcel of land located at 62-3658 Kewai Street. It is identified as Third Division Tax Map Key 6-2-14, Parcel 08. This transaction had a contract date of July 20, 1999. Transaction was by Deed dated October 2, 1999 from Mauna Kea Development Corp. to Robert V. Gunderson, Jr. and Anne D. Gunderson. The actual recorded sale price for the site was $2,750,000. There was apparently an "undisclosed discount" of $212,000, bringing the actual net sale price down to $2,538,000. Transaction was recorded October 29, 1999 in the State Bureau of Conveyances in Regular System Document 99-174087.

Each transaction was examined for possible adjustment for various comparative factors including time, financing terms, view, street frontage, shape and physical character, zoning & land use, and size.

A review of the comparables used in this study over the time frame of the comparables, which all occurred within two years of the effective date (September 21, 1999), indicated that a zero time adjustment is appropriate. It is noted that Transactions L-5 and L-6 occurred one month subsequent to the valuation date. However, it is our opinion that given the retrospective nature of this valuation and the close proximity in time it is reasonable to assume that these transactions should be utilized in this case.

The terms adjustment was included to reflect any value differences relating to abnormal financing. In this case there was no need for adjustment. Therefore zero adjustments were applied.

The view adjustment factor related the comparable properties to the subject in terms of their relative desirability of view potential. The subject and Transaction L-2 were considered ten percent superior to the remaining comparables due to their greater elevation. Therefore, Transaction L-2 was given a zero adjustment for this factor and the remaining transactions were each adjusted upward ten percent.

The remaining factors of street frontage, shape and physical character, zoning and size were each considered equal to the subject with zero adjustments applied.

As shown in Table 1, which gives consideration to the "undisclosed discounts", the adjusted indicated land values ranged from $2,200,000 to $3,300,000 per lot, with an arithmetic mean of $2,699,467 per lot. In concluding a final value the appraisers have applied weighting factors based on their opinion regarding the relative comparability of the selected transactions. The most recent comparables, identified as L-5 and L-6, were given the greatest weighting factors of twenty-five percent (25%). The oldest comparables, identified as L-1 and L-2 were given the least weight at ten percent (10%). The remaining transactions were given fifteen percent (15%) weighting factors.

Application of these weighting factors resulted in a weighted unit value of $2,756,200, which can be rounded to, SAY.....$2,760,000 as of September 21, 1999.

As shown in Table 2, which was based on the recorded sale prices, the adjusted indicated land values ranged from $2,750,000 to $3,850,000 per lot, with an arithmetic mean of $3,158,333 per lot. In concluding a final value the appraisers have applied the same weighting factors discussed above.

Application of these weighting factors resulted in a weighted unit value of $3,160,000 as of September 21, 1999. It is interesting to note that this value, without consideration of the discounts, is very close to the actual sale price of this lot at $3,200,000.

Based on these analyses we have concluded that the value of the subject property as of the effective date was $3,160,000 based on the recorded sales prices and $2,760,000 based on the discounted sales prices. This indicates a difference in value of $400,000 as of September 21, 1999.

It should be noted that in addition to the data utilized in Tables 1 and 2 there was another potential comparable identified as Lot 9, also known as Tax Map Key Parcel 09. This transaction had a contract date of August 10, 1998. This property was sold by Deed dated October 14, 1998 from Mauna Kea Development Corp. to the Elder Trust. The actual recorded sale price for the site was $3,000,000. There was apparently an "undisclosed discount" of $381,000, bringing the actual net sale price down to $2,619,000. Transaction was recorded October 30, 1998 in the State Bureau of Conveyances in Regular System Document 98-163732. This transaction had a discount of $381,000, which supports our conclusion at $400,000.

It is our understanding that the practice of providing buyers with "undisclosed discounts" continued at least through 1999. Evidence of this fact is the sale of a non-oceanfront site identified as Lot 16 and as Tax Map Key Parcel 16. This transaction had a contract date of November 5, 1999. This property was sold by Deed dated November 19, 1999 from Mauna Kea Development Corp. to the Christopher and Aniko Marie Somogyi. The actual recorded sale price for the site was $2,000,000. There was apparently an "undisclosed discount" of $200,000, bringing the actual net sale price down to $1,800,000. Transaction was recorded November 26, 1999 in the State Bureau of Conveyances in Regular System Document 99-187518.

In Hawaii when a property is sold a Conveyance Tax Certificate (Form P-64A) is required to be executed by the seller and the purchaser. Under the declaration, at the bottom of the form, there is reference made to "penalties prescribed for false declaration in section 231-36, Hawaii Revise Statues". There is strong evidence that the conveyance taxes for each of the comparables used in our analyses were not properly calculated. It is our understanding that the developer purposely misstated the sale price to aid in the marketing of the subject subdivision. Our valuation analyses shown in Tables 1 and 2 demonstrate the impact that the "undisclosed discounts" can have on appraisal valuation.

It is clear that this kind of practice can result in faulty valuation and can have an adverse impact on the public's perception of the truth.

E.    Diminution in Value from Development in the Special Setback Area

In this case the development of the Federman property will diminish the desirability of the property owned by Western Sunview Properties. The improvements being constructed within the Special Setback Area together with the palm trees will negatively impact the property to the south. The negative impact will be a combination of view interruption as well as the likelihood of noise.

The property owned by Western Sunview Properties is being developed at a total cost of about $14,000,000. This figure includes land acquisition together with the construction costs. Although an argument could be made that land values have increased and the ultimate property value may be greater than the sum of the costs, it is our opinion that for the purposes of this assignment it would be more prudent and less speculative to rely on the actual costs.

We conclude that there would be a negative impact of approximately five percent (5%) to the property owned by Western Sunview Properties. Application of this factor against the total costs of $14,000,000 results in an estimated negative impact of $700,000.

F.    Increase in Value Resulting from Development in the Special Setback Area

In this case the value of the Federman site is enhanced due to the additional utility being gained through development within the Special Setback Area. It is our opinion that this enhancement results from being able to move the pool area makai and thus, situate the house in a more desirable position. Other properties within the development, including the Western Sunview Properies, Robertson and Gifford residences have their pool areas cramped in much closer to the homes. The Federman property has a more open feeling due to the pool area being located further makai. It is our opinion that the value enhancement is significant and would be assigned to the site value. In this case we have estimated that the enhancement is one-third or a 33% premium to the site value.

In this case the Federmans' purchased their site for $3,000,000, less the "undisclosed discount" of $450,000 for a net sale price of $2,550,000. Application

Application of the estimated enhancement factor of thirty-three percent (33%) to the Federmans' site value of $2,550,000, results in a positive impact of $850,000.

Although an argument could be made that land values have increased, it is our opinion that for the purposes of this assignment it would be more prudent and less speculative to rely on the actual price paid.

**G.**   Concluded Value Estimates

Our analyses and the data disclosed by our research and investigation are set forth in the accompanying report. It is our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated impact on value to the property owned by Western Sunview Properties resulting from the project developer's practice of providing "undisclosed discounts" to lot buyers, appraised as of September 21, 1999 and reported February 14, 2005 was:

### FOUR HUNDRED THOUSAND DOLLARS
($400,000)

It is further our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated diminution in value resulting from the construction in the Special Setback Area, appraised as of February 1, 2005 and reported February 14, 2005 was:

### SEVEN HUNDRED THOUSAND DOLLARS
($700,000)

It is further our opinion, subject to the limiting conditions and assumptions contained herein, that the estimated increase in value resulting from the construction in the Special Setback Area, appraised as of February 1, 2005 and reported February 14, 2005 was:

### EIGHT HUNDRED FIFTY THOUSAND DOLLARS
($850,000)

In addition to providing an estimate of value we provide an estimate of market exposure time. In the case of the subject properties it is difficult to accurately predict how long they would take to sell. There has only been one recent sale of an improved property on the ocean within the subject development. Sometimes properties are often on the market for long periods before selling. This can be due to over pricing and/or a lack of a clear marketing plan. It is our opinion that each of the subject properties would have marketing periods of approximately six months to one year, assuming a reasonable pricing structure. This estimate is largely based on our own experience and discussions with knowledgeable brokers familiar with marketing properties competitive with the subject.

Our compensation for this assignment is being based on hourly rates for members of our staff. The billing rates for Mr. Stellmacher and Ms. Miyashiro are $250 and $100 per hour plus state general excise tax, respectively. It is noted that Mr. Stellmacher has had his deposition taken only once within the past four years. This was for a case involving the Kaanapali Alii condominium project on Maui.

VII.   CERTIFICATION

I certify that, to the best of my knowledge and belief:

* The statements of fact contained in this report are true and correct.

* The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, unbiased professional analyses, opinions and conclusions.

* I have no present or prospective interest in the property that is the subject of this report, and have no personal interest or bias with respect to the parties involved.

* My compensation is not contingent upon the reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event.

* My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

* Richard A. Stellmacher, MAI, CRE and has made a personal inspection of the properties that are the subject of this report.

* Tiffany S. Miyashiro has provided significant professional assistance to the person signing this report.

* I certify that the use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

* As of the date of this report Richard A. Stellmacher, MAI has completed the requirements of the continuing education program of the Appraisal Institute.

* The State of Hawaii has developed a licensing and certification program for appraisers. Appraisers who have met the requirement are identified below as Certified General Appraiser (CGA):

Richard A. Stellmacher, MAI, CRE
Certified General Appraiser
(CGA-95), Exp. 12/31/05

## PROFESSIONAL QUALIFICATIONS OF RICHARD A. STELLMACHER, MAI, CRE
Certified General Appraiser (CGA-95), Exp. 12/31/05

### BUSINESS BACKGROUND

Stellmacher & Sadoyama, Ltd., Honolulu, Hawaii
*President*
*Sept. 1984 – Present*

Hastings, Martin, et al, Honolulu, Hawaii
*Former Vice President*
*Nov. 1976-Aug. 1984*

Federal District & State Circuit Courts, Honolulu & Wailuku, Hawaii
*Qualified Expert Witness*

Society of Real Estate Appraisers
*Qualified Instructor*
* Course 201, "Principles of Income Property Valuation"
* Course 202, "Applied Income Property Valuation"

"The Real Estate Appraiser and Analyst,
Journal of the Society of Real Estate Appraisers"
*Contributing Author*

"A Guide to Real Estate Appraisal in Hawaii"
(Published by the University of Hawaii)
*Co-Author*

### PROFESSIONAL MEMBERSHIPS

Appraisal Institute – formerly the American Institute of Real Estate Appraisers
*MAI Designation, Past Chapter President 1987*
*State Certification Coordinator-Nationally appointed (1988 – 1991)*
*Governing Councillor 1990*

Appraisal Institute – formerly the Society of Real Estate Appraisers
*SRPA Designation, Past Chapter President 1984-1985*

The Counselors of Real Estate
*CRE Designation*

### EDUCATION

University of Hawaii, *B.B.A. (Real Estate), 1976.*
Professional Real Estate Studies credits:
**AIREA**
* Course 1A   -   Basic Appraisal Principles, Methods and Techniques.
* Course 1B   -   Capitalization Theory & Techniques.
* Course 2    -   Urban Properties.
* Course 6    -   Intro. to Real Estate Investment Analysis.
* Narrative Demo. Appraisal Report on an Income Property.
* Narrative Demo. Appraisal Report on Residential Property.
**SREA**
* Course 101 -   Intro. to Appraising Real Property.
* Course 201 -   Principles of Income Property Valuation.
* Course 202 -   Applied Income Property Valuation.
* Exam R-2   -   Residential Case Study.

### TYPICAL CLIENTS

Financial institutions, including banks and savings and loans; mortgage bankers; builders and developers; investors and investment groups; estates; trust companies; government departments; attorneys; CPA firms; insurance companies; and realtors.

### TYPICAL STUDIES

Arbitrations, lease negotiations, exchanges, feasibility studies, market analysis, real estate counseling, rental analyses, partial and fractional interest valuations, and fee simple, leasehold and leased fee appraisals of many types of properties including office buildings, shopping centers, hotels, subdivisions, apartment complexes, business and residential condominiums, residential cooperatives, factories, warehouses, theaters, golf courses, agricultural lands, kuleanas, airports, hospitals, and many other types of commercial and industrial properties.