# EXHIBIT

# C

**WENDELIN L. CAMPBELL**
**Attorney At Law**
**P.O. Box 459**
**Kamuela, Hawaii 96743**

March 22, 2005

Andrew Beaman, Esq.
Chun, Kerr, Dodd, Beaman & Wong
745 Fort Street, 9th Floor
Honolulu, Hawaii 96813

RE:    Western Sunview Properties, LLC v. Irwin Federman et al. Civil Case No. 03-00463,
       In the United States District Court for the District of Hawaii

Dear Mr. Beaman:

Pursuant to your request, I have reviewed the following documents in connection with the above referenced litigation:

1.    File-stamped (8/12/04) Defendants Mauna Kea Properties, Inc. and Mauna Kea Development Corp.'s Memorandum in Opposition to Plaintiffs' Counter Motion for Summary Judgment Filed August 3, 2004; Certificate of Compliance; Certificate of Service;

2.    File-stamped (8/12/04) Defendants Mauna Kea Properties, Inc. and Mauna Kea Development Corp.'s Separate Concise Statement in Opposition to Plaintiffs' Counter Motion for Summary Judgment Filed August 5, 2004; Declaration of Counsel; Declaration of Kathrin Kohler; Declaration of William Mielcke; Exhibits A-Z; Certificate of Compliance; Certificate of Service;

3.    File-stamped (9/15/04) Order Granting In Part and Denying In Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Counter Motion for Summary Judgment;

4.    File-stamped (9/29/04) Notice of Motion; Plaintiffs' Motion for Clarification and Reconsideration of the Order Granting in Part and Denying In Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Counter Motion for Summary Judgment, Filed 9/15/04; Memorandum in Support of Motion; Exhibits A through H; Declaration of Chad P. Love; Certificate of Service;

5.    File-stamped (10/13/04) Defendants Irwin Federman and Concepcion S. Federman's Memorandum in Opposition to Plaintiffs' Motion for Clarification and Reconsideration of the Order Granting in Part and Denying In Part Defendants' Motion for Summary Judgment and Denying Plaintiffs' Counter Motion for Summary Judgment (Filed September 29, 2004); Declaration of Andrew V. Beaman; Exhibits A-M; Certificate of Service;

6.    File-stamped (2/22/05) Order Denying Plaintiffs' Motion for Clarification and Reconsideration Filed September 21, 2004; Order Denying Plaintiffs' Second Motion for Reconsideration Filed November 30, 2004; Order Denying Defendants Motion for Entry of Final Judgment and Rule 54(b) Certification;

Andrew Beaman, Esq.
March 22, 2005
Page No. 2

7.       Transcript of proceeding held on August 23, 2004;

8.       Deposition transcript of Deborah Au taken on 1/29/04 (with exhibits);

9.       Deposition transcript of Dodie MacArthur taken on 11/22/04 (with exhibits);

10.      Deposition transcript of Kathrin Kohler taken on 1/27/05 (with exhibits);

11.      Deposition transcript of Julia Hands taken on 2/4/05 (with exhibits);

12.      Deposition transcript of Guy Hands taken on 2/5/05 (with exhibits);

13.      The Federmans' Sales Contract;

14.      Buyers' Closing Statement;

15.      Seller's Closing Statement;

16.      Pacific Realty Consultants' Report dated February 22, 2005.

17.      Leonard M. Kacher's Report dated February 22, 2005.

I have been a Hawaii licensed real estate sales person since 1972 and have been a Hawaii licensed real estate broker since 1974 (I put my license on inactive status in January of 2005). I graduated from California Western School of Law in 1988 and became a member of the Hawaii Bar Association in 1989.

From July of 1997 through December of 2003 I served as in-house counsel for Hualalai Resort and principal broker for the resort's real estate brokerage company, Hualalai Realty, Inc. Further details regarding my background are contained in the attached resume.

Based upon this experience and the knowledge gained from my background as well as my review of the aforementioned documents, I offer the following opinions and conclusions regarding the issues related to this case:

I.       WHETHER DEFENDANTS MADE A MISREPRESENTATION IN CONTEMPLATION
         OF PLAINTIFFS' RELIANCE ON THE INFORMATION

Plaintiffs argue that the Federmans knew or should have known that prospective buyers would rely upon their purported misrepresentation of the purchase price on the Conveyance Tax Certificate which they signed at the close of escrow. First I do not believe that Federmans made a conscious misrepresentation of the sales price on the Conveyance Tax Certificate. Escrow prepared this document and presented it to the Federmans for signature along with numerous other documents, including the Closing Statement which also reflected a sales price of $3,000,000. Moreover, they most likely signed both the Closing Statement and the Conveyance Tax Certificate without any

Andrew Beaman, Esq.
March 22, 2005
Page No. 3

thought of making a misrepresentation since $3,000,000 was in fact the sales price shown on the
purchase and sale agreement. When Federmans later realized that the Hawaii State Department of
Taxation ("the Tax Office") was showing $3,000,000 as the amount that they actually paid for the
property, Federmans wrote to the tax authorities to correct this error. More importantly, the
contemplated recipient of the information given on the Conveyance Tax Certificate is to the Tax
Office not potential buyers. The purpose of the Conveyance Tax Certificate is to (i) verify the
accuracy of the amount of the conveyance tax being paid in connection with the sale of real property
and (ii) provide the Tax Office with the mailing address of the new property owner. There is no
reason for Federmans to have assumed that prospective buyers would rely upon the information
contained in this document. The Conveyance Tax Certificate is a tax revenue producing device not a
tool for realtors or appraisers. Furthermore, the Tax Office records are not a superior source of
information; they are not always accurate and are often two (2) to three (3) months behind.
Therefore, realtors typically obtain information on prices and comparable sales from either the
Multiple Listing Service ("MLS") or, in the case of real estate developments that are not listed with
MLS, they obtain prices and comparable sales information directly from the developer's office. That
is what Plaintiffs' realtor, Debi Au, did in this case; she obtained and confirmed the prices for the lots
in the Bluffs At Mauna Kea (the "Bluffs") with the Mauna Kea Realty ("MKR") sales office. In my
review of the above referenced documents, I found no convincing evidence that either Plaintiffs or
their realtors relied upon information obtained from the Tax Office with respect to the lots within the
Bluffs development. If Plaintiffs in fact relied upon any price information at all, they relied upon the
information their realtor Debi Au received from the MKR sales office; Federmans did not create this
information and they did not provide this information to Plaintiffs.

II.     WHETHER PLAINTIFFS RELIED UPON THE MKR PRICE LIST WHEN MAKING
        THEIR OFFER TO PURCHASE LOT 5

Plaintiffs stated that they were only interested in purchasing an oceanfront lot located along the
Kohala Coast of the Big Island of Hawaii between Mauna Lani Resort and Mauna Kea Beach Hotel
(aka "the Gold Coast"). Oceanfront properties in this area include the 49 Black Sands development,
Puako Beach and the Bluffs At Mauna Kea. Plaintiffs had apparently considered but ultimately
rejected both 49 Black Sands and Puako Beach in favor of the Bluffs. Plaintiffs decided they were
most interested in purchasing an oceanfront lot in the Bluffs. At that time, Lot 5 was the last
oceanfront lot available in the Bluffs. Ms Au informed Plaintiffs (a) that Lot 5 was the last lot left in
the Bluffs, (b) that the prices were firm, (c) that there was another offer on Lot 5 already sitting on
the developer's desk which had not yet been responded to and (d) that they therefore still had an
opportunity to acquire Lot 5. These facts speak volumes because they show that, before Plaintiffs
made their offer on Lot 5, they knew the developer already had a contract for Lot 5 which they had
not responded to. This sent a clear signal to Plaintiffs that buyers must be submitting offers
otherwise the developer would have simply accepted the contract they had already received from the
other buyer. Given these facts, I do not believe that Plaintiffs relied upon either the price list or the
representation that these prices were firm. The price list did not lull Plaintiffs into thinking that they
were precluded from negotiating with the developer. They knew they could make an offer below the
listed price and they in fact did make an offer below the listed price.

Andrew Beaman, Esq.
March 22, 2005
Page No. 4

## III.    WHETHER PLAINTIFF SUSTAINED ANY DAMAGES

Plaintiffs' claim seems to indicate that, had they known about the landscaping credit given to other buyers, they would have asked for and MKD would have been obligated to give them a similar landscaping credit. This argument is speculative at best. There is nothing that requires a developer to offer the same price and terms to each buyer throughout the course of the sale of a project. Developers, like all sellers, have the right to negotiate with buyers in accordance with the market at any given point in time. In this case, Lot 5 was the last oceanfront lot in the Bluffs and Mauna Kea Development ("MKD") had two buyers who wanted to purchase Lot 5. Simply put, the supply was down and the demand was up, putting the seller in a strong negotiating position, a completely different market environment from when Federmans purchased Lot 6. When Federmans purchased Lot 6, the lots at the Bluffs had been on the market for two (2) years and there were still five (5) other oceanfront lots available. There was no element of scarcity such as there was when Federmans purchased Lot 5. Given the market conditions at the time of Plaintiffs' purchase, it is not only speculative; it is highly unlikely that MKD would have offered any landscaping credit or other purchase incentive to Plaintiffs.

Finally, it goes without saying that Plaintiffs know they did not pay too much for Lot 5 given the fact that, within a few weeks of the closing of this purchase, they received and rejected at least two bona fide offers to purchase Lot 5 for Six Million Five Hundred Thousand Dollars ($6,500,000) and then listed the property for sale at a price of Seven Million Dollars ($7,000,000).

## IV.    CONCLUSION

In summary, there was no foul play. The difference between the deal Federmans made with MKD and the deal Plaintiffs struck was simply the result of the market at the time of their respective purchases.

It is therefore my opinion (i) that Federmans had no reason to think prospective purchasers would rely upon the information shown on the Conveyance Tax Certificate that they signed in escrow at closing, (ii) that Plaintiffs did not in fact rely upon either the Conveyance Tax Certificate information or the listed prices when making their offer to purchase Lot 5 and (3) that Plaintiffs did not sustain any damages.

I reserve the right to modify and amend the opinions contained herein if further discovery documents or the opinions of other experts are provided to me which in my opinion warrant such modification or amendment.

Respectfully,

Wendelin L. Campbell

# RESUME OF WENDELIN L. CAMPBELL

Wendelin L. Campbell was born in Bloomfield Hills, Michigan and became a resident of Hawaii in 1968.  Ms. Campbell attended the University of Hawaii and received her Bachelor of Arts degree from Antioch University in 1985.  She attended the University of Hawaii William S. Richardson School of Law and received her Juris Doctor degree (Magna Cum Laude) from California Western School of Law in 1988.  Ms. Campbell received the Land Management Book Award in 1986 as the top student in Land Use Management at the University of Hawaii William S. Richardson School of Law.

Ms. Campbell became a Hawaii licensed real estate sales person in 1972 and has been a Hawaii licensed real estate broker since 1974.  From 1975 through 1984, Ms. Campbell owned and operated the real estate brokerage company of Wendy Monet Realty, Inc. on the Big Island of Hawaii overseeing a sales staff of 10-15 agents.

Prior to her graduation from law school, Ms. Campbell clerked as a Special Research Assistant for the United States Department of Justice in the Land Acquisition Division of the Department of Land and Natural Resources in Washington, D.C., as a research assistant for Professor David L. Callies at University of Hawaii William S. Richardson School of Law and as a legal assistant for Legal Aid Society of Hawaii.

From 1988 to 1991, Ms. Campbell was associated with the Honolulu law firm of Chun, Kerr, Dodd & Kaneshige.  As an associate of Chun, Kerr, Dodd & Kaneshige, Ms. Campbell represented clients before the State of Hawaii and the City and County of Honolulu in connection with the use and development of shoreline properties and shoreline protection structures.

Since June of 1991, Ms. Campbell has maintained a private law practice in Kamuela, Hawaii.  Ms. Campbell's practice is concentrated in the areas of real estate acquisition, financing, development, operation and sale, land use and zoning, state and county administrative law related to transactions involving acquisition, financing, development, operation and/or sale of commercial properties, residential condominium projects and subdivisions. Ms. Campbell's clients have included the Parker Ranch and its affiliates.  In addition, from 1991-1993, Ms. Campbell acted as a Commissioner for the United States Court For The District of Hawaii in John Hancock Mutual Life Insurance Company vs. Thomas Kennerly, et al., Civil No. 90-00716 ACK, a complex foreclosure action involving 9,643 acres, sixteen (16) single family dwellings, an operating cattle ranch and two telecommunication sites.

In 2002, Ms. Campbell served as an expert witness in the following real estate related cases:  Norman A. Fogelsong, et al., v. Mauna Kea Properties, Inc., et al., Civil No. 01-1-0279 (In the Circuit Court of the Third Circuit, State of Hawaii); In the Matter of Arbitration Between: Norman A. Fogelsong, et al., v. Sanford R. Robertson, et al., DPR No. 01-0266-A (The Arbitration Tribunals Dispute Prevention Resolution, Inc.); and Lee H. Taylor v. Mauna Kea Properties, Inc., et al., Civil No. 99-527, Third Circuit (Hilo), State of Hawaii.

From July of 1997 through December of 2003, Ms. Campbell served as in-house counsel for Ka'upulehu Makai Venture, the developer of Hualalai Resort on the Kohala Coast of the Big Island, as well as principal broker for the resort's real estate brokerage company, Hualalai Realty, LLC ("Hualalai Realty"). As principal broker of Hualalai Realty, Ms. Campbell coordinated and managed the sale and closing of over Eight Hundred Million Dollars ($800,000,000) in Hualalai Resort property sales.

Ms. Campbell is a member of the Hawaii Bar Association, the American Bar Association and the Kona Board of Realtors.