# EXHIBIT

# D

WENDELIN L. CAMPBELL
Attorney At Law
P.O. Box 459
Kamuela, Hawaii 96743

March 24, 2005

Andrew Beaman, Esq.
Chun, Kerr, Dodd, Beaman & Wong
745 Fort Street, 9th Floor
Honolulu, Hawaii 96813

RE: Western Sunview Properties, LLC v. Irwin Federman et al. Civil Case No. 03-00463, In the United States District Court for the District of Hawaii

Dear Mr. Beaman:

I am writing this letter, as an expert witness for Defendants Irwin Federman and Concepcion S. Federman ("Federmans"), to rebut the following reports prepared by expert witnesses for the Plaintiffs in connection with the above referenced litigation:

1. Pacific Realty Consultants' Report prepared by Kenneth D.H. Chong dated February 22, 2005;

2. Leonard M. Kacher's Report dated February 22, 2005.

MY BACKGROUND

I have been a Hawaii licensed real estate sales person since 1972 and have been a Hawaii licensed real estate broker since 1974 (I put my license on inactive status in January of 2005). I graduated from California Western School of Law in 1988 and became a member of the Hawaii Bar Association in 1989.

From July of 1997 through December of 2003 I served as in-house counsel for Hualalai Resort and principal broker for the resort's real estate brokerage company, Hualalai Realty, Inc. Further details regarding my background are contained in the resume attached to the expert witness report I prepared in this case.

Based upon this experience and the knowledge gained from my background as well as my review of the documents listed in therein, I prepared my expert witness report dated March 22, 2005.

REBUTTAL

Both of Plaintiffs experts, Kenneth D. H. Chong ("Chong") and Leonard M. Kacher ("Kacher") opine that by signing a Conveyance Tax Certificate that reflected a purchase price of $3,000,000, the Federmans knowingly misstated the price they paid for Lot 6 in The Bluffs At Mauna Kea (the

Andrew Beaman, Esq.
March 24, 2005
Page No. 2

"Bluffs") and in doing so wittingly participated in a scheme contrived by Defendants Mauna Kea Properties, Inc. dba Mauna Kea Realty ("MKR") and Mauna Kea Development Corp. ("MKD") to mislead appraisers, realtors and future purchasers of the lots within the Bluffs.

This position fails for several reasons. First I do not believe that Federmans made a conscious misrepresentation of the sales price on the Conveyance Tax Certificate. Title Guaranty Escrow Services ("Escrow") prepared the Conveyance Tax Certificate and presented it to the Federmans for signature along with numerous other documents, including the Closing Statement which also reflected a sales price of $3,000,000. Escrow prepared these documents to reflect a sales price of $3,000,000 because that was in fact the sales price shown on the purchase and sale agreement for Lot 6. The Closing Statement, Conveyance Tax Certificate and the sales contract should, and did, all reflect the same price. It is common practice in the escrow industry for the sales price information to conform on all of the closing documents. Federmans rightfully signed both the Closing Statement and the Conveyance Tax Certificate without any thought of making a misrepresentation since $3,000,000 was in fact the sales price shown on the sales contract. Moreover, Federmans had no reason to want to deceive either the Hawaii State Department of Taxation or the County of Hawaii Tax Office (collectively the "Tax Office"). In fact, when Federmans later realized that the Tax Office was showing $3,000,000 as the amount of the consideration that they actually paid for the property, Federmans wrote to the tax authorities to correct this error. Federmans did not make an intentional misrepresentation; they simply signed a Conveyance Tax Certificate which conformed to the price information shown on the other documents provided to them by Escrow at closing.

More importantly, Federmans had no reason to think that prospective buyers would reply upon the information shown on the Conveyance Tax Certificate. The contemplated recipient of the information given on the Conveyance Tax Certificate is the Tax Office not potential buyers, realtors or appraisers. The purpose of the Conveyance Tax Certificate is to (i) verify the accuracy of the amount of the conveyance tax being paid in connection with the sale of real property and (ii) provide the Tax Office with the mailing address of the new property owner. There is no reason for Federmans to have assumed that prospective buyers would rely upon the information contained in this document. The Conveyance Tax Certificate is a tax revenue producing device not a tool for buyers, realtors or appraisers. In fact, the Tax Office records are not a superior source of real property sales information; they are not always accurate and are often reported 2-3 months after the date of the sale. Therefore, realtors and appraisers typically obtain information on prices and comparable sales from either the Multiple Listing Service ("MLS") or, in the case of real estate developments that are not listed with MLS, they obtain prices and comparable sales information directly from the developer's office. That is what Plaintiffs' realtor, Debi Au, did in this case; she obtained and confirmed the prices for the lots in the Bluffs with the MKR sales office. In my review of the documents in this case, I found no convincing evidence that either Plaintiffs or their realtors relied upon information obtained from the Tax Office with respect to the lots within the Bluffs development. If Plaintiffs in fact relied upon any price information at all, they relied upon the information their realtor Debi Au received from the MKR sales office; Federmans did not create this information and they did not provide this information to Plaintiffs.

Finally, because the sole purpose of Conveyance Tax Certificate is to provide information to the Tax Office, only the Director of the Hawaii State Department of Taxation has the authority to enforce the rules and regulations related to this instrument. Plaintiffs have neither such authority nor do

Andrew Beaman, Esq.
March 24, 2005
Page No. 3

Plaintiffs have a right to complain if in fact they or their realtors did rely upon information contained in the Conveyance Tax Certificate signed by Federmans as that is not the intended purpose of the Conveyance Tax Certificate.

## CONCLUSION

I therefore refute the opinions offered by Chong and Kacher with respect to Federmans' execution of the Conveyance Tax Certificate because (i) Federmans did not make a conscious misrepresentation of the sales price on the Conveyance Tax Certificate, (ii) Federmans had no reason to think prospective purchasers would rely upon the information shown on the Conveyance Tax Certificate and (iii) the Conveyance Tax Certificate is prepared for the benefit of the Hawaii State Department of Taxation as a revenue producing device and not as a tool for buyers, realtors or appraisers.

Respectfully,

*[signature]*

Wendelin L. Campbell