IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; and JULIA HANDS, ) ) ) ) | CIVIL NO. 03-00463 JMS/LEK |
| Plaintiffs, ) ) | ORDER GRANTING DEFENDANT THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT REGARDING LANDSCAPING AND DENYING THEIR MOTION TO STRIKE |
| vs. ) ) | |
| IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORPORATION; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100; and DOE CORPORATIONS 1-100, ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) _____ ) | |

ORDER GRANTING DEFENDANT THE BLUFFS AT MAUNA KEA
COMMUNITY ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT
REGARDING LANDSCAPING AND DENYING THEIR MOTION TO STRIKE

On June 21, 2006, the court entered an Order Granting Defendant The

Bluffs at Mauna Kea Community Association's Motion for Summary Judgment

and Granting in Part and Denying in Part Defendants Mauna Kea Properties, Inc.'s

and Mauna Kea Development Corporation's Motion for Summary Judgment as to

All Special Setback and Punitive Damages Claims ("Summary Judgment Order"). In its Summary Judgment Order, the court granted Defendant The Bluffs at Mauna Kea Community Association's ("Association") motion for summary judgment regarding Plaintiffs' claim that the Association is liable to them based on certain improvements that the Plaintiffs' neighbors, the Federmans, made to their property. The parties' briefs supporting and opposing the Association's motion focused on a pool, spa, and terrace that the Federmans constructed on their property. In their opposition, the Plaintiffs referenced some landscaping on the Federmans' property that allegedly blocked views. Because there was not enough evidence in the record for the court to determine whether an issue of fact remained as to the Federmans' landscaping, the court requested supplemental briefing on this issue.

After reviewing the supplemental briefs submitted by the parties[1] as well as the record as a whole, the court concludes that there are no genuine issues of material fact as to the Plaintiffs' claims regarding the Federmans' landscaping and the court grants summary judgment in favor of the Association.[2] As a result of

---

[1] In addition to the supplemental briefing, the court received Plaintiffs' Notice of Errata filed on August 29, 2006.

[2] Pursuant to Local Rule 7.2, the court finds this matter suitable for disposition without a hearing.

2

this order, there are no further claims remaining against the Association in this action.

The Association filed a separate motion to strike the Plaintiffs' supplemental brief. Because the court concludes that the Association is entitled to summary judgment on the Plaintiffs' landscaping claims, the court DENIES the Association's motion to strike as moot.

## I. BACKGROUND

In its Summary Judgment Order, the court set forth in detail the background facts relating to the governing documents at the Bluffs at Mauna Kea; the spa, pool, and terrace constructed by the Federmans and the two to three palm trees planted in the Federmans' special setback area; and the Association's February 2002 approval of the Federmans' plans. Those background facts are incorporated herein.

In addition to the spa, terrace, pool, and two to three palm trees discussed in the Summary Judgment Order, the Plaintiffs allege that the Federmans planted approximately six palm trees and a row of silver buttonwoods in their special setback area and that this landscaping violated the Association's Design Requirements. The Plaintiffs contend that the palm trees and silver buttonwoods were not approved by the Association in February 2002. They

acknowledge that the Association may have approved the landscaping plan in June 2004 but argue that it is unclear whether or when the Association actually approved the landscaping plan.  They contend that, regardless of whether the Association approved the Federmans' landscaping plan, the Association is liable to them because the palm trees and silver buttonwoods obstruct their view.

        The Association contends that, at the latest, it approved the Federmans' landscaping plans, including the palm trees and silver buttonwoods, in June 2004.[3]  As reflected in Design Committee meeting minutes and correspondence with the Federmans, from 2001 through 2004 the Association worked with the Federmans to approve a landscaping plan that complied with the Design Requirements and maximized views from neighboring properties.  Defendants Exs. A, B, C, F, G, and H.[4]  It is clear from the record that the Federmans' landscaping plans were in fact approved in June 2004.  Defendants'

---

[3] The Plaintiffs filed their First Amended Complaint on April 27, 2004; the alleged final landscaping approval letter was sent to the Federmans shortly thereafter.  The Plaintiffs raised the issue of the Federmans' landscaping in the special setback area in their First Amended Complaint, although the First Amended Complaint obviously does not mention the June 2004 approval letter or allege a claim based on that approval.  The parties have conducted discovery on the Federmans' landscaping and have thoroughly briefed the issues related to the landscaping and the alleged June 2004 approval.  Given that the parties have actively litigated the landscaping issue as it has unfolded through the June 2004 letter, the court will consider the June 2004 letter and all events occurring prior to the letter in deciding the instant issue.

[4] All exhibits cited herein are the exhibits attached to the parties' supplemental briefing on the landscaping issue, unless otherwise noted.

Ex. I.  The Association argues that its review process leading up to this approval was reasonable and undertaken in good faith and that it is therefore entitled to summary judgment.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

//

//

III.  ANALYSIS

The Plaintiffs advance the following three theories under which they argue the Association is liable to them for the Federmans' palm trees and silver buttonwoods:  (1) the Association approved the Federmans' landscaping even though doing so violated the Design Requirements and blocked the Plaintiffs' views; (2) the Association did not respond to the Federmans' landscaping proposal, thereby leading the Federmans to assume that their plans had been approved and causing them to install landscaping that blocks the Plaintiffs' views; or (3) the Federmans embarked on a landscaping project that blocks Plaintiffs' views without the Association's approval and the Association failed to stop the project.  The court concludes that the Association approved the Federmans' landscaping plans in June 2004 and that this approval was reasonable and undertaken in good faith.  The court further concludes that, even if the Association did not have the power to grant variances to the Design Requirements, neither the palm trees nor the silver buttonwoods violate the Design Requirements.  The court need not address the Plaintiffs' second two arguments.

**A.     The Association Approved the Federmans' Landscaping Plans**

The Association provided the court with a copy of the June 2004 letter from the Association to the Federmans approving their landscaping plans.

The Plaintiffs do not directly dispute the authenticity or meaning of this letter. Rather, they attempt to create a factual issue by citing to the deposition testimony of two members of the Design Committee. One member stated that the Federmans' plans had gone through a "vague process" of approvals and denials and that, in his mind, any approval was not "final." Plaintiffs' Ex. 3 at 100:12-101:5. Another member stated that he could not recall what had or had not been approved but that he thought the Design Committee did not approve landscaping over thirty inches in the Federmans' special setback area. Plaintiffs' Ex. 5 at 32:9-11. The fact that two Design Committee members, both of whom acknowledged that they did not know or could not remember exactly what was approved, stated that they did not *think* all of the Federmans' landscaping plans were approved does not undermine the Association's contention, supported by the actual approval letter, that the Federmans' plans were approved.

      The Plaintiffs also attempt to create confusion by arguing that the Federmans' plans may have been approved through the Association's inaction prior to the June 2004 letter. Even if there is a genuine issue regarding whether the Federmans' plans were previously approved, this factual issue is not material to the Plaintiffs' claims. The court concludes that the Federmans' plans were ultimately approved by the Association and that this approval was reasonable. It

7

does not matter whether the Federmans' plans were also approved in another manner prior to June 2004.

**B.     The Association Acted Reasonably and in Good Faith in Approving the Federmans' Landscaping Plans**

The Plaintiffs contend that Design Requirements categorically prohibit structures in the special setback area. They argue that the Federmans' palm trees and silver buttonwoods constitute one or more structures and that the Association therefore violated the Design Requirements when it approved the landscaping plans.

The Design Requirements do not categorically prohibit structures in the special setback area. The Plaintiffs' argument that all structures are prohibited in the special setback area is at odds with the plain language of the governing documents and was rejected in both Judge Ezra's February 22, 2005 Reconsideration Order and this court's Summary Judgment Order. The Declaration of Protective Covenants, Conditions, and Restrictions from the Bluffs at Mauna Kea expressly allows the Design Committee to grant variances from the Design Requirements. Ex. 1 to the Declaration of Robert Glazier, attached to the Association's Motion for Summary Judgment filed November 3, 2005 at 8.8. Thus, though the Design Requirements state that "no buildings or structures shall

be placed within the special setback areas," the Association has the power to grant variances on a case-by-base basis.

Judge Ezra's Reconsideration Order recognized the Association's power to grant variances. The Reconsideration Order did not reach the issue of whether the palm trees constituted structures; instead, Judge Ezra ruled that, even if the trees were structures, the Association acted reasonably and in good faith in granting the Federmans a variance from the Design Requirements for such alleged structures. Reconsideration Order at 22-23. The court adopted Judge Ezra's ruling as law of the case in its Summary Judgment Order and reaffirms the soundness of that ruling in the instant order. Thus, given the plain language of the governing documents and the previous ruling on this matter, the court concluded that, as long as the Association acted reasonably and in good faith in approving the Federmans' landscaping,[5] this approval does not violate the Design Requirements.

---

[5]As discussed in the court's Summary Judgment Order, the parties dispute what standard of review this court should apply to the Association's decisions. In the Summary Judgment Order, the court did not decide what standard of review governs because the court concluded that the Association was entitled to summary judgment regardless of which standard applied. For the same reason, the court declines to decide the standard of review in the instant order. Even applying the reasonableness and good faith standard, as urged by the Plaintiffs, the Association is entitled to summary judgment.

After reviewing the record, the court easily concludes that the Association acted reasonably in approving the Federmans' landscaping plans in June 2004. The Association has provided numerous records indicating that it carefully reviewed the Federmans' proposals with an eye toward preserving the views from neighboring properties. *See*, *e.g.*, Ex. F (architectural consultant comments to the Design Committee regarding suggested modifications to the Federmans' landscaping in order to enhance views and achieve compliance with Design Requirements). The Federmans' landscape architects submitted several sets of landscaping plans; with each proposal, the Association's architects offered suggestions for better preserving view planes. *See*, *e.g.*, Ex. A (August 2001 architectural assessment of Federmans' plans prepared for the Association recommending reducing the 27 proposed palm trees); Ex. B (December 2001 memorandum from architects indicating that Federmans reduced number of palm trees but suggesting rearrangement of palms to maximize views). The Plaintiffs have not come forward with evidence, aside from their narrow and unsupported interpretation of the Design Requirements, suggesting that the Association did not carefully consider the Federmans' proposals or that it somehow acted unreasonably in approving the plans. No reasonable jury could conclude from the

evidence in the record that the Association did not act reasonably in approving the Federmans' landscaping plans.

The Plaintiffs have also failed to come forward with evidence, beyond what was submitted to the court prior to the June 21, 2006 Summary Judgment Order, that the Association acted in bad faith in approving the Federmans' landscaping. As discussed in the Summary Judgment Order, the Plaintiffs allege that two members of the Design Committee were in someway aligned with the Federmans and that this conflict affected the Association's decision to allow the Federmans' variances in their special setback area. Judge Ezra and this court concluded that these alleged conflicts did not create a triable issue of fact as to the Association's good faith with respect to their approval of the pool, spa, terrace, and two to three palm trees. The Plaintiffs have provided no additional evidence regarding how these or any other potential conflicts affected the Association's decision to approve the Federmans' landscaping plans. Thus, the court concludes that there is no genuine issue of material fact as to whether the Association approved the Federmans' landscaping plans in good faith.

**C.    The Design Requirements Do Not Prohibit The Palm Trees**

Even adopting the Plaintiffs' narrow interpretation of the governing documents and assuming that the Association did not have the power to grant

variances to the prohibition on structures in the special setback area, the court would still conclude that the palm trees in question do not violate the Design Requirements.

The Design Requirements state that "no buildings or structures shall be placed within the special setback areas[.]" Plaintiffs' Ex. 1 at 8. Though rows of trees may in some circumstances constitute structures, *Wilson v. Handley*, 119 Cal Rptr. 2d 263, 266-67 (Cal. App 2002), the court easily concludes that the palm trees in question do not, as a matter of law, form a "structure" within the meaning of the Design Requirements. A review of photographs demonstrates that the palm trees at issue are not planted in such a way that a reasonable juror could conclude they constitute a structure within the meaning of the Design Requirements. The Plaintiffs complain about approximately six palm trees. The six trees are spread out across the property, with three trees forming a grouping. The trees in the grouping are planted far enough apart from one another that views between the trees are unobscured. *See* Defendant's Ex. K; Plaintiffs' Exs. 19 & 21D. It is clear that no reasonable juror could conclude that this grouping constitutes a structure.

The Plaintiffs also argue that, even if the palm trees are not a structure, they violate the Design Requirements insofar as the Design

Requirements state that palm trees are "not encouraged." Plaintiffs' Ex. 1 at 7. This argument perhaps best encapsulates the overall insincerity of the Plaintiffs' position on the landscaping issue; they consistently take broad language from the Design Requirements and apply it out of context to particular improvements on the Federmans' property without ever acknowledging exceptions or ambiguity in the rules. In the instant example, palms trees clearly are not prohibited; they are simply not encouraged. There is no evidence that the Association "encouraged" the Federmans to plant palm trees. To the contrary, as discussed above, the Association repeatedly encouraged the Federmans to plant *fewer* palm trees in order to preserve view planes from neighboring properties.

The Plaintiffs similarly contend that the Association's decision to allow only non-clustered palm trees and ground cover in the special setback area is in violation of the Design Requirements and "irrational," given that palm trees are "not encouraged." Even if the court agreed that the Association's shift from not encouraging palm trees to allowing them in moderation was somehow irrational, the Plaintiffs fail to articulate how the Federmans' six palm trees are prohibited under a "rational" interpretation of the Design Requirements.

In short, nothing in the Design Requirements prohibits palm trees in special setback areas or anywhere else. The court therefore easily concludes that

the Association did not violate the Design Requirements when it approved the Federmans' palm trees.

**D.     The Silver Buttonwoods Are Not In The Special Setback Area**

The silver buttonwoods are not located within the Federmans' special setback area; therefore, the plants do not violate the prohibition on structures in special setback areas or the Association's limitations on approved plants in the setback areas.  The Association has submitted a sworn declaration from David Ayer, an architectural consultant for the Design Committee.  Ayer attached a copy of the landscaping plans submitted by the Association and approved by the Design Committee on which he marked the approximate location of the special setback area.  It is clear from these plans that the silver buttonwoods are not in the special setback area.  Defendants' Ex. J.

The Plaintiffs do not directly dispute the accuracy of the landscaping plans or Ayer's knowledge of what was approved.  Rather, they submit a declaration from an architect who visited the Federmans' property.  Based on his visit, the architect stated: "I believe . . . that at least 6 new coco palms and a new cluster of what I understand are silver buttonwoods are in the special setback area of the Federmans' property."  Plaintiff's Ex. 21 at 3.  He acknowledged, however, that he "would have to visit the site, lay out the special setback line and the

14

property lines, and examine the location of the new trees" in order to accurately determine what plants are actually in the setback area. *Id.* Such evidence does not reasonably undermine the Association's evidence that the silver buttonwoods are not in the special setback area. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) (holding that summary judgment must be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (noting that the non-moving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial"). Moreover, the Plaintiffs' architect's description of the location of the special setback area is consistent with the Association's contention that the silver buttonwoods are not in the setback area. The Plaintiff's architect states that the boundary line of the special setback area runs between the Federmans' house and pool. From the plans and photographs submitted by both parties, it is clear that nearly all of the silver buttonwoods are in a line parallel with the side of the Federmans' house and extend only slightly beyond the back of the house in the direction of the pool. Thus, even under the Plaintiffs' architect's description of the boundary of the special setback area, the row of silver buttonwoods could not be located in the setback area.

## IV.  CONCLUSION

For the reasons stated herein, the Association's motion for summary judgment is GRANTED as to all Plaintiffs' claims related to the Federmans' landscaping.  The Association's motion to strike is DENIED as moot.  This Order disposes of all remaining claims against the Association.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 30, 2006.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Western Sunview Properties, et al., v. Federman, et al.*, Civ. No. 03-00463 JMS/LEK, Order Granting Defendant The Bluffs at Mauna Kea Community Association's Motion for Summary Judgment Regarding Landscaping and Denying their Motion to Strike