# EXHIBIT

# A

MOTOOKA YAMAMOTO & REVERE
A Limited Liability Law Corporation

TERRANCE M. REVERE  5857-0
BRIAN A. BILBERRY  7260-0
JACQUELINE E. THURSTON  7217-0
1000 Bishop Street, Suite 801
Honolulu, Hawaii  96813
Tel. No. (808) 532-7900
Fax No. (808) 532-7910
Email Address:    terry@myrhawaii.com

LOVE & NARIKIYO
A Limited Liability Law Company

CHAD P. LOVE  1617-0
BARBARA J. KIRSCHENBAUM  5825-0
1164 Bishop Street, Suite 1105
Honolulu, Hawaii  96813
Tel. No. (808) 546-7575
Fax No. (808) 546-7070
Email Address:    love@lava.net

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>　　　　　　Plaintiffs,<br><br>　　vs. | Civil No. CV03-00463 DAE LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>NOTICE OF MOTION; PLAINTIFFS' MOTION FOR LEAVE OF COURT TO TAKE ADDITIONAL DEPOSITIONS; MEMORANDUM IN<br><br>**(CONTINUED ON NEXT PAGE)** |

IRWIN FEDERMAN; CONCEPCION
S. FEDERMAN; THE BLUFFS AT
MAUNA KEA COMMUNITY
ASSOCIATION; MAUNA KEA
PROPERTIES, INC.; MAUNA KEA
DEVELOPMENT CORP.; COUNTY
OF HAWAII; JOHN DOES 1-100;
JANE DOES 1-100; DOE
PARTNERSHIPS 1-100 AND DOE
CORPORATIONS 1-100,

            Defendants.

SUPPORT OF MOTION;
DECLARATION OF TERRANCE M.
REDVERE; EXHIBITS 1 THRU 15;
CERTIFICATE OF COMPLIANCE;
CERTIFICATE OF SERVICE

**HEARING:**

Date: _____

Time: _____

Judge: _____

motion for leave for additional depositions--memo.doc (648-1)

## NOTICE OF HEARING MOTION

TO:   Andrew V. Beaman, Esq.
       Chun Kerr Dodd Beaman & Wong
       Fort Street Tower, Topa Financial Center
       745 Fort Street, 9th Floor
       Honolulu, Hawaii 96813

         and

       Mark B. Desmarais, Esq.
       Tom Petrus & Miller
       1164 Bishop Street, Suite 650
       Honolulu, Hawaii 96813

       Attorneys for Defendants
       Irwin Federman and Concepcion S. Federman

Sidney K. Ayabe, Esq.
Ayabe Chong Nishimoto Sia & Nakamura
1001 Bishop Street
2500 Pauahi Tower
Honolulu, Hawaii 96813

Attorneys for Defendant
THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION

Douglas Ing, Esq.
Brian Kang, Esq.
Watanabe Ing Kawashima & Komeiji LLP
999 Bishop Street, 23rd Floor
Honolulu, Hawaii 96813

Attorneys for Defendants
MAUNA KEA PROPERTIES, INC. and
MAUNA KEA DEVELOPMENT CORP.

Joseph Kamelamela, Esq.
Bobby Jean Leithead-Todd, Esq.
County of Hawaii
Hilo Lagoon Center
101 Aupuni Street, Suite 325
Hilo, Hawaii  96720

Attorneys for Defendant
COUNTY OF HAWAII

NOTICE IS HEREBY GIVEN that the above-identified motion shall come

on for hearing before the Honorable Leslie Kobayashi, Judge of the above-entitled

Court, in her courtroom in the Prince Jonah Kuhio Kalanianaole Federal Building,

300 Ala Moana Boulevard, Honolulu, Hawaii 96850, at \_\_\_\_ \_.m., on

_____, _____, 2004, or as soon thereafter as counsel may be heard.

DATED: Honolulu, Hawaii,    _____OCT 1 3 2004_____.

_____
TERRANCE M. REVERE
CHAD P. LOVE
BARBARA J. KIRSCHENBAUM

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>           Plaintiffs,<br><br>    vs.<br><br>IRWIN FEDERMAN; CONCEPCION S. FEDERMAN; THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION; MAUNA KEA PROPERTIES, INC.; MAUNA KEA DEVELOPMENT CORP.; COUNTY OF HAWAII; JOHN DOES 1-100; JANE DOES 1-100; DOE PARTNERSHIPS 1-100 AND DOE CORPORATIONS 1-100,<br><br>           Defendants. | Civil No. CV03-00463 DAE LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>PLAINTIFFS' MOTION FOR LEAVE OF COURT TO TAKE ADDITIONAL DEPOSITIONS |

motion for leave for additional depositions--memo.doc (648-1)

## PLAINTIFFS' MOTION FOR LEAVE OF COURT TO TAKE ADDITIONAL DEPOSITIONS

Plaintiffs request leave to take additional depositions in excess of the ten

provided for in Federal Rules of Civil Procedure Rule 30 and 31.

Without objection by Defendants, Plaintiffs' have taken six oral depositions

and ten written depositions to date. All but one records deposition was taken

before Plaintiff Western Sunview Properties, LLC filed its First Amended

Complaint adding new parties and new counts. The additional depositions are necessary because of the new Defendants and claims.

This motion is made pursuant to Rules 7.1, 7.2, 7.5, and 7.6, of the Rules of the United States District Court for the District of Hawaii, Rules 30 and 31 of the Federal Rules of Civil Procedure, the memorandum, exhibits, and declaration attached hereto, and the records and files herein.

As shown by the attached Certificate of Compliance, counsel previously conferred, during the parties' FRCP Rule 26(f) conference held on July 8, 2004, in a good faith effort to resolve the issues herein, but were unable to reach agreement.

DATED: Honolulu, Hawaii,    _____OCT 1 3 2004_____.

_____

TERRANCE M. REVERE
CHAD P. LOVE
BARBARA J. KIRSCHENBAUM

Attorneys for Plaintiffs
WESTERN SUNVIEW PROPERTIES, LLC,
GUY HANDS, AND JULIA HANDS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WESTERN SUNVIEW PROPERTIES, LLC; GUY HANDS; AND JULIA HANDS,<br><br>    Plaintiffs,<br><br> vs.<br><br>IRWIN FEDERMAN; ET AL.,<br><br>    Defendants. | Civil No. CV03-00463 DAE LEK (Contract, Injunction; Other Non-Vehicle Tort; Declaratory Judgment, Other Civil Action)<br><br>MEMORANDUM IN SUPPORT OF MOTION |

motion for leave for additional depositions--memo.doc (648-1)

## TABLE OF CONTENTS

A. Introduction.................................................................... 1

B. Federmans not merely passive participants............................. 4

C. Depositions of Mauna Kea's presidents/brokers needed at this time.................................................................................... 8

D. The Continued Depositions Of The Federmans Regarding Misrepresentation Issues Should Be Allowed ........................ 14

E. Plaintiffs Need to Depose All Defendants' Expert Witnesses and All Lay Witnesses................................................................ 15

F. Plaintiffs Need Records Depositions To Obtain The Other Sales Contracts And Confidentiality Agreements (Secret Agreements)....................................................................... 16

G. FRCP Rules 30 And 31 Provide That Leave Of Court Shall Be Granted.............................................................................. 17

H.    Depositions Taken to Date Were Relevant and Needed ........................ 19

I.    Plaintiffs Have Only Taken SIX (6) Oral Depositions to Date.............. 24

J.    Contingency Depositions....................................................... 24

K.    Conclusion ..................................................................... 25

## TABLE OF AUTHORITIES

### CASES

*Francis v. Lee Enterprises,* 89 Hawaii 234 (Haw. 1999)................................. 16

### RULES

Fed. R. Civ. Procedure Rules 30 and 31 ........................................... 14

Fed. R. Civ. Procedure Rule 26(b)(2).............................................. 14

### OTHER AUTHORITIES

1 Jones on Evidence (1972) § 4.12-4.13 ........................................ 8, 14

## MEMORANDUM IN SUPPORT OF MOTION

### A. Introduction

> *"Oh, what a tangled web we weave*
> *When first we practice to deceive."*
> Sir Walter Scott

Plaintiffs have taken only six oral depositions in this case (but if the records depositions are included, Plaintiffs exceeded the 10 deposition limit). Plaintiffs need additional depositions in order to further ferret out the deceit, the misrepresentations, and the secret agreements which Defendants (Federmans and Mauna Kea) hid for years and which Judge Ezra recently admonished. That is, last month Judge Ezra ruled that Plaintiffs' misrepresentation claims[1] not only withstood the challenge of Federmans' "Motion For Summary Judgment," but Judge Ezra affirmatively ruled that Federmans "did make a false representation that they knew to be false" and that Plaintiffs submitted "conclusive proof" that Defendant Irwin Federman "knew that the landscape credit was an artifice". [See Judge Ezra's Order, Ex. 1 at 26-27 n.6]

In a nutshell, the scheme of Defendants (real estate developer, broker, and early purchaser) was to falsely report to the State Bureau of Conveyances that

---

[1] As used herein, "misrepresentation claims" or "fraud claims" means all of the claims that remain in this case, including fraud, misrepresentation, conspiracy, HRS §480-2, but excluding the view related claims.

early house lots at The Bluffs were sold at "full list price"[2] whereas the truth was

that they were sold for $450,000 to $500,000 less than "full list price".[3]

Defendants' purpose in reporting *higher* purchase prices to the State was to

manipulate the "market value", to trick later purchasers (e.g., Plaintiffs) -- who

rely on the prices at the Bureau for "comparables" -- into thinking they also must

pay "full sticker price". And Defendants' scheme **was** successful in tricking,

duping, and conning Plaintiffs, who were told that others paid "full list price" and

accordingly put up little resistance to paying "full list price."[4]  Judge Ezra in his

recent Order on the "Motions for Summary Judgment" unequivocally found that

*Federmans* made misrepresentations, but left damages and a few remaining issues

to the jury [Ex. 1].  In his Order, Judge Ezra ruled, inter alia:

---

[2]  See Conveyance Tax Certificate [Ex. 2] in which Federmans reported to the State Bureau of Conveyances, under penalty of law, that they paid $3,000,000 for their lot.

[3]  See Federmans' Sales Contract [Ex. 3] and Addendum 1 [Ex. 4] that show in actuality that they paid $2,550,000.  See also the Robertsons' Conveyance Tax Certificate [Ex. 5] which shows they reported to the Bureau a $3,500,000 purchase price; but in reality they only paid $3,000,000 [Ex. 6]

[4]  See Ex. 7 that shows the list prices for the lots; and see Ex. 8 which is Plaintiffs' Sales Contract showing that they offered and paid the "full list price."  See also Ex. 9, the Declaration of Guy Hands showing that he relied on the information at the Bureau when he offered the "full list price."

- *"[T]he court has found that Defendants [Federmans] made a misrepresentation, that a trier of fact may conclude amounted to fraud."* [Ex. 1 at 50; emphasis added.]

- *"The court can only guess at Defendants' [(Federmans')] argument because up until Plaintiffs submitted <u>conclusive proof that Defendant Irwin Federman knew that the landscaping credit was an artifice,</u> [Federmans] maintained in their papers that Defendant Federmans had solely agreed to keep the terms of their transaction with Defendant MKP confidential, and had not discussed the fact that Defendant Irwin Federman had made an affirmative misrepresentation to the Bureau."* [Ex. 1 at 27 n.6; emphasis added.]

- *"[Federmans] did make a false representation that they <u>knew</u> to be false."* [Ex. 1 at 26; emphasis added.]

- *"[I]t is apparent that Defendant Irwin Federman made a misrepresentation . . .".* [Ex. 1 at 32; emphasis added.]

It is important to point out that under this scheme, Defendants made the State of Hawaii (Bureau of Conveyances) the Defendants' unwitting puppet or shill. Defendants accurately predicted that no purchaser/realtor would suspect that the official prices on record at the Bureau -- the OFFICIAL repository of accurate records -- were a sham.

It should be noted that when Plaintiffs filed their original Complaint (which only related to the view claim) on August 7, 2003, Plaintiffs had no idea of the hidden fraud claims that Defendants had painstakingly concealed via their confidentiality agreement. Most of Plaintiffs' depositions to date have been on the view claim.

## B. Federman Defendants Not Merely Passive Participants

Lest the Court get the impression that Federmans were only passively involved in this scheme, some further information about Federmans should be shown. That is, Federmans did much more than sign the secret agreement [Ex. 4]. Judge Ezra came down square against Federmans when they tried to get out on Summary Judgment and expressly wrote that they may be guilty of "fraud".

In any sale of property, the buyer or seller is required by law to report to the State of Hawaii Tax Department and Bureau of Conveyances the actual sale price. The document that this is reported on is called the "Conveyance Tax Certificate". In reporting to the Bureau of Conveyances, it was the Federmans that signed the Conveyance Tax Certificate that told the State of Hawaii that they paid $3 million, when in reality they paid $2,550,000  Federmans represented to the Bureau of Conveyances (via the Conveyance Tax Certificate) that the purchase price of their lot was $3,000,000 [Ex. 2]. Specifically, Federmans declared that:

4

CONVEYANCE TAX CERTIFICATE

Names of Parties to the Document (please Type or Print)

Sellers/Transferors, etc                    Purchaser/Transferees, etc

*Mauna Kea Development Corp*                 *Irwin Federman*
                                             *Concepcion S. Federman*

1. Sales Price ... ... ... ... ... ... ... ... ... ... ... ... ... ... ...*$3,000,000*

\* \* \*

DECLARATION

I (We) declare, under the penalties prescribed for false declaration in
section 231-36, Hawaii Revised Statutes (HRS), that this certificate
(including accompanying schedules or statements) has been examined
by me (us) and, to the best of my (our) knowledge and belief, is a
true, correct, and complete certificate, made in good faith, for the
actual and full consideration paid on the conveyance to which this
certificate is appended, pursuant to the Conveyance Tax Law, chapter
247, HRS.

SIGNATURE(S) - Purchaser(s)/Transferee(s) etc.
Irwin  Federman
Concepcion  Federman

Violation of HRS §231-36 -- false statements to the State of Hawaii -- is a

criminal offense; a Class C **felony** and carries a fine of up to $100,000 and

imprisonment of three years.

After representing to the State that the price was $3,000,000 Defendant

Irwin Federman -- in an attempt to lower his real property tax -- wrote a letter to

5

the County Real Property Tax Department that, in effect, admitted it was a fraud

[Ex. 10]. In his handwritten letter [Ex. 10], he stated:

> Ms. Jane Grisham
> Real Property Dept.
> Director of Finance       re: 6-2-014-006
>
> Dear Ms. Grisham
>                         * * *
> The listing price was $3,000,000, which we
> negotiated down to $2,550,000. The discount is
> reflected on the statement as a "Landscaping
> Credit" of $450,000. **This credit is only an
> accounting artifice to enable Mauna Kea Realty
> to maintain the recorded sales price at the
> amount originally listed.**"
>                         Kind regards,
>                         Irwin Federman

Federmans' duplicity got worse -- if that is possible. After this damaging

admission of the scheme, Irwin Federman was deposed. Importantly, although

requested to produce all documents pertaining to the sale of Lot 6, the Federmans

failed to produce the smoking gun documents referred to above.[5] The failure to

produce these documents allowed Mr. Federman to "play dumb" -- acting as

though he did not have a clue as to the reason for the confidentiality agreement:

---

[5] In the first request for production of documents, Mr. Federman was asked to
produced the following:

> 2. Any and all documents pertaining to Lot 6 at The Bluffs at Mauna Kea.

> 3. Any and all documents pertaining to the sale of Lot 6 at The Bluffs at
> Mauna Kea, including, but not limited to, any communications made before
> or after the sale which pertain in any way to the sale of Lot 6.

| | |
|---|---|
| Mr. Revere | *Okay. As you sit here today, can you think of any reason why Mauna Kea Development Corp. would want this confidential addendum to the sales contract, other than to give later, prospective purchasers the idea that $3,000,000 exchanged hands instead of 2.55 million dollars?* |

* * *

| | |
|---|---|
| Mr. Federman | *I don't think it's useful to speculate on their motives for this --* |
| Mr. Revere | *Okay.* |
| Mr. Federman | *-- so I can't speculate.* |

* * *

| | |
|---|---|
| Mr. Revere | *. . . Do you recall anything about why they wanted to keep this confidential?* |

* * *

| | |
|---|---|
| Mr. Federman | *No.* [Ex. 11 at 75-76; emphasis added.] |

As shown in the Conveyance Tax Certificate, Federmans -- and no one else -- reported the Sales Price to the Bureau of Conveyances, and they knew that they and MKP were engaged in what Irwin Federman himself referred to as an "accounting artifice" to trick other buyers [Ex. 2].[6]

---

[6] Mr. Federman attempted to give the impression in his deposition that he, a high finance wheeler-dealer, never heard of the concepts of setting a false market or a fraud on the market [Ex. 11 at 215]. However, in reality he has been sued repeatedly for insider trading and fraud on the market. See. e.g., one the

With this background, we now turn to why it is important for Plaintiffs to be permitted further depositions.

## C.    Depositions Of Mauna Kea's Presidents/Brokers Needed At This Time

Plaintiffs need to depose the Mauna Kea employees/officers below in order to prove, inter alia:

1.    That the "landscape or grading credits" were bogus, not having anything to do with "landscaping or grading" whatsoever; Mauna Kea has already argued to Judge Ezra that the "landscape credits" had in actuality something to do with landscaping. [See Mauna Kea's Memorandum in Opposition to Plaintiffs' Countermotion filed 08/12/04 at 17, 18.] Judge Ezra did not accept Mauna Kea's position but they might raise it again at trial.

2.    That Mauna Kea had purchasers sign a confidentiality agreement (e.g. Federmans' confidentiality agreement [Ex. 4]) and reported the inflated prices so that later purchasers would believe that they must pay "full sticker price";

---

complaints brought against him regarding Checkpoint Software, which involves allegations of insider trading and setting a false market [Ex. 15].

3.    What Mauna Kea told Federmans about their "landscaping credit" of $450,000 (e.g., "This is just a technicality – everyone does it." or "It is no ones business what you pay.").

4.    What Federmans told Mauna Kea about the phony "landscaping credit" during negotiations (e.g., "We don't care what the paperwork says, as long as we get a $450,000 discount that's all that matters."); Federmans have argued to Judge Ezra (and may try to argue at trial) that they had no idea what Mauna Kea was doing.

5.    What other purchasers received the bogus "landscaping credit"; other similar transactions are relevant to show intent/motive (Mauna Kea argued to Judge Ezra that they had no intent to defraud). 1 Jones on Evidence (1972) Sections 4.12 and 4.13 states:

> *"Knowledge, motive or intent may often be ascertained from evidence of transactions, apparently collateral, and such evidence, if shown to be relevant, is admissible for such and similar purposes. Such evidence is admissible in both civil and criminal cases. The rule is that when a person's conduct is in issue the fact that the person engaged in conduct of the same sort on a different occasion may be shown as tending to shed light on some quality of the conduct in question, such as intent, knowledge, good or bad faith, malice or other state of mind or bodily feeling.*
>
> *Obviously it frequently happens that motive or intent can be shown in no other way since, while a single act may leave the secret motive of the party in doubt, such act, in connection with others of the same character, may afford decisive proof and remove all uncertainty."*

9

\* \* \*

> *"Such evidence is frequently admitted where the issue is as to fraudulent intent. Other similar acts or representations at about the same time as the one in question are held to be relevant."*

6.    What co-employees or supervisors at Mauna Kea might have said about the scheme as they were executing or planning it (e.g., "This is improper but home office in Japan says we have to increase profits somehow").

7.    Punitive Damages. Even though Judge Ezra granted summary judgment on this as far as the Federmans are concerned, no such ruling in favor of Mauna Kea exists, and any such ruling is extremely unlikely given that Mauna Kea was the architect of the scheme and made millions of dollars as a result of it.  (Additionally, even as far as the Federmans are concerned, Plaintiffs have filed a motion for reconsideration on this issue and believe it will be granted.)

At this time, Plaintiffs would like to take the following oral depositions of these Mauna Kea employees or officers:

1.    *William Mielcke.*  He was the President of Mauna Kea Properties and testified in a previous case on the phony "landscaping credits".

10

*Ques:*      *"Was there a requirement in the documents that the purchaser signed that said you got to spend X number of dollars on landscaping?"*

*Mielcke:*    *"No."*

*Ques: "*    *Then what are you crediting it against?"*

*Mielcke:*    *"It really was a form of discounting the selling price to help accelerate the sales of the project."*

*           *   \* \* \*

*Ques: "*    *When you say Mr. Stifler wanted to do this to maintain the integrity of the price, it was so you could tell the next purchaser that, hey, the selling price is the listing price, correct?"*

*Mielcke:*    *"Correct".*      [Ex. 12 at 79-81; emphasis added.]

Why do we need to depose Mr. Mielcke if he was deposed in a previous case and gave this damaging testimony? Because the Federmans have argued that this deposition is not admissible against them because they were not a party to that other case in which Mielcke was deposed (even though Federmans' counsel was the one actually asking the questions in that case). (See Federmans Memorandum in Opposition to Plaintiffs' Countermotion at 2.) Additionally the questions of the Mauna Kea witnesses on the issue of landscape credits, while incredibly damaging, were limited and apparently asked by the Robertson's (now the Federmans counsel) because he knew that the credits were unseemly at the very least and (rightfully) made Mauna Kea look very bad. Also, Mielcke might also

11

have testimony regarding information told to Federmans, told by Federmans or comments made by Mauna Kea staff re the scheme.

2.    *Yoichi Asari.*  Asari was the President of Mauna Kea Development. He testified in a previous case regarding the landscaping credits at the Bluffs:

> Ques:   *"Why not simply just discount the sales price by $500,000? Why use the landscaping credit?"*
>
> Asari:  *"The reason was we didn't want to change the sales price."*
>         [Ex. 13 at 107]:

Federmans have argued that this deposition from a past case at The Bluffs is not admissible in the instant case because Federmans were not a party in the previous case.  [See Federmans' Reply Memorandum in Support of Motion for Summary Judgment at 2.]

3.    *Kathrin "Chacha" Kohler.*  She is a broker of Mauna Kea Properties and testified in the previous case at The Bluffs (same project)

> Ques:      *"I see.  So the purpose of the landscaping credit was for you to be able to give discounts below the purchase price to buyers but to be able to continue to tell later purchasers that the lots had all sold for full price?"*
>
> Kohler:    *"It was basically a discount, yes."*
>
> Ques:      *"But it was a discount that was given in a way that it could be -- that it would not have to be reflected in the public records?"*
>
> Kohler:    *"I don't recall exactly how it worked, but I'm sure it was given at the beginning, mainly to get*

> *this project up and running because times were*
> *not that great in those years as you might recall.*
> *The '90s were pretty rough."*
>
> *"And I'm sure that the powers that were then*
> *decided to do it that way to kick start this*
> *project."* [Ex. 14 at 37-39; emphasis added.]

Again, Federmans have argued that this testimony is not admissible in the

instant case because they were not a party to that previous case. [See Federmans'

Reply Memorandum in Support of Motion for Summary Judgment filed 08/12/04

at 2.]

　　4.　　**Thomas Stifler**.　He was the Principal Broker at Mauna Kea for the

time in question and therefore must have extensive knowledge as to how the

landscape credit scheme originated and who authorized it.

　　5.　　**Lee Taylor**.　He was the Mauna Kea Realtor that sued Mauna Kea and

who (to Plaintiffs' knowledge) first blew the whistle on the fraud scheme and has

information directly relevant and necessary to understanding the scope and details

of the fraudulent landscaping credit scheme.　He will probably be fully open about

the background to this scheme.　Whereas the four above -- because they are still

employed by Mauna Kea or maintain relations with Mauna Kea -- are likely to be

reluctant to give full testimony on the background.

*6.    A 30(b)(6) Representative for Mauna Kea*.  The people above might not have all the necessary information.  It will be necessary to have a 30(b)(6) deposition to make sure that all of the pertinent information is disclosed.

Plaintiffs filed a First Amended Complaint on *April 27, 2004*, adding the fraud claims, in addition to other claims and new parties.  **All** of the oral depositions taken by Plaintiffs to date -- only six of them -- were taken **before** the addition of new claims/parties.  With the filing of the First Amended Complaint and the new fraud claims and new parties, the composition of this lawsuit changed dramatically.  Plaintiffs need to be able to take additional depositions specifically relating to their fraud claims in order to fairly present it case to the Court and jury.

## D.    The Continued Depositions Of The Federmans Regarding Misrepresentation Issues Should Be Allowed.

When the Federmans were deposed, the misrepresentation claims were not part of the case.  Additionally, despite the fact that Mr. Federman's letters to the County clearly fell within the scope of the initial discovery requests, Mr. Federman failed to produce them.  Finally, to be blunt, a simple comparison of Mr. Federman's letters to the County with his deposition testimony show that he was being less than forthright during his deposition.

It is also necessary to redepose Federmans because of Judge Ezra's rulings:

> *"The court finds that there is, however, an issue of fact as to whether or not Defendants made the misrepresentation in contemplation of Plaintiffs' reliance on the information."* [Ex. 1 at 26]

> *"Instead, the court finds that it is a question of fact as to whether Defendants should have known that prospective buyers, as a class, would rely on their misrepresentation of the selling price, and whether they in fact contemplated such reliance."* [Ex. 1 at 28]

Plaintiffs need to follow up on these issues that Judge Ezra has opened up.

### E.    Plaintiffs Need to Depose All Defendants' Expert Witnesses and All Lay Witnesses

While Federmans and Mauna Kea have tacitly admitted that they were involved in this scheme, at trial, Defendants are unlikely to admit being involved in fraud. They will probably employ various experts to justify their conduct. For example, Mauna Kea already argued in the MSJs that "incentives similar to these are commonly utilized in new subdivisions and developments." [See Mauna Kea's Memorandum in Opposition to Plaintiffs' Countermotion at 3.] Plaintiffs should not be sandbagged at trial. Accordingly, Plaintiffs need to depose all witnesses named by Defendants, experts and lay witnesses.

**F.    Plaintiffs Need <u>Records</u> Depositions To Obtain The Other Sales Contracts And Confidentiality Agreements (Secret Agreements)**

Plaintiffs also request the following written (records) depositions:

*1.    Title Guaranty.*  Plaintiffs need a records deposition to obtain the other Sales Contracts and Confidentiality Agreements for The Bluffs -- to show the other "landscape credits" given at The Bluffs.  Title Guaranty (or other title companies) should have many of the documents needed.  Mauna Kea has refused to turn over any of the documents relating to non-oceanfront lots, which comprises 16 of the 22 lots at The Bluffs.  As shown above, these other transactions are relevant to show motive and intent. 1 Jones on Evidence (1972) Sections 4.12 states:

> *"The rule is that when a person's conduct is in issue the fact that the person engaged in conduct of the same sort on a different occasion may be shown as tending to shed light on some quality of the conduct in question, such as intent, knowledge, good or bad faith, malice or other state of mind or bodily feeling."*  [See full quote above.]

*2.    First Hawaii Title Corp.*  Plaintiffs need additional documents regarding other credits given at The Bluffs.  First Hawaii Title has some of the Sales Contracts and the Confidentiality Agreements needed.  Mauna Kea has refused to turn over any of the documents relating s to non-oceanfront lots, which comprises 16 of the 22 lots at The Bluffs

16

**G.   FRCP Rules 30 And 31 Provide That Leave Of Court <u>Shall</u> Be Granted**

Pursuant to FRCP Rules 30 and 31, leave of Court to conduct additional

depositions "**<u>shall</u>** be granted to the extent consistent with the principles stated in

Rule 26(b)(2)." (Emphasis added.)

Rule 26(b)(2) provides:

> *"By order, the court may alter the limits in these rules on the number of depositions and interrogatories or the length of depositions under Rule 30. . . . The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that:  (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c)."*

The depositions proposed by Plaintiffs are consistent with the principles of Rule

26(b)(2):

   1.   *The depositions sought are not unreasonably cumulative,*

*duplicative, or obtainable from some other sources that is more convenient, less*

*burdensome, or less expensive.*  None of the proposed depositions, except for the

Federmans', have already been taken in this case. And, even the Federmans' were before the addition of the fraud claims. Each of the proposed deponents has first hand information relevant to the fraud claims not likely held by the others. For example, Mr. Mielcke, Mr. Asari, and Ms. Kohler each have first hand information relevant to their own misrepresentations regarding the fraudulent landscaping credits (see discussion above for more details).

2.    *Plaintiffs have not had ample opportunity by discovery in the action to obtain the information sought.* Plaintiffs' First Amended Complaint was filed on April 27, 2004. After filing its First Amended Complaint, Plaintiffs attempted to conduct discovery directly relevant on the fraud claims. However, after only one **_records_** deposition on that issue, Defendants objected, for the first time, to Plaintiffs taking any additional depositions. Accordingly, Plaintiffs, except for one records deposition, have not had any opportunity to take any depositions on the fraud claims after filing their First Amended Complaint.

3.    *Taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, the likely benefits of the proposed depositions outweigh any burden or expense.* The proposed depositions will bring to light in greater detail the fraud committed by Defendants. Without this discovery, the full scope and details of the

18

Defendants' fraudulent landscaping scheme may never come to light and Defendants' attempt to conceal their scheme, at least partially, will have succeeded.

Hawaii has a strong social policy to discourage fraud. See e.g., *Francis v. Lee Enterprises*, 89 Hawaii 234 (Haw. 1999), in which the Hawaii Supreme Court held that even if there is a contract somehow involved indirectly, this would **not** defeat punitive damages for fraud:

> "*Of course, the existence of a contract will not defeat otherwise valid claims of relief sounding in tort, **such as fraud, where punitive damages are allowed in order to vindicate social policy**.*" [Emphasis added.]

In light of the fact that there is no other way for Plaintiffs to reasonably obtain this information, the strong social policy against fraud, and the fact that all of the parties have the resources to conduct this discovery, it should be allowed.

## H.    Depositions Taken to Date Were Relevant and Needed

This case originally started as a suit over construction in the no-build "Special Setback Area"; accordingly, most of the depositions taken relate to that claim. (Judge Ezra recently granted summary judgment to the Federman Defendants on some issues, ruling that the bar on building in the "Special Setback Area" has been abandoned to the extent that the construction did not block views.)

- ***Defendants Concepcion Federman and Irwin Federman***, oral depositions taken on December 8, 2003 and December 9, 2003, respectively. Their depositions were relevant and needed for the view claim as it is their construction that blocks Plaintiffs' view and it is they who had information on their plans, their communications with the Design Committee and others regarding their plans, and other issues relating to their plans.

- ***Joel Laber*** (Defendants' architect), oral deposition taken on October 24, 2003. As Defendants' architect, his deposition was relevant and needed for the view claim as he had information on the plans for and construction on Lot 6 and Design Committee policies, procedures, responses directly relevant to those plans.

- ***Lisa Reinke*** (of Belt Collins, site engineering firm for Defendants and also had an employee sitting on the Design Committee at one time), oral deposition taken on October 28, 2003. Her deposition was relevant and needed for the view claim as she had information on Design Committee policies and procedures; work performed by Belt Collins for the Federmans and for Mauna Kea; failure to view the stakeout of the proposed construction on Lot 6 from Lot 5.

- *John Reid* (Design Committee member), oral deposition taken on February 23, 2004.  As a Design Committee member, his deposition was relevant and needed for the view claim as he had information regarding the Design Committee's approval process, Design Committee's meetings.

- *Terry Tusher* (Committee's Design advisor), oral deposition taken on taken on February 24, 2004.  His deposition was relevant and needed for the view claim as he had information on Design Committee policies and procedures; failure to view the stakeout of the proposed construction on Lot 6 from Lot 5; suggestion to Joel Laber that design changes be discussed with the Federmans' neighbors (Lot 5 and Lot 7).

Plaintiffs' counsel also took 10 written/records deposition. **All but one** were **taken before** Plaintiffs filed their First Amended Complaint which added fraud and related claims.  These are as follows:

- *Belt Collins* (Defendants engineer; former committee member), written deposition taken on October 1, 2003.  Documents relevant and needed for view claim as Belt Collins was both Defendants' engineer and a former member of the Design Committee.

- *County of Hawaii Planning Department*, written deposition taken on June 9, 2004. Documents relevant and needed for view claim as County had records relating to planning and final plan approval.

- *Department of Commerce and Consumer Affairs* ("DCCA"), written deposition taken on January 20, 2004. This deposition was taken to explore the possible fraud claims against Mauna Kea and others.

- *Dispute Prevention and Resolution* ("DPR"), written deposition taken on January 20, 2004. Documents relevant and needed for view claim as DRP was involved in other litigation involving plan approval, the governing documents, and variances at The Bluffs.

- *Geraldo Scatena* (counsel involved in different litigation against Mauna Kea), written deposition taken on March 22, 2004. This deposition was taken to explore the possible fraud claims against Mauna Kea and others.

- *Laber Architects*, written deposition taken on September 26, 2003. Documents relevant and needed for view claim as Laber Architects were Defendants' architects and had documents relating to plans and plan approval.

- *Laber Architects/Construction*, written deposition taken on September 26, 2003. Documents relevant and needed for view claim as Laber Architects were Defendants architects and had documents relating to plans and plan approval.

- *Stringer Architects*, written deposition taken on March 4, 2004. Documents relevant and needed for view claim as Stringer Architects were the Design Committee's advisors/consultants for plans and proposed construction at The Bluffs. They also drafted and kept minutes of the Design Committee meetings.

- *The Bluffs at Mauna*, written deposition taken on October 14, 2003. Documents relevant and needed for view claim including plan approval process, plan approval.

Except for the DCCA and Scatena depositions, all were directly relevant to the Plaintiffs' view claim; not Plaintiffs' fraud claims. And, the DCCA and Scatena depositions were simply records depositions. They were needed in order to determine if Plaintiffs had good faith fraud claims against Defendants.

## I.   Plaintiffs Have Only Taken SIX (6) Oral Depositions to Date

Defendants, in an attempt to prejudice this Court, may state that Plaintiffs have taken 16 depositions to date -- well over Plaintiffs' ration.

However, Plaintiffs have only taken six oral depositions. The 10 records depositions were all needed because of the massive amount of documents in this case and because the parties were not cooperative in producing the materials.

Furthermore, none of the Defendants objected to any of the depositions taken to date. Therefore, Defendants have "abandoned" any right they might have had to argue that Plaintiffs have already exceeded their ration.

## J.   Contingency Depositions

In the interests of efficiency for both the Court and the parties, it does not appear to make sense to have Plaintiffs run back to Court if they learn of additional witnesses that need to be deposed. This is time consuming and results in delay and waste of Court time. Furthermore, there are only four months left for discovery. (Discovery cut off is February 18, 2004.)

Therefore, in addition to the above, Plaintiffs ask for five "contingency" oral depositions and five "contingency" records depositions. For example the County has already agreed to a deposition of its representative.

24

**K.    Conclusion**

Based on the above, Plaintiffs respectfully ask this Court for leave to take the following depositions:

1. Oral Depositions of the Mauna Kea employees and officers: Mielcke, Asari, Kohler, Stifler, Taylor, and 30(b)(6);

2. Oral (continued) depositions of Irwin and Concepcion Federman.

3. Records deposition of Title Guaranty and First Hawaiian Title Corp.;

4. Oral Depositions of any experts and witnesses identified by any Defendant; and

5. Contingency depositions (five oral depositions; five records depositions).

DATED, Honolulu, Hawaii, _____OCT 1 3 2004_____.

_____
CHAD P. LOVE
CHUCK T. NARIKIYO
BARBARA J. KIRSCHENBAUM
                and
TERRANCE M. REVERE
JACQUELINE E. THURSTON
Attorneys for Plaintiffs

25