# LOVE & NARIKIYO

A LIMITED LIABILITY LAW COMPANY

ATTORNEYS AT LAW

CHAD P. LOVE
CHUCK T. NARIKIYO
BARBARA J. KIRSCHENBAUM

1164 BISHOP STREET, STE. 1105
HONOLULU, HAWAII 96813

TELEPHONE (808) 546-7575
FAX (808) 546-7070



RECEIVED
U.S. MAGISTRATE
DEC 27 2004
at ___ o'clock and ___ min. ___ M.
DISTRICT OF HAWAII

December 27, 2004

Honorable Leslie E. Kobayashi
Magistrate Judge, U.S.D.C.
300 Ala Moana Blvd., Rm. C-353
Honolulu, HI 96813

Re: **Western Sunview Properties, LLC et al. vs. Irwin Federman, et al.
Civil No. CV03-00463 DAE/LEK**

Dear Judge Kobayashi:

### A. Introduction

Pursuant to the "Discovery Order" entered herein on December 6, 2004, produced with this letter are the following:

(1) Revised Privilege Log; and

(2) Documents "at issue" that are being withheld from production. These documents are in bold.

To put this discovery dispute in context, it should be pointed out:

- That prior to the recent letter briefing, we already produced thousands of documents to Defendants – e.g., sales literature and pricing that Hands received before purchase, Hands' two DROA, deed, Assignment of Sales Contract; numerous e mails and faxes to/from Hands to/from their realtors, photos taken before purchase, contract of Clever Construction, the CCRs and Design Requirements, 272 pages of diaries from Hands; 1049 pages of documents from Plaintiffs' CPA Crivello, numerous e mails between Hands and Leones.

Honorable Leslie E. Kobayashi
December 27, 2004
Page 2

- That the parties recently entered into a Stipulation whereby production of documents would not waive any privilege/objection to other documents.

- That with this Stipulation in place, on the week of December 5, 2004, we produced approximately **1500 additional documents** to Defendants.

- That with this Stipulation in place, and in an effort to comply with the Court's Order, we will be producing thousands of additional documents that are on the privilege log. These include many communications directly between Ms. Kent and WSP; e.g., transmissions of various construction invoices.

- That, our privilege log, which is over <u>130 pages long</u>, is more comprehensive than any other parties' privilege log. It appears that Plaintiffs are being punished for listing ALL documents on their privilege log – including communications from Plaintiffs' attorneys to their architects/contractors. Federmans never included any e mail or correspondence between Mr. Beaman and Federmans' architects, or contractors. Obviously, if the Court produces any of the enclosed documents to Defendants, we will be asking for reciprocal documents from all Defendants.

The Court may not have been aware of the magnitude of the undertaking when it asked to review these documents in camera. We do not mean to unduly burden the Court, and if the Court prefers, we are agreeable to submission of these documents to a discovery master.

In order to show the changes to the privilege log and the documents produced pursuant to the stipulation, we have left all documents on the log. To indicate the many documents which we have now produced or are making available, we have "struck through" these entries on the log.

### B. Why the Enclosed Documents are Not Discoverable

The enclosed documents should not be produced to Defendants because of the following reasons:

*1. Federmans waived any right to discovery of communications to a party's contractors/architect, et al., where the <u>attorney</u> is the author, recipient, or even copied.* At the deposition of Irwin Federman on December 9, 2003, Mr. Revere had in his hand an e mail from Defendant Irwin Federman, dated August 8, 2003, the top of which reads as follows:

Honorable Leslie E. Kobayashi
December 27, 2004
Page 3

> From: Irwin Federman
> Sent: Friday August 8, 2003 11:41 AM
> To: Bob Glazier, Dan Gillies; Don Vita; Joel Laber; Rob Frost
> Cc: Andrew Beaman
>
> [Content not included because no ruling yet on privilege]
>
> [Bates stamp F08967]

Mr. Bob Glazier, Mr. Dan Gilles, Mr. Don Vita, Mr. Joel Laber, and Mr. Rob Frost are Mr. Federmans' architects/landscape architects. As shown above, Mr. Beaman was shown to have received a "cc" of the e mail.

When Mr. Revere attempted to ask questions about this e mail between Defendants and his architects, Mr. Beaman physically reached across the table and snatched the e mail from Mr. Revere's hand and claimed it was privileged. The discussion was as follows:

> **REVERE** [To Deponent Federman]: This next exhibit, I want you to -- the next exhibit, which is Number 46, is an e-mail that you wrote to several people.
>
> And, Andy, before we get into the substance, what's your position on this e-mail? Are you going to -- I don't know if it was inadvertently disclosed or --
>
> **BEAMAN**: It does appear that it was inadvertently turned over, and we'd ask that the original and all copies be returned to us. **It obviously is a privileged communication.** [Emphasis added.] And, therefore, under the rule that deals with inadvertent disclosure of privileged material, it should be returned to us.
>
> **REVERE**: All right. And, so, you're going to take the position, obviously, he can't answer any questions about it?
>
> **BEAMAN**: Yes.
>
> **REVERE**: Okay. All right. Let me -- Mr. Federman, if I could just ask you this question, then: The --

Honorable Leslie E. Kobayashi
December 27, 2004
Page 4

> And, Andy, I'm willing to do that, as long as if we inadvertently disclose something that you're going to give us the same courtesy.
>
> **BEAMAN**: I'll give you the same courtesy as required by the Rules.

A copy of the pages 152-153 from the deposition is attached to this letter.

How can Mr. Beaman now claim that he is entitled to any communications between Plaintiffs' attorneys and any of Plaintiffs' contractors/architects when Mr. Beaman has taken the position that, if his name appears as a recipient/sender of any communication, it is automatically privileged?

Many of the enclosed documents are similar -- i.e., Plaintiffs' attorney (Ronda Kent) received a "cc" of the communication between client and architect. E.g., AW003691, AW003694, AW005095.

   **2. Communications between Plaintiffs (or Plaintiffs' counsel) and Plaintiffs' representative or the attorneys' "representatives" are not discoverable.** We have produced or will be producing the _vast_ majority of documents involving communications with individuals who are not "lawyers" or "clients". However, there are a number of documents (enclosed) that were sent to Landscape Architect Loriann Gordon, Contractors Chris Clever, Isaiah Lincoln and Jay Torioka, Archeologist Paul Rosendahl, and architects Lucky Bennett and Rohn Marvick in their capacities as **"representatives"** of either the lawyers or Plaintiffs relating to the litigation.

They are protected by the work product doctrine and/or attorney-client privilege as, although they are not directly between "lawyer" and "client", the communications are between **"representatives of the lawyer" and "representatives of the client"** for purposes of assistance with the litigation or settlement purposes.

Some examples are the letters/e mails with landscape architect Loriann Gordon, who assisted Plaintiffs and counsel in preparing materials for the litigation and settlement proposals. As you may remember, one of the settlement issues was whether a "landscaping solution" could settle part of this lawsuit. In fact, Ms. Gordon attended the settlement conference at your chambers earlier this year.

The attorney-client privilege in HRE 503 provides that:

> (b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the **_client's representative_** and the lawyer or the **_lawyer's representative_**, or

Honorable Leslie E. Kobayashi
December 27, 2004
Page 5

>    (2) between the lawyer and the *lawyer's representative*, or (3) by the client or the *client's representative* or the lawyer or a *representative* of the lawyer to a lawyer or a *representative* of a lawyer representing another party in a pending action and concerning a matter of common interest, or (4) between *representatives* of the client or between the client and a *representative* of the client, or (5) among lawyers and their *representatives* representing the same client.
>
>    HRE 503 also provides the following helpful definitions:
>
>    (a) Definitions. As used in this rule:
>        (1) A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services.
>
>    **(2) A "representative of the client" is one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client.**
>
>        (3) A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.
>
>    **(4) A "representative of the lawyer" is one directed by the lawyer to assist in the rendition of professional legal services.**

3 Jones on Evidence §21:15, discussing the attorney-client privilege states: "[T]he prevailing rule is that an attorney may, in the course of rendering professional services employ assistants, such as accountants and engineers, or physicians, in addition to those used in the process of communicating with the client, and that communications between the lawyer and such persons are privileged".

[Note: We have filed a Motion for Clarification/Reconsideration on this point which is currently pending with this Court.]

   **3. Documents sent to CPA Crivello involving sensitive tax, business, banking, and legal information.** Although these documents were sent to CPA Crivello, they contain sensitive tax and corporate information that is both irrelevant and sent to CPA Crivello in his capacity as a "representative" of WSP in securing legal and tax advice. [Note: on October 29, 2004, we already turned over 1049 documents from Crivello's files.]

Honorable Leslie E. Kobayashi
December 27, 2004
Page 7

(including WSP's parent entities, Pavia Management and Sunbury Properties; various individuals are identified in the definitions section at the end of the privilege log) or client to attorney and are not "at issue". We do not believe that any party is taking the position that we should be producing this category of documents. Perhaps, we should not have included this category of documents on our privilege log – the other parties did not include them.

### D. Conclusion

We do not believe that any of the enclosed documents should be produced to the other parties for the reasons stated above.

We are in the process of updating our production to include documents since the first request for production. We will be making additional documents available for production and further update the privilege log at that time.

Finally, our clients were able to track down and retrieve from storage the two boxes of documents referred to in the briefing and discovery requests. They arrived from England late last week. We will go through the documents and make them available for inspection/draft a privilege log.

By copy of this letter to counsel, we: (1) inform counsel of the above, (2) inform counsel that additional documents are available for inspection and/or copying; and (3) ask that counsel review the changes to the privilege log and let us know if there are any further questions or further documents that they believe may be at issue.

Very truly yours,

Chad P. Love

CPL:ctn:dll
judgekobayashi122704.ltr
Enclosures
cc:   All counsel
      (with privilege log only; not enclosed documents)