# EXHIBIT 2

# MOTOOKA YAMAMOTO & REVERE

MILTON M. MOTOOKA
MYLES T. YAMAMOTO
TERRANCE M. REVERE
RANDALL K. SING
BRIAN A. BILBERRY
JACQUELINE E. THURSTON

ATTORNEYS AT LAW
A LIMITED LIABILITY LAW CORPORATION

1000 BISHOP STREET, SUITE 801
HONOLULU, HAWAII 96813

TELEPHONE  (808) 532-7900
FAX:  (808) 532-7910
http://www.myrhawaii.com
eMail: terry@myrhawaii.com
Direct Line: (808) 532-7900 ext. 516

June 24, 2003

**VIA FACSIMILE (537-1377)**

Mr. Keith Hunter
Dispute Prevention & Resolution, Inc.
1155 Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

Re:   The Bluffs at Mauna Kea, Lot 6

Dear Mr. Hunter:

This letter is being written pursuant to HRE 408.

Mr. Beaman and I have agreed to retain you as the mediator for this matter. It is my understanding that you are available to mediate on the afternoon of July 28, 2003, a date that is acceptable to both Mr. Beaman's schedule as well as my own.

This dispute involves two neighboring properties at The Bluffs at Mauna Kea. Basically my client (Western Sunview Properties, LLC) contends that objects have been wrongfully installed on a neighboring property owned by Mr. Beaman's client, the Federmans, who disagree.

I am writing this letter to request that you become active in the facilitation of the resolution of this dispute well before the hearing date and to inform you of the parties' pre-mediation concerns so that the chances of a successful mediation increase.

First, while mediation has been requested of the Association pursuant to HRS Ch. 421J, I do not know if the Association is willing to participate. I ask that Mr. Kreuger inquire with his client as to whether or not it will participate.

Second, I am very concerned that unless documents that were previously requested from Mr. Beaman's clients are produced soon, the mediation will go nowhere fast. As

1

Keith Hunter
June 24, 2003
Page 2

my client has communicated to the Federmans' representatives in the past on several occasions (see, e.g., Ronda Kent's May 22, 2003, letter, enclosed), we are wiling to reciprocate by producing my clients' documents. At this point it is my understanding that Mr. Beaman is willing to produce his clients' plans but is reluctant to accept our request for correspondence and other materials exchanged with the association. I believe that producing only some of the requested documents will naturally raise my and my client's suspicions concerning the remainder, which will be produced in any event in the case of litigation. Additionally, especially in light of the fact that my client's request that work on the pool area be halted has been ignored, **we do not intend to let this be a "floating" mediation, which drags on and the parties or the attorneys get back together once every couple of weeks; either the matter will be resolved before or on the day of the mediation, or it will not be resolved.** Therefore, once again I urge the Federmans, Mr. Beaman and you to consider the wisdom of having both sides produce the documents requested in Ms. Kent's letter well in advance of the mediation, perhaps by July 8, 2003, at the latest. I believe that if the parties dedicate themselves to seriously looking at all the facts and documents before the mediation date and are creative in their approach, the chances for settlement will increase exponentially.

Third, it was my client's understanding that the Federmans would present their view mitigation proposals to my client during the week of June 16, 2003. However, I understand that no plans or drawings have been made. Instead, only some ideas have been discussed between the Federmans and their landscape architect, Mr. Vita. Again I suggest that those ideas be provided to you, my clients and me immediately so that they may be considered and discussed by the landscape architects well in advance of the mediation session. Hopefully this will result in, at a bare minimum, conceptual drawings that the parties may consider during the mediation session itself.

Fourth, I understand that Mr. Beaman wants the parties to be represented in person. After discussing the matter with my client, it will have at least one representative attending the mediation in person with full settlement authority provided that the Federmans do likewise.

Fifth, I understand that the Federmans' position is that the removal of their pool and terrace area is "off the table" for the purposes of this mediation and that the subject will not be the topic of discussion. The Federmans have my assurance that the purpose of the mediation will be to discuss mitigation measures. **However, I want to be crystal clear that whether discussed at the mediation or not, the removal of the offending objects is exactly what will be sought if mediation fails due to the absence of an acceptable mitigation plan and the case proceeds to litigation.** Therefore, again, I strongly urge the Federmans to please make the requested full disclosures now and to take the time and effort over the next month to work with Western to come up with a workable solution. Otherwise they may spend tens or hundreds of thousands of dollars

Keith Hunter
June 24, 2003
Page 3


in fees and costs and even more valuable time and emotion mediating and ultimately litigating this matter for months or years to come.

Thank you for your consideration of the foregoing. I am sure the parties would benefit from your active guidance and suggestions on the points raised in this letter.

Sincerely,

*Terrance M. Revere*

Terrance M. Revere

TMR:smk
hunter01.ltr
cc:   Dennis Kreuger, Esq.  (Via Facsimile: 808-329-7525)
      Andrew Beaman, Esq. (Via Facsimile: 536-5869)