# EXHIBIT 4

Case 1:03-cv-00463-JMS    Document 681-6    Filed 11/21/2006    Page 1 of 8

COPY

```
            IN THE CIRCUIT COURT OF THE THIRD CIRCUIT

                        STATE OF HAWAII

WESTERN SUNVIEW PROPERTIES,    ) Civil No. 04-1-0212
LLC,                           ) (Declaratory Judgment;
                               ) Other Civil Action)
          Plaintiffs,          )
                               )
     vs.                       )
                               )
LEONE-PERKINS FAMILY TRUST;    )
BLUFFS AT MAUNA KEA COMMUNITY  )
ASSOCIATION; DOUGLAS LEONE AND )
PATRICIA LEONE, INDIVIDUALLY   )
AND AS TRUSTEES OF THE         )
LEONE-PERKINS FAMILY TRUST;    )
JOHN DOES 1-100; JANE DOES     )
1-100; DOE PARTNERSHIPS 1-100  )
AND DOE CORPORATIONS 1-100,    )
                               )
          Defendants.          )
_____)


               DEPOSITION OF DENNIS KRUEGER


Taken on behalf of Plaintiff Western Sunview Properties,

LLC at Motooka Yamamoto & Revere, 1000 Bishop Street, Suite

801, Honolulu, Hawaii, commencing at 10:30 a.m. on

December 14, 2005, pursuant to Notice.




     Before:  WILLIAM T. BARTON, RPR, CSR #391
              Notary Public, State of Hawaii

           PACIFIC REPORTING SERVICES UNLIMITED
                 Suite 1470, Makai Tower
                    733 Bishop Street
                 Honolulu, Hawaii 96813
                    (808) 524-PRSU
```

DEC 27 2005

2

```
 1  APPEARANCES:

 2      For Plaintiffs Western Sunview Properties, LLC
            TERRANCE M. REVERE, ESQ.
 3          Motooka Yamamoto & Revere
            1000 Bishop Street, Suite 801
 4          Honolulu, Hawaii 96813

 5      For Defendant The Bluffs at Mauna Kea
        Community Association
 6          RONALD SHIGEKANE, ESQ.
            Ayabe Chong Nishimoto Sia & Nakamura
 7          1001 Bishop Street
            2500 Pauahi Tower
 8          Honolulu, Hawaii 96813

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1        Q.   And it was on Ashton & Wriston letterhead?
 2        A.   I believe Rhonda Kent was involved in that
 3   application.
 4        Q.   I know.  But I'm wondering, what is the document
 5   that triggered it?  Was it an Ashton & Wriston letterhead
 6   document?
 7        A.   I don't recall specifically.  It was something
 8   that directed my attention to the fact that Ashton &
 9   Wriston was involved.  I'm assuming it was a letterhead or
10   something of that nature that was sent to the Association.
11        Q.   You recognized that that was a conflict of
12   interest?
13             MR. SHIGEKANE:  Objection to the form of the
14   question.  Overbroad.
15        A.   I recognized that Ashton & Wriston was
16   representing the Association, and somebody applying for a
17   permit from the Association at that time, which obviously,
18   put us in adverse positions, potentially adverse positions.
19        Q.   And so would you call that a conflict of interest?
20        A.   I'd say it's a potential conflict of interest.
21        Q.   Did you ever feel at any point that there was a
22   conflict of interest with regard to Ashton & Wriston's
23   representation of Western Sunview, as well as the
24   Association?
25        A.   Yes.
```

Q.  At what point?

A.  When Western Sunview decided to name the Association as a party in either the Federman lawsuit or the Leone lawsuit.  I'm not sure which one it was.

Q.  What about before then?  Did you ever feel that there was a conflict?

MR. SHIGEKANE:  Objection to the form of the question.  Overbroad.  Ambiguous.

A.  Before that time, because of the potential for a conflict, Ashton & Wriston asked both of their clients, the clients being Western Sunview and The Bluffs, to sign a Waiver of a Conflict of Interest to allow me to represent the Association with regard to matters affecting Western Sunview, and allow Rhonda Kent or other members at Ashton & Wriston's Honolulu office to represent Western Sunview.

Q.  And both the Association and Western Sunview signed those conflicts?

A.  Yes.

Q.  Conflict waivers?

A.  Yes.

Q.  Did the Association ever revoke its conflict waiver?

A.  No, I don't believe they did, specifically.  It was -- the manner in which that arose was Rhonda Kent objected to my continued representation of The Bluffs, said

```
 1   her client, Western Sunview, was withdrawing its waiver and
 2   she was going to be withdrawing, as well, and have someone
 3   else represent the Western Sunview.  That was at the point
 4   in which litigation had ensued.
 5        Q.   After litigation ensued, have you been involved
 6   in any aspect of the litigation, in either the Federman
 7   case or this case?
 8             MR. SHIGEKANE:  Objection to the form of the
 9   question.  Overbroad.  Ambiguous.
10        A.   Not directly involved.
11        Q.   How were you indirectly involved?
12        A.   At one point, I believe there was a request that
13   was made by counsel for Western Sunview to depose a
14   representative of The Bluffs.  I can't remember, again,
15   which case it was in.
16             And since I was no longer acting as their
17   attorney, and they had not obtained other counsel, they
18   came to me and said, What are we supposed to do with this?
19   I said, You need to designate somebody to be deposed on
20   behalf of the Association.
21             So I discussed that with them in terms of just
22   getting somebody to represent the Association in the
23   deposition as far as having to find somebody.  I don't
24   recall having any other discussions with them.  Every time
25   there was a request or a question posed, I told them I had
```

```
 1   a conflict of interest and I couldn't do anything with it.
 2        Q.   There was a mediation that took place regarding
 3   this case and the Federman case, correct?
 4        A.   That's correct.
 5        Q.   And you participated on behalf of the Association
 6   in that mediation, correct?
 7        A.   Yes.  I was there at the mediation.
 8        Q.   And Mr. Shigekane has copied you status updates
 9   evidence for this case, correct?
10        A.   He's copied the Board in regard to status
11   updates, and I believe the Board members have sent out, you
12   know -- he may have sent me a copy of an email status
13   update, as well, yes.
14        Q.   And the Board has discussed this Leone case with
15   you, correct?
16        A.   No.  Not to the best of my knowledge.
17        Q.   It's your testimony that nobody -- and there's
18   eight members of that Board currently?
19        A.   Correct.
20        Q.   And so it's your testimony that none of those
21   eight Board members have ever discussed any aspect of this
22   Leone case with you?
23             MR. SHIGEKANE:  Objection to the form of the
24   question.  Overbroad as to the term "discussed."  Go ahead.
25        A.   That was going to be my question is what do you
```

```
 1                      CERTIFICATE
 2   STATE OF HAWAII      )
 3                        )   SS.
 4   COUNTY OF HONOLULU   )
 5        I, WILLIAM T. BARTON, RPR, Certified Shorthand
 6   Reporter, State of Hawaii, do hereby certify that on
 7   December 14, 2005 at 10:30 a.m. there appeared before me
 8   DENNIS KRUEGER, the witness whose deposition is contained
 9   herein; and that prior to being examined was duly sworn;
10   that I am neither counsel for any of the parties herein,
11   nor interested in any way in the outcome of this action;
12        That the deposition herein was by me taken down in
13   machine shorthand and thereafter reduced to print via
14   computer-aided transcription under my supervision; that the
15   foregoing represents a complete and accurate transcript of
16   the testimony of said witness to the best of my ability.
17        Dated this 22nd day of December 2005 at Honolulu,
18   Hawaii.
19
20        _____
21             WILLIAM T. BARTON, CSR No. 391
22             Notary Public, State of Hawaii
23             My Commission expires August 7, 2009
24
25
```