SETTLEMENT AND RELEASE AGREEMENT

The undersigned parties to this document agree as follows:

   1.   This document (hereinafter, the "Agreement") is a Settlement and Release Agreement.

   2.   The date of this Agreement is _____, 2007.

   3.   Named Parties. The contact information for the persons named below (the "Named Parties") is set forth below.

| Name | Address |
|---|---|
| WESTERN SUNVIEW PROPERTIES ("WSP") | c/o Terrance M. Revere, Esq.<br>Motooka, Yamamoto & Revere<br>1000 Bishop Street, Suite 801<br>Honolulu, Hawaii 96813 |
| GUY HANDS AND JULIA HANDS (collectively, the "Hands") | c/o Terrance M. Revere, Esq.<br>Motooka, Yamamoto & Revere<br>1000 Bishop Street, Suite 801<br>Honolulu, Hawaii 96813 |
| THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION (the "Association") | c/o Lissa H. Andrews, Esq.<br>Rush Moore LLP<br>737 Bishop Street, Suite 2400<br>Honolulu, Hawaii 96813<br><br>Trevor A. Brown, Esq.<br>Starn O'Toole Marcus & Fisher<br>733 Bishop Street, Suite 1900<br>Honolulu, Hawaii 96813 |

   4.   Definition of Terms.

      A.   Named Parties. The terms "WSP," "Hands," and the "Association," shall mean and be deemed to include the Named Parties and their respective past, present, and future directors, officers, committee members, volunteers, managers, shareholders, owners, partners, affiliates, insurers, trustees, heirs, liquidators, agents, experts, consultants, engineers, architects, attorneys, executors, administrators, representatives, successors and assigns. The term "Named Parties" in this Agreement shall mean and be deemed to include the Named Parties individually, singly, collectively, severally, jointly, and jointly and severally.

Exhibit A

B.  <u>State Action</u>. The "State Action" refers to <u>Western Sunview Properties, LLC v. Leone-Perkins Family Trust, et al.</u>, filed in the Circuit Court of the Third Circuit, State of Hawaii, Civil No. 04-1-0212.

C.  <u>Federal Action</u>. The "Federal Action" refers to <u>Western Sunview Properties, LLC v. Irwin Federman, et al.</u>, filed in the U.S. District Court for the District of Hawaii, Civil No. 03-00463.

D.  <u>Number</u>. In this Agreement, the singular shall include the plural and the plural shall include the singular.

E.  <u>Gender</u>. In this Agreement, the use of any gender shall include all genders.

F.  <u>Captions or Headings</u>. In this Agreement, the captions, paragraph headings and sub-paragraph headings are for convenience, reference and identification purposes only and shall not control, define, limit or affect any provision of this Agreement.

5.  <u>Consideration</u>. The consideration for this Agreement includes the mutual covenants and releases contained herein. As further consideration, the Association agrees to pay $1,300,000.00 to WSP. Payment shall be made by check or checks payable to Western Sunview Properties, LLC and delivered to Terrance M. Revere, Esq. within 30 days after the satisfaction of the conditions contained in paragraph 7 below.

In further consideration of this Agreement, WSP, the Hands and the Association hereby covenant and agree that they shall make no claim in any legal or administrative action that the improvements (including construction of pools and landscaping in the condition that they exist on either property as of the date of this Agreement) constructed on Lots 4 and 6 do not conform to any laws, codes, ordinances and regulations, or to the recorded Declaration of Protective Covenants, Conditions and Restrictions for The Bluffs at Mauna Kea (the "Declaration") and the unrecorded Design and Construction Requirements for Homes promulgated thereunder, and that they shall take no legal or administrative action seeking to change, modify, remove, alter, or reconstruct any such improvements (including pools and landscaping in the condition that they exist on either property as of the date of this Agreement).

As further consideration of this Agreement, the Association also agrees to waive any claim for attorneys' fees and costs as the prevailing party in the Association's Motion for Summary Judgment in the Federal Action.

As further consideration, the Association agrees that it will not assess its members for any portion of $1,300,000.00 paid in settlement pursuant to the Agreement, or for any attorneys' fees and costs incurred to date in connection with the State Action or the Federal Action.

2

As further consideration, the Association will also deliver, concurrently with the executed copy of this Agreement, an executed letter in the form attached as Exhibit "A," regarding calling a Special Meeting of the Association Members to vote on the matters set forth in this letter. The Named Parties understand and agree that this Agreement is not conditioned on the outcome of the vote at the Special Meeting of the Association Members which will be called in accordance with Exhibit "A."

As further consideration, the Named Parties shall use their commercially reasonable best efforts to cause any judgments entered in the State Action or the Federal Action to be vacated, and the claims asserted therein to be dismissed with prejudice.

6. Release.

A. WSP, the Hands and the Association hereby release and forever discharge one another from and on account of any and all claims, actions, causes of action, claims for legal and/or equitable relief, damages, injunctions, injuries, losses, punitive, exemplary or treble damages, liens, debts, costs, interest, attorneys' fees, experts' or consultants' fees, expenses, and other relief, whether at law or in equity, known or unknown, suspected or unsuspected, fixed or contingent, whether past, present or future, whether sounding in tort or in contract, whether statutory or otherwise based upon or arising out of any fact, matter, action, or event occurring up through the date of execution of this Agreement, including any matter resulting from, arising out of, or connected with the State Action or the Federal Action, including but not limited to:

(1) All claims and damages alleged by WSP or the Hands against the Association in the State Action and the Federal Action relating to, based upon or arising out of any of the following: (a) any and all contracts, agreements, representations, statements and/or warranties relating to, concerning or arising out of the purchase by WSP of Lot 5 at the Bluffs at Mauna Kea subdivision located at South Kohala on the Island of Hawaii (the "Bluffs"); (b) any and all contracts, agreements, representations, statements and/or warranties relating to, concerning or arising out of the purchase of Lot 6 of the Bluffs by Irwin Federman and Concepcion S. Federman (collectively, the "Federmans"); (c) any and all contracts, agreements, representations, statements and/or warranties relating to, concerning or arising out of the purchase of Lot 4 of the Bluffs by Leone-Perkins Family Trust and Douglas Leone and Patricia Leone (collectively, the "Leones"); and (d) the approval, design and construction of any improvements to Lots 4 and 6 of the Bluffs up through the date of the execution of this Agreement.

(2) Any and all allegations, causes of action, claims for relief and claims contained or alleged, or which could have been contained or alleged, by WSP, the Hands or the Association, against one another, in, arising out of, or related to the State Action and the Federal Action.

3

(3) Any and all allegations, causes of action, claims for relief, or rights that WSP or the Hands have obtained, own or control through assignment or otherwise from Mauna Kea Properties, Inc. or Mauna Kea Development Corp., and any and all allegations, causes of action, claims for relief, or rights that WSP or the Hands have obtained, own or control through assignment or otherwise from any other person or entity stemming from, arising from, or in any way related to the State Action, the Federal Action, or any facts or circumstances alleged therein.

B. WSP, the Hands, and the Association hereby warrant and represent that they are the owners of all claims, actions, causes of action and claims for relief against one another in, arising out of, or related to the State Action, the Federal Action, and the allegations and/or circumstances asserted therein, that they have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, or by operation of law, any claims, actions, causes of action and claims for relief herein released, or any portion thereof. WSP, the Hands, and the Association hereby warrant and represent that neither they, nor any other person claiming by, through or under them, shall make any claim or demand or file any action against any other party based in whole or in part upon any such claim, action, cause of action or claim for relief.

WSP and the Hands hereby further warrant and represent that they have no actual or constructive knowledge of any claim relating to the issues or allegations in the State or Federal Actions contemplated by any other party and that they will not pursue, cooperate with, assist or encourage any other such claim or action, before any court, tribunal, government agency or regulatory authority, except if under a court order or subpoena, and if called upon to do so, they will notify the Association's representative as soon as possible and no later than 24 hours after such notice.

7. <u>Conditions</u>. This Agreement and the consideration described above are subject to and conditioned upon: (a) the entry of a judgment, order or decree by the United States District Court for the District of Hawaii in the Federal Action approving this settlement and finding that this settlement was made in good faith as contemplated in Hawaii Revised Statutes ("HRS") § 663-15.5 ("Federal Good Faith Settlement Order"); (b) the entry of a judgment, order or decree by the Circuit Court of the Third Circuit, State of Hawaii in the State Action approving this settlement and finding that this settlement was made in good faith as contemplated in HRS § 663-15.5 ("State Good Faith Settlement Order"); (c) the dismissal with prejudice of all claims against the Association in the Federal Action, with each party to bear its own attorneys' fees and costs, or alternatively, the Order Granting Defendant The Bluffs at Mauna Kea Motion for Summary Judgment and Granting in Part and Denying in Part Defendants Mauna Kea Properties, Inc.'s and Mauna Kea Development Corporation's Motion for Summary Judgment as to All Special Setback and Punitive Damage Claims, filed on June 21, 2006 ("Order Granting MSJ") as it pertains to the Association becoming final and nonappealable and the Association's Motion for Fees filed therein being withdrawn with prejudice; (d) the dismissal with prejudice of all claims against the Association in the State Action, with each party to bear its own attorneys' fees and costs, or alternatively, the final judgment entered in favor of Plaintiff Western Sunview

4

Properties, LLC and against Defendant The Bluffs at Mauna Kea Community Association, filed on July 14, 2006 (the "Final Judgment") becoming final and nonappealable, and the filing by WSP of a full satisfaction of judgment therein; and (e) the expiration of the appeal period for the Federal Good Faith Settlement Order and the State Good Faith Settlement Order.

In the Federal Action, the Association shall draft, and WSP shall sign, a Joint Motion for Remand to the Circuit Court to Implement Terms of the Settlement Agreement of the appeal pending before the United States Court of Appeals for the Ninth Circuit Court. Upon remand back to the District Court, the Association shall draft, and WSP shall sign, a Joint Motion to Vacate the Order Granting MSJ. Thereafter, the Association shall file a motion for approval of this Agreement, and WSP and the Hands shall join in such motion. Thereafter, the Association shall draft, and WSP and the Hands shall sign, a Stipulation for Dismissal with Prejudice of All Claims Against the Association ("Fed. Stip. to Dismiss"). If the Federal Court is not willing to grant the Joint Motion to Vacate the Order Granting MSJ or the Fed. Stip. to Dismiss, the Association shall nevertheless withdraw with prejudice its Motion for Attorneys' Fees and Costs. Finally, it is the intent of the Named Parties that (1) the Order Granting MSJ be vacated (2) the District Court approve of this Agreement pursuant to HRS § 663-15.5, and (3) that the Federal Action be dismissed with prejudice against the Association; the Named Parties agree to work together to achieve these ends to the extent possible should any of the procedures previously outlined prove unsuccessful.

In the State Action, the Association shall draft, and WSP shall sign, a Joint Motion for Remand to the Circuit Court to Implement Terms of the Settlement Agreement of the appeal pending before the Intermediate Court of Appeals. Upon remand back to the Circuit Court, the Association shall draft, and WSP shall sign, a Joint Motion to Vacate the Final Judgment. Thereafter, the Association will file a motion for approval of this Agreement, and WSP shall join in such motion. Thereafter, the Association shall draft, and WSP shall sign, a Stipulation for Dismissal with Prejudice of All Claims Against the Association ("Stip. To Dismiss"). If the Circuit Court is unwilling to vacate the Final Judgment and/or grant the Stip. To Dismiss, WSP will file and record a Satisfaction of Judgment as to all claims against the Association. Finally, it is the intent of the Named Parties that, (1) the Final Judgment be vacated, (2) the Circuit Court approve of this Agreement pursuant to HRS § 663-15.5; and (3) that the State Action be dismissed with prejudice against the Association; the Named Parties agree to work together to achieve these ends to the extent possible should any of the procedures previously outlined prove unsuccessful.

8. <u>Understandings and Agreements</u>. The Named Parties acknowledge, agree and understand that:

a. <u>Denial of Liability</u>. The Named Parties deny any liability, negligence, breach of duty, breach of any agreement or contract, misconduct, violation of statute and/or wrongdoing of any kind, character or nature whatsoever. The consideration and agreements provided for herein are solely in compromise of the

disputed claims. Neither this Agreement nor any Exhibit hereto shall be used in any proceeding before a court or tribunal (except a proceeding to enforce this Agreement) or submitted to any governmental agency or regulatory authority.

   b. <u>No Representation</u>. None of the Named Parties has made any representation of fact, opinion or promise to any other party to induce this compromise, and no party is relying upon any statements, representations, opinions or promises made by any other party or their agents, employees, representatives, attorneys, consultants or experts, concerning the nature, extent or duration of the injuries, losses, loss of profits, damages, exemplary damages, punitive damages, treble damages, or the legal liability therefor, or concerning any other thing or matter; that the above-mentioned consideration in ¶5 is all that shall be given and is received as a compromise settlement in full satisfaction of all aforesaid claims, demands, actions and causes of actions, whatsoever, being released in ¶ 6 above.

   c. <u>Knowledge</u>. Inasmuch as all of the injuries, damages and losses may not be fully known and hence may be more numerous or more serious than is now understood or expected, the Named Parties agree that this Agreement applies to all injuries, damages and losses resulting from matters being released in ¶6 above, even though now unanticipated, unexpected and unknown, as well as to all injuries, damages and losses which have already developed and which are now known and anticipated. The Named Parties make this compromise with full knowledge of the facts and possibilities of any lawsuit, commenced or that could be commenced, are represented by counsel, and execute and deliver this Agreement being fully informed as to its terms, content and effect.

   d. <u>Complete Bar</u>. Acceptance of the consideration above mentioned and execution of this Agreement is a complete and final bar to any and all claims, actions, causes of action, claims for relief, liability, liabilities, costs, expenses, fees, demands, injuries, losses, and damages of whatever name or nature against the parties or persons being released in any manner arising, growing out of, connected with or in any manner involving, concerning or relating to the matters covered by this Agreement; and this Agreement forever and finally compromises, settles and terminates any and all disputes, claims, claims for injury, loss, damage, costs, expenses and fees of whatever nature, known or unknown, in any manner arising, growing out of, connected with or in any manner involving, concerning or relating to the matters covered by ¶6 above.

   e. <u>Merger and Amendments</u>. This Agreement contains the entire agreement between the Named Parties regarding the matters covered by this Agreement and supersedes all prior and contemporaneous agreements and understandings in connection therewith. This Agreement shall not be altered, amended, modified or otherwise changed in any respect, or particular whatsoever, except in a writing duly executed by the Named Parties. The Named Parties agree that they will make no claim, at any time or place, that this Agreement has been orally altered or modified in any respect whatsoever.

      f.    <u>Governing Law</u>. This Agreement shall be subject to, governed by, construed and enforced pursuant to the laws of the State of Hawaii.

      g.    <u>Construction</u>. This Agreement shall be construed without regard to the identity of the person(s) who drafted the provisions contained herein. Each and every provision of this Agreement shall be construed as though each of the parties participated equally in the drafting thereof. As a result of the foregoing, any rule of construction against the drafting party shall not be applicable.

      h.    <u>Representation of Authority</u>. Each individual executing this Agreement on behalf of a party expressly represents and warrants to the others that he has authority to do so and thereby to bind the party to the terms of this Agreement.

      i.    <u>Counterpart And Facsimile Signatures</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument. In making proof of this Agreement, it shall not be necessary to produce or account for more than a single counterpart containing the respective signatures of each of the parties hereto. The parties hereto are entitled to rely upon a facsimile or .pdf signature of the other parties to this Agreement upon receipt by facsimile transmission via telecopier or by .pdf via email.

      j.    <u>Mediation</u>. If there are any claims, issues or disputes between the Named Parties regarding this Agreement, or the settlement between the parties, before the commencement of any litigation regarding the same, all such claims, issues or disputes may be referred to and mediated by Eugene Lynch of JAMS or, if he is unable to do so, then such other mediator associated with JAMS as is mutually agreeable to the Named Parties. A request for mediation may be submitted to JAMS in writing and shall be provided to the other Named Parties. The mediation shall be conducted in accordance with the mediation rules, procedures or and protocols of JAMS then in effect. The Named Parties involved in any such claim, issue or dispute shall share the mediator's fee equally. The mediation shall be held in Honolulu, Hawaii, unless another location is mutually agreed upon. Any agreement reached in mediation shall be enforceable as a settlement agreement in any court having jurisdiction thereof.

      k.    <u>Other Agreements</u>. Nothing in this Agreement shall be construed to amend, modify, or otherwise alter the rights and/or obligations of the parties to the following agreements as against the other parties to such agreements: the Settlement Agreement and Release, dated May 9, 2005 and as amended February 27, 2007, between the Leones and WSP and the Hands; and the Settlement and Release Agreement, dated October 7, 2007, between the Federmans and WSP and the Hands.

7

9.  **Dismissal with Prejudice**. In the Federal Action, within 14 days after the entry of the Federal Good Faith Settlement Order, WSP and the Hands shall dismiss with prejudice all of the claims against the Association, with each party to bear its own attorneys' fees and costs.

In the State Action, within 14 days after the entry of the State Good Faith Settlement Order, WSP shall dismiss with prejudice all of the claims against the Association, with each party to bear its own attorneys' fees and costs.

DATED: _____, 2007 at _____.

APPROVED AS TO FORM:                WESTERNS SUNVIEW PROPERTIES, LLC

_____              By _Western Sunview Properties, LLC_
TERRANCE M. REVERE                  Its _Managers_
Attorney for WESTERN SUNVIEW
PROPERTIES, LLC, GUY HANDS
AND JULIA HANDS                     _____
                                    GUY HANDS

                                    _____
                                    JULIA HANDS

DATED: _____, 2007 at _____.

APPROVED AS TO FORM:		THE BLUFFS AT MAUNA KEA COMMUNITY ASSOCIATION


_____		By _____
LISSA H. ANDREWS

					Its _____

_____
TREVOR A. BROWN

Attorneys for THE BLUFFS AT
MAUNA KEA COMMUNITY
ASSOCIATION

9

July ____, 2007

Western Sunview Properties, LLC
Attn: Guy & Julia Hands
c/o Terrance M. Revere, Esq.
Motooka Yamamoto & Revere
Bishop Trust Building
1000 Bishop Street
Suite 801
Honolulu, Hawaii 96813

    Re:    The Bluffs at Mauna Kea

Dear Mr. and Mrs. Hands:

    The current members of the Board of the Bluffs at Mauna Kea Community Association have been provided with copies of the Hawaii statutes for planned community associations and for Hawaii non-profit corporations applicable to notices of board meetings, member participation in board meetings, minutes for board and association meetings, the use of executive session, and conflicts of interest by board members. (The Hawaii statutes provided to board members are HRS §§ 421J-5 and 7 and HRS §§ 414D-145, 148, and 150.)

    After review of these sections, each of the Board members has expressed his intention to comply with applicable law. The Board also wishes to call your attention to the fact that:

    1.    The Board has instituted the practice of giving notice to members of non-executive session meetings of the Board.

    2.    The Board has conducted a search for draft minutes of all (non-executive session) Board and committee meetings for 2006, has scheduled a meeting for July 12, 2007 at 1:00 p.m. to approve all the minutes which it has been able to locate, and will immediately thereafter make available such approved minutes to Western Sunview.

    The Board will call a meeting of the members of the Association to vote on each of the resolutions in the attached *Exhibit 1* within ninety days. Each of the members of the Board will vote in favor of the resolutions and will use commercially reasonable efforts to encourage the Association to adopt such resolutions. This will include continuing the above-described meeting to obtain needed votes.

    The Board also expresses its regret that open board meetings were not held and that adjacent or directly-affected owners were not provided with notice and an opportunity to be heard when an owner requested a variance to the written Design and Construction Requirements. The Board further regrets that the construction of structures in the special setback areas of Lots 4 and 6 have resulted in community discord, devisivness, and conflict among neighbors.

Exhibit A to Settlement and Release Agreement

65520

Western Sunview Properties, LLC
c/o Terrance M. Revere, Esq.
July _____, 2007
Page 2 of 3


      The Board is enthusiastically committed to rebuilding relationships in the community and getting this matter behind us.

                      Very truly yours,


                      Robert V. Gunderson, Jr.
                      President

Attachment

cc:   Members of the Board of Directors
      of The Bluffs at Mauna Kea Community
      Association


Exhibit A to Settlement and Release Agreement

# Exhibit 1

As used herein Association Governing Documents means: Declaration, Bylaws, Articles, Design and Construction Requirements and Rules of the Association or similar documents.

1. That the Board and all Association committees shall comply with the provisions of H.R.S Chapters 421J (planned community associations) and 414D (nonprofit corporations), as amended from time to time, and the Association Governing Documents, as amended from time to time, regarding providing owners with notice of meetings, conducting open meetings, and allowing owner participation.

2. That the Board and all Association committees shall comply with the provisions of H.R.S Chapters 421J (planned community associations) and 414D (nonprofit corporations), as amended from time to time, and the Association Governing Documents, as amended from time to time, regarding keeping minutes of Board and Committee meetings and the provision of such minutes to owners.

3. That the Board and all Association committees shall comply with the provisions of H.R.S Chapters 421J (planned community associations) and 414D (nonprofit corporations), as amended from time to time, and the Association Governing Documents, as amended from time to time, regarding the provision of Association documents to owners.

4. That the Board and all Association committees shall comply with the provisions of H.R.S Chapters 421J (planned community associations) and 414D (nonprofit corporations), as amended from time to time, and the Association Governing Documents, as amended from time to time, regarding the use of executive sessions.

5. That the Board and all Association committees shall comply with the provisions of H.R.S Chapters 421J (planned community associations) and 414D (nonprofit corporations), as amended from time to time, and the Association Governing Documents, as amended from time to time, regarding conflict of interest.

6. With respect to new construction not yet approved on a going forward basis, that the Design and Construction Requirements, as amended from time to time, be enforced as written, and that adjacent or directly-affected owners be provided with notice and an opportunity to be heard when an owner requests a variance to the written Design and Construction Requirements, as amended from time to time, provided that nothing herein shall be interpreted to require any lawsuit to be filed or defended by the Association, or to override any provision contained in the Association Governing Documents, as amended from time to time. Nothing herein shall be construed to require enforcement of restrictions (if any) which may have been waived or abandoned.

7. That the Managing Agent of the Association be instructed to arrange for a one- to two-hour training session on an annual basis for present and future Board members regarding community association matters.

8. That all owners be provided with copies of any legal process that is served on the Association.

Exhibit A to Settlement and Release Agreement

65520